Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900

-and-

Chad J. Husnick, P.C.
W. Benjamin Winger (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200

Steven J. Reisman
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, New York 10022
Telephone:       (212) 940-8800
Facsimile:       (212) 940-8776

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' APPLICATION SEEKING ENTRY OF AN ORDER
(I) AUTHORIZING AND APPROVING THE APPOINTMENT OF STRETTO
AS CLAIMS AND NOTICING AGENT AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this application.[2]

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

[2]   A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Mohsin Y. Meghji, Chief Restructuring Officer of Barneys New York, Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day

**Relief Requested**

1.      The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, (a) appointing Stretto ("Stretto")[3] as claims and noticing agent (the "Claims and Noticing Agent") for the Debtors in their chapter 11 cases effective *nunc pro tunc* to the Petition Date, including assuming full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Debtors' chapter 11 cases, and (b) granting related relief.  In support of this application, the Debtors submit the Declaration of James Le, Chief Operating Officer of Stretto (the "Le Declaration"), attached hereto as **Exhibit B**.  The Debtors' selection of Stretto to act as the Claims and Noticing Agent has satisfied the Court's Claims Agent Protocol (as defined below), in that the Debtors have obtained and reviewed engagement proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Stretto's rates are competitive and reasonable given Stretto's quality of services and expertise.  The terms of Stretto's retention are set forth in the Engagement Agreement attached hereto as **Exhibit C** (the "Engagement Agreement").

2.      Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be thousands of entities to be noticed.  Local Rule 5075-1(b) provides that "[i]n a case in which the number of creditors and equity security holders, in the aggregate, is 250 or more, the estate shall retain, subject to approval of the Court, a claims and noticing agent in accordance with the [Claims Agent Protocol]."  In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims

---

Declaration"), filed contemporaneously herewith.  Capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in the First Day Declaration.

[3]     Stretto is the trade name of Bankruptcy Management Solutions, Inc., and its subsidiaries.

and noticing agent is required by Local Rule 5075-1(b) and is otherwise in the best interests of both the Debtors' estates and their creditors.

3.      By separate application, the Debtors will seek authorization to retain and employ Stretto as administrative advisor in these chapter 11 cases pursuant to section 327(a) of the Bankruptcy Code because the administration of these chapter 11 cases will require Stretto to perform duties outside the scope of 28 U.S.C. § 156(c).

## Jurisdiction and Venue

4.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the Court entering a final order in connection with this application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are section 156(c) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), rules 9013-1(a) and 5075-1(b) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and the  Court's *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)* (dated June 17, 2013) (the "Claims Agent Protocol").

## Background

7.      The Debtors are a world-renowned luxury specialty retailer with twenty-two stores across the United States, including flagships in New York City and Beverly Hills, and a highly

curated, shopper-friendly e-commerce platform.  Founded as a men's retailer in 1923 in downtown

Manhattan, the Debtors sell the most intriguing fashion offering from the world's top designers,

including women's and men's clothing, accessories, shoes, jewelry, cosmetics, fragrances, and

gifts for the home.  The Debtors remain headquartered in New York, New York and lease all of

their store locations.  The Debtors reported revenues of approximately $800 million for 2018.  As

of the date hereof (the "Petition Date"), the Debtors have approximately 2,300 employees and

funded debt obligations of approximately $200 million.

8.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under

chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

Concurrently with the filing of this motion, the Debtors filed a motion requesting procedural

consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule

1015(b).  No request for the appointment of a trustee or examiner has been made in these

chapter 11 cases, and no committees have been appointed or designated.

## Stretto's Qualifications

9.   Stretto is a chapter 11 administrator comprised of leading industry professionals with

significant experience in both the legal and administrative aspects of large, complex chapter 11

cases.  Stretto's professionals have experience in noticing, claims administration, solicitation,

balloting, and facilitating other administrative aspects of chapter 11 cases and experience in

matters of this size and complexity.  Stretto's professionals have acted as debtor's counsel or

official claims and noticing agent in many large bankruptcy cases in this district and in other

districts nationwide.  Stretto has developed efficient and cost-effective methods to handle the

voluminous mailings associated with the noticing and claims processing portions of chapter 11

cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all

parties in interest.  Stretto's active and former cases include:  *In re Z Gallerie, LLC*, Case No. 19-10488 (LSS) (Bankr. D.Del. Apr. 9, 2019); *In re Burkhalter Rigging, Inc.*, Case No. 19-30495 (MI) (Bankr. S.D.Tex. Feb. 6, 2019); *In re Angel Medical Sys., Inc.*, Case No. 18-12903 (KG) (Bankr. D.Del. Jan. 23, 2019); *In re Oklahoma ProCure Mgmt, LLC* Case No. 18-12622 (MFW) (Bankr. D.Del. Dec. 27, 2018); *In re Sancillo Pharmaceuticals Co., Inc.*, Case No. 18-11333 (CSS) (Bankr D.Del. June 7, 2018); *In re BICOM NY, LLC*, Case No. 17-11906 (MEW) (Bankr. S.D.N.Y. July 20, 2017).[4]

