Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

-and-

Chad J. Husnick, P.C.
W. Benjamin Winger (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

Steven J. Reisman
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, New York 10022
Telephone:     (212) 940-8800
Facsimile:     (212) 940-8776

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| BARNEYS NEW YORK, INC., *et al.*,[1] | Case No. 19-36300 (CGM) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION SEEKING ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS
TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT
SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS
RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS,
AND (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS,
(II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION
INTERCOMPANY BALANCES, AND (III) GRANTING RELATED RELIEF**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

The above-captioned debtors and debtors in possession (collectively, the "Debtors")
respectfully state as follows in support of this motion.[2]

## Relief Requested

1.      The Debtors seek entry of interim and final orders, substantially in the forms
attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"),
(a) authorizing, but not directing, the Debtors to (i) continue to operate their cash management
system substantially as illustrated on Exhibit 1 annexed to **Exhibit A**, (ii) honor certain prepetition
obligations related thereto, (iii) maintain existing Business Forms (as defined below) in the
ordinary course of business, and (iv) continue to perform Intercompany Transactions (as defined
below) consistent with historical practice, (b) granting administrative expense status to
postpetition Intercompany Balances (as defined below), and (c) granting related relief.  In addition,
the Debtors request that the Court (as defined below) schedule a final hearing within approximately
twenty-five days of the commencement of these chapter 11 cases to consider entry of the Final
Order.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York
(the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the
*Amended Standing Order of Reference from the United States District Court for the Southern
District of New York*, dated February 1, 2012.  The Debtors confirm their consent, pursuant to rule
7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the Court

---

[2]    A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors'
chapter 11 cases, are set forth in greater detail in the *Declaration of Mohsin Y. Meghji, Chief Restructuring Officer
of Barneys New York, Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day
Declaration"), filed contemporaneously herewith.  Capitalized terms used but not otherwise defined in this motion
shall have the meanings ascribed to them in the First Day Declaration.

entering a final order in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105, 345, 363, 364, and 503 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

### Background

5.      The Debtors are a world-renowned luxury specialty retailer with twenty-two stores across the United States, including flagships in New York City and Beverly Hills, and a highly curated, shopper-friendly e-commerce platform.  Founded as a men's retailer in 1923 in downtown Manhattan, the Debtors sell the most intriguing fashion offering from the world's top designers, including women's and men's clothing, accessories, shoes, jewelry, cosmetics, fragrances, and gifts for the home.  The Debtors remain headquartered in New York, New York and lease all of their store locations.  The Debtors reported revenues of approximately $800 million for 2018.  As of the date hereof (the "Petition Date"), the Debtors have approximately 2,300 employees and funded debt obligations of approximately $200 million.

6.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrent with the filing of this motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule

1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

**Cash Management System**

I.    **Overview.**

7.        In the ordinary course of business, the Debtors maintain a cash management system (the "Cash Management System") comprised of thirty-two bank accounts (the "Bank Accounts"). An illustration of the Cash Management System is set forth on **Exhibit 1** annexed to **Exhibit A**. The Cash Management System is centralized around a master collection and disbursement account (ending in 7159) (the "Master Collection Account") and a master concentration account (ending in 7167) (the "Master Concentration Account"), both held at Wells Fargo Bank, N.A. ("Wells Fargo") and maintained by Debtor Barney's, Inc. ("Barneys").[3]  In total, the Debtors maintain thirty-one bank accounts at Wells Fargo and one bank account at Bank of Hawaii Corp. ("Bank of Hawaii," and together with Wells Fargo, the "Cash Management Banks"), which holds funds for the Waikele Barneys store (the "Waikele Store Depository Account").[4]  The Bank Accounts are listed on **Exhibit 2** annexed to **Exhibit A**.

---

[3]    The Master Concentration Account, Master Funding Account, Operational Concentration Account, and the Depository Accounts (each as defined herein) are subject to deposit account control agreements (each, a "DACA") by and among Barneys New York, Inc. and Wells Fargo, as the ABL Agent (as defined herein).

[4]    While the Cash Management System consists of thirty-two bank accounts as of the Petition Date, the Debtors may, in the ordinary course, close existing accounts or open new accounts.

8.      The following chart summarizes the Bank Accounts.[5]

| Account | Account Description |
|---|---|
| **Master Concentration Account**<br><br>(7167) | The Master Concentration Account is funded by interim draws on the ABL Facility.  Prior to the Debtors entering cash dominion as described below, this account was also funded by the Waikele Store Depository Account and the Master Collection Account.  Funds from the Master Concentration Account are transferred to the Disbursement Accounts on an ad hoc basis to fund operations. |
| **Master Collection Account**<br><br>(7159) | The Master Collection Account is funded by the Depository Accounts, in addition to revenue from eCommerce and credit card sales.  Funds from these accounts are swept daily to pay down the ABL Facility.  Prior to the Debtors entering cash dominion, cash deposits in the Master Collection Account were swept daily into the Master Concentration Account.  Due to the Debtors entering cash dominion, the Master Collection Account is also funded by the Waikele Store Depository, as requested by the ABL Agent.  The Master Collection Account maintains a zero balance. |
| **Disbursement Accounts**<br><br>(2166), (2151) (7209),<br><br>(7183), (8604) | Prior to the Debtors entering cash dominion, the Disbursement Accounts were historically funded through zero balances transfers from the Master Concentration Account.  These accounts disburse funds to satisfy operating expenses, including merchandise purchasing and capital expenditures, sales tax obligations, payroll, and to fund operations of Debtor BNY Catering Inc., as applicable. |
| **Depository Accounts**<br><br>(7841), (6849)<br><br>(5232) | The accounts ending in 7841 and 6849 are funded through proceeds from the Store Depository Accounts.  Funds held in the Depository Accounts are transferred daily to the Master Collection Account.  The Depository accounts maintain a zero balance.<br><br>The account ending in 5232 is funded through proceeds from the Debtors' flagship store on Madison Avenue in New York City. |
| **Store Depository Accounts**<br><br>(5704), (1337), (0345), (1303), (9529), (1378), 7962), (1386), (8276), (1352), (1295), (4490), (2639), (1345), (1329), (1698), (5571), (1311), (2621), (1360)<br><br>(9906) | The Store Depository Accounts are funded by in-store purchases.  The funds in these accounts are swept daily into the Depository Accounts, with funds of certain Store Depository Accounts being swept into account ending in 7841, and the remaining portion of Store Depository Accounts being swept into account ending in 6849.<br><br>The Waikele Store Depository Account is funded by in-store purchases at the Debtors' Hawaii warehouse.  The funds in this account are swept daily into the Master Collection Account. |
| **Inactive Accounts**<br><br>(5922) | There is no activity in this account. |

---

[5]     Capitalized terms used but not defined in the chart have the meaning ascribed to them elsewhere in this motion.

| Account | Account Description |
|---|---|
| **Charitable Donation Account**<br>(2491) | The account ending in 2491 is a charitable donation account held by non-Debtor entity Barneys New York Foundation, which the Debtors donate to in connection with their charitable programs.[6] This Bank Account does not sweep into the Cash Management System. |

9.      The Debtors' financial personnel manage the Cash Management System from the Debtors' principal executive office located in New York, New York.  The Cash Management System serves as a conduit for revenue obtained from brick-and-mortar and online retail operations to be distributed to vendors and employees and to cover other operational expenses.  All Bank Accounts are held by Barney's, Inc., the Debtors' primary operating entity, except for Disbursement Account ending in 8604, which is held by Debtor BNY Catering Inc., and the account ending in 2491 (the "Charitable Donation Account"), which is held by non-Debtor Barneys New York Foundation.[7]  Cash from each Disbursement Account, except for the Charitable Donation Account, is used to the meet the financial obligations of the Debtors.  The Debtors have designed the Cash Management System to meet their operating needs, enable management to control and monitor corporate funds by creating status reports on the location and amount of funds, ensure cash availability and liquidity, comply with the requirements of their financing agreements, reduce administrative expenses by facilitating the movement of funds, and enhance the development of accurate account balances.

