Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

Chad J. Husnick, P.C.
W. Benjamin Winger (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Steven J. Reisman
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, New York 10022
Telephone:    (212) 940-8800
Facsimile:    (212) 940-8776

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF**
**INTERIM AND FINAL ORDERS (I) AUTHORIZING**
**THE DEBTORS TO (A) SATISFY OBLIGATIONS**
**RELATED TO INSURANCE POLICIES, (B) RENEW,**
**SUPPLEMENT, MODIFY, OR PURCHASE INSURANCE**
**COVERAGE, (C) MAINTAIN THE SURETY BONDS, (D) HONOR**
**THE TERMS OF THE FINANCING AGREEMENT AND PAY PREMIUMS**
**THEREUNDER, AND (E) ENTER INTO NEW FINANCING AGREEMENTS IN**
**THE ORDINARY COURSE OF BUSINESS AND (II) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177), and Barneys Asia Co. LLC (0819). The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion.[2]

## Relief Requested

1.     The Debtors seek entry of interim and final orders, substantially in the form attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"), (a) authorizing the Debtors to (i) satisfy their obligations related to insurance policies entered into prepetition, including payment of certain brokerage fees, (ii) renew, supplement, modify, or purchase insurance coverage in the ordinary course, (iii) continue and renew their Surety Bonds (as defined below) on an uninterrupted basis; (iv) renew or enter into new premium financing agreements in the ordinary course of business, and (v) honor the terms of the Financing Agreement (as defined below) and pay premiums thereunder, and (b) granting related relief.  In addition, the Debtors request that the Court (as defined below) schedule a final hearing within approximately twenty-five days of the commencement of these chapter 11 cases to consider entry of the Final Order.

## Jurisdiction and Venue

2.     The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the Court

---

[2]    A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Mohsin Y. Meghji, Chief Restructuring Officer of Barneys New York, Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith.  Capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in the First Day Declaration.

entering a final order in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      The bases for the relief requested herein are sections 105(a) and 363(b) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

### Background

4.      The Debtors are a world-renowned luxury specialty retailer with twenty-two stores across the United States, including flagships in New York City and Beverly Hills, and a highly curated, shopper-friendly e-commerce platform.  Founded as a men's retailer in 1923 in downtown Manhattan, the Debtors sell the most intriguing fashion offering from the world's top designers, including women's and men's clothing, accessories, shoes, jewelry, cosmetics, fragrances, and gifts for the home.  The Debtors remain headquartered in New York, New York and lease all of their store locations.  The Debtors reported revenues of approximately $800 million for 2018.  As of the date hereof (the "Petition Date"), the Debtors have approximately 2,300 employees and funded debt obligations of approximately $200 million.

5.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

3

**Insurance Policies**

6.      In the ordinary course of business, the Debtors maintain approximately twenty-six insurance policies (collectively, the "Insurance Policies") administered by multiple third-party insurance carriers (collectively, the "Insurance Carriers").  The Insurance Policies provide coverage for, among other things, the Debtors' commercial general liability, commercial crime, marine cargo, property, earthquake, business automobile, umbrella liability, commercial excess liability, management liability, directors' and officers' liability. foreign commercial liability, and jewelers' block.  The aggregate annual premium for the Insurance Policies is approximately $3.5 million, plus applicable taxes and surcharges.  Certain of the Insurance Policies are auditable and subject to deductibles, insurance direct bill payments that are handled independent of Aon (as defined below), and letter of credit obligations, therefore, the aggregate annual premium may be subject to change.  A schedule of the Insurance Policies is attached hereto as **Exhibit C**.[3]

7.      The Insurance Policies are financed through a premium financing agreement (the "Financing Agreement") with Aon Premium Finance LLC ("Aon").  Pursuant to the Financing Agreement, the Debtors are required to make monthly aggregate premium payments of approximately $220,000.  The term of the Financing Agreement is year-to-year, beginning in October of the calendar year.  As of the Petition Date, approximately $1.1 million remains unpaid under the Financing Agreement, the entirety of which will become due and payable by October 1,

---

[3]     In addition to the Insurance Policies listed in **Exhibit C** to this motion, the Debtors maintain insurance policies with respect to, among other things, workers' compensation.  These programs are described, and relief is requested with respect to such programs, in *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief*, filed contemporaneously herewith.  Although **Exhibit C** is intended to be comprehensive, the Debtors may have inadvertently omitted one or more Insurance Policies.  The Debtors request relief applicable to all Insurance Policies, regardless of whether such Insurance Policy is specifically identified on **Exhibit C**.

