Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

Chad J. Husnick, P.C.
W. Benjamin Winger (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Steven J. Reisman
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, New York 10022
Telephone:    (212) 940-8800
Facsimile:    (212) 940-8776

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| BARNEYS NEW YORK, INC., *et al.*,[1] | Case No. 19-36300 (CGM) |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' MOTION
## FOR ENTRY OF INTERIM
## AND FINAL ORDERS (I) AUTHORIZING
## THE DEBTORS TO (A) PAY PREPETITION
## EMPLOYEE WAGES, SALARIES, OTHER COMPENSATION,
## AND REIMBURSABLE EMPLOYEE EXPENSES AND (B) CONTINUE
## EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is:  575 Fifth Avenue, New York, New York 10017.

KE 62579361

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") respectfully state as follows in support of this motion.[2]

## Relief Requested

1.    The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "<u>Interim Order</u>" and "<u>Final Order</u>"), (a) authorizing the Debtors to (i) pay prepetition wages, salaries, other compensation, reimbursable employee expenses, and severance obligations, and (ii) continue employee benefits programs in the ordinary course, including payment of certain prepetition obligations related thereto, and (b) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately twenty-five days of the commencement of these chapter 11 cases to consider entry of the Final Order.

## Jurisdiction and Venue

2.    The United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), to the Court entering a final order in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

---

[2]    A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Mohsin Y. Meghji, Chief Restructuring Officer of Barneys New York, Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), filed contemporaneously herewith.  Capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in the First Day Declaration.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a), and 541(b)(1) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## Background

5.      The Debtors are a world-renowned luxury specialty retailer with twenty-two stores across the United States, including flagships in New York City and Beverly Hills, and a highly curated, shopper-friendly e-commerce platform. Founded as a men's retailer in 1923 in downtown Manhattan, the Debtors sell the most intriguing fashion offering from the world's top designers, including women's and men's clothing, accessories, shoes, jewelry, cosmetics, fragrances, and gifts for the home. The Debtors remain headquartered in New York, New York and lease all of their store locations. The Debtors reported revenues of approximately $800 million for 2018. As of the date hereof (the "Petition Date"), the Debtors have approximately 2,300 employees and funded debt obligations of approximately $200 million.

6.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## The Debtors' Workforce

7.      As of the Petition Date, the Debtors employ approximately 2,300 employees, including approximately 2,100 full-time (the "Full-Time Employees")[3] and approximately 200 part-time (the "Part-Time Employees" and, together with the Full-Time Employees, the "Employees"), most of whom are involved in the day-to-day operations at the Debtors' stores. Approximately 900 Employees are members of a labor force union (the "Union Employees").[4] Debtor Barney's, Inc. employs all of the Employees. The Employees perform a wide variety of functions critical to the administration of these chapter 11 cases and the Debtors' operations. In many instances, the Employees include personnel who are intimately familiar with the Debtors' business, processes, and systems, who possess unique skills and experience, or who have developed relationships with vendors that are essential to the Debtors' business. These individuals are not easily replaced. Without the continued, uninterrupted services of the Employees, the Debtors' business operations will be halted and the administration of their estates materially impaired.

8.      The Debtors also retain from time to time specialized individuals as independent contractors (the "Independent Contractors") to complete discrete projects, as well as temporary workers (the "Temporary Staff") from several staffing agencies (collectively, the "Staffing Agencies") to fulfill certain duties, including, among other things, sales, web services, building services, and catering. The Debtors currently retain approximately 260 Independent Contractors

---

[3]    Full-Time Employees are generally scheduled to work 40 hours per week.

[4]    The Union Employees are members of one of the three following unions (collectively, the "Unions"): (a) New York New Jersey, Joint Board, Workers United; (b) Philadelphia Joint Board, Workers United; and (c) Western States Regional Board, Workers United. The Union Employees work at stores located in Brooklyn, New York City, Long Island City, Philadelphia, Las Vegas, Los Angeles, and the Lyndhurst Distribution Center. The Debtors are party to collective bargaining agreements with local chapters of the Unions ("Collective Bargaining Agreements").

and Temporary Staff in the aggregate.  These numbers fluctuate based on the Debtors' specific needs at any given time.  The Independent Contractors and Temporary Staff are a critical supplement to the Employees.

9.     The vast majority of the Employees, Independent Contractors, and Temporary Staff rely on their compensation and benefits to pay their daily living expenses and to support their families.  These workers will be exposed to significant financial constraints if the Debtors are not permitted to continue paying their compensation and providing them with health and other benefits.  Consequently, the Debtors respectfully submit that the relief requested herein is necessary and appropriate under the facts and circumstances of these chapter 11 cases.

## Employee Compensation and Benefits

10.    To minimize the personal hardship the Employees could suffer if prepetition Employee-related obligations are not paid when due or as expected and to maintain stability in the Debtors' workforce during the administration of these chapter 11 cases, the Debtors, by this motion, seek authority to:  (a) pay and honor certain prepetition claims relating to, among other things, wages, salaries, sales commissions and other compensation, payroll services, federal and state withholding taxes and other amounts withheld (including garnishments, Employees' share of insurance premiums, and taxes), reimbursable expenses, severance obligations, health insurance, workers' compensation benefits, life insurance, short- and long-term disability coverage, and certain other benefits that the Debtors have historically provided in the ordinary course (collectively, the "Employee Compensation and Benefits"); and (b) pay all costs incident to the Employee Compensation and Benefits.

11.    Subject to approval from the Court, the Debtors intend to continue their applicable prepetition Employee Compensation and Benefits in the ordinary course.  Out of an abundance of caution, the Debtors further request confirmation of their right to modify, change, and discontinue

5

any of their Employee Compensation and Benefits and to implement new programs, policies, and benefits in the ordinary course during these chapter 11 cases in the Debtors' sole discretion and without the need for further Court approval, subject to applicable law.

