> **PARTIES RECEIVING THIS OMNIBUS MOTION SHOULD LOCATE THEIR
> NAMES AND THEIR LEASES ON THE ATTACHED <u>SCHEDULE 1</u> TO <u>EXHIBIT A</u> TO
> DETERMINE IF THIS MOTION AFFECTS THEIR LEASE OR THEIR RIGHTS THEREUNDER**

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

-and-

Chad J. Husnick, P.C.
W. Benjamin Winger (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

Steven J. Reisman
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, New York 10022
Telephone:     (212) 940-8800
Facsimile:     (212) 940-8776

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' OMNIBUS MOTION FOR
ENTRY OF AN ORDER (I) AUTHORIZING
(A) REJECTION OF CERTAIN UNEXPIRED LEASES
OF NONRESIDENTIAL REAL PROPERTY, EFFECTIVE AS OF
THE REJECTION DATE, AND (B) ABANDONMENT OF ANY PERSONAL
PROPERTY RELATED THERETO, AND (II) GRANTING RELATED RELIEF**

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue New York, New York 10017.

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion.[2]

## Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A**, (a) authorizing the Debtors to reject certain unexpired leases of real property, including

any guaranties thereof and any amendments, modifications, or subleases thereto (collectively, the

"Leases") for nonresidential real property located at the premises set forth on **Schedule 1** to

**Exhibit A** attached hereto; (b) authorizing the abandonment of certain equipment, fixtures,

furniture, or other personal property that may be located at the premises and not otherwise

transitioned to another store location (collectively, the "Personal Property"), both rejection of

Leases and abandonment of Personal Property to be effective as of the date the Debtors have

surrendered the premises to the landlord via delivery of the keys, key codes, and alarm codes to

the premises, as applicable, to the applicable lease counterparty, or, if not delivering such keys or

codes, providing notice that the landlord may re-let the premises (the "Rejection Date"); and

(c) granting related relief.   In support of the motion, the Debtors submit the Declaration of

Mohsin Y. Meghji (the "Meghji Declaration"), attached hereto as **Exhibit B**.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York

(the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference from the United States District Court for the Southern*

---

[2]    A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors'
chapter 11 cases, are set forth in greater detail in the *Declaration of Mohsin Y. Meghji, Chief Restructuring Officer
of Barneys New York, Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day
Declaration"), filed contemporaneously herewith.  Capitalized terms used but not otherwise defined in this motion
shall have the meanings ascribed to them in the First Day Declaration.

*District of New York*, dated February 1, 2012. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the Court entering a final order in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 365(a), and 554(a) of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 6006-1 and 6007-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

**Background**

5.      The Debtors are a world-renowned luxury specialty retailer with twenty-two stores across the United States, including flagships in New York City and Beverly Hills, and a highly curated, shopper-friendly e-commerce platform. Founded as a men's retailer in 1923 in downtown Manhattan, the Debtors sell the most intriguing fashion offering from the world's top designers, including women's and men's clothing, accessories, shoes, jewelry, cosmetics, fragrances, and gifts for the home. The Debtors remain headquartered in New York, New York and lease all of their store locations. The Debtors reported revenues of approximately $800 million for 2018. As of the date hereof (the "Petition Date"), the Debtors have approximately 2,300 employees and funded debt obligations of approximately $200 million.

6.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

Concurrently with the filing of this motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

### **Leases to Be Rejected**

7.      As part of their ongoing restructuring efforts, the Debtors have determined that certain of their brick-and-mortar retail and outlet stores do not have a place in the Debtors' go-forward business plan.  The Debtors are party to twenty-eight nonresidential real property leases across the United States, twenty-two of which relate to store locations.  Debtor Barney's, Inc. is the lessee counterparty to each such lease.

8.      The Debtors, with the assistance of their advisors, undertook a comprehensive review and store-by-store analysis of their lease portfolio and the performance of each of their stores.  The Debtors' lease portfolio is a significant contributing factor to their current financial challenges and they have determined, as a sound exercise of business judgment, that closure of numerous underperforming stores would be value maximizing.  Accordingly, the Debtors seek to reject fifteen leases associated with such stores at this time.  The Leases are identified and further described on **Schedule 1**.[3]  The Debtors will transfer or sell substantially all of their inventory located in these store locations, cease operations, vacate the premises, and abandon possession and the keys to the respective landlords of these fifteen stores.

