Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

Chad J. Husnick, P.C.
W. Benjamin Winger (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Steven J. Reisman
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, New York 10022
Telephone:    (212) 940-8800
Facsimile:    (212) 940-8776

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY**
**OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE**
**PAYMENT OF (A) PREPETITION CLAIMS OF LIEN CLAIMANTS,**
**(B) FOREIGN VENDOR CLAIMS, (C) SECTION 503(B)(9) CLAIMS,**
**AND (D) CRITICAL VENDOR CLAIMS, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

respectfully state as follows in support of this motion.[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

[2] A detailed description of the Debtors and their business, and the facts and circumstances supporting the

## Relief Requested

1.      The Debtors seek entry of interim and final orders, substantially in the forms

attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and

"Final Order"), (a) authorizing the Debtors to pay in the ordinary course of business prepetition

claims held by certain (i) shippers, warehousemen, and other lien claimants, (ii) foreign vendors,

(iii) 503(b)(9) claimants, and (iv) certain critical vendors (each as defined below and,

collectively, the "Vendor Claimants"), collectively, in an amount not to exceed $2.2 million on

an interim basis and $3 million on a final basis, and (b) granting related relief.  In addition, the

Debtors request that the Court schedule a final hearing within approximately twenty-five days of

the commencement of these chapter 11 cases to consider entry of the Final Order.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York

(the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference from the United States District Court for the Southern*

*District of New York*, dated February 1, 2012.  The Debtors confirm their consent, pursuant to

rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the Court

entering a final order in connection with this motion to the extent that it is later determined that

the Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a) and 363 of chapter 11

---

Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Mohsin Y. Meghji, Chief Restructuring Officer of Barneys New York, Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith.  Capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in the First Day Declaration.

of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## Background

5.      The Debtors are a world-renowned luxury specialty retailer with twenty-two stores across the United States, including flagships in New York City and Beverly Hills, and a highly curated, shopper-friendly e-commerce platform.  Founded as a men's retailer in 1923 in downtown Manhattan, the Debtors sell the most intriguing fashion offering from the world's top designers, including women's and men's clothing, accessories, shoes, jewelry, cosmetics, fragrances, and gifts for the home.  The Debtors remain headquartered in New York, New York and lease all of their store locations.  The Debtors reported revenues of approximately $800 million for 2018.  As of the date hereof (the "Petition Date"), the Debtors have approximately 2,300 employees and funded debt obligations of approximately $200 million.

6.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## Vendor Claimants

7.      As of the Petition Date, the Debtors owe approximately $100 million on account of all accounts payable to the Debtors' trade creditors.  By this motion, the Debtors are only seeking authority to pay an amount necessary to preserve the value of their estates, which

shall not exceed $2.2 million on an interim basis and $3 million on a final basis on account of prepetition claims held by certain Vendor Claimants and accrued in the ordinary course of business (collectively, the "Vendor Obligations").

8.      Accordingly, the Debtors request authorization to pay, in accordance with the agreed upon budget for the Debtors' financing facilities, a limited number of outstanding prepetition obligations on account of the Vendor Obligations, subject to the limitations set forth in the interim and final order.  Because the Debtors cannot satisfy anywhere near all of the Vendor Obligations, the Debtors intend to apply their business judgement and discretion on a case-by-case basis and pay only those Vendor Obligations that are absolutely critical to maintaining the supply chain.[3]

## Lien Claimants

9.      The Debtors' business depends on both the uninterrupted flow of inventory and other goods through its supply chain and distribution network, including the purchase, importation, storage, and shipment of the Debtors' merchandise and other personal property in addition to the maintenance of its stores.  For example, the Debtors design certain merchandise in-house and contract with various foreign manufacturers to produce the goods.  Manufacturers, through freight forwarders, then ship merchandise to certain warehouses that serve as the Debtors' distribution centers.  Warehouses and distribution centers may be operated by the Debtors or third parties.  The Debtors' supply chain depends on services provided by, among others, various freight forwarders, common carriers, and custom brokers (collectively, the "Shippers and Warehousemen").

---

[3]    Notwithstanding the relief requested herein, the Debtors reserve all of their rights and remedies under the Bankruptcy Code and other applicable law to pursue any cause of action against any Vendor Claimants on account of, among other things, any violation of the automatic stay pursuant to section 362(a)(6) of the Bankruptcy Code.

10.      Certain manufacturers ship merchandise and other goods to the Debtors either "free on board" ("FOB") or "delivery duty paid" ("DDP").  Under an FOB arrangement, the Debtors pay freight forwarders to transport merchandise and other goods from abroad to U.S.-based warehouse and title passes to the Debtors when merchandise and goods are loaded for shipment to the United States.  Under the DDP arrangements, the vendor pays to ship goods to U.S.-based warehouse and title to the merchandise and goods does not pass to the Debtors until it arrives at the warehouse.  Under either arrangement, vendors transporting the goods may refuse (and have in the past refused) to release merchandise or other goods for shipment to the United States if they are not paid current.  As of the Petition Date, the Debtors estimate that approximately $1.5 million of third-party shipping and storage charges are due and owing.

11.      The Debtors routinely transact business with a number of third-party contractors that can assert a variety of statutory, common law, or possessory liens against the Debtors and their property if the Debtors fail to pay for certain goods delivered or services rendered (the "Third-Party Contractors").  These Third-Party Contractors perform various services for the Debtors, including the installation and repair of certain equipment in the Debtors' store, maintenance and improvement of the Debtors' real property and facilities, manufacturing component parts necessary for the Debtors' operating equipment, and other repair, renovation, or construction of the facilities and property therein.

