Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

Chad J. Husnick, P.C.
W. Benjamin Winger (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Steven J. Reisman
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, New York 10022
Telephone:    (212) 940-8800
Facsimile:    (212) 940-8776

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) Case No. 19-36300 (CGM) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING THE DEBTORS TO MAINTAIN AND ADMINISTER THEIR**
**EXISTING CUSTOMER PROGRAMS AND HONOR CERTAIN PREPETITION**
**OBLIGATIONS RELATED THERETO AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion.[2]

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is:  575 Fifth Avenue, New York, New York 10017.

[2]    A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Mohsin Y. Meghji, Chief*

## Relief Requested

1.      The Debtors seek entry of interim and final orders, substantially in the forms

attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final

Order"), (a) authorizing the Debtors to maintain and administer their customer-related programs,

policies, and practices (collectively, the "Customer Programs") and honor certain prepetition

obligations related thereto, and (b) granting related relief.  In addition, the Debtors request that

the Court (as defined below) schedule a final hearing within approximately twenty-five days of

the commencement of these chapter 11 cases to consider entry of the Final Order.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York

(the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference from the United States District Court for the Southern

District of New York*, dated February 1, 2012.  The Debtors confirm their consent, pursuant to

rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the Court

entering a final order by in connection with this motion to the extent that it is later determined

that the Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief sought herein are sections 105(a) and 363(b) of chapter 11

of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rule 6003,

---

*Restructuring Officer of Barneys New York, Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith.  Capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in the First Day Declaration.

and rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## **Background**

5.      The Debtors are a world-renowned luxury specialty retailer with twenty-two stores across the United States, including flagships in New York City and Beverly Hills, and a highly curated, shopper-friendly e-commerce platform.  Founded as a men's retailer in 1923 in downtown Manhattan, the Debtors sell the most intriguing fashion offering from the world's top designers, including women's and men's clothing, accessories, shoes, jewelry, cosmetics, fragrances, and gifts for the home.  The Debtors remain headquartered in New York, New York and lease all of their store locations.  The Debtors reported revenues of approximately $800 million for 2018.  As of the date hereof (the "Petition Date"), the Debtors have approximately 2,300 employees and funded debt obligations of approximately $200 million.

6.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

### Customer Programs[3]

7.      The Debtors provide certain incentives, discounts, and accommodations to their customers to attract and maintain positive customer relationships.  The Customer Programs promote customer satisfaction and inure to the goodwill of the Debtors' business and the value of their "brand."  Maintaining the goodwill of their customers is important to the Debtors' ongoing operations in these chapter 11 cases and is necessary to maximize value for the benefit of all of the Debtors' stakeholders.

8.      As of the Petition Date, the Debtors estimate that there are approximately $22.2 million of prepetition obligations outstanding related to Customer Programs.  These obligations include accrued credits, adjustments, discounts, prepayments, or other similar programs owing to customers.  The vast majority of these obligations ***do not*** entail the expenditure of cash.

**I.      The Refund and Exchange Program.**

9.      The Debtors allow their customers to return or exchange purchased merchandise subject to the Debtors' return policies (the "Refund and Exchange Program").  A customer may return purchased merchandise for the full purchase price so long as it is returned unworn, in sellable condition, within thirty days of purchase, and accompanied by an acceptable receipt. Pursuant to the Refund and Exchange Program, customers are refunded the full purchase price of a returned item in the manner in which they purchased the item.

10.      Pursuant to the Debtors' gift card program ("Gift Card Program"), gift certificates ("Gift Cards") are provided if a return is made outside the 30-day return period, if the customer

---

[3]      Although this motion is intended to be comprehensive, the Debtors may have inadvertently omitted some Customer Programs.  The Debtors request relief with respect to all Customer Programs, regardless of whether such Customer Program is specifically identified herein.

does not possess a receipt, or if the merchandise was marked as returnable for a Gift Card only. The Debtors do not separately account for Gift Cards issued pursuant to the Refund and Exchange Program. Instead, that potential liability is accounted for as part of the Gift Card Program, as described further below. Prior to 2004, merchandise credit was issued for merchandise returns instead of a Gift Card. The merchandise credits were issued without expiration dates. In order for customers to redeem merchandise credits, the document evidencing the merchandise credits must be legible and complete. The Debtors estimate that, as of the Petition Date, there are approximately $700,000 of outstanding liabilities related to merchandise credits.

