UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
---------------------------------------------------------------x
                                    :       Chapter 11
In re:                              :       Case No. 19-36300 (CGM)
                                    :
BARNEY'S NEW YORK, INC., et al.,    :       Jointly Administered
                                    :
    Debtors.                        :
                                    :       Ref. Docket No. 20
---------------------------------------------------------------x
```

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,
AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING
DEBTORS AND DEBTORS IN POSSESSION TO OBTAIN JUNIOR
LIEN POST-PETITION FINANCING, (II) AUTHORIZING
USE OF CASH COLLATERAL, (III) GRANTING LIENS AND SUPER-
PRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO
PREPETITION SECURED PARTIES, (V) MODIFYING THE AUTOMATIC STAY,
(VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the DIP Motion (the "*DIP Motion*")[1] of **BARNEY'S, INC.**, on behalf of itself and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "*Debtors*"), pursuant to sections 105, 361, 362, 363, 364, and 507 of Title 11, United States Code, 11 U.S.C. §§ 101 *et seq.* (the "*Bankruptcy Code*"), and in accordance with Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "*Local Rules*"), filed in the United States Bankruptcy Court for the Southern District of New York (this "*Court*"), in these chapter 11 cases (the "*Chapter 11 Cases*"), for entry of interim and final orders granting the following relief:

    (I)    **DIP Financing**

        (A)    Authorizing the Debtors to obtain up to $75 million in post-petition financing (the "*DIP Facility*") pursuant to (and in accordance with the terms of) that certain *Debtor-In-Possession Secured Multi-Draw Term Promissory Note* (as may be amended, modified, or supplemented and in effect from time-to-time, the "*DIP Credit Agreement*"), substantially in the form as filed with the Court, by and among (x) Barney's Inc., as borrower (the "*Borrower*"), (y) the financial institutions that are or may from time to time become parties thereto (together with their respective successors and assigns, the "*DIP Lenders*"), and (z) GACP

---

[1]    Capitalized terms used but not otherwise defined herein have the meaning given to them in the DIP Credit Agreement (defined below).

Finance Co., LLC, as administrative agent (in such capacity, "***DIP Agent***," and together with the DIP Lenders, the "***DIP Parties***"):

(i)      to pay fees, costs, and expenses as provided in the DIP Financing Agreements, including amounts incurred in connection with the preparation, negotiation, execution, and delivery of the DIP Credit Agreement and the other DIP Financing Agreements;

(ii)     to repay $50 million of the Prepetition ABL Debt;

(iii)    for general operating and working capital purposes, for the payment of transaction expenses, for the payment of fees, expenses, and costs incurred in connection with the Chapter 11 Cases, and other proper corporate purposes of the Debtors not otherwise prohibited by the terms hereof for working capital, and other lawful corporate purposes of the Debtors;

(iv)     for making adequate protection payments and other payments as provided in this Order (this "***Interim Order***") (and upon its entry, the Final Order (defined below)); and

(v)      to fund the Carve Out (as defined below)

in each case in accordance with the Approved Budget (defined below) and the terms of this Interim Order.

(B)      Authorizing the Borrower to enter into the DIP Credit Agreement and for the Borrower and the other Debtors to enter into all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP Agent and/or the DIP Lenders, including, without limitation, security agreements, pledge agreements, notes, guaranties, mortgages, and Uniform Commercial Code ("***UCC***") financing statements, and all other related agreements, documents, notes, certificates, and instruments to be executed, delivered, and/or ratified by the Debtors in connection therewith or related thereto (collectively, as may be amended, modified, or supplemented and in effect from time to time, the "***DIP Financing Agreements***");

(C)      Authorization of the Debtors to grant security interests, liens, and superpriority claims (including, as applicable, superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, and liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code), solely to the extent set forth in this Interim Order, to the DIP Agent, for the benefit of itself and the DIP Lenders, and related protections to secure all obligations of the Debtors under and with respect to the DIP Facility in the order of priority and as provided in this Interim Order; and

**(II)    Interim Use of Cash Collateral –** Authorizing the Debtors to (i) use Cash Collateral (defined below) pursuant to sections 361, 362 and 363 of the Bankruptcy Code, in accordance with the Approved Budget (defined below), including to fund the Prepetition Indemnity Account (defined below) and for the purposes set forth in Paragraphs I(A)(i)-(iv) above; and (ii) provide adequate protection to Prepetition Secured Parties (defined below) for their respective interests in the Prepetition Collateral (defined below), including Cash Collateral, to the extent of any Diminution in Value (defined below), on the terms set

forth in this Interim Order;

**(III)**    **Modifying the Automatic Stay –** Modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreements and this Interim Order;

**(IV)**    **Waiving Any Applicable Stay –** Waiving any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Interim Order;

**(V)**    **Waiving the Provisions of Sections 506(c) and 552(b) of the Bankruptcy Code –** Upon entry of the Final Order (as defined below), granting the DIP Agent, the DIP Lenders and the Prepetition Secured Parties, as applicable, a waiver of the "equities of the case" exception under section 552(b) of the Bankruptcy Code and of the provisions of section 506(c) of the Bankruptcy Code; and

**(VI)**    **Final Hearing** – Scheduling a final hearing (the "***Final Hearing***") to consider entry of an order (the "***Final Order***") granting the relief requested in the DIP Motion on a final basis and approving the form of notice with respect to the Final Hearing.

and upon the *Declaration of Mohsin Y. Meghji, Chief Restructuring Officer of Barneys New York, Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions (the "**First Day Declaration**")* and the

*Declaration of Saul Burian in Support of the Debtors' Motion For Entry of Interim and Final Orders (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Lenders, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief (the "**Burian Declaration**"),* each of which was filed contemporaneously with the DIP Motion; and this Court having reviewed the DIP Motion and held a hearing with respect to the DIP Motion on August 6, 2019 (the "***Interim Hearing***"); and upon the DIP Motion, the First Day Declaration, the Burian Declaration, and the record of the Interim Hearing; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

## II.     Procedural Findings of Fact

1.      **Petition Date.**  On August 5, 2019 (the "*Petition Date*"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

2.      **Jurisdiction and Venue.**  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a "core" proceeding pursuant to 28 U.S.C. § 157(b).

3.      **Statutory Predicates**.  The statutory bases for the relief sought herein are sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 9014 and Local Rule 4001-2.

4.      **Committee Formation.**  As of the date hereof, no statutory committee (a "*Committee*") of unsecured creditors, equity interest holders, or other parties-in-interest has been appointed in the Chapter 11 Cases.

5.      **Notice.**  The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 2002, 4001(b), (c), and (d) and Rule 9014.  Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors to certain parties-in-interest, including: (i) the Office of the United States Trustee (the "*U.S. Trustee*"); (ii) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates, on a consolidated basis; (iii) counsel to the DIP Agent and counsel to the Prepetition Agents; and (iv) all other secured creditors of record, and no other or further notice need be given.

## III.     Debtors' Acknowledgements and Agreements

6.      Subject in all respects to the rights of a Committee and other parties-in-interest (other than the Debtors) and to the extent as set forth in Paragraphs 39-43 hereof, each of the Debtors admits, stipulates,

acknowledges, and agrees (collectively, Paragraphs III.6(1) through (9) hereof shall be referred to herein as the "***Debtors' Stipulations***") that:

(1)    Prepetition Financing Documents.  Prior to the commencement of the Chapter 11 Cases, the Debtors were parties to (A) that certain Amended and Restated Revolving Credit and Term Loan Facility Agreement, first dated as of June 5, 2012 (as amended, modified, or supplemented and in effect from time-to-time, the "***Prepetition Credit Agreement***"), by and among (1) the Debtors that comprised the "Loan Parties" thereunder, (2) WELLS FARGO BANK, NATIONAL ASSOCIATION, as administrative agent (in such capacity, the "***Prepetition ABL Agent***"), and (3) the other lenders party to the Revolving Facility (as defined in the Prepetition Credit Agreement) from time to time (collectively, the "***Prepetition ABL Lenders***"), and (B) WELLS FARGO BANK, NATIONAL ASSOCIATION, as term loan agent (in such capacity, the "***Prepetition Term Agent***"; and together with the Prepetition ABL Agent, the "***Prepetition Agents***") under the Prepetition Credit Agreement, for itself and on behalf of the term loan lenders who have prepetition Term Loans (collectively, the "***Prepetition Term Lenders***"; and together with the Prepetition ABL Lenders and Prepetition Agents, the "***Prepetition Secured Parties***"); and (C) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of Prepetition Secured Parties including, without limitation, control agreements, mortgages, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto, including, without limitation, that certain WellsOne® Commercial Card Agreement, dated April 10, 2013 (the "***PCard Agreement***") (each as amended, modified or supplemented and in effect, collectively, the "***Prepetition Financing Documents***").

(2)    Prepetition Secured Debt Amount.

(i)    As of the Petition Date, the Debtors were liable to the Prepetition ABL Agent and Prepetition ABL Lenders under the Prepetition Financing Documents, on account of "Revolving Loans" in the approximate aggregate principal amount of $121,307,911.10, *plus* letters of credit in the approximate stated amount of not less than $20,571,590.02, *plus* interest accrued and accruing at the default rate, costs, expenses, fees (including attorneys' fees and legal expenses), other charges and other obligations, including, without limitation, on account of cash management, credit card, amounts due under the PCard Agreement, depository, leasing, hedging and other banking or financial services secured by the Prepetition Financing Documents (collectively the "***Prepetition ABL Debt***"); and

(ii)    As of the Petition Date, the Debtors were liable to the Prepetition Term Agent and Prepetition Term Lenders under the Prepetition Financing Documents, on account of "Term Loans" in the approximate aggregate principal amount of $50,212,500.00, *plus* interest accrued and accruing at the default rate, costs, expenses, fees (including attorneys' fees and legal expenses), other charges and other obligations secured by the Prepetition Financing Documents (collectively the "***Prepetition Term Debt***"; and together with the Prepetition ABL Debt, the "***Prepetition Secured Debt***").

(3)    Prepetition Collateral.  To secure the Prepetition Secured Debt (including, without limitation, amounts due and owing under the PCard Agreement), each of the Debtors granted continuing security interests and Liens (collectively, the "***Prepetition Liens***") to the Prepetition ABL Agent, for the benefit of itself and the other Prepetition Secured Parties, upon the "Collateral" (as defined in that certain Amended and Restated Pledge And Security Agreement

(ABL) dated as of June 5, 2012 (as amended, modified, or supplemented and in effect from time-to-time, the "***Prepetition Security Agreement***"), comprising substantially all of its/their assets and property (collectively, the "***Prepetition Collateral***").  As of the Petition Date, the value of the Prepetition Collateral exceeded the aggregate amount of Prepetition Secured Debt, and the Prepetition Secured Debt constitutes allowed secured claims pursuant to section 506 of the Bankruptcy Code.

(4)    <u>Prepetition Lien Priority</u>. The Prepetition Liens of the Prepetition Secured Parties have priority over all other Liens except (x) valid, enforceable, non-avoidable and perfected Liens in existence on the Petition Date that, after giving effect to any intercreditor or subordination agreement (if any), are senior in priority to the Prepetition Liens, and (y) valid, enforceable and non-avoidable Liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and after giving effect to any intercreditor or subordination agreement (if any), are senior in priority to the Prepetition Liens (collectively, the "***Permitted Prior Liens***"); <u>provided</u>, <u>however</u>, that any right or alleged right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien and such reclamation right is expressly subject to the Prepetition Liens and the DIP Liens.

(5)    As of the Petition Date,

(i)    the Prepetition Liens are valid, binding, enforceable, and perfected first-priority Liens, subject only to any Permitted Prior Liens, and are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law,

(ii)    (a) the Prepetition Secured Debt constitutes legal, valid, and binding obligations of the "Loan Parties" thereunder, enforceable in accordance with the terms of the Prepetition Financing Documents (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code), (b) no offsets, defenses, or counterclaims to any of the Prepetition Secured Debt exists, and (c) no portion of the Prepetition Secured Debt is subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law,

(iii)    the Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Agents or any other Prepetition Secured Party with respect to the Prepetition Financing Documents or otherwise, whether arising at law or at equity, including, without limitation, any recharacterization, subordination, disallowance, avoidance or other claims arising under or pursuant to sections 105, 510, 541 or 542 through 553, inclusive, of the Bankruptcy Code,

(iv)    the Prepetition Secured Debt constitutes an allowed secured claim(s);

(v)    the Debtors acknowledge and stipulate that they have been and are in default of their obligations under the Prepetition Financing Documents and that, as of the Petition Date, the Prepetition Secured Debt had been accelerated and was due and payable, and that interest was accruing on the Prepetition Secured Debt at the default rate.

