**Hearing Date and Time: August 21, 2019, at 11:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: August 19, 2019, at 4:00 p.m. (prevailing Eastern Time)**

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

-and-

Chad J. Husnick, P.C.
W. Benjamin Winger (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

Steven J. Reisman
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, New York 10022
Telephone:     (212) 940-8800
Facsimile:     (212) 940-8776

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| BARNEYS NEW YORK, INC., *et al.*,[1] | Case No. 19-36300 (CGM) |
| Debtors. | (Jointly Administered) |

**NOTICE OF DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) APPROVING THE BIDDING PROCEDURES, (II) SCHEDULING THE
BID DEADLINES AND THE AUCTION, (III) APPROVING THE FORM AND
MANNER OF NOTICE THEREOF, AND (IV) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion for Entry of an Order*

*(I) Approving the Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction,*

*(III) Approving the Form and Manner of Notice Thereof, and (IV) Granting Related Relief* (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819). The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

"Motion") will be held before the Honorable Cecelia G. Morris, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York (the "Court"), One Bowling Green, Courtroom No. 621, New York, New York 10004-1408, on **August 21, 2019, at 11:00 a.m.**, **prevailing Eastern Time**.

PLEASE TAKE FURTHER NOTICE that any responses or objections (each, an "Objection") to the Motion and the relief requested therein shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the *Interim Order Establishing Certain Notice, Case Management, and Administrative Procedures* [Docket No. 52] (the "Case Management Order") approved by this Court shall set forth the basis for the Objection and the specific grounds therefore, and shall be filed with the Court electronically in accordance with General Order M-399 by registered users of the Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website for the Court), with a hard copy delivered directly to chambers pursuant to Local Bankruptcy Rule 9070-1 and served so as to be actually received no later than **August 19**, **2019, at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline"), upon: (a) Barneys New York, Inc., 575 Fifth Avenue, New York, New York 10017; Attn: Grace Fu; (b) proposed co-counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn:  Edward O. Sassower, P.C., Joshua A. Sussberg, P.C., and Gene Goldmintz, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Chad J. Husnick, P.C. and W. Benjamin Winger, and Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, New York 10022, Attn: Steven J. Reisman; (c) the United States Trustee, 11A Clinton Avenue, Room 620, Albany, New York 12207, Attn: Alicia Leonhard; (d) counsel to any statutory committee appointed in these chapter

2

11 cases; (e) counsel to the Prepetition ABL Agent, (x) Riemer & Braunstein LLP, 100 Cambridge Street, Boston, Massachusetts 02114, Attn: Donald E. Rothman and (y) Riemer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, New York 10036, Attn: Steven E. Fox; (f) counsel to the Term Loan Agent, Choate Hall & Stewart LLP, Two International Place, Boston, Massachusetts 02110, Attn: Kevin J. Simard and Mark Silva; and (g) counsel to the DIP agent and the DIP Lenders, Jones Day, 250 Vesey Street, New York, New York 10281, Attn: Sidney P. Levinson, Michael Schneidereit, and Jeremy Evans; (h) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (i) any other entities with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors shall, on or after the Objection Deadline, submit to the Court an order substantially in the form annexed as **Exhibit A** to the Motion, which order the Court may enter with no further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing. The Debtors will file an agenda before the Hearing, which may modify or supplement the Motion to be heard at the Hearing.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Motion may be obtained free of charge by visiting the website of Stretto at http://case.stretto.com/barneys. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: August 9, 2019        /s/ Joshua A. Sussberg, P.C.
New York, New York         Edward O. Sassower, P.C.
                      Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900

-and-

Chad J. Husnick, P.C.
W. Benjamin Winger (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200

-and-

Steven J. Reisman
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, New York 10022
Telephone:   (212) 940-8800
Facsimile:   (212) 940-8776

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

Chad J. Husnick, P.C.
W. Benjamin Winger (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Steven J. Reisman
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, New York 10022
Telephone:    (212) 940-8800
Facsimile:    (212) 940-8776

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### DEBTORS' MOTION SEEKING ENTRY OF AN ORDER
### (I) APPROVING THE BIDDING PROCEDURES, (II) SCHEDULING
### THE BID DEADLINES AND THE AUCTION, (III) APPROVING THE FORM
### AND MANNER OF NOTICE THEREOF, AND (IV) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion.[2]

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's, Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

[2]    A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Mohsin Y. Meghji, Chief Restructuring Officer of Barneys New York, Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day

## Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Bidding Procedures Order"), (a) authorizing and approving the proposed bidding

procedures annexed to the Bidding Procedures Order as **Exhibit 1** (the "Bidding Procedures");

(b) establishing certain dates and deadlines including, the Bid Deadline and the Auction Date, if

any, (c) approving the manner of notice of the Auction, if any, and (d) granting related relief.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York

(the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference from the United States District Court for the Southern*

*District of New York*, dated February 1, 2012.  The Debtors confirm their consent, pursuant to rule

7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the Court

entering a final order in connection with this motion to the extent that it is later determined that

the Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105, 363, 365,

and 1146(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"),

Bankruptcy Rules 2002, 6004, and 6006, and rules 2002-1, 6004-1, 6006-1, and 9006-1(b) of the

Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") and the *Sale*

*Guidelines for the Conduct of Asset Sales established and adopted by the United States Bankruptcy*

---

Declaration"), filed on August 6, 2019 (the "Petition Date").  Capitalized terms used but not otherwise defined in
this motion shall have the meanings ascribed to them in the First Day Declaration, the Bidding Procedures (as
defined herein), and the Bidding Procedures Order (as defined herein), as applicable.

*Court for the Southern District of New York pursuant to General Order M-383* (the "Sale Guidelines").

## Background

5.      The Debtors are a world-renowned luxury specialty retailer with twenty-two stores across the United States, including flagships in New York City and Beverly Hills, and a highly curated, shopper-friendly e-commerce platform.  Founded as a men's retailer in 1923 in downtown Manhattan, the Debtors sell the most intriguing fashion offering from the world's top designers, including women's and men's clothing, accessories, shoes, jewelry, cosmetics, fragrances, and gifts for the home.  The Debtors remain headquartered in New York, New York and lease all of their store locations.  The Debtors reported revenues of approximately $800 million for 2018.  As of the Petition Date, the Debtors have approximately 2,300 employees and funded debt obligations of approximately $200 million.

6.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On August 7, 2019, the Court entered an order [Docket No. 41] authorizing the joint administration and procedural consolidation of the chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

7.      No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## The Bidding Procedures

8.      As described in greater detail in the First Day Declaration, a confluence of factors contributed to the Debtors' need to commence these chapter 11 cases.  These factors include a general shift away from brick-and-mortar to online retail channels, expensive leases, the need for incremental liquidity to purchase fresh merchandise, all of which led to a decrease in sales and

increased operating losses.  The Debtors undertook a substantial marketing process prepetition in furtherance of a potential out-of-court transaction that would position the company for long-term success.  Those marketing efforts generated substantial interest in the Debtors as a going concern, including their brand equity and other intellectual property.  The Debtors commenced these chapter 11 cases, in part, to continue that marketing effort.