10.    By appointing Stretto as the Claims and Noticing Agent in these chapter 11 cases, the distribution of notices and the processing of claims will be expedited, and the Office of the Clerk of the Court (the "Clerk's Office") will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

## Services to be Provided

11.    This application pertains only to the work to be performed by Stretto under the Clerk's Office's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 5075-1, and any work to be performed by Stretto outside of this scope is not covered by this application or by any order granting approval hereof.  Specifically, Stretto will perform the following tasks in its role as Claims and Noticing Agent, as well as all quality control relating thereto:

      a.    prepare and serve required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of these chapter 11 cases and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the

---

[4]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this application. Copies of these cited orders are available upon request to the Debtors' proposed counsel.

effective date of any plan, and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

b.    maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

c.    maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk;

d.    furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e.    maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f.    for all notices, motions, orders, or other pleadings or documents served, prepare and file, or cause to be filed with the Clerk, an affidavit or certificate of service within seven business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

g.    process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

a.    maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed:  (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

b.      provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

c.      implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

d.      record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

e.      relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Stretto, not less than weekly;

f.      upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

g.      monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

h.      identify and correct any incomplete or incorrect addresses in any mailing or service lists;

i.      assist in the dissemination of information to the public and respond to requests for administrative information regarding these chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

j.      monitor the Court's docket in these chapter 11 cases and, when filings are made in error or containing errors, alert the filing party of such error and work with them to correct any such error;

k.      if these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three days of notice to Stretto of entry of the order converting the cases;

l.      thirty days prior to the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Stretto as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

m.     within seven days of notice to Stretto of entry of an order closing these chapter 11 cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the chapter 11 cases; and

n.    at the close of these chapter 11 cases, box and transport all original
documents, in proper format, as provided by the Clerk's office, to (i) the
Federal Archives Record Administration, located at Central Plains Region,
200 Space Center Drive, Lee's Summit, Missouri 64064 or (ii) any other
location requested by the Clerk's Office.

**Professional Compensation**

12.    The Debtors respectfully request that the undisputed fees and expenses incurred by
Stretto in the performance of the above services be treated as administrative expenses of
the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of
the Bankruptcy Code and be paid in the ordinary course of business without further application to
or order of the Court.  Stretto agrees to maintain records of all services showing dates, categories
of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors,
the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring
the expenses of the Debtors, and any party-in-interest who specifically requests service of the
monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly
invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not
achieved, the parties may seek resolution of the matter from the Court.

13.    Prior to the Petition Date, the Debtors provided Stretto an advance in the amount
of $15,000.  Stretto seeks to first apply the advance to all prepetition invoices, and thereafter, to
have the advance replenished to the original advance amount, and thereafter, to hold the advance
under the Engagement Agreement during these chapter 11 cases as security for the payment of
fees and expenses incurred under the Engagement Agreement.

14.    Additionally, under the terms of the Engagement Agreement, the Debtors have
agreed to indemnify, defend, and hold harmless Stretto and its members, officers, employees,
representatives, and agents under certain circumstances specified in the Engagement Agreement,
except in circumstances resulting solely from Stretto's bad faith, gross negligence, or willful

misconduct or as otherwise provided in the Engagement Agreement or Order. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these chapter 11 cases.

### Disinterestedness

15.     Although the Debtors do not propose to employ Stretto under section 327 of the Bankruptcy Code pursuant to this application (such retention will be sought by separate application), Stretto has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Le Declaration, Stretto has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

16.     Moreover, in connection with its retention as Claims and Noticing Agent, Stretto represents in the Le Declaration, among other things, that:

    a.     Stretto is not a creditor of the Debtors;

    b.     Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

    c.     by accepting employment in these chapter 11 cases, Stretto waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

    d.     in its capacity as the Claims and Noticing Agent in these chapter 11 cases, Stretto will not be an agent of the United States and will not act on behalf of the United States;

    e.     Stretto will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

    f.     Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

g.    in its capacity as Claims and Noticing Agent in these chapter 11 cases, Stretto will not intentionally misrepresent any fact to any person;

h.    Stretto shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers;

i.    Stretto will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j.    none of the services provided by Stretto as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's Office.

17.    Stretto will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## Compliance with Claims and Noticing Agent Protocol

18.    This application complies with the Claims Agent Protocol and substantially conforms to the standard section 156(c) application in use in this Court.  To the extent that there is any inconsistency between this application, the Order, and the Engagement Agreement, the Order shall govern.

## Basis for Relief

19.    Section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of bankruptcy courts, authorizes the Court to use "facilities" or "services" other than the Clerk's Office for administration of bankruptcy cases.  It states:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

20.    In addition, Local Rule 5075-1(a) provides:

> The Court may direct, subject to the supervision of the Clerk, the use of agents either on or off the Court's premises to file Court records, either by paper or electronic means, to issue notices, to maintain case dockets, to maintain Judges' calendars, and to maintain and disseminate other administrative information where the costs of such facilities or services are paid for by the estate.