10.      Additionally, with the assistance of their advisors, the Debtors have implemented internal control procedures that prohibit payments on account of prepetition debts without the prior

---

[6]   The Debtors' charitable programs are described in the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to Maintain and Administer Their Existing Customer Programs and Honor Certain Prepetition Obligations Related Thereto and (II) Granting Related Relief*, filed contemporaneously herewith.

[7]   This account is not owned by the Debtors, and, therefore, is not property of the Debtors' estates.  Accordingly, the Debtors respectfully submit that court authorization is not necessary for the continued maintenance of the Charitable Donation Account.

approval of the Debtors' finance department. These controls are crucial given the significant volume of cash transactions managed through the Cash Management System on a daily basis. The diagram annexed as **Exhibit 1** to **Exhibit A** attached hereto summarizes the structure of the Cash Management System and each of the Bank Accounts.

11.     As of the Petition Date, the Debtors have minimal cash on hand and approximately $7.3 million in reserves, with no availability under their asset-based revolving credit facility (the "ABL Facility") for which Wells Fargo serves as the administrative agent (in such capacity, the "ABL Agent"). Substantially all of the cash held in the Bank Accounts is subject to a lien in favor of the ABL Agent. As of mid-July 2019, the Debtors entered cash dominion with Wells Fargo under the terms of the ABL Facility.

**II.     The Cash Management System.**

12.     The Debtors propose to continue using the Bank Accounts, described above and hereinafter and listed on **Exhibit 2** annexed to **Exhibit A**, after the Petition Date, subject to their right to close certain accounts and open new accounts in their discretion in accordance with the terms of the ABL Facility.

13.     ***The Master Concentration Account.*** The Debtors disburse amounts based on draws from the ABL Facility (subject to availability) to the Master Concentration Account for further disbursement to vendors and employees and to satisfy other obligations. Prior to the Debtors entering cash dominion, this account was also funded by the Waikele Store Depository Account and the Master Collection Account. Amounts from the Master Concentration Account flow to accounts used to satisfy operating expenses, including merchandise vendors (account no. 2166) and capital expenditures, excluding merchandising payments, (account no. 2151) through two zero balance accounts.

14.    *The Master Collection Account.*  The Master Collection Account is funded by revenue from retail operations, including in the form of branch deposits (account nos. 6849, 7841, and 5232).  Due to the Debtors entering cash dominion, the Master Collection Account is now also funded by the Waikele Store Depository, as requested by the ABL Agent.  Revenue from third-party credit card transactions and eCommerce transactions are also collected in the Master Collection Account.

15.    *The Depository Accounts.*  The Debtors hold three depository accounts ending in 7841, 5232, and 6849 funded by the Master Collection Account (the "Depository Accounts").  Funds from the Store Depository Accounts flow to accounts ending in 7841 and 6849.  Revenue from retail operations at the Debtors' flagship store located on Madison Avenue in New York City (the "Madison Avenue Depository") fund the Depository Account ending in 5232.

16.    *The Store Depository Accounts.*  Revenue from brick-and-mortar retail operations, other than those that are collected in the Madison Avenue Depository, is collected into individual store depository accounts (the "Store Depository Accounts").  Funds from these accounts flow between either Depository Account ending in 7841 or Depository Account ending in 6849, as applicable.

17.    *The Disbursement Accounts.*  The Debtors maintain five accounts that fund daily operations, including accounts payable, payroll, and employee obligations, among others (the "Disbursement Accounts").  Prior to the Debtors entering cash dominion, the Disbursement Accounts were historically funded through zero balances transfers from the Master Concentration Account to accounts used to satisfy merchandise vendors (ending in 2166) and capital expenditures, excluding merchandising payments (ending in 2151) through two zero balance accounts to make payments as necessary.  The Debtors also maintain three Disbursement Accounts

that are funded by the Master Collection Account on an as-needed basis which disburse funds to satisfy sales tax obligations (ending in 7209), payroll obligations (ending in 7183), and fund operations of Debtor BNY Catering Inc. (ending in 8604), as applicable.[8]

18.     The Cash Management System is similar to the centralized cash management systems used by other comparably sized companies to manage cash flow.  The Debtors use their Cash Management System in the ordinary course to transfer and distribute funds and to facilitate cash monitoring, forecasting, and reporting.  The Debtors' treasury department maintains daily oversight over the Cash Management System and implements cash management controls for entering, processing, and releasing funds.  Additionally, the Debtors' corporate accounting, treasury, and internal audit departments regularly reconcile the Debtors' books and records to ensure that all transfers are accounted for properly.

19.     The Cash Management System facilitates the timely and efficient collection, management, and disbursement of funds.  Because of the nature of the Debtors' business and the disruption that would result if the Debtors were forced to close their existing Bank Accounts, it is critical that the existing Cash Management System remain in place.

## III.    Compliance with U.S. Trustee Guidelines.

20.     The United States Trustee for the Southern District of New York's (the "U.S. Trustee") *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Operating Guidelines") generally require chapter 11 debtors to, among other things, deposit all estate funds in an account with an authorized depository that agrees to comply with the U.S. Trustee's requirements.  Section 345(b) of the Bankruptcy Code requires

---

[8]    As described above, non-Debtor Barneys New York Foundation, a 501(c)(3) nonprofit, also maintains an independent disbursement account (ending in 2491) to collect and disburse charitable donations.

that a debtor's bank post a bond unless a debtor's funds are "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States."

21.     The Bank Accounts comply with the requirements of section 345(b) of the Bankruptcy Code.  All of the Debtors' active Bank Accounts are maintained at banks that have executed a Uniform Depository Agreement ("UDA") with, and are designated as authorized depositories by, the U.S. Trustee, pursuant to the U.S. Trustee Operating Guidelines.[9]  Likewise, all of the Bank Accounts are insured by the Federal Deposit Insurance Corporation ("FDIC"), and the Bank Account at the Bank of Hawaii holds a daily balance that does not exceed the applicable FDIC-insured amount and the Bank Account is swept daily.  Thus, the Debtors believe that any funds that are deposited in these Bank Accounts are secure.

22.     The Debtors submit that, because (a) Wells Fargo and Bank of Hawaii have been authorized by the U.S. Trustee, (b) the Debtors do not have any investment accounts, and (c) the Bank Account at Bank of Hawaii is FDIC-insured and the Bank Account never holds a balance in excess of the amount insured by the FDIC, the Debtors are in compliance with section 345(b) of the Bankruptcy Code and substantially in compliance with the U.S. Trustee Operating Guidelines. Requiring the Debtors to close the Bank Account at Bank of Hawaii and reopen it at a designated authorized depository would place an unnecessary administrative burden on the Debtors given there is no meaningful risk to the cash that passes through.  Additionally, the balance in the Bank of Hawaii Bank Account transfers daily to the Master Concentration Account.  Therefore, the

---

[9]     Wells Fargo is an authorized depository in the Southern District of New York, and the Bank of Hawaii is an authorized depository in the District of Hawaii.

Debtors respectfully submit that cause exists to continue to allow the Debtors to utilize their existing Bank Accounts.