2019. The Debtors believe they are current with respect to payment obligations under the Financing Agreement. The Debtors seek authority to continue satisfying obligations related to the Insurance Policies or the Financing Agreement in the ordinary course of business to ensure uninterrupted coverage under the Insurance Policies.

8.    Continuation of the Insurance Policies and the Financing Agreement and renewal of or entry into new insurance policies and premium financing agreements is essential to the preservation of the value of the Debtors' properties and assets. Moreover, in many instances, coverage provided by the Insurance Policies is required by the regulations, laws, and contracts governing the Debtors' commercial activities, including the requirement of the United States Trustee for the Southern District of New York (the "U.S. Trustee") that a debtor maintain adequate coverage given the circumstances of its chapter 11 case. Accordingly, the Debtors request authority to maintain their existing Insurance Policies and Financing Agreement, satisfy obligations related thereto, and renew or enter into new insurance policies and premium financing agreements, as applicable, in the ordinary course of business.

**The Debtors' Surety Bonds**

9.    In the ordinary course of business, the Debtors are required to provide one or more surety bonds to the United States Customs and Border Protection Agency ("U.S. Customs") to secure the Debtors' payment or performance of certain obligations, including duties, taxes, and fees on account of merchandise imported from foreign countries (the "Customs Surety Bond"). The Debtors are required to post the Customs Surety Bond to secure obligations pursuant to 19 U.S.C. § 1623, which grants U.S. Customs the authority to require bonds "as they may deem necessary for the protection of the revenue or to assure compliance with any provision of law, regulation, or instruction which the Secretary of the Treasury of the Customs Service may be authorized to enforce." As such, failing to provide, maintain, or timely replace the Customs Surety

Bond will prevent the Debtors from importing merchandise that is essential to replenishing the Debtors' store inventory and, thus, invigorating the Debtors' operations. As of the Petition Date, the Debtors have one Customs Surety Bond for the benefit of U.S. Customs totaling approximately $900,000 outstanding. The Customs Surety Bond is maintained by Washington International Insurance. The Debtors do not believe they currently owe any outstanding premiums to Washington International Insurance on account of the Customs Surety Bond, but request to pay any premiums or fees that may come due in the ordinary course.

10.     In the ordinary course of business, the Debtors are also required to provide surety bonds to the City of New York to sell second-hand goods (the "NYC Surety Bonds," and together with the Customs Surety Bond, the "Surety Bonds"). The Debtors are required to post the NYC Surety Bonds to secure obligations pursuant to N.Y.C. Admin. Code § 20-266, which requires dealers of second-hand goods securing a license to "furnish a bond to the city, with sufficient surety, to be approved by the commission in the penal sum of one thousand dollars conditioned for the due observance of the law relating to such dealers." As of the Petition Date, the Debtors have two NYC Surety Bonds for the benefit of the City of New York totaling approximately $2,000. The Debtors pay The Hartford Insurance Group a total annual premium of approximately $360 to maintain the NYC Surety Bonds. A schedule of the Surety Bonds is attached hereto as **Exhibit D** and incorporated herein by reference.[4]

11.     The issuance of a surety bond shifts the risk of the Debtors' nonperformance or nonpayment from the Debtors to the surety. Unlike an insurance policy, if a surety incurs a loss on a surety bond, it is entitled to recover the full amount of that loss from the principal. To that

---

[4]     The Debtors request authority to honor obligations and renew all surety bonds, as applicable, regardless of whether the Debtors inadvertently fail to include a particular surety bond on **Exhibit D**.