12.    Specifically, the Debtors seek authority to pay the following aggregate amounts related to prepetition amounts owed on account of the Employee Compensation and Benefits:

| Relief Sought | | |
|---|---|---|
| **Compensation and Withholding Obligations** | **Interim Amount** | **Final Amount** |
| Unpaid Compensation | $3.25 million | $3.25 million |
| Unpaid Commissions | $470,000 | $470,000 |
| Credit Card Incentives | $550 | $550 |
| Independent Contractors and Temporary Staff Compensation | $6.5 million | $6.5 million |
| Withholding Obligations and Payroll Taxes | $0 | $0 |
| Payroll Processing Fees | $300,000 | $300,000 |
| Unpaid Severance | $88,000 | $88,000 |
| **Benefits and Entitlements** | | |
| Health Benefits Plans | $220,000 | $220,000 |
| Flexible Benefits Plan | $5,000 | $5,000 |
| Workers' Compensation | $110,000 | $110,000 |
| Employee Insurance Coverage | $110,000 | $110,000 |
| Unremitted 401(k) Contributions | $85,000 | $85,000 |
| Additional Programs | $75,000 | $75,000 |
| **Other Employee Benefits** | | |
| Reimbursable Expenses | $62,000 | $62,000 |
| **Union Dues** | | |
| Union Employee Incentives | $0 | $0 |
| Unpaid Union Benefit Contributions | $1.5 million | $1.5 million |
| **Total** | **$12.8 million** | **$12.8 million** |

13.    The Debtors do not believe amounts owed to any Employees on the Petition Date will exceed the statutory cap of $13,650 set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.  For the avoidance of doubt, the Debtors do not seek authority to pay any amounts in excess of $13,650 pursuant to the Interim Order.  The Debtors do seek authority to pay amounts in excess of $13,650, solely pursuant to the Final Order, in the unlikely event it is determined that payment of certain prepetition amounts owed on account of the Employee Compensation and Benefits are in excess of $13,650.

I.      **Compensation and Withholding Obligations.**

A.      **Unpaid Compensation.**

14.     The Debtors incur obligations to their Employees for, among other things, salaries, wages, sales commissions, overtime, and other obligations described herein (collectively, the "Employee Compensation").  The Debtors pay approximately 1,900 Employees, which is approximately 80% of their workforce, on an hourly basis (the "Hourly Employees"), and the remaining 400 Employees, approximately 20% of the workforce, are paid on a salaried basis (the "Salaried Employees").  The Debtors pay the Hourly Employees weekly in arrears and the Salaried Employees on a bi-weekly basis in arrears.

15.     The Debtors' historical average bi-weekly gross Employee Compensation, including salaries, wages, and related compensation, has been approximately $4.8 million.  The Debtors estimate that their average bi-weekly Employee Compensation will be approximately $4.8 million during the course of these chapter 11 cases.  The majority of the Debtors' payroll is made by direct deposit through electronic transfer of funds to the Employees' bank accounts or other electronic means.

16.     As of the Petition Date, the Debtors estimate that they owe approximately $3.25 million on account of unpaid Employee salaries and wages earned by Employees prior to the Petition Date (the "Unpaid Compensation"), substantially all of which will come due within the first twenty-one days of these chapter 11 cases.  As described above, loss of the Unpaid Compensation could cause the Employees to experience substantial financial hardship.  In light of the benefits that the Employees will continue to provide to the Debtors' estates, the Debtors wish to avoid imposing such hardship.

17.     Accordingly, by this motion the Debtors seek authority, but not direction, to pay their Employees any Unpaid Compensation in the ordinary course of business and consistent with past practice, and to continue the Employee Compensation in the ordinary course of business.

**B.     Unpaid Commissions and Incentives Programs.**

18.     In addition to the Debtors' salary and wage obligations, certain of the Employees (including Union Employees) are entitled to sales commissions in addition to their base salary or wages under a variety of sales commissions programs (the "Commissions"). In particular, the Debtors pay Commissions to approximately 600 Employees. The amount of Commissions due to any one Employee under the Commissions programs depends on various performance-based sale components, such as multiple item sales, and whether certain Collective Bargaining Agreements require the Debtors to pay Union Employees Commission at a certain rate.

19.     The Commissions are paid weekly, as applicable, and processed as part of the Debtors' normal payroll. The Commissions form an important and integral part of many of the Employees' overall compensation packages and motivates the Employees to maintain customer goodwill and efficiently pursue the sale of the Debtors' inventory—both of which inure to the benefit of the Debtors' estates. Additionally, many of the Employees rely on the Commissions for their daily living expenses such that failure to pay the Commissions would impose undue hardship.

20.     As of the Petition Date, the Debtors estimate that they owe approximately $470,000 on account of accrued but unpaid Commissions (the "Unpaid Commissions"), substantially all of which will come due in the first twenty-one days of these chapter 11 cases. The Debtors seek authority to pay any Unpaid Commissions and to continue the Commissions practice on a postpetition basis in the ordinary course of the Debtors' business.

21.     Additionally, in the ordinary course of business, the Debtors offer Employees an opportunity to earn certain incentives based on achieving targets related to opening new customer

8

accounts with the Debtors' private label credit card (the "Credit Card Incentives"). The Debtors typically pay the Credit Card Incentives as part of weekly payroll. The Credit Card Incentives are comparable to commission, and are only available to Employees that interface directly with customers. Approximately 50 sales associates receive remuneration on account of the Credit Card Incentives on a weekly basis on average. As of the Petition Date, the Debtors estimate that they owe approximately $550 on account of accrued but unpaid Credit Card Incentives, substantially all of which will come due in the first twenty-one days of these chapter 11 cases. On average, the Credit Card Incentives are less than $10.50 per recipient. None of the Employees that receive Credit Card Incentives qualify as "insiders" under the Bankruptcy Code. As with the Commissions, the Credit Card Incentives form an integral part of certain Employees' compensation packages and incentivize such Employees to superior performance in relation to the credit card program. The Debtors seek authority to pay any accrued but unpaid Credit Card Incentives and continue such program in the ordinary course of business on a postpetition basis.

22. In addition to the Credit Card Incentives, the Debtors also offer their non-Union, executive Employees the opportunity to participate in an annual incentives program (the "Annual Incentives Program" and together with the Credit Card Incentives, the "Incentives Programs"). To be eligible to participate in the Annual Incentives Program, Employees must have held their position as of July 30th of the year in question, meet certain performance expectations, and be actively employed at the time of the bonus payment, with no outstanding resignation. The incentive criteria for each participant is determined based on the individual's function and seniority with the Debtors. The Annual Incentives Program is contingent upon on the Debtors' meeting certain performance goals, and if these goals are not met, no annual incentives will be allocated.

There have been no annual incentives issued since 2017, and the Debtors believe that as of the Petition Date there is nothing accrued or unpaid on account of the Annual Incentives Program.

### C.    Independent Contractors and Temporary Staff Compensation.

23.    The Debtors rely on approximately 260 Independent Contractors and Temporary Staff in the ordinary course of their business.  These Independent Contractors and Temporary Staff perform a wide range of services critical to the Debtors' operations, including, among other things, sales, web services, building services, and catering.  The Employees rely on the support of the Independent Contractors and Temporary Staff to complete certain tasks in furtherance of the Debtors' businesses.  The Debtors believe the authority to continue paying their Independent Contractors and Temporary Staff is critical to maintaining and administering their estates. Historically, the Debtors have paid approximately $1.8 million to Independent Contractors and Temporary Staff on a monthly basis.  Compensation for the Debtors' Temporary Employees includes monthly fees that the Debtors remit to third-party agencies in exchange for the services they provide with respect to the Temporary Employees.