9.      The Debtors submit that none of the Leases is reasonably likely to generate a net economic benefit to their estates, and that the terms of each Lease are burdensome and/or

---

[3]    The Debtors will continue to review their store portfolio after the Petition Date and anticipate they may identify other stores to be closed.  The Debtors may seek to reject additional unexpired nonresidential real property leases.

substantially above-market.  The Debtors have attempted to renegotiate the Leases on mutually

acceptable terms.    The lessor counterparties, however, declined the Debtors' proposed

modifications.  Absent rejection, the Debtors would be obligated to pay rent under the Leases even

as they cease operations at and will no longer be in possession of the premises identified on

**Schedule 1**.  The Debtors likewise would be obligated to pay their proportionate share of common

area expenses, real property taxes, utility costs, insurance, and other related charges associated

with certain of the Leases.  The Debtors estimate that rejecting the Leases will save approximately

$2.2 million per month in rent and associated costs and have determined in their business judgment

that such costs constitute a wasteful drain of estate assets.  In addition, the Debtors reviewed the

market value of the Leases and determined, in their business judgment, that marketing the Leases

for assignment or sublease to a third party would not generate any significant value for the estates,

especially compared to the continued costs associated with maintaining the leased premises.

Accordingly, in an effort to avoid unnecessary postpetition rent and administrative costs, the

Debtors have determined that it is in the best interests of their estates to reject the Leases set forth

on **Schedule 1**, effective as of the Rejection Date.

### Basis for Relief

**I.    Rejection of the Leases Reflects the Debtors' Sound Business Judgment.**

10.    Section 365(a) of the Bankruptcy Code provides that a debtor in possession,

"subject to the court's approval, may . . . reject any executory contract or unexpired lease of the

debtor."  *See also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984) ("This language by its

terms includes all executory contracts except those expressly exempted."); *In re Lavigne*, 114 F.3d

379, 387 (2d Cir. 1997) (discussing the effect of the rejection of an executory contract generally).

For the benefit of the estate, a debtor may, under section 365 of the Bankruptcy Code, relieve itself

of burdensome agreements where performance still remains.  *See, e.g.*, *In re Republic Airways*

*Holdings, Inc.*, 547 B.R. 578, 582 (Bankr. S.D.N.Y 2016) ("The purpose behind Section 365(a) is to permit the trustee or debtor-in-possession to use valuable property of the estate and abandon burdensome property.") (quoting *In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d Cir. 1993)).

11.     The Debtors' rejection of an executory contract or unexpired lease is governed by the "business judgment" standard.  *See Orion Pictures*, 4 F.3d at 1098–99; *In re Enron Corp.*, Case No. 01 B 16034 (AJG), 2006 WL 898033, at *4 (Bankr. S.D.N.Y. Mar. 24, 2006) ("In determining whether to approve a [debtor's] decision to reject such lease or contract, a court applies the 'business judgment' test which is met if the rejection is beneficial to the estate."). Under the business judgment standard, a debtor's business decision should be approved unless that decision "derives from bad faith, whim or caprice."  *In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006) (quoting *In re Cent. Jersey Airport Servs.*, *LLC*, 282 B.R. 176, 183 (Bankr. D.N.J. 2002) (internal quotations omitted)).

12.     Rejection of the Leases is well within the Debtors' business judgment and is in the best interest of their estates.  The Debtors seek to reject the Leases to avoid the incurrence of any additional, unnecessary expenses related to the Leases and the maintenance of the stores and offices where they are in the process of vacating the premises.  The Debtors have concluded that the cost of maintaining these locations outweighs any revenues that such stores have generated in the past or are likely to generate in the future.

13.     Absent rejection, the Leases will continue to burden the Debtors' estates with substantial administrative expenses at a critical time when the Debtors are making concerted efforts to maximize liquidity and preserve the going concern value of their business.  Rejecting the Leases will help ease the Debtors' cash burn and increase the Debtors' liquidity.

14.     After evaluation and analysis, the Debtors and their advisors have determined that there is no net benefit that is likely to be realized from efforts to market the Leases, and that there is little if any likelihood that the Debtors will be able to realize value from the Leases.  Therefore, the Debtors have concluded that rejection of the Leases represents a sound exercise of their business judgment and is in the best interest of the Debtors' estates, their creditors, and other stakeholders.