12.      The Debtors' stores are operated with minimal in-house staffing capable of performing routine maintenance and are supplemented by specialized maintenance and repair services provided by third parties on a regular or ad hoc basis.  For example, in the ordinary course of business, the Debtors frequently engage a third-party servicer to perform essential maintenance and repairs to the Debtors' elevators, plumbing, and other infrastructure items, all

important to the normal operations of properties. Such specialized maintenance and repair ensures the uninterrupted operations of the Debtors' facilities to the benefit of all parties in interest.

13.    Additionally, the Debtors regularly evaluate expansion, development, and renovation opportunities.  Such projects typically involve the use of carpenters, mechanics, electricians, and other skilled labor.  Non-payment of Third-Party Contractors hired in connection therewith could lead to shortages of skilled labor, labor disputes, work stoppages, and disputes with contractors or subcontractors.  Any of these contingencies would affect the Debtors' anticipated costs and timetables for such projects.  The cost of a project may vary significantly from initial expectations and the Debtors may have a limited amount of capital resources to fund cost overruns which, in turn, will delay the completion of the project until adequate funding is available.  As of the Petition Date, the Debtors estimate that approximately $2 million of prepetition obligations remain due and outstanding to Third-Party Contractors.

14.    Under certain non-bankruptcy laws, lien claimants can assert liens on the goods in their possession to secure payment of the charges or expenses incurred in connection with these prepetition obligations.[4]  Accordingly, in the event these claims remain unpaid, the lien claimants are likely to attempt to assert such possessory liens, and may refuse to deliver or release goods in their possession until their claims are satisfied and their liens redeemed.  The lien claimants' possession (and retention) of the Debtors' goods and supplies would disrupt the Debtors' operations and affect the Debtors' ability to efficiently administer these chapter 11

---

[4]    For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that "[a] carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law."

cases. The cost of such disruption to the Debtors' estates in many cases would likely be greater than the applicable lien claims. Further, pursuant to section 363(e) of the Bankruptcy Code, the lien claimants may be entitled to adequate protection of any valid possessory lien, which would drain estate assets.

15.    Accordingly, the Debtors owe as of the Petition Date prepetition claims (collectively, "Lien Claims" and "Lien Claimants", as applicable) due and owing to shippers, warehousemen, and other lien claimants in an aggregate amount of approximately $3.5 million. For the avoidance of doubt, the Debtors seek authority to pay only those amounts that they determine are necessary or appropriate to (a) obtain release of critical or valuable goods, (b) maintain a reliable, efficient, and smooth distribution system, and (c) induce the shippers, warehousemen, and other lien claimants to continue performing and otherwise supporting the Debtors' operations on a postpetition basis. The Debtors intend to pay prepetition Lien Claims only where they believe, in their business judgment, that the benefits to their estates from making such payments will exceed the costs that their estates would incur by bringing an action to compel the turnover of such goods and the delay associated with such actions.

**Foreign Vendors**

16.    The Debtors rely upon certain foreign vendors to supply goods in connection with their business operations (the "Foreign Vendors"). For example, certain vendors manufacture various retail items that are used or sold in the Debtors' stores, both under Barneys' private label in addition to international brands sold at Barneys. Most, if not all, of the Foreign Vendors have little to no connection to the United States, and the Debtors believe that such vendors may discontinue providing goods and/or services absent payment of their claims (the "Foreign Vendor Claims"). Additionally, if left unpaid, the Foreign Vendors may take action against the Debtors based upon an erroneous belief that Foreign Vendors are not subject to the

automatic stay provisions of section 362(a) of the Bankruptcy Code.

17.    The Debtors estimate that, as of the Petition Date, they owe approximately

$6.9 million to Foreign Vendors on account of prepetition claims held against the Debtors'

estates.  Accordingly, the Debtors request that they be authorized to pay Foreign Vendor Claims

as they come due and in the ordinary course of business.  For the foregoing reasons, the Debtors

submit that payment of the Foreign Vendor Claims is necessary to preserve and enhance the

value of the Debtors' business for the benefit of all parties in interest.

## **Critical Vendor Claims**

18.    The Debtors' supply chain consists, in addition to the Foreign Vendors, of certain

domestic vendors (collectively, the "Critical Vendors") that supply products and services that are

essential to the Debtors' go-forward operations.   With the assistance of their advisors, the

Debtors have spent significant time reviewing and analyzing their books and records, consulting

operations managers and purchasing personnel, reviewing contracts and supply agreements, and

analyzing applicable law, regulations, and historical practice to identify certain critical business

relationships and suppliers of goods and services—the loss of which would immediately and

irreparably harm their businesses, by, *inter alia*, shrinking their market share, reducing enterprise

value, and ultimately impairing the Debtors' viability as a going-concern.  In this process, the

Debtors considered a variety of factors, including:

- whether certain specifications or contract requirements prevent, directly or indirectly, the Debtors from obtaining goods or services from alternative sources;

- whether a vendor is a sole-source, limited-source, or high-volume supplier of goods or services critical to the Debtors' business operations;

- whether an agreement exists by which the Debtors could compel a vendor to continue performing on prepetition terms;

- whether alternative vendors are available that can provide the requisite volumes of similar goods or services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

- the degree to which replacement costs (including, pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a vendor's prepetition claim;

- whether the Debtors' inability to pay all or part of the vendor's prepetition claim could trigger financial distress for the applicable vendor;

- the likelihood that a temporary break in the vendor's relationship with the Debtors could be remedied through use of the tools available in these chapter 11 cases;

- whether failure to pay all or part of a particular vendor's claim could cause the vendor to hold goods owned by the Debtors, or refuse to ship inventory or to provide critical services on a postpetition basis;

- the location and nationality of the vendor; and

- whether failure to pay a particular vendor could result in contraction of trade terms as a matter of applicable non-bankruptcy law or regulation.

19.    Following this analysis, the Debtors identified certain vendors as Critical Vendors for purposes of the relief requested herein.  This number represents only approximately three percent of the Debtors' vendors with outstanding payables as of the Petition Date.