11.     The Refund and Exchange Program is critical to maintaining the goodwill of the Debtors' customer base. Without the Refund and Exchange Program, potential customers may be unwilling to buy from the Debtors at all, which could lead to a decline in revenues, the ultimate cost of which would be borne by the Debtors' estates. Maintaining the Refund and Exchange Program allows the Debtors to protect customer confidence, and is an integral element of the Debtors' overall marketing and brand development strategy. Programs like the Refund and Exchange Program are common in the retail industry, and similar programs are used by the Debtors' competitors. The Debtors seek authorization to continue honoring their obligations in connection with the Refund and Exchange Program in a manner consistent with their past practices.

## II.     The Gift Card Program.

12.     The Debtors maintain the Gift Card Program, pursuant to which their customers can purchase pre-paid, non-expiring Gift Cards in various denominations or receive such Gift Cards in lieu of original tender for merchandise returns (as described above) or during specific promotional events. The Gift Cards can then be redeemed in-store or online for merchandise at a

later date.  The Debtors sell the Gift Cards to their customers in their retail stores and online.

Purchased Gift Cards do not have an expiration date, and the Debtors do not account for Gift

Cards as non-cash obligations.  Gift Cards issued as part of marketing promotions do expire

depending on the terms and conditions of the promotion.  The Debtors estimate that, as of the

Petition Date, approximately $16 million in issued Gift Cards are outstanding.  The Debtors seek

authorization to (i) honor all Gift Cards purchased by or issued to customers prior to the Petition

Date, and (ii) maintain the Gift Card Program after the Petition Date, in a manner consistent with

past practices.

### III.    The Pre-Payment Program.

13.    The Debtors maintain a program by which customers can prepay 50% of the

purchase price of custom merchandise ("Special Orders") for delivery at a later date (the "Pre-

Payment Program").  The Pre-Payment Program is an integral part of the Debtors' business and

is standard in the industry.  At the time of purchase, the custom merchandise is processed as a

Special Order.  The purchase is not flagged as a pre-payment, and the Debtors do not segregate

the amounts received under the Pre-Payment Program.

14.    Depending on the labor involved to prepare the custom merchandise, the Debtors

may forward a portion of the pre-payment to the applicable vendor.  The Debtors will generally

retain a portion of the pre-payment, but in certain instances may forward the entire amount to the

vendor to commence development of the Special Order.  Once complete, the customer is

required to pick up the custom merchandise in-store and pay the balance of the Special Order

payment.  In general, Special Orders are fully refundable within thirty days after the close of the

sale.  After that time, returns are generally not accepted.  Delivery schedules of completed items

generally varies by vendor and the extent of labor involved in crafting the custom merchandise.

As of the Petition Date, the Debtors hold approximately $1 million in pre-payments on account

of Special Orders related to custom merchandise, the vast majority of which is undergoing

production.   As of the Petition Date, the Debtors' hold Special Order pre-payment from

approximately 150 customers.

15.     The Pre-Payment Program is critical to maintaining the goodwill of the Debtors'

customer base.  Without the Pre-Payment Program, the Debtors would be unable to offer custom

merchandise to their customers and would lose the opportunity to sell Special Orders to those

customers unable to provide full payment at the time of purchase.  The Debtors do not separately

account for Pre-Payment Program purchases.  The Debtors request authority to continue the Pre-

Payment Program and to honor all customer and Debtor obligations related thereto, including the

collection and distribution of the Special Order pre-payments in the ordinary course of business.

**IV.   Sales Promotions.**

16.     The Debtors occasionally conduct sales promotions, either online or at selected

stores ("Sales Promotions").  Sales Promotions include clearance discounts, seasonal discounts,

and other promotions.  As of the Petition Date, the Debtors do not believe there are any amounts

due and owing in relation to Sales Promotions.  The Debtors seek authorization to honor the

Sales Promotions in a manner consistent with their past practices.

**V.   Charity Donation Programs.**

17.     The Debtors periodically contribute a percentage of sales revenue for specific

time periods to certain charitable organizations (collectively, the "Charity Donation Programs").