(6) On the date that this Interim Order is entered, each of the Debtors has waived, discharged, and released the Prepetition Agents and each of the other Prepetition Secured Parties, together with their respective successors, assigns, subsidiaries, parents, affiliates, agents, attorneys, officers, directors, and employees (collectively, the "***Released Parties***"), of any right the Debtors may have (i) to challenge or object to any of the Prepetition Secured Debt, (ii) to challenge or object to the Prepetition Liens or any other security for the Prepetition Secured Debt, and (iii) to bring or pursue any and all claims, objections, challenges, causes of action, and/or choses in action arising out of, based upon, or related to the Prepetition Financing Documents, or otherwise. None of the Debtors possesses and none of the Debtors will assert any claim, counterclaim, setoff, or defense of any kind, nature, or description against any of the Released Parties, including anything which would in any way affect the validity, enforceability, priority, and non-avoidability of any of the Prepetition Financing Documents or the Prepetition Liens, or any claim of the Prepetition Agents and/or the Prepetition Secured Parties pursuant to the Prepetition Financing Documents, or otherwise.

(7) <u>Cash Collateral</u>. The Prepetition Secured Parties have a continuing security interest in and Lien on all or substantially all of the Debtors' "cash collateral" as defined in section 363(a) of the Bankruptcy Code (the "***Cash Collateral***"), including, without limitation, any and all of the Debtors' cash, including cash and other amounts on deposit or maintained in any account or accounts by the Debtors, any and all cash released as a result of the termination and/or cancellation of any letters of credit issued for the benefit of Debtors that have been or may be cash collateralized prior to or after the Petition Date, any amounts generated by the collection of accounts receivable all amounts located in the Debtors' stores and on deposit in the Debtors' banking, checking, or other deposit accounts and all proceeds of the Prepetition Collateral (but excluding any payroll, withholding tax and other fiduciary accounts and certain accounts with <u>de</u> <u>minimis</u> balances (but solely to the extent provided in the Prepetition Financing Documents)), to secure the Prepetition Secured Debt, and the proceeds and products of each of the foregoing; provided, however, that any Liens, interests, or rights of the Prepetition Secured Parties with respect to Cash Collateral or other property on account of the Consignment Facility (the "***DIP Priority Collateral***") shall be junior to the Liens, interests, and rights of the DIP Parties.

(8) <u>Adequate Protection</u>. The Prepetition Secured Parties are entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including, without limitation, the Cash Collateral, to the extent of any diminution in the value of such interests, as a result of (i) the incurrence of the DIP Obligations (as defined below), (ii) the use of Cash Collateral as set forth in this Interim Order, (iii) the subordination of the Prepetition Secured Debt to the Carve Out (as defined below), (iv) any other diminution in value of the Prepetition Collateral arising from the Debtors' use, sale or disposition of Prepetition Collateral (or the proceeds thereof), and (v) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, "***Diminution in Value***").

(9) None of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties controls the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are managed or conducted, or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order, the DIP Facility, the DIP Financing Agreements, the Prepetition Secured Debt and/or the Prepetition Financing Documents.

### IV.    Authorization for Use of Cash Collateral; Adequate Protection

7.    In exchange for the grant of Adequate Protection as provided herein, the Prepetition Secured Parties have agreed to the Debtors' use of Cash Collateral on the terms set forth in this Interim Order, subject to the Approved Budget, and to the subordination of the Prepetition Liens to the Carve Out, in each case as set forth herein.

8.    Based upon the record before the Court, this Interim Order, including the terms of the DIP Facility, the use of Cash Collateral, and the Adequate Protection granted in this Interim Order, have been negotiated at arms' length and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, by each of the Debtors, the DIP Agent, and the Prepetition Secured Parties, and are in the best interests of the Debtors, their estates and creditors and are consistent with the Debtors' fiduciary duties.

9.    Pursuant to the terms and conditions of this Interim Order and the DIP Financing Agreements, and in accordance with and as may be limited by the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreements and this Interim Order), the Debtors are authorized to use Cash Collateral and to use the advances under the DIP Facility during the Interim Period and terminating upon notice being provided (x) by the Prepetition Agents that a Cash Collateral Termination Event has occurred, or (y) by the DIP Agent that a DIP Event of Default (defined below) and/or the DIP Maturity Date (defined below), as applicable, has occurred; provided, that the Debtors shall not be authorized to use any Cash Collateral that has been posted with the Prepetition ABL Agent to cash collateralize (a) any prepetition Letter of Credit issued under the Prepetition Credit Agreement or (b) any amounts due or to become due under the PCard Agreement (including, without limitation, any applicable fees and customary charges accrued and accruing thereunder); provided further, that in no event shall the Debtors be authorized during the Interim Period to incur obligations under the PCard Agreement (exclusive of applicable fees and customary charges) in an amount greater than $200,000, including any usual and customary fees, costs, and expenses under the PCard Agreement.

10.    The Prepetition Secured Parties, the DIP Parties, and the Debtors have agreed that the budget, the short form of which is attached hereto as *Exhibit "1"* (as the same may be modified,

supplemented, or updated from time to time in the sole discretion and mutual consent of the Debtors, DIP Agent and the Prepetition Agents, the "***Approved Budget***") is adequate considering all the available assets, to pay the administrative expenses due and accruing for the period commencing on the Petition Date and continuing through until the Final Hearing (the "***Interim Period***"). The Approved Budget has been prepared and is predicated on the requirement that the Debtors shall (a) remain "in-formula" throughout the Interim Period and otherwise adhere to the "Borrowing Base" formula as set forth in the Prepetition Credit Agreement (for avoidance of doubt, after giving effect to the implementation of the DIP Tranche A Term Loan Reserve)], and (b) at all times during the period covered by the Approved Budget maintain Excess Availability (as defined in the Prepetition Credit Agreement) of not less than ten percent (10%) of the sum of (i) the Revolving Borrowing Base (calculated (A) without subtracting the Term Loan Reserve from the Revolving Borrowing Base at such time, and (B) after subtracting the DIP Tranche A Term Loan Reserve), plus (ii) the lesser of (x) the outstanding amount of the Term Loan at such time, and (y) the Term Loan Borrowing Base, at such time (the "***Minimum Excess Availability Amount***").]

11.     During the Interim Period, all collections of Cash Collateral shall be deposited by the Debtors with the Prepetition ABL Agent in accordance with the Debtors' existing consolidated cash management system, the maintenance of which has been approved under separate order of the Court entered contemporaneously herewith. Upon receipt of Cash Collateral as provided herein, the Prepetition ABL Agent shall maintain such collections in a pooling, suspense or similar account ("***Cash Collateral Account***"), subject to the terms of this Interim Order. In furtherance of the foregoing, not later than noon (prevailing Eastern Time) on each Business Day (as defined in the Prepetition Credit Agreement) during the Interim Period the Debtors shall be required to deliver an updated Borrowing Base Certificate based on best available estimates (as defined in the Prepetition Credit Agreement) to the Prepetition Secured Parties and the DIP Parties which Borrowing Base Certificate shall include a reserve for the amount necessary to fund the Carve-Out Reserve (to the extent not funded). Each Tuesday (by noon (prevailing Eastern Time)) during the Interim Period the Debtors shall be permitted to deliver to the Prepetition ABL Agent and the DIP Agent a written cash collateral draw request (each a "***CC Draw Request***"), together with a schedule of

all proposed disbursements for such week (each a "***Disbursement Schedule***"), including identification of

which line item(s) in the Approved Budget such proposed disbursements relate to.  Upon the Prepetition

ABL Agent's and the DIP Agent's receipt of a CC Draw Request and associated Disbursement Schedule,

and following verification of conformity thereof with the Approved Budget, the Prepetition ABL Agent

shall disburse funds from the Cash Collateral Account as appropriate to fund the amounts provided for in

the subject Disbursement Schedule.  For the avoidance of doubt, it shall be a condition to the Debtors'

ability to access and use the Prepetition Secured Parties' Cash Collateral that they submit to the Prepetition

ABL Agent and the DIP Agent the CC Draw Request and associated Disbursement Schedule in the manner

and time as provided herein.  In the event a Borrowing Base Certificate reveals that the Minimum Excess

Availability Amount is not satisfied, the Prepetition Secured Parties are authorized to debit the Debtors'

accounts and apply Cash Collateral on deposit therein in an amount sufficient to satisfy the Minimum

Excess Availability Amount; provided, however, that no portion of the DIP Facility may be applied to

satisfy the Minimum Excess Availability Amount.  The initial CC Draw Request shall be made upon entry

of this Interim Order, shall be in the amount of $75 million of which $50 million shall be used to repay the

Prepetition ABL Debt, and shall be applied as determined by the Prepetition ABL Agent in accordance with

the Prepetition Financing Documents.

12.    As adequate protection for any Diminution in Value of the interests of the Prepetition

Secured Parties in the Prepetition Collateral (including Cash Collateral), the Prepetition Secured Parties

shall receive the following (collectively, "***Adequate Protection***"):

(a)    **Adequate Protection Liens**.  Pursuant to sections 361 and 363(e) of the
Bankruptcy Code, and solely to the extent of the Diminution in Value of the interests of the
Prepetition Secured Parties in the Prepetition Collateral (including Cash Collateral), the Prepetition
Secured Parties shall have, subject to the terms and conditions set forth below, valid, perfected, and
enforceable additional and replacement security interests and Liens in the DIP Collateral (as
defined below) (the "***Adequate Protection Liens***") which shall be junior only to the Carve Out and
Permitted Prior Liens.

(b)    **Adequate Protection Superpriority Claim**. Solely to the extent of the
Diminution in Value of the interests of the Prepetition Secured Parties in the Prepetition Collateral,
each of the Prepetition Secured Parties shall have an allowed superpriority administrative expense
claim (each a "***Adequate Protection Superpriority Claim***"; and collectively the "***Adequate
Protection Superpriority Claims***") which shall have priority (except with respect to the Carve Out),

in the Chapter 11 Cases under sections 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and upon entry of the Final Order, sections 506(c) and 552 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy, or attachment, but which shall be junior only to the Carve Out.

Other than the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Case, will be senior to, prior to, or on parity with the Adequate Protection Superpriority Claims.

(c)    **Adequate Protection Payments**.

(i)    Until the repayment in full of the Prepetition Secured Debt, on the last business day of each month, the Prepetition Secured Parties shall receive payment of all accrued and unpaid interest at the default rate set forth in the Prepetition Financing Documents.

(ii)    In the period between the Petition Date and the Final Hearing (defined below), the Debtors shall continue to deposit all cash and other proceeds of the Prepetition Collateral into the Debtors' existing accounts maintained under the prepetition cash management system, and such collections and proceeds shall not be available for use by the Debtors for any purpose except as expressly provided for in this Interim Order.

(iii)    Commencing August 30, 2019, and continuing each Friday during the Chapter 11 Cases until the Secured Obligations (as defined in the Prepetition Credit Agreement) are indefeasibly paid in full, the Debtors shall make a mandatory prepayment to the Prepetition ABL Agent, for the benefit of the Prepetition ABL Lenders and the Prepetition Term Lenders, in partial satisfaction of the Prepetition Secured Debt, in an amount equal to all cash on hand as of the immediately preceding Friday above a minimum retained threshold of $10.0 million.

(iv)    For each week that the Prepetition Secured Debt, or any portion thereof, remains outstanding, the Debtors shall pay the Prepetition ABL Agent, for the benefit of the Prepetition Secured Parties, a consent fee ("***Consent Fee***") in the amount of $100,000.00 per week. The Consent Fee shall be fully earned and paid on each Friday as of which any Prepetition Secured Debt remains outstanding, and shall not be subject to refund or rebate under any circumstances.