9.      The Debtors seek to establish Bidding Procedures for the Auction of their Assets. A transaction could be implemented as part of a chapter 11 plan of reorganization or section 363 sale process.  The proceeds of any such transaction(s) would fund creditor recoveries.  The Bidding Procedures facilitate an orderly, value-maximizing Auction, thereby optimizing recoveries for all parties in interest.  Significantly, the Auction is supported by the Prepetition Secured Lenders and incremental financing under the DIP Facility is conditioned upon a swift process that realizes the value of their collateral.  For this reason, the Debtors propose to hold the Auction no later than October 29, 2019, a timeline that the Debtors believe is workable given their substantial pre- and postpetition marketing efforts, as described further herein.  The Bidding Procedures provide for substantial flexibility with respect to the structure of any Transaction—*e.g.*, the sale of all or only some of the Debtors' assets—and allow the Debtors to select a Stalking Horse Bidder and provide Bid Protections on the terms described in the Bidding Procedures if the Debtors believe, in an exercise of their business judgement, that doing so will maximize the value of their estates.[3]

10.      Consistent with this goal, the Debtors began a marketing process for an equity investment in early July 2019.  This process since evolved with the Debtors' proposed investment banker, Houlihan Lokey Capital, Inc. ("Houlihan"), beginning a marketing process related to the

---

[3]      In connection with the Transaction, the Debtors will seek approval of assumption procedures to facilitate the fair and orderly assumption and assignment of certain executory contracts in connection therewith.

Assets on the Petition Date.  In consultation with Houlihan, the Debtors have developed a list of parties whom they believe may be interested in, and whom the Debtors reasonably believe would have the financial resources to consummate, a Transaction.  The list of parties includes both strategic and financial investors (collectively, the "Contact Parties").  As of the date hereof, several Contact Parties have already entered into confidentiality agreements with the Debtors and have begun conducting the diligence necessary to analyze the opportunity.  Additional Contact Parties are expected to do the same in short order.  Houlihan and the Debtors will work with the Contact Parties to provide appropriate diligence and will continue to actively seek potential interested purchasers.

11.    Significantly, maximizing the value of the Debtors' estates requires that the Debtors proceed swiftly to consummate a transaction, minimizing the incremental costs associated with the chapter 11 cases and preserving the value of the Debtors' brand—a critical component of the value of their business.  Time is of the essence, especially given the milestones under the DIP Facility.[4] The Bidding Procedures are designed to—and the Debtors believe the Bidding Procedures will operate to—maximize the likelihood of a competitive bidding process.

12.    To further maximize the competitiveness of any bidding process, the Debtors also seek authority, but not direction, to (a) select one or more parties to serve as a stalking horse bidder (a "Stalking Horse Bidder"), whose Stalking Horse Bid may be comprised of a Credit Bid (including a Credit Bid by the DIP Agent, DIP Lender, and/or Prepetition Secured Creditors, either independently or jointly with the Consultant), and (b) in connection with any Stalking Horse

---

[4]    The milestones set forth herein are pro forma to the Brigade-led DIP Facility approved on an interim basis [Docket No. 49] (the "Interim DIP Order").  If the subsequent pay off to the prepetition secured lenders is not consummated by 11:59 p.m. on August 14, 2019, the Debtors intend to pursue a going concern transaction on the milestones set forth in the First Day Declaration.  Accordingly, the Debtors reserve the right to submit a revised proposed form of order.

Bidder and related agreement, provide a Breakup Fee, Expense Reimbursement, or Work Fee, each as defined and described in the Bidding Procedures, in an amount not to exceed, in the aggregate, three percent of the proposed purchase price.

13.    Contemporaneously with the filing of this motion, the Debtors have filed a motion (the "Motion to Shorten") pursuant to Bankruptcy Rule 2002 and 9006(c) seeking to have this motion heard on shortened notice.  As set forth in the Motion to Shorten, the Debtors request the Court consider entry of the Bidding Procedures Order within twelve days of filing of this motion.

**The Bidding Procedures Order**

**I.    The Bidding Procedures.**

14.    The Debtors have developed and proposed the Bidding Procedures, attached as **Exhibit 1** to the Bidding Procedures Order, to govern the Auction process.  The Debtors designed the Bidding Procedures to encourage all entities to expeditiously submit their best bids in order to maximize the value of the Debtors' estates through a competitive Auction process.  The Bidding Procedures are intended to permit a fair, efficient, and competitive process, consistent with the timeline of these cases, to help determine the highest or otherwise best bid for the company as a going concern or otherwise.  Generally speaking, the Bidding Procedures establish, among other things, the following.[5]

---

[5]    This summary is qualified in its entirety by the Bidding Procedures attached as Exhibit 1 to the Bidding Procedures Order.  To the extent there are any conflicts between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern.

(a)   **Potential Bidders.**  The requirements that Potential Bidders must satisfy to participate in the bidding process and become "Potential Bidders;"[6]

(b)   **Due Diligence.**  The availability of, access to, and conduct during due diligence by Potential Bidders;[7]

(c)   **Qualified Bid Criteria and Submission.**  The deadlines and requirements for submitting competing bids and the method and criteria by which such competing bids are deemed to be "Qualified Bids" sufficient to trigger an Auction, including the minimum consideration that must be provided, the terms and conditions that must be satisfied, and deadline that must be met by any Potential Bidder (other than the Stalking Horse Bidder) to be considered a "Qualified Bidder";[8]

(d)   **Right to Credit Bid.**  Any Qualified Bidder who has a valid and perfected lien on any Assets of the Debtors' estates, including the DIP Agent, DIP Lenders and Prepetition Secured Creditors, shall have the right to credit bid all or any portion of the aggregate amount of their applicable outstanding secured obligations, including, with respect to the DIP Agent and the DIP Lenders, the Enhancement Fee, pursuant to section 363(k) of the Bankruptcy Code; provided that a credit bid shall not constitute a Qualified Bid if the bid does not (i) include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected, and unavoidable liens on any assets included in such Bid that are senior in priority to those of the party seeking to credit bid (unless such senior lien holder consents to alternative treatment) or (ii) comply with the terms of the priority scheme contained in the credit agreement governing the Debtors' prepetition asset-based revolving credit facility, the Bidding Procedures Order, the DIP documents, and the interim or final order, as applicable, approving the DIP Facility;[9]

(e)   **Qualified Bid Evaluation.**  The manner in which Qualified Bids will be evaluated by the Debtors, in consultation with the Consultation Parties, to determine the Baseline Bid for the Auction;[10]

---

[6]   *See* Bid. Proc., Marketing Process, Part II.

[7]   *See id.*

[8]   *See* Bid. Proc., Auction Process, Parts I-III.

[9]   *See* Bid. Proc., Auction Process, Part IV

[10]   *See* Bid. Proc., Auction Process, Part V.