Local Rule 5075-1(a).

21.    The Court has promulgated the Claims Agent Protocol "to ensure the use of competitive process in the selection of claims agents in instances where the Court has authorized such use under 28 U.S.C. § 156(c)."  In compliance with the Claims Agent Protocol, the Debtors obtained and reviewed proposals from three court-approved claims and noticing agents, including Stretto.  The Debtors provided each court-approved claims and noticing agent the basic facts about these chapter 11 cases and asked each claims and noticing agent to submit a written proposal based upon such facts.  The Debtors also asked each claims and noticing agent case-specific pricing questions.  Ultimately, the Debtors chose Stretto as their claims and noticing agent based on its capability and favorable price terms.

22.    Local Rule 5075-1(b) requires the retention, pursuant to an order of the Court, of an approved claims and noticing agent in a case having 250 or more creditors and/or equity security holders, which is applicable to these chapter 11 cases.

23.    Given the number of creditors and other parties in interest involved in these chapter 11 cases, the Debtors seek an order appointing Stretto as the claims and noticing agent in these chapter 11 cases *nunc pro tunc* to the Petition Date pursuant to 28 U.S.C. § 156(c) and Local Rule 5075-1 to relieve this Court and the Clerk's Office of administrative burdens.

24.    At the Debtors' request, Stretto has been serving in a Claims and Noticing Agent capacity since prior to the Petition Date with assurances that the Debtors would seek approval of

its employment and retention effective *nunc pro tunc* to the Petition Date, so that Stretto may be compensated for its pre-application services in these chapter 11 cases. The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment, as provided herein, because Stretto has provided and continues to provide valuable services to the Debtors' estates in the interim period.

25.     Courts in this jurisdiction have routinely approved *nunc pro tunc* employment for claims and noticing agents similar to that requested herein. *See, e.g.*, *In re Hollander Sleep Products, LLC*, Case No. 19-11608 (Bankr. S.D.N.Y. July 2, 2019) (approving appointment of claims and noticing agent *nunc pro tunc* to the petition date); *In re Sungard Availability Servs. Capital, Inc.*, Case No 19-22915 (RDD) (Bankr. S.D.N.Y. June 25, 2019) (same); *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. Feb. 28, 2019) (same); *In re FULLBEAUTY Brands Holdings Corp.*, Case No. 19-22185 (RDD) (Bankr. S.D.N.Y. Mar. 8, 2019) (same); *In re Aegean Marine Petrol. Network, Inc.*, Case No 18-13374 (MEW) (Bankr. S.D.N.Y. Dec. 6, 2018) (same).

26.     Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Accordingly, the Debtors respectfully request entry of the Order, pursuant to section 156(c) of the Bankruptcy Code and Local Rule 5075-1, approving this application to retain and employ Stretto as the Claims and Noticing Agent in these chapter 11 cases, effective *nunc pro tunc* to the Petition Date.

## **Motion Practice**

27.     This motion includes citation to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this motion. Accordingly, the Debtors submit that this motion satisfies Local Rule 9013-1(a).

**Notice**

28.     The Debtors will provide notice of this motion to:  (a) the United States Trustee for the Southern District of New York; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition ABL Agent; (d) counsel to the Term Loan Agent; (e) counsel to the DIP parties; (f) the United States Attorney's Office for the Southern District of New York; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for all states in which the Debtors conduct business; and (j) any party that requests service pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

29.     No prior request for the relief sought in this application has been made to this or any other court.


[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request entry of an Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as is just and proper.

Dated:  August 6, 2019               */s/ Joshua A. Sussberg, P.C.*
New York, New York               Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

Chad J. Husnick, P.C.
W. Benjamin Winger (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

-and-

Steven J. Reisman
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, New York 10022
Telephone:    (212) 940-8800
Facsimile:    (212) 940-8776

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## ORDER (I) AUTHORIZING AND APPROVING THE
## APPOINTMENT OF STRETTO AS CLAIMS AND NOTICING
## AGENT TO THE DEBTORS AND (II) GRANTING RELATED RELIEF

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"), (a) appointing Stretto as the claims and noticing agent (the "Claims and Noticing Agent") to, among other things, (i) distribute required notices to parties in interest, (ii) receive, maintain, docket, and otherwise administer the proofs of claim filed in the Debtors' chapter 11 cases, and (iii) provide such other administrative services—as required by the Debtors—that would fall within the purview of services to be provided by the Clerk's Office, and (b) granting related relief, all as more fully set forth in the Application; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819). The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

States Constitution; and this Court having found that venue of this proceeding and the Application

in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

the relief requested in the Application is in the best interests of the Debtors' estates, their creditors,

and other parties in interest; and this Court having found that the Debtors' notice of the Application

and opportunity for a hearing on the Application were appropriate under the circumstances and no

other notice need be provided; and this Court having reviewed the Application and having heard

the statements in support of the relief requested therein at a hearing before this Court (the

"Hearing"); and this Court having determined that the legal and factual bases set forth in the

Application and at the Hearing establish just cause for the relief granted herein; and upon all of

the proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefor, it is HEREBY ORDERED THAT:

1.      The Application is approved as set forth herein.

2.      The Debtors are authorized to retain Stretto as Claims and Noticing Agent effective

*nunc pro tunc* to the Petition Date under the terms of the Engagement Agreement, and Stretto is

authorized and directed to perform noticing services and to receive, maintain, record, and

otherwise administer the proofs of claim filed in these chapter 11 cases, and all related tasks, all

as described in the Application.