23.    In the event that the Bank Accounts cease to comply with the requirements of section 345(b) of the Bankruptcy Code during the chapter 11 cases, the Debtors request that the Court either provide the Debtors with forty-five days to bring the Bank Accounts into compliance with section 345(b) of the Bankruptcy Code or to seek appropriate relief from the Court.

**IV.    Intercompany Transactions.**

24.    In the ordinary course of business, the Debtors occasionally engage in business relationships with each other (collectively, the "Intercompany Transactions") resulting in intercompany receivables and payables (the "Intercompany Balances").[10]    Although the vast majority of the Debtors' operations occur at Debtor Barney's, Inc., at any given time there may be Intercompany Balances owing between the Debtors.

25.    For example, Barney's, Inc. receives royalties related to trademark licensing arrangements related to the use of its trademark in Japan in the ordinary course of business.  These royalties are recorded as receivables on the balance sheet of BNY Licensing Corp., licensor under the applicable agreement, on an annual basis for tax purposes.  The Debtors have historically reflected Intercompany Balances as journal entry receivables and payables, as applicable, in the respective Debtor's accounting system.  The Debtors closely track all fund transfers in their

---

[10]    This motion provides an illustrative overview of the Debtors' typical Intercompany Transactions.  The relief requested herein is applicable with respect to all Intercompany Transactions and is not limited to those Intercompany Transactions specifically described in this motion.  To the extent that there are any outstanding prepetition transactions related to Intercompany Transactions not described in this motion, the Debtors, out of an abundance of caution, seek authority to continue such transactions.  For the avoidance of doubt, the relief requested in this motion with respect to the postpetition Intercompany Transactions and the Intercompany Balances resulting therefrom does not constitute an admission of the Debtors or any other party as to the validity, priority, or status of any prepetition Intercompany Balance or any Intercompany Transaction from which such Intercompany Balance may have arisen.

respective accounting system and, therefore, can ascertain, trace, and account for all Intercompany Transactions. The Debtors will continue to track postpetition Intercompany Transactions in the ordinary course of business.

26.    Any interruption of the Intercompany Transactions would disrupt the Debtors' operations and result in great harm to the Debtors' estates and their stakeholders. Accordingly, the Debtors seek the authority to continue the Intercompany Transactions in the ordinary course of business, in a manner consistent with prepetition practice.

**V.    Bank Fees.**

27.    In the ordinary course of business, the Debtors incur periodic service charges and other fees in connection with maintaining the Cash Management System (collectively, the "Bank Fees"). The Debtors incur approximately $15,000 per month on account of the Bank Fees under the Cash Management System in the aggregate. As of the Petition Date, the Debtors estimate that they owe approximately $7,000 on account of unpaid Bank Fees, the entirety of which is expected to become due and payable within twenty-one days of the Petition Date. The Debtors seek authority to continue paying the Bank Fees in the ordinary course on a postpetition basis, consistent with historical practices.

**VI.    Purchase Cards.**

28.    As part of the Cash Management System, the Debtors provide certain employees with access to purchase cards (collectively, the "Purchase Cards") issued by Wells Fargo (the "Purchase Card Program"). The Purchase Cards are used for approved business expenses and supplies incurred by employees on behalf of the Debtors in the ordinary course of business. Costs incurred through use of the Purchase Cards, in turn, are paid on a monthly basis. The Purchase Card obligations are secured under the ABL Facility and subject to payment priority as set forth in the credit agreement governing the ABL Facility. The Debtors seek authority to utilize the

Purchase Cards up to a maximum amount of $200,000, including all fees and charges incurred thereunder, and to pay any amounts due and owing thereunder in the ordinary course on a postpetition basis consistent with historical practices.

**VII.    Business Forms.**

29.    The Debtors use certain, limited preprinted correspondence and business forms, such as letterhead (collectively, the "Business Forms"), in the ordinary course of their businesses. Notably, the Business Forms do not include preprinted checks or invoices, as the Debtors print such forms as needed.  The Debtors also maintain books and records to document, among other things, their profits and expenses.  To minimize unnecessary additional expenses to their estates, the Debtors request that the Bankruptcy Court authorize their continued use of their Business Forms to the limited extent they are preprinted, all as such forms were in existence immediately before the Petition Date, without reference to the Debtors' status as debtors in possession, rather than requiring the Debtors to incur the unnecessary expense, nuisance, and delay of ordering entirely new forms as required under the U.S. Trustee Operating Guidelines.  Once the Debtors have exhausted their existing stock of Business Forms, they will ensure that any new Business Forms are clearly labeled "Debtor In Possession" and with respect to any Business Forms that exist or are generated electronically, to the extent reasonably practicable, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtor In Possession."

**Basis for Relief**

**I.    The Court Should Approve the Debtors' Continued Use of the Cash Management System as Essential to the Debtors' Operations and Restructuring Efforts.**

30.    The U.S. Trustee Operating Guidelines require debtors in possession to, among other things: (a) close all existing bank accounts and open new debtor in possession bank accounts; (b) establish one debtor in possession account for all estate monies required for payment of taxes

including payroll taxes; (c) physically set aside all monies required by law to be withheld from employees or collected from others for taxes; (d) open a new set of books and records as of the commencement date of the case; (e) use new business forms indicating the debtor in possession status of the chapter 11 debtor; and (f) make all disbursements of estate funds by check with a notation representing the reason for the disbursement. *See* Region 2 Guidelines for Debtors-in-Possession. These requirements are intended to provide a clear line of demarcation between prepetition and postpetition transactions and operations and to prevent inadvertent payment of prepetition claims.

31.     The continuation of the Cash Management System is nevertheless permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor in possession to "use property of the estate in the ordinary course without notice or a hearing." Section 363(c)(1) of the Bankruptcy Code also allows a debtor in possession to engage in ordinary course transactions required to operate its business without additional oversight from its creditors or the Court. *See, e.g.*, *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997) ("Section 363(c)(1) of the Bankruptcy Code authorizes a debtor-in-possession to enter into transactions involving property of the estate within the ordinary course of business without notice or a hearing."); *In re Enron Corp.*, Case No. 01-16034 (AJG), 2003 WL 1562202, at *15 (Bankr. S.D.N.Y. Mar. 21, 2003) (stating same). Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system. *In re Frigitemp Corp.*, 34 B.R. 1000, 1010 (S.D.N.Y. 1983), *aff'd*, 753 F.2d 230 (2d Cir. 1985); *see also Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996).

14

32.     Here, requiring the Debtors to adopt a new, segmented cash management system during these chapter 11 cases would be expensive, burdensome, and unnecessarily disruptive to the Debtors' operations.  Importantly, the Cash Management System provides the Debtors with the ability to ensure cash availability to the enterprise and reduce administrative costs through a centralized method of coordinating the collection and movement of funds.  As a result, any disruption of the Cash Management System would have a severe and adverse effect on the Debtors' restructuring efforts.  Indeed, absent the relief requested herein, requiring the Debtors to adopt a new, segmented cash management system would cause the Debtors' operations to grind to a halt, needlessly destroying the value of the Debtors' business enterprise.  By contrast, maintaining the current Cash Management System will facilitate the Debtors' transition into chapter 11 by, among other things, minimizing delays in paying postpetition debts and eliminating administrative inefficiencies.[11]  Finally, maintaining the current Cash Management System will allow the Debtors' treasury and accounting employees to focus on their daily responsibilities.