end, Washington International Insurance Co., the surety with respect to the Customs Surety Bonds,

has required the Debtors to issue letters of credit (the "Letters of Credit") in the aggregate amount

of $900,000 to back the Custom Surety Bond and effectively indemnify it from any loss, cost, or

expense it may incur on account of the issuance of the Surety Bonds.  Wells Fargo Bank, N.A. has

issued such Letters of Credit.[5]

12.     To continue their business operations during these chapter 11 cases, the Debtors

must be able to provide financial assurance to U.S. Customs and the City of New York.  This, in

turn, requires the Debtors to maintain the existing Surety Bonds.  Accordingly, the Debtors seek

authority to pay bond premiums as they come due, maintain and renew the Letters of Credit, renew

or potentially acquire additional bonding capacity as needed in the ordinary course of business,

and execute related agreements, as needed.  Failing to provide, maintain, back, or timely replace

Surety Bonds will prevent the Debtors from complying with their federal and state law obligations,

and consequently prevent them from undertaking essential functions related to their operations,

such as importing goods and selling second-hand goods.

### Basis for Relief

I.     **The Bankruptcy Code and U.S. Trustee Guidelines Require the Debtors to Maintain
Insurance Coverage and Satisfy Their Insurance Obligations.**

13.     The Insurance Policies provide a comprehensive range of protection for the

Debtors' businesses, properties, and assets.  It is essential that the Debtors' insurance coverage

continues in full force and effect during the course of these chapter 11 cases.   Under

section 1112(b)(4)(C) of the Bankruptcy Code, "failure [of a debtor] to maintain appropriate

insurance [where such failure] poses a risk to the estate or to the public" is "cause" for mandatory

---

[5]     Due to the *de minimis* size of the NYC Surety Bonds, the Debtors back these bonds directly rather than with letters of credit.

conversion or dismissal of a chapter 11 case. Certain of the Insurance Policies are required by various state and federal regulations. In addition, the U.S. Trustee Guidelines require that a debtor "shall maintain" certain types of insurance coverage following the Petition Date. *See* U.S. Trustee Guidelines, § 6.

14.     To ensure that the Debtors comply with section 1112(b)(4)(C) of the Bankruptcy Code, applicable state and federal regulations, and the U.S. Trustee Guidelines, the Debtors respectfully request the authority to satisfy obligations related to the Insurance Policies in the ordinary course of business, including those prepetition amounts due in connection with premiums, deductible fees, and brokerage fees, and, if necessary, renew, supplement, or purchase insurance coverage on a postpetition basis in the ordinary course of business.

## II.     Renewing, Supplementing, Purchasing, or Entering into New Policies and Surety Bonds, and Paying Obligations Related to the Insurance Policies and Surety Bonds in the Ordinary Course of Business Are Each Warranted.

15.     In authorizing payments of certain insurance obligations, courts have relied on several legal theories rooted in sections 105(a), 363(b), 503, 1107(a), and 1108 of the Bankruptcy Code. Pursuant to these sections of the Bankruptcy Code, the Court may authorize the Debtors to maintain the Insurance Policies and even renew or enter into new policies on a postpetition basis, because the relief requested is consistent with the value preservation policy of chapter 11.

16.     The Court may also authorize the Debtors to maintain the Insurance Policies and the Surety Bonds and even renew or enter into new policies or surety bonds on a postpetition basis because the relief requested will preserve the value of these chapter 11 estates. Courts in this jurisdiction have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("[t]he ability of a Bankruptcy Court to authorize the payment of pre-petition debt when

such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.");
*Armstrong World Indus., Inc. v. James A. Phillips, Inc.,* (*In re James A. Phillips, Inc.*), 29 B.R.
391, 398 (S.D.N.Y. 1983).  In doing so, these courts acknowledge that several legal theories rooted
in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims
as provided herein.