24.    As of the Petition Date, the Debtors estimate that Independent Contractors and Temporary Staff are owed an aggregate of approximately $6.5 million on account of services rendered prior to the Petition Date (the "Unpaid Contractor and Temporary Staffing Amounts"). The Debtors seek authority to pay any Unpaid Contractor and Temporary Staffing Amounts owed on account of services already rendered in the ordinary course of business.

### D.    Withholding Obligations and Payroll Taxes.

25.    During each applicable payroll period, the Debtors routinely deduct certain amounts from Employees' paychecks, including garnishments, child support, and similar deductions.  The Debtors also deduct other pre-tax and after-tax deductions payable pursuant to certain employee benefit plans discussed below, such as an Employee's share of healthcare

benefits and insurance premiums, contributions under flexible spending plans, 401(k) contributions, union dues (and other amounts deducted on account of Union Employees), legally ordered deductions, and miscellaneous deductions (collectively, the "Deductions"), which are forwarded to the appropriate third-party recipients.

26.     In addition to the Deductions, certain federal and state laws require that the Debtors withhold certain amounts from Employees' gross pay related to federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, or local taxing authorities.  The Debtors must then match the Employee Payroll Taxes from their own funds and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance and Social Security and Medicare taxes (the "Employer Payroll Taxes" and, together with the Employee Payroll Taxes, the "Payroll Taxes").  The Payroll Taxes are generally processed and forwarded to the appropriate federal, state, and local taxing authorities at the same time as the Employees' payroll checks are disbursed.

27.     As of the Petition Date, the Debtors estimate that they do not owe any amounts on account of the Deductions and the Payroll Taxes (collectively, the "Withholding Obligations").  By this motion, the Debtors seek authority, but not direction, to pay any unpaid Withholding Obligations and Payroll Taxes and to continue to honor the Withholding Obligations and Payroll Taxes in the ordinary course of business.

**E.      Payroll Processing.**

28.     The Debtors use certain third-party providers to support payroll processing, payroll tax calculations and filings, and other payroll-related services (the "Payroll Processing Fees"), including Automatic Data Processing ("ADP"), Kronos Inc. ("Kronos"), and IBM Incentive Compensation Management ("ICM").  Kronos records the time worked by the Debtors' hourly

Employees. Kronos then provides this information to ADP for payroll calculations. The Debtors pay Kronos approximately $41,000 a month for these services. ICM is also crucial to the Debtors' payroll calculations. The Debtors' sales are processed internally and then provided to ICM. ICM then calculates the Commission earnings attributable to each Employee. The Debtors pay ICM a monthly fee of approximately $16,000. Kronos and ICM are integral to the Debtors' payroll process and ensure accurate and fair compensation is provided to the Employees based on time work and Commissions earned.

29.    The majority of the Employee Compensation obligations are satisfied by direct deposit through the electronic transfer of funds from the Debtors' payroll department directly to each Employee's bank account, with the balance of Employees receiving checks. The Debtors outsource this operation to ADP. In particular, ADP is responsible for serving as the Debtors' payroll and federal W-2 tax form processing vendor, as well as completing the Debtors' payroll tax filings, including federal, state, and local tax filings. In addition, for each payroll period, ADP processes direct deposit transfers, or administers payroll checks to Employees, from certain disbursement accounts funded by the Debtors with the amounts necessary to satisfy the Debtors' payroll obligations. The Debtors pay ADP approximately $50,000 per month for this service.

30.    As of the Petition Date, the Debtors estimate they owe approximately $300,000 in the aggregate to ADP, Kronos, and ICM on account of payroll services (the "Unpaid Payroll Processing Fees"), substantially all of which will come due within the first twenty-one days of these chapter 11 cases. By this motion, the Debtors seek authority, but not direction, to pay the Unpaid Payroll Processing Fees and to continue payroll processing in the ordinary course of business.

### F.    Reimbursable Expenses.

31.    Prior to the Petition Date and in the ordinary course, the Debtors reimbursed Employees for reasonable, approved expenses incurred in connection with the performance of their assigned duties (the "Reimbursable Expenses").  Reimbursable Expenses include travel-related expenses such as meal allowances, air and ground transportation, lodging, car mileage allowances, and other business-related expenses in accordance with the Debtors' policies.  Employees who pay for their own Reimbursable Expenses up front apply for reimbursement of Reimbursable Expenses by submitting an expense report to the Debtors.  Once the Debtors have determined that the charges are for allowable reimbursable business expenses, they reimburse Employees for these expenses. The Debtors also provide certain Employees who regularly need to make payments for business-related purchases with corporate credit cards (the "Purchasing Cards").  The Purchasing Cards are directly billed to the Debtors, and the Debtors are responsible for paying amounts due under the Purchasing Cards in the first instance.

32.    The Debtors' inability to reimburse Employees on account of the Reimbursable Expenses could impose hardship on those Employees who otherwise incurred obligations for the Debtors' benefit.  As of the Petition Date, the Debtors estimate that they owe approximately $62,000 in aggregate Reimbursable Expenses, substantially all of which would come due within the first twenty-one days of these chapter 11 cases.

33.    Employees incurred the Reimbursable Expenses as business expenses on the Debtors' behalf and with the understanding that such expenses would be reimbursed.  Accordingly, to avoid harming such Employees and protect against the risk these Employees may become personally liable for such expenses, the Debtors request authority, but not direction, to pay the Reimbursable Expenses and to continue to pay the Reimbursable Expenses in the ordinary course.

## II.    **Employee Severance Obligations.**

34.    The Debtors maintain certain severance programs pursuant to the Collective Bargaining Agreements or otherwise whereby eligible Employees are entitled to a certain number of weeks of severance benefits based on their position and length of service (the "Severance Programs").  Payments made under the Severance Programs typically are provided in exchange for entry into release and confidentiality agreements, pursuant to which the Employees release any claims against the Debtors and agree to, among other things, not disclose confidential information, solicit employees, or disparage the Debtors for a certain period of time.  The Debtors do not seek the authority in this motion to pay any obligations under the Severance Programs to any "insider" (as the term is defined in section 101(31) of the Bankruptcy Code) outside the confines imposed by section 503(c)(2) of the Bankruptcy Code.

35.    As of the Petition Date, three former non-insider Employees are receiving payments under a Severance Program for services rendered before the Petition Date.[5]  Approximately $88,000 remains outstanding in respect of the Severance Programs ("Unpaid Severance").  The Debtors seek the authority, but not direction, to pay and honor the Unpaid Severance owed to each eligible Employee, and continue the Severance Programs on a postpetition basis in the ordinary course of business.  To the extent an eligible Employee is owed Unpaid Severance above the $13,650 cap imposed by section 507(a)(4) of the Bankruptcy Code, the Debtors seek authority, solely pursuant to the Final Order, to pay such Unpaid Severance.