15.     Given that the stores to be closed are not a part of the Debtors' go-forward business plan and that the Leases are a burden to their estates, the Debtors have decided, in the exercise of their sound business judgment, to reject the Leases.  The Debtors respectfully request that the Court authorize the rejection of the Leases pursuant to section 365(a) of the Bankruptcy Code.

## II.    Rejection of the Leases Effective as of the Rejection Date Is Appropriate.

16.     Section 365 of the Bankruptcy Code does not specifically address when the Court may order rejection to be applied.  *See In re Sears Holdings Corporation*, Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 16, 2018) (approving rejection of unexpired leases to the date of rejection); *In re Jamesway Corp.*, 179 B.R. 33, 37 (S.D.N.Y. 1995) (stating that section 365 does not include "restrictions as to the manner in which the court can approve rejection"); *see also In re CCI Wireless, LLC*, 297 B.R. 133, 138 (D. Colo. 2003) (noting that section 365 "does not prohibit the bankruptcy court from allowing the rejection of leases to apply retroactively").  But courts have held that a bankruptcy court may, in its discretion, authorize rejection retroactively to a date prior to entry of the order authorizing such rejection where the balance of equities favors such relief.  *See BP Energy Co. v. Bethlehem Steel Corp.*, Case No. 02 CIV. 6419 (NRB), 2002 WL 31548723, at *3 (S.D.N.Y. Nov. 15, 2002) ("[W]e cannot conclude . . . that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of the equities favors this solution."); *In re Jamesway Corp.*, 179 B.R. at 38 (same); *see also In re At*

*Home Corp.*, 392 F.3d 1064, 1065–66 (9th Cir. 2004) (affirming bankruptcy court's approval of retroactive rejection) *cert. denied sub nom.*, 546 U.S. 814 (2005); *In re Thinking Machs., Corp.*, 67 F.3d 1021, 1028 (1st Cir. 1995) ("[B]ankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation").

17.     In considering whether to approve retroactive rejection, courts examine a number of factors, including the costs that a delayed rejection date would otherwise impose on a debtor. *See Jamesway Corp.*, 179 B.R. at 38.  Courts also consider whether a debtor has provided sufficient notice of its intent to reject an unexpired lease of real property.  *See, e.g.*, *In re GCP CT School Acquisition LLC*, 429 B.R. 817, 832–32 (B.A.P. 1st Cir. 2010) (finding sale and settlement motions, in the aggregate, provided landlord with sufficient and reasonable notice that chapter 7 trustee intended to reject unexpired real property lease, and that the court had basis to exercise its equitable powers to order rejection to operate retroactively).  A debtor's timely surrender of leased premises weighs in favor of retroactive rejection because it enables a landlord to seek a new tenant in an expeditious manner.  *See, e.g.*, *In re Adelphia Bus. Solutions*, 482 F.3d 602, 608–09 (2d Cir. 2007) ("The Bankruptcy Court also properly considered that [the debtor] had vacated the premises and thereby provided [the landlord] with the opportunity to lease the premises to another tenant.").

18.     The balance of the equities in this case favors approval of retroactive rejection of the Leases.  Prior to the Petition Date, the Debtors determined in their business judgment to forego payment of rent in an attempt to preserve liquidity thereby initiating the notice period at the conclusion of which the landlords may evict the Debtors and giving the landlords an opportunity to mitigate damages by beginning to look for new tenants.  As a result of these prepetition actions and notice of this motion, the landlords are not subject to any uncertainty regarding the Debtors' intent with respect to the Leases.  Moreover, the landlords will not be unduly prejudiced if rejection

is deemed effective as of the Rejection Date because they will have received notice of this motion and had sufficient opportunity to act accordingly.  Upon the respective Rejection Date for each Lease identified in **Schedule 1**, the landlords will be relieved of their own obligations under the Leases, allowing them to cease performance and immediately repossess their property or enter into new leases.  Any postponement of the effective date of rejection of the Leases would compel the Debtors to compensate the landlords, at the estates' expense, for a delay that the Debtors made every effort to avoid, and force the Debtors potentially to incur unnecessary administrative expenses for Leases that provide no tangible benefit to these estates.  Such an outcome would be inequitable to the Debtors' other stakeholders.