20.    The interruption of business with or absence of the Critical Vendors would reduce the efficiency of the Debtors' operations.  Any material interruption in the provision of the Critical Vendor Products and Services—however brief—would disrupt the Debtors' operations and could cause irreparable harm to the Debtors' go-forward businesses, goodwill, employees, customer base, and market share.  Such harm would likely far outweigh the cost of payment of the Vendor Claims.

**Trade Terms Condition**

21.     Subject to the Court's approval, the Debtors intend to pay the Vendor Claims only to the extent necessary to preserve the value of their estates.  To that end, in return for paying the Vendors Claims either in full or in part, the Debtors propose that they be authorized to require that the Vendors provide favorable trade terms for the postpetition procurement of goods and services from the Critical Vendors.  Specifically, the Debtors seek authorization, but not direction, to condition payment of Vendor Claims upon each Critical Vendor's agreement to continue—or recommence—supplying the Critical Vendor Products and Services to the Debtors in accordance with trade terms (including credit limits, pricing, timing of payments, availability, and other terms) at least as favorable to the Debtors as those in place during the twelve months prior to the Petition Date, or as otherwise agreed by the Debtors in their reasonable business judgment (the "Trade Terms").  The Debtors also seek authorization, but not direction, to require certain Critical Vendors to enter into a contractual agreement evidencing such Trade Terms, the form of which is attached hereto as **Exhibit C** (the "Trade Terms Agreement").

22.     In addition, the Debtors request that if any party accepts payment pursuant to the relief requested by this motion and thereafter ceases to provide Critical Products or Services in accordance with the Trade Terms:  (a) the Debtors may take any and all appropriate steps to recover from such Critical Vendor any payments made to it on account of its prepetition claim to the extent that such payments exceed the postpetition amounts then owing to such party; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment on account thereof had not been made; and (c) if an outstanding postpetition balance is due from the Debtors to such party, (i) the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by this motion to such outstanding postpetition balance, and (ii) such party will be required to repay to the Debtors such paid amounts that

10

exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

### 503(b)(9) Claimants

23.     The Debtors may have received certain inventory, goods, or materials from various foreign and domestic vendors (collectively, the "503(b)(9) Claimants") within the 20-day period immediately preceding the Petition Date.   Many of the Debtors' relationships with the 503(b)(9) Claimants are not governed by long-term contracts.   Rather, the Debtors obtain inventory, goods, or other materials from such claimants on an order-by-order basis.   As a result, a 503(b)(9) Claimant may refuse to supply new orders without payment of its prepetition claims.   Such refusal could negatively affect the Debtors' estates as the Debtors' business is dependent on the steady flow of inventory to stock their stores.

24.     Further, a portion of the 503(b)(9) Claimants are Foreign Vendors that supply goods, materials, or services to the Debtors that are crucial to the Debtors' ongoing U.S. operations—specifically the merchandise necessary to stock the shelves and racks in the Debtors' stores and supply their e-commerce platform.   The Debtors have, in some instances, already invested in the fabric and other raw materials necessary to manufacture the merchandise overseas.   Moreover, even though the manufacture of certain merchandise is completed, these vendors are unlikely to ship unless the Debtors pay some or all of the claims owing to such vendors.   Without the flow of merchandise, the Debtors' business will effectively starve—the critical nature of the need for the regular shipment of merchandise cannot be overstated.   In light of these consequences, the Debtors have concluded that payment of the 503(b)(9) Claimants is essential to avoid disruptions to the Debtors' operations.   The estimated amounts owing to the 503(b)(9) Claimants set forth below pales in comparison to the potential damage to the Debtors' business if the Debtors' operations were to experience significant disruption.

25.     The Debtors believe that as of the Petition Date, they owe approximately $8.7 million on account of goods delivered within the twenty days immediately preceding the Petition Date, a significant portion of which will come due in the first twenty-one days after the Petition Date, and the value of which may be entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code.

26.     Accordingly, the Debtors request the authority, but not the direction, to pay certain of those undisputed claims arising from the value of such goods received by the Debtors within the twenty days immediately preceding the Petition Date that were sold to the Debtors in the ordinary course of business (each, a "503(b)(9) Claim" and, together with the other Vendor Claimants) on a case-by-case basis.  The Debtors seek authority to pay only those amounts that they determine are necessary or appropriate to (a) obtain critical or valuable goods, (b) maintain a reliable, efficient, and smooth distribution system, and (c) induce the 503(b)(9) Claimants to continue to provide goods.  The Debtors intend to pay prepetition 503(b)(9) Claims only where they believe, in their business judgment, that the benefits to their estates from making such payments will exceed the costs to their estates.

**Basis for Relief**

## I.     The Court Should Grant the Relief Requested in this Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code.

27.     Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate.  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.* (*In re James A. Phillips, Inc.*), 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (authority to pay prepetition claims of suppliers); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  In so doing, these courts

acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

28.     Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so.  *See Ionosphere Clubs Inc.*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); *see also James A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).  Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497.

29.     In addition, courts may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses.  *See In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (holding that the "doctrine of necessity" stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization).  Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *Ionosphere Clubs*, 98 B.R. at 176.