These promotions vary from year to year.  The Debtors partner with the Barneys New York

Foundation, a 501(c)(3) nonprofit organization, and certain other high-profile individuals from

time to time to host fundraisers during which the Debtors host sales events and subsequently

donate a percentage of all sales revenue generated during the fundraiser to the Barneys New

York Foundation.  As of the Petition Date, the Debtors do not believe there are any amounts held

on account of unremitted donations. The Debtors request authority to continue the Charity Donation Programs and to honor all customer and Debtor obligations related thereto, including the collection and distribution of the donations in the ordinary course of business.

## VI.    Credit Card Program.

18.    The Debtors offer their customers an opportunity to participate in a branded credit card program (the "Barneys Credit Card") that entitles them to receive reward points through the Barneys New York Influencer Rewards Program ("Barneys Influencer Points").[4]  Customers may use Barneys Influencer Points to obtain rewards based on cardholder status and the amount spent using the Barneys Credit Card (the "Barneys Influencer Rewards Program").  Card holders earn four percent back on all purchases made with their Barneys Credit Card.

19.    The Barneys Credit Card facilitates customer purchases from the Debtors.  In addition to supplying credit, the Barneys Credit Card builds customer loyalty, offering unique benefits to the Debtors' customers.  For instance, in addition to earning Barneys Influencer Points, cardholders are entitled to: (a) access to exclusive pre-sales; (b) invitations to select store events; (c) complimentary beauty samples when shopping in-store; and (d) select complementary services at in-store beauty and skincare treatment facilities.

20.    The Debtors use Comenity Capital Bank ("Comenity") and other vendors to administer the Barneys Credit Card (the "Third Party Services").  The Debtors rely upon such vendors to service the Barneys Credit Card.  The Debtors seek authority to continue to administer the Barneys Credit Card (including with respect to the Third Party Services) in the ordinary course of business and to satisfy prepetition obligations related thereto.

---

[4]    The Barneys Influencer Rewards Program replaces the Debtors' prior loyalty program, the My Barneys Bag Rewards Program.

## VII.    Rewards Programs.

21.    The Debtors offer customers the opportunity to participate in the Barneys Influencer Rewards Program.  Customers may enroll in the Barneys Influencer Rewards Program online or in any Barneys store, and holders of the Barneys Credit Card are automatically enrolled.  Customers enrolled in the Barneys Influencer Rewards Program earn one point for every dollar spent, and are eligible for a reward gift card twice per year based on the number of points accumulated during the six-month period (the "Points Accumulation Periods").  If such points were earned using the Barneys Credit Card, the enrolled customer will receive four percent back on those points.  If the points were earned using any other payment method, the customer will, instead, receive two percent back on those points.  The Debtors account for the Barneys Influencer Rewards Program as an accrued expense on a monthly basis.  As of the Petition Date, the Debtors estimate that approximately $3.0 million in points remain outstanding in connection with the Barneys Influencer Rewards Program, which are non-cash obligations of the Debtors.

22.    The Barneys Influencer Rewards Program replaces the Debtors' previous loyalty program (the "My Barneys Bag Rewards Program").  The My Barneys Bag Rewards Program enabled holders of the Barneys Credit Card to obtain rewards based on their cardholder status and the amount they spend using their Barneys Credit Card.  From the last issuance of the My Barneys Bag Points, which will expire on December 31, 2019, the Debtors estimate there is approximately $1.3 million in rewards to be redeemed, which are non-cash obligations of the Debtors.

23.    The Debtors also provide their customers with the opportunity to earn awards in the form of a credit against future purchases based on the amount they spend during a specified time period (the "Purple Card Program").  This credit is awarded in the form of a card

9

(the "Purple Card") that the Debtors issue twice a year.  A customer may use a Purple Card beginning twenty-eight days following a purchase, and each Purple Card remains active for approximately four to six weeks.  The Debtors account for Purple Cards as markdowns on future merchandise purchases by customers.  The Debtors believe that as of the Petition Date, there are approximately $200,000 in unredeemed Purple Card amounts available for use by customers, which are non-cash obligations of the Debtors.

24.     The Debtors seek authority to continue to administer the Barneys Influencer Rewards Program and to honor the remaining My Barneys Bag Rewards Program issuances and the Purple Cards in the ordinary course of business and to pay prepetition obligations related thereto.