(v)    Subject to the provisions of paragraph 65 hereof, the Prepetition Agents and the other Prepetition Secured Parties shall be reimbursed, on a current basis, for all reasonable and documented out-of-pocket costs and expenses of the consultants, financial advisors and outside attorneys engaged by such parties, whether incurred prior to, on or after the Petition Date. For the avoidance of doubt, (a) nothing in this paragraph 12(c)(v) or this Interim Order shall be construed as limiting the obligation of the Debtors to pay the DIP Parties all fees, costs, and expenses provided for in the DIP Financing Agreements, including, without limitation, the First Facility Fee, the Additional Facility Fee, the Exit Fee, and the Store Closing Fees (described in Exhibit C to the DIP Credit Agreement), as

applicable, and (b) the Exit Fee shall not be paid until all Prepetition Secured Debt has been paid in full.

.   (d)   **Adequate Protection With Respect to Sales or Other Dispositions**.

(i)      Until the payment in full of the Prepetition Secured Debt, the net proceeds ("***Sale Proceeds***") of any disposition of Prepetition Collateral, other than with respect to the sale of inventory or other sales in the ordinary course of business, revenues generated from the Japanese licensing arrangements, and related operations (each such disposition a "***Sale***"), shall be promptly paid at closing on such Sale(s) (including if such Sale constitutes a DIP Maturity Event): first, to the Prepetition Agents to be applied to the Prepetition Secured Debt in accordance with the Prepetition Financing Documents to the extent outstanding; second, to the DIP Agent for application to the DIP Obligations in accordance with the terms of the DIP Credit Agreement, and after payment in full of the DIP Obligations, third, to the Debtors; provided, however, that any Sale Proceeds on account of the DIP Priority Collateral shall be promptly paid at closing of such sales to the DIP Agent to be applied to the DIP Obligations; provided, further, however, that, subject to entry of the Final Order, any Sale Proceeds remaining after satisfaction of the DIP Obligations and administrative expenses shall be shared as follows: 37.5% to the DIP Lenders and 62.5% to the Debtors, with the Debtors' share subject to the first priority Adequate Protection Liens.

(ii)      The Debtors shall keep the Prepetition Agents (and the DIP Agent) fully informed of the Debtors' efforts to consummate any Sale(s) and any other sales of equity interests and/or assets of the Debtors after the Petition Date, and without limiting the generality of the foregoing, the Debtors shall (A) promptly provide to the DIP Agent and Prepetition Agents copies of all offers for the purchase of any asset(s) and/or equity interests of any of the Debtors and copies of all bids from any liquidator(s), (B) provide, promptly upon written (including by e-mail) request of the DIP Agent or Prepetition Agents, and in any event no less frequently than weekly, status updates on the Debtors' efforts to consummate any Sale(s) and/or any other dispositions or capital/equity raises, and (C) promptly advise the DIP Agent and Prepetition Agents of any expressions of interest in any or all of the Debtors' assets and/or equity interests.

(iii)      Subject in all respects to the rights and limitations set forth in Paragraphs 39-43 hereof, in connection with any Sale(s) or other dispositions of any assets of the Debtors (outside of the ordinary course of business), the DIP Agent, DIP Lenders, and the Prepetition Secured Parties, respectively, may seek to credit bid, in accordance with the DIP Financing Agreements and/or the Prepetition Financing Documents (as applicable), some or all of their claims for their respective collateral (each a "***Credit Bid***") pursuant to section 363(k) of the Bankruptcy Code.  A Credit Bid may be applied only to reduce the cash consideration with respect to those assets in which the party submitting such Credit Bid holds a security interest.  In all such instances, each of the DIP Agent, DIP Lenders, and Prepetition Secured Parties, respectively, shall be considered a "Qualified Bidder" with respect to its right to acquire all or any of the assets by Credit Bid, and, notwithstanding anything to the contrary contained herein, any credit bid by the DIP Agent and/or any DIP Lender shall provide for the payment in full of the Prepetition Secured Debt.

(e)      **Access to Records; Reporting**.  In addition to, and without limiting, whatever rights to access the DIP Parties and Prepetition Secured Parties have under the DIP Financing Agreements and the Prepetition Financing Documents, as applicable, upon reasonable notice, at

reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the Prepetition Secured Parties and the DIP Parties: (i) to have access to and inspect the Debtors' properties, (ii) to examine the Debtors' books and records, (iii) to discuss the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors, and (iv) otherwise to have the full cooperation of the Debtors. In addition, the Debtors shall provide to the Prepetition Secured Parties all of the financial, collateral, and related reporting required under the DIP Financing Agreements as and when provided to the DIP Agent under the DIP Credit Agreement. In connection with the foregoing, during the Chapter 11 Cases, and until such time as the Prepetition Secured Debt shall have been paid in full, the Debtors shall cooperate fully with the Prepetition Secured Parties' retained financial advisor, Berkeley Research Group and any financial advisor engaged by the DIP Agent. Notwithstanding anything to the contrary herein, none of the Loan Parties will be required to disclose information or provide access to the Prepetition Secured Parties or the DIP Agent (or any agent or representative thereof) where such disclosure or access is prohibited by applicable law or is subject to attorney-client or similar privilege, constitutes attorney work product, or implicates conflicts matters.

(f)    **Pleadings to be Filed in the Chapter 11 Cases**. Promptly, and at least two (2) calendar days prior to filing, the Debtors shall provide to the Prepetition Secured Parties and the DIP Parties copies of all material pleadings (including, without limitation, any proposed orders, motions and applications) and any other pleadings wherein such parties' rights are impacted to be filed or entered in the Chapter 11 Cases and/or in any related proceedings, which pleadings shall be in form and substance reasonably acceptable to the Prepetition Secured Parties and the DIP Parties.

(g)    **Prepetition Indemnity Account**. On the date that is 30 days after the entry of this Interim Order, the Debtors shall establish a segregated account in the control of the Prepetition ABL Agent (the "***Prepetition Indemnity Account***"), into which the sum of $250,000 of Cash Collateral shall be deposited as security for any amounts owing but not paid to the Prepetition Secured Parties and any reimbursement, indemnification, or similar continuing obligations of the Debtors in favor of the Prepetition Agents and the other Prepetition Secured Parties under the Prepetition Financing Documents, including without limitation, the provisions of Section 11.3 of the Prepetition Credit Agreement (the "***Prepetition Indemnity Obligations***").

1)    Without limiting the generality of the foregoing, the funds in the Prepetition Indemnity Account shall secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) incurred by the Prepetition Agents and the other Prepetition Secured Parties in connection with or responding to (a) formal or informal inquiries and/or discovery requests, any adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in Paragraphs 39-43 hereof, or (b) any Challenge Proceeding against any one or more of the Prepetition Agent(s) and/or the other Prepetition Secured Parties related to the Prepetition Financing Documents, the Prepetition Liens, or the Prepetition Secured Debt, whether in the Chapter 11 Cases or independently in another forum, court, or venue; provided, that the relative interests of the Prepetition Agents and other Prepetition Secured Parties in the funds deposited in the Prepetition Indemnity Account on account of any Prepetition Indemnity Obligations shall be subject in all respects to the priority provisions set forth in the Prepetition Financing Documents.

2)    The Prepetition Indemnity Obligations shall be secured by a first-priority lien on the Prepetition Indemnity Account and the funds therein and by a Lien on the Prepetition Collateral.

3)      The Prepetition Agents and other Prepetition Secured Parties may apply amounts in the Prepetition Indemnity Account against the Prepetition Indemnity Obligations as and when they arise, without further consent from the Debtors, any Committee, or any other parties in interest and without further order of this Court.

4)      In addition to the establishment and maintenance of the Prepetition Indemnity Account, until the Challenge Period Termination Date (as defined below) the Prepetition Agents (for themselves and on behalf of the other Prepetition Secured Parties), shall retain and maintain the Prepetition Liens as security for the amount of any Prepetition Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition Indemnity Account; provided, that (i) any such indemnification claim(s) shall (i) be subject to the terms of the Prepetition Financing Documents, (ii) the rights of parties in interest with requisite standing to object to any such indemnification claim(s) are hereby reserved in accordance with Paragraphs 39-43 hereof, and (iii) the Court shall reserve jurisdiction to hear and determine any such disputed indemnification claim(s).

5)      Upon the occurrence of the Challenge Period Termination Date and indefeasible payment in full, in cash of the Prepetition Secured Debt, and provided that no Challenge Proceeding has been commenced or any such Challenge Proceeding has been resolved by a final order of the Court in favor of the affected Prepetition Agent(s) and/or Prepetition Secured Party(ies), as applicable, the Prepetition ABL Agent shall promptly return to the Debtors the remaining amount, if any, of the Prepetition Indemnity Account.

6)      For the avoidance of doubt, nothing contained in this Paragraph 12 shall relieve the Debtors of their obligation to timely reimburse the fees, costs and expenses of the Prepetition Agents and the other Prepetition Secured Parties pursuant to Paragraph 65 hereof.

13.      Nothing herein shall impair or modify the Prepetition Secured Parties' respective rights under section 507(b) of the Bankruptcy Code in the event that the Adequate Protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for the Diminution in Value of their interests in the Prepetition Collateral during the Chapter 11 Cases or any Successor Case(s); provided, however, that (a) nothing herein shall impair the Debtors' or any other party in interest's right to seek to contest any request for additional or different adequate protection, and (b) any section 507(b) claim granted in the Chapter 11 Cases to any Prepetition Secured Party(ies) shall be (x) subject and subordinate to the Carve Out and (y) senior in right to payment of all DIP Obligations (as defined below).

14.      The Debtors' authority to use Cash Collateral pursuant to the terms set forth in this Interim Order shall terminate (the "***Cash Collateral Termination Date***") upon the earliest to occur of any of the

following (each, a "***Cash Collateral Termination Event***"):

    a)   the date that is 90 days from the Petition Date;

    b)   the date that is 30 days following the date of entry of the Interim Order if a Final Order acceptable to the DIP Agent and the Prepetition Agents approving the use of Cash Collateral and the DIP Facility has not been entered by the Court on or prior to such date;

    c)   any failure of the Debtors to adhere to the Approved Budget, including any failure to maintain Excess Availability at the levels required hereunder;

    d)   the acceleration of the DIP Obligations and/or the occurrence of a DIP Order Event of Default (defined below) in accordance with the DIP Financing Agreements or the commencement of the Remedies Notice Period;

    e)   the consummation of a sale of all or substantially all of the Debtors' assets;

    f)   any stay, reversal, vacatur, rescission or other modification of the terms of this Interim Order not consented to by the Prepetition Agents;

    g)   the failure of the Debtors to provide all financial reports as well as any budget variance report required under the DIP Financing Agreements;

    h)   the dismissal of any of the Chapter 11 Cases, the conversion of any Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or the appointment of a chapter 11 trustee with expanded powers in any of the Chapter 11 Cases;

    i)   the failure of the Debtors to comply with any of the budget covenants or Milestones as set forth in the DIP Financing Agreements;

    j)   the substantial consummation of a plan of reorganization filed in the Chapter 11 Cases that is confirmed pursuant to an order (in form and substance acceptable to the Prepetition Secured Parties) of the Court;

    k)   failure of the Debtors to file a motion or other pleading (in form and substance acceptable to the Prepetition Secured Parties) by August 8, 2019, seeking payment in full, in cash, of the Prepetition Secured Debt, together with a commitment letter from the DIP Parties (the "***Prepetition Secured Debt Refinancing***");

    l)   no order (in form and substance acceptable to the Prepetition Secured Parties) shall have been entered by the Court by 11:59 p.m. on August 14, 2019, authorizing and approving the Prepetition Secured Debt Refinancing; or

    m)  the Prepetition Secured Debt Refinancing shall not have been consummated by 11:59 p.m. on August 15, 2019.