(f)   **Auction.**   The conditions for having an Auction and procedures for conducting the Auction, if any;[11]

(g)   **Winning Bidder Selection.**   The criteria by which the Winning Bidder will be selected by the Debtors, in consultation with the Consultation Parties;[12] and

(h)   **Expense Reimbursement, Work Fee, or Breakup Fee**.   Upon entry of the Bidding Procedures Order and up until two days prior to the Auction, the Debtors shall be authorized, but not obligated, in an exercise of their business judgment, and in consultation with the Consultation Parties, to (i) select one or more Acceptable Bidders to act as a Stalking Horse Bidder in connection with the Auction and (ii) in connection with any stalking horse agreement with a Stalking Horse Bidder, (iii) provide a breakup fee (the "Breakup Fee"), (iv) agree to reimburse the reasonable and documented out-of-pocket fees and expenses (the "Expense Reimbursement") and/or (v) agree to pay a "work fee" or other similar cash fee (the "Work Fee").   The aggregate amount that may be paid to any or all Stalking Horse Bidders on account of (iii)–(v) shall not exceed three percent of the proposed Purchase Price.[13]

15.   Importantly, the Bidding Procedures recognize the Debtors' fiduciary obligations to maximize sale value, and, as such, do not impair the Debtors' ability to consider all qualified bid proposals, and, as noted, preserve the Debtors' right to modify the Bidding Procedures as necessary or appropriate to maximize value for the Debtors' estates.

## II.   Form and Manner of Notice.

16.   The Auction, if any, shall take place no later than 9:00 a.m. (prevailing Eastern Time) on October 29, 2019, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022.   The Debtors further submit that notice of this Motion and the related hearing to consider entry of the Bidding Procedures Order constitutes good and adequate notice of the Auction and the proceedings with respect thereto in compliance with, and satisfaction of, the

---

[11]   *See id.*

[12]   *See* Bid. Proc., Auction Process, Part V(d).

[13]   *See* Bid. Proc., Auction Process, Part VI.

applicable requirements of Bankruptcy Rule 2002 (the "Notice"). The Debtors propose that no

other or further notice of the Auction shall be required. Accordingly, the Debtors request that this

Court approve the form and manner of the Notice.

### Basis for Relief

I.    **The Relief Sought in the Bidding Procedures Order Is in the Best Interests of the Debtors' Estates and Should Be Approved.**

17.    Adoption of the Bidding Procedures is a valid exercise of the Debtors' business

judgment. Courts have consistently held that a debtor's business judgment is entitled to substantial

deference with respect to the procedures to be used in selling an estate's assets. *See, e.g.*, *In re*

*Innkeepers USA Trust*, 448 B.R. 131, 146 (Bankr. S.D.N.Y. 2011) ("the Debtors have

appropriately exercised their business judgment in determining to . . . propose the revised Bidding

Procedures"); *In re Integrated Resources, Inc.*, 147 B.R. 650, 656–7 (S.D.N.Y. 1992) (noting that

bidding procedures that have been negotiated by a trustee are to be reviewed according to the

deferential "business judgment" standard, under which such procedures and arrangements are

"presumptively valid"). The paramount goal in any proposed sale of property of the estate is to

maximize the proceeds received by the estate. *See Integrated Resources*, 147 B.R. at 659 ("[I]t is

a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the

trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit

possible for the estate."); *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose

of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value

for the estate.").

18.    To that end, courts uniformly recognize that procedures intended to enhance

competitive bidding are consistent with the goal of maximizing the value received by the estate

and therefore are appropriate in the context of bankruptcy transactions. *See, e.g.*, *Integrated*

*Resources*, 147 B.R. at 659 (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

19.     The Bidding Procedures will promote active bidding from seriously interested parties and will maximize the value of the Assets for the benefit of the Debtors' estates.  The Bidding Procedures will allow the Debtors to conduct the Auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who can demonstrate the ability to close a Transaction.  In particular, the Bidding Procedures contemplate an open auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

20.     Additionally, under the DIP Credit Agreement, the Debtors are required to achieve certain Milestones (as defined in the DIP Credit Agreement).  These Milestones were heavily negotiated between the Debtors and the DIP Lenders at arm's length.  One such Milestone requires the Debtors to obtain the Court's approval of the Bidding Procedures in form and substance reasonably acceptable to the DIP Agent by August 27, 2019.  Failure to satisfy this Milestone constitutes an Event of Default (as defined in the DIP Credit Agreement), which would permit the DIP Lenders to exercise remedies that would imperil the Debtors' efforts to reorganize—possibly leading to a liquidation.  The failure to approve the Bidding Procedures will therefore imperil the Debtors' prospects of a successful value-maximizing transaction, whereas approval of the Bidding Procedures would maximize the estate's value.

21.    The Debtors submit that the proposed Bidding Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings, and are consistent with the controlling legal standard.  Accordingly, the Court should approve the Debtors' adoption of the Bidding Procedures as a valid exercise of the Debtors' business judgment.

## II.    The Expense Reimbursement, Work Fee, and Breakup Fee Have a Sound Business Purpose and Should Be Approved.

22.    The Debtors also seek authority, but not direction, pursuant to the Bidding Procedures to pay a Breakup Fee, Expense Reimbursement, or Work Fee in an aggregate amount not to exceed three percent of any proposed Purchase Price.  The Debtors seek to utilize such authority only in their discretion if the Debtors determine in their business judgment (in consultation with the Consultation Parties) that any such Bid Protection will facilitate a competitive bidding and Auction process.  Payment of expense reimbursements and work fees, like those proposed here, in a bidding process for sales is appropriate under section 363(b) of the Bankruptcy Code so long as such payment is a valid exercise of the Debtors' business judgment.  Under section 363(b), the Debtors may use, sell, or lease estate property outside of the ordinary court of business so long as they articulate a sound business reason for doing so.  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.* (*In re James A. Phillips, Inc.*), 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983).

23.    The Debtors believe that granting authority to pay the Expense Reimbursement or Work Fee is in the best interests of their estates.  The Acceptable Bidders will expend time and resources negotiating, drafting, and performing due diligence activities necessitated by the Auction, despite the fact that the bids will be subject not only to Court approval, but to overbidding by third parties.  Without the Expense Reimbursement or Work Fee, an Acceptable Bidder may

elect not to participate in the process at all to the detriment of the Debtors' estates. Further, the Bidding Procedures do not *require* the payment of the Expense Reimbursement or Work Fee, the Debtors simply have the *option* of paying or otherwise incurring such obligation in the event that they determine, in their business judgment, that offering an Acceptable Bidder the Expense Reimbursement or Work Fee will result in a competitive bidding process that will maximize the value of the Debtors' estates. In that instance, the value created for the Debtors' estates will likely greatly outweigh the cost of any Expense Reimbursement or Work Fee.

24.    The Debtors further seek authority, but not direction, to pay a Breakup Fee, in the event that the Debtors elect to enter into a stalking horse arrangement with a third-party bidder. "Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . . [i]n fact, because the . . . corporation has a duty to encourage bidding, break-up fees can be *necessary* to discharge [such] duties to maximize value." *Integrated Resources*, 147 B.R. at 659–60 (emphasis added). Specifically, bid protections like the [Breakup Fee] "may be legitimately necessary to convince a 'white knight' bidder to enter the bidding by providing some form of compensation for the risks it is undertaking." *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (quotations omitted); *see also Integrated Resources*, 147 B.R. at 660–61 (bid protections can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid").