3.      Stretto shall serve as the custodian of court records and shall be designated as

the authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized

and directed to maintain official claims registers for each of the Debtors, to provide public access

to every proof of claim filed in these chapter 11 cases unless otherwise ordered by the Court and

to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

4.      Stretto is authorized and directed to provide an electronic interface for filing proofs of claim—to the extent necessary—and to obtain a post office box or address for the receipt of proofs of claim.

5.      Stretto is authorized to take such other action to comply with all duties set forth in the Application.

6.      The Debtors are authorized to compensate Stretto in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Stretto and the rates charged for each, and to reimburse Stretto for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Stretto to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      Stretto shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices.

8.      The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices; *provided*, *however*, that the parties may seek resolution of the matter from this Court if resolution is not achieved.

9.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Stretto under this Order shall be an administrative expense of the Debtors' estates.

10.      Stretto may apply its advance to all prepetition invoices, which advance shall be replenished to the original advance amount, and thereafter, Stretto may hold its advance under the

Engagement Agreement during the chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.     The Debtors shall indemnify Stretto under the terms of the Engagement Agreement, as modified pursuant to this Order.

12.     All requests by Stretto for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided*, *however*, that in no event shall Stretto be indemnified in the case for its own bad faith, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

13.     In the event that Stretto seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Stretto's own applications, both interim and final, but determined by this Court after notice and a hearing.

14.     In the event Stretto is unable to provide the services set out in this Order, Stretto will immediately notify the Clerk and the Debtors' attorney and, upon approval of this Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' attorney.

15.     The Debtors may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or any applicable law, for work that is to be performed by Stretto but is not specifically authorized by this Order.

16.     Stretto shall not cease providing claims processing services during these chapter 11 cases for any reason, including nonpayment, without an order of this Court; *provided*, *however*, that Stretto may seek such an order on expedited notice by filing a request with this Court with notice of such request to be served on the Debtors, the United States Trustee, and any official committee of creditors appointed in these chapter 11 cases by facsimile or overnight delivery; *provided*, *further*, that except as expressly provided herein, the Debtors and Stretto may otherwise terminate or suspend other services as provided under the Engagement Letter.

17.     After entry of an order terminating Stretto's services as the Claims and Noticing Agent, upon the closing of these chapter 11 cases, or for any other reason, Stretto shall be responsible for archiving all proofs of claim with the Federal Archives Record Administration, if applicable.

18.     Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with any orders entered by the Court approving the Debtors' entry into any postpetition debtor in possession financing facility and any budget in connection therewith and/or authorizing the Debtors' use of cash collateral and any budget in connection therewith.

19.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

20.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

21.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

22.    The Debtors and Stretto are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

23.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

24.    In the event of any inconsistency between the Engagement Agreement, the Application and this Order, this Order shall govern.

Dated: _____, 2019
Poughkeepsie, New York

_____
THE HONORABLE CECELIA G. MORRIS
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT B**

**Le Declaration**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DECLARATION OF JAMES LE IN SUPPORT**
**OF DEBTORS' APPLICATION SEEKING ENTRY OF AN ORDER**
**(I) AUTHORIZING AND APPROVING THE APPOINTMENT OF STRETTO**
**AS CLAIMS AND NOTICING AGENT AND (II) GRANTING RELATED RELIEF**

I, James Le, under penalty of perjury, declare as follows:

1.      I am the Chief Operating Officer of Stretto ("Stretto"),[2] a chapter 11 administrative services firm with offices at 410 Exchange, Ste. 100, Irvine, California 92602.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This declaration (this "Declaration") is made in support of the above-captioned debtors' (collectively, the "Debtors") *Debtors' Application Seeking Entry of an Order (I) Authorizing and Approving the Appointment of Stretto as Claims and Noticing Agent and (II) Granting Related Relief*, filed contemporaneously herewith (the "Application").[3]

3.      Stretto is a chapter 11 administrator comprised of leading industry professionals

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

[2]      Stretto is the trade name of Bankruptcy Management Solutions, Inc., and its subsidiaries.