33.     Parties in interest will not be harmed by the Debtors' maintenance of the Cash Management System, including maintenance of the Bank Accounts and the Intercompany Transactions.  The Debtors have implemented appropriate mechanisms to ensure that Debtor entities will not make unauthorized payments on account of prepetition obligations, and all Cash Management System activities will be made by cash that constitutes cash collateral, and professional fees of the Debtors and any committee of unsecured creditors appointed in these chapter 11 cases will be paid subject to court approval.  In light of such protective measures, and

---

[11]     Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors intend to calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity pays those disbursements.

consent of the relevant parties, the Debtors submit that maintaining the Cash Management System is in the best interests of their estates and creditors.

34.    The Debtors further request that the Court authorize the Cash Management Banks to receive, process, honor, and pay any and all checks, electronic fund transfer, credit card, ACH payments and other instructions, and drafts payable through, or drawn or directed on, such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, irrespective of whether such checks, drafts, electronic fund transfers, credit card, or ACH payments are dated prior or subsequent to the Petition Date.  The Debtors also respectfully request that, to the extent a Cash Management Bank honors a prepetition check or other item drawn on any account that is the subject of this motion, either at the direction of the Debtors or in a good-faith belief that the Court has authorized such prepetition check or item to be honored, such Cash Management Bank will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored postpetition.

35.    The relief requested is reasonable and appropriate because the Cash Management Banks are not in a position to independently verify or audit whether the Debtors may pay a particular item in accordance with a Court order or otherwise.  Considering the breadth of their operations, the Debtors need to conduct transactions by debit, electronic fund, ACH payments, and other similar methods.  If the Debtors are denied the opportunity to conduct transactions by debit, electronic fund, ACH payments, or other methods used in the ordinary course of business, the Debtors likely would have difficulty performing on their contracts, and the Debtors' business operations would be disrupted unnecessarily, burdening the Debtors and their creditors with additional costs.

36.     Finally, the Debtors respectfully request that the Court authorize the Debtors to continue to pay the Bank Fees, including any prepetition Bank Fees.  In light of the material benefit of maintaining the Cash Management System in order to avoid unnecessary disruption and costly delay, especially as compared to the relatively modest amount of the Bank Fees, the Debtors respectfully submit that such relief is warranted under the circumstances.

37.     Courts in this jurisdiction have regularly waived certain U.S. Trustee Guidelines and allowed the continued use of cash management systems and prepetition bank accounts employed in the ordinary course of a debtor's prepetition business.  *See, e.g.*, *In re Hollander Sleep Products, LLC*, Case No. 19-1608 (MEW) (Bankr. S.D.N.Y. July 2, 2019) (allowing debtors to continue using their cash management system); *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. 2019) (same); *In re FULLBEAUTY Brands Holdings Corp.*, Case No. 19-22185 (RDD) (Bankr. S.D.N.Y. Feb. 7, 2019) (same); *In re Aegean Marine Petrol. Network Inc.*, Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Nov. 9, 2018) (same); *In re Nine West Holdings, Inc*., Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. June 26, 2018) (same).[12]

## II.     Payment of Fees and Prepetition Obligations Related to the Bank Accounts Will Facilitate a Smooth Transition into Chapter 11 and Benefit the Estates.

38.     Courts in this jurisdiction generally acknowledge that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers); *see also In re CoServ, L.L.C.*,

---

[12]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these cited orders are available upon request to the Debtors' proposed counsel.

273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).   In so doing, these courts have found that sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

39.     Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so.  *See Ionosphere Clubs.*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); *see also James A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).  Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the pre-plan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497.

40.     Courts also may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses. *See In re C.A.F. Bindery, Inc*., 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) ("The 'doctrine of necessity' stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization."); *Ionosphere Clubs*, 98 B.R. at 176 (holding that a court may authorize payments of prepetition obligations under section 105(a) of the Bankruptcy Code pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity")).

41.   The Debtors' continued use of the Cash Management System will facilitate their transition into chapter 11 by, among other things, avoiding administrative inefficiencies and expenses and minimizing delays in the payment of postpetition debts.  Certain payments to their Cash Management Banks, such as the payment of prepetition Bank Fees will ensure the continued support of the Debtors' Cash Management Banks on a go-forward basis at this critical juncture of the Debtors' chapter 11 cases.  Continuation of such payments play a role in the efficient and effective operations of the Debtors' businesses, allowing the Debtors' employees to focus their efforts on the tasks that make a difference to the Debtors' ultimate performance and minimizing administrative tasks.  The Debtors believe that any interference or delay in any of these programs is unnecessary and unduly burdensome.

42.   Courts in this jurisdiction have regularly allowed the continued use of cash management systems, prepetition bank accounts, and prepetition credit card systems employed in the ordinary course of a debtor's prepetition business.  *See, e.g.*, *In re Hollander Sleep Products, LLC*, Case No. 19-1608 (MEW) (Bankr. S.D.N.Y. July 2, 2019) (allowing debtors to pay prepetition bank fees and continue using their prepetition cash management system); *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. 2019) (same); *In re FULLBEAUTY Brands Holdings Corp.*, Case No. 19-22185 (RDD) (Bankr. S.D.N.Y. Feb. 7, 2019) (same); *In re Aegean Marine Petrol. Network Inc.*, Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Nov. 9, 2018) (same); *In re Nine West Holdings, Inc*., Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. June 26, 2018) (same).

## III.   The Debtors Should Be Granted Authority to Use Existing Business Forms.

43.   To avoid disruption of the Cash Management System and unnecessary expense, the Debtors request that they be authorized to continue to use their Business Forms, substantially in the form existing immediately before the Petition Date, without reference to their status as debtors

in possession.  The Debtors submit that, given the limited nature of the preprinted Business Forms, parties in interest will not be prejudiced if the Debtors are authorized to continue to use their Business Forms substantially in the forms existing immediately before the Petition Date.  Parties doing business with the Debtors undoubtedly will be aware of their status as debtors in possession and, thus, changing forms such as letterhead would be an unnecessary additional expense and unduly burdensome.    Moreover, due to the international scope of the Debtors' vendor relationships, many of the parties doing business with the Debtors are foreign.  These parties may be unfamiliar with the chapter 11 process and therefore the modifications to the Business Forms will have limited, if any, meaning to these parties, particularly when weighed against the attendant costs of updating their Business Forms.  Once the Debtors have exhausted their existing stock of Business Forms, they will ensure that any new Business Forms are clearly labeled "Debtor In Possession" and with respect to any Business Forms that exist or are generated electronically, to the extent reasonably practicable, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtor In Possession."

44.    In other chapter 11 cases, courts in this district have allowed debtors to use their prepetition business forms without the "debtor in possession" label.  *See, e.g.*, *In re Hollander Sleep Products, LLC*, Case No. 19-1608 (MEW) (Bankr. S.D.N.Y. July 2, 2019) (authorizing use of existing business forms); *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. 2019) (same); *In re FULLBEAUTY Brands Holdings Corp.*, Case No. 19-22185 (RDD) (Bankr. S.D.N.Y. Feb. 7, 2019) (same); *In re Aegean Marine Petrol. Network Inc.*, Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Nov. 9, 2018) (same); *In re Nine West Holdings, Inc*., Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. June 26, 2018) (same).

IV.     **The Court Should Authorize the Debtors to Continue Engaging in Postpetition Intercompany Transactions.**

45.     Allowing the Debtors to engage in postpetition Intercompany Transactions is in the best interests of the Debtors' estates and their creditors, and the Debtors seek authority to enter into such postpetition Intercompany Transactions in the ordinary course of business.[13]  Postpetition Intercompany Transactions arising in the ordinary course are authorized as a matter of law pursuant to section 363(c)(1) of the Bankruptcy Code for which no additional relief is required.