17.    Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment
of prepetition obligations where a sound business purpose exists for doing so.  *See Ionosphere
Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor
to honor prepetition claims where supported by an appropriate business justification); *see also
James A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to
pay the prepetition claims of suppliers who were potential lien claimants).  Indeed, courts have
recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the
pre-plan satisfaction of a prepetition claim."  *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D.
Tex. 2002).

18.    In addition, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors
in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for
the benefit of [their] creditors and (if the value justifies) equity owners."  *In re CoServ*, 273 B.R.
at 497.  Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and
preserve the estate, including an operating business's going concern value."  *Id*.

19.    Further, courts may authorize payment of prepetition claims in appropriate
circumstances based on section 105(a) of the Bankruptcy Code, which codifies the Court's
inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate
to carry out the provisions of this title."  Under section 105(a) of the Bankruptcy Code, courts may

authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *See In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (holding that the "doctrine of necessity" stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization). Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *Ionosphere Clubs*, 98 B.R. at 176.

20.     Several courts apply the doctrine of necessity where payment of a prepetition claim (a) is "necessary for the successful reorganization of the debtor," (b) falls within "the sound business judgment of the debtor," and (c) will not "prejudice other unsecured creditors." *In re United Am., Inc.*, 327 B.R. 776, 782 (Bankr. E.D. Va. 2005). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 175. That is because the rehabilitation of a debtor in reorganization cases remains "the paramount policy and goal of Chapter 11." *Id.* at 175–76; *see also In re Just For Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization").

21.     The relief requested herein is warranted because failure to pay premiums and related expenses when due may harm the Debtors' estates in a number of ways. Specifically, the Insurance Carriers may refuse to renew the Insurance Policies, which will require the Debtors to obtain replacement policies and possibly reconfigure their risk management program. That scenario would require the commitment of significant resources and could result in less favorable

coverage or terms from the Debtors' insurers during the early stages of these chapter 11 cases as almost all of the Insurance Policies are scheduled to expire on September 30, 2019. Additionally, the Insurance Carriers could attempt to terminate the Debtors' existing policies, which could threaten the Debtors' ability to continue operating their businesses given the Debtors' myriad regulatory and contractual obligations to maintain specific amounts and types of insurance coverage.

22.    Section 363(c)(1) of the Bankruptcy Code provides that a chapter 11 debtor in possession "may enter into transactions . . . [or] may use property of the estate in the ordinary course of business without notice or a hearing." The Bankruptcy Code does not define "ordinary course of business." *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992). In determining whether a transaction is in the ordinary course of business, this Court and others have adopted the two-part "horizontal dimension" and "vertical dimension" test. *In re Crystal Apparel, Inc.*, 207 B.R. 406, 409 (Bankr. S.D.N.Y. 1997). Under the horizontal dimension test, the court must analyze whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry. *Id.* Under the vertical dimension test, the court must analyze the transaction from the perspective of a hypothetical creditor and determine "whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit." *Id.* In other words, under this two-part test, "the touchstone of ordinariness is thus the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business." *In re Drexel Burnham Lambert Grp., Inc.*, 157 B.R. 532, 537 (S.D.N.Y. 1993).

23.    Here, the Debtors seek only to maintain their existing Insurance Policies and Surety Bonds and honor their obligations related thereto in the ordinary course of their prepetition

business on a postpetition basis.  Such obligations include, among other things, renewing the Insurance Policies and Surety Bonds when they expire, and paying the premiums when they come due.  Further, the Insurance Policies and Surety Bonds cover obligations that are required by law or regulation, as described above.

24.     Accordingly, the Debtors believe that maintenance of the Insurance Policies and Surety Bonds on a postpetition basis is in the ordinary course of business and, pursuant to section 363(c)(1), does not require notice and a hearing.  Nonetheless, out of an abundance of caution, the Debtors are seeking Court approval to continue such maintenance and related obligations under sections 105(a) and 363(b) of the Bankruptcy Code.  As noted above, the Debtors are legally required to maintain the Surety Bonds to import the merchandise necessary to their operations and sell second-hand goods.  Based on the foregoing, the Debtors respectfully submit that maintaining the Insurance Policies and Surety Bonds should be authorized under sections 105(a) and 363(b) of the Bankruptcy Code to the extent such activities are deemed outside the ordinary course of the Debtors' businesses.