36.    The Debtors offer severance benefits to certain former Employees under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), but the Debtors do not contribute

---

[5]    All three former Employees earned their payments under the Severance Program within 180 days of the Petition Date.

14

to any former Employees' COBRA payments or premiums.  The Debtors estimate that, based on

past practice, there is a *de minimis* administrative cost for the Debtors to offer COBRA benefits.

The Debtors seek authority, but not direction, to continue offering such COBRA benefits and to

pay any administrative costs related thereto in the ordinary course of business on a postpetition

basis.

### III.    Employee Benefits Programs.

37.    The Debtors offer their Employees, including certain Union Employees, the ability

to participate in a number of insurance and benefits programs, including, among other programs,

medical, prescription drug, dental, and vision plans, flexible benefits plans, workers'

compensation, life insurance, accidental death and dismemberment insurance, disability benefits,

retirement plans, and other employee benefit plans as described below (collectively,

the "Employee Benefits Programs").  The Employee Benefits Programs are, in each case, available

to Employees depending on their status as full-time or part-time Employees, their seniority with

the Debtors, and their length of employment (the "Eligible Employees").  All of the Employee

Benefits Programs are paid on a monthly basis (excluding Workers' Compensation).

38.    As described above, failure to continue the Employee Benefits Programs could

cause Employees to experience severe hardship.  In light of the substantial benefit the Employees

have provided and will continue to provide to the Debtors' estates, the Debtors wish to avoid

imposing such a hardship.  Accordingly, by this motion, the Debtors seek authority, but not

direction, to:  (a) pay any unpaid amounts due with respect to the Employee Benefits Programs;

and (b) continue to provide Employee Benefits Programs in the ordinary course of business.  As

of the Petition Date, the Debtors estimate that they owe approximately $410,000 on account of the

Employee Benefits Programs (excluding Workers Compensation remaining liability and the Union

Benefits and Programs), substantially all of which will come due within the first twenty-one days

of these chapter 11 cases.  The Employee Benefits Programs are described in greater detail below.

### A.    Health Benefit Plans.

39.    All regular, Full-Time Employees and certain Union Employees are eligible to

receive the following medical, prescription drug, vision, and dental insurance coverage, and certain

other alternative health care options (collectively, the "Health Benefit Plans").[6]  As of the Petition

Date, the Debtors estimate that they owe approximately $220,000 on account of the Health Benefit

Plans.  Specifically, the Debtors provide the following:

- Health Plan:  The Debtors' domestic healthcare coverage plan (the "Health Plan") is a self-insured plan administered by Aetna Life Insurance Company ("Aetna").  Aetna administers the Debtors' Health Benefit Plans.  All payments are processed through Aetna and then Aetna disburses those amounts to the Debtors' other insurance providers.  The Debtors estimate that the ongoing monthly administrative cost of the Health Plan will be approximately $45,000.  The Debtors estimate that the amount of incurred but not reported medical and prescription drug expenses is approximately $850,000.  The Debtors also offer continued health care coverage under COBRA to eligible Employees.[7]

- Drug Prescription Plan:  The Debtors' prescription drug plan ("Prescription Plan") is a self-insured plan administered by CVS Caremark ("Caremark").  As of the Petition Date, the Debtors do not believe that they will owe anything on account of the Prescription Plan.  There are no separate administration fees or premiums owed to Caremark on account of the Prescription Plan.  The service is provided to the Debtors through their use of Aetna.

- Vision Plan:  The Debtors also offer their Employees the option of participating in a vision plan (the "Vision Plan") administered by Aetna.  As of the Petition Date, the Debtors estimated that they owe approximately $5,000 on account of the Vision Plan.  The ongoing

---

[6]    Union Employees who are not covered by the Health Benefit Plans are generally covered by the benefit plans described in Part IV.B of this motion.

[7]    In Hawaii, health coverage is provided by Health Medical Service Association, ("HMSA").  As of the Petition Date, the Debtors estimate that they owe approximately $5,500 of prepetition obligations to HMSA on account of the healthcare plans

monthly administrative cost of the Vision Plan is included in the fees paid to Aetna for the Health Plan.

- Dental Plan:  The Debtors offer their Employees the option of participating in a dental plan (the "Dental Plan") administered by MetLife ("MetLife").  As of the Petition Date, the Debtors estimated that they owe approximately $144,000 on account of the Dental Plan (including employer contributions and employee contributions). The Debtors ongoing monthly administrative cost of the Dental Plan is included in their monthly premium payments.

- Stop-Loss Insurance Policy:  The Debtors maintain a stop-loss insurance policy (the "Stop Loss Insurance Policy") with HM Life Insurance Company of New York to protect against catastrophic claims under their Health Plan—*i.e.*, claims in excess of $250,000. As of the Petition Date, the Debtors estimated that they owe approximately $23,000 on account of the Stop Loss Insurance Policy.

**B.    Flexible Spending Benefits.**

40.    The Debtors offer most of their Full-Time Employees the ability to contribute a portion of their pre-tax compensation to flexible spending accounts to pay for eligible, out-of-pocket health care, and dependent care costs and expenses (the "Flexible Benefits Plan").  The Flexible Benefits Plan is administered by WageWorks.  The Debtors estimate that approximately 260 Employees participate in the Flexible Benefits Plan.

41.    Other than *de minimis* administrative fees, the Flexible Benefits Plan is fully funded by Employee contributions.  The Debtors forward those contributions, in addition to certain administrative fees paid by the Debtors, to Wage Works on behalf of the applicable Employees. As of the Petition Date, the Debtors owe approximately $5,000 in administrative fees for the Flexible Benefits Plan (the "Flexible Benefits Plan Obligations").

### C. Workers' Compensation and Other Insurance Programs.

#### 1. Workers' Compensation.

42.     The Debtors maintain workers' compensation insurance for their Employees at the statutorily-required level for each state in which they have Employees (collectively, and as described herein, the "Workers' Compensation Program").    The Debtors maintain two commercial insurance policies for workers compensation and employers liability, provided by American Zurich Insurance Company (collectively, the "Workers' Compensation Policies").   The Debtors pay approximately $725,000 annually to maintain the Workers' Compensation Program.

43.     The Debtors must continue the claim assessment, determination, adjudication, and payment process pursuant to the Workers' Compensation Program, without regard to whether such liabilities were outstanding before the Petition Date, to ensure that the Debtors comply with applicable workers' compensation laws and requirements.   There are approximately 77 open claims under the Workers' Compensation Policies.  As of the Petition Date, the Debtors estimate that there is approximately $110,000 in estimated remaining liability on account of the Workers' Compensation Programs.  Certain of the Debtors' Workers' Compensation Programs may change postpetition in the ordinary course due to changes in applicable laws and regulations and the Debtors' ability to meet requirements thereunder.  By this motion, the Debtors request authority to continue the Workers' Compensation Programs postpetition, including making any changes to current policies and practices that become necessary.