19.    Pursuant to section 365 of the Bankruptcy Code, the Debtors seek to effectuate rejection of the Leases as of the Rejection Date, which is the date that the Debtors surrender possession of the property, and which may occur before the date an order approving rejection of the Leases has been entered by the Court.  For the reasons set forth above, permitting rejection of the Leases to occur as of the Rejection Date is fair and equitable to all parties in interest, especially where the counterparties to the Leases will not be prejudiced thereby.  Permitting rejection to occur as of the Rejection Date is consistent with prior rulings in this and other jurisdictions.  *See, e.g.*, *In re Sears Holdings Corporation*, Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 16, 2018) (approving rejection of unexpired leases to the date of rejection); *In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. Apr. 9, 2018) (approving rejection of unexpired leases); *In re Sbarro LLC*, Case No. 14-10557 (MG) (Bankr. S.D.N.Y. Mar. 10, 2014) (same); *In re The Reader's Digest Ass'n, Inc.*, Case No. 09-23529 (RDD) (Bankr. S.D.N.Y. Sept. 17, 2009) (approving retroactive rejection of unexpired leases); *Adelphia Bus. Sols., Inc. v. Abnos*, 482 F.3d 602 (2d Cir. 2007) (upholding a bankruptcy court ruling that a rejection of an unexpired lease was

retroactive to the date of the hearing on the motion to reject, even though the order to reject was

not entered until nearly thirty-three months later); *BP Energy Co. v. Bethlehem Steel Corp.*, 2002

WL 31548723, at *3 (S.D.N.Y. Nov. 15, 2002) (finding that retroactive rejection is valid when the

balance of the equities favor such treatment); *In re Jamesway Corp.*, 179 B.R. 33, 36 (S.D.N.Y.

1995) (stating that section 365 does not include "restrictions as to the manner in which the court

can approve rejection"); *see also Thinking Mach. Corp. v. Mellon Fin. Servs. (In re Thinking Mach.

Corp.)*, 67 F.3d 1021, 1028 (1st Cir. 1995) (approving retroactive orders of rejection where the

balance of the equities favors such relief).[4]

### III.    Abandonment of Personal Property Located at the Premises Is Authorized by Section 554(a) of the Bankruptcy Code.

20.    Section 554(a) provides that a debtor in possession may abandon, subject to court

approval, "property of the estate that . . . is of inconsequential value and benefit to the estate."

Before authorizing abandonment of property, a bankruptcy court must find either (a) the property

is burdensome to the estate, or (b) the property is both of inconsequential value and

inconsequential benefit to the estate. *See*, *e.g.*, *Midlantic Nat'l bank v. N.J. Dep't of Envtl. Prot.*,

474 U.S. 494, 497 (1986), *reh'g denied*, 475 U.S. 1091 (1986).[5]

21.    With respect to the Debtors' request for authority to abandon property, the Debtors

submit that the standard set forth in section 554(a) of the Bankruptcy Code is satisfied.    The

Debtors intend to transition inventory from the abandoned premises to other store locations and

---

[4]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

[5]    Rule 6007-1 of the Local Rules requires that notice of a proposed abandonment describe the property to be abandoned, state the reason for the proposed abandonment, and identify the entity to whom the property is proposed to be abandoned, unless the Court orders otherwise.  The Debtors submit that given the description of the Personal Property provided herein the requirements of the Local Rules have been satisfied.  Alternatively, to the extent the Court finds such information does not meet the requirements of Local Bankruptcy Rule 6007-1, the Debtors respectfully request that the Court waive such requirements with respect to this motion.

otherwise maximize the value of their assets.  Any Personal Property that the Debtors elect to leave at the premises will be of inconsequential value to the Debtors' estates, or the costs to the Debtors of retrieving, marketing, and reselling the Personal Property will exceed any recovery that the Debtors and their estates could reasonably obtain in exchange for such property.  Abandonment of any Personal Property will therefore be in the best interest of the Debtors and their estates.  The Debtors further request that the landlord of each premises with any abandoned Personal Property or other property be authorized to dispose of such property without liability to any third parties.