30.    The relief requested herein is appropriate and warranted under the circumstances. The authority to satisfy the Vendor Obligations in the initial days of these chapter 11 cases without disrupting the Debtors' operations will maintain the integrity of the Debtors' supply chain, facilitate the sale of inventory and the Debtors' accounts receivable collection, and allow the Debtors to efficiently administer these chapter 11 cases.    Failure to pay the Obligations could potentially destroy value that would otherwise inure to the benefit of the Debtors' estates. Where, as here, debtors have shown that the payment of prepetition claims is critical to maximize the value of their estates, courts in this jurisdiction have routinely authorized payments to lien claimants.  *See In re Hollander Sleep Products, LLC*, Case No. 19-11068 (MEW) (Bankr. S.D.N.Y. May 22, 2019) (authorizing the payment of prepetition claims of critical vendors, lien claimants, and section 503(b)(9) on the basis that they could cease to prove specialized goods and services necessary to maintain the smooth operation of the debtors' business otherwise); *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. Apr. 22, 2019) (same); *In re Aegean Marine Petrol. Network Inc.*, Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Dec. 6, 2018) (same); *In re Nine West Holdings, Inc.*, Case No. 18-10497 (SCC) (Bankr. S.D.N.Y. May 7, 2018) (same).[5]

31.    Allowing the Debtors to pay the Obligations is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving going concern value and maximizing the value of property available to satisfy creditors.  *See Bank of Am. Nat'l Trust Savs. Ass'n v. 203 N. LaSalle St. P'Ship.*, 526 U.S. 434, 453 (1999).  Based on these circumstances, the Debtors submit that the relief requested herein represents a sound exercise of the Debtors' business judgment, is

---

[5]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code.

**II.    Failure to Make Timely Payment of the Lien Claims Would Threaten the Debtors' Ability to Operate and May Subject the Debtors' Assets to the Perfection of Liens.**

32.    As noted above, certain Lien Claimants may be entitled under applicable non-bankruptcy law to assert certain possessory liens on the Debtors' goods or equipment in their possession (notwithstanding the automatic stay under section 362 of the Bankruptcy Code) in an attempt to secure payment of their prepetition claim.   Under section 362(b)(3) of the Bankruptcy Code, the act of perfecting such liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay.[6]  As a result, the Debtors anticipate that certain of the Lien Claimants may assert or perfect liens, simply refuse to turn over goods in their possession, or stop performing their ongoing obligations.  Even absent a valid lien, to the extent certain Lien Claimants have possession of the Debtors' inbound inventory or outbound products, mere possession or retention would disrupt the Debtors' operations.

33.    Furthermore, paying the Lien Claims should not impair unsecured creditor recoveries in these chapter 11 cases.  In instances where the amount owed to Lien Claimants is less than the value of the goods that could be held to secure a claim belonging to these parties, such parties may be fully-secured creditors of the Debtors' estates.  In such instances, payment now only provides such parties with what they might be entitled to receive under the Bankruptcy Code's priority scheme, only without any interest costs that might otherwise accrue during these chapter 11 cases.  Conversely, all creditors will benefit from the seamless transition of the Debtors' operations into bankruptcy and the ultimate delivery and sale of inventory in the

---

[6]    *See* 11 U.S.C. § 546(b)(1)(A) (providing that a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection").

Debtors' stores and e-commerce platforms.

34.     Where debtors have shown that the payment of prepetition claims is critical to maximize the value of their estates, courts in this and other jurisdictions have routinely authorized payments to shippers and warehousemen under similar circumstances. *See, e.g.*, *In re Hollander Sleep Products, LLC*, Case No. 19-11608 (MEW) (Bankr. S.D.N.Y. May 22, 2019) (authorizing payment of certain lien claimants' prepetition claims when lien claimants are able to assert possessory liens on the debtors' goods in the event of non-payment); *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. Apr. 22, 2019) (same); *In re Aegean Marine Petrol. Network Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Dec. 16, 2018) (same); *In re Nine West Holdings, Inc.*, No. 18-10497 (SCC) (Bankr. S.D.N.Y. May 7, 2018) (same); *In re Cenveo, Inc.*, No. 18-22178 (RDD) (Bankr. S.D.N.Y. Mar. 8, 2018) (same); *In re Avaya Inc.*, No. 17-10089 (SMB) (Bankr. S.D.N.Y. Feb. 10, 2017) (same).

**III.     The Court Should Authorize the Payment of Foreign Vendor Claims.**

35.     As set forth above, the Court has authority pursuant to sections 363(b), 1107(a), and 1108 of the Bankruptcy Code to authorize the payment of prepetition claims to certain foreign vendors where there is a sound business reason to do so.  Courts have properly relied on section 363(b) of the Bankruptcy Code to authorize debtors in possession to pay prepetition claims of foreign creditors in circumstances where, as here, the estate will obtain more value for all parties in interests or avoid more harm by making the prepetition payments. *See, e.g., In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) (authorizing payment of prepetition claims held by foreign creditors where such payments were necessary and appropriate).

36.     Here, the Debtors seek authority to pay certain of the Foreign Vendor Claims. Although the scope of the automatic stay set forth in section 362 of the Bankruptcy Code is

universal, the Court is well aware of the difficulty (if not the impossibility in some cases) of enforcing the stay in foreign jurisdictions if a Foreign Vendor against which enforcement is sought has no presence in the United States.  Consequently, notwithstanding the commencement of these chapter 11 cases and the imposition of the automatic stay, Foreign Vendors likely would be able to exercise remedies, restrict trade terms, or exert other leverage against the Debtors in an attempt to collect the amount of Foreign Vendor Claims owed to them.  The benefits of paying Foreign Vendor Claims substantially outweigh the potential burdens and known risks associated with nonpayment.  And to mitigate the risks of going-forward issues with certain Foreign Vendors, the Debtors have proposed to condition payment of the Foreign Vendor Claims on the Foreign Vendor's acceptance of the Customary Trade Terms, as set forth herein.

37.    Courts in this and other jurisdictions have authorized the payment of Foreign Vendor Claims in comparable chapter 11 cases for similar reasons. *See, e.g., In re AMR Corp.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y. Dec. 22, 2011) (authorizing payment of prepetition claims held by certain foreign vendors); *In re Conexant Sys., Inc.*, No. 13-10367 (MFW) (Bankr. D. Del. Apr. 18, 2013) (same); *In re Lear Corp.*, No. 09-14326 (ALG) (Bankr. S.D.N.Y. July 31, 2009); *In re UAL Corp.*, No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 11, 2002) (same).