**VIII.    Credit Card and Other Payment Processors.**

25.     In addition to cash and the Store Cards, the Debtors accept the following methods of payment from customers at in-store and online points of sale:  (i) Visa, MasterCard, Discover, and American Express credit cards; (ii) debit cards; (iii) China Union Pay, and (iv) Diner's Club (collectively, the "Non-Cash Payments").  To process Non-Cash Payments, the Debtors are party to certain agreements (the "Payment Processing Agreements") with payment processors (the "Payment Processing Companies").   The processing fees charged by each Payment Processing Company (the "Processing Fees") vary.  Processing Fees are paid differently to each Payment Processing Company.  For example, the Processing Fees for credit and debit card purchases processed by Bank of America Merchant Services ("BAMS") are deducted at the start of every month.  In contrast, the Processing Fees for online credit and debit card purchases processed by American Express are deducted daily, and the Debtors receive the net customer sales balance.

26.     When customers either return merchandise to the Debtors following a purchase made via Non-Cash Payment or dispute charges with a Payment Processing Company, the Debtors may be obligated to refund to such Payment Processing Company the purchase price of the returned or disputed merchandise, subject to certain adjustments (collectively, "Chargebacks," and together with the Processing Fees, the "Processing Obligations").  Generally, Chargebacks are satisfied by netting the amount charged against pending payments owed by a Payment Processing Company to the Debtors.  It is possible that certain Processing Obligations incurred by the Debtors immediately prior to the Petition Date may not have been fully netted out against the payments received by the Debtors prior to the Petition Date.

27.     The Debtors' continued acceptance of Non-Cash Payments is essential to the operation of the Debtors' business because the majority of the Debtors' sales—indeed, the majority of all retail sales—are made using Non-Cash Payments.  Declining to accept Non-Cash Payments would have a severe negative effect on the Debtors' ongoing operations, the cost of which would be borne by their estates.  To avoid disrupting these vital payment processing services, the Debtors seek authority to continue paying the Processing Obligations in the ordinary course of their business pursuant to the terms of the Payment Agreements, and request that the Court authorize the Payment Processing Companies to continue to set off the Processing Obligations against amounts remitted to the Debtors, whether arising before or after the Petition Date, in a manner consistent with past practices.

**Basis for Relief**

I.     **Continuing to Honor Customer Programs in the Ordinary Course Is Warranted.**

28.     Courts in this jurisdiction generally acknowledge that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate,

including an operating business's going-concern value. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

29. Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); *see also James A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the pre-plan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497.

30. In addition, courts may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *See In re C.A.F. Bindery, Inc*., 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (holding that the "doctrine of necessity" stands for the principle that a bankruptcy court may allow

pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization). Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *Ionosphere Clubs*, 98 B.R. at 176.

31. Accordingly, the Court can authorize the Debtors to continue the Customer Programs and satisfy prepetition obligations related thereto pursuant to sections 363(b) and 105(a) of the Bankruptcy Code. Continuing to administer the Customer Programs without interruption during the pendency of these chapter 11 cases is critical to preserve the value of the Debtors' assets by, most importantly, preserving customer goodwill and market share. This value will inure to the benefit of the Debtors' estates and their creditors.

32. Where retaining the loyalty and patronage of customers is critical to successful chapter 11 cases, courts have granted relief similar to that requested herein. *See, e.g.*, *In re Hollander Sleep Products, LLC*, Case No. 19-11608 (MEW) (Bankr. S.D.N.Y. July 2, 2019) (authorizing debtors to continue to maintain and administer prepetition customer programs in the ordinary course of business and honor prepetition obligations related to same); *In re Windstream Holdings, Inc.*, Case No. 22312 (RDD) (Bankr. S.D.N.Y. Apr. 22, 2019) (same); *In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. May 7, 2018) (same); *In re Cenveo, Inc.*, Case No. 18-22178 (RDD) (Bankr. S.D.N.Y. Mar. 8, 2018) (same); *In re 21st Century Oncology Holdings, Inc.*, Case No. 17-22770 (RDD) (Bankr. S.D.N.Y. June 20, 2017) (same).[5]

33. Accordingly, the Debtors submit that the substantial benefit conferred on the Debtors' estates by the Customer Programs warrants the authority to honor the Customer

---

[5]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

Programs and any customer obligations relating thereto, and respectfully request the authority to continue their Customer Programs and honor prepetition commitments related thereto.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