       15.    Immediately upon the occurrence of the Cash Collateral Termination Date, notwithstanding any automatic stay otherwise applicable to the Prepetition Secured Parties pursuant to

section 362 of the Bankruptcy Code, and without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of this Interim Order, the Prepetition Secured Parties or the DIP Parties may exercise their rights and remedies in accordance with this Interim Order and the Prepetition Financing Documents five (5) days (the "***Remedies Notice Period***") following delivery of written notice (a "***Remedies Notice***") of such occurrence, in each case such Remedies Notice being given to each of (i) the Debtors, (ii) counsel to the Debtors, (iii) counsel to the Prepetition Secured Parties, (iv) counsel for any Committee, (v) counsel to the DIP Agent, and (vi) the U.S. Trustee; provided, however, that no Remedies Notice or Remedies Notice Period shall apply to any of the Cash Collateral Termination Events in clauses (k)-(m) of paragraph 14 of this Order and use of Cash Collateral shall terminate automatically, without any notice, application, motion, hearing before, or order from, the Court, upon the occurrence of any of the Cash Collateral Termination Events in clauses (k)-(m) of paragraph 14 of this Order. Subject in all respects to paragraph 16 hereof, in addition to providing notice of an intention to exercise remedies as provided herein, a Remedies Notice may also advise the Debtors that any further use of Cash Collateral will be made in the sole discretion of the Prepetition Secured Parties.

16.    Upon the service of a Remedies Notice:

(a)    the Debtors shall continue to deliver and cause the delivery of the proceeds of the Prepetition Collateral to the Prepetition Agents as provided in this Interim Order and in the DIP Financing Agreements;

(b)    the Prepetition Secured Parties and the DIP Agent shall continue to apply such proceeds in accordance with the provisions of this Interim Order, the DIP Financing Agreements, and the Prepetition Financing Documents, as applicable; and

(c)    the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral, other than towards the satisfaction of the DIP Obligations, the Prepetition Secured Debt of the Prepetition Secured Parties, and the Carve Out, as provided in the DIP Financing Agreements and this Interim Order; provided, however, that during the Remedies Notice Period the Debtors may use Cash Collateral solely to meet accrued and unpaid payroll obligations (other than severance) and trust fund obligations strictly in accordance with the Approved Budget.

17.    Following the giving of a Remedies Notice, the Debtors and any Committee appointed in the Chapter 11 Cases, if any, shall be entitled to an emergency hearing before this Court, with any such hearing to be held on not less than two (2) business days' notice to the Committee, the DIP Agent, and the

Prepetition Secured Parties; provided, that if a hearing to consider any relief in connection with the delivery of a Remedies Notice or continued use of Cash Collateral is requested to be heard within such Remedies Notice Period but is scheduled for a later date by the Court, the Remedies Notice Period shall be automatically extended to the date of such hearing.  If (x) the Debtors or any such Committee do not contest the occurrence of a Cash Collateral Termination Event and/or the right of the Prepetition Secured Parties or the DIP Parties to exercise their remedies, or (y) the Debtors or any such Committee do timely contest the occurrence of a Cash Collateral Termination Event and/or the right of the Prepetition Secured Parties or the DIP Parties to exercise their remedies, and unless this Court, after notice and hearing prior to the expiry of the Remedies Notice Period stays the enforcement thereof, the automatic stay, solely as to the Prepetition Secured Parties, shall automatically terminate at the end of the Remedies Notice Period.

18.     Subject to the provisions of Paragraph 17 above, upon the expiration of the Remedies Notice Period, the Prepetition Secured Parties are authorized to exercise their remedies and proceed under or pursuant to the Prepetition Financing Documents; except that with respect to any of the Debtors' leasehold locations, the Prepetition Secured Parties can only enter upon a leased premises following the Cash Collateral Termination Date in accordance with (i) a separate written agreement by and between the Prepetition ABL Agent and any applicable landlord, (ii) pre-existing rights of the Prepetition Secured Parties and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) entry of an order of this Court obtained by motion of the Prepetition Secured Party on such notice to the landlord, the DIP Agent, the Debtors, any Committee, and the U.S. Trustee as shall be required by this Court.

19.     Nothing included herein shall prejudice, impair or otherwise affect Prepetition Secured Parties' rights to seek any other or supplemental relief from the Court in respect of the Debtors.

## V.     Authorization for the DIP Facility

### A.     Findings Regarding the DIP Financing.

20.     Good Cause. Good cause has been shown for immediate entry of this Interim Order.

21.    <u>Need for Post-Petition Financing</u>.  An immediate need exists for the Debtors to obtain funds from the DIP Facility in order to continue operations and to administer and preserve the value of their estates for the benefit of their various stakeholders.  The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets, and to maximize a return for all creditors requires the availability of working capital from the DIP Facility and the use of Cash Collateral (in each case in the manner and in the amounts provided herein and in the Approved Budget (including any permitted variances), in the DIP Credit Agreement, and this Interim Order), the absence of which would immediately and irreparably harm the Debtors, their estates and their stakeholders.

22.    <u>No Credit Available on More Favorable Terms</u>. As set forth in the DIP Motion, the Debtors have been unable to obtain any of the following:

(1)    unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense;

(2)    credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code;

(3)    credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien; or

(4)    credit for money borrowed secured by a junior Lien on property of the estate which is subject to a Lien;

in each case, on more favorable terms and conditions than those provided in the DIP Credit Agreement and this Interim Order.  The Debtors are unable to obtain credit from the DIP Lenders without granting to the DIP Agent and the DIP Lenders the DIP Protections (as defined below).

23.    <u>Business Judgment; Good Faith Pursuant to Section 364(e) of the Bankruptcy Code</u>.  The extension of credit under the DIP Facility, the DIP Credit Agreement, and the other DIP Financing Agreements, and the fees paid and to be paid thereunder (i) are fair, reasonable, and the best available under the circumstances, (ii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and (iii) are supported by reasonably equivalent value and consideration.  The DIP Facility was negotiated in good faith and at arms' length between the Debtors, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties, and the proceeds to be extended under the DIP Facility will be so extended

in good faith and used for valid business purposes and uses, as a consequence of which the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties are each entitled to the protections and benefits of sections 363(m) and 364(e) of the Bankruptcy Code.

24.    Sections 506(c).  As a further condition of the DIP Facility and any obligation of the DIP Lenders to make credit extensions pursuant to the DIP Credit Agreement, and in consideration of the Prepetition Agents' and Prepetition Secured Parties' consent to the use of their Prepetition Collateral, including Cash Collateral, upon entry of the Final Order, the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Chapter 11 Cases or any Successor Case) shall be deemed to have waived any rights or benefits of section 506(c) of the Bankruptcy Code with respect to the DIP Agent, the DIP Lenders, the Prepetition Agents, the Prepetition Secured Parties, the Prepetition Collateral, and the DIP Collateral.

25.    Relief Essential; Best Interest.  The relief requested in the DIP Motion (and as provided in this Interim Order) is necessary, essential and appropriate for the continued operation of the Debtors' business, the management and preservation of the Debtors' assets during the Interim Period, and to avoid immediate and irreparable harm.  It is in the best interest of the Debtors' estates that the Debtors be allowed to establish the DIP Facility contemplated by the DIP Credit Agreement and the other DIP Financing Agreements.  The Debtors have demonstrated good and sufficient cause for the relief granted herein.

**B.    Approval of Entry into the DIP Financing Agreements**

26.    The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Financing Agreements and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Financing Agreements, and to execute and deliver all instruments, certificates, agreements, and documents that may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Financing Agreements.  In furtherance of the foregoing, the Debtors are hereby authorized to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the DIP Credit Agreement and all other DIP Financing

Agreements as such become due, including, without limitation, the "Closing Fee" and "Exit Fee" (each as defined in the DIP Financing Agreements), and, subject to the provisions of Paragraph 65 hereof, the DIP Agent's and DIP Lenders' reasonable attorneys', financial advisors', consultants', and accountants' fees and disbursements as provided for in the DIP Credit Agreement, which amounts shall not otherwise be subject to approval of this Court.

27.      In order to enable them to continue to operate their businesses during the Interim Period, and subject to the terms and conditions of this Interim Order, the DIP Credit Agreement, the other DIP Financing Agreements, including the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreements and this Interim Order), during the Interim Period the Debtors are hereby authorized under the DIP Facility to borrow an amount up to $75 million in accordance with the terms and conditions of the DIP Credit Agreement.

28.      The advances under the DIP Facility shall be used in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in accordance with and as may be limited by the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreements and this Interim Order), solely as follows:

(a)      to pay fees, costs, and expenses as provided in the DIP Financing Agreements, including amounts incurred in connection with the preparation, negotiation, execution, and delivery of the DIP Credit Agreement and the other DIP Financing Agreements;

(b)      for general operating and working capital purposes, for the payment of transaction expenses, for the payment of fees, expenses, and costs incurred in connection with the Chapter 11 Cases, and other proper corporate purposes of the Debtors not otherwise prohibited by the terms hereof for working capital, and other lawful corporate purposes of the Debtors;

(c)      for making payments in respect of Adequate Protection and other payments as provided in this Interim Order;

(d)      to repay $50 million of the Prepetition ABL Debt as provided herein;

(e)      to fund the Prepetition Indemnity Account; and

(f)      to fund the Carve Out.

29.      Pursuant to sections 361, 362, 364(c)(2), and 364(c)(3) of the Bankruptcy Code, and subject to the limitations set forth below, effective immediately upon the entry of this Interim Order the

DIP Agent is hereby granted the DIP Liens (which Liens are subject to the Adequate Protection Liens, the Prepetition Liens, any Permitted Prior Liens, and the Carve Out) for the ratable benefit of itself and the DIP Lenders, which DIP Liens constitute continuing, valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests and liens, and except as otherwise expressly provided in this Interim Order, upon and to all of the following (collectively, the "*DIP Collateral*"): Liens with the priorities set forth in 11 U.S.C. § 364(c)(2) and (c)(3) on all "property of the estate" as defined in section 541 of the Bankruptcy Code (including tangible and intangible assets and equity interests of the Borrowers (and any guarantors), including all assets constituting Prepetition Collateral), subject only to Liens (including any Adequate Protection Liens) granted in favor of the Prepetition Agents (for the benefit of the Prepetition Secured Parties), any Prior Permitted Liens, and the Carve-Out.  The DIP Collateral shall exclude (a) leases not subject to a mortgage in favor of the Prepetition ABL Agent as of the Petition Date (the "*Unencumbered Leases*"), (b) payroll, withholding tax and other fiduciary accounts and all amounts on deposit therein (in each case limited as provided in the Prepetition Financing Documents), and (c) claims under chapter 5 of the Bankruptcy Code ("*Avoidance Actions*"), but shall include, subject to entry of a Final Order, proceeds of both the Unencumbered Leases and Avoidance Actions.

30.     From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Financing Agreements and this Interim Order, in compliance with and as limited by the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreements and this Interim Order). The Approved Budget, and any modification to, or amendment or update thereof, shall be approved by, and in form and substance satisfactory to, the Prepetition Secured Parties and the DIP Agent, each in their sole discretion.  The Approved Budget shall be updated, modified, or supplemented by the Debtors from time to time in accordance with the DIP Credit Agreement (provided that any update, modification or supplement shall be approved in writing by, and shall be in form and substance satisfactory to the Prepetition Agents and the DIP Agent, each in their sole discretion), and no such updated, modified or supplemented budget shall be effective until so approved and once approved shall be deemed the "Approved Budget".  Each

budget delivered to the Prepetition Agents and the DIP Agent shall be accompanied by such supporting documentation as reasonably requested by the Prepetition Agents and the DIP Agent and shall be prepared in good faith based upon assumptions the Debtors believe to be reasonable.  A copy of any Approved Budget shall be delivered to counsel for a Committee (if appointed) and the U.S. Trustee after (or if) it has been approved by each of the Prepetition Agents and the DIP Agent.

31.    Subject and subordinate first to the Carve Out and then to the Adequate Protection Superpriority Claims, all DIP Obligations shall be an allowed superpriority administrative expense claim (the "*DIP Superpriority Claim*" and, together with the DIP Liens, collectively, the "*DIP Protections*") with priority in the Chapter 11 Cases and any Successor Case(s) under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code, and, upon entry of the Final Order, sections 506(c) and 552(b) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy, or attachment.