25.    Courts in this jurisdiction consider three questions in connection with analyzing breakup fees: "(1) is the relationship of the parties who negotiated the break-up fee tainted by self-dealing or manipulation; (2) does the fee hamper, rather than encourage, bidding; (3) is the amount of the fee unreasonable relative to the proposed purchase price?" *Integrated Res.*, 147 B.R. at 657. The answer to each of these questions in this instance is emphatically "no." ***First***, the Debtors

propose to pay the Breakup Fee only in the event they determine it would be beneficial to enter into a stalking horse arrangement. **Second**, the Breakup Fee would encourage, rather than hamper, bidding given it falls within the range considered reasonable by bankruptcy courts. Granting the Debtors authority to offer the Breakup Fee sends a strong signal to the market that the Debtors are serious about running a competitive auction process to maximize value. **Third**, the aggregate amount of the Breakup Fee, if offered at all, and any Expense Reimbursement or Work Fee, will not exceed three percent of any proposed Purchase Price, an amount that is well within market for transactions of this type. *See In re Metaldyne Corp.*, 409 B.R. 661, 670 (Bankr. S.D.N.Y. 2009) ("The total amount of the proposed break-up fee and expense reimbursement is less than 3% of the total purchase price. This falls within the range of what courts in this jurisdiction have found to be [an] acceptable break-up fees."). The Debtors' submit the standard articulated in *Integrated Resources*, is consistent with caselaw in this jurisdiction, and probative of whether a breakup fee provides a benefit to the estate.

26.     Furthermore, the Debtors believe that the Breakup Fee is fair and reasonable in amount in light of the size and nature of the Assets, and the efforts that will have been expended by any Stalking Horse Bidder in connection with its efforts to facilitate a sale of the Debtors' assets, which will serve as the baseline for other bids for the assets.

27.     Similar types of bid protections have been approved by this Court. *See, e.g., In re Hollander Sleep Products, LLC*, Case No. 19-11608 (MFW) (Bankr. S.D.N.Y. Sept. 3, 2019) (authorizing break-up fee, expense reimbursement, and work fee of 2.6% in the aggregate); *In re Hooper Holmes, Inc. d/b/a Provant Health*, Case No. 18-23302 (RDD) (Bankr. S.D.N.Y. Sept. 20, 2018) (authorizing stalking horse break-up fee of 3% and expense reimbursement of approximately 1%); *In re Sears Holdings Corp.*, Case No. 18-23538 (RDD) (Bankr. S.D.N.Y.

Nov. 16, 2018) (authorizing a break-up fee of 1.5%); *In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. May 7, 2018) (authorizing stalking horse break-up fee of 3% and expense reimbursement of approximately 1%); *In re Avaya, Inc.*, Case No. 17-10089 (SMB) (Bank. S.D.N.Y. Apr. 5, 2017) (same).

28.    Accordingly, for the reasons set forth above, the Court should grant the Debtors the authority to incur and pay the Expense Reimbursement, Breakup Fee, and Work Fee obligations in their discretion as a valid exercise of the Debtors' business judgment (in consultation with the Consultation Parties) and otherwise within the controlling legal standards in this jurisdiction.

**III.    The Form and Manner of the Notice Should Be Approved.**

29.    Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with twenty-one days' notice of the Auction.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the deadline for filing any objections to the relief requested herein.

30.    As described in greater detail in the Motion to Shorten filed contemporaneously herewith, the Debtors believe that sufficient cause exists to shorten the notice period for a hearing on this motion.  In view of the need to immediately pursue a value-maximizing transaction to avoid further deterioration of the Debtors' brand and ensure sufficient time to explore market interest and conduct a competitive bidding process, the Debtors believe that the proposed timeline for the bidding and sale process is both reasonable and necessary under the circumstances.  Additionally, commencing bidding process and conducting the Auction on the proposed timeline is necessary to comply with the Milestones under the DIP Credit Agreement.  Failure to achieve these Milestones will permit the DIP Lenders to require the Debtors to conduct additional store closures.  Absent the bidding and sale process on the timeline contemplated by the Bidding Procedures, the Debtors believe they will be unable to maximize the value of the business as a going concern for the benefit

of all stakeholders. Accordingly, the Debtors submit that the prompt approval of the Bidding Procedures and the occurrence of the Auction is critical.

31.     The Debtors submit that notice of this motion and the related hearing to consider entry of the Bidding Procedures Order constitutes good and adequate notice of the Auction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002 under the circumstances. Accordingly, no further notice is necessary and the Debtors request that this Court approve the form and manner of the Notice of the Auction.

32.     The Debtors submit that notice of this motion and the related hearing to consider entry of the Bidding Procedures Order constitutes good and adequate notice of the Auction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002. Accordingly, no further notice is necessary and the Debtors request that this Court approve the form and manner of the Notice of the Auction.

## **Reservation of Rights**

33.     Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid and

the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent,

validity, or perfection, or to seek avoidance of all such liens. If the Court grants the relief sought

herein, any payment made pursuant to the Court's order is not intended and should not be construed

as an admission as to the validity, priority, or amount of any particular claim or a waiver of the

Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

### Notice

34.    The Debtors will provide notice of this motion to: (a) the United States Trustee for

the Southern District of New York; (b) the holders of the thirty largest unsecured claims against

the Debtors (on a consolidated basis); (c) counsel to the Prepetition ABL Agent; (d) counsel to the

Term Loan Agent; (e) counsel to the DIP Agent and the DIP Lenders; (f) the United States

Attorney's Office for the Southern District of New York; (g) the Internal Revenue Service; (h) the

United States Securities and Exchange Commission; (i) the state attorneys general for all states in

which the Debtors conduct business; and (j) any party that asserts a lien on the Debtors' assets;

and (k) any party that requests service pursuant to Bankruptcy Rule 2002. The Debtors submit

that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

35.    No prior request for the relief sought in this motion has been made to this or any

other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of the Bidding Procedures Order,

substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and

such other relief as is just and proper.

Dated:  August 9, 2019          */s/ Joshua A. Sussberg, P.C.*
New York, New York            Edward O. Sassower, P.C.
                              Joshua A. Sussberg, P.C.
                              **KIRKLAND & ELLIS LLP**
                              **KIRKLAND & ELLIS INTERNATIONAL LLP**
                              601 Lexington Avenue
                              New York, New York 10022
                              Telephone:    (212) 446-4800
                              Facsimile:    (212) 446-4900

                              -and-

                              Chad J. Husnick, P.C.
                              W. Benjamin Winger (admitted *pro hac vice*)
                              **KIRKLAND & ELLIS LLP**
                              **KIRKLAND & ELLIS INTERNATIONAL LLP**
                              300 North LaSalle Street
                              Chicago, Illinois 60654
                              Telephone:    (312) 862-2000
                              Facsimile:    (312) 862-2200

                              -and-

                              Steven J. Reisman
                              **KATTEN MUCHIN ROSENMAN LLP**
                              575 Madison Avenue
                              New York, New York 10022
                              Telephone:    (212) 940-8800
                              Facsimile:    (212) 940-8776

                              *Proposed Co-Counsel for the Debtors and Debtors in Possession*

## **EXHIBIT A**

**Proposed Bidding Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) APPROVING THE BIDDING PROCEDURES, (II) SCHEDULING
THE BID DEADLINES AND THE AUCTION, (III) APPROVING THE FORM
AND MANNER OF NOTICE THEREOF, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above captioned debtors and debtors in possession (the "Debtors") for the entry of an order (this "Order"):  (a) authorizing and approving the bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures"),[2] (b) establishing certain dates and deadlines including the Bid Deadline and the date of the Auction, if any, (c) approving the manner of notice of the Auction, if any, and (d) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures.

the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

**THE COURT HEREBY FINDS THAT:**

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012.  Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Good and sufficient notice of the Motion, the Bidding Procedures, and the relief sought in the Motion has been given under the circumstances, and no other or further notice is required except as set forth herein.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

D.      The bases for the relief requested in the Motion are:  (i) sections 105, 363, 365, and 1146(a) of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"); (ii) Rules 2002(a)(2), 6004, 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and Local Rules 2002-1, 6004-1, and 9006-1.