[3]      Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Application.

with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Stretto's professionals have acted as debtor's counsel or official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide. Stretto has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest. Stretto's active cases include: *In re Z Gallerie, LLC*, Case No. 19-10488 (LSS) (Bankr. D.Del. Apr. 9, 2019); *In re Burkhalter Rigging, Inc.*, Case No. 19-30495 (MI) (Bankr. S.D.Tex. Feb. 6, 2019); *In re Angel Medical Sys., Inc.*, Case No. 18-12903 (KG) (Bankr. D.Del. Jan. 23, 2019); *In re Oklahoma ProCure Mgmt, LLC* Case No. 18-12622 (MFW) (Bankr. D.Del. Dec. 27, 2018); *In re Sancillo Pharmaceuticals Co., Inc.*, Case No. 18-11333 (CSS) (Bankr D.Del. June 7, 2018); *In re BICOM NY, LLC*, Case No. 17-11906 (MEW) (Bankr. S.D.N.Y. July 20, 2017).[4]

4.  As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Stretto will perform, at the request of the Office of the Clerk of the Court (the "<u>Clerk's Office</u>"), the services specified in the Application and the Engagement Agreement, and, at the Debtors' request, any related administrative, technical, and support services as specified in the Application and the Engagement Agreement. In performing such services, Stretto will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as **<u>Exhibit C</u>** to the Application.

---

[4]  Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Declaration. Copies of these cited orders are available upon request to the Debtors' proposed counsel.

5.      Stretto represents, among other things, the following:

    a.      Stretto is not a creditor of the Debtors;

    b.      Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

    c.      By accepting employment in these chapter 11 cases, Stretto waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

    d.      In its capacity as the Claims and Noticing Agent in these chapter 11 cases, Stretto will not be an agent of the United States and will not act on behalf of the United States;

    e.      Stretto will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

    f.      Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

    g.      In its capacity as Claims and Noticing Agent in these chapter 11 cases, Stretto will not intentionally misrepresent any fact to any person;

    h.      Stretto shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

    i.      Stretto will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

    j.      None of the services provided by Stretto as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

6.      Although the Debtors do not propose to retain Stretto under section 327 of the Bankruptcy Code pursuant to the Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "Potential Parties in Interest") in these chapter 11 cases.  The list of Potential Parties in Interest was provided by the Debtors and included, among other parties, the Debtors, non-Debtor affiliates, current and former directors and officers of the Debtors,

secured creditors, lenders, the Debtors' thirty largest unsecured creditors on a consolidated basis, the United States Trustee and persons employed in the office of the United States Trustee, and other parties. The results of the conflict check were compiled and reviewed by Stretto professionals under my supervision. At this time, and as set forth in further detail herein, Stretto is not aware of any connection that would present a disqualifying conflict of interest. Should Stretto discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Stretto will use reasonable efforts to file promptly a supplemental declaration.

7.      To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Stretto, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties. Stretto may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Stretto serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

8.      Stretto has and will continue to represent clients in matters unrelated to these chapter 11 cases. In addition, in matters unrelated to these chapter 11 cases, Stretto and its personnel may have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in these chapter 11 cases. Stretto may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

9.      Stretto and its personnel in their individual capacities regularly utilize the services of law firms, accounting firms, and financial advisors.  Such firms engaged by Stretto or its personnel may appear in chapter 11 cases representing the Debtors or parties in interest.  All engagements where such firms represent Stretto or its personnel in their individual capacities are unrelated to these chapter 11 cases.

10.     Certain of Stretto's professionals were partners of or formerly employed by Kirkland & Ellis LLP ("K&E").  Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors while employed by K&E.  Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed.

11.     Jonathan Carson, Co-CEO of Stretto, was previously an attorney at K&E, counsel to the Debtors in these Chapter 11 cases, from 1997 to 2001.  Mr. Carson has never worked on any matters involving the Debtors while employed at K&E.

12.     In April 2017, Stretto was acquired by the Trident VI Funds managed by private equity firm Stone Point Capital LLC ("Stone Point").  Stone Point is a financial services-focused private equity firm based in Greenwich, Connecticut.  The firm has raised and managed seven private equity funds – the Trident Funds – with aggregate committed capital of approximately $19 billion.  Stone Point targets investments in the global financial services industry, including investments in companies that provide outsourced services to financial institutions, banks and depository institutions, asset management firms, insurance and reinsurance companies, insurance distribution and other insurance-related businesses, specialty lending and other credit opportunities, mortgage services companies and employee benefits and healthcare companies.

13.     The following disclosure is made out of an abundance of caution in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.  However, neither the Trident VI Funds

5

nor Stone Point have been identified on the parties in interest list in these chapter 11 cases as of the date hereof.

14.     Stretto has searched the names of the Debtors and the names of the potential parties in interest provided by the Debtors against Stone Point, its funds, and their respective investments as set forth in the list most recently provided to Stretto by Stone Point's internal compliance department.    Based solely on the foregoing search, Stretto has determined, to the best of its knowledge, that there are no material connections that require disclosure.    Two vendors identified on the list of Potential Parties in Interest, HireRight, Inc. and Pension Benefit Information, are wholly or partially-owned portfolio companies of Stone Point's Trident Funds.    These entities do not share common management, employees, or operations with Stretto.    To the extent Stretto learns of any material connections between Stone Point's funds or investments included in the above-described conflicts search and the Debtors, Stretto will promptly file a supplemental disclosure. Stretto may have had, may currently have, or may in the future have business relationships unrelated to the Debtors with one or more Stone Point entities including, among others, portfolio companies of Stone Point.