46.     The relief requested herein fairly balances the Debtors' needs to facilitate the ordinary course operation of their business, minimize disruption, and preserve value, on the one hand, with the interests of their stakeholders in transparency, on the other hand.  As noted above, the Debtors request authority to continue postpetition Intercompany Transactions in the ordinary course (including with respect to "netting" or setoffs taken in the ordinary course).

47.     Additionally, the Debtors respectfully request that this Court order that all valid postpetition payments from a Debtor to another Debtor on account of a postpetition Intercompany Transaction shall be accorded administrative expense status.  As noted above, the Debtors believe such relief is necessary to ensure that a particular Debtor's estate will not be required to fund the operations of other Debtors without adequate recompense.

48.     Similar relief has been granted in other similarly situated chapter 11 cases in this jurisdiction.  *See, e.g.*, *In re Hollander Sleep Products, LLC*, Case No. 19-1608 (MEW) (Bankr. S.D.N.Y. July 2, 2019) (allowing intercompany transactions to continue); *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. 2019) (same); *In re FULLBEAUTY*

---

[13]     Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among similar enterprises, the Debtors believe the postpetition Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require the Court's approval.

*Brands Holdings Corp.*, Case No. 19-22185 (RDD) (Bankr. S.D.N.Y. Feb. 7, 2019) (same); *In re Aegean Marine Petrol. Network Inc.*, Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Nov. 9, 2018) (same); *In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. June 26, 2018) (same).

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

49.     The Debtors have sufficient funds to pay the amounts described in this motion by virtue of expected cash flows during these chapter 11 cases, debtor-in-possession financing, and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests relating to an authorized payment related to this motion.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

50.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, authorizing the Debtors to (a) continue to operate their Cash Management System; (b) honor certain prepetition obligations related thereto; (c) maintain existing Business Forms in the ordinary course of business; (d) continue to perform Intercompany Transactions consistent with historical practice; and (e) granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases and maintain the value of their estate postpetition.  Failure to receive such authorization and other relief during the first twenty-one days of these chapter 11 cases would severely disrupt the Debtors'

ability to maintain their estates at this critical juncture.  For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course, preserve the going concern value of the Debtors' operations, and maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## **Motion Practice**

51.     This motion includes citation to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this motion. Accordingly, the Debtors submit that this motion satisfies Local Rule 9013-1(a).

## **Reservation of Rights**

52.     Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not

intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

53.     To implement the foregoing successfully, the Debtors request that the Bankruptcy Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

54.     The Debtors will provide notice of this motion to:  (a) the United States Trustee for the Southern District of New York; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition ABL Agent; (d) counsel to the Term Loan Agent; (e) counsel to the DIP parties; (f) the United States Attorney's Office for the Southern District of New York; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for all states in which the Debtors conduct business; and (j) the Cash Management Banks; and (k) any party that requests service pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

55.     No prior request for the relief sought in this motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other relief as is just and proper.

Dated: August 6, 2019         */s/ Joshua A. Sussberg, P.C.*
New York, New York           Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

Chad J. Husnick, P.C.
W. Benjamin Winger (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

-and-

Steven J. Reisman
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, New York 10022
Telephone:    (212) 940-8800
Facsimile:    (212) 940-8776

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

# **EXHIBIT A**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO**
**(A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT**
**SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS**
**RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS,**
**AND (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS,**
**(II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION**
**INTERCOMPANY BALANCES, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order") (a) authorizing the Debtors to (i) continue to operate their Cash Management System, (ii) honor certain prepetition obligations related thereto, (iii) maintain existing Business Forms in the ordinary course of business, and (iv) continue to perform Intercompany Transactions consistent with historical practice, (b) granting administrative expense status to postpetition Intercompany Balances, (c) scheduling a final hearing to consider approval of the Motion on a final basis, and (d) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

[2]    Capitalized terms used but not defined herein have the meanings given to such terms in the Motion.

*District of New York*, dated February 1, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2019, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2019, and shall be served on:  (a) Barneys New York, Inc., 575 Fifth Avenue, New York, New York 10017; Attn: Grace Fu; (b) proposed co-counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn:  Edward O. Sassower, P.C., Joshua A. Sussberg, P.C., and Gene Goldmintz, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Chad J. Husnick, P.C. and W. Benjamin Winger, and Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, New York 10022, Attn: Steven J. Reisman; (c) the United States Trustee, 11A Clinton Avenue, Room 620, Albany, New York

12207, Attn: Alicia Leonhard; (d) counsel to any statutory committee appointed in these chapter 11 cases; (e) counsel to the Prepetition ABL Agent, (x) Riemer & Braunstein LLP, 100 Cambridge Street, Boston, Massachusetts 02114, Attn: Donald E. Rothman and (y) Riemer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, New York 10036, Attn: Steven E. Fox; (f) counsel to the Term Loan Agent, Choate Hall & Stewart LLP, Two International Place, Boston, Massachusetts 02110, Attn: Kevin J. Simard and Mark Silva; and (g) counsel to the DIP parties, Paul Hastings LLP, 71 South Wacker Drive, Chicago, Illinois, 60606, Attn: Chris Dickerson and Holly Snow.  In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3.      The Debtors are authorized, but not directed, to:  (a) continue operating the Cash Management System, substantially as identified on **Exhibit 1** attached hereto and as described in the Motion; (b) honor their prepetition obligations related thereto; (c) continue to use the Purchase Cards; (d) maintain certain, limited preprinted correspondence and business forms, such as letterhead (collectively, the "Business Forms"); and (e) continue to perform Intercompany Transactions consistent with historical practice.

4.      The Debtors are further authorized, but not directed, to:  (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit 2** attached hereto; (b) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (c) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; (d) pay the Bank Fees (including any prepetition amounts); and (e) pay any ordinary course Bank Fees incurred in connection with the Bank Accounts, irrespective of whether such fees arose prior to the Petition Date, and to otherwise perform their obligations under the documents governing the

Bank Accounts.  Any postpetition fees, costs, charges and expenses, including Bank Fees, or charge-backs payable to the Cash Management Banks that are not so paid shall be entitled to priority as administrative expenses pursuant to section 503(b)(1) of the Bankruptcy Code.

5.      The Debtors are authorized, but not directed, to continue using the Purchase Cards up to a maximum amount of $200,000, including all fees and charges incurred thereunder, and to pay all amounts owed thereunder in the ordinary course.  Any postpetition fees, costs, charges and expenses payable incidental to the maintenance and use of the Purchase Cards that are not so paid shall be entitled to priority as administrative expenses pursuant to section 503(b)(1) of the Bankruptcy Code.

6.      The Debtors are authorized, but not directed, to continue using, in their present form, the Business Forms, as well as checks, invoices, and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession; *provided, however*, once the Debtors have exhausted their existing stock of Business Forms, the Debtors shall ensure that any new Business Forms are clearly labeled "Debtor In Possession," and *provided further* that with respect to any Business Forms, checks, and invoices that are generated electronically, to the extent reasonably practicable, the Debtors shall ensure that such electronic Business Forms, checks, and invoices are clearly labeled "Debtor in Possession."

7.      The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the

case may be; *provided* that (a) those certain existing deposit agreements between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the respective Cash Management Bank, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions and any provisions relating to offset or charge back rights with respect to returned items, shall remain in full force and effect, and (b) subject to the terms of the ABL Facility, the Debtors and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures related thereto in the ordinary course of business pursuant to terms of those certain existing deposit agreements, including, without limitation, the closing of Bank Accounts or the opening of new bank accounts in an authorized depository.

8.      The relief granted in this Interim Order is extended to any new bank account opened by the Debtors after the date hereof in accordance with the terms of the ABL Facility, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Cash Management Bank.