25.     The Debtors submit that it is also in the best interests of their estates to have the ability to revise, extend, supplement, or change insurance coverage, as necessary, on a postpetition basis pursuant to sections 105(a), 363(b)(1), 503, 1107, and 1108 of the Bankruptcy Code.  Indeed, the Insurance Policies are essential to the preservation of the value of the Debtors' businesses, properties, and assets and their ability to successfully administer these chapter 11 cases. Accordingly, in the event any of the Insurance Policies lapse or new coverage is required or necessary, it is imperative that the Debtors be able to renew, supplement, purchase, or enter into new insurance coverage on a postpetition basis in the ordinary course of business.  The Insurance

Policies protect the Debtors and other parties in interest from losses caused by casualty, natural disaster, fraud, or other unforeseen events.

26.     Courts in this jurisdiction routinely grant similar relief.  *See*, *e.g.*, *In re Hollander Sleep Products, LLC*, Case No. 19-11608 (MEW) (Bankr. S.D.N.Y. July 2, 2019) (authorizing debtors to pay prepetition premiums and enter into new insurance policies pursuant to sections 105(a) and 363(b) of the Bankruptcy Code); *In re FULLBEAUTY Brands Holding Corp.*, Case No. 19-22185 (RDD) (Bankr. S.D.N.Y. February 7, 2019) (same); *In re Windstream Holdings, Inc., et al.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. February 28, 2019) (same); *In re Aegean Marine Petrol. Network Inc.*, Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Nov. 16, 2018) (authorizing debtors to pay prepetition premiums and enter into new insurance policies and surety bonds pursuant to sections 105(a) and 363(b) of the Bankruptcy Code); *In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. Apr. 9. 2018) (granting relief to pay prepetition insurance obligations and to continue insurance policies).[6]

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

27.     The Debtors have sufficient funds to pay the amounts described in this motion by virtue of expected cash flows during these chapter 11 cases, debtor-in-possession financing, and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Insurance Policies or the Surety Bonds, as applicable.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the

---

[6]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

### The Requirements of Rule 6003 Are Satisfied

28.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, authorizing the Debtors to continue insurance coverage and granting the other relief requested herein is essential to the Debtors' ability to transition their operations into these chapter 11 cases and maintain the value of their estates postpetition.  Failure to receive such authorization and other relief during the first twenty-one days of these chapter 11 cases would severely disrupt the Debtors' ability to maintain their estates at this critical juncture.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Motion Practice

29.     This motion includes citation to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this motion.  Accordingly, the Debtors submit that this motion satisfies Local Rule 9013-1(a).

### Reservation of Rights

30.     Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or

authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party in interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid and the Debtors and all other parties in interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### **Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

31.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### **Notice**

32.    The Debtors will provide notice of this motion to:  (a) the United States Trustee for the Southern District of New York; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition ABL Agent; (d) counsel to the Term Loan Agent; (e) counsel to the DIP parties; (f) the United States Attorney's Office for the Southern District of New York; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for all states in which the Debtors conduct business; (j) the Insurance Carriers; (k) the Brokers; (l) the Surety Bonds providers; and

(m) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

33.    No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and

Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B,** respectively,

granting the relief requested herein and such other relief as is just and proper.

Dated:  August 6, 2019          */s/ Joshua A. Sussberg, P.C.*
New York, New York              Edward O. Sassower, P.C.
                                Joshua A. Sussberg, P.C.
                                **KIRKLAND & ELLIS LLP**
                                **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                601 Lexington Avenue
                                New York, New York 10022
                                Telephone:    (212) 446-4800
                                Facsimile:    (212) 446-4900

                                -and-

                                Chad J. Husnick, P.C.
                                W. Benjamin Winger (*pro hac vice* pending)
                                **KIRKLAND & ELLIS LLP**
                                **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                300 North LaSalle Street
                                Chicago, Illinois 60654
                                Telephone:    (312) 862-2000
                                Facsimile:    (312) 862-2200