#### 2. Life Insurance, Accidental Death and Dismemberment Insurance, and Disability Benefits.

44.     The Debtors provide their Employees (including certain Union Employees) with the following insurance policies, including life insurance, accidental death and dismemberment

insurance, and short-term and long-term disability benefits (collectively, the "Employee Insurance Coverage"):

- Life and Accidental Death and Dismemberment Insurance: The Debtors provide basic life and accidental death and dismemberment insurance through MetLife. For certain executive Employees earning over $50,000 annually, the Debtors offer paid, supplemental term-life insurance in addition to the basic life insurance coverage. Individual policy amounts are based on annual salary amounts.

- Short-Term Disability: Part-Time and Full-Time Employees are eligible to receive short-term disability administered through Unum Group. Short-term disability benefits are determined by location of employment through state-approved plans or through Arch Insurance Companies for non-exempt plans. The Debtors cover full salary continuation for executive Employees that have been employed by the Debtors for at least one year.

- Long-Term Disability: The Debtors provide long-term disability coverage through MetLife. In addition to the standard long-term disability coverage, the Debtors offer an optional supplemental long-term disability plan. Pursuant to this plan, the Debtors contribute the premium on the first $5,000 of an Employee's annual compensation.

45.    As of the Petition Date, the Debtors believe they owe approximately $110,000 on account of the Employee Insurance Coverage (including employer contributions, employee contributions, and administrative costs).

**D.    Retirement Plans.**

46.    The Debtors maintain a retirement savings plan through Charles Schwab Trust Company for the benefit of all eligible Employees that satisfy the requirements of section 401(k) of the Internal Revenue Code (the "401(k) Plan"). There are approximately 320 active Employees who currently participate in 401(k) Plan. The Debtors withhold approximately $340,000 (in the aggregate) each month from participating Employees' paychecks on account of their 401(k) contributions. As of the Petition Date, the Debtors hold in trust approximately $85,000 in Employee 401(k) contributions (the "Unremitted 401(k) Contributions"). The 401(k) Plan allows

for automatic pre-tax salary deductions of eligible compensation up to the limits set forth by the Internal Revenue Code. The Debtors match 100% of the first 3% of an Employee's 401(k) contributions, and 50% of up to an additional 2% of Employee 401(k) contributions. The Debtors annual cost to maintain the 401(k) Plan is approximately $300,000 (excluding the Debtors' matching contributions). As of the Petition Date, the Debtors believe they do not owe any amounts on account of employer 401(k) matching contributions to the 401(k) Plan.

47.     The Debtors seek the authority, but not direction, to (a) continue the 401(k) Plan in the ordinary course of business on a postpetition basis, and to (b) remit all Unremitted 401(k) Deductions collected in the ordinary course of business.

**E.      Paid Time Off.**

48.     The Debtors provide time off to their Employees with various vacation time, sick time, paid holidays and personal days, as well as leaves of absence, as a paid time off benefit (the "Paid Time Off"). Specifically, the Debtors provide the following:

- Vacation Time: The Debtors provide all Full-Time and Part-Time Employees with vacation time as a Paid Time Off benefit ("Vacation Time"). The amount of available Vacation Time accrues each pay period and is generally determined by an individual Employee's length of full-time employment, salary level, and job title, and whether certain Collective Bargaining Agreements require the Debtors to offer Union Employees predetermined amounts of paid Vacation Time. Generally, Employees can receive between two to three weeks of Vacation Time per year. Upon termination or resignation of an Employee, the Employee's final paycheck will include any unused accrued Vacation Time. The Debtors estimate, based on past practice, that there are no amounts outstanding on account of accrued vacation as of the Petition Date.

- Sick Time: The Debtors provide up to six days (regardless of the length of employment) of sick time (the "Sick Time") per year to their Full-Time Employees, Part-Time Employees, and certain Union Employees. Employees are not paid for unused Sick Time upon termination or resignation, unless a Collective Bargaining Agreement or applicable state law requires otherwise.

- <u>Paid Holiday</u>:  The Debtors also maintain a policy whereby Employees receive compensation for certain non-working holidays (the "<u>Paid Holidays</u>").

- <u>Paid Personal Days</u>:  Employees are also permitted to take up to four paid personal days per calendar year (the "<u>Paid Personal Days</u>"). Unused Paid Personal Days are not payable upon termination of employment, except as otherwise provided under certain Collective Bargaining Agreements or applicable state laws.

- <u>Leave of Absence Time</u>:  The Debtors provide Employees with certain other leave of absence time as required by law (collectively, the "<u>Leave of Absence Time</u>").  Leave of Absence Time includes family medical leave, pregnancy, adoption and foster care leave, military leave, jury duty, voting leave, personal leave, and bereavement leave.  Leave of Absence Time is paid out as such time is taken by executive Employees.  The Debtors do not accrue paid Leave of Absence Time for their Hourly Employees.

49.    The Debtors seek authority, but not direction, to continue to honor Vacation Time, Sick Time, Leave of Absence Time, Paid Holidays, and Paid Personal Days in the ordinary course of business on a postpetition basis.  Additionally, the Debtors seek authority, but not direction, to honor any cash and non-cash obligations owed on account of Vacation Time, Sick Time, Leave of Absence Time, Paid Holidays, and Paid Personal Days in the ordinary course of business.  For the avoidance of doubt, the Debtors seek to pay Paid Time Off to any Employee in excess of the $13,650 priority cap imposed by section 507(a)(4) of the Bankruptcy Code solely pursuant to the Final Order.

**F.    Employee Programs.**

50.    In addition to the foregoing, the Debtors offer the Employees the opportunity to participate in a range of ancillary benefits, including commuter benefits, identity theft protection, certain basic legal services (*e.g.*, legal advice regarding traffic violations), and other employee wellness programs (collectively, the "<u>Additional Programs</u>").  The aggregate cost of the Additional Programs is comparatively low, but such programs are important to maintaining employee good

will and productivity.  Based on historical practice, the average monthly cost to maintain such programs is approximately $75,000.  As of the Petition Date, the Debtors estimate that they owe approximately $75,000 on account of the Additional Programs.

## IV.    Benefits and Programs for Union Employees.

51.    In addition to the various programs and benefits described above, the Debtors also maintain certain programs and make various deductions on behalf of certain of their Union Employees.