### Bankruptcy Rule 6006 Is Satisfied

22.    Bankruptcy Rule 6006(a) provides that a "proceeding to assume, reject, or assign an executory contract or unexpired lease . . . is governed by Rule 9014."  In turn, Bankruptcy Rule 9014(a) states that "[i]n a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."  Further, Bankruptcy Rule 6006(e) allows a debtor to consolidate, in a single motion, requests for the authority to reject multiple executory contracts or unexpired leases that are among different parties, subject to Bankruptcy Rule 6006(f).  Bankruptcy Rule 6006(f) requires, in part, that such omnibus motion must:  (a) "state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;" (b) "list parties alphabetically and identify the corresponding contract or lease;" (c) "be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases;" and (d) "be limited to no more than 100 executory contracts or unexpired leases."

23.    The Debtors have provided a conspicuous notice that includes the parties' names and Leases, includes the counterparties to the Leases in alphabetical order, and identifies the

Leases to be rejected.  This motion and the notice provided to the counterparties and other parties

in interest are thus sufficient under Bankruptcy Rule 6006.  To the extent this motion does not

comply with Bankruptcy Rule 6006, the Debtors respectfully request a waiver.

### Reservation of Rights

24.     Nothing contained herein or any actions taken pursuant to such relief requested is

intended to or should be construed as (a) an admission as to the validity of any prepetition claim

against a Debtor entity, (b) a waiver of the Debtors' or any other party in interest's right to dispute

any prepetition claim on any grounds, (c) a promise or requirement to pay any prepetition claim,

(d) an implication or admission that any particular claim is of a type specified or defined in this

motion or any order granting the relief requested by this motion, (e) a request or authorization to

assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy

Code, (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code

or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common

law, statutory, or otherwise) satisfied pursuant to the relief requested in this motion are valid, and

the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection

or seek avoidance of all such liens.

### Motion Practice

25.     This motion includes citations to the applicable rules and statutory authorities upon

which the relief requested herein is predicated and a discussion of their application to this motion.

Accordingly, the Debtors submit that this motion satisfies Local Rule 9013-1(a).

### Notice

26.     The Debtors will provide notice of this motion to: (a) the United States Trustee for

the Southern District of New York; (b) the holders of the thirty largest unsecured claims against

the Debtors (on a consolidated basis); (c) counsel to the Prepetition ABL Agent; (d) counsel to the

Term Loan Agent; (e) counsel to the DIP parties; (f) the United States Attorney's Office for the Southern District of New York; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for all states in which the Debtors conduct business; (j) the landlords identified in **Schedule 1**; and (k) any party that requests service pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

27.     No prior request for the relief sought in this motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form

attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as

is just and proper.

Dated:  August 6, 2019          */s/ Joshua A. Sussberg, P.C.*
New York, New York          Edward O. Sassower, P.C.
                            Joshua A. Sussberg, P.C.
                            **KIRKLAND & ELLIS LLP**
                            **KIRKLAND & ELLIS INTERNATIONAL LLP**
                            601 Lexington Avenue
                            New York, New York 10022
                            Telephone:    (212) 446-4800
                            Facsimile:    (212) 446-4900

                            -and-

                            Chad J. Husnick, P.C.
                            W. Benjamin Winger (*pro hac vice* pending)
                            **KIRKLAND & ELLIS LLP**
                            **KIRKLAND & ELLIS INTERNATIONAL LLP**
                            300 North LaSalle Street
                            Chicago, Illinois 60654
                            Telephone:    (312) 862-2000
                            Facsimile:    (312) 862-2200

                            -and-

                            Steven J. Reisman
                            **KATTEN MUCHIN ROSENMAN LLP**
                            575 Madison Avenue
                            New York, New York 10022
                            Telephone:    (212) 940-8800
                            Facsimile:    (212) 940-8776

                            *Proposed Co-Counsel for the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-[_____] (CGM) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

---

**ORDER (I) AUTHORIZING (A) REJECTION OF CERTAIN UNEXPIRED
LEASES OF NONRESIDENTIAL REAL PROPERTY, EFFECTIVE AS OF
THE REJECTION DATE, AND (B) ABANDONMENT OF ANY PERSONAL
PROPERTY RELATED THERETO, AND (II) GRANTING RELATED RELIEF**