**IV.    The Court Should Authorize the Payment of the Vendor Claims.**

38.    Courts in this district generally acknowledge that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  In so doing, courts rely on several legal theories

17

rooted in sections 105(a), 363(b), 1107(a), and 1108 of the Bankruptcy Code.

39.    Courts recognize that payments to prepetition creditors are appropriate pursuant to

section 105(a) of the Bankruptcy Code under the "doctrine of necessity" or the "necessity of

payment" rule where such payments are necessary to the continued operation of the debtor's

business.  *See In re United Am., Inc.*, 327 B.R. 776, 782 (Bankr. E.D. Va. 2005) (acknowledging

the doctrine of necessity "because otherwise there will be no reorganization and no creditor will

have an opportunity to recoup any part of its pre-petition claim"); *In re Boston & Me. Corp.*,

634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize

trustees to pay claims for goods and services that are indispensably necessary to the debtors'

continued operation).    Several courts apply the doctrine of necessity where payment of a

prepetition claim (a) is "necessary for the successful reorganization of the debtor," (b) falls

within "the sound business judgment of the debtor," and (c) will not "prejudice other unsecured

creditors."  *United Am.*, 327 B.R. at 782; *see, also In re Universal Fin., Inc.*, 493 B.R. 735,

739−40 (Bankr. M.D. N.C. 2013) (applying the *United American* three-part test); *In re Corner*

*Home Care, Inc.*, 438 B.R. 122, 126 (Bankr. W.D. Ky. 2010) (same).

40.    A bankruptcy court's use of its equitable powers to "authorize the payment of

pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not

a novel concept." *In re Ionosphere Clubs*, 98 B.R. at 174–175.  "Under 11 U.S.C. § 105 the court

can permit pre-plan payment of a pre-petition obligation when essential to the continued

operation of the debtor."  *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *In re*

*Ionosphere Clubs*, 98 B.R. at 177).    The rationale for the necessity of payment rule—the

rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter

11."  *In re Ionosphere Clubs*, 98 B.R. at 175–76; *see also Mich. Bureau of Workers' Disability*

*Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition workers' compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); *In re Just For Feet*, 242 B.R. 821, 826 (Bankr. D. Del 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process.").

41.     The Debtors submit that *all* of the Debtors' creditors will benefit if the Court grants the requested relief.  Even a slight disruption to the goods and services provided by the Critical Vendors could leave the Debtors unable to meet their obligations and disrupt their important relationships with their customers.  The resulting harm to the Debtors' estates far outweighs the cost associated with paying a portion of the Debtors' prepetition obligations to the Critical Vendors.  Thus, the Debtors' other creditors will be no worse off, and in fact will fare far better, if the Debtors are empowered to negotiate such payments to achieve a smooth transition into bankruptcy with minimal disruption to their operations.  As such, the Debtors believe the relief sought in this motion will not burden the Debtors, but will help maximize the value of their estates.

42.     Moreover, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners."  *In re CoServ*, 273 B.R. at 497.  Implicit in the fiduciary duties of any debtor-in-possession is the obligation to "protect

and preserve the estate, including an operating business's going-concern value." *Id.* Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only… by the preplan satisfaction of a prepetition claim." *Id.* The court in *CoServ* specifically noted the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . ." *Id.*

43.     Consistent with a debtor's fiduciary duties, courts have also authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so. *See In re Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of prepetition wages); *In re James A. Phillips*, 29 B.R. at 397–98 (relying on section 363 of the Bankruptcy Code to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors).

44.     Allowing the Debtors to pay the Vendor Claims, pursuant to all or some of the above-referenced Bankruptcy Code provisions, is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code— preserving going concern value and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship.*, 526 U.S. 434, 453 (1999). Indeed, reflecting the recognition that payment of prepetition claims of certain critical suppliers and vendors, as well as international vendors, in fact, both critical to a debtor's ability to preserve going-concerns and maximize creditor recovery—thereby increasing prospects for a successful reorganization—courts in this district routinely grant relief consistent to that which the Debtors are seeking herein. *See, e.g.*, *In re Hollander Sleep Products, LLC*,

Case No. 19-11608 (MEW) (Bankr. S.D.N.Y. May 22, 2019) (authorizing payment of section 503(b)(9) claims); *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. Apr. 22, 2019) (same); *In re Aegean Marine Petrol. Network Inc.*, Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Nov. 9, 2018) (same); *In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. May 7, 2018) (same); *In re Cenveo, Inc.*, Case No 18-22178 (RDD) (Bankr. S.D.N.Y. Mar. 8 2018) (same); *In re BCBG Max Ariza Global Holdings, LLC*, Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017) (same).[7]

45.    As described above, the Critical Vendor Products and Services are essential to the Debtors' successful transition into chapter 11 and continued operation of their business.  The Debtors' failure to pay the Vendor Claims could harm the Debtors' ability to obtain necessary supplies or services, prevent the Debtors from preserving favorable trade terms, and increase the likelihood for significant disruptions to the Debtors' operations.  This failure could, in turn, jeopardize numerous customer relationships and could significantly impair the value of the Debtors' business.  For these reasons, the Debtors believe the relief requested herein is vitally necessary to preserve the value of their estates for the benefit of all stakeholders in these chapter 11 cases and should be granted.

## V.    The Court Should Authorize the Payment of 503(b)(9) Claims.

46.    Finally, section 503(b)(9) provides administrative priority for the "value of any goods received by the debtor within twenty days before the date of commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business."  These claims must be paid in full for the Debtors to confirm a chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(A).  Consequently, payment of such claims now only provides

---

[7]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

such parties with what they would be entitled to receive under a chapter 11 plan. Moreover, the

timing of such payments also lies squarely within the Court's discretion. *See In re Global Home*

*Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006)

(agreeing with parties that "the timing of the payment of that administrative expense claim is left

to the discretion of the Court"). The Debtors' ongoing ability to obtain inventory and other

goods as provided herein is key to their survival and necessary to preserve the value of their

estates. Absent payment of the section 503(b)(9) Claims at the outset of these chapter 11

cases—which merely accelerates the timing of payment and not the ultimate treatment of such

claims—the Debtors could be denied access to the inventory and other goods necessary to

maintain the Debtors' business operations and maximize the value of the their estates.