34.     The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, debtor-in-possession financing, and anticipated access to cash collateral.   Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Customer Programs.   Accordingly, the Debtors believe that checks or wire transfer requests that are not related to authorized payments will not be honored inadvertently.   Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

35.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."   Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).   For the reasons discussed above, authorizing the Debtors to continue the Customer Programs and satisfy prepetition obligations related thereto, and granting the other relief requested herein is essential to the Debtors' ability to transition their operations into these chapter 11 cases and maintain the value of their estates postpetition.   Failure to receive such authorization and other relief during

the first twenty-one days of these chapter 11 cases would severely disrupt the Debtors' ability to maintain their estates at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## Motion Practice

36.    This motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this motion. Accordingly, the Debtors submit that this motion satisfies Local Rule 9013-1(a).

## Reservation of Rights

37.    Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as: (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

38.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

39.    The Debtors will provide notice of this motion to:  (a) the United States Trustee for the Southern District of New York; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition ABL Agent; (d) counsel to the Term Loan Agent; (e) counsel to the DIP parties; (f) the United States Attorney's Office for the Southern District of New York; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for all states in which the Debtors conduct business; and (j) any party that requests service pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

40.    No prior request for the relief sought in this motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other relief as is just and proper.

Dated:  August 6, 2019      /s/ Joshua A. Sussberg, P.C.
New York, New York      Edward O. Sassower, P.C.
                              Joshua A. Sussberg, P.C.
                              **KIRKLAND & ELLIS LLP**
                              **KIRKLAND & ELLIS INTERNATIONAL LLP**
                              601 Lexington Avenue
                              New York, New York 10022
                              Telephone:    (212) 446-4800
                              Facsimile:    (212) 446-4900

                              -and-

                              Chad J. Husnick, P.C.
                              W. Benjamin Winger (*pro hac vice* pending)
                              **KIRKLAND & ELLIS LLP**
                              **KIRKLAND & ELLIS INTERNATIONAL LLP**
                              300 North LaSalle Street
                              Chicago, Illinois 60654
                              Telephone:    (312) 862-2000
                              Facsimile:    (312) 862-2200

                              -and-

                              Steven J. Reisman
                              **KATTEN MUCHIN ROSENMAN LLP**
                              575 Madison Avenue
                              New York, New York 10022
                              Telephone:    (212) 940-8800
                              Facsimile:    (212) 940-8776

                              *Proposed Co-Counsel for the Debtors and Debtors in Possession*

# EXHIBIT A

## Proposed Interim Order

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**INTERIM ORDER (I) AUTHORIZING**
**THE DEBTORS TO MAINTAIN AND ADMINISTER THEIR**
**EXISTING CUSTOMER PROGRAMS AND HONOR CERTAIN PREPETITION**
**OBLIGATIONS RELATED THERETO AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing the Debtors to maintain and administer the Customer Programs and honor certain prepetition obligations related thereto, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is:  575 Fifth Avenue, New York, New York 10017.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

reviewed the Motion and having heard the statements in support of the relief requested therein at

a hearing before this Court (the "<u>Hearing</u>"); and this Court having determined that the legal and

factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted

herein; and upon all of the proceedings had before this Court; and after due deliberation and

sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "<u>Final Hearing</u>") on the Motion shall be held on

_____, 2019, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry

of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on

_____, 2019, and shall be served on:  (a) Barneys New York, Inc., 575 Fifth Avenue, New

York, New York 10017; Attn: Grace Fu; (b) proposed co-counsel to the Debtors, Kirkland &

Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn:  Edward O. Sassower,

P.C., Joshua A. Sussberg, P.C., and Gene Goldmintz, Kirkland & Ellis LLP, 300 North LaSalle

Street, Chicago, Illinois 60654, Attn: Chad J. Husnick, P.C. and W. Benjamin Winger, and

Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, New York 10022,

Attn: Steven J. Reisman; (c) the United States Trustee, 11A Clinton Avenue, Room 620, Albany,

New York 12207, Attn: Alicia Leonhard; (d) counsel to any statutory committee appointed in

these chapter 11 cases; (e) counsel to the Prepetition ABL Agent, (x) Riemer & Braunstein LLP,

100 Cambridge Street, Boston, Massachusetts 02114, Attn: Donald E. Rothman and (y) Riemer

& Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, New

York 10036, Attn: Steven E. Fox; (f) counsel to the Term Loan Agent, Choate Hall & Stewart

LLP, Two International Place, Boston, Massachusetts 02110, Attn: Kevin J. Simard and Mark

Silva; and (g) counsel to the DIP parties, Paul Hastings LLP, 71 South Wacker Drive, Chicago,

Illinois, 60606, Attn: Chris Dickerson and Holly Snow.   In the event no objections to entry of a

final order on the Motion are timely received, this Court may enter such final order without need

for the Final Hearing.