32.    Other than the Carve Out and the Adequate Protection granted to the Prepetition Secured Parties hereunder, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Case, and no priority claims (other than the Adequate Protection Superpriority Claims) are, or will be, senior to, prior to, or on a parity with the DIP Protections or the DIP Obligations or with any other claims of the DIP Agent and/or DIP Lenders arising hereunder.

33.    This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, security agreement, notice of Lien or other instrument or

document that may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreement) to validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle the DIP Liens and the Adequate Protection Liens to the priorities granted herein.

34.     Notwithstanding the foregoing, the DIP Parties and/or the Prepetition Secured Parties may, in their respective discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents to evidence, confirm, validate, or perfect, or to ensure the contemplated priority of, the DIP Liens and/or the Adequate Protection Liens granted pursuant hereto, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases.

35.     The Debtors shall execute and deliver to the DIP Agent and each Prepetition Secured Party, as applicable, all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents as the DIP Agent and/or the applicable Prepetition Secured Party may reasonably request to evidence, confirm, validate, or perfect, or to ensure the contemplated priority of, the DIP Liens and/or the Adequate Protection Liens granted pursuant hereto.

36.     The DIP Parties and the Prepetition Secured Parties, in their respective discretion, may file a photocopy of the entered, docketed version of this Interim Order as a financing statement with any recording office designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any of the Debtors has real or personal property, and in such event, the subject filing or recording office shall be authorized to file or record such copy of this Interim Order.  The prepetition mortgages granted in favor of the Prepetition ABL Agent shall remain in full force and effect in accordance with its/their terms as if the same were executed and delivered under this Interim Order and thereafter recorded with any registry of deeds or similar office in any jurisdiction in which any of the Debtors has real or personal property, and each such mortgage (or any mortgage granted to the DIP Agent

in respect of the DIP Facility, regardless of whether the same is recorded with any applicable registry of deeds or similar office in any jurisdiction in which any of the Debtors has real or personal property) shall serve as evidence of validity, perfection and contemplated priority of the DIP Liens and/or the Adequate Protection Liens granted pursuant hereto.

37.    The DIP Agent shall, in addition to the rights granted to it under the DIP Financing Agreements, be deemed to be have co-equal rights with the Prepetition Agents and succeed to the rights of the Prepetition Agents with respect to all third-party notifications in connection with the Prepetition Financing Documents, all prepetition collateral access agreements, and all other agreements with third parties (including any agreement with a customs broker, freight forwarder, or credit card processor) relating to, or waiving claims against, any Prepetition Collateral, including, without limitation, each collateral access agreement duly executed and delivered by any landlord of any Debtor and including, for the avoidance of doubt, all deposit account control agreements, securities account control agreements, and credit card agreements.

38.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to:

       (a)    permit the Debtors to grant the DIP Liens and the Adequate Protection Liens, and to incur all liabilities and obligations to the DIP Agent and DIP Lenders under the DIP Financing Agreements, the DIP Facility, and this Interim Order; and

       (b)    authorize the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties to retain and apply payments hereunder as provided by the DIP Financing Agreements and this Interim Order.

## C.    Reservation of Certain Third-Party Rights and Bar of Challenges and Claims

39.    Nothing in this Interim Order, the Prepetition Financing Documents, the DIP Credit Agreement, or the other DIP Financing Agreements shall prejudice whatever rights any Committee or any other party-in-interest (other than the Debtors) with requisite standing that has been sought and granted by this Court, as applicable, may have to bring an adversary proceeding, cause of action, objection, claim, defense, or other challenge against any one or more of the Prepetition Secured Parties, the Prepetition Secured Debt and/or the Prepetition Liens (collectively, a "***Challenge Proceeding***"), including, but not

limited to, any of the following:

(a)     in the case of the Prepetition Secured Parties, an objection to or challenge of the Debtors' Stipulations set forth in Paragraphs III.6.(1) through (9), including (i) the validity, extent, perfection, or priority of the security interests and Prepetition Liens of the Prepetition Agents in and to the Prepetition Collateral, or (ii) the validity, allowability, priority, status, or amount of the Prepetition Secured Debt; or

(b)     a suit against any one or more of the Prepetition Secured Parties in connection with or related to the Prepetition Secured Debt and/or the Prepetition Liens, or the actions or inactions of the such Prepetition Secured Party(ies) arising out of or related to such Prepetition Secured Debt and/or Prepetition Liens;

provided, however, that any Committee or any other party-in-interest with requisite standing that has been sought and granted by this Court, as applicable, must commence a Challenge Proceeding asserting such objection or challenge, including, without limitation, any claim against any one or more of the Prepetition Agents and/or other Prepetition Secured Parties, as applicable, in the nature of a claim, cause of action, setoff, counterclaim, or defense in respect of the Prepetition Secured Debt and/or the Prepetition Liens (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code), by the later of (x) for any Committee, sixty (60) days from the date of entry of the Final Order, or (y) for any party-in-interest other than an official Committee, seventy-five (75) days from the Petition Date (collectively, (x) and (y) shall be referred to as the "***Challenge Period***"; and as of 12:01 a.m. (Prevailing Eastern Time) on the date that is the next calendar day after the termination of the Challenge Period, in the event that no Challenge Proceeding has been commenced during the Challenge Period, such date shall be the "***Challenge Period Termination Date***").  The failure of any Committee or other third party who desires to investigate either (i) the validity, extent, perfection, or priority of the security interests and Prepetition Liens in and to the Prepetition Collateral, or (ii) the validity, allowability, priority, status, or amount of the Prepetition Secured Debt, to make a formal written request to the affected Prepetition Secured Parties for information validating such Prepetition Secured Debt and/or Prepetition Liens on or before the date that is ten (10) calendar days prior to the expiration of the Challenge Period shall operate as a bar to any motion, application or other request by such party(ies) for an extension of the Challenge Period.

40.    Not less than five (5) business days prior to filing a motion seeking standing (a "***Challenge Standing Motion***") to commence a Challenge Proceeding, a Committee or other third party, as the context makes applicable, shall inform the affected Prepetition Agent(s) and/or other Prepetition Secured Party(ies), in writing, of its intent to file such standing motion (such writing shall contain a reasonably detailed statement of the claims proposed to be asserted in such Challenge Proceeding and the legal/other bases supporting such claim(s) in the event standing were to be granted by the Court ("***Challenge Statement***")). The parties shall thereafter meet and confer for purposes of attempting to resolve any issues/claims asserted in the Challenge Statement.  In the event a third party, including any Committee, thereafter files a Challenge Standing Motion seeking standing to commence a Challenge Proceeding in accordance with the terms of this Interim Order, any such Challenge Standing Motion shall, at a minimum, include a copy of any proposed objection or adversary complaint containing a detailed description of the claims and causes of action such party proposes to pursue.  The Challenge Period shall be tolled for a period not to exceed thirty (30) days upon the filing of a Challenge Standing Motion (the "***Tolling Period***") by an interested party (including any Committee) seeking standing to commence a Challenge Proceeding in accordance with the terms of this Interim Order); provided, that any such tolling shall be applicable solely to the party that files the subject Challenge Standing Motion and solely as to the Challenge Proceedings for which standing is sought (as set forth in such Challenge Standing Motion); and provided, further, that, unless otherwise ordered by the Court, the granting of any Challenge Standing Motion shall not extend the Challenge Period beyond expiration of the Tolling Period.  The Challenge Period Termination Date may occur as to some, but not all, of the Prepetition Agents and/or other Prepetition Secured Parties if a Challenge Proceeding is brought against one or more but not all of the Prepetition Agents and/or other Prepetition Secured Parties.

41.    For the avoidance of doubt, in the event any one or more of the Chapter 11 Cases is converted to a case under Chapter 7, or if a Chapter 11 trustee is appointed prior to expiration of the Challenge Period, then in either such event and solely as applies to any such trustee the Challenge Period shall not expire until sixty (60) days after such trustee's appointment.  In the event that the Committee or any other party in interest with requisite standing, as applicable, has commenced a Challenge Proceeding

prior to the conversion to Chapter 7 or appointment of a Chapter 11 trustee, the trustee shall be entitled to assume the prosecution of any pending Challenge Proceeding.  In either event, until the later of the expiration of the Challenge Period without commencement of a Challenge Proceeding or the entry of a final, non-appealable order or judgment on account of any Challenge Proceeding commenced within the Challenge Period, such trustee shall not be bound by the Debtors' Stipulations in this Interim Order.

42.    Upon the Challenge Period Termination Date with respect to one or more or all of the Prepetition Secured Parties, any and all such challenges, claims, and/or objections by any party (including, without limitation, any Committee, any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, and any other party-in-interest) ***shall be deemed to be forever waived and barred*** with respect to the Prepetition Agents and other Prepetition Secured Parties, as applicable, and the Prepetition Secured Debt and Prepetition Liens as to one or more or all of the Prepetition Agents and/or other Prepetition Secured Parties, as the case may be, shall be deemed to be an allowed fully secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Chapter 11 Cases and the Debtors' Stipulations as to one or more or all of the Prepetition Agents and/or other Prepetition Secured Parties, as the case may be, shall be binding on all creditors, interest holders, and parties-in-interest, including any Committee.

43.    To the extent any such Challenge Proceeding is commenced, or any claim is asserted against any one or more of the Prepetition Agents and/or other Prepetition Secured Parties, the affected Prepetition Secured Parties, or any of them, as the case may be, shall be entitled to include the costs and expenses, including, but not limited to, reasonable and documented attorneys' fees and disbursements, incurred in responding to any inquiry, producing documents, and/or witnesses in response to formal or informal discovery requests, or otherwise defending the objection or complaint, as part of the prepetition claims and Liens of such Prepetition Secured Party(ies) to the extent permitted pursuant to the applicable Prepetition Financing Documents.  To the extent any such inquiry or discovery is undertaken or any such objection or complaint is filed (or as part of any agreed upon resolution thereof), the affected Prepetition Secured Party(ies), or any of them, as the case may be, shall be entitled to include such costs and expenses,

including, but not limited to, reasonable and documented attorneys' fees incurred in responding to the inquiry or discovery or in defending the objection or complaint, as part of such party's prepetition claim which shall be reimbursed by the Debtors, including (x) each month as provided for in Paragraph 65, below and (y) where applicable, out of the Prepetition Indemnity Account, and as part of the Adequate Protection Superpriority Claims.  In addition to any other provisions in this Interim Order, the Prepetition Indemnity Account shall be maintained until the final resolution of all such objections or claims against the affected Prepetition Secured Party(ies).  The Debtors shall remain liable to the Prepetition Secured Parties, or any of them, as the case may be, for all unpaid Prepetition Indemnity Obligations to the extent that the funds in the Prepetition Indemnity Account are insufficient to satisfy the Prepetition Indemnity Obligations in full.

44.    Notwithstanding anything to the contrary contained in this Interim Order, in the event there is a timely and successful Challenge Proceeding by any party in interest in accordance with the terms hereof, this Court may fashion an appropriate remedy as applicable to the payment of any adequate protection or Prepetition Secured Debt consisting of an unsecured claim or other claim or amount not allowable under section 502 of the Bankruptcy Code.

**D.    Carve Out and Payment of Professionals**

45.    <u>Carve Out</u>.  As used in this Interim Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (exclusive of any fee which becomes due and payable upon consummation of a transaction) (the "<u>Allowed Professional Fees</u>")[2] incurred by persons or firms retained by the Debtors pursuant to section

---

[2]    Any fee that is or will become due and payable upon the consummation of a transaction shall be payable solely from the proceeds received by the Debtors resulting from such transaction, free and clear of the liens of the Prepetition Agents, the Prepetition Secured Parties, the DIP Agent and the DIP Lenders.