E.      The Debtors have articulated good and sufficient reasons for this Court to: (i) approve the Bidding Procedures; and (ii) schedule the Auction and approve the manner of notice of the Auction.

F.      The proposed Expense Reimbursement, Work Fee, and Breakup Fee are reasonable and appropriate under the circumstances and on the terms set forth in the Bidding Procedures, including in light of the size and nature of a Transaction and comparable transactions, the commitments that will be made, and the efforts that have been and will be expended by the Acceptable Bidders, notwithstanding that a proposed Transaction may be subject to better or higher offers, and may be necessary to induce the Acceptable Bidders to pursue a Transaction, as determined by the Debtors in an exercise of their business judgment.

G.      The Bidding Procedures were negotiated by the parties at arms' length and in good faith.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as provided herein.

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

**I.      Important Dates and Deadlines.**

3.      **Bid Deadline**.  October 24, 2019, at 5:00 p.m. (prevailing Eastern Time), is the deadline by which bids for the Assets (as well as the deposit and all other documentation required

under the Bidding Procedures for Qualified Bidders) must be submitted in accordance with the terms of the Bidding Procedures.

4.       **Stalking Horse Bid Deadline and Bid Protections**. The Debtors, at any time until two days prior to the Auction, may but are not obligated to, as an exercise of their business judgment, select one or more Stalking Horse Bidders with respect to the Assets and provide such Stalking Horse Bidder, whose bid may include a Credit Bid (including a Credit Bid by the DIP Agent, the DIP Lenders and/or the Prepetition Secured Lender, either standing alone or jointly with the Consultant) with Bid Protections, as defined in the Bidding Procedures.

5.       **Auction**. No later than October 29, 2019, at 9:00 a.m. (prevailing Eastern Time), an Auction, if any, will be held at the offices of Kirkland & Ellis LLP, located at 601 Lexington Avenue, New York, New York 10022 (the "Auction"). The Debtors shall send written notice of the date, time, and place of the Auction to the Qualified Bidders no later than two business days before such Auction, and will post notice of the date, time, and place of the Auction no later than two business days before such Auction on the website of the Debtors' notice and claims agent, Bankruptcy Management Solutions, Inc. d/b/a Stretto, at http://cases.stretto.com/barneys.

**II.       Auction, Bidding Procedures, and Related Relief.**

6.       The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any Transaction. Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order. The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

7.       If the Debtors receive two or more Qualified Bids, the Debtors will conduct the Auction to determine the Winning Bidder in accordance with the Bidding Procedures. The Debtors and their professionals shall direct and preside over the Auction.

8.     At the Auction, Qualified Bidders that have submitted Qualified Bids by the Bid Deadline will be entitled, but will not be obligated, to submit overbids, and will be entitled in any such overbids to credit bid all or a portion of the value of the secured portion of its claims within the meaning of section 363(k) of the Bankruptcy Code, subject to the limits on credit bidding set forth in the Bidding Procedures. Any Overbid to a Prevailing Highest Bid shall be in increments of no less than the value of the Bid Protections, if any, plus a value equal to $250,000.

9.     At the Auction, the Debtors may: (a) select, in their business judgment (in consultation with the Consultation Parties), pursuant to the Bidding Procedures, the highest or otherwise best Bid and the Winning Bidder or Backup Bidder; and (b) reject any Bid (regardless of whether such Bid is a Qualified Bid) that, in the Debtors' business judgment (in consultation with the Consultation Parties), is (i) inadequate, insufficient, or not the highest or best Bid, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or the Bidding Procedures, or (iii) contrary to, or otherwise not in the best interests of the Debtors' estates, affected stakeholders, or other parties in interest.

10.     No person or entity, other than an Acceptable Bidder, is entitled to Expense Reimbursement or a Work Fee or a Stalking Horse Bidder entitled to a Breakup Fee, in each case as determined by the Debtors in their business judgment (in consultation with the Consultation Parties) and discretion, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this court any request for expense reimbursement or any fee of any nature, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

11.     The Expense Reimbursements and Work Fees are approved on the terms set forth in the Bidding Procedures and the Debtors are authorized, but not directed, to incur and pay the Expense Reimbursement and Work Fees in an exercise of their business judgment (in consultation

with the Consultation Parties) without further action or order by the Court.  The Breakup Fee is approved on the terms set forth in the Bidding Procedures and the Debtors are authorized, but not directed, to incur and pay the Breakup Fee to any or no Stalking Horse Bidder, in an exercise of their business judgment without further action or order by the Court; *provided*, *that*, for the avoidance of doubt, the aggregate amount of the Breakup Fee, Expense Reimbursements, and Work Fees shall not exceed three percent of any proposed Stalking Horse Bidder Purchase Price.

12.    Notwithstanding anything to the contrary contained herein or in the Bidding Procedures, the DIP Agent, DIP Lenders and Prepetition Secured Creditors shall have the right to credit bid, as part of an initial bid or an overbid, all or any portion of the aggregate amount of their applicable outstanding secured obligations, including, with respect to the DIP Agent and the DIP Lenders, the Enhancement Fee (subject to entry of a final DIP Order) pursuant to section 363(k) of the Bankruptcy Code, and any such credit bid will be considered a Qualified Bid to the extent such bid is received by the Bid Deadline and complies with section 363(k) of the Bankruptcy Code.

13.    The DIP Agent and the DIP Lenders, in their sole discretion, are authorized to submit a joint bid with the Consultant, which joint bid may be comprised of or include a Credit Bid, and any such joint bid shall be a Qualified Bid.

**III.    Miscellaneous.**

14.    The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such a provision.

15.    In the event of any inconsistencies between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

16.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

17.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

18.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

19.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2019
Poughkeepsie, New York

_____
THE HONORABLE CECELIA G. MORRIS
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

**Bidding Procedures**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS

On August 6, 2019 (the "Petition Date"), Barneys New York, Inc. and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). On August 7, 2019, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Approving the Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Approving the Form and Manner of Notice Thereof, and (IV) Granting Related Relief* Docket No. [●] (the "Bidding Procedures Motion"), seeking approval of, among other things, the procedures to determine the highest or otherwise best offer for the purchase of some or all of the Debtors' assets (the "Assets") through a chapter 11 plan of reorganization (the "Plan") or section 363 sale process (any such purchase, a "Transaction").[2]

On [___], 2019, the Court entered an order approving the Bidding Procedures Motion [Docket No. [____] (the "Bidding Procedures Order" and the procedures contemplated herein, the "Bidding Procedures"). The Bidding Procedures set forth the process by which the Debtors are authorized to conduct an auction of their Assets (the "Auction") to determine the Winning Bidder.