15.     From time to time, Stretto partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates, often without Stretto's or its personnel's knowledge.    Each Stretto partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security.    Each Investment Fund is generally operated as a blind

pool, meaning that when the Stretto partners or employees make an investment in the particular Investment Fund, he, she or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

16.    From time to time, Stretto partners or employees may personally directly acquire a debt or equity security of a company that may be one of the Debtors or their affiliates.  Stretto has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work.  In this regard, subject to paragraph 15, all Stretto partners and employees are barred from trading in securities with respect to matters in which Stretto is retained.  Subject to paragraph 15, upon information and belief, and upon reasonable inquiry, Stretto does not believe that any of its partners or employees own any debt or equity securities of a company that is a Debtor or of any of its affiliates.

17.    Based on the foregoing, I believe that Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.  Moreover, to the best of my knowledge and belief, neither Stretto nor any of its partners or employees hold or represent any interest materially adverse to the Debtors' estates with respect to any matter upon which Stretto is to be engaged.


*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated:  August 6, 2019
New York, New York

/s/ James Le
_____
James Le
Chief Operating Officer
Stretto

# **EXHIBIT C**

**Engagement Agreement**



# Corporate Restructuring Proposal

*Prepared for:*

**Kirkland & Ellis LLP**

**07.09.2019**

Stretto.com

410 Exchange, Ste. 100
Irvine, CA 92602

800.634.7734

## Executive Summary

Thank you for the opportunity to share with you our services. Enclosed, please find Stretto's Engagement Agreement as well as our pricing.

Clients rely on Stretto as a trusted service partner to orchestrate the administrative process. We offer deep-industry expertise and seamlessly integrate streamlined workflows and best-in-class technology. Clients expect top-notch service along with exceptional attention to detail, and Stretto delivers exactly that.

We look forward to the opportunity to work with you, and we commit to providing the highest level of service so you can efficiently manage the day-to-day needs of your practice.

If you have any questions, please do not hesitate to contact me.

Kind regards,

Jonathan Carson
*Chief Executive Officer*
714.716.1840 | jonathan.carson@stretto.com

# Engagement Agreement

This Engagement Agreement (this "Agreement") is entered into as of July 21, 2019 between Bankruptcy Management Solutions, Inc. d/b/a Stretto ("Stretto") and Barney's New York, Inc. (together with its affiliates and subsidiaries, the "Company").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.  **Services**

    (a) Stretto agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "Services").

    (b) The Company acknowledges and agrees that Stretto will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to providing Services hereunder. The parties agree that Stretto may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

    (c) The Company agrees and understands that Stretto shall not provide the Company or any other party with legal advice.

2.  **Rates, Expenses and Payment**

    (a) Stretto will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "Rate Structure"). The Company agrees to pay for reasonable and documented out of pocket expenses incurred by Stretto in connection with providing Services hereunder.

    (b) The Rate Structure sets forth individual unit pricing for each of the Services. The Company may request separate Services or all of the Services.

    (c) Stretto will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses is expected to exceed $10,000 (e.g., publication notice), Stretto may require advance or direct payment from the Company before the performance of Services hereunder. If any amount is unpaid as of 30 days after delivery of an invoice solely due to the Company's failure to pay such amount, the Company agrees to pay a late charge equal to 1.0% of the total amount unpaid every 30 days.

    (d) In the case of a dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Stretto within 10 days of receipt of the invoice.

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.

1

(e) The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(f) The Company shall pay any reasonable and documented fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(g) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Stretto or paid by Stretto to a taxing authority; provided, however, that the Company shall not pay or reimburse any taxes on the net income of Stretto that are required to be paid by Stretto.

(h) Upon execution of this Agreement, the Company shall pay Stretto an advance of $15,000. Stretto may use such advance against unpaid fees and expenses hereunder. Stretto may use the advance against all undisputed prepetition reasonable and documented fees and expenses. Company shall upon Stretto's request, which request may take the form of an invoice, replenish the advance to the original advance amount. Stretto may also, at its option hold such advance to apply against undisputed unpaid reasonable and documented fees and expenses hereunder.

(i) Stretto reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year. If such annual increases represent an increase greater than 10% from the previous year's levels, Stretto shall provide 30 days' written notice to the Company of such increases.

(j) Payments to Stretto under the terms of this Agreement for services rendered, may be remitted by Client using either (or both) of the following methods:

> **i.** **Wire Transmission**
> Bank Name – Pacific Western Bank
> Bank Address – 110 West A Street, Suite 100, San Diego, CA 92101
> ABA – 122238200
> Account Number – 1000681781
> Account Name – Bankruptcy Management Solutions, Inc.