9.      All banks, including the Cash Management Banks, provided with notice of this Interim Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts, or otherwise issued before the Petition Date, absent further direction from the Debtors.

10.     The Debtors will maintain records in the ordinary course reflecting transfers of cash, if any, so as to permit all such transactions to be ascertainable.

11.     In the course of providing cash management services to the Debtors, each of the Cash Management Banks is authorized, without further order of this Court, to deduct the applicable

fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising prepetition or postpetition, from the appropriate accounts of the Debtors, and further, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from wire transfers, ACH transactions, or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

12.    Each of the Cash Management Banks is authorized to debit the Debtors' accounts in the ordinary course and without further order of this Court on account of (a) all checks drawn on the Debtors' accounts that have been cashed at such banks' counters or exchanged for cashier's or official checks by the payees thereof prior to such Cash Management Bank's receipt of notice of the Petition Date; (b) all checks, automated clearing house entries, or other items deposited in, or credited to, one of the Debtors' accounts with such bank prior to the Petition Date which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any bank as to service charges for the maintenance of the Cash Management System, in an amount not to exceed $7,000.

13.    Any bank, including a Cash Management Bank, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors, whether prior to the Petition Date or after the Petition Date, should be honored pursuant to any order of this Court.  No bank that honors a check, draft, wire, or other transfer drawn or issued on any account that is the subject of this Interim Order (a) at the direction of the

Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite implementation of customary item handling procedures, shall be deemed to be liable nor have any liability to the Debtors, their estates, or any other party on account of such check, draft, wire, or other item being honored, or otherwise deemed to be in violation of this Interim Order.

14.    Any and all banks, including the Cash Management Banks, are further authorized to (a) honor the Debtors' directions with respect to the opening and closing of any Bank Account and (b) accept and hold the Debtors' funds in accordance with the Debtors' instructions; *provided*, that the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

15.    Nothing contained herein shall permit any Cash Management Bank to terminate any cash management services without thirty days' prior written notice to the Debtors, U.S. Trustee, and any official committee appointed in these chapter 11 cases.

16.    The Debtors are authorized to open new bank accounts or close any existing Bank Accounts as they may deem necessary and appropriate in their sole discretion, *provided* that (a) prior to opening any new bank accounts the Debtors shall give notice five days advance notice (if practicable) to the U.S. Trustee and any statutory committees appointed in these chapter 11 cases and (b) any new bank account shall be at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee, or at such bank that is willing to immediately execute such an agreement.

17.    The requirement to establish separate accounts for cash collateral and/or tax payments is hereby waived.

7

18.    Should the Debtors not be in compliance with section 345(b) of the Bankruptcy Code, the Debtors shall have an additional forty-five days, without prejudice to seeking an additional extension, from the entry of this Interim Order to either come into compliance with section 345(b) of the Bankruptcy Code or to seek appropriate relief from the Court.

19.    Notwithstanding anything to the contrary set forth herein, the Debtors are authorized, but not directed, to continue Intercompany Transactions arising from or related to the operation of their business in the ordinary course.  All postpetition payments from a Debtor to another Debtor under any postpetition Intercompany Transactions authorized hereunder are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code.  In connection with the Intercompany Transactions, the Debtors shall continue to maintain current records with respect to all transfers of cash so that all Intercompany Transactions may be readily ascertained, traced, and properly recorded on intercompany accounts; *provided* that such records shall distinguish between prepetition and postpetition transactions.

20.    The relief granted in this Interim Order with respect to the postpetition Intercompany Transactions and the Intercompany Balances resulting therefrom shall not constitute a finding as to the validity, priority, or status of any prepetition Intercompany Balance or any Intercompany Transactions from which such Intercompany Balance may have arisen, the Debtors stipulate that they do not take a position with regard to the validity, priority, or status of any prepetition Intercompany Balance or any Intercompany Transactions from which such Intercompany Balance may have arisen, and the right of any party to contest the validity, priority, or status of any prepetition Intercompany Balance or any Intercompany Transactions from which such Intercompany Balance may have arisen is expressly reserved.

21.     Nothing contained in the Motion or this Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

22.     Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity pays those disbursements.

23.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Interim Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens.  Any payment made pursuant to this Interim Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

9

24.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order or any other order of this Court, without any duty of further inquiry and without liability for following the Debtors' instructions.

25.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Bank Fees.

26.     As soon as practicable after entry of this Interim order, the debtors shall serve a copy of this Interim Order on the Cash Management Banks.

27.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

28.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

29.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

30.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

31.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Dated: _____, 2019
Poughkeepsie, New York                   _____
                                         THE HONORABLE CECELIA G. MORRIS
                                         UNITED STATES BANKRUPTCY JUDGE

**<u>Schedule 1</u>**

**Cash Management System Schematic**



**Wells Fargo ABL**

**Master Collection Account (7159)**

**Master Concentration Account (7167)**

Merchandise Account (2166)

Exp. Pay & Cap. Account (2151)

Sales Tax Account (7209)

Payroll Account (7183)

BNY Catering Inc. (8604)

Barneys New York Foundation, Inc.[1] (2491)

Depository Account (7841)

Madison Avenue Depository (5232)

Depository Account (6849)

Waikele Store Depository (9906)

Downtown Store Depository (5704)

Seattle Store Depository (1337)

The Grove Store Depository (0345)

Chicago Store Depository (1303)

Carlsbad Store Depository (9529)

Beverly Hills Store Depository (1295)

Camarillo Store Depository (4490)

Cabazon Store Depository (2639)

Philadelphia Store Depository (1345)

San Francisco Store Depository (1329)

Riverhead Store Depository (1378)

Livermore Store Depository (7962)

Sawgrass Store Depository (1386)

Rosemont Store Depository (8276)

Brooklyn Store Depository (1352)

Santa Monica Store Depository (1698)

Glendale Store Depository (5571)

Copley Store Depository (1311)

Las Vegas Store Depository (2621)

Woodbury Store Depository (1360)

**Inactive Account**

Barney's, Inc. Account (5922)

**Key**

Charitable Donation Account

Concentration Account

Store Depository Account

Disbursement Account

Collection Account

Depository Account

- - - → Flow of funds

Automated Bank Zero Balance Account Transfer (ZBA)

1 This account is not held by the Debtors, and, therefore, is not property of the Debtors' estates.

2 The flow of funds diagrammed here reflects certain transfer requests made by the ABL Agent upon the Debtors entering cash dominion under the ABL Facility, as more fully described in the motion.