                                -and-

                                Steven J. Reisman
                                **KATTEN MUCHIN ROSENMAN LLP**
                                575 Madison Avenue
                                New York, New York 10022
                                Telephone:    (212) 940-8800
                                Facsimile:    (212) 940-8776

                                *Proposed Co-Counsel for the Debtors and Debtors in Possession*

## **EXHIBIT A**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING**
**THE DEBTORS TO (A) SATISFY OBLIGATIONS RELATED**
**TO INSURANCE POLICIES, (B) RENEW, SUPPLEMENT, MODIFY,**
**OR PURCHASE INSURANCE COVERAGE, (C) HONOR THE TERMS OF THE**
**FINANCING AGREEMENT AND PAY PREMIUMS THEREUNDER, (D) MAINTAIN**
**THE SURETY BONDS, AND (E) ENTER INTO NEW FINANCING AGREEMENTS IN**
**THE ORDINARY COURSE OF BUSINESS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"),  (a) authorizing, but not directing, the Debtors to (i) pay their obligations under the insurance policies entered into prepetition, (ii) continue to pay certain brokerage fees, (iii) renew, supplement, modify, or purchase insurance coverage in the ordinary course, (iv) continue the Surety Bonds, (v) honor the terms of the Financing Agreement and premiums thereunder and (vi) enter into new premium financing agreements in the ordinary course of business; and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

February 1, 2012; and that this Court may enter a final order consistent with Article III of the

United States Constitution; and this Court having found that venue of this proceeding and the

Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having

found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were

appropriate under the circumstances and no other notice need be provided; and this Court having

reviewed the Motion and having heard the statements in support of the relief requested therein at

a hearing before this Court (the "Hearing"); and this Court having determined that the legal and

factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted

herein; and upon all of the proceedings had before this Court; and after due deliberation and

sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____,

2019, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order

on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2019,

and shall be served on:  (a) Barneys New York, Inc., 575 Fifth Avenue, New York, New York

10017; Attn: Grace Fu; (b) proposed co-counsel to the Debtors, Kirkland & Ellis LLP,

601 Lexington Avenue, New York, New York 10022, Attn: Edward O. Sassower, P.C.,

Joshua A. Sussberg, P.C., and Gene Goldmintz, Kirkland & Ellis LLP, 300 North LaSalle Street,

Chicago, Illinois 60654, Attn: Chad J. Husnick, P.C. and W. Benjamin Winger, and Katten

Muchin Rosenman LLP, 575 Madison Avenue, New York, New York 10022, Attn: Steven J.

Reisman; (c) the United States Trustee, 11A Clinton Avenue, Room 620, Albany, New York

12207, Attn: Alicia Leonhard; (d) counsel to any statutory committee appointed in these chapter

11 cases; (e) counsel to the Prepetition ABL Agent, (x) Riemer & Braunstein LLP, 100 Cambridge

Street, Boston, Massachusetts 02114, Attn: Donald E. Rothman and (y) Riemer & Braunstein LLP,

Times Square Tower, Seven Times Square, Suite 2506, New York, New York 10036, Attn: Steven

E. Fox; (f) counsel to the Term Loan Agent, Choate Hall & Stewart LLP, Two International Place,

Boston, Massachusetts 02110, Attn: Kevin J. Simard and Mark Silva; and (g) counsel to the DIP

parties, Paul Hastings LLP, 71 South Wacker Drive, Chicago, Illinois, 60606, Attn: Chris

Dickerson and Holly Snow.  In the event no objections to entry of a final order on the Motion are

timely received, this Court may enter such final order without need for the Final Hearing.

3.      The Debtors are authorized to continue the Insurance Policies, including the

Insurance Policies identified on **Exhibit C** to the Motion, and satisfy any prepetition or

postpetition obligations related to the Insurance Policies, including any amounts owed to the

Brokers.