### A.    Union Employee Incentive Programs.

52.    The Debtors currently maintain two general types of incentive programs exclusively for certain Union Employees under the terms of various Collective Bargaining Agreements (collectively, the "Union Employee Incentive Programs"), as follows:

- Sales Incentives:  Under the Sales Incentives program, the Debtors provide certain Union Employees with sales incentives to encourage superior performance.  For example, Union Employees at the Debtors' Madison Avenue flagship store receive a bonus when they exceed department average sales per productive selling hour.  Only Union Employee sales associates and personal shoppers are eligible to participate in the Sales Incentives program.  For the first half of 2019, the eligible Union Employees earned approximately $200,000 in seasonal Sales Incentives.  The Sales Incentives program ended July 31, 2019.  Going forward, the Sales Incentives program will be replaced by a tiered commission incentives program (the "Tiered Commission Incentives").  The Debtors believe there are no accrued but unpaid amounts on account of the Sales Incentives as of the Petition Date.

- Tiered Commission Incentives:  Under the new Tiered Commission Incentives program, eligible Union Employees that sell at least $1 million in merchandise will earn .25% in commission, with an additional .25% earned upon selling at least $2 million in merchandise.  Each fiscal year the commission tiers achieved are reset.  As of the Petition Date, the Debtors believe that there are no accrued but unpaid amounts under the Tiered Commission Incentives.

- <u>Punctuality and Attendance Incentives</u>: The Debtors provide certain Union Employees with a bonus based on continued punctuality. For example, a Union Employee working at the Debtors' Madison Avenue flagship store receives one extra day's pay if, during a 13-week period, that Union Employee has no more than one absence and is late no more than twice. Only Union Employee support associates are eligible to participate in the Punctuality and Attendance Incentives program. The amount accrued under the Punctuality and Attendance Incentives program typically decreases as the year progresses. As of the second quarter of this year, eligible Union Employees have accrued approximately $6,000. As of the Petition Date, the Debtors believe that there are no amount accrued but unpaid amounts under the Punctuality and Attendance Incentive program.

53.     Only certain Union Employee, including sales associates, personal shoppers, and support associates, are eligible to participate in the Union Employee Incentive Programs. The Union Employee Incentive Programs are paid out on a seasonal basis. As of the Petition Date, the Debtors estimate that they do not owe any amounts with respect to the Union Employee Incentive Programs (collectively, the "<u>Unpaid Union Employee Incentives</u>"). In all instances, the Union Employee Incentive Programs are required under the terms of various Collective Bargaining Agreements. Thus, in order to continue motivating their Union Employees and to comply with the Debtors' contractual obligations, the Debtors seek the authority to pay the Unpaid Union Employee Incentives and continue to offer the Union Employee Incentive Programs in the ordinary course of business on a postpetition basis.[8]

**B.     Union Benefits.**

54.     Most Union Employee's retirement benefits are administered by the Unions themselves, without the Debtors' participation. In accordance with certain Collective Bargaining Agreements, the Debtors make monthly contributions to the Amalgamated Health Benefits Plan

---

[8]     Notably, at this time the Debtors do not seek to make payments to "insiders" (as defined by the section 101(31) of the Bankruptcy Code) in connection with the continuation of any of the Union Employee Bonus Programs.

and the Amalgamated Retail Retirement Fund maintained by the Unions to provide health, welfare and retirement benefits to certain Union Employees[9] (the "Union Benefit Contributions"). Historically, the Debtors have made average monthly contributions of $60,000 to the Amalgamated Retail Retirement Fund and average monthly contributions of $480,000 to the Amalgamated Health Benefits Plan. The Union Employees do not contribute to the Amalgamated Retail Retirement Fund. Union Employees instead contribute to the Amalgamated Health Benefits Plan, with such contributions varying between approximately $870 to $2,600, or between 26% and 33% of the total monthly contributions. As of the Petition Date, the Debtors estimate that they have approximately $1.5 million due and owing in prepetition obligations on account of the Union Benefits Contributions ("Unpaid Union Benefit Contributions"). By this motion, the Debtors seek authority to pay any prepetition outstanding amounts owed on account of Unpaid Union Benefits Contributions and continue such payments in the ordinary course of business on a postpetition basis.

### Basis for Relief

I.    **Sufficient Cause Exists to Authorize the Debtors to Honor the Employee Compensation and Benefits Obligations.**

    A.    **Certain of the Employee Compensation and Benefits Are Entitled to Priority Treatment.**

55.    Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle the majority of the Employee Compensation and Benefits to priority treatment. As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan. *See* U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims, given priority under sections 507(a)(4)

---

[9]    Only certain Union Employees participate in the Amalgamated Health Benefits Plan, including those Union Employees that work at the Debtors' Madison Avenue store, the Long Island City store, and the Lyndhurst Distribution Center.

and 507(a)(5) of the Bankruptcy Code, for (a) wages, salaries or commissions, including vacation, severance, and sick leave pay earned by an individual and (b) contributions to an employee benefit plan).  To the extent that an Employee receives no more than $13,650 on account of claims entitled to priority, the relief sought with respect to compensation only affects the timing of payments to Employees and does not have any material negative impact on recoveries for general unsecured creditors.  Indeed, the Debtors submit that payment of the Employee Compensation and Benefits at this time enhances value for the benefit of all interested parties.  Finding, attracting, and training new qualified talent would be extremely difficult and would most likely require higher salaries, guaranteed bonuses, and more comprehensive compensation packages than are currently provided to Employees.

**B.      Payment of Certain Employee Compensation and Benefits Is Required by Law.**

56.      The Debtors seek authority to pay the Withholding Obligations to the appropriate third-party payees.  These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' Wages. Indeed, certain Withholding Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from Employees' Wages on another party's behalf.  *See* 11 U.S.C. §§ 541(b)(1), (d).  Further, federal and state laws require the Debtors to withhold certain tax payments from Employees' Wages and to pay such amounts to the appropriate taxing authority. 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).  Because

the Withholding Obligations may not be property of the Debtors' estates, the Debtors request authorization to transmit the Withholding Obligations to the proper parties in the ordinary course of business.

57.     Similarly, state laws require the Debtors to maintain the Workers' Compensation Program.  If the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states.  Payment of all obligations related to the Workers' Compensation Program is therefore crucial to the Debtors' continued operations and the success of these chapter 11 cases.

## II.     Payment of the Employee Compensation and Benefits Is Warranted Under Section 363(b)(1) of the Bankruptcy Code and the Doctrine of Necessity.

58.     Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition obligations in appropriate circumstances.  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc.*, (*In re James A. Phillips, Inc.*), 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers who were potential lien claimants).  In authorizing payments of certain prepetition obligations, courts have relied on several legal theories, rooted in sections 1107(a), 1108, 363(b), 507, and 105(a) of the Bankruptcy Code.