---

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing the Debtors to reject certain unexpired leases of real property, including any guaranties thereof and any amendments, modifications, or subleases thereto (collectively, the "Leases") for nonresidential real property located at the premises set forth on **Schedule 1** attached hereto, (b) authorizing the abandonment of certain equipment, fixtures, furniture, or other personal property that may be located at the premises and not otherwise transitioned to another store location (collectively, the "Personal Property"), both rejection of Leases and abandonment of Personal Property to be effective as of the date the Debtors have surrendered the premises to the landlord via the delivery of the keys, key codes, and alarm codes to the premises, as applicable, to the applicable lease counterparty, or, if not delivering such keys or codes, providing notice that the landlord may re-let the premises (the "Rejection Date"); and (c) granting related relief; and this Court having

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012; and that this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Pursuant to section 365 of the Bankruptcy Code, each of the Leases identified on **Schedule 1** attached hereto is hereby rejected by the Debtors with such rejection being effective as of the Rejection Date.

3.      The Debtors shall not be liable for any additional administrative expenses arising after the Rejection Date with respect to the Leases.

4.      The Debtors do not waive any claims that they may have against any counterparty to the Leases, whether or not such claims arise under, are related to the rejection of, or are independent of the Leases.

5.      The Debtors are authorized, but not directed, to abandon any Personal Property located at the premises identified on **Schedule 1** hereto free and clear of all liens, claims,

encumbrances, interests, and rights of third parties.  The applicable counterparty to each Lease may dispose of such Personal Property without further notice to any party claiming an interest in such abandoned Personal Property.

6.     Nothing herein shall prejudice the rights of the Debtors to argue that any of the Leases were terminated prior to the Petition Date, or that any claim for damages arising from the rejection of the Leases is limited to the remedies available under any applicable termination provision of such lease, sublease, or contract, as applicable, or that any such claim is an obligation of a third party, and not that of the Debtors or their estates.

7.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens.  Any payment made pursuant to this Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

3

8.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

9.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

10.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

11.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2019
Poughkeepsie, New York

_____
THE HONORABLE CECILIA G. MORRIS
UNITED STATES BANKRUPTCY JUDGE

## **<u>Schedule 1</u>**

**Rejected Leases**

| | Lease[1] | Property | Notice Address(es) | Lessor | Business Purpose | Lease Expiration |
|---|---|---|---|---|---|---|
| 1. | Retail Lease, Rush and Oak and State Streets Chicago, Illinois, by and between ASB Capital (d/b/a Oak and Rush LLC) and Barney's, Inc., dated January 22, 2007 | Chicago | Thor ASB 1-15 East Oak Street (ASB Capital) Attn: Sydne Peck 225 West Wacker, Suite 2900 Chicago, Illinois 60606 | ASB Capital | Flagship Store | March 31, 2024 |
| 2. | Shopping Center Lease by and between MPH Pacific Place, L.L.C. and Barney's, Inc., dated July 17, 2006 | Seattle | MPH Pacific Place LLC (Madison Marquette) Attn: Tory Glossip 600 Pine Street, Suite 228 Seattle Washington 98101 | Stockton Properties (Madison Marquette) | Flagship Store | December 31, 2019 |
| 3. | Lease by and between Phase II Mall Subsidiary, LLC and Barney's, Inc., dated March 27, 2006 | Las Vegas | The Shops at the Palazzo Attn: President with a copy at the same address Attn: General Counsel 3355 Las Vegas Boulevard South Las Vegas, Nevada, 89109 | Brookfield Properties | Flagship Store | January 31, 2020 |
| 4. | Retail Center Lease Agreement between GFM, LLC and Barney's, Inc. for The Grove, dated April 24, 2006 | The Grove | Caruso Management Attn: Rick J. Caruso 101 The Grove Drive Los Angeles, California 90036 | Caruso Management | Concept Store | January 31, 2020 |
| 5. | Retail Center Lease Agreement between The Americana At Brand, LLC and Barney's, Inc., dated May 1, 2007 | Glendale | Caruso Management Attn: Rick J. Caruso 101 The Grove Drive Los Angeles, California 90036 | Caruso Management | Concept Store | January 31, 2021 |
| 6. | Lease Agreement by and between Macerich Santa Monica, LLC and Barney's, Inc., dated June 6, 2006 | Santa Monica | Macerich Santa Monica, LLC c/o Macerich Attn: Legal Department P.O. Box 2172 401 Wilshire Boulevard, Suite 700 Santa Monica, California 90407 | Macerich | Concept Store | January 31, 2021 |
| 7. | Agreement of Lease by and between 194 Atlantic LLC and Barney's, Inc., dated March 25, 2010 | Brooklyn | Two Trees Management Attn: Jennifer Gipp 45 Main Street, Suite 602 Brooklyn, New York 11201 | Two Trees Management | Warehouse Store | August 31, 2020 |