47.    Further, as described above, a significant portion of the 503(b)(9) Claimants are

Foreign Vendors. Without the Foreign Vendors the Debtors would not be able to stock their

shelves with the Merchandise necessary to continue operations. If the Debtors do not pay certain

of the 503(b)(9) Claims owing to the Foreign Vendors, such Foreign Vendors may simply refuse

to do business with the Debtors unless and until they receive payment on account of their

prepetition claims. Such Foreign Vendors may also take other precipitous action against the

Debtors based on the incorrect belief that they are not bound by the automatic stay.

48.    For these reasons, courts in this jurisdiction regularly authorized the payment of

claims arising under section 503(b)(9) of the Bankruptcy Code in the ordinary course of

business. *See, e.g.*, *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y.

Apr. 22, 2019) (authorizing payment of section 503(b)(9) claims); *In re Aegean Marine Petrol.*

*Network Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Nov. 9, 2018) (same); *In re Nine West*

*Holdings, Inc.*, No. 18-10947 (SCC) (Bankr. S.D.N.Y. May 7, 2018) (same); *In re Cenveo, Inc.*,

No 18-22178 (RDD) (Bankr. S.D.N.Y. Mar. 8 2018) (same); *In re BCBG Max Ariza Global Holdings, LLC*, No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017) (same).

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

49.    The Debtors have sufficient funds to pay the amounts described in this motion by virtue of expected cash flows during these chapter 11 cases, debtor-in-possession financing, and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests relating to an authorized payment related to this motion.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

### The Requirement of Bankruptcy Rule 6003 Are Satisfied

50.    Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, allowing the Debtors to pay the Obligations and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases and maintain the value of their estate postpetition.  Failure to receive such authorization and other relief during the first twenty-one days of these chapter 11 cases would severely disrupt the Debtors' ability to maintain their estates at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to preserve and maximize the value of the Debtors' estates for the benefit of all stakeholders.

Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## **Reservation of Rights**

51.     Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

## **Motion Practice**

52.     This motion includes citation to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this motion.   Accordingly, the Debtors submit that this motion satisfies Local Rule 9013-1(a).

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

53.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Notice

54.     The Debtors will provide notice of this motion to:  (a) the United States Trustee for the Southern District of New York; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition ABL Agent; (d) counsel to the Term Loan Agent; (e) counsel to the DIP parties; (f) the United States Attorney's Office for the Southern District of New York; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for all states in which the Debtors conduct business; and (j) any party that requests service pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

55.     No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A and Exhibit B,** respectively, granting the relief requested herein and such other relief as is just and proper.

| | |
|---|---|
| Dated:  August 6, 2019<br>New York, New York | */s/ Joshua A. Sussberg, P.C.* |

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

Chad J. Husnick, P.C.
W. Benjamin Winger (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

-and-

Steven J. Reisman
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, New York 10022
Telephone:    (212) 940-8800
Facsimile:    (212) 940-8776

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

## **EXHIBIT A**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

————————————————————————————

|                                         |   |                                  |
|-----------------------------------------|---|----------------------------------|
| In re:                                  | ) | Chapter 11                       |
|                                         | ) |                                  |
| BARNEYS NEW YORK, INC., *et al.*,[1]    | ) | Case No. 19-36300 (CGM)          |
|                                         | ) |                                  |
|                    Debtors.             | ) | (Joint Administration Requested) |
|                                         | ) |                                  |

————————————————————————————

### INTERIM ORDER (I) AUTHORIZING
### THE PAYMENT OF (A) PREPETITION
### CLAIMS OF LIEN CLAIMANTS, (B) FOREIGN
### VENDOR CLAIMS, (C) SECTION 503(B)(9) CLAIMS, AND
### (D) CRITICAL VENDOR CLAIMS, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order") (a) authorizing the Debtors to pay in the ordinary course of business prepetition claims held by certain (i) shippers, warehousemen, and other lien claimants, (ii) foreign vendors, (iii) 503(b)(9) claimants, and (iv) certain critical vendors (each as defined below and, collectively, the "Vendor Claimants"), collectively, in an amount not to exceed $2.2 million on an interim basis, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819). The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were

appropriate under the circumstances and no other notice need be provided; and this Court having

reviewed the Motion and having heard the statements in support of the relief requested therein at

a hearing before this Court (the "Hearing"); and this Court having determined that the legal and

factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted

herein; and upon all of the proceedings had before this Court; and after due deliberation and

sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on

_____, 2019, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry

of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on

_____, 2019, and shall be served on:  (a) Barneys New York, Inc., 575 Fifth Avenue, New

York, New York 10017; Attn: Grace Fu; (b) proposed co-counsel to the Debtors, Kirkland &

Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn:  Edward O. Sassower,

P.C., Joshua A. Sussberg, P.C., and Gene Goldmintz, Kirkland & Ellis LLP, 300 North LaSalle

Street, Chicago, Illinois 60654, Attn: Chad J. Husnick, P.C. and W. Benjamin Winger, and

Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, New York 10022,

Attn: Steven J. Reisman; (c) the United States Trustee, 11A Clinton Avenue, Room 620, Albany,

New York 12207, Attn: Alicia Leonhard; (d) counsel to any statutory committee appointed in

these chapter 11 cases; (e) counsel to the Prepetition ABL Agent, (x) Riemer & Braunstein LLP,

100 Cambridge Street, Boston, Massachusetts 02114, Attn: Donald E. Rothman and (y) Riemer

& Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, New

York 10036, Attn: Steven E. Fox; (f) counsel to the Term Loan Agent, Choate Hall & Stewart

LLP, Two International Place, Boston, Massachusetts 02110, Attn: Kevin J. Simard and Mark Silva; and (g) counsel to the DIP parties, Paul Hastings LLP, 71 South Wacker Drive, Chicago, Illinois, 60606, Attn: Chris Dickerson and Holly Snow.  In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3.      The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay all or part of, and discharge, on a case-by-case basis, the Vendor Obligations in an aggregate amount not to exceed $2.2 million, on an interim basis.