3.    The Debtors are authorized, but not directed, to continue to administer Customer

Programs and satisfy prepetition obligations related thereto.

4.    Notwithstanding the relief granted in this Interim Order and any actions taken

pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the

validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the

Debtors' or any other party-in-interest's right to dispute any particular claim on any grounds;

(c) a promise or requirement to pay any particular claim; (d) an implication or admission that any

particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request

or authorization to assume any agreement, contract, or lease pursuant to section 365 of the

Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights

under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or

any other party-in-interest that any liens (contractual, common law, statutory, or otherwise)

satisfied pursuant to this Interim Order are valid and the Debtors and all other parties-in-interest

expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of

all such liens.  Any payment made pursuant to this Interim Order should not be construed as an

admission as to the validity, priority, or amount of any particular claim or a waiver of the

Debtors' or any other party-in-interest's rights to subsequently dispute such claim..

5.    The banks and financial institutions on which checks were drawn or electronic

payment requests made in payment of the prepetition obligations approved herein are authorized

and directed to receive, process, honor, and pay all such checks and electronic payment requests

when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

6.       The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Customer Programs.

7.       Nothing contained in the Motion or this Interim Order is intended or should be construed to create an administrative priority claim on account of any of the Customer Programs.

8.       Notwithstanding the relief granted in this Interim Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with any orders entered by the Court approving the Debtors' entry into any postpetition debtor in possession financing facility and any budget in connection therewith and/or authorizing the Debtors' use of cash collateral and any budget in connection therewith.

9.       Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

10.       The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

11.       Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

12.       Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

13.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

14.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Dated: _____, 2019
Poughkeepsie, New York

_____
THE HONORABLE CECELIA G. MORRIS
UNITED STATES BANKRUPTCY JUDGE

## <u>EXHIBIT B</u>

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS
TO MAINTAIN AND ADMINISTER THEIR EXISTING
CUSTOMER PROGRAMS AND HONOR CERTAIN PREPETITION
OBLIGATIONS RELATED THERETO AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing the Debtors to maintain and administer the Customer Programs and honor certain prepetition obligations related thereto, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819). The location of the Debtors' service address is: 575 Fifth Avenue, New York, New York 10017.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

heard the statements in support of the relief requested therein at a hearing before this Court
(the "Hearing"); and this Court having determined that the legal and factual bases set forth in the
Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the
proceedings had before this Court; and after due deliberation and sufficient cause appearing
therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, to continue to administer Customer
Programs and satisfy prepetition obligations related thereto.

3.      Notwithstanding the relief granted in this Final Order and any actions taken
pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the
validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' right to
dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any
prepetition claim; (d) an implication or admission that any particular claim is of a type specified
or defined in this Final Order or the Motion; (e) a request or authorization to assume any
prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a
waiver or limitation of the Debtors' rights or the rights of any other Person under the Bankruptcy
Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual,
common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors
expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all
such liens.

4.      The banks and financial institutions on which checks were drawn or electronic
payment requests made in payment of the prepetition obligations approved herein are authorized
and directed to receive, process, honor, and pay all such checks and electronic payment requests

2

when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

5.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Customer Programs.

6.      Nothing contained in the Motion or this Final Order is intended or should be construed to create an administrative priority claim on account of any of the Customer Programs.

7.      Notwithstanding the relief granted in this Final Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with any orders entered by the Court approving the Debtors' entry into any postpetition debtor in possession financing facility and any budget in connection therewith and/or authorizing the Debtors' use of cash collateral and any budget in connection therewith.

8.      The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

9.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

12.    This Court retains exclusive jurisdiction with respect to all matters arising from or
related to the implementation, interpretation, and enforcement of this Final Order.

Dated: _____, 2019
Poughkeepsie, New York                        _____
                                              THE HONORABLE CECELIA G. MORRIS
                                              UNITED STATES BANKRUPTCY JUDGE