327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") at any time before or on the first

business day following delivery by the Prepetition Secured Parties and/or the DIP Agent or Prepetition

ABL Agent, as applicable, of a Carve Out Trigger Notice (as defined below), whether allowed by the Court

prior to or after delivery of a Carve Out Trigger Notice; (iv) to the extent allowed at any time, whether by

interim order, procedural order, or otherwise, all Allowed Professional Fees incurred by persons or firms

retained by the Committee (the "Committee Professionals" and, together with the Debtor Professionals, the

"Professional Persons") up to and as limited by the aggregate Approved Budget amounts for each

Committee Professional or category of Committee Professional through the date of service of said Carve

Out Trigger Notice (including partial amounts for any Carve Out Trigger Notice given other than at the end

of a week, and after giving effect to (x) any payments made to Committee Professionals under the Approved

Budget pursuant orders of the Court, and (y) all carryforwards and carrybacks from prior or subsequent

favorable budget variances), and (v) Allowed Professional Fees of Professional Persons in an aggregate

amount not to exceed $500,000 incurred after the first business day following delivery by the Prepetition

Secured Parties and/or the DIP Agent or Prepetition ABL Agent, as applicable of the Carve Out Trigger

Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the

amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the

foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic

means) to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Creditors'

Committee either by (i) the DIP Agent, which notice may be delivered following the occurrence and during

the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, or

(ii) the Prepetition ABL Agent which notice may be delivered following the occurrence and during the

continuation of a Cash Collateral Termination Event in each case stating that the Post-Carve Out Trigger

Notice Cap has been invoked.

46.    Fee Estimates.  Not later than 7:00 p.m. New York time on the third business day of each

week starting with the first full calendar week following the entry of this Interim Order, each Professional

Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and

expenses (collectively, "Estimated Fees and Expenses") incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "Weekly Statement"); provided, that within one business day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date.  If any Professional Person fails to deliver a Weekly Statement within three calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Carve Out Reserves (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person; provided, that such Professional Person shall be entitled to be paid any unpaid amount of Allowed Professional Fees in excess of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person from a reserve to be funded by the Debtors from all cash on hand as of such date and any available cash thereafter held by any Debtor.  The Debtors shall at all times fund and maintain in a segregated account (the "Funded Reserve Account") in trust for the benefit of Professional Persons in an amount (the "Funded Reserve Amount") equal to the sum of (i) the greater of (x) the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements timely received by the Debtors, and (y) the aggregate amount of Allowed Professional Fees contemplated to be unpaid in the Approved Budget at the applicable time, plus (ii) the Post-Carve Out Trigger Notice Cap, plus (iii) the amounts contemplated under paragraph 45(a)(i) and 45(a)(ii) above, plus (iv) an amount equal to the amount of Allowed Professional Fees set forth in the Approved Budget for the then current week occurring after the most recent Calculation Date and the

two weeks succeeding such current week.  Any and all amounts in the Funded Reserve Account shall not

be subject to any cash sweep and/or foreclosure provisions in the Prepetition Financing Documents or DIP

Financing Agreements and neither the Prepetition Secured Parties nor the DIP Lenders shall be entitled to

sweep or foreclose on such amounts notwithstanding any provision to the contrary in the Prepetition

Financing Documents or DIP Financing Agreements.  Not later than 7:00 p.m. New York time on the fourth

business day of each week starting with the first full calendar week following the entry of this Interim

Order, the Debtors shall deliver to the DIP Parties and the Prepetition Secured Parties a report setting forth

the Funded Reserve Amount as of such time.  Prior to the delivery of the first report setting forth the Carve-

Out Reserve Amount, the Debtors shall calculate the Funded Reserve Amount by reference to the Approved

Budget for subsection (i) of the Funded Reserve Amount.  The information supplied by Professional

Persons pursuant to this paragraph shall be used to determine whether there is compliance with Section

16(T) of the DIP Credit Agreement.  Once the Funded Reserve Amount is funded into the Funded Reserve

Account, neither the Prepetition Secured Parties nor the DIP Lenders shall have any further obligations

with respect to the payments to Professional Persons relating to such amounts, and Professional Persons

may only be paid from the Funded Reserve Account.

47.    <u>Carve Out Reserves</u>.  On the day on which a Carve Out Trigger Notice is given by the

Prepetition ABL Agent and/or the DIP Agent to the Debtors with a copy to counsel to the Committee (the

"<u>Termination Declaration Date</u>"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to

utilize all cash on hand (including any amounts held in the Funded Reserve Account) as of such date and

any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid

amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a

segregated account with the Prepetition ABL Agent in trust to pay such then unpaid Allowed Professional

Fees (the "<u>Pre-Carve Out Trigger Notice Reserve</u>") prior to any and all other claims.  On the Termination

Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize all

remaining cash on hand (including any amounts held in the Funded Reserve Account) as of such date and

any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out

Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date until such obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the DIP Agent for the benefit of the DIP Lenders. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date, unless the Prepetition Secured Debt have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the DIP Agent for the benefit of the DIP Lenders, until the DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated. Notwithstanding anything to the contrary in this Interim Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this Paragraph 47, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this Paragraph 47, prior to making any payments to the DIP Agent or the Prepetition Secured Parties, as applicable. Notwithstanding anything to the contrary in this Interim Order, following delivery of a Carve Out Trigger Notice, the DIP Agent and the Prepetition Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Prepetition Secured Parties until the Prepetition Secured Debt has been paid in full, and thereafter to the DIP Agent for application in accordance with the DIP

Financing Agreements. Further, notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Term Loans (as defined in the DIP Credit Agreement) or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees of the Debtor Professionals shall not affect the priority of the Carve Out with respect to the Debtor Professionals, and (iii) in no way shall the Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order, the DIP Facility or in any Prepetition Financing Agreement(s), the Carve Out with respect to the Debtor Professionals shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens, and the Prepetition Secured Parties' and DIP Lenders' respective superpriority claims, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Secured Debt or the DIP Obligations. The Carve Out with respect to all other Professional Persons, other than Debtor Professionals, shall be limited to the Carve Out Reserve.

48.    _Payment of Allowed Professional Fees Prior to the Termination Declaration Date_.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

49.    _No Direct Obligation To Pay Allowed Professional Fees_.  None of the DIP Agent, DIP Lenders, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

50.    _Payment of Carve Out On or After the Termination Declaration Date_.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any

Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis. Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Interim Order, the DIP Financing Agreements, the Bankruptcy Code, and applicable law.

51.    <u>Restriction on Use of Funds</u>.  Notwithstanding anything herein to the contrary, no proceeds of the DIP Facility, DIP Collateral, or Cash Collateral may be used by the Debtors, any official committee, or any other person or entity without the consent of the DIP Agent and/or the Prepetition Secured Parties in connection with any of the following: (a)  the investigation (including by way of examinations or discovery proceedings), initiation, assertion, joining, commencement, support or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the DIP Agent, the DIP Lenders, or Prepetition Secured Parties, or any of their respective officers, directors, employees, agents, attorneys, consultants, financial advisors, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action or other matter in any way related to the DIP Financing Agreements or the Prepetition Loan Documents (including formal discovery proceedings in anticipation thereof), including, without limitation, (i) investigating or challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the DIP Obligations, DIP Superpriority Claims or the DIP Liens; (ii) investigating or challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition Secured Debt, Prepetition Liens, Adequate Protection Superpriority Claims or Adequate Protection Liens; (iii) investigating or asserting any claims or causes of action arising under chapter 5 of the Bankruptcy Code or under similar laws of any jurisdiction against any of the Prepetition Secured Parties or the DIP Parties; (iv) investigating or asserting any so-called "lender liability" claims and causes of action against any of the Prepetition Secured Parties or the DIP Parties; and (v) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the Prepetition Secured Debt, the DIP Obligations, the DIP Superpriority Claim, the Adequate Protection Superpriority Claim; the DIP Liens or the Adequate Protection Liens; (b) asserting any claims or causes of action against the DIP Parties or the Prepetition Secured Parties in such

capacity, including, without limitation, claims or actions to object to or contest in any manner the DIP Parties' or the Prepetition Secured Parties' assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral in accordance with the terms and conditions of the DIP Financing Agreements, the Prepetition Loan Documents, or this Interim Order; (c) seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to the DIP Parties or the Prepetition Secured Parties hereunder or under the DIP Financing Agreements or Prepetition Loan Documents (as applicable), in each of the foregoing cases without such applicable parties' prior written consent; provided, however, that the proceeds of the DIP Facility, Collateral, or Cash Collateral shall be available for payment of any fees or expenses incurred by any official committee (if appointed) to investigate, but not prosecute, any of the foregoing in an amount not to exceed $25,000.

**E.**     **Maturity; DIP Order Events of Default; Remedies**

52.    The DIP Facility shall mature (the "*DIP Maturity Date*") upon the expiration of five (5) business days' prior written notice (a "*DIP Remedies Notice*" and the "*DIP Remedies Notice Period*") to each of (a) the Debtors, (b) lead restructuring counsel to the Debtors, (c) counsel to the Prepetition Agents, (d) counsel for any Committee, (e) counsel to the DIP Agent, and (f) the U.S. Trustee, after the occurrence and continuation of any of the following events (each, a "*DIP Maturity Event*"), unless waived by the DIP Agent or cured by the Debtors during the DIP Remedies Notice Period:

a)    March 31, 2020;

b)    the date which is 30 days following the date of entry of the Interim Order if the Final Order has not been entered by the Court on or prior to such date;

c)    the date on which the DIP Agent accelerates the DIP Obligations outstanding under the terms of the DIP Facility after the occurrence of an Event of Default (as defined in the DIP Credit Agreement and the passage of any applicable cure period) in accordance with the terms of the DIP Credit Agreement;

d)    the occurrence of a Cash Collateral Termination Event;

e)    the occurrence of  DIP Order Event of Default;

f)    the consummation of a sale of all or substantially all of the Debtors' assets; and

g)    the substantial consummation of a plan of reorganization filed in the Chapter 11 Cases

that is confirmed pursuant to an order of the Court.

53.     Unless and until the DIP Obligations and the Prepetition Secured Debt of the Prepetition Secured Parties have been irrevocably repaid in full in cash (or other arrangements for payment of (i) the Prepetition Secured Debt of the Prepetition Secured Parties satisfactory to the respective Prepetition Secured Parties and (ii) the DIP Obligations satisfactory to the DIP Agent, in each case in their sole and exclusive discretion have been made) and all DIP Commitments have been irrevocably terminated, the protections afforded to the Prepetition Secured Parties, the DIP Agent, and the DIP Lenders pursuant to this Interim Order and under the DIP Financing Agreements, and any actions taken pursuant thereto, shall survive the entry of any order confirming any plan of reorganization or liquidation (a "***Plan***") or converting the Chapter 11 Cases into a Successor Case, and the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims shall continue in the Chapter 11 Cases and in any Successor Case, and such DIP Liens, DIP Superpriority Claim, Adequate Protection Liens, and Adequate Protection Superpriority Claims shall maintain their respective priorities as provided by this Interim Order.