### Marketing Process

**I.    Contact Parties.**

The Debtors, in consultation with their investment banker Houlihan Lokey Capital, Inc. ("Houlihan"), developed a list of parties whom they believe may be interested in, and whom the Debtors reasonably believe would have the financial resources to consummate, a Transaction. The list of parties includes both strategic investors and financial investors (collectively, the "Contact Parties"). Houlihan has already started to reach out to the Contact Parties to explore their interest

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's, Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819). The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

[2]    A sale transaction may be structured as an asset sale or an equity sale, as determined by the Debtors in consultation with the Winning Bidder.

in pursuing a Transaction and will continue to reach out to other Contact Parties to gauge their interest. The Contact Parties may include parties whom the Debtors or their advisors previously contacted regarding a transaction, regardless of whether such parties expressed any interest at such time in pursuing a transaction. The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtors may distribute (to the extent not already distributed) to each Contact Party and any other interested party or potential bidder an "Information Package" consisting of: (i) a copy of the Bidding Procedures, the Bidding Procedures Order, and the Bidding Procedures Motion; (ii) a form confidentiality agreement (a "Confidentiality Agreement"); and (iii) such other materials as appropriate under the circumstances.

## II.    Participation Requirements.

To receive due diligence information, including full access to the Debtors' electronic data room and to additional non-public information regarding the Debtors, a Potential Bidder must deliver to each of:  (i)  proposed co-counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn:  Edward O. Sassower, P.C., Joshua A. Sussberg, P.C., and Gene Goldmintz and Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Chad J. Husnick, P.C., Steve Toth, and W. Benjamin Winger, and Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, New York 10022, Attn: Steven J. Reisman; and (ii) financial advisors to the Debtors, Houlihan Lokey Capital, Inc., 245 Park Avenue, 20th Floor, New York, New York, 10167, Attn: Steven Tishman, Saul Burian, and Jason Feintuch (the "Debtors' Advisors"), the following documents (collectively, the "Preliminary Bid Documents"):

a.    an executed Confidentiality Agreement on terms acceptable to the Debtors, to the extent not already executed; and

b.    evidence by the Potential Bidder of its financial capacity to close a proposed transaction, which may include financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors (with the assistance of the Debtors' advisors).

Promptly after a Potential Bidder delivers Preliminary Bid Documents, the Debtors will determine and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents so that the Potential Bidder may proceed to conduct due diligence and ultimately submit a Bid as defined in the Bidding Procedures and participate in the Auction, as applicable, and will provide copies of any such notices to the Notice Parties. Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents, as determined by the Debtors in consultation with the Consultation Parties (each, an "Acceptable Bidder"), may submit Bids.

Beginning on or as soon as is reasonably practicable after the Debtors determine that a Potential Bidder is an Acceptable Bidder, the Debtors will provide such Acceptable Bidder with access to an electronic data room and reasonable due diligence information, as requested by such Acceptable Bidder, as soon as reasonably practicable after such request, and the Debtors shall post

substantially all written due diligence provided to any Acceptable Bidder to the Debtors' electronic data room. All due diligence requests must be directed to Houlihan. To the extent reasonably practicable, Houlihan will also facilitate meetings between any interested Acceptable Bidder and the Debtors' management team, which meetings will proceed in a manner determined by the Debtors, in their discretion. The due diligence period will end on the Bid Deadline, as defined below, and, subsequent to the Bid Deadline, the Debtors will have no obligation to furnish any due diligence information.

The Debtors and their advisors will coordinate all reasonable requests from Acceptable Bidders for additional information and due diligence access; *provided* that the Debtors may, in consultation with the Consultation Parties, decline to provide such information to Acceptable Bidders who, at such time and in the Debtors' business judgment, have not established, or who have raised doubt, that such Acceptable Bidder intends in good faith to, or has the capacity to, consummate a Transaction.

For any Acceptable Bidder who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold, or to delay providing, any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such Bidder at such time.

Each Acceptable Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Acceptable Bidder and its contemplated Transaction.

### Stalking Horse Bid Deadline and Bid Protections

The Debtors may, at any time until two days prior to the Auction, as an exercise of their business judgment, select one or more parties to be a Stalking Horse Bidder, whose Stalking Horse Bid may be comprised of a Credit Bid (including a Credit Bid by the DIP Agent, DIP Lender, and/or the Prepetition Secured Creditors, either independently or jointly with the Consultant (defined below)), with respect to some or all of the Debtors' Assets and provide such Stalking Horse Bidder(s) with Bid Protections, as defined in the Bidding Procedures.

### Auction Process

### I.    Bid Deadline.

An Acceptable Bidder that desires to make a proposal, solicitation, or offer (each, a "<u>Bid</u>") shall transmit such proposal, solicitation, or offer via email (in pdf or similar format) so as to be **actually received** on or before **October 24, 2019, at 5:00 p.m.** (prevailing Eastern Time) (the "<u>Bid Deadline</u>").

    a.    Houlihan Lokey Capital, Inc., 245 Park Avenue, 20th Floor, New York, New York, 10167, Attn: Steven Tishman (STishman@hl.com), Saul Burian (SBurian@HL.com), and Jason Feintuch (JFeintuch@HL.com).

    b.    Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg (joshua.sussberg@kirkland.com) and 300 North LaSalle Street,

Chicago, Illinois 60654, Attn: Chad J. Husnick, P.C. (chad.husnick@kirkland.com), Steve Toth (steve.toth@kirkland.com), and Benjamin Winger (benjamin.winger @kirkland.com), and Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, New York 10022, Attn: Steven J. Reisman; and

c.     Jones Day, 250 Vesey Street, New York, New York 10281, Attn: Sidney P. Levinson (slevinson@jonesday.com), Michael Schneidereit (mschneidereit@jonesday.com), and Jeremy Evans (jdevans@jonesday.com).

## II.    Bid Requirements.

Each Bid by an Acceptable Bidder (a "Bidder") must be submitted in writing and satisfy the following requirements (collectively, the "Bid Requirements"):

a.     Purpose.  Each Acceptable Bidder must state that the Bid includes an offer by the Acceptable Bidder to purchase some or all of the Assets, and which Assets with reasonable specificity.

b.     Purchase Price:  Each Bid must clearly set forth the terms of any proposed Transaction, including and identifying separately any cash and non-cash components of the proposed Transaction consideration, including, for example, certain liabilities to be assumed by the Acceptable Bidder (the "Purchase Price").

c.     Deposit:  Each Bid must be accompanied by a cash deposit in the amount equal to 10% of the aggregate value of the cash and non-cash consideration of the Bid to be held in an escrow account to be identified and established by the Debtors (the "Deposit").

d.     Marked Agreement:  Each Bid must include, at a minimum, draft asset purchase agreement (the form of which will be provided to any Acceptable Bidder prior to the Bid Deadline (the "Asset Purchase Agreement") together with a redline version of the revised Asset Purchase Agreement to the form, including the exhibits and schedules related thereto and any related Transaction documents or other material documents integral to such Bid, pursuant to which the Acceptable Bidder proposes to effectuate the Transaction (collectively, the "Transaction Documents").

e.     Committed Financing:  To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction, that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's Purchase Price and other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors.

    f.    <u>Contingencies; No Financing or Diligence Outs</u>:  A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions.

    g.    <u>Identity</u>:  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Acceptable Bidder if such Acceptable Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Bid), and the complete terms of any such participation.[3] Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific person(s) and counsel whom the Debtors' Advisors should contact regarding such Bid.

    h.    <u>Authorization</u>:  Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the Transactions contemplated in such Bid.

    i.    <u>As-Is, Where-Is</u>:  Each Bid must include a written acknowledgement and representation that the Acceptable Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (2) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's Transaction Documents.