> **ii.** **Check**
> Stretto
> c/o Controller, Chris Mok
> 410 Exchange, Suite 100
> Irvine, CA 92602

3. **Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "Bankruptcy Code"), the Company promptly shall file applications with the Bankruptcy Court to retain Stretto (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Stretto.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Stretto will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.



4. **Confidentiality**

    (a) The Company and Stretto agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the receiving party's possession or known to it, independently developed by the receiving party, lawfully obtained by the receiving party from a third party or required to be disclosed by law, then the receiving party shall bear no responsibility for publicly disclosing such information.

    (b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, (i) such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time, if possible, to seek any remedy available under applicable law to prevent disclosure of the information; and (ii) such party will limit such disclosure to the extent the such party's counsel in good faith determines such disclosure can be limited.

5. **Property Rights**

Stretto reserves to itself and its agents all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "Property") furnished by Stretto for itself or for use by the Company hereunder. The foregoing definition of Property shall include any and all data, from any source, downloaded, stored and maintained by Stretto's technology infrastructure. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Stretto hereunder.

6. **Bank Accounts**

At the request of the Company or the Company Parties, Stretto shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are provided to the Company pursuant to Stretto's agreement with financial institutions, Stretto may receive compensation from such institutions for the services Stretto provides pursuant to such agreement.

7. **Term and Termination**

    (a) This Agreement shall remain in effect until terminated by either party: (i) on 5 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "Cause" means (i) bad faith, gross negligence, or willful misconduct of Stretto that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Stretto invoices for more than 60 days from the date of invoice solely due to the Company's failure to pay such amounts or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Stretto where Stretto reasonably believes it likely will not be paid excepting on the basis of any delay in payment due to pending approval and allowance of such amounts by the Bankruptcy Court during the Company's chapter 11 case or following conversion to a chapter 7 case.

(b) If this Agreement is terminated after Stretto is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Stretto of its duties under such retention, which order shall be in form and substance reasonably acceptable to Stretto.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Stretto hereunder.

(d) If this Agreement is terminated, Stretto shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Stretto shall provide the necessary staff, services and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Rate Structure.

## 8. No Representations or Warranties

Stretto makes no representations or warranties, express or implied, regarding the services and products sold or licensed to the Company hereunder or otherwise with respect to this Agreement, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

## 9. Indemnification

(a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Stretto and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "Indemnified Parties") from and against any and all direct losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, reasonable and documented counsel fees and expenses) (collectively, "Losses") directly resulting from, arising out of or related to Stretto's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party unless caused by bad faith, gross negligence, and/or willful misconduct of the Indemnified Party.

(b) Stretto and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c) The Company's indemnification of Stretto hereunder shall exclude Losses resulting from Stretto's bad faith, gross negligence, or willful misconduct.

(d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

## 10. Limitations of Liability

Except as expressly provided herein, Stretto's liability to the Company for any Losses, unless due to Stretto's bad faith, gross negligence, or willful misconduct, shall be limited to the total amount paid by the Company to Stretto for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Stretto be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.


**11. Company Data**

(a) The Company is responsible for, and Stretto does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Stretto and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "SOFAs and Schedules"). Stretto bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b) The Company agrees, represents and warrants to Stretto that before delivery of any information to Stretto: (i) the Company has full authority to deliver such information to Stretto; and (ii) Stretto is authorized to use such information to perform Services hereunder and as otherwise set forth in this Agreement.

(c) Any data, storage media, programs or other materials furnished to Stretto by the Company may be retained by Stretto until the Services provided hereunder are paid in full. The Company shall remain liable for all reasonable and documented fees and expenses incurred by Stretto under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Stretto. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Stretto's Services for a period of 90 days or more, Stretto may dispose of any such materials in a manner to be determined in Stretto's sole reasonable discretion, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' written notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Stretto.

(d) Notwithstanding the foregoing, if Stretto is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

**12. Non-Solicitation**

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Stretto during the term of this Agreement and for a period of 12 months after termination thereof unless Stretto provides prior written consent to such solicitation or retention.

**13. Force Majeure**

Whenever performance by Stretto of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Stretto's reasonable control, then such performance shall be excused.

**14. Choice of Law**

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

5


**15. Arbitration**

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in Irvine, California in accordance with the United States Arbitration Act.  Notwithstanding the foregoing, upon commencement of any chapter 11 case(s) by the Company, any disputes related to this Agreement shall be decided by the Bankruptcy Court assigned to such chapter 11 case(s).