## **Schedule 2**

**Bank Accounts**

| Last Four Digits of Account No. | Bank[1] | Account Type |
|---|---|---|
| **Concentration Accounts** | | |
| 7167 | Wells Fargo Bank | Master Concentration Account |
| **Collection Accounts** | | |
| 7159 | Wells Fargo Bank | Master Collection Account |
| **Depository Accounts** | | |
| 7841 | Wells Fargo Bank | Depository Account |
| 6849 | Wells Fargo Bank | Depository Account |
| 5232 | Wells Fargo Bank | Madison Avenue Depository Account |
| **Store Depository Accounts** | | |
| 1295 | Wells Fargo Bank | Beverly Hills Store Depository Account |
| 1311 | Wells Fargo Bank | Copley Store Depository Account |
| 2621 | Wells Fargo Bank | Las Vegas Store Depository Account |
| 1329 | Wells Fargo Bank | San Francisco Store Depository Account |
| 5571 | Wells Fargo Bank | Glendale Store Depository Account |
| 1345 | Wells Fargo Bank | Philadelphia Store Depository Account |
| 1698 | Wells Fargo Bank | Santa Monica Store Depository Account |
| 1360 | Wells Fargo Bank | Woodbury Store Depository Account |
| 2639 | Wells Fargo Bank | Cabazon Store Depository Account |
| 4490 | Wells Fargo Bank | Camarillo Store Depository Account |
| 5704 | Wells Fargo Bank | Downtown Store Depository Account |
| 1303 | Wells Fargo Bank | Chicago Store Depository Account |
| 1337 | Wells Fargo Bank | Seattle Store Depository Account |
| 0345 | Wells Fargo Bank | The Grove Store Depository Account |
| 1352 | Wells Fargo Bank | Brooklyn Store Depository Account |
| 1378 | Wells Fargo Bank | Riverhead Store Depository Account |
| 9529 | Wells Fargo Bank | Carlsbad Store Depository Account |
| 1386 | Wells Fargo Bank | Sawgrass Store Depository Account |
| 7962 | Wells Fargo Bank | Livermore Store Depository Account |

---

[1]    Wells Fargo is an authorized depository in the Southern District of New York, and the Bank of Hawaii is an authorized depository in the District of Hawaii.  The amounts in the Bank of Hawaii account are fully insured and under the FDIC limit, and the account is swept daily.

| Last Four Digits of Account No. | Bank[1] | Account Type |
|---|---|---|
| 8276 | Wells Fargo Bank | Rosemont Store Depository Account |
| 9906 | Bank of Hawaii | Waikele Store Depository Account |
| **Disbursement Accounts** | | |
| 2166 | Wells Fargo Bank | Merchandise Account |
| 2151 | Wells Fargo Bank | Expense Pay and Capitals Account |
| 7209 | Wells Fargo Bank | Sales Tax Account |
| 7183 | Wells Fargo Bank | Payroll Account |
| 2491 | Wells Fargo Bank | Barneys New York Foundation |
| 8604 | Wells Fargo Bank | BNY Catering Inc. Disbursement Account |
| **Inactive Accounts** | | |
| 5922 | Wells Fargo Bank | Electronic Payables Account |
| **Charitable Donation Account** | | |
| 2491 | Wells Fargo Bank | Non-Debtor Barneys New York Foundation account |

**Exhibit B**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) Case No. 19-36300 (CGM) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY BALANCES, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order") (a) authorizing the Debtors to (i) continue to operate their Cash Management System, (ii) honor certain prepetition obligations related thereto, (iii) maintain existing Business Forms in the ordinary course of business, and (iv) continue to perform Intercompany Transactions consistent with historical practice, (b) granting administrative expense status to postpetition Intercompany Balances, and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012; and this Court having found that this is a

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order

consistent with Article III of the United States Constitution; and this Court having found that venue

of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

and this Court having found that the relief requested in the Motion is in the best interests of the

Debtors' estates, their creditors, and other parties in interest; and this Court having found that the

Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and

no other notice need be provided; and this Court having reviewed the Motion and having heard the

statements in support of the relief requested therein at a hearing before this Court (the "Hearing");

and this Court having determined that the legal and factual bases set forth in the Motion and at the

Hearing establish just cause for the relief granted herein; and upon all of the proceedings had

before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY

ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, to:  (a) continue operating the Cash

Management System, substantially as identified on **Exhibit 1** attached hereto and as described in

the Motion; (b) honor their prepetition obligations related thereto; (c) continue to use the Purchase

Cards; (d) maintain certain, limited preprinted correspondence and business forms, such as

letterhead (collectively, the "Business Forms"); and (e) continue to perform Intercompany

Transactions consistent with historical practice.

3.      The Debtors are further authorized, but not directed, to:  (a) continue to use, with

the same account numbers, the Bank Accounts in existence as of the Petition Date, including those

accounts identified on **Exhibit 2** attached hereto; (b) treat the Bank Accounts for all purposes as

accounts of the Debtors as debtors in possession; (c) deposit funds in and withdraw funds from the

Bank Accounts by all usual means, including checks, wire transfers, and other debits; (d) pay the Bank Fees (including any prepetition amounts); and (e) pay any ordinary course Bank Fees incurred in connection with the Bank Accounts, irrespective of whether such fees arose prior to the Petition Date, and to otherwise perform their obligations under the documents governing the Bank Accounts. Any postpetition fees, costs, charges and expenses, including Bank Fees, or charge-backs payable to the Cash Management Banks that are not so paid shall be entitled to priority as administrative expenses pursuant to section 503(b)(1) of the Bankruptcy Code.

4.    The Debtors are authorized, but not directed, to continue using the Purchase Cards up to a maximum amount of $200,000, including all fees and charges incurred thereunder, and to pay all amounts owed thereunder in the ordinary course. Any postpetition fees, costs, charges and expenses payable incidental to the maintenance and use of the Purchase Cards that are not so paid shall be entitled to priority as administrative expenses pursuant to section 503(b)(1) of the Bankruptcy Code.

5.    The Debtors are authorized, but not directed, to continue using, in their present form, the Business Forms, as well as checks, invoices, and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession; *provided, however*, once the Debtors have exhausted their existing stock of Business Forms, the Debtors shall ensure that any new Business Forms are clearly labeled "Debtor In Possession," and *provided further* that with respect to any Business Forms, checks, and invoices that are generated electronically, to the extent reasonably practicable, the Debtors shall ensure that such electronic Business Forms, checks, and invoices are clearly labeled "Debtor in Possession."

6.      The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; *provided* that (a) those certain existing deposit agreements between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the respective Cash Management Bank, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions and any provisions relating to offset or charge back rights with respect to returned items, shall remain in full force and effect, and (b) subject to the terms of the ABL Facility, the Debtors and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures related thereto in the ordinary course of business pursuant to terms of those certain existing deposit agreements, including, without limitation, the closing of Bank Accounts or the opening of new bank accounts in an authorized depository.

7.      The relief granted in this Final Order is extended to any new bank account opened by the Debtors after the date hereof in accordance with the terms of the ABL Facility, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Cash Management Bank.

8.      All banks, including the Cash Management Banks, provided with notice of this Final Order maintaining any of the Bank Accounts shall not honor or pay any bank payments

drawn on the listed Bank Accounts, or otherwise issued before the Petition Date, absent further direction from the Debtors.

9.      The Debtors will maintain records in the ordinary course reflecting transfers of cash, if any, so as to permit all such transactions to be ascertainable.

10.      In the course of providing cash management services to the Debtors, each of the Cash Management Banks is authorized, without further order of this Court, to deduct the applicable fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtors, including, without limitation, amounts due in respect of Purchase Cards, whether arising prepetition or postpetition, from the appropriate accounts of the Debtors, and further, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from wire transfers, ACH transactions, or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

11.      Each of the Cash Management Banks is authorized to debit the Debtors' accounts in the ordinary course and without further order of this Court on account of (a) all checks drawn on the Debtors' accounts that have been cashed at such banks' counters or exchanged for cashier's or official checks by the payees thereof prior to such Cash Management Bank's receipt of notice of the Petition Date; (b) all checks, automated clearing house entries, or other items deposited in, or credited to, one of the Debtors' accounts with such bank prior to the Petition Date which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the

Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owned to any bank as to service charges for the maintenance of the Cash Management System.

12.     Any bank, including a Cash Management Bank, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors, whether prior to the Petition Date or after the Petition Date, should be honored pursuant to any order of this Court.  No bank that honors a check, draft, wire, or other transfer drawn or issued on any account that is the subject of this Final Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite implementation of customary item handling procedures, shall be deemed to be liable nor have any liability to the Debtors, their estates, or any other party on account of such check, draft, wire, or other item being honored, or otherwise deemed to be in violation of this Final Order.