4.      The Debtors are authorized to renew, amend, supplement, extend, or purchase

insurance policies to the extent that the Debtors determine, in their sole discretion, that such action

is in the best interest of their estates.  The Debtors are authorized to honor the terms of the

Financing Agreement and pay premiums thereunder, to renew the Premium Financing Agreement,

and to enter into new premium financing agreements in the ordinary course of business.

5.      The Debtors are authorized to maintain the Surety Bonds without interruption,

including the payment of premiums, maintenance and renewal of the Letters of Credit, renewal or

obtainment of new surety bonds, and execution of other agreements in connection with the Custom

Surety Bonds.

6.      Notwithstanding anything to the contrary in the Financing Agreement, the Debtors'

filing of these chapter 11 cases shall not constitute a default under the Financing Agreement.

7.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights or the rights of any other Person under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

8.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

9.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Insurance Policies or Surety Bonds.

10.     Notwithstanding the relief granted in this Interim Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with any

orders entered by the Court approving the Debtors' entry into any postpetition debtor in possession financing facility and any budget in connection therewith and/or authorizing the Debtors' use of cash collateral and any budget in connection therewith.

11.    Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

12.    The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

13.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

14.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

15.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

16.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Dated: _____, 2019
Poughkeepsie, New York

_____
THE HONORABLE CECELIA G. MORRIS
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT B**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| BARNEYS NEW YORK, INC., *et al.*,[1] | Case No. 19-36300 (CGM) |
| Debtors. | (Joint Administration Requested) |

**FINAL ORDER (I) AUTHORIZING THE
DEBTORS TO (A) SATISFY OBLIGATIONS
RELATED TO INSURANCE POLICIES, (B) RENEW,
SUPPLEMENT, MODIFY, OR PURCHASE INSURANCE
COVERAGE, (C) MAINTAIN THE SURETY BONDS, (D) HONOR
THE TERMS OF THE FINANCING AGREEMENT AND PAY PREMIUMS
THEREUNDER, AND (E) ENTER INTO NEW FINANCING AGREEMENTS IN
THE ORDINARY COURSE OF BUSINESS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing, but not directing, the Debtors to (i) pay their obligations under the insurance policies entered into prepetition, (ii) continue to pay certain brokerage fees, (iii) renew, supplement, modify, or purchase insurance coverage in the ordinary course, (iv) continue the Surety Bonds, (v) honor the terms of the Financing Agreement and premiums thereunder and (vi) enter into new premium financing agreements in the ordinary course of business; and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177), and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

*Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Motion is granted on a final basis as set forth herein.

2.    The Debtors are authorized to continue the Insurance Policies, including the Insurance Policies identified on **Exhibit C** to the Motion, and satisfy any prepetition or postpetition obligations related to the Insurance Policies, including any amounts owed to the Brokers.

3.    The Debtors are authorized to renew, amend, supplement, extend, or purchase insurance policies to the extent that the Debtors determine, in their sole discretion, that such action is in the best interest of their estates.  The Debtors are authorized to honor the terms of the Financing Agreement and pay premiums thereunder, and to enter into new premium financing agreements in the ordinary course of business.

4.    The Debtors are authorized to maintain the Surety Bonds without interruption, including the payment of premiums, maintenance and renewal of the Letters of Credit, renewal or

obtainment of new surety bonds, and execution of other agreements in connection with the Custom Surety Bonds.

5.      Notwithstanding anything to the contrary in the Financing Agreement, the Debtors' filing of these chapter 11 cases shall not constitute a default under the Financing Agreement.

6.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights or the rights of any other Person under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

7.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

8.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored

as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Insurance Policies or Surety Bonds.

9.      Notwithstanding the relief granted in this Final Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with any orders entered by the Court approving the Debtors' entry into any postpetition debtor in possession financing facility and any budget in connection therewith and/or authorizing the Debtors' use of cash collateral and any budget in connection therewith.