59.     Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners."  *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value."  *Id.*  Some courts have noted that there are instances in which a debtor can fulfill

this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.*  The *CoServ* court specifically noted that satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

60.    Consistent with a debtor's fiduciary duties, courts have also authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so.  *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 175 (discussing prior order authorizing payment of prepetition wage claims pursuant to section 363(b) and noting that relief is appropriate where payment is needed to "preserve and protect its business and ultimately reorganize, retain its currently working employees and maintain positive employee morale."); *see also Armstrong*, 29 B.R. at 397 (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors).   Specifically, the business judgment standard requires that a debtor "articulate some business justification, other than mere appeasement of major creditors." *Ionosphere Clubs*, 98 B.R. at 175.

61.    In addition, courts may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.   Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."   Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses.  *See In re C.A.F. Bindery, Inc*., 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (holding that the "doctrine of necessity" stands for the principle that a bankruptcy court may allow pre-plan

payments of prepetition obligations where such payments are critical to the debtor's organization"). Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *Ionosphere Clubs*, 98 B.R. at 176.

62. The Debtors submit that the payment of the Employee Compensation and Benefits represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code. Paying prepetition wages, employee benefits, and similar obligations will benefit the Debtors' estates and their creditors by allowing the Debtors' business operations to continue without interruption. Indeed, the Debtors believe that without the relief requested herein, Employees may seek alternative employment opportunities, perhaps with the Debtors' competitors. Such a development would deplete the Debtors' workforce, thereby hindering the Debtors' ability to operate their business and, likely, diminishing stakeholder confidence in the Debtors' ability to successfully administer their estates. The loss of valuable Employees and resulting need to recruit new personnel (and the costs attendant thereto) would be distracting at this crucial time when the Debtors need to focus on stabilizing their business operations. Accordingly, there can be no doubt that the Debtors must do their utmost to retain their workforce by, among other things, continuing to honor all wage, benefits, and related obligations, including the prepetition Employee Compensation and Benefits.

63. In addition, the majority of Employees rely exclusively on the Employee Compensation and Benefits to satisfy their daily living expenses. Consequently, Employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor their obligations related thereto. Failure to satisfy such obligations will jeopardize Employee morale

and loyalty at a time when Employee support is critical to the Debtors' businesses. Furthermore, if this Court does not authorize the Debtors to honor their various obligations under the insurance programs described herein, Employees will not receive health coverage and may, therefore, be obligated to pay certain health care claims that the Debtors have not satisfied. The loss of health care coverage will result in considerable anxiety for Employees (and likely attrition) at a time when the Debtors need their Employees to perform their jobs at peak efficiency. Additionally, Employee attrition would cause the Debtors to incur additional expenses to find appropriate and experienced replacements, severely disrupting the Debtors' operations at this critical juncture.

64.    The importance of a debtor's employees to its operations has been repeatedly recognized by courts in this jurisdiction, and such courts have granted relief similar to the relief requested herein. *See, e.g.*, *In re Hollander Sleep Products, LLC*, Case No. 19-11608 (MEW) (Bankr. S.D.N.Y. July 2, 2019) (authorizing debtors to continue employee compensation and benefit programs and pay certain prepetition obligations related thereto on a postpetition basis); *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. Apr. 22, 2019) (same); *In re Aegean Marine Petrol. Network Inc.*, Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Dec. 6, 2018) (same); *In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. Apr. 9, 2018) (same); *In re Cenveo, Inc.*, Case No. 18-22178 (RDD) (Bankr. S.D.N.Y. February 2, 2018) (same).[10]

65.    Accordingly, the Debtors respectfully request that the Court authorize the Debtors to pay any prepetition amounts accrued and unpaid on account of the Employee Compensation

---

[10]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

and Benefits and to continue the Employee Compensation and Benefits on a postpetition basis in the ordinary course of business and consistent with past practices.

## III.   The Debtors Seek a Waiver of the Automatic Stay as It Applies to Workers' Compensation Claims.

66.     Section 362(a)(1) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause."

67.     The Debtors seek authorization under section 362(d) of the Bankruptcy Code to permit Employees to proceed with their workers' compensation claims in the appropriate judicial or administrative forum.  The Debtors believe that cause exists to modify the automatic stay because staying the workers' compensation claims could have a detrimental effect on the financial well-being and Employee morale and lead to the departure of certain Employees who are critical at this juncture.  Such departures could cause a severe disruption in the Debtors' businesses to the detriment of all parties in interest.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

68.     The Debtors have sufficient funds to pay the amounts described in this motion by virtue of expected cash flows during these chapter 11 cases, debtor-in-possession financing, and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests relating to an authorized payment in respect of the Employee Compensation and Benefits obligations, as applicable.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those

relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors

respectfully request that the Court authorize and direct all applicable financial institutions, when

requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer

requests in respect of the relief requested herein.

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

69.    Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one

days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable

harm."    For the reasons discussed above, authorizing the Debtors to pay the Employee

Compensation and Benefits and granting the other relief requested herein is integral to the Debtors'

ability to transition their operations into these chapter 11 cases and maintain the value of their

estate postpetition.  Failure to receive such authorization and other relief during the first twenty-

one days of these chapter 11 cases would severely disrupt the Debtors' ability to maintain their

estates at this critical juncture.  For the reasons discussed herein, the relief requested is necessary

in order for the Debtors to operate their business in the ordinary course, preserve the going concern

value of the Debtors' operations, and maximize the value of their estates for the benefit of all

stakeholders.    Accordingly, the Debtors submit that they have satisfied the "immediate and

irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested

herein.

### Motion Practice

70.    This motion includes citation to the applicable rules and statutory authorities upon

which the relief requested herein is predicated, and a discussion of their application to this motion.

Accordingly, the Debtors submit that this motion satisfies Local Rule 9013-1(a).

## **Reservation of Rights**

71.     Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

## **Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

72.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **Notice**

73.    The Debtors will provide notice of this motion to:  (a) the United States Trustee for the Southern District of New York; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition ABL Agent; (d) counsel to the Term Loan Agent; (e) counsel to the DIP parties; (f) the United States Attorney's Office for the Southern District of New York; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for all states in which the Debtors conduct business; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

74.    No prior request for the relief sought in this motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request entry of Interim and Final Orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other relief as is just and proper.

| | |
|---|---|
| Dated:  August 6, 2019 | */s/ Joshua A. Sussberg, P.C.* |
| New York, New York | Edward O. Sassower, P.C. |

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

Chad J. Husnick, P.C.
W. Benjamin Winger (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

-and-

Steven J. Reisman
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, New York 10022
Telephone:    (212) 940-8800
Facsimile:    (212) 940-8776

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

## **EXHIBIT A**

### **Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING THE**
**DEBTORS TO (A) PAY PREPETITION EMPLOYEE**
**WAGES, SALARIES, OTHER COMPENSATION, AND**
**REIMBURSABLE EMPLOYEE EXPENSES AND (B) CONTINUE**
**EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing, but not directing, the Debtors to (i) pay certain prepetition employee wages, salaries, other compensation, reimbursable employee expenses, and (ii) continue employee benefits programs in the ordinary course, including payment of certain prepetition obligations related thereto, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819). The location of the Debtors' service address is: 575 Fifth Avenue, New York, New York 10017.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Motion is granted on an interim basis as set forth herein.