---

[1]    Each unexpired lease contained herein may include one or more ancillary documents, including any underlying assignment and assumption agreements, amendments, supplements, full and partial assignments, renewals, and partial releases, whether or not specifically set forth herein.

| 8. | Commercial Lease Agreement between Philadelphia Rittenhouse Developer LP and Barney's, Inc., dated August 30, 2006 | Philadelphia | ADR 1811 Walnut Street, L.P. Attn: Allan Domb 1845 Walnut Street, Suite 2200 Philadelphia, PA 19103 | ADR 1811 Walnut Street, L.P. | Concept Store | January 31, 2025 |
| 9. | Lease between CPG Partners, L.P. and Barney's, Inc., dated March 19, 2012 | Cabazon | CPG Partners, L.P. (Simon Property Group, Inc.) Attn: Philip Ende SVP, Premium Outlets-Leasing 60 Columbia Road Morristown, New Jersey 07960 | Simon Property Group | Warehouse Store | August 31, 2021 |
| 10. | Lease between CPG Partners, L.P. and Barney's, Inc., dated March 19, 2012 | Camarillo | CPG Partners, L.P. (Simon Property Group, Inc.) Attn: Philip Ende SVP, Premium Outlets-Leasing 60 Columbia Road Morristown, New Jersey 07960 | Simon Property Group | Warehouse Store | November 30, 2012 |
| 11. | Lease between CPG Carlsbad Holdings, LLC (c/o Simon Property Group) and Barney's, Inc., dated March 19, 2012 | Carlsbad | CPG Carlsbad Holdings, LLC Attn: Simon Property Group — Premium Outlets 105 Eisenhower Parkway, 1st Floor Roseland, New Jersey 07068 | Simon Property Group | Warehouse Store | February 28, 2021 |
| 12. | Lease by and between Sawgrass Mills Phase IV, L.L.C. and Barney's, Inc., dated December 3, 2015 | Sawgrass | Sawgrass Mills Phase IV, L.L.C. Attn: M.S. Management Associates Inc. 225 West Washington Street Indianapolis, Indiana 46204 | Simon Property Group | Warehouse Store | January 31, 2026 |
| 13. | Lease Agreement by and between Tanger Properties Limited Partnership and Barney's, Inc., dated May 12, 1997 | Riverhead | Tanger Properties Limited Partnership Attn: Betty Massey 3200 Northline Avenue #360 Greensboro, North Carolina 27408 | Tanger Properties | Warehouse Store | May 31, 2022 |
| 14. | Lease Agreement by and between Fashion Outlets of Chicago LLC and Barney's, Inc., dated as of August 26, 2011 | Rosemont | Fashions Outlets of Chicago LLC Attn: Jamie Bourbeau 4000 Ponce de Leon Boulevard, Suite 420 Coral Gables, Florida 33146 | Macerich | Warehouse Store | January 31, 2024 |

| 15. | Lease between CPG Partners, L.P. and Barney's, Inc., dated March 19, 2012 | Waikele | CPG Partners, L.P. (Simon Property Group, Inc.) Attn: Philip Ende SVP, Premium Outlets-Leasing 60 Columbia Road Morristown, New Jersey 07960 | Simon Properties | Warehouse Store | May 31, 2021 |

## <u>Exhibit B</u>

**Declaration of Mohsin Y. Meghji**

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

Chad J. Husnick, P.C.
W. Benjamin Winger (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Steven J. Reisman
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, New York 10022
Telephone:    (212) 940-8800
Facsimile:    (212) 940-8776

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[9] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

### DECLARATION OF MOHSIN Y. MEGHJI IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING (A) REJECTION OF CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY EFFECTIVE AS OF THE REJECTION DATE, (B) ABANDONMENT OF ANY PERSONAL PROPERTY RELATED THERETO, AND (C) GRANTING RELATED RELIEF