4.      Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Interim Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens.  Any payment made pursuant to this Interim Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

3

5.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

6.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any in connection with any Obligations

7.      The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

8.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

9.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

10.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

4

12.      This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Interim Order.

Dated: _____, 2019
Poughkeepsie, New York          THE HONORABLE CECELIA G. MORRIS
                                  UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT B**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**FINAL ORDER (I) AUTHORIZING THE**
**PAYMENT OF (A) PREPETITION CLAIMS OF LIEN CLAIMANTS,**
**(B) FOREIGN VENDOR CLAIMS, (C) SECTION 503(B)(9) CLAIMS,**
**AND (D) CRITICAL VENDOR CLAIMS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order") (a) authorizing the Debtors to pay in the ordinary course of business prepetition claims held by certain (i) shippers, warehousemen, and other lien claimants, (ii) foreign vendors, (iii) 503(b)(9) claimants, and (iv) certain critical vendors (each as defined below and, collectively, the "Vendor Claimants"), collectively, in an amount not to exceed $3 million on a final basis, all as more fully set forth in the Motion all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

§§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay all or part of, and discharge, on a case-by-case basis, the Vendor Obligations in an aggregate amount not to exceed $3 million, on a final basis.

3.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Final Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of

all such liens.  Any payment made pursuant to this Final Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

4.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

5.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Obligations.

6.      The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

7.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

8.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

9.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

10.     This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Final Order.


Dated: _____, 2019                    _____
Poughkeepsie, New York                   THE HONORABLE CECELIA G. MORRIS
                                         UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT C**

**Trade Terms Agreement**

**THIS TRADE AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN. ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT FOR ANY SUCH CHAPTER 11 PLAN. THE INFORMATION IN THIS TRADE AGREEMENT STATEMENT IS SUBJECT TO CHANGE. THIS TRADE AGREEMENT STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

## TRADE AGREEMENT

Barney's, Inc. (the "Company"), on the one hand, and the supplier identified in the signature block below (the "Supplier"), on the other hand, hereby enter into the following trade agreement (this "Trade Agreement") dated as of the latest date in the signature blocks below.

### Recitals

WHEREAS on August 6, 2019 (the "Petition Date"), Barneys New York, Inc. and its indirect and direct subsidiaries and related entities (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Court").

WHEREAS on [___], 2019, the Court entered its *Interim Order (I) Authorizing the Payment of (A) Prepetition Claims of Lien Claimants, (B) Foreign Vendor Claims, (C) Section 503(b)(9) Claims, and (D) Critical Vendors, (II) Granting Related Relief* (the "Critical Vendor Order") [Docket No. [___]] authorizing the Debtors on a final basis, under certain conditions, to pay the prepetition claims of certain suppliers, including the Supplier, subject to the terms and conditions set forth therein.[3]

WHEREAS prior to the Petition Date, the Supplier delivered goods to the Company and/or performed services for the Company, and the Company paid the Supplier for such goods and/or services, according to Customary Trade Terms (as defined herein).

WHEREAS the Company and the Supplier (each a "Party," and collectively, the "Parties") agree to the following terms as a condition of payment on account of certain prepetition claims the Supplier may hold against the Company.

### Agreement

**1.**     Recitals. The foregoing recitals are incorporated herein by reference as if set forth at length herein.

**2.**     Supplier Payment. The Supplier represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Company to the Supplier is $[__] (the "Agreed Supplier Claim"). Following execution of this Trade Agreement, the

---

[3]    Capitalized terms used but not defined herein shall have the meanings set forth in the Final Critical Vendor Order.

Company shall, in full and final satisfaction of the Agreed Supplier Claim, pay the Supplier $[__] on account of its prepetition claim (the "Supplier Payment") (without interest, penalties, or other charges), as such invoices become due and payable.

3.    Agreement to Supply.

a.    The Supplier shall supply goods to and/or perform services for the Company, and the Company shall accept and pay for goods and/or services from the Supplier (to the extent the Company seeks such services), for the duration of the Debtors' chapter 11 cases based on the following terms (the "Customary Trade Terms"):  those trade terms at least as favorable to the Company as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances (as may be incorporated or contemplated by any agreements between the Parties or based on historic practice, as applicable), product mix, availability, and other programs) in place in the 180 days prior to the Petition Date except for any partial payments or other payments (or assurances) the Company made with respect to any unfinished product.  "Duration of the Debtors' chapter 11 cases" means the earlier of:  (i) the effective date of a chapter 11 plan in the Company's chapter 11 cases; (ii) the closing of a sale of all or a material portion of the Company's assets pursuant to Bankruptcy Code section 363 resulting in a cessation of the Company's business operations; (iii) the liquidation of the Company or conversion of the Debtor's chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; or (iv) a default under any of the Company's debtor-in-possession financing facilities that results in the Company losing access to funds available under any such facility.

b.    The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Company except as agreed-to in writing by the Parties.

c.    The Supplier shall continue to honor any existing allowances, credits, contractual obligations, or balances that were accrued as of the Petition Date and shall apply all such allowances, credits, or balances towards future orders in the ordinary course of business.