54.     Each of the following, unless waived by the DIP Agent or cured by the Debtors, shall constitute a "***DIP Order Event of Default***":

   (a)     the occurrence of an Event of Default (as defined in the DIP Credit Agreement) in accordance with the DIP Credit Agreement;

   (b)     the failure of the Debtors to obtain entry of the Final Order on or before the date that is thirty (30) days after the Petition Date, unless such date has been extended by consent of the Prepetition Agents and DIP Agent, each in their sole and absolute discretion;

   (c)     the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under the DIP Credit Agreement (including, without limitation, the Milestones (as defined therein), and after giving effect to any notice or cure periods provided therein) or this Interim Order; or

   (d)     the filing of a motion by the Debtors seeking dismissal of any of the Chapter 11 Cases, the dismissal of any of the Chapter 11 Cases, the filing of a motion by the Debtors seeking to convert any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or the conversion of the Chapter 11 Cases to a case under

chapter 7 of the Bankruptcy Code, or the appointment of a trustee or examiner with expanded powers in any of the Chapter 11 Cases;

(e)     termination of the exclusivity period for the Debtors to file a chapter 11 plan in the Chapter 11 Cases;

(f)     other than as contemplated by this Interim Order, entry of an order granting any lien or claim which is senior to or *pari passu* with the DIP Agent's lien and claims under the DIP Facility without the prior written consent of the DIP Agent (or the filing of any motion by the Debtors seeking such relief), unless the obligations owing to the Prepetition Secured Parties (including, without limitation, cash collateralizing any issued and undrawn letters of credit), the DIP Agent and DIP Lenders are indefeasibly paid in full in cash and the DIP Lenders' commitment to make loans is terminated ;

(g)     entry of an order confirming (or the filing of any motion or pleading requesting confirmation of) a plan of reorganization or liquidation that does not require indefeasible repayment in full in cash of the DIP Facility as of the effective date of the plan;

(h)     payment of or granting adequate protection with respect to prepetition debt (other than as set forth in this Interim Order or as may be agreed among the Prepetition Secured Parties and the DIP Agent);

(i)     the failure of liens or superpriority claims granted with respect to the DIP Facility to be valid, perfected and enforceable with the priority described herein;

(j)     the failure of liens or superpriority claims granted with respect to the Prepetition Liens and Prepetition Secured Debt to be valid, perfected and enforceable with the priority described herein;

(k)     the entry of one or more orders of the Court lifting the automatic stay under section 362 of the Bankruptcy Code with respect to assets of the Debtors having a value in excess of $500,000 in the aggregate; and

(l)     the Interim Order or Final Order, as applicable, shall be amended, modified, stayed or vacated without the written consent of the Prepetition Agents and the DIP Agent.

55.     Following the giving of a DIP Remedies Notice, the Debtors and any Committee appointed in the Chapter 11 Cases, if any, shall be entitled to an emergency hearing before this Court, with any such hearing to be held on not less than two (2) business days' notice to the Committee, the DIP Agent, and the Prepetition Agents; provided, that if a hearing to consider any relief in connection with the delivery of a Remedies Notice or continued use of Cash Collateral is requested to be heard within such DIP Remedies Notice Period but is scheduled for a later date by the Court, the DIP Remedies Notice Period shall be

automatically extended to the date of such hearing.  If (x) the Debtors or any such Committee do not contest the occurrence of a DIP Maturity Event, and/or the right of the DIP Agent to exercise its remedies, or (y) the Debtors or any such Committee do timely contest the occurrence of a DIP Maturity Event and/or the right of the DIP Agent to exercise its remedies, and unless this Court, after notice and hearing prior to the expiry of the DIP Remedies Notice Period stays the enforcement thereof, the automatic stay, solely as to the DIP Agent and DIP Lenders, shall automatically terminate at the end of the DIP Remedies Notice Period, following which any automatic stay otherwise applicable to the DIP Agent and the DIP Lenders pursuant to section 362 of the Bankruptcy Code shall no longer be applicable, and without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of this Interim Order, the DIP Financing Agreements, and the DIP Remedies Notice Period, each of the DIP Agent may exercise their rights and remedies in accordance with the DIP Credit Agreement and this Interim Order.

56.    Upon the service of a DIP Remedies Notice, to the extent the DIP Agent, as and to the extent provided for by the DIP Credit Agreement, determines in its sole and absolute discretion to exercise its rights and remedies in accordance with this Interim Order:

(a)    any obligation otherwise imposed on the DIP Lenders to provide any loan or advance to the Debtors pursuant to the DIP Facility shall be suspended, and any loan or advance made thereafter shall be made by the DIP Lenders in their sole and exclusive discretion;

(b)    the Debtors shall continue to deliver and cause the delivery of the proceeds of the Prepetition Collateral to the Prepetition Agents, and following payment in full of the Prepetition Secured Debt (including, without limitation, cash collateralizing any issued and undrawn letters of credit), the DIP Collateral to the DIP Agent, as provided in this Interim Order and in the DIP Financing Agreements;

(c)    the Prepetition Secured Parties and the DIP Agent shall continue to apply such proceeds in accordance with the provisions of this Interim Order, the DIP Financing Agreements, and the Prepetition Financing Documents, as applicable; and

(d)    the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral, other than towards the satisfaction of the DIP Obligations, the Prepetition Secured Debt of the Prepetition Secured Parties, and the Carve Out, as provided in the DIP Financing Agreements and this Interim Order; provided, however, that during the DIP Remedies Notice Period the Debtors may use Cash Collateral solely to meet accrued but unpaid payroll obligations (other than

severance) and trust fund obligations strictly in accordance with the Approved Budget.

57.     Upon expiration of the DIP Remedies Notice Period, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties are authorized to exercise their remedies and proceed under or pursuant to the DIP Credit Agreement or the Prepetition Financing Documents, as applicable; except that, with respect to any of the Debtors' leasehold locations, the DIP Agent, DIP Lenders, and/or Prepetition Secured Parties can only enter upon a leased premises after expiration of the DIP Remedies Notice Period in accordance with (i) a separate written agreement by and between the Prepetition ABL Agent and any applicable landlord, (ii) pre-existing rights of the DIP Agent, DIP Lenders, and the Prepetition Secured Parties, as applicable, and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) entry of an order of this Court obtained by motion of the applicable DIP Agent, DIP Lender, or Prepetition Secured Party on such notice to the landlord as shall be required by this Court.

58.     Nothing included herein shall prejudice, impair or otherwise affect either the DIP Agent's, Prepetition Agents', or other Prepetition Secured Parties' rights to seek any other or supplemental relief from the Court in respect of the Debtors, nor the DIP Lenders' rights, as provided herein and in the DIP Financing Agreements, to suspend or terminate the making of loans and granting financial accommodations under the DIP Credit Agreement.

59.     The delay in or the failure of the DIP Agent, Prepetition Agents, and/or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the DIP Agent's, DIP Lenders', Prepetition Agents' and/or Prepetition Secured Parties' rights and remedies.  Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly or otherwise impair the rights and remedies of the DIP Agent, the DIP Lenders, Prepetition Agents', or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the DIP Agent Prepetition Agents,  and/or the Prepetition Secured Parties to: (i) request conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, dismissal of the Chapter 11 Cases, or the appointment of a trustee

in the Chapter 11 Cases; (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan; or (iii) subject to section 362 of the Bankruptcy Code exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) the DIP Agent and/or Prepetition Secured Parties may have.

### IV. Certain Limiting Provisions

#### A.    Section 506(c) Claims and Waiver

60.    Nothing contained in this Interim Order shall be deemed a consent by the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties to any charge, Lien, assessment, or claim against the DIP Collateral, the DIP Liens, the Prepetition Collateral, or the Adequate Protection Liens under section 506(c) of the Bankruptcy Code or otherwise, including for any amounts set forth in the Approved Budget; provided, however, that during the Interim Period there shall be no waiver of section 506(c) of the Bankruptcy Code.

61.    As a further condition of the DIP Facility and any obligation of the DIP Lenders to make credit extensions pursuant to the DIP Credit Agreement, and in consideration of the Prepetition Agents' and Prepetition Secured Parties' consent to the use of their Prepetition Collateral, including Cash Collateral, upon entry of the Final Order, the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Chapter 11 Cases or any Successor Case) shall be deemed to have waived any rights or benefits of section 506(c) of the Bankruptcy Code with respect to the DIP Agent, the DIP Lenders, the Prepetition Agents, the Prepetition Secured Parties, the Prepetition Collateral, and the DIP Collateral.

#### B.    Proceeds of Subsequent Financing

62.    If at any time prior to the irrevocable repayment in full in cash of all DIP Obligations and the respective claims of the Prepetition Secured Parties, and the termination of the DIP Lenders' obligations to make loans and advances under the DIP Facility, the Debtors, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to sections 364(c)(1) or 364(d) of the Bankruptcy Code in violation of the DIP Credit Agreement, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over

first, to the Prepetition Secured Parties to be applied in reduction of the Prepetition Secured Debt (including any accrued Adequate Protection), second, to the DIP Agent to be applied in reduction of the DIP Obligations, and after payment in full of the DIP Obligations, third, solely to the extent that the DIP Obligations and the Prepetition Secured Debt of the Prepetition Secured Parties (including any accrued Adequate Protection) have been irrevocably paid in full, to the Debtors to be used in accordance with and subject to the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement).

**C.    No Priming of DIP Facility**

63.    In entering into the DIP Financing Agreements, and consenting to the use of Cash Collateral, and as consideration therefor, each of the Debtors hereby agrees that until such time as all DIP Obligations and all Prepetition Secured Debt of the Prepetition Secured Parties have been irrevocably paid in full in cash (or other arrangements for payment of thereof satisfactory to the DIP Lenders and Prepetition Secured Parties, as applicable, in their sole and exclusive discretion, have been made) and the DIP Credit Agreement has been terminated in accordance with the terms thereof, the Debtors shall not (unless otherwise agreed to in writing by the DIP Agent, DIP Lenders, and the Prepetition Secured Parties, each in their sole respective discretion) in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Agent or the Prepetition Liens of the Prepetition Secured Parties or Adequate Protection Liens granted to the Prepetition Secured Parties under this Interim Order by offering a subsequent lender or a party-in-interest a superior or *pari passu* Lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.  For the avoidance of doubt, the agreement of the Debtors set forth in this Paragraph 63 shall apply in all circumstances, including any potential refinancing of all or any portion of the Prepetition Secured Debt.

## V. Other Rights and Obligations

### A.    Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order

64.    Notwithstanding any modification, amendment, or vacation of any or all of the provisions of this Interim Order, any claim or protection granted to the Prepetition Secured Parties, the DIP Agent and/or the DIP Lenders hereunder arising prior to the effective date of such modification, amendment, or vacation of any such claim or protection granted to the Prepetition Secured Parties, DIP Agent, or the DIP Lenders shall be governed in all respects by the original provisions of this Interim Order, and the Prepetition Agents, the other Prepetition Secured Parties, the DIP Agent and the DIP Lenders shall be entitled to all of the rights, remedies, privileges, and benefits, including the Adequate Protection and the DIP Protections granted herein, with respect to any such claim, including those found under section 364(e) of the Bankruptcy Code.

### B.    Prepetition Secured Parties', DIP Agent's, and DIP Lenders' Expenses

65.    All reasonable out-of-pocket costs and expenses of the Prepetition Agents, the other Prepetition Secured Parties, the DIP Agent, and the DIP Lenders, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees and disbursements, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement obligations with respect to fees and expenses, and other out of pocket expenses (whether incurred prior to, on or after the Petition Date), whether or not contained in the Approved Budget and without limitation with respect to the dollar estimates contained in the Approved Budget (provided, however, that such overages shall not weigh against the Debtors in any testing related to compliance with the Approved Budget), shall promptly be paid by the Debtors.  Payment of such fees shall not be subject to allowance by this Court; provided, however, the Debtors, the U.S. Trustee, or counsel for any Committee may seek a determination by this Court whether such fees and expenses are reasonable in the manner set forth below.  Under no circumstances shall professionals for the DIP Agent, the DIP Lenders, the Prepetition Agents, and/or the other Prepetition Secured Parties be required to comply with the Court's and/or U.S. Trustee's fee guidelines or file

applications or motions with, or obtain approval of, the Court for the payment of any of their out-of-pocket costs, fees, expenses, disbursements and other charges; provided, however, the DIP Agent, the DIP Lenders, the Prepetition Agents, and/or the other Prepetition Secured Parties shall provide the Debtors, the U.S. Trustee, and any Committee with a copy of the invoice summary, for professional fees and expenses incurred during the pendency of the Chapter 11 Cases.  Each such invoice summary shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine.  If the Debtors, U.S. Trustee or any Committee object to the reasonableness of the invoice summary submitted by the DIP Agent, the DIP Lenders, the Prepetition Agents, and/or the other Prepetition Secured Parties, and the parties cannot resolve such objection within ten (10) days of receipt of such invoice summary, the Debtors, U.S. Trustee or such Committee, as the case may be, shall file with the Court and serve on the applicable DIP Agent, DIP Lender, or Prepetition Secured Party an objection (a "*Fee Objection*") limited to the issue of reasonableness of such fees and expenses.  The Debtors shall promptly pay the amounts set forth in any submitted invoice summary after the expiration of the ten (10) day notice period if no Fee Objection is received in such ten (10) day period.  If a Fee Objection is timely received, the Debtors shall promptly pay the undisputed amount only of any invoice summary that is the subject of such Fee Objection, and the Court shall have jurisdiction to determine the disputed portion of such invoice summary if the parties are unable to resolve the Fee Objection.  Payments of any amounts set forth in this paragraph are not subject to recharacterization, avoidance, subordination or disgorgement.

**C.**   **Binding Effect**

66.   The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the

Debtors or with respect to the property of the estates of the Debtors), and any Committee (subject to the provisions of Paragraphs 39-43 hereof), whether in the Chapter 11 Cases, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 case.

**D.      No Third Party Rights**

67.      Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect or incidental beneficiary, other than the Debtors, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties.

**E.      No Marshaling**

68.      Upon entry of the Final Order, the DIP Agent, the DIP Lenders, the Prepetition Agents and the other Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral, as applicable.

**F.      Section 552(b) of the Bankruptcy Code**

69.      Upon entry of the Final Order, the DIP Agent, the DIP Lenders, the Prepetition Agents and the other Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the Debtors and/or any successors thereto shall not assert that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall apply to the DIP Agent, the DIP Lenders, and/or the Prepetition Secured Parties with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral or the DIP Collateral.

**G.      Amendments**

70.      The Debtors, the Prepetition Secured Parties and the DIP Agent may amend, modify, supplement, or waive any provision of the DIP Financing Agreements without further approval of this Court; provided, however, (a) no amendment to the Milestones or modifications of any kind to the DIP Tranche A Term Loan Reserve with respect to the prepetition debt shall be permitted absent the prior written consent of the Prepetition Agents and the DIP Agent (and, with respect to the change of any DIP Maturity Date, the prior written consent of the Prepetition Secured Parties and the DIP Lenders), (b) any amendment, modification, supplementation and/or waiver of any provision of any of the DIP Financing Agreements that

adversely affects any of the Debtors and/or any of the Prepetition Secured Parties shall require the prior consent of the Prepetition Secured Parties, and (c) that notice of any "material" amendment, modification, supplement, or waiver shall be filed with this Court, and any Committee or the U.S. Trustee shall have five (5) business days from the date of such filing within which to object in writing to such proposed amendment, modification, supplement, or waiver; provided, further, that if any Committee or the U.S. Trustee timely objects to any material amendment, modification, supplement, or waiver, then such amendment, modification, supplement, or waiver shall only be permitted pursuant to an order of this Court after notice and a hearing.  For purposes of this Paragraph 70, a "material" amendment means: any amendment, modification, supplement, or waiver that (i) increases the interest rate (other than as a result of the imposition of the Default Rate), (ii) increases the committed amounts under the DIP Credit Agreement, (iii) changes the maturity date of the DIP Facility to a date sooner than that which is provided under the DIP Credit Agreement and this Interim Order as of the date hereof, (iv) amends any Event of Default under the DIP Credit Agreement to make same more restrictive than exists as of the date hereof, (v) revises any Milestone set forth in the DIP Credit Agreement in a manner that reduces or shortens the time periods provided for in the DIP Credit Agreement, or (vi) otherwise modifies any of the DIP Financing Agreements in a manner adverse and/or less favorable to the Debtors or any of the Prepetition Secured Parties. All amendments, modifications, supplements, or waivers of any of the provisions hereof shall not be effective unless set forth in writing, signed by on behalf of the Debtors, the Prepetition Agents, the other Prepetition Secured Parties, the DIP Agent and, if required, approved by this Court.

**H.    Limits on Lender Liability**

71.    Nothing in this Interim Order, any of the DIP Financing Agreements, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses, whether before or after the Petition Date, or in connection with the administration of these Chapter 11 Cases.  The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not, solely by reason of having made, or consented to the

making of, loans under the DIP Facility, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).  Nothing in this Interim Order or the DIP Financing Agreements, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of the Debtors.

**I.    <u>Survival of Interim Order</u>**

72.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:

(a)    confirming any Plan in the Chapter 11 Cases,

(b)    converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code,

(c)    dismissing the Chapter 11 Cases,

(d)    withdrawing of the reference of the Chapter 11 Cases from this Court, or

(e)    providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Cases in this Court.

73.    The terms and provisions of this Interim Order, including any protections granted the DIP Parties and the Prepetition Secured Parties and the DIP Protections granted pursuant to this Interim Order, shall continue in full force and effect notwithstanding the entry of any order described in Paragraph 73, and such DIP Protections and protections for the DIP Parties and the Prepetition Secured Parties shall maintain their priority as provided by this Interim Order until all of the DIP Obligations of the Debtors to the DIP Lenders pursuant to the DIP Credit Agreement and the Prepetition Secured Parties' Prepetition Secured Debt (including any Adequate Protection) have been irrevocably paid in full in cash and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms).

**J.**      **Inconsistency**

74.      In the event of any inconsistency between this Interim Order and the terms and conditions

of the DIP Credit Agreement, the DIP Financing Agreements, the provisions of this Interim Order shall

govern and control.

**K.**      **Enforceability**

75.      This Interim Order shall constitute findings of fact and conclusions of law pursuant to

Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date

immediately upon execution hereof.  To the extent that any finding of fact shall be determined to be a

conclusion of law, it shall be so deemed and vice versa.

**L.**      **Objections Overruled**

76.      All objections to the DIP Motion to the extent not withdrawn or resolved, are hereby

overruled.

**M.**      **Waiver of Any Applicable Stay**

77.      Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is

hereby waived and shall not apply to this Interim Order.

**N.**      **Proofs of Claim**

78.      The Prepetition Secured Parties and the DIP Parties will not be required to file proofs of

claim or any request for payment of an administrative expense in the Chapter 11 Cases or in any Successor

Case in order to maintain their respective claims for payment of the Prepetition Secured Debt under the

Prepetition Financing Documents, for payment and performance of the Adequate Protection, and/or for

payment of the DIP Obligations under the DIP Financing Agreements.  The statements of claim in respect

of the Prepetition Secured Debt, Adequate Protection, and DIP Obligations set forth in this Interim Order,

together with the evidence accompanying the DIP Motion and presented at the Interim Hearing are deemed

sufficient to and do constitute proofs of claim (and requests for payment of an administrative expense) in

respect of such obligations and such secured status.  Notwithstanding any order entered by this Court in

relation to the establishment of a bar date for filing a claim (including without limitation, administrative

claims) in any of the Chapter 11 Cases or in any Successor Case to the contrary, the Prepetition ABL Agent, on behalf and for the benefit of the Prepetition Secured Parties, (i) is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a single, master consolidated proof of claim in respect of the Prepetition Secured Debt (including, without limitation, in respect of all guarantees by any of the Debtors of such Prepetition Secured Debt), the Adequate Protection, and any claim granted in this Interim Order or the Final Order, in the Debtors' lead Chapter 11 Case, *In re Barneys New York, Inc., et al*. (Case No. 19- 36300 (CGM)), which master proof of claim shall be deemed a valid, timely and properly filed proof of claim against each applicable Debtor in the Chapter 11 Cases and/or in any Successor Case and (ii) shall not be required to file any agreements, documents, or other instruments evidencing such Prepetition Secured Debt, Adequate Protection and/or any claim granted in this Interim Order and/or the Final Order with such master proof of claim. Any master proof of claim filed by the Prepetition ABL Agent shall be deemed to be in addition to, and not in lieu of, any other proof of claim that may be filed by any of the other Prepetition Secured Parties at such party's election; provided that no such Prepetition Secured Party is required to file any such proof of claim.

**O.      Provisions Regarding Certain Leases**

79.      With respect to those certain real property leases related to the Madison Avenue and Beverly Hills store locations, the Debtors shall either (x) assume both of the leases or (y) reject both of the leases contemporaneously, as the case may be.

**P.      Headings**

80.      The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

**Q.      Retention of Jurisdiction**

81.      This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**VI.Final Hearing**

82.      The Final Hearing on the DIP Motion shall be held before this Court on September 4, 2019,

at 10:30 a.m. (prevailing Eastern time) before the Honorable Cecelia G. Morris United States Bankruptcy Judge, at the United States Bankruptcy Court, Southern District of New York, located at 355 Main Street, Poughkeepsie, NY 12601.

83.    The Debtors shall, within three (3) business days of the entry of this Interim Order, serve a copy of the Interim Order and a notice of the Final Hearing to consider entry of the Final Order upon: (A) the U.S. Trustee, 11A Clinton Avenue, Room 620, Albany, New York 12207 (Attn: Alicia Leonhard, Esq.); (B) counsel to the Prepetition ABL Agent, Riemer & Braunstein LLP (Attn: Donald Rothman, Esq. and Steven E. Fox, Esq.), Times Square Tower, Seven Times Square, Suite 2506, New York, NY 10036 (Email: drothman@riemerlaw.com and sfox@riemerlaw.com); (C) counsel to the Prepetition Term Agent, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: Kevin J. Simard, Esq. and Mark D. Silva, Esq.) (Email: ksimard@chaote.com and msilva@choate.com); (D) counsel to TPG Specialty Lending, Inc., Schulte Roth & Zabel, 919 Third Avenue, New York, NY 10022 (Attn: Adam Harris, Esq. and Kelly V. Knight, Esq.) (Email: adam.harris@srz.com and kelly.knight@srz.com); (E) counsel to the DIP Agent and the DIP Lenders, Jones Day, 250 Vesey Street, New York, New York 10281, Attn: Sidney P. Levinson, Michael Schneidereit, and Jeremy Evans (Email: slevinson@jonesday.com, mschneidereit@jonesday.com, jdevans@jonesday.com); (F) holders of the thirty (30) largest unsecured claims on a consolidated basis against the Debtors; (G) any and all parties known to the Debtors to assert a lien or security interest in any of the Prepetition Collateral and/or DIP Collateral, including, without limitation, any party that holds an asserted Permitted Prior Lien; (H) the Internal Revenue Service; (I) all appropriate state taxing authorities; (J) all landlords, owners, and/or operators of premises at which any of the Debtors' operate their businesses; and (K) any other party that files a request for notices with the Court as of the date of such service.

84.    If no objections to the relief sought in the DIP Motion are filed and served in accordance with this Interim Order, no Final Hearing shall be held, and a separate Final Order may be presented jointly by the Debtors and by the DIP Agent and entered by this Court upon certification of counsel by the Debtors.

85.     Any party in interest objecting to the relief sought in the DIP Motion shall submit any such objection in writing and file same with this Court and serve such objection so as to be received no later than **August 28, 2019 at 4:00 p.m. (ET)** on the following parties: (A) the U.S. Trustee, 11A Clinton Avenue, Room 620, Albany, New York 12207 (Attn: Alicia Leonhard, Esq.); (B) counsel to the Prepetition ABL Agent, Riemer & Braunstein LLP (Attn: Donald Rothman, Esq. and Steven E. Fox, Esq.), Times Square Tower, Seven Times Square, Suite 2506, New York, NY 10036 (Email: drothman@riemerlaw.com; sfox@riemerlaw.com); (C) counsel to the Prepetition Term Agent, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: Kevin J. Simard, Esq. and Mark D. Silva, Esq.) (Email: ksimard@chaote.com and msilva@choate.com); (D) counsel to TPG Specialty Lending, Inc., Schulte Roth & Zabel, 919 Third Avenue, New York, NY 10022 (Attn: Adam Harris, Esq. and Kelly V. Knight, Esq.) (Email: adam.harris@srz.com and kelly.knight@srz.com); (E) counsel to the DIP Agent and the DIP Lenders, Jones Day, 250 Vesey Street, New York, New York 10281, Attn: Sidney P. Levinson, Michael Schneidereit, and Jeremy Evans (Email: slevinson@jonesday.com, mschneidereit@jonesday.com, jdevans@jonesday.com); and (F) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Edward O. Sassower, P.C., Joshua A. Sussberg, P.C., and Gene Goldmintz, and Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654, Attn: Chad J. Husnick, P.C., and W. Benjamin Winger.



**Dated: August 7, 2019**
    **Poughkeepsie, New York**

**/s/ Cecelia G. Morris**
_____
**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**