By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bidding Procedures and to refrain from submitting a Bid or seeking to reopen the Auction after conclusion of the Auction.  **The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Assets or Reorganized Debtors' equity interests reflected in such Bid.**

## III.    Designation of Qualified Bidders.

A Bid will be considered a "<u>Qualified Bid</u>," and each Acceptable Bidder that submits

---

[3]    For the avoidance of doubt, the Consultant (as defined in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Enter Into and Perform under the Consultant Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief*), together with the DIP Agent and DIP Lenders, may submit a joint bid, which bid may be comprised of or include a credit bid, and any such joint bid will be considered a Qualified Bid to the extent such bid is received by the Bid Deadline and complies with section 363(k) of the Bankruptcy Code, to the extent applicable.

a Qualified Bid will be considered a "Qualified Bidder," if the Debtors determine, in their business judgment and in consultation with the Consultation Parties, that such Bid:

      a.      satisfies the Bid Requirements set forth above;

      b.      is reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Winning Bid (as defined below), within a time frame acceptable to the Debtors; and

Within two business days after the Bid Deadline, the Debtors will notify each Qualified Bidder whether such party is a Qualified Bidder and shall provide the Notice Parties a copy of each Qualified Bid.

If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Deposit on the date that is three business days after the Bid Deadline, or as soon as is reasonably practicable thereafter.

Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase their Purchase Price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; provided that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

Notwithstanding anything herein to the contrary, the Debtors reserve the right to work with (a) Potential Bidders and Approved Bidders to aggregate two or more Indications of Interest or Bids into a single consolidated Bid prior to the Bid Deadline or (b) Qualified Bidders to aggregate two or more Qualified Bids into a single Qualifying Bid prior to the conclusion of the Auction. The Debtors reserve the right to cooperate with any Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid. The Debtors may, in consultation with the Consultation Parties, accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction).

## IV.    Right to Credit Bid.

Any Qualified Bidder who has a valid and perfected lien on any Assets of the Debtors' estates (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; provided that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured.

Notwithstanding anything to the contrary contained herein, the DIP Agent, DIP Lenders

and Prepetition Secured Creditors shall have the right to credit bid all or any portion of the aggregate amount of their applicable outstanding secured obligations, including, with respect to the DIP Agent and the DIP Lenders, the Enhancement Fee (subject to entry of a final DIP Order) pursuant to section 363(k) of the Bankruptcy Code, and any such credit bid will be considered a Qualified Bid to the extent such bid is received by the Bid Deadline and complies with section 363(k) of the Bankruptcy Code; provided that a credit bid shall not constitute a Qualified Bid if the bid does not (a) include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected, and unavoidable liens on any assets included in such Bid that are senior in priority to those of the party seeking to credit bid (unless such senior lien holder consents to alternative treatment) or (b) comply with the terms of the priority scheme contained in the credit agreement governing the Debtors' prepetition asset-based revolving credit facility, the Bidding Procedures Order, the DIP documents, and the interim or final order, as applicable, approving the DIP Facility.

**V.      The Auction.**

If the Debtors receive two or more Qualified Bids, the Debtors will conduct the Auction to determine the Winning Bidder with respect to all or substantially all of the Debtors' Assets. The Auction shall take place no later than **October 29, 2019 at 9:00 a.m.** (prevailing Eastern Time), at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such later date and time as selected by the Debtors in consultation with the Consultation Parties.

No later than **October 25, 2019, at 5:00 p.m.** (prevailing Eastern Time), the Debtors, will notify all Qualified Bidders of the highest or otherwise best Qualified Bid, as determined in the Debtors' business judgment, in consultation with the Consultation Parties (the "Baseline Bid"), and provide copies of the documents supporting the Baseline Bid to all Qualified Bidders. The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Winning Bid shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (a) the type and amount of Assets sought to be purchased by the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Baseline Bid; and (e) the tax consequences of such Qualified Bid (collectively, the "Bid Assessment Criteria").

The Auction shall be conducted in a timely fashion according to the following procedures:

a.      The Debtors Shall Conduct the Auction

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Winning Bid.

Only Qualified Bidders and the Consultation Parties and each of their respective legal and

financial advisors shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person and may speak or bid themselves or through duly authorized representatives. Only Qualified Bidders shall be entitled to bid at the Auction.

b.    <u>Terms of Overbids</u>

"<u>Overbid</u>" means any bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid.  Each Overbid must comply with the following conditions:

*(i)*    <u>Minimum Initial Overbid</u>.  Any Overbid following the Baseline Bid shall be no less than the value of the Bid Protections, if any, plus a value equal to $250,000, as determined by the Debtors in an exercise of their business judgment.

*(ii)*    <u>Minimum Overbid Increment</u>.  Any Overbid to a Prevailing Highest Bid (as defined below) shall be in increments of (including revised treatment under the Plan) no less than the value of the Bid Protections, if any, plus a value equal to $250,000, as determined by the Debtors in an exercise of their business judgment.

*(iii)*    <u>Conclusion of Each Overbid Round</u>.  Upon the solicitation of each round of Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, extend from time to time, the "<u>Overbid Round Deadline</u>") by which time any Overbids must be submitted to the Debtors.

*(iv)*    <u>Overbid Alterations</u>.  An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Qualified Bid or Overbid, as determined in the Debtors' business judgment, but shall otherwise comply with the terms of these Bidding Procedures.

*(v)*    <u>Announcing Highest Bid</u>.  Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors have identified, an Overbid as being higher or otherwise better than the Baseline Bid, in the initial Overbid round, or, in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "<u>Prevailing Highest Bid</u>").  The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

c.    <u>Consideration of Overbids</u>

The Debtors reserve the right, in their business judgment and in consultation with the Consultation Parties, to adjourn the Auction one or more times, to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider

how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Transaction at the prevailing Overbid amount.

      d.     <u>Closing the Auction</u>

The Auction shall continue until there is only one Qualified Bid that the Debtors determine, in their business judgment (in consultation with the Consultation Parties), to be the highest or otherwise best Qualified Bid for the Assets. Such Qualified Bid shall be declared the "<u>Winning Bid</u>," and such Qualified Bidder, the "<u>Winning Bidder</u>," and at which point the Auction will be closed. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors of the Winning Bid is conditioned upon approval by the Court of the Winning Bid. For the avoidance of doubt, nothing in these Bidding Procedures shall prevent the Debtors from exercising their respective fiduciary duties under applicable law. As soon as reasonably practicable after closing the Auction, the Debtors shall finalize definitive documentation to implement the terms of the Winning Bid, and, as applicable, cause such definitive documentation to be filed with the Court.

      e.     <u>No Collusion; Good-Faith *Bona Fide* Offer</u>

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding, and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed Transaction if selected as the Winning Bidder.

## VI.    Expense Reimbursement, Work Fee, and Breakup Fee.

Upon entry of the Bidding Procedures Order and up until two days prior to the Auction, the Debtors shall be authorized, but not obligated, in an exercise of their business judgment (in consultation with the Consultation Parties), to (a) select one or more Acceptable Bidders to act as a stalking horse bidder in connection with the Auction and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder, (x) provide a breakup fee (the "<u>Breakup Fee</u>"), (y) agree to reimburse the reasonable and documented out-of-pocket fees and expenses (the "<u>Expense Reimbursement</u>"), and/or (z) agree to pay a "work fee" or other similar cash fee (the "<u>Work Fee</u>"). The aggregate amount that may be paid to any or all Stalking Horse Bidders on account of (x)–(z) shall not exceed three percent of the proposed Purchase Price.

## VII.    Backup Bidder.

      a.     Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction for the Assets or Reorganized Debtors' equity interests, as determined by the Debtors in the exercise of their business judgment, shall be required to serve as a backup bidder (the "<u>Backup Bidder</u>") until such time that the Transaction is consummated through confirmation of the Plan or

otherwise, and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

b.    The identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder shall be announced by the Debtors, at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder.  The Backup Bidder shall be required to keep its Qualified Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until such time that the Transaction is consummated through confirmation of the Plan or otherwise.  The Backup Bidder's Deposit shall be held in escrow pending confirmation of the Plan or, if the Transaction is not to be consummated pursuant to the Plan, approval of the Transaction by the Court at the Confirmation / Sales Hearing (as defined below).

c.    If a Successful Bidder fails to consummate the approved Transactions contemplated by its Successful Bid, the Debtors may select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes.  The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party.  In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

## VIII.    Notice and Consultation Parties.

Information that must be provided to the "Notice Parties" under these Bidding Procedures must be provided to the following parties: a) counsel to the DIP Agent and the DIP Parties, Jones Day, 250 Vesey Street, New York, New York 10281, Attn: Sidney P. Levinson, Michael Schneidereit, and Jeremy Evans; (b) counsel to the Prepetition ABL Agent, counsel to the Prepetition ABL Agent, (x) Riemer & Braunstein LLP, 100 Cambridge Street, Boston, Massachusetts 02114, Attn: Donald E. Rothman; and (y) Riemer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, New York 10036, Attn: Steven E. Fox; (c) counsel to the Term Loan Agent, Choate Hall & Stewart LLP, Two International Place, Boston, Massachusetts 02110, Attn: Kevin J. Simard and Mark Silva; and (d) counsel to any statutory committee of unsecured creditors (the "Committee").

The term "Consultation Parties" shall mean: (a) the DIP Agent, the DIP Lenders, and their counsel; and (b) the Committee and its counsel; provided, however that any party otherwise included as a Consultation Party shall not serve as a Consultation Party with respect to the sale of Assets to which such party is participating as a bidder unless and until such party unequivocally revokes its bid and waives its right to continue in the Auction process.

## IX.      "As Is, Where Is".

Consummation of any Transaction will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors or their estates,

except as specifically accepted or agreed to by the Debtors in accordance with the terms of any Plan support agreement. Except as specifically accepted or agreed to by the Debtors, all of the Debtors' right, title, and interest in and to the respective Assets or Reorganized Debtors' equity interests will be transferred pursuant to the Plan, or otherwise, free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests in accordance with sections 363(f) and 1123(a)(5)(D) of the Bankruptcy Code.

By submitting a Bid, each Acceptable Bidder will be deemed to acknowledge and represent that it (a) has had an opportunity to conduct adequate due diligence regarding the Assets prior to making its Bid, (b) has relied solely on its own independent review, investigation, and inspection of any document including, without limitation, executory contracts and unexpired leases, in making its Bid, and (c) did not rely on or receive from any party any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, with respect to the Assets or the completeness of any information provided in connection with the Transaction or the Auction.

## X.     Reservation of Rights.

The Debtors reserve their rights to modify these Bidding Procedures in their business judgment, in any manner that will best promote the goals of these Bidding Procedures, or impose, at or prior to the Auction, additional customary terms and conditions on a Transaction, including, without limitation:     (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids.

## XI.     Consent to Jurisdiction.

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bidding Procedures

## XII.     Confirmation / Sale Hearing.

A hearing to consider confirmation of the Plan or approval of the sale transaction (the "Confirmation / Sale Hearing"), pursuant to which the Debtors and the Winning Bidder will consummate the Transaction, will be held no later than **October 30, 2019** and otherwise in accordance with any scheduling order entered by the Court. The Approved Transaction shall be consummated within three days of Bankruptcy Court approval of such Transaction.

**The Confirmation / Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Confirmation / Sale Hearing. No further notice of any such continuance will be required to be provided to any party.**

At the Confirmation / Sale Hearing, the Debtors shall present the Plan, which shall incorporate the terms of the Winning Bid, to the Court for confirmation, as the case may be.

Any objections to the sale transaction must be received by **October 25, 2019** at 4:00 pm,

Eastern Standard Time (the "Sale Objection Deadline").

## XIII.   Return of Deposit.

The Deposit of the Winning Bidder shall be applied to the purchase price of such transaction at closing.  The Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Winning Bidder and the Backup Bidder) on the date that is three business days after the Auction, or as soon as is reasonably practicable thereafter.  Upon the return of the Deposits, the applicable Qualified Bidders shall receive any and all interest that will have accrued thereon.

If a Winning Bidder fails to consummate a proposed transaction because of a breach by such Winning Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Winning Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

## XIV.   Fiduciary Duties

Notwithstanding anything to the contrary contained herein, nothing in the Bidding Procedures will prevent the Debtors from exercising their respective fiduciary duties under applicable law.

*          *          *

Dated:  August 9, 2019          */s/ Joshua A. Sussberg*
New York, New York              Edward O. Sassower, P.C.
                                Joshua A. Sussberg, P.C.
                                **KIRKLAND & ELLIS LLP**
                                **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                601 Lexington Avenue
                                New York, New York 10022
                                Telephone:     (212) 446-4800
                                Facsimile:     (212) 446-4900

                                -and-

                                Chad J. Husnick, P.C.
                                W. Benjamin Winger (admitted *pro hac vice*)
                                **KIRKLAND & ELLIS LLP**
                                **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                300 North LaSalle Street
                                Chicago, Illinois 60654
                                Telephone:     (312) 862-2000
                                Facsimile:     (312) 862-2200

                                -and-

                                Steven J. Reisman
                                **KATTEN MUCHIN ROSENMAN LLP**
                                575 Madison Avenue
                                New York, New York 10022
                                Telephone:     (212) 940-8800
                                Facsimile:     (212) 940-8776

                                *Proposed Co-Counsel for the Debtors and Debtors in Possession*