**16. Integration: Severability; Modifications: Assignment**

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Stretto.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Stretto may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

**17. Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

THIS SPACE INTENTIONALLY LEFT BLANK

## 18. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Stretto:           Stretto
                         410 Exchange, Ste. 100
                         Irvine, CA 92602
                         Attn: Sheryl Betance
                         Tel: 714.716.1872
                         Email: sheryl.betance@stretto.com

If to the Company:       Barney's New York, Inc.
                         575 5th Avenue
                         New York, NY 10017
                         Attn:  Grace Fu
                         Tel:  (212) 450-8606
                         Email:  gfu@barneys.com

With a copy to:          Kirkland & Ellis LLP
                         601 Lexington Avenue
                         New York, New York 10022
                         Attn:  Joshua A. Sussberg, P.C. and Gene Goldmintz
                         Tel:  (212) 446-4800
                         Email:  jsussberg@kirkland.com
                               gene.goldmintz@kirkland.com

                         and

                         Kirkland & Ellis LLP
                         300 North LaSalle
                         Chicago, Illinois 60654
                         Attn:  Chad J. Husnick, P.C. and W. Benjamin Winger
                         Tel:  (312) 862-2000
                         Email:  chusnick@kirkland.com
                               benjamin.winger@kirkland.com

THIS SPACE INTENTIONALLY LEFT BLANK

7

8

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement effective as of the date first above written.

Stretto

By:    James M. Le

Title:    Chief Operating Officer

Barney's New York, Inc.

By:    _____

Name:    Grace Fu

Title:    Authorized Signatory


## Fee Structure

**Consulting Services and Rates[2]**

Position                                                    Hourly Rate
*Analyst*                                                   *$24.00 - $40.00*
The Analyst processes incoming mail, including proofs of claim, ballots, creditor correspondence and returned mail. Also assists with the generation of mailing services.

*Associate/Senior Associate*                               *$52.00 - $132.00*
The Associate manages the various data collection processes required by the Chapter 11 process. This includes, among other things, compiling the creditor matrix and Schedules/SOFAs (and generating drafts of same for counsel and advisors), reviewing and processing claims, overseeing contract review, overseeing all mailings and generating custom claim and ballot reports.

The Senior Associate leads complex data aggregation projects for compilation of Schedules & SOFA, the creditor matrix and special notice lists. In addition, the Senior Associate oversees quality control and on mailings and reports. Stretto's Senior Associates average over seven years of experience.

*Director/ Managing Director*                              *$140.00 - $179.00*
The Director is the primary contact for the company, counsel and other professionals and oversees and supports all aspects of the administration for the entirety of an engagement.

The Managing Director provides industry and/or project specific expertise to support complex matters. Professionals, including Stretto's executive management team will serve in this role when appropriate.

Stretto's Directors and Managing Directors have over fifteen years of experience and are typically former restructuring professionals.

*COO/SMD*                                                  *Waived*
Our COO and Senior Managing Director oversee Stretto's Corporate Restructuring group and will provide consulting support to this matter at no charge. Our COO and Senior Managing Director collectively have over thirty-five years of experience.

**Solicitation, Balloting and Tabulation Rates**

*Solicitation Associate*                                   *$152*
The Solicitation Associate reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. The Solicitation Associate also prepares customized reports relating to voting and other corporate events, including exchange offers and rights subscriptions. The Solicitation Associate also interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and related communications.

*Director of Securities*                                   *$168*
The Director of Securities leads public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of related processes.

---

[2]        Reflects a 20% discount from standard professional fees.

1


**Printing Services & Noticing Services**

| Service | Pricing |
| --- | --- |
| Printing | $0.10 (per image) |
| Customization/Envelope Printing | $0.05 (each) |
| Document Folding and Inserting | Waived |
| Postage/Overnight Delivery | Preferred Rates |
| Email Noticing | Waived |
| Fax Noticing | $0.10 (per page) |
| Envelopes | Varies by Size |
| Coordinate and Publish Legal Notices | Available on Request |

**Electronic Services**

| Service | Pricing |
| --- | --- |
| Case Website Set-Up | Waived |
| Case Website Hosting | Waived |
| Update Case Docket and Claims Register | Waived |
| Online Claims Filing | Waived |
| Custom Software, Workflow and Review Resources | Quoted at Time of Request |
| eDiscovery | Quoted at Time of Request |

**Claims Administration & Management Expenses**

| Service | Pricing |
| --- | --- |
| License Fee and Data Storage (Per Creditor per Month) | $0.10 |
| Database and System Access (Unlimited Users) | Waived |
| Custom Client Reports | Waived |

**Document Management Services**

| Service | Pricing |
| --- | --- |
| Electronic Imaging (Per Imaged Page) | $0.10 |
| Virtual Data Room | Available on Request |
| Mass Document Storage (Per Device) | $7.25 |

**Call Center Support Services**

| Service | Pricing |
| --- | --- |
| Case-Specific Voice-Mail Box for Creditors | Waived |
| Interactive Voice Response (Per Minute) | Waived |
| Monthly Maintenance Charge | Waived |
| Management of Call Center (Per Hour) | Standard Hourly Rates |

**Disbursement Services**

| Service | Pricing |
| --- | --- |
| Check Issuance | Available on Request |
| W-9 Mailing and Maintenance of TIN Database | Standard Hourly Rates |
| Disbursements - Record to Transfer Agent | Quoted at Time of Request |

**Other Services**

| Service | Pricing |
| --- | --- |
| Depositions/Court Reporting | Quoted at Time of Request |

2