13.     Any and all banks, including the Cash Management Banks, are further authorized to (a) honor the Debtors' directions with respect to the opening and closing of any Bank Account and (b) accept and hold the Debtors' funds in accordance with the Debtors' instructions; *provided*, that the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

14.     Nothing contained herein shall permit any Cash Management Bank to terminate any cash management services without thirty days' prior written notice to the Debtors, U.S. Trustee, and any official committee appointed in these chapter 11 cases.

15.     The requirement to establish separate accounts for cash collateral and/or tax payments is hereby waived.

16.     The Debtors will not be required to bond the Bank Account at Bank of Hawaii listed on **Schedule 2**, to the extent required by section 345(b) of the Bankruptcy Code.

17.     Notwithstanding anything to the contrary set forth herein, the Debtors are authorized, but not directed, to continue Intercompany Transactions arising from or related to the operation of their business in the ordinary course.  All postpetition payments from a Debtor to another Debtor under any postpetition Intercompany Transactions authorized hereunder are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code.  In connection with the Intercompany Transactions, the Debtors shall continue to maintain current records with respect to all transfers of cash so that all Intercompany Transactions may be readily ascertained, traced, and properly recorded on intercompany accounts; *provided* that such records shall distinguish between prepetition and postpetition transactions.

18.     The relief granted in this Final Order with respect to the postpetition Intercompany Transactions and the Intercompany Balances resulting therefrom shall not constitute a finding as to the validity, priority, or status of any prepetition Intercompany Balance or any Intercompany Transactions from which such Intercompany Balance may have arisen, the Debtors stipulate that they do not take a position with regard to the validity, priority, or status of any prepetition Intercompany Balance or any Intercompany Transactions from which such Intercompany Balance may have arisen, and the right of any party to contest the validity, priority, or status of any prepetition Intercompany Balance or any Intercompany Transactions from which such Intercompany Balance may have arisen is expressly reserved.

19.     Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of

the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

20.     Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity pays those disbursements.

21.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Final Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens.  Any payment made pursuant to this Final Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

22.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests

8

when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order without any duty of further inquiry and without liability for following the Debtors' instructions.

23.    The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Bank Fees.

24.    The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

25.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

26.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

27.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

28.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: _____, 2019
Poughkeepsie, New York                    _____
                                          THE HONORABLE CECELIA G. MORRIS
                                          UNITED STATES BANKRUPTCY JUDGE

9

## **Schedule 1**

**Cash Management System Schematic**



Wells Fargo ABL

Master Collection Account (7159)

Master Concentration Account (7167)

Merchandise Account (2166)

Exp. Pay & Cap. Account (2151)

Sales Tax Account (7209)

Payroll Account (7183)

BNY Catering Inc. (8604)

Barneys New York Foundation, Inc.[1] (2491)

Depository Account (7841)

Madison Avenue Depository (5232)

Depository Account (6849)

Waikele Store Depository (9906)

Downtown Store Depository (5704)

Seattle Store Depository (1337)

The Grove Store Depository (0345)

Chicago Store Depository (1303)

Carlsbad Store Depository (9529)

Beverly Hills Store Depository (1295)

Camarillo Store Depository (4490)

Cabazon Store Depository (2639)

Philadelphia Store Depository (1345)

San Francisco Store Depository (1329)

Riverhead Store Depository (1378)

Livermore Store Depository (7962)

Sawgrass Store Depository (1386)

Rosemont Store Depository (8276)

Brooklyn Store Depository (1352)

Santa Monica Store Depository (1698)

Glendale Store Depository (5571)

Copley Store Depository (1311)

Las Vegas Store Depository (2621)

Woodbury Store Depository (1360)

**Inactive Account**

Barney's, Inc. Account (5922)

**Key**

Charitable Donation Account

Concentration Account

Store Depository Account

Disbursement Account

Collection Account

Depository Account

- - - → Flow of funds

Automated Bank Zero Balance Account Transfer (ZBA)

1 This account is not held by the Debtors, and, therefore, is not property of the Debtors' estates.
2 The flow of funds diagrammed here reflects certain transfer requests made by the ABL Agent upon the Debtors entering cash dominion under the ABL Facility, as more fully described in the motion.

## **<u>Schedule 2</u>**

**Bank Accounts**

| Last Four Digits of Account No. | Bank[1] | Account Type |
|---|---|---|
| **Concentration Accounts** | | |
| 7167 | Wells Fargo Bank | Master Concentration Account |
| **Collection Accounts** | | |
| 7159 | Wells Fargo Bank | Master Collection Account |
| **Depository Accounts** | | |
| 7841 | Wells Fargo Bank | Depository Account |
| 6849 | Wells Fargo Bank | Depository Account |
| 5232 | Wells Fargo Bank | Madison Avenue Depository Account |
| **Store Depository Accounts** | | |
| 1295 | Wells Fargo Bank | Beverly Hills Store Depository Account |
| 1311 | Wells Fargo Bank | Copley Store Depository Account |
| 2621 | Wells Fargo Bank | Las Vegas Store Depository Account |
| 1329 | Wells Fargo Bank | San Francisco Store Depository Account |
| 5571 | Wells Fargo Bank | Glendale Store Depository Account |
| 1345 | Wells Fargo Bank | Philadelphia Store Depository Account |
| 1698 | Wells Fargo Bank | Santa Monica Store Depository Account |
| 1360 | Wells Fargo Bank | Woodbury Store Depository Account |
| 2639 | Wells Fargo Bank | Cabazon Store Depository Account |
| 4490 | Wells Fargo Bank | Camarillo Store Depository Account |
| 5704 | Wells Fargo Bank | Downtown Store Depository Account |
| 1303 | Wells Fargo Bank | Chicago Store Depository Account |
| 1337 | Wells Fargo Bank | Seattle Store Depository Account |
| 0345 | Wells Fargo Bank | The Grove Store Depository Account |
| 1352 | Wells Fargo Bank | Brooklyn Store Depository Account |
| 1378 | Wells Fargo Bank | Riverhead Store Depository Account |
| 9529 | Wells Fargo Bank | Carlsbad Store Depository Account |
| 1386 | Wells Fargo Bank | Sawgrass Store Depository Account |
| 7962 | Wells Fargo Bank | Livermore Store Depository Account |

---

[1]    Wells Fargo is an authorized depository in the Southern District of New York, and the Bank of Hawaii is an authorized depository in the District of Hawaii.  The amounts in the Bank of Hawaii account are fully insured and under the FDIC limit, and the account is swept daily.

| Last Four Digits of Account No. | Bank[1] | Account Type |
|---|---|---|
| 8276 | Wells Fargo Bank | Rosemont Store Depository Account |
| 9906 | Bank of Hawaii | Waikele Store Depository Account |
| **Disbursement Accounts** | | |
| 2166 | Wells Fargo Bank | Merchandise Account |
| 2151 | Wells Fargo Bank | Expense Pay and Capitals Account |
| 7209 | Wells Fargo Bank | Sales Tax Account |
| 7183 | Wells Fargo Bank | Payroll Account |
| 2491 | Wells Fargo Bank | Barneys New York Foundation |
| 8604 | Wells Fargo Bank | BNY Catering Inc. Disbursement Account |
| **Inactive Accounts** | | |
| 5922 | Wells Fargo Bank | Electronic Payables Account |
| **Charitable Donation Account** | | |
| 2491 | Wells Fargo Bank | Non-Debtor Barneys New York Foundation account |