10.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

11.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

12.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

13.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

14.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: _____, 2019
Poughkeepsie, New York

_____
THE HONORABLE CECELIA G. MORRIS
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT C**

**Insurance Policies**

| Type of Coverage | Insurance Carrier | Policy Numbers | Term |
|---|---|---|---|
| Automobile Liability | Zurich | BAP509600104 | 9/30/18 to 9/30/19 |
| California Earthquake | Lloyd's, Everest, Hiscox and United Specialty Insurance Company | ESE16729-00 | 9/30/18 to 9/30/19 |
| Commercial Property | Hudson Specialty Insurance Company | 315327HS-1 | 9/30/18 to 9/30/19 |
| Crime | Zurich American Insurance Company | FID 967409110 | 9/30/18 to 9/30/19 |
| Director & Officer Liability | Westchester Fire Insurance Company (ACE) | G25062383007 | 9/30/18 to 9/30/19 |
| Director & Officer Liability | CNA | 5923393888 | 9/30/18 to 9/30/19 |
| Director & Officer Liability | Berkley Insurance Company | BPRO8035711 | 9/30/18 to 9/30/19 |
| Employment Practices Liability | Westchester Fire Insurance Company (ACE) | G25047503008 | 9/30/18 to 9/30/19 |
| Excess Director & Officer Liability | Houston Casualty Company | 14MG18A13496 | 9/30/18 to 9/30/19 |
| Excess Network Security and Privacy | Freedom Specialty | XMF1801285 | 9/30/18 to 9/30/19 |
| Excess Umbrella Liability | Navigators | NY18RXS917421IV | 9/30/18 to 9/30/19 |

| Type of Coverage | Insurance Carrier | Policy Numbers | Term |
|---|---|---|---|
| Excess Umbrella Liability | Zurich American Insurance Company | AEC-6554353 | 9/30/18 to 9/30/19 |
| Excess Umbrella Liability | Endurance American | XSC30000470301 | 9/30/18 to 9/30/19 |
| Fiduciary Liability & Special Crime | Federal Insurance Company (Chubb) | 8237-0896 | 9/30/18 to 9/30/19 |
| Foreign Package | Great Northern Insurance Company (Chubb) | 3588-90-36 DTO | 9/30/18 to 9/30/19 |
| General Liability | Zurich | GL0509600004 | 9/30/18 to 9/30/19 |
| Jewelers Block | Lloyds of London | FSSFA1800493 | 9/30/18 to 9/30/19 |
| Liquor Liability | Zurich | GL0509600004 | 9/30/18 to 9/30/19 |
| Marine Cargo | Starr Indemnity & Liability Company | MASICNY0281US18 | 10/1/18 to 10/1/19 |
| Network Security and Privacy Liability | Beazley | V19A9D180301 | 9/30/18  to 9/30/19 |
| Primary Umbrella Liability | Everest Insurance Co. | XC5CU00111-181 | 9/30/18 to 9/30/19 |
| Property | XL Insurance Company | US00072886PR18A | 9/30/18 to 9/30/19 |

| Type of Coverage | Insurance Carrier | Policy Numbers | Term |
|---|---|---|---|
| Punitive Damages Wrap | Chubb Bermuda Insurance Ltd. | PD10010-001 | 9/30/18 to 9/30/19 |
| Special Crime | Federal Insurance Company (Chubb) | 82107704 | 9/30/18 to 9/30/19 |
| Stock Throughput | Lloyd's of London | MACAR1800718 | 10/1/18 to 10/1/19 |
| Workers' Compensation & Employers Liability | Zurich | WC 509599804 (AOS) WC 509599904 (MA) | 9/30/18 to 9/30/19 |

**<u>EXHIBIT D</u>**

**Surety Bonds**

| Obligee | Debtor | Surety | Nature of Bond | Surety Bond Number |
|---|---|---|---|---|
| City of New York | Barneys, Inc. | The Hartford Insurance Group | Second-hand Dealer Bond | 83BSBFJ8628 |
| City of New York | Barney's, Inc. | The Hartford Insurance Group | Second-hand Dealer Bond | 83BSBHT0710 |
| U.S. Customs and Border Protection | Barney's, Inc. | Washington International Insurance Co. | Customs Bond | 9912M5636 |