2.     The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2019, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2019, and shall be served on:  (a) Barneys New York, Inc., 575 Fifth Avenue, New York, New York 10017; Attn: Grace Fu;  (b) proposed co-counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn:  Edward O. Sassower, P.C., Joshua A. Sussberg, P.C., and Gene Goldmintz, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Chad J. Husnick, P.C. and W. Benjamin Winger, and Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, New York 10022, Attn: Steven J. Reisman; (c) the United States Trustee, 11A Clinton Avenue, Room 620, Albany, New York 12207, Attn: Alicia Leonhard; (d) counsel to any statutory committee appointed in these chapter 11 cases; (e) counsel to the Prepetition ABL Agent, (x) Riemer & Braunstein LLP, 100 Cambridge Street, Boston, Massachusetts 02114, Attn: Donald E. Rothman and (y) Riemer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, New York 10036, Attn: Steven E. Fox; (f) counsel to the Term Loan Agent, Choate Hall & Stewart LLP, Two International Place,

Boston, Massachusetts 02110, Attn: Kevin J. Simard and Mark Silva; and (g) counsel to the DIP parties, Paul Hastings LLP, 71 South Wacker Drive, Chicago, Illinois, 60606, Attn: Chris Dickerson and Holly Snow.  In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3.    The Debtors are authorized, but not directed, to continue the Employee Compensation and Benefits and to honor and pay, in the ordinary course and in accordance with the Debtors' prepetition policies and prepetition practices, any obligations on account of the Employee Compensation and Benefits, irrespective of whether such obligations arose prepetition or postpetition.

4.    Nothing herein shall be deemed to authorize the payment of any prepetition amounts above the statutory cap imposed by section 507(a)(4) and (a)(5) of the Bankruptcy Code with respect to prepetition amounts owed on account of the Employee Compensation and Benefits obligations, except upon further order of this Court.

5.    Nothing herein shall be deemed to (a) authorize the payment of any amounts which are subject to section 503(c) of the Bankruptcy Code, or (b) authorize the Debtors to cash out unpaid vacation/leave time upon termination of an Employee, unless applicable state law or Collective Bargaining Agreement requires such payment; *provided* that nothing in this Interim Order shall prejudice the Debtors' ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

6.    The Debtors shall not make any non-ordinary course bonus, incentive, or severance payments to their Employees or any Insiders (as such term is defined in section 101(31) of the Bankruptcy Code) without further order of this Court.  For the avoidance of doubt, no bonus, incentive, or severance payments shall be made to any Insider without further order of this Court.

3

7.      Pursuant to section 362(d) of the Bankruptcy Code, Employees are authorized to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum and the Debtors are authorized, but not directed, to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

8.      The Debtors are authorized, but not directed, to forward any unpaid amounts on account of Deductions or Payroll Taxes to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' prepetition policies and practices.

9.      The Debtors are authorized, but not directed, to pay costs and expenses incidental to payment of the Employee Compensation and Benefits obligations, including all administrative and processing costs and payments to outside professionals.

10.     Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Employee Compensation and Benefits obligations.

11.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

12.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the

4

Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Interim Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens.  Any payment made pursuant to this Interim Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

13.    The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

14.    The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any prepetition amounts owed to their Employees.

15.    Notwithstanding the relief granted in this Interim Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with any orders entered by the Court approving the Debtors' entry into any postpetition debtor in possession

financing facility and any budget in connection therewith and/or authorizing the Debtors' use of cash collateral and any budget in connection therewith.

16.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

17.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

18.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

19.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

20.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Dated: _____, 2019
Poughkeepsie, New York                          _____
                                                THE HONORABLE CECELIA G. MORRIS
                                                UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

---

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION EMPLOYEE WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EMPLOYEE EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF

---

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"):  (a) authorizing, but not directing, the Debtors to (i) pay certain prepetition employee wages, salaries, other compensation, reimbursable employee expenses, and (ii) continue employee benefits programs in the ordinary course, including payment of certain prepetition obligations related thereto; and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is:  575 Fifth Avenue, New York, New York 10017.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.       The Motion is granted as set forth herein.

2.       The Debtors are authorized, but not directed, to continue the Employee Compensation and Benefits and to honor and pay, in the ordinary course and in accordance with the Debtors' prepetition policies and prepetition practices, any obligations on account of the Employee Compensation and Benefits, irrespective of whether such obligations arose prepetition or postpetition.

3.       Nothing herein shall be deemed to (a) authorize the payment of any amounts which are subject to section 503(c) of the Bankruptcy Code, or (b) authorize the Debtors to cash out unpaid vacation/leave time upon termination of an Employee, unless applicable state law or Collective Bargaining Agreement requires such payment; *provided* that nothing in this Interim Order shall prejudice the Debtors' ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

4.       The Debtors shall not make any non-ordinary course bonus, incentive, or severance payments to their Employees or any Insiders (as such term is defined in section 101(31) of the Bankruptcy Code) without further order of this Court.  For the avoidance of doubt, no bonus, incentive, or severance payments shall be made to any Insider without further order of this Court.

5.     Pursuant to section 362(d) of the Bankruptcy Code, Employees are authorized to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum and the Debtors are authorized, but not directed, to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

6.     The Debtors are authorized, but not directed, to forward any unpaid amounts on account of Deductions or Payroll Taxes to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' prepetition policies and practices.

7.     The Debtors are authorized, but not directed, to pay costs and expenses incidental to payment of the Employee Compensation and Benefits obligations, including all administrative and processing costs and payments to outside professionals.

8.     Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Employee Compensation and Benefits obligations.

9.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any

3

other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Final Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens. Any payment made pursuant to this Final Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

10. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order without any duty of further inquiry and without liability for following the Debtors' instructions.

11. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any prepetition amounts owed to their Employees.

12. Notwithstanding the relief granted in this Final Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with any orders entered by the Court approving the Debtors' entry into any postpetition debtor in possession financing facility and any budget in connection therewith and/or authorizing the Debtors' use of cash collateral and any budget in connection therewith.

13. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

4

14.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

15.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

16.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

17.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: _____, 2019
Poughkeepsie, New York

_____
THE HONORABLE CECELIA G. MORRIS
UNITED STATES BANKRUPTCY JUDGE