I, Mohsin Y. Meghji, Chief Restructuring Officer to Barneys New York, Inc. and certain

of its affiliates and subsidiaries (the "Debtors"), hereby declare under penalty of perjury:

---

[9]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

1.      I am the Managing Partner at M-III Advisors, LP ("M-III") and have served as the Chief Restructuring Officer of Barneys New York, Inc., since August 5, 2019.  Prior to becoming Chief Restructuring Officer of the Debtors, I advised the Debtors in my capacity as Managing Partner of M-III beginning June 26, 2019.  I submit this declaration in support of the Debtors' motion (the "Motion") seeking entry of an order authorizing the Debtors to reject certain unexpired leases of nonresidential real property (the "Leases") and abandon related personal property (the "Personal Property").

2.      I have over twenty-five years of experience in financial restructuring, interim management, turnaround, and management consulting experience across a wide variety of industries, including, but not limited to, the retail and real-estate industries.

3.      I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records.  Except as otherwise indicated, all facts in this declaration are based upon my personal knowledge, my discussions with the Debtors' management team and advisors (including the M-III team working under my supervision), my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, or my opinions based upon my experience and knowledge.  I am over the age of eighteen and authorized to submit this declaration on behalf of the Debtors.  If called upon to testify, I could and would testify competently to the facts set forth in this declaration.

### The Debtors' Real Property Leases

4.      Prior to filing these chapter 11 cases, the Debtors operated a nationwide network of specialty luxury retail and warehouse stores.  The Debtors do not own the real property on which they operated their stores.  Instead, the Debtors lease property from a number of lessors and counterparties.

5.      The Debtors are party to twenty-eight nonresidential real property leases across the United States, twenty-two of which relate to store locations.  Debtor Barney's, Inc. is the lessee counterparty to each such lease.  The Debtors, with the assistance of their advisors, undertook a comprehensive review and store-by-store analysis of their lease portfolio and the performance of each of their stores.  The Debtors' lease portfolio is a significant contributing factor to their current financial challenges and they have determined, as a sound exercise of business judgment, that closure of numerous underperforming stores would be value maximizing.  Accordingly, the Debtors seek to reject fifteen leases associated with such stores at this time.  The Leases are identified and further described on **Schedule 1** to **Exhibit A**.  The Debtors will transfer or sell substantially all of their inventory located in these store locations, cease operations, vacate the premises, and abandon possession and the keys to the respective landlords of these fifteen stores.

6.      Rejection of the Leases is in the best interest of the Debtors' estates and their stakeholders.  I understand that the Debtors have determined that the stores and offices will not form part of the Debtors' go-forward business operations and are burdensome to maintain.  Furthermore, I believe that it is impractical to continue marketing the Leases for assignment or sublease to a third party, as doing so would not generate any significant value for the estates, especially compared to the continued costs associated with maintaining the leased premises.  Further, after evaluation and analysis, I believe that none of the Leases is reasonably likely to generate a net economic benefit to the Debtors' estates, and that the terms of each Lease are burdensome and/or substantially above-market.  Therefore, the Debtors have concluded that rejection of the Leases represents a sound exercise of their business judgment and is in the best interest of the Debtors' estates, their creditors, and other parties in interest.  Further, it is my belief

that the costs of a marketing campaign would exceed any value that subleases or assignments might generate for the estates.

8.      By rejecting the Leases on the terms set forth in the Motion, the Debtors will be able to save approximately $2.2 million monthly in rent and associated costs.

9.      The Debtors anticipate vacating each of the leased stores and removing all of their Personal Property to the extent that removal is feasible and that such property provided value to the ongoing operations as of the Rejection Date.  A minimal amount of Personal Property, however, will remain in almost all of the leased stores.  This Personal Property consists of miscellaneous fixtures, furniture, and equipment that is of inconsequential value and burdensome to remove.  The cost of storing this Personal Property is likely to exceed the net proceeds realizable from its sale.  I believe that any efforts to remove or market and sell the Personal Property would delay the surrender of the leased premises, such property is no longer necessary for their business operations.

10.     Accordingly, I believe that rejection of the Leases and the abandonment of Personal Property related to the Leases reflect the Debtors' sound business judgment and is in the best interests of their estates and their creditors.


*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  August 6, 2019
New York, New York

*/s/ Moshin Y. Meghji*
Name:    Moshin Y. Meghji
Title:    Chief Restructuring Officer