4.    Other Matters.

a.    The Supplier agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Company's chapter 11 cases on account of any outstanding administrative claims the Supplier may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due.  The Supplier agrees that such claims will be paid in the ordinary course of business after confirmation of a plan pursuant to the Customary Trade Terms then in effect.

b.    The Supplier will not separately seek payment from the Company on account of any prepetition claim (including, without limitation, any reclamation claim or any claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Trade Agreement or a plan confirmed in the Company's chapter 11 case.

c.    The Supplier will not file or otherwise assert against the Company, its assets, or any other person or entity or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to the Supplier by the Company

7

arising from prepetition agreements or transactions.  Furthermore, if the Supplier has taken steps to file or assert such a lien prior to entering into this Trade Agreement, the Supplier will promptly take all necessary actions to remove such liens.

**5.**    <u>Breach</u>.

a.    In the event that the Company pays the Supplier its Supplier Payment and the Supplier is determined to have breached this Trade Agreement (a "<u>Supplier Breach</u>"), upon written notice to the Supplier, the Supplier shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Supplier Payment or any portion of the Supplier Payment which cannot be recovered by the Company from the postpetition receivables then owing to the Supplier from the Company.

b.    In the event that the Company recovers the Supplier Payment pursuant to Section 5(a) hereof or otherwise, the Agreed Supplier Claim shall be reinstated as if the Supplier Payment had not been made.

c.    The Supplier agrees and acknowledges that irreparable damage would occur in the event of a Supplier Breach and remedies at law would not be adequate to compensate the Company.  Accordingly, the Supplier agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to an injunction or injunctions to prevent breaches of the provisions of this Trade Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief and/or other equitable relief.  The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement.  The Supplier hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for injunctive relief, specific performance, or other equitable remedies.  Notwithstanding the foregoing, in the event of a specific performance action by the Company, the Supplier retains its right to seek adequate assurance of payment and other similar relief pursuant to applicable law.

d.    In the event the Company fails to pay for goods or services delivered postpetition in accordance with this Trade Agreement, and the Company fails to cure such default within ten (10) days after receiving notice of such default, the Supplier shall have the right to terminate this Trade Agreement, in which event the Supplier (i) shall have no obligation to continue to provide goods or services to the Company and (ii) reserves its rights to file a timely proof of claim for any alleged unpaid amounts of the Supplier Payment.

**6.**     Notice.

If to the Supplier, then to the person and address identified in the signature block hereto.

If to the Company:

Grace Fu
575 Fifth Avenue
New York, New York 10017
Attn:  Grace Fu
E-mail:   gfu@barneys.com

and

Kirkland & Ellis LLP
601 Lexington Avenue, New York, New York 10022
Attn:  Joshua A. Sussberg and Gene S. Goldmintz
E-mail:  jsussberg@kirkland.com
          gene.goldmintz@kirkland.com
Facsimile: (212) 446-4900

and

Kirkland & Ellis LLP
300 North LaSalle, Chicago, Illinois 60654
Attn:  Chad J. Husnick and W. Benjamin Winger
E-mail:  chusnick@kirkland.com
          benjamin.winger@kirkland.com
Facsimile: (312) 862-2200

and

Katten Muchin Rosenman LLP
575 Madison Avenue, New York, NY 10022
Attn:  Steven J. Reisman
E-mail:  sreisman@kattenlaw.com
Facsimile: (212) 940-8776

**7.**     Representations and Acknowledgements.    The Parties agree, acknowledge and represent that:

a.    the Parties have reviewed the terms and provisions of the Final Critical Trade Order and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved pursuant to the Final Critical Trade Order;

9

b.    any payments made on account of the Agreed Supplier Claim shall be subject to the terms and conditions of the Final Critical Trade Order;

c.    if the Supplier refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under the Final Critical Trade Order, the Bankruptcy Code, or applicable law; and

d.    in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event, no action may be taken by either Party, including, but not limited to, the discontinuing of shipment of goods from the Supplier to the Company, until a ruling of the Court is obtained.

**8.**    <u>Confidentiality</u>.  In addition to any other obligations of confidentiality between the Supplier and Company, the Supplier agrees to hold in confidence and not disclose to any party:  (a) this Trade Agreement; (b) any and all payments made by the Company pursuant to this Trade Agreement; (c) the terms of payment set forth herein; and  (d) the Customary Trade Terms (collectively, the "<u>Confidential Information</u>"); *provided* that if any party seeks to compel the Supplier's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or the Supplier intends to disclose any or all of the Confidential Information, the Supplier shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order or any other available remedy to prevent such disclosure; *provided*, *further, that*, if such remedy is not obtained, the Supplier shall furnish only such information as the Supplier is legally required to provide.

**9.**    <u>Miscellaneous</u>.

a.    The Parties hereby represent and warrant that:  (i) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Trade Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

b.    This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them.  This Trade Agreement may not be changed, modified, amended or supplemented, except in a writing signed by both Parties.  Moreover, Supplier agrees to vote all claims now or hereafter beneficially owned by Supplier in favor of, and not take any direct or indirect action to oppose or impede confirmation of, any chapter 11 plan on a timely basis in accordance with the applicable procedures set forth in any related disclosure statement and accompanying solicitation materials, and timely return a duly-executed ballot to the Debtors in connection therewith, if such chapter 11 plan provides for a treatment of any Agreed Supplier Claim that is materially consistent with this Agreement.

c.    Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

          d.       This Trade Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

          e.       The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Trade Agreement.

          f.       This Trade Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

[Signature Page Follows]

11

AGREED AND ACCEPTED AS OF THE LATEST DATE SET FORTH BELOW:

**Barney's, Inc.**                                              **[SUPPLIER]**


_____          _____
By: Grace Fu                                                    By:
Title: Executive Vice President, General          Title:
Counsel, and Secretary
                                                                Address:

                                                                Date: