**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

|   |   |   |
|---|---|---|
| | : | **Chapter 11** |
| **In re:** | : | **Case No. 19-36300 (CGM)** |
| | : | |
| **BARNEY'S NEW YORK, INC.,** *et al.*, | : | **Jointly Administered** |
| | : | |
| **Debtors.** | : | |
| | : | **Ref. Docket Nos. 49, 127** |

---------------------------------------------------------------------x

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,**
**AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS AND**
**DEBTORS IN POSSESSION TO OBTAIN POST-PETITION FINANCING, (II) GRANTING**
**LIENS AND SUPER-PRIORITY CLAIMS, (III) AUTHORIZING PAYMENT OF PREPETITION**
**SECURED OBLIGATIONS, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION**
**SECURED PARTIES, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) GRANTING**
**RELATED RELIEF**

Upon the DIP Motion[1] and the Amended DIP Motion[2] (collectively, the "***DIP Motions***")[3] of

**BARNEY'S, INC.**, on behalf of itself and its affiliated debtors and debtors-in-possession in the above-

captioned cases (collectively, the "***Debtors***"), pursuant to sections 105, 361, 362, 363, 364, and 507 of Title

11, United States Code, 11 U.S.C. §§ 101 *et seq.* (the "***Bankruptcy Code***"), and in accordance with Rules

2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rule

4001-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York

(the "***Local Rules***"), filed in the United States Bankruptcy Court for the Southern District of New York (this

"***Court***"), in these chapter 11 cases (the "***Chapter 11 Cases***"), for entry of interim and final orders granting

the following relief:

    **(I)**    **DIP Financing**

        **(A)**    Authorizing the Debtors to obtain up to $217 million in post-petition financing (the

---

[1] "***DIP Motion***" means the *Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing Debtors and Debtors in Possession to Obtain Junior Lien Postpetition Financing, (B) Authorizing Use of Cash Collateral, (C) Granting Liens and Superpriority Claims, (D) Granting Adequate Protection to Prepetition Secured Parties, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief* [Docket No. 20].

[2] "***Amended DIP Motion***" means the *Debtors' Motion for Entry of an Amended Interim DIP Order on Shortened Notice* [Docket No. 89].

[3] Capitalized terms used but not otherwise defined herein have the meaning given to them in the DIP Credit Agreement (defined below).

1

"*DIP Facility*") pursuant to (and in accordance with the terms of) that certain *Debtor-In-Possession Secured Term Promissory Note* (as may be amended, modified, or supplemented and in effect from time-to-time, the "*DIP Credit Agreement*"), substantially in the form as filed with the Court, and attached hereto as **Exhibit A**, by and among (x) Barney's Inc., as borrower (the "*Borrower*"), (y) the financial institutions that are or may from time to time become parties thereto (together with their respective successors and assigns, the "*DIP Lenders*"), and (z) GACP Finance Co., LLC, as administrative agent (in such capacity, "*DIP Agent*," and together with the DIP Lenders, the "*DIP Parties*"):

(i)    to pay fees, costs, and expenses as provided in the DIP Financing Agreements, including amounts incurred in connection with the preparation, negotiation, execution, and delivery of the DIP Credit Agreement and the other DIP Financing Agreements;

(ii)    to repay all of the Prepetition Secured Debt in cash in full, including interest and fees (including any prepayment and/or early termination fees), as set forth in clause (I)(D) below;

(iii)    for general operating and working capital purposes, for the payment of transaction expenses, for the payment of fees, expenses, and costs incurred in connection with the Chapter 11 Cases, and other proper corporate purposes of the Debtors not otherwise prohibited by the terms hereof for working capital, and other lawful corporate purposes of the Debtors;

(iv)    for making other payments as provided in this Order (this "*Final Order*"); and

(v)    to fund the Carve Out (as defined below)

in each case in accordance with the Approved Budget (defined below) and the terms of the Interim Orders (defined below) and this Final Order.

(B)    Authorizing the Borrower to enter into the DIP Credit Agreement and for the Borrower and the other Debtors to enter into all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP Agent and/or the DIP Lenders, including, without limitation, security agreements, pledge agreements, notes, guaranties, mortgages, and Uniform Commercial Code ("*UCC*") financing statements, and all other related agreements, documents, notes, certificates, and instruments to be executed, delivered, and/or ratified by the Debtors in connection therewith or related thereto (collectively, as may be amended, modified, or supplemented and in effect from time to time, and together with the DIP Credit Agreement, the "*DIP Financing Agreements*");[4]

(C)    Authorization of the Debtors to grant security interests, liens, and superpriority claims (including, as applicable, superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, and liens pursuant to sections 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code), solely to the extent set forth in

---

[4]    For the avoidance of doubt, "DIP Financing Agreements" shall not include this Final Order or any other postpetition financing or cash collateral order.

the Interim Orders and/or this Final Order, to the DIP Agent, for the benefit of itself and the DIP Lenders, and related protections to secure all obligations of the Debtors under and with respect to the DIP Facility in the order of priority and as provided in the Interim Orders and/or this Final Order;

(D)     (x) Authorization for the Debtors to immediately use proceeds of the DIP Facility to, upon entry of the Second Interim Order (defined below) and by no later than 2:00 p.m. (New York time) on August 15, 2019, repay all of the Prepetition Secured Debt (defined below) in cash in full, including interest and fees (including any prepayment and/or early termination fees) through the date of repayment (at the default contract rate) as set forth in that certain Payoff Letter, attached to the Second Interim Order as Exhibit "2", by and between the Debtors and the Prepetition Secured Parties (defined below) (the "*Payoff Letter*"), which repayment shall be indefeasible upon the occurrence of the Indemnity Termination Date[5] and (y) approval of the form and substance of, and authorization for the Debtors to execute and perform under, the Payoff Letter;

(E)     (x) Up to and including the Indemnity Termination Date, the granting of adequate protection and Prepetition Indemnity Account Lien (defined below), to the Prepetition Secured Parties under or in connection with the Prepetition Financing Documents, and (y) authorizing the Debtors to fund the Prepetition Indemnity Account (defined below); and

**(II)     Modifying the Automatic Stay** – Modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreements, the Interim Orders, and this Final Order;

**(III)     Waiving Any Applicable Stay** – Waiving any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Final Order;

**(IV)     Waiving the Provisions of Sections 506(c) and 552(b) of the Bankruptcy Code** – Granting the DIP Parties and the Prepetition Secured Parties, as applicable, a waiver of the "equities of the case" exception under section 552(b) of the Bankruptcy Code and of the provisions of section 506(c) of the Bankruptcy Code;

and upon the *Declaration of Mohsin Y. Meghji, Chief Restructuring Officer of Barneys New York, Inc., in*

*Support of Debtors' Chapter 11 Petitions and First Day Motions (the "**First Day Declaration**") and the*

---

[5]     "*Indemnity Termination Date*" means the date of indefeasible, as provided in Paragraph 20 hereof, payment in full in cash of the Prepetition Secured Debt, including interest and fees (including early termination and/or prepayment fees) through the date of repayment (at the default contract rate), which shall be deemed to have occurred (i) on the Challenge Period Termination Date (defined below), if no Challenge Proceeding has timely and properly been commenced in accordance with Paragraphs 46-52 hereof with respect to the Prepetition Secured Debt or against the Prepetition Secured Parties prior to the Challenge Period Termination Date or (ii) if a Challenge Proceeding is timely and properly commenced in accordance with Paragraphs 46-52 hereof with respect to the Prepetition Secured Debt or against the Prepetition Secured Parties prior to the Challenge Period Termination Date, on the date of any dismissal with prejudice, withdrawal with prejudice, or entry of final judgement or final order in connection with such Challenge Proceeding and (iii) in the case of either (i) or (ii), upon payment in full of any Prepetition Indemnity Obligations then liquidated and due.

*Declaration of Saul Burian in Support of the Debtors' Motion For Entry of Interim and Final Orders (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Lenders, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief (the "**Burian Declaration**"),* each of which was filed contemporaneously with the DIP Motion; and this Court having reviewed the DIP Motion and held a hearing with respect to the DIP Motion on August 6, 2019 (the "***First Interim Hearing***") and another hearing with respect to the Amended DIP Motion on August 14, 2019 (the "***Second Interim Hearing***" and, together with the First Interim Hearing, the "***Interim Hearings***") and held a final hearing with respect to the Amended DIP Motion on September 4, 2019 (the "***Final Hearing***"); and upon the DIP Motions, the First Day Declaration, the Burian Declaration, any other declarations filed in support of the DIP Motions and the record of the Interim Hearings and the Final Hearing; and upon the entry of the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507, and Fed. R. Bankr. P. 2002, 4001, and 9014 (I) Authorizing Debtors and Debtors in Possession to Obtain Junior Lien Post-Petition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens and Super-Priority Claims, (IV) Granting Adequate Protection to Prepetition Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 49] (the "***First Interim Order***") and the *Second Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507, and Fed. R. Bankr. P. 2002, 4001, and 9014 (I) Authorizing Debtors and Debtors in Possession to Obtain Post-Petition Financing, (II) Granting Liens and Super-Priority Claims, (III) Authorizing Payment of Prepetition Secured Obligations, (IV) Granting Adequate Protection to Prepetition Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 127] (the "***Second Interim Order***," and, together with the First Interim Order, the "***Interim Orders***") and all objections, if any, to the entry of this Final Order having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

4

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

## I.    Procedural Findings of Fact

1.    **Petition Date.**  On August 6, 2019 (the "*Petition Date*"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

2.    **Jurisdiction and Venue.**  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a "core" proceeding pursuant to 28 U.S.C. § 157(b).

3.    **Statutory Predicates**.  The statutory bases for the relief sought herein are sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 9014 and Local Rule 4001-2.

4.    **Committee Formation.**  On August 15, 2019, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "*Committee*") in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code [Docket No. 131].

5.    **Notice.**  The Final Hearing is being held pursuant to the authorization of Bankruptcy Rule 2002, 4001(b), (c), and (d) and Rule 9014.  Notice of the Final Hearing and the relief requested in the DIP Motions has been provided by the Debtors to certain parties-in-interest, including: (a) the Office of the United States Trustee (the "*U.S. Trustee*"); (b) counsel to the Committee; (c) counsel to the DIP Agent and counsel to the Prepetition Agents (defined below); and (d) all other secured creditors of record, and no other or further notice need be given.

## II.    Debtors' Acknowledgements and Agreements

6.    Subject in all respects to the rights of the Committee and other parties-in-interest (other than the Debtors) and to the extent set forth in Paragraphs 46-52 hereof, effective as of the Petition Date,

each of the Debtors admits, stipulates, acknowledges, and agrees (collectively, Paragraphs II.6(a) through

6(i) hereof shall be referred to herein as the "***Debtors' Stipulations***") that:

(a)    Prepetition Financing Documents.  Prior to the commencement of the Chapter 11 Cases, the Debtors were parties to (A) that certain Amended and Restated Revolving Credit and Term Loan Facility Agreement, first dated as of June 5, 2012 (as amended, modified, or supplemented and in effect from time-to-time, the "***Prepetition Credit Agreement***"), by and among (1) the Debtors that comprised the "Loan Parties" thereunder, (2) WELLS FARGO BANK, NATIONAL ASSOCIATION, as administrative agent (in such capacity, the "***Prepetition ABL Agent***"), and (3) the other lenders party to the Revolving Facility (as defined in the Prepetition Credit Agreement) from time to time (collectively, the "***Prepetition ABL Lenders***"), and (B) WELLS FARGO BANK, NATIONAL ASSOCIATION, as term loan agent (in such capacity, the "***Prepetition Term Agent***;" and together with the Prepetition ABL Agent, the "***Prepetition Agents***") under the Prepetition Credit Agreement, for itself and on behalf of the term loan lenders who have prepetition Term Loans (collectively, the "***Prepetition Term Lenders***;" and together with the Prepetition ABL Lenders and Prepetition Agents, the "***Prepetition Secured Parties***"); and (C) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of Prepetition Secured Parties, including, without limitation, control agreements, mortgages, security agreements, guaranties, UCC financing statements, and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto, including, without limitation, that certain WellsOne® Commercial Card Agreement, dated April 10, 2013 (the "***PCard Agreement***") (each as amended, modified or supplemented and in effect, collectively, the "***Prepetition Financing Documents***").

(b)    Prepetition Secured Debt Amount.

(i)    As of the Petition Date, the Debtors were liable to the Prepetition ABL Agent and Prepetition ABL Lenders under the Prepetition Financing Documents, on account of "Revolving Loans" in the approximate aggregate principal amount of $121,307,911.10, *plus* letters of credit in the approximate stated amount of not less than $20,571,590.02, *plus* interest accrued and accruing at the default rate, costs, expenses, fees (including attorneys' fees and legal expenses), other charges and other obligations, including, without limitation, on account of cash management, credit card, amounts due under the PCard Agreement, depository, leasing, hedging and other banking or financial services secured by the Prepetition Financing Documents (collectively the "***Prepetition ABL Debt***"); and

(ii)    As of the Petition Date, the Debtors were liable to the Prepetition Term Agent and Prepetition Term Lenders under the Prepetition Financing Documents, on account of "Term Loans" in the approximate aggregate principal amount of $50,212,500.00, *plus* interest accrued and accruing at the default rate, costs, expenses, fees (including attorneys' fees and legal expenses), other charges and other obligations secured by the Prepetition Financing Documents (collectively the "***Prepetition Term Debt***"; and together with the Prepetition ABL Debt, the "***Prepetition Secured Debt***" and, together with any other obligations arising under, based upon, in connection with or related to the Prepetition Financing Documents, the "***Prepetition Secured Obligations***").

(c)    Prepetition Collateral.  To secure the Prepetition Secured Debt (including, without limitation, amounts due and owing under the PCard Agreement), each of the  Debtors granted continuing security interests and Liens (collectively, the "***Prepetition Liens***") to the Prepetition

ABL Agent, for the benefit of itself and the other Prepetition Secured Parties, upon the "Collateral" (as defined in that certain Amended and Restated Pledge And Security Agreement (ABL) dated as of June 5, 2012 (as amended, modified, or supplemented and in effect from time-to-time, the "***Prepetition Security Agreement***"), comprising substantially all of its/their assets and property (collectively, the "***Prepetition Collateral***"). As of the Petition Date, the value of the Prepetition Collateral exceeded the aggregate amount of Prepetition Secured Debt, and the Prepetition Secured Debt constitutes allowed secured claims pursuant to section 506 of the Bankruptcy Code.

(d)    Prepetition Lien Priority. As of the Petition Date, the Prepetition Liens of the Prepetition Secured Parties had and continue to have priority over all other Liens except (x) valid, enforceable, non-avoidable and perfected Liens in existence on the Petition Date that, after giving effect to any intercreditor or subordination agreement (if any), including this Final Order, are senior in priority to the Prepetition Liens, and (y) valid, enforceable and non-avoidable Liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and after giving effect to any intercreditor or subordination agreement (if any), are senior in priority to the Prepetition Liens (collectively, the "***Permitted Prior Liens***"); provided, however, that any right or alleged right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien and such reclamation right is expressly subject to the Prepetition Liens, the Adequate Protection Liens (defined below) and the DIP Liens (defined below).

(e)    As of the Petition Date,

(i)    the Prepetition Liens were and continue to be valid, binding, enforceable, and perfected first-priority Liens, subject only to any Permitted Prior Liens, and are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law,

(ii)    (a) the Prepetition Secured Obligations constitute legal, valid, and binding obligations of the "Loan Parties" thereunder, enforceable in accordance with the terms of the Prepetition Financing Documents (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code), (b) no offsets, defenses, or counterclaims to any of the Prepetition Secured Debt exists, and (c) no portion of the Prepetition Secured Debt is subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law,

(iii)    the Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Agents or any other Prepetition Secured Party with respect to the Prepetition Financing Documents or otherwise, whether arising at law or at equity, including, without limitation, any recharacterization, subordination, disallowance, avoidance or other claims arising under or pursuant to sections 105, 510, 541 or 542 through 553, inclusive, of the Bankruptcy Code,

(iv)    the Prepetition Secured Debt constitutes an allowed secured claim(s);

(v)    the Debtors acknowledge and stipulate that they have been and are in default of their obligations under the Prepetition Financing Documents and that,

7

as of the Petition Date, the Prepetition Secured Debt had been accelerated and was due and payable, and that interest was accruing on the Prepetition Secured Debt at the default rate.

(f)     Effective as of the date of the entry of the First Interim Order, each of the Debtors has waived, discharged, and released the Prepetition Agents and each of the other Prepetition Secured Parties, together with their respective successors, assigns, subsidiaries, parents, affiliates, agents, attorneys, officers, directors, and employees (collectively, the "***Released Parties***"), of any right the Debtors may have (i) to challenge or object to any of the Prepetition Secured Debt, (ii) to challenge or object to the Prepetition Liens or any other security for the Prepetition Secured Debt, and (iii) to bring or pursue any and all claims, objections, challenges, causes of action, and/or choses in action arising out of, based upon, or related to the Prepetition Financing Documents, or otherwise.   None of the Debtors possesses and none of the Debtors will assert any claim, counterclaim, setoff, or defense of any kind, nature, or description against any of the Released Parties, including anything which would in any way affect the validity, enforceability, priority, and non-avoidability of any of the Prepetition Financing Documents or the Prepetition Liens, or any claim of the Prepetition Agents and/or the Prepetition Secured Parties pursuant to the Prepetition Financing Documents, or otherwise.

(g)     <u>Cash Collateral</u>.  As of the Petition Date, the Prepetition Secured Parties had and continue to have a continuing security interest in and Lien on all or substantially all of the Debtors' "cash collateral" as defined in section 363(a) of the Bankruptcy Code (the "***Cash Collateral***"), including, without limitation, any and all of the Debtors' cash, including cash and other amounts on deposit or maintained in any account or accounts by the Debtors, any and all cash released as a result of the termination and/or cancellation of any letters of credit issued for the benefit of Debtors that have been or may be cash collateralized prior to or after the Petition Date, any amounts generated by the collection of accounts receivable all amounts located in the Debtors' stores and on deposit in the Debtors' banking, checking, or other deposit accounts and all proceeds of the Prepetition Collateral (but excluding any payroll, withholding tax and other fiduciary accounts and certain accounts with <u>de</u> <u>minimis</u> balances (but solely to the extent provided in the Prepetition Financing Documents), to secure the Prepetition Secured Obligations, and the proceeds and products of each of the foregoing; provided, however, that any Liens, interests, or rights of the Prepetition Secured Parties with respect to Cash Collateral or other property on account of the Consignment Facility (the "***DIP Priority Collateral***") are junior to the Liens, interests, and rights of the DIP Parties.

(h)     <u>Adequate Protection</u>.  The Prepetition Secured Parties are entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including, without limitation, the Cash Collateral, as set forth in the Interim Orders and this Final Order.

(i)     None of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties controls the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are managed or conducted, or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Interim Orders, this Final Order, the DIP Facility, the DIP Financing Agreements, the Prepetition Secured Obligations and/or the Prepetition Financing Documents.

7.     Based upon the record before the Court, including the Interim Orders and this Final Order,

the terms of the DIP Facility, the Interim Orders, and this Final Order have been negotiated at arms' length

and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, by each of the Debtors, the DIP Parties, and the Prepetition Secured Parties, are fair and reasonable and within the Debtors' business judgment, and are in the best interests of the Debtors, their estates and creditors and are consistent with the Debtors' fiduciary duties.

8.    Pursuant to the terms and conditions of the Interim Orders, the Final Order, and the DIP Financing Agreements, and in accordance with and as may be limited by the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreements, the Interim Orders, and/or this Final Order), the Debtors are authorized to use the advances under the DIP Facility until notice is provided by the DIP Agent that a DIP Event of Default (defined below) and/or the DIP Maturity Date (defined below), as applicable, has occurred; provided, that the Debtors shall not be authorized to use any cash that constitutes DIP Collateral to cash collateralize (a) any prepetition Letter of Credit issued under the Prepetition Credit Agreement or (b) any amounts due or to become due under the PCard Agreement (including, without limitation, any applicable fees and customary charges accrued and accruing thereunder); provided further, that in no event shall the Debtors be authorized to incur obligations under the PCard Agreement (inclusive of applicable fees and customary charges) in an amount greater than $200,000, including any usual and customary fees, costs, and expenses under the PCard Agreement.

9.    The DIP Parties and the Debtors have agreed that the budget, the short form of which was filed with the Court on August 15, 2019 [Docket No. 129] (as the same may be modified, supplemented, or updated from time to time in the sole discretion and mutual consent of the Debtors and DIP Agent, the "*Approved Budget*") is adequate considering all the available assets, to pay the administrative expenses as and when such administrative expenses become due.  The Approved Budget has been prepared and is predicated on the requirement that the Debtors shall (a) remain "in-formula" and otherwise adhere to the "Borrowing Base" (as defined in the DIP Credit Agreement but calculated as if the Additional Liquidity Amount (as defined in the DIP Credit Agreement) were included therein) formula (including for the avoidance of doubt, the "Term Loan Borrowing Base" and without giving effect to any Reserves (each, as defined in the Prepetition Credit Agreement)) and after giving effect to the Liquidity Credit (as defined in

the DIP Credit Agreement), and (b) at all times during the period covered by the Approved Budget maintain Excess Availability (as defined in the DIP Credit Agreement) of not less than ten percent (10%) of the Borrowing Base (as defined in the DIP Credit Agreement) at such time (the "***Minimum Excess Availability Amount***").

10.    All collections of cash shall be deposited by the Debtors with Wells Fargo in accordance with the Debtors' existing consolidated cash management system, the maintenance of which has been approved under separate order of the Court.  Upon receipt of cash , such funds shall automatically be swept to the Debtors' operating and disbursement accounts, subject to the terms of this Final Order.  In furtherance of the foregoing, not later than noon (prevailing Eastern Time) on Friday of each week, the Debtors shall be required to deliver an updated Borrowing Base Certificate (as defined in the Prepetition Credit Agreement) based on best available estimates to the DIP Parties, which Borrowing Base Certificate shall include a reserve for the amount necessary to fund the Carve-Out Reserve (defined below) (to the extent not funded).

11.    <u>Adequate Protection for Prepetition Indemnity Obligations</u>.  As adequate protection, up to and including the Indemnity Termination Date, the Prepetition Secured Parties shall continue to receive the following (collectively, "***Adequate Protection***"):

(a)    **Adequate Protection Liens**.  Pursuant to sections 361 and 363(e) of the Bankruptcy Code, solely to the extent of the Diminution in Value[6] of the interests of the Prepetition Secured Parties in the Prepetition Collateral (including Cash Collateral) and solely to secure the Prepetition Indemnity Obligations (defined below), the Prepetition Secured Parties shall continue to have, subject to the terms and conditions set forth below, valid, perfected, and enforceable additional and replacement security interests and Liens in the DIP Collateral (defined below) (the "***Adequate Protection Liens***") which shall be junior and subordinated in priority only to the Carve Out (defined below), the Permitted Prior Liens, and the DIP Liens.

(b)    **Adequate Protection Superpriority Claim**. Solely to the extent of the Diminution in Value of the interests of the Prepetition Secured Parties in the Prepetition Collateral and solely for payment of any Prepetition Indemnity Obligations, each of the Prepetition Secured Parties shall continue to have an allowed superpriority administrative expense claim (each a

---

[6]    "***Diminution in Value***" means any diminution in value of the Prepetition Secured Parties' interest in the Prepetition Collateral as a result of (a) the incurrence of the DIP Obligations, (b) the use of Cash Collateral, (c) the subordination of the Prepetition Secured Debt to the Carve Out and the DIP Liens and DIP Superpriority Claims, (d) any other diminution in value of the Prepetition Collateral (or the proceeds thereof), and (e) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

"*Adequate Protection Superpriority Claim*"; and collectively the "*Adequate Protection Superpriority Claims*") which shall continue to have priority in the Chapter 11 Cases under sections 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and sections 506(c) and 552 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy, or attachment, but which shall be junior and subordinated in payment right to the Carve Out, the DIP Obligations[7] (including the Enhancement Fee and the Exit Fee) and the DIP Superpriority Claim (defined below), and other than the Carve Out, the DIP Obligations (including the Enhancement Fee and the Exit Fee) and the DIP Superpriority Claim (defined below), no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Case, will be senior to, prior to, or on parity with the Adequate Protection Superpriority Claims.

12.    <u>Reimbursement on a Current Basis of Fees Until Challenge Period Termination Date</u>.

Following the Prepetition Payoff (defined below), and thereafter up to and including the Challenge Period

Termination Date, the Prepetition Agents and the other Prepetition Secured Parties shall be reimbursed, on

a current basis and pursuant to the provisions of Paragraph 75, for all reasonable and documented out-of-

pocket fees, costs, and expenses incurred by (x) the professionals (including attorneys) engaged by such

parties solely in connection with any investigation conducted by the Committee pursuant to the Interim

Orders and/or this Final Order and (y) the attorneys engaged by such parties solely in connection with such

parties' rights under the Interim Orders and/or this Final Order, and/or any cash management order;

*provided*, *however*, that any such reimbursement on a current basis pursuant to this Paragraph 12 (a) shall

be subject to a cap of $100,000 and to the terms and conditions of the Prepetition Financing Documents,

and (b) such cap shall increase by $100,000 for each 30-day period the Court extends the Challenge Period

Termination Date beyond September 4, 2019, not to exceed $250,000 in the aggregate (*i.e.*, no more than

$350,000 after giving effect to subparts (a) and (b) of this proviso, without regard to the funds held in the

Prepetition Indemnity Account).

---

[7]    For purposes of this Final Order, "*DIP Obligations*" shall have the same meaning ascribed to the term "*Obligations*" under the DIP Credit Agreement.

13.    <u>Subordination of Claims and Liens of Prepetition Secured Parties to DIP Obligations and DIP Liens</u>.  Notwithstanding anything in the Interim Orders or this Final Order to the contrary, upon the Prepetition Payoff, and thereafter, until such time as the DIP Obligations (including the Enhancement Fee and the Exit Fee) are indefeasibly repaid in full, any and all claims of the Prepetition Secured Parties against the Debtors (other than current reimbursement of fees, costs and expenses pursuant to Paragraph 12 and Prepetition Indemnity Obligations to the extent paid from the Prepetition Indemnity Account) shall be subordinated in right of payment to the Carve Out and the DIP Obligations (including the Enhancement Fee and the Exit Fee), and any and all liens of the Prepetition Secured Parties securing Prepetition Secured Obligations (other than the Prepetition Indemnity Account Lien) shall be subordinated to the Carve Out and the DIP Liens.  In addition, the Prepetition Secured Parties:  (a) shall not be entitled to receive any payment from the Debtors, unless such payment is made from the Prepetition Indemnity Account on account of the Prepetition Indemnity Obligations that are then due and payable or as otherwise expressly authorized in Paragraph 12 hereof; (b) shall hold in trust for the benefit of the DIP Parties, and promptly turnover to the DIP Agent, any payment received on account of their Prepetition Indemnity Obligations that are then due and payable or any Prepetition Secured Obligations, in each case, that is not otherwise authorized under subclause (a); (c) shall be prohibited from exercising any remedies against any DIP Collateral, provided, that for the avoidance of doubt, the Prepetition Secured Parties shall not be precluded from seeking an order from the Court to compel payment by the Debtors of any amounts authorized under Paragraph 12 hereof; (d) shall not object to or otherwise take any action to prevent the Debtors from taking any action or obtaining any relief to which the DIP Parties have consented (including, without limitation, a sale of any property securing all or any part of any DIP Obligations), unless such action or relief would extinguish or materially prejudice the rights granted to the Prepetition Secured Parties under the Interim Orders and/or this Final Order; (e) shall not object to or otherwise take any action to prevent the DIP Parties from taking any action or obtaining any relief sought by the DIP Agent or DIP Lenders (including, without limitation, the enforcement of the DIP Obligations (including the Enhancement Fee and the Exit Fee), the sale of any property securing all or any part of any DIP Obligations, or any request for adequate protection, use of cash

12

collateral, relief from the automatic stay, or payment of fees and/or expenses), unless such action or relief would extinguish or materially prejudice the rights granted to the Prepetition Secured Parties under the Interim Orders and/or this Final Order; (f) shall not provide or seek to provide financing, either directly or indirectly, to the Debtors in the Chapter 11 Cases without the prior written consent of the DIP Parties; (g) shall not, without the prior written consent of the DIP Parties, propose a plan of reorganization, arrangement or proposal, or file any motion, pleading or material, that would have the effect of impairing or reducing the amount of  or the interest rate, fees or other amounts on, or delaying the time of payment of, any DIP Obligations (including the Enhancement Fee and the Exit Fee), or otherwise materially impair the rights of the DIP Agent or any of the DIP Parties, or that would be in conflict with the terms of the Interim Orders or this Final Order; and (h) shall no longer have any consent rights under the Interim Orders, except as otherwise provided in this Final Order.

14.    Subrogation.  In addition to and not in lieu of any DIP Liens and other rights and protections granted to the DIP Lenders under the DIP Financing Agreements, the Interim Orders, or this Final Order, with respect to any proceeds of the DIP Credit Agreement that any of the DIP Parties has paid or will pay to any of the Prepetition Secured Parties in satisfaction of any Prepetition Secured Obligations, the DIP Secured Parties shall be subrogated to the Prepetition Liens of such Prepetition Secured Parties (which, for purposes of this Paragraph 14, shall survive for the benefit of the DIP Parties) with respect to such satisfied Prepetition Secured Obligations until the payment in full in cash of all DIP Obligations (including the Enhancement Fee and the Exit Fee); provided, however, that notwithstanding anything to the contrary herein, no such subrogation shall either (a) impose, create or otherwise result in any liability or claim against (i) the Debtors in relation to any Prepetition Secured Obligation, or (ii) the DIP Lenders in relation to any Prepetition Secured Obligation that may otherwise exist against the Prepetition Secured Parties prior to the Indemnity Termination Date, or (b) impair the rights granted to the Committee under the Interim Orders or this Final Order to investigate and prosecute claims against the Prepetition Secured Parties and the Prepetition Liens pursuant to Paragraphs 46 to 52 hereof.  For the avoidance of doubt, the payoff of the Prepetition Secured Obligations and the related rights of subrogation pursuant to the Interim Orders and

this Final Order shall not reduce any of the DIP Obligations nor impair or prejudice any rights and protections granted to the DIP Parties hereunder.

15.     Repayment of Prepetition Secured Obligations (Other Than the Prepetition Indemnity Obligations).  On August 15, 2019, the Debtors repaid the amount of the Prepetition Secured Obligations (other than the Prepetition Indemnity Obligations, if any), including interest and fees (including any prepayment and/or early termination fees) through such date of repayment (at the default contract rate) in the amount set forth in the Payoff Letter.

16.     Enhancement Fee.  The net proceeds ("*Sale Proceeds*") of any disposition of DIP Collateral or sale of the Reorganized Debtors' equity interest (under a chapter 11 plan) (each such disposition, a "*Sale*") (other than with respect to the sale of inventory or other sales in the ordinary course of business (which, for the avoidance of doubt, shall exclude any sale of inventory in accordance with a store closure or other form of liquidation)), after the payment in full of (1) all DIP Obligations (other than the Enhancement Fee), and (2) all other administrative and priority claims (including, for the avoidance of doubt, the Carve Out), shall be promptly paid and shared at closing on such Sale(s) (including if such Sale constitutes a DIP Maturity Event) in the following sequence and percentages: (a) the first $8 million in Sale Proceeds shall be deposited into an escrow account to be used solely for payment of allowed general unsecured claims; and (b) any remaining Sale Proceeds shall be paid, (x) 25% to the Tranche A DIP Lenders and (y) 75% to the Debtors (the amount of such Sale Proceeds payable to the DIP Lenders pursuant to the foregoing, the "*Enhancement Fee*," the payment of which shall constitute a DIP Obligation pursuant to this Final Order), with the Debtors' 75% share subject to the liens and security interests granted in favor of the Prepetition Secured Parties, including the Adequate Protection Liens and the Prepetition Indemnity Account Lien.  The Debtors shall keep the DIP Agent and the Committee fully informed of the Debtors' efforts to consummate any Sale(s) and any other sales of equity interests and/or assets of the Debtors after the Petition Date, and without limiting the generality of the foregoing, the Debtors shall: (xx) promptly provide to the DIP Agent and the Committee copies of all offers for the purchase of any asset(s) and/or equity interests of any of the Debtors and copies of all bids from any liquidator(s); (yy) provide, promptly

upon written (including by e-mail) request of the DIP Agent and the Committee, and in any event no less frequently than weekly, status updates on the Debtors' efforts to consummate any Sale(s) and/or any other dispositions or capital/equity raises; and (z) promptly advise the DIP Agent and the Committee of any expressions of interest in any or all of the Debtors' assets and/or equity interests.

17.    Credit Bid.  In connection with any Sale(s) or other dispositions of any assets of the Debtors (outside of the ordinary course of business), the DIP Agent and DIP Lenders, respectively, may credit bid, in accordance with the DIP Financing Agreements, some or all of the DIP Obligations for the DIP Collateral, (each a "**Credit Bid**"), pursuant to section 363 of the Bankruptcy Code, whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise; *provided, however*, that notwithstanding anything to the contrary in the Interim Orders, this Final Order, or any prior order entered by this Court (including that certain *Order (I) Approving the Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Approving the Form and Manner of Notice Thereof, and (IV) Granting Related Relief* [Docket No. 156]), neither the DIP Parties nor any other assignee, transferee, or party in interest shall be entitled to credit bid the Enhancement Fee.  In all such instances, each of the DIP Agent and DIP Lenders, respectively, shall be considered a "Qualified Bidder" with respect to its right to acquire all or any of the assets by Credit Bid. For the avoidance of doubt, the DIP Agent and DIP Lenders, in accordance with any order entered by the Court authorizing bidding procedures with respect to a sale of all or substantially all of the Debtors' assets, shall be permitted to combine their respective allocations of the DIP Obligations (excluding any Enhancement Fee) into a single Credit Bid and submit joint Bids as provided therein.  The Bidding Procedures shall further provide that:  (a) any Bid for Assets that constitute DIP Collateral or Reorganized Debtors' equity interest (under a chapter 11 plan) must (x) provide for indefeasible payment in cash and in full of the DIP Obligations, other than any Enhancement Fee, or (y) have the consent of the DIP Parties; and (b) so long as the DIP Parties submit a Bid that does not exceed the amount of the DIP Obligations (excluding any Enhancement Fee), the DIP Parties shall remain a Consultation Party under the Bidding Procedures.

18.    Access to Records; Reporting.  In addition to, and without limiting, whatever rights to access the DIP Parties have under the DIP Financing Agreements, as applicable, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the DIP Parties and the Committee, respectively: (a) to have access to and inspect the Debtors' properties; (b) to examine the Debtors' books and records; (c) to discuss the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors; and (d) otherwise to have the full cooperation of the Debtors; provided, however, that the Prepetition Secured Parties and their professionals shall be granted access to information to the extent necessary to respond to a Challenge Proceeding.  In connection with the foregoing, during the Chapter 11 Cases, and until such time as the DIP Obligations shall have been paid in full, the Debtors shall cooperate fully with a financial advisor engaged by the DIP Agent and the Committee, respectively.  Notwithstanding anything to the contrary herein, none of the Loan Parties will be required to disclose information or provide access to the DIP Agent or the Committee (or any agent or representative thereof) where such disclosure or access is prohibited by applicable law or is subject to attorney-client or similar privilege, constitutes attorney work product, or implicates conflicts matters.

19.    Pleadings to Be Filed in the Chapter 11 Cases.  Promptly, and at least two (2) calendar days prior to filing, the Debtors shall provide (i) to the DIP Parties copies of all material pleadings (including, without limitation, any proposed orders, motions and applications) and any other pleadings wherein such parties' rights are impacted to be filed or entered in the Chapter 11 Cases and/or in any related proceedings, which pleadings shall be in form and substance reasonably acceptable to the DIP Parties, and (ii) up to and including the Indemnity Termination Date, to the Prepetition Secured Parties copies of all material pleadings (including, without limitation, any proposed orders, motions and applications) wherein such parties' rights and protections granted under the Interim Orders and/or this Final Order may be materially prejudiced to be filed or entered in the Chapter 11 Cases and/or in any related proceedings; provided that any amendments or modifications to this Final Order and the Interim Orders, in each case, shall be, with respect to any rights and protections granted to the Prepetition Secured Parties under the Interim Orders and/or this Final Order, in form and substance acceptable to the Prepetition Secured Parties.

16

20.    <u>Final Satisfaction of Prepetition Secured Obligations</u>.  The Debtors, upon entry of the

Second Interim Order, were authorized and directed to (x) execute the Payoff Letter and shall continue to

perform the transactions and undertakings set forth therein, which are hereby approved in all respects, and,

(y) within one business day of the entry of the Second Interim Order and contemporaneous with the second

interim funding of the DIP Loans, but in no event later than 2:00 p.m. (New York time) on August 15,

2019, were obligated to irrevocably pay in cash the amount of the Prepetition Secured Obligations (other

than the Prepetition Indemnity Obligations, if any), including interest and fees (including any prepayment

and/or early termination fees) through the date of repayment (at the default contract rate) in the amount of

approximately up to $142 million as set forth in the Payoff Letter (the "**Prepetition Payoff**"), which

repayment shall be indefeasible upon the occurrence of the Indemnity Termination Date; provided that the

Prepetition Secured Parties' rights to assert the Prepetition Indemnity Obligations, if any, shall continue up

to and including the Indemnity Termination Date.  Effective immediately upon the Prepetition Payoff:

(a)    the Prepetition Financing Documents and any other "Loan Documents" as defined in the Prepetition Credit Agreement, in each case, other than the Prepetition Indemnity Obligations and any other provisions and obligations whose survival is contemplated by the Prepetition Financing Documents or under the Interim Orders or this Final Order (including those that, pursuant to the Interim Orders and this Final Order, survive for the benefit of the DIP Lenders and the prepetition mortgages granted in favor of the Prepetition ABL Agent), were deemed cancelled, terminated, and of no further force and effect (other than the Prepetition Indemnity Obligations, cash management and letter of credit arrangements, and/or any other provisions whose survival is contemplated under the Interim Orders and/or this Final Order), and all rights, and obligations (other than any Prepetition Indemnity Obligations that by their terms survive termination, cash management and letter of credit obligations, and any other provisions and obligations whose survival is contemplated by the Prepetition Financing Documents or under the Interim Orders or this Final Order) under the Prepetition Financing Documents, including the Prepetition Secured Obligations, were released, cancelled, and of no further force or effect; provided, that the Prepetition Liens shall remain in effect solely up to and including the occurrence of the Indemnity Termination Date and solely to secure payment of the Prepetition Indemnity Obligations, other amounts due to the Prepetition Secured Parties pursuant to the Prepetition Financing Documents, the Interim Orders, and/or this Final Order, the cash management and letter of credit arrangements, and any other obligations whose survival is contemplated by the Prepetition Financing Documents or under the Interim Orders or this Final Order. Upon the occurrence of the Indemnity Termination Date, the Prepetition Liens and Prepetition Indemnity Obligations shall be fully and irrevocably deemed released, cancelled, and of no further force or effect, except to the extent they survive under the Interim Orders and this Final Order for the benefit of the DIP Lenders; provided

17

further that any and all Prepetition Liens that survive until the Indemnity Termination Date shall be subordinate in all respects to the Carve Out, the Permitted Prior Liens, and the DIP Liens, and shall be enforceable only to the extent that any Prepetition Indemnity Obligations and any other obligations whose survival is contemplated by the Prepetition Financing Documents, the Interim Orders, or this Final Order, are not capable of being satisfied from the application of funds on deposit in the Prepetition Indemnity Account; and

(b)    the Prepetition Agents will cooperate fully with the DIP Agent to transfer to the DIP Agent any possessory DIP Collateral (other than, for the avoidance of doubt, the Prepetition Indemnity Account (defined below)) that is in the possession of the Prepetition Agents.

21.    <u>Prepetition Indemnity Account</u>.  Upon entry of the Second Interim Order, the Debtors were authorized and directed to pay or deliver to the Prepetition ABL Agent (for the benefit of the Prepetition Secured Parties) the sum of (x) $500,000 by no later than 2:00 p.m. (New York time) on August 15, 2019 and (y) $250,000 by no later than 2:00 p.m. (New York time) on September 13, 2019, in each case of (x) and (y), to be segregated and held under the control of the Prepetition ABL Agent (for the benefit of the Prepetition Secured Parties) (the "***Prepetition Indemnity Account***") as security for any amounts owing but not paid to the Prepetition Secured Parties and any reimbursement, indemnification, or similar continuing obligations of the Debtors in favor of the Prepetition Agents and the other Prepetition Secured Parties, including, without limitation, in respect of any avoided payments, that expressly by their terms survive termination of the Prepetition Financing Documents, including without limitation, the provisions of Sections 11.3 and 11.4 of the Prepetition Credit Agreement (the "***Prepetition Indemnity Obligations***").

(a)    Without limiting the generality of the foregoing, the funds in the Prepetition Indemnity Account shall secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) incurred by the Prepetition Agents and the other Prepetition Secured Parties in connection with or responding to (i) formal or informal inquiries and/or discovery requests, any adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in Paragraphs 46-52 hereof, or (ii) any Challenge Proceeding against any one or more of the Prepetition Agent(s) and/or the other Prepetition Secured Parties related to the Prepetition Financing Documents, the Prepetition Liens, or the Prepetition Secured Obligations, whether in the Chapter 11 Cases or independently in another forum, court, or venue; <u>provided</u>, that the relative interests of the Prepetition Agents and other Prepetition Secured Parties in the funds deposited in the Prepetition Indemnity Account on account of any Prepetition Indemnity Obligations shall be subject in all respects to the priority provisions set forth in the Prepetition Financing Documents.

18

(b)     The Prepetition Indemnity Obligations are and shall continue to be secured by a first-priority lien (the "***Prepetition Indemnity Account Lien***") in favor of the Prepetition ABL Agent (on behalf of itself and the other Prepetition Secured Parties) on the Prepetition Indemnity Account and the funds therein and by a Lien in favor of the Prepetition ABL Agent (on behalf of itself and the other Prepetition Secured Parties) on the DIP Collateral (subject and subordinate to the Carve Out, Permitted Prior Liens and the DIP Liens).   For the avoidance of doubt, notwithstanding anything to the contrary contained herein, (i) up to and including the Indemnity Termination Date, the Prepetition Indemnity Account and the funds therein shall not constitute DIP Collateral or be subject to the Carve Out, the DIP Liens, the DIP Superpriority Claim or any other Lien or claim granted to any person or entity other than the Prepetition Secured Parties, and (ii) any Prepetition Indemnity Obligations, other than those payable under Paragraph 12 hereof or from the Prepetition Indemnity Account (or any Prepetition Indemnity Account Lien), shall be subject and subordinate to the Carve Out, Permitted Prior Liens, the DIP Obligations, and the DIP Liens.

(c)     The Prepetition Agents and other Prepetition Secured Parties may apply amounts in the Prepetition Indemnity Account against the Prepetition Indemnity Obligations as and when they arise, without further consent from the Debtors, the Committee, any other statutory committee, or any other parties in interest and without further order of this Court.

(d)     In addition to the establishment and maintenance of the Prepetition Indemnity Account, up to and including the Indemnity Termination Date, the Prepetition Agents (for themselves and on behalf of the other Prepetition Secured Parties), shall retain and maintain the Prepetition Liens (subject and subordinate to the Carve Out, Permitted Prior Liens and the DIP Liens ) as security for the amount of any Prepetition Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition Indemnity Account; provided, that any such indemnification claim(s) shall (i) be subject to the terms of the Prepetition Financing Documents, (ii) the rights of parties in interest with requisite standing to object to any such indemnification claim(s) are hereby reserved in accordance with Paragraphs 46-52 hereof, and (iii) the Court shall reserve jurisdiction to hear and determine any such disputed indemnification claim(s).

(e)     Promptly upon, but in no event later than five Business Days after, the occurrence of the Indemnity Termination Date, the Prepetition ABL Agent shall return to the Debtors the remaining amount, if any, net of any unpaid fees and expenses of the Prepetition Secured Parties and the Prepetition Indemnity Obligations then liquidated and due, in the Prepetition Indemnity Account.  Upon such return, such funds shall constitute DIP Collateral.

(f)     For the avoidance of doubt, nothing contained in this Paragraph 21 shall relieve the Debtors of their obligation to timely reimburse the fees, costs and expenses of the Prepetition Agents and the other Prepetition Secured Parties pursuant to Paragraph 12 and subject to Paragraph 75 hereof.

22.     <u>Treatment of Disgorged Amounts</u>.  In the event that the Prepetition Agents or any of the

other Prepetition Secured Parties is ordered by this Court to disgorge, refund or in any manner repay to any

of the Debtors or their estates any amounts ("***Disgorged Amounts***"), the Disgorged Amounts, unless otherwise ordered by the Court, shall be placed in a segregated interest bearing account in the control of the Prepetition ABL Agent, pending a further final, non-appealable order of a court of competent jurisdiction (for the avoidance of doubt the Court is a court of competent jurisdiction) regarding the distribution of such Disgorged Amounts (either returning the Disgorged Amounts to the Prepetition Agents and the other Prepetition Secured Parties, distributing such amounts to the Debtors or the DIP Parties, or otherwise).

23.    <u>Section 507(b)</u>.  Nothing herein or the DIP Financing Agreements shall prejudice, limit or otherwise impair or modify the Prepetition Secured Parties' respective rights under section 507(b) of the Bankruptcy Code in the event that the Adequate Protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for the diminution in value of their interests in the Prepetition Collateral during the Chapter 11 Cases or any Successor Case(s); <u>provided</u>, <u>however</u>, that: (a) nothing herein shall impair the right of the Debtors, the DIP Parties, or any other party in interest to contest any request for additional or different adequate protection; and (b) any section 507(b) claim granted in the Chapter 11 Cases to any Prepetition Secured Party(ies) shall be subject and subordinate to the Carve Out and DIP Obligations.

24.    Subject to section 364(e) of the Bankruptcy Code and Paragraph 74 of this Final Order, nothing included herein shall prejudice, impair or otherwise affect Prepetition Secured Parties' rights to seek any other or supplemental relief from the Court in respect of the Debtors.

### III.    <u>Authorization for the DIP Facility</u>

A.    <u>Findings Regarding the DIP Financing.</u>

25.    <u>Good Cause</u>. Good cause has been shown for immediate entry of this Final Order.

26.    <u>Need for Post-Petition Financing</u>.  An immediate need exists for the Debtors to obtain funds from the DIP Facility in order to continue operations and to administer and preserve the value of their estates for the benefit of their various stakeholders.  The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets, and to maximize a return for all creditors requires

the availability of working capital from the DIP Facility (in each case in the manner and in the amounts provided herein and in the Approved Budget (including any permitted variances), in the DIP Credit Agreement, the Interim Orders, and this Final Order), the absence of which would immediately and irreparably harm the Debtors, their estates and their stakeholders.

27.     <u>No Credit Available on More Favorable Terms</u>. As set forth in the DIP Motions, the Debtors have been unable to obtain any of the following:

(a)     unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense;

(b)     credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code;

(c)     credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien; or

(d)     credit for money borrowed secured by a junior Lien on property of the estate which is subject to a Lien;

in each case, on more favorable terms and conditions than those provided in the DIP Credit Agreement, the Interim Orders, and/or this Final Order.  The Debtors are unable to obtain credit from the DIP Lenders without granting to the DIP Agent and the DIP Lenders the DIP Protections (defined below).

28.     <u>Business Judgment; Good Faith Pursuant to Section 364(e) of the Bankruptcy Code</u>.  The extension of credit under the DIP Facility, the DIP Credit Agreement, and the other DIP Financing Agreements, and the fees paid and to be paid thereunder and the repayment of the Prepetition Secured Debt herein: (a) are fair, reasonable, and the best available under the circumstances; (b) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties; and (c) are supported by reasonably equivalent value and consideration.  The DIP Facility was negotiated in good faith and at arms' length between the Debtors, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties, and the proceeds to be extended under the DIP Facility will be so extended in good faith and used for valid business purposes and uses, as a consequence of which the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties are each entitled to the protections and benefits of sections 363(m) and 364(e) of the Bankruptcy Code.

29.     <u>Sections 506(c)</u>.  As a further condition of the DIP Facility and any obligation of the DIP

Lenders to make credit extensions pursuant to the DIP Credit Agreement, the Debtors (and any successors

thereto or any representatives thereof, including any trustees appointed in the Chapter 11 Cases or any

Successor Case) shall be deemed to have waived any rights or benefits of section 506(c) of the Bankruptcy

Code with respect to the DIP Agent, the DIP Lenders, the DIP Collateral, the Prepetition Agents, the

Prepetition Secured Parties, and the Prepetition Collateral.

30.     <u>Relief Essential; Best Interest</u>.  The relief requested in the DIP Motions (and as provided

in the Interim Orders and this Final Order) is necessary, essential, and appropriate for the continued

operation of the Debtors' business, the management and preservation of the Debtors' assets during the

Interim Period, and to avoid immediate and irreparable harm.  It is in the best interest of the Debtors' estates

that the Debtors be allowed to establish the DIP Facility contemplated by the DIP Credit Agreement and

the other DIP Financing Agreements.  The Debtors have demonstrated good and sufficient cause for the

relief granted herein.

**B.      Approval of Entry into the DIP Financing Agreements**

31.     The Debtors are expressly and immediately authorized and empowered to execute and

deliver the DIP Financing Agreements (including the Second Amended and Restated Debtor in Possession

Secured Term Promissory Note) and to incur and to perform the DIP Obligations in accordance with, and

subject to, the terms of the Interim Orders, this Final Order, and the DIP Financing Agreements, and to

execute and deliver all instruments, certificates, agreements, and documents that may be required or

necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the

DIP Liens described in and provided for by the Interim Orders, this Final Order, and the DIP Financing

Agreements.  In furtherance of the foregoing, the Debtors are hereby authorized to do and perform all acts,

pay the principal, interest, fees, expenses, and other amounts described in the DIP Credit Agreement and

all other DIP Financing Agreements as such become due, including, without limitation, the "Original Exit

Fee," the "Additional Facility Fee," and the "Additional Exit Fee" (as defined in the DIP Financing

Agreements), and, subject to the provisions of Paragraph 75 hereof, the DIP Agent's and DIP Lenders'

reasonable attorneys', financial advisors', consultants', and accountants' fees and disbursements as provided for in the DIP Credit Agreement, which amounts shall not otherwise be subject to approval of this Court.

32.    In order to enable them to continue to operate their businesses, and subject to the terms and conditions of the Interim Orders, this Final Order, the DIP Credit Agreement, the other DIP Financing Agreements, including the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreements, the Interim Orders, and this Final Order), the Debtors are hereby authorized under the DIP Facility to borrow an amount up to $217 million in accordance with the terms and conditions of the DIP Credit Agreement, all of which was advanced pursuant to the Interim Orders.

33.    The advances under the DIP Facility shall be used in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, the Interim Orders, and the Final Order, and in accordance with and as may be limited by the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreements, the Interim Orders, and the Final Order), solely as follows:

      (a)    to pay fees, costs, and expenses as provided in the DIP Financing Agreements, including amounts incurred in connection with the preparation, negotiation, execution, and delivery of the DIP Credit Agreement and the other DIP Financing Agreements;

      (b)    for general operating and working capital purposes, for the payment of transaction expenses, for the payment of fees, expenses, and costs incurred in connection with the Chapter 11 Cases, and other proper corporate purposes of the Debtors not otherwise prohibited by the terms hereof for working capital, and other lawful corporate purposes of the Debtors;

      (c)    for making payments in respect of Adequate Protection and other payments, all subject to and as provided in the Interim Orders and this Final Order;

      (d)    to repay the Prepetition Secured Obligations as provided in the Interim Orders and/or this Final Order;

      (e)    to fund the Prepetition Indemnity Account, as provided in the Interim Orders and/or this Final Order; and

      (f)    to fund the Carve Out.

34.    <u>DIP Obligations</u>.  The DIP Financing Agreements, the Interim Orders, and this Final Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which shall be enforceable against the Debtors, their estates, and any successors thereto, including without limitation, any trustee appointed in these Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of these Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "***Successor Cases***").  The DIP Obligations include all loans, and any other indebtedness or obligations, contingent or absolute, including, for the avoidance of doubt, the Enhancement Fee, which may now or from time to time be owing by any of the Debtors to the DIP Agent or any of the DIP Lenders, under the DIP Financing Agreements, the Interim Orders, and the Final Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owing under the DIP Financing Agreements. The Debtors shall be jointly and severally liable for the DIP Obligations.  The DIP Obligations shall be due and payable, without notice or demand except as provided herein.  No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Financing Agreements (including any DIP Obligation or DIP Liens (as defined herein)) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

35.    Pursuant to sections 361, 362, 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, and subject to the limitations set forth below, effective immediately upon the entry of the Interim Orders as applicable, the DIP Agent was granted the Liens (the "***DIP Liens***") (which DIP Liens are subject and subordinate to the Carve Out) for the ratable benefit of itself and the DIP Lenders, which DIP Liens constituted continuing, valid, binding, enforceable, non-avoidable, and automatically perfected post-

24

petition security interests and liens, and except as otherwise expressly provided in the Interim Orders and this Final Order, upon and to all of the following (collectively, the "***DIP Collateral***"): Liens with the priorities set forth in 11 U.S.C. § 364(c)(2), (c)(3) , and (d)(1) on all "property of the estate" as defined in section 541 of the Bankruptcy Code (including tangible and intangible assets and equity interests of the Borrowers (and any guarantors), including all assets constituting Prepetition Collateral), subject only to any Permitted Prior Liens and the Carve Out.  The DIP Collateral shall exclude (a) leases not subject to a mortgage in favor of the Prepetition ABL Agent as of the Petition Date (the "***Unencumbered Leases***"), but the DIP Collateral shall include any proceeds of Unencumbered Leases, (b) payroll, withholding tax and other fiduciary accounts and all amounts on deposit therein (in each case limited as provided in the Prepetition Financing Documents), (c) claims under chapter 5 of the Bankruptcy Code ("***Avoidance Actions***") or any proceeds of Avoidance Actions, and (d) prior to and including the Indemnity Termination Date, the Prepetition Indemnity Account and any funds therein (including the $750,000, a portion of which was funded pursuant to the Second Interim Order).

36.     From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Financing Agreements, the Interim Orders, and/or this Final Order, in compliance with and as limited by the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreements, the Interim Orders, and the Final Order).  The Approved Budget, and any modification to, or amendment or update thereof, shall be approved by, and in form and substance satisfactory to, the Debtors and the DIP Agent, each in their sole discretion.  The Approved Budget shall be updated, modified, or supplemented by the Debtors from time to time in accordance with the DIP Credit Agreement (provided that any update, modification or supplement shall be approved in writing by, and shall be in form and substance satisfactory to the DIP Agent in its sole discretion), and no such updated, modified or supplemented budget shall be effective until so approved and once approved shall be deemed the "Approved Budget."  Each budget delivered to the DIP Agent shall be accompanied by such supporting documentation as reasonably requested by the DIP Agent and shall be prepared in good faith based upon assumptions the

25

Debtors believe to be reasonable.  A copy of any Approved Budget shall be delivered to counsel for the Committee and the U.S. Trustee after (or if) it has been approved by the DIP Agent.

37.     Subject and subordinate to the Carve Out, all DIP Obligations shall be an allowed superpriority administrative expense claim (the "***DIP Superpriority Claim***" and, together with the DIP Liens, collectively, the "***DIP Protections***") with priority in the Chapter 11 Cases and any Successor Case(s) under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code, and, sections 506(c) and 552(b) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy, or attachment.  Notwithstanding anything to the contrary herein, the DIP Superpriority Claim shall not be payable from Avoidance Actions brought under 11 U.S.C. Sections 547 or 548 or the proceeds thereof as to any of the Debtors' landlords, vendors (whether supplier of goods or services), or employees (in each case, who are non-insiders of the Debtors), provided, however, the DIP Superpriority Claim may be paid on account of any Avoidance Action arising out of 11 U.S.C. Section 548, if such payment or transfer was not on account of (i) the supply of goods or services, (ii) amounts relating to rent or other amounts due under a lease or contract related to such lease, or (iii) amounts paid for wages, salaries, benefits, contributions required under a collective bargaining agreement, reimbursement of expenses or other amounts related to any of the Debtors' union or non-insider employee's employment or other agreement, plan or requirement that is required to be paid under the Debtors' employment policies, collective bargaining agreements, or otherwise required to be paid under law to or on behalf of any such non-insider employees or union organization.

38.     Other than the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Case, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Protections or the DIP Obligations or with any other claims of the DIP Agent and/or DIP Lenders arising hereunder.

39.     The Interim Orders and this Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens, Adequate Protection Liens, and Prepetition Indemnity Account Lien without the necessity of filing or recording any financing statement, deed of trust, mortgage, security agreement, notice of Lien or other instrument or document that may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreement) to validate or perfect such DIP Liens, Adequate Protection Liens, or Prepetition Indemnity Account Lien, or to entitle the DIP Liens, Adequate Protection Liens, or Prepetition Indemnity Account Lien to the priorities granted herein.

40.     Notwithstanding the foregoing, the DIP Parties and/or the Prepetition Secured Parties, as applicable, may, in their respective discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents to evidence, confirm, validate, or perfect, or to ensure the contemplated priority of, the DIP Liens, the Adequate Protection Liens and/or the Prepetition Indemnity Account Lien, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases.

41.     The Debtors shall execute and deliver to the DIP Agent and each Prepetition Secured Party, as applicable, all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents as the DIP Agent and/or the applicable Prepetition Secured Party may reasonably request to evidence, confirm, validate, or perfect, or to ensure the

contemplated priority of, the DIP Liens, the Adequate Protection Liens and/or the Prepetition Indemnity Account Lien.

42.      The DIP Parties and the Prepetition Secured Parties, in their respective discretion, may file a photocopy of the entered, docketed version of the Interim Orders and this Final Order as a financing statement with any recording office designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any of the Debtors has real or personal property, and in such event, the subject filing or recording office shall be authorized to file or record such copy of the Interim Orders and this Final Order.  Subject to the priorities set forth in the Interim Orders and this Final Order, the prepetition mortgages granted in favor of the Prepetition ABL Agent shall remain in full force and effect in accordance with its/their terms as if the same were executed and delivered under the Interim Orders and the Final Order and thereafter recorded with any registry of deeds or similar office in any jurisdiction in which any of the Debtors has real or personal property, and each such mortgage (or any mortgage granted to the DIP Agent in respect of the DIP Facility, regardless of whether the same is recorded with any applicable registry of deeds or similar office in any jurisdiction in which any of the Debtors has real or personal property) shall serve as evidence of validity, perfection and contemplated priority of the DIP Liens, the Adequate Protection Liens and/or the Prepetition Indemnity Account Lien.

43.      Subject to the terms of the Interim Orders and this Final Order (including the subordination provisions therein and hereof), the DIP Agent shall, in addition to the rights granted to it under the DIP Financing Agreements, succeed to the rights of the Prepetition Agents with respect to all third-party notifications in connection with the Prepetition Financing Documents, all prepetition collateral access agreements, and all other agreements with third parties (including any agreement with a customs broker, freight forwarder, or credit card processor) relating to, or waiving claims against, any Prepetition Collateral, including, without limitation, each collateral access agreement duly executed and delivered by any landlord of any Debtor and including, for the avoidance of doubt, all deposit account control agreements, securities account control agreements, and credit card agreements, provided, that nothing herein shall impair any such rights of the Prepetition Agents that may continue to exist, subject to Paragraph 14 of this Final Order.

44.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to:

(a)    permit the Debtors to grant the DIP Liens, the Adequate Protection Liens, and Prepetition Indemnity Account Lien, and to incur all liabilities and obligations to the DIP Agent and DIP Lenders under the DIP Financing Agreements, the DIP Facility, the Interim Orders, and this Final Order; and

(b)    authorize the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties to retain and apply payments hereunder as provided by the DIP Financing Agreements, the Interim Orders, and this Final Order.

45.    The DIP Lenders are authorized to provide the Consignment Facility to the Debtors pursuant to the terms contained in the DIP Financing Agreements.

**C.    Reservation of Certain Third-Party Rights and Bar of Challenges and Claims**

46.    Nothing in the Interim Orders, this Final Order, the Prepetition Financing Documents, the DIP Credit Agreement, or the other DIP Financing Agreements shall prejudice whatever rights the Committee or any other party-in-interest (other than the Debtors) with requisite standing that has been sought and granted by this Court, as applicable, may have to bring an adversary proceeding, cause of action, objection, claim, defense, or other challenge against any one or more of the Prepetition Secured Parties, the Prepetition Secured Debt and/or the Prepetition Liens (collectively, a "***Challenge Proceeding***"), including, but not limited to, any of the following:

(a)    in the case of the Prepetition Secured Parties, an objection to or challenge of the Debtors' Stipulations set forth in Paragraphs II.6(a) through II.6(i), including (i) the validity, extent, perfection, or priority of the security interests and Prepetition Liens of the Prepetition Agents in and to the Prepetition Collateral, or (ii) the validity, allowability, priority, status, or amount of the Prepetition Secured Debt; or

(b)    a suit against any one or more of the Prepetition Secured Parties in connection with or related to the Prepetition Secured Debt and/or the Prepetition Liens, or the actions or inactions of the such Prepetition Secured Party(ies) arising out of or related to such Prepetition Secured Debt and/or Prepetition Liens;

provided, however, that the Committee or any other party-in-interest with requisite standing that has been sought and granted by this Court, as applicable, must commence a Challenge Proceeding asserting such objection or challenge, including, without limitation, any claim against any one or more of the Prepetition Agents and/or other Prepetition Secured Parties, as applicable, in the nature of a claim, cause of action,

setoff, counterclaim, or defense in respect of the Prepetition Secured Debt and/or the Prepetition Liens (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code), by 5:00 p.m. (prevailing Eastern Time) on September 4, 2019 (the "***Challenge Period Termination Date***").  The failure of the Committee or other third party who desires to investigate either (i) the validity, extent, perfection, or priority of the security interests and Prepetition Liens in and to the Prepetition Collateral, or (ii) the validity, allowability, priority, status, or amount of the Prepetition Secured Debt, to make a formal written request to the affected Prepetition Secured Parties for information validating such Prepetition Secured Debt and/or Prepetition Liens on or before the date that is ten (10) calendar days prior to the Challenge Period Termination Date shall operate as a bar to any motion, application or other request by such party(ies) for an extension of the Challenge Period Termination Date.

47.     Not less than five (5) business days prior to filing a motion seeking standing (a "***Challenge Standing Motion***") to commence a Challenge Proceeding, the Committee or other third party, as the context makes applicable, shall inform the affected Prepetition Agent(s) and/or other Prepetition Secured Party(ies), in writing, of its intent to file such standing motion (such writing shall contain a reasonably detailed statement of the claims proposed to be asserted in such Challenge Proceeding and the legal/other bases supporting such claim(s) in the event standing were to be granted by the Court ("***Challenge Statement***")). The parties shall thereafter meet and confer for purposes of attempting to resolve any issues/claims asserted in the Challenge Statement.  In the event the Committee or other third party thereafter files a Challenge Standing Motion seeking standing to commence a Challenge Proceeding in accordance with the terms of this Final Order, any such Challenge Standing Motion shall, at a minimum, include a copy of any proposed objection or adversary complaint containing a detailed description of the claims and causes of action such party proposes to pursue.  The Challenge Period Termination Date shall be tolled for a period not to exceed thirty (30) days upon the filing of a Challenge Standing Motion (the "***Tolling Period***") by an interested party (other than the Committee) seeking standing to commence a Challenge Proceeding in accordance with the terms of this Final Order); <u>provided</u>, that any such tolling shall be applicable solely to the party that files the subject Challenge Standing Motion and solely as to the Challenge Proceedings for which

30

standing is sought (as set forth in such Challenge Standing Motion); and provided, further, that, unless otherwise ordered by the Court, the granting of any Challenge Standing Motion shall not extend the Challenge Period Termination Date beyond expiration of the Tolling Period. The Challenge Period Termination Date may occur as to some, but not all, of the Prepetition Agents and/or other Prepetition Secured Parties if a Challenge Proceeding is brought against one or more but not all of the Prepetition Agents and/or other Prepetition Secured Parties.

48.    For the avoidance of doubt, in the event any one or more of the Chapter 11 Cases is converted to a case under Chapter 7, or if a Chapter 11 trustee is appointed prior to the Challenge Period Termination Date, then in either such event and solely as applies to any such trustee, the Challenge Period Termination Date shall be sixty (60) days after such trustee's appointment. In the event that the Committee or any other party in interest with requisite standing, as applicable, has commenced a Challenge Proceeding prior to the conversion to Chapter 7 or appointment of a Chapter 11 trustee, the trustee shall be entitled to assume the prosecution of any pending Challenge Proceeding. In the event that the Committee or any other party in interest with requisite standing, as applicable, has commenced a Challenge Proceeding prior to the conversion to Chapter 7 or appointment of a Chapter 11 trustee, the trustee shall be entitled to assume the prosecution of any pending Challenge Proceeding. Until the later of the Challenge Period Termination Date without commencement of a Challenge Proceeding or the entry of a final, non-appealable order or judgment on account of any Challenge Proceeding properly commenced before the Challenge Period Termination Date, such trustee shall not be bound by the Debtors' Stipulations in the Interim Orders and this Final Order.

49.    Upon the Challenge Period Termination Date with respect to one or more or all of the Prepetition Secured Parties, any and all such challenges, claims, and/or objections by any party (including, without limitation, the Committee, any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, and any other party-in-interest) ***shall be deemed to be forever waived and barred*** with respect to the Prepetition Agents and other Prepetition Secured Parties, as applicable, and the Prepetition Secured Obligations and Prepetition Liens as to one or more or all of the Prepetition Agents and/or other Prepetition

Secured Parties, as the case may be, as of the Petition Date, shall be deemed to be an allowed fully secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Chapter 11 Cases and the Debtors' Stipulations as to one or more or all of the Prepetition Agents and/or other Prepetition Secured Parties, as the case may be, shall be binding on all creditors, interest holders, and parties-in-interest, including the Committee.

50.    To the extent any such Challenge Proceeding is commenced, or any claim is asserted against any one or more of the Prepetition Agents and/or other Prepetition Secured Parties, the affected Prepetition Secured Parties, or any of them, as the case may be, shall be entitled to include the costs and expenses, including, but not limited to, reasonable and documented attorneys' fees and disbursements, incurred in responding to any inquiry, producing documents, and/or witnesses in response to formal or informal discovery requests, or otherwise defending the objection or complaint, as part of the prepetition claims and Liens of such Prepetition Secured Party(ies) to the extent permitted pursuant to the applicable Prepetition Financing Documents, and subject to the provisions herein, including with respect to the priority of such claims and Liens.  To the extent any such inquiry or discovery is undertaken or any such objection or complaint is filed (or as part of any agreed upon resolution thereof), the affected Prepetition Secured Party(ies), or any of them, as the case may be, shall be entitled to include such costs and expenses, including, but not limited to, reasonable and documented attorneys' fees incurred in responding to the inquiry or discovery or in defending the objection or complaint, as part of such party's prepetition claim which shall be reimbursed by the Debtors, (x) subject, and subordinate as provided herein, to the Carve Out and the indefeasible payment in full in cash of the DIP Obligations, or (y) where applicable, out of the Prepetition Indemnity Account or as provided under Paragraph 12 hereof for fees and expenses incurred prior to the Challenge Period Termination Date, and as part of the Adequate Protection Superpriority Claims.  In addition to any other provisions in this Final Order, the Prepetition Indemnity Account shall be maintained until the final resolution of all such objections or claims that would, if successful, be payable as Prepetition Indemnity Obligations, against the affected Prepetition Secured Party(ies).  Subject in all respects to the Carve Out and prior payment in full in cash of the DIP Obligations, the Debtors shall remain liable to the

Prepetition Secured Parties, or any of them, as the case may be, for all unpaid Prepetition Indemnity Obligations to the extent that the funds in the Prepetition Indemnity Account are insufficient to satisfy the Prepetition Indemnity Obligations in full.

51.    Notwithstanding anything to the contrary contained in the Interim Orders and/or this Final Order, (a) the Committee has completed its investigation and, based upon that investigation as well as the terms and conditions of this Final Order, the Committee has determined and agreed that it will not commence a Challenge Proceeding or file a Challenge Standing Motion, and (b) the Challenge Period Termination Date is deemed to have occurred as to the Committee.

52.    Notwithstanding anything contained in the Interim Orders, this Final Order, or any of the DIP Financing Agreements, the Challenge Period Termination Date shall not be modified, amended or extended without the prior written consent of the Prepetition Secured Parties, in their sole discretion, and the DIP Parties, with such consent of the DIP Parties not to be unreasonably withheld or delayed.

**D.    Carve Out and Payment of Professionals**

53.    Carve Out.    As used in this Final Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (exclusive of any fee which becomes due and payable upon consummation of a transaction) (the "Allowed Professional Fees")[8] incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") at any time before or on the first business day following delivery by the DIP Agent of a Carve Out Trigger Notice (defined below), whether

---

[8]    Any fee that is or will become due and payable upon the consummation of a transaction shall be payable solely from the proceeds received by the Debtors resulting from such transaction, free and clear of the liens of the DIP Agent and the DIP Lenders.

allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; (iv) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all Allowed Professional Fees incurred by persons or firms retained by the Committee (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") and all allowed expenses, pursuant to section 503(b)(3)(F) of the Bankruptcy Code, of the members of the Committee at any time before or on the first business day following delivery by the DIP Agent of a Carve Out Trigger Notice (defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice, and (v) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $500,000 incurred after the first business day following delivery by the DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (v) being the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Committee by the DIP Agent, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

54.    Fee Estimates.  Not later than 7:00 p.m. New York time on the third business day of each week starting with the first full calendar week following the entry of the First Interim Order, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, "Estimated Fees and Expenses") incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "Weekly Statement"); provided, that within one business day of the occurrence of the Termination Declaration Date (defined below), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation

34

Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date. If any Professional Person fails to deliver a Weekly Statement within three calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Carve Out Reserves (defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person; provided, that such Professional Person shall be entitled to be paid any unpaid amount of Allowed Professional Fees in excess of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person from a reserve to be funded by the Debtors from all cash on hand as of such date and any available cash thereafter held by any Debtor. The Debtors shall fund and maintain in a segregated account (the "Funded Reserve Account") (a) at all times, in trust for the benefit of Professional Persons in an amount (the "Funded Reserve Amount") equal to the sum of (i) the greater of (x) the aggregate unpaid amount of Estimated Fees and Expenses included in all Weekly Statements timely received by the Debtors, and (y) the aggregate amount of Allowed Professional Fees contemplated to be unpaid in the Approved Budget at the applicable time, plus (ii) the Post-Carve Out Trigger Notice Cap, plus (iii) the amounts contemplated under paragraph 53(i) and (ii) above, and (b) subject to available liquidity (iv) an amount equal to the amount of Allowed Professional Fees set forth in the Approved Budget for the then current week occurring after the most recent Calculation Date and the two weeks succeeding such current week. Any and all amounts in the Funded Reserve Account shall not be subject to any cash sweep and/or foreclosure provisions in the DIP Financing Agreements and the DIP Lenders shall not be entitled to sweep or foreclose on such amounts notwithstanding any provision to the contrary in the DIP Financing Agreements. Not later than 7:00 p.m. New York time on the fourth business day of each week starting with the first full calendar week following the entry of the First Interim Order, the Debtors shall deliver to the DIP Parties and the Committee a report setting forth the Funded Reserve Amount as of such time. Prior to the delivery of the first report setting forth the Carve-Out Reserve Amount, the Debtors shall calculate the Funded Reserve Amount by reference

to the Approved Budget for subsection (i) of the Funded Reserve Amount. The information supplied by Professional Persons pursuant to this paragraph shall be used to determine whether there is compliance with Section 16(T) of the DIP Credit Agreement. Once the Funded Reserve Amount is funded into the Funded Reserve Account, the DIP Lenders shall not have any further obligations with respect to the payments to Professional Persons relating to such amounts, and Professional Persons may only be paid from the Funded Reserve Account. For the avoidance of doubt, the Prepetition Secured Parties shall have no obligations with respect to any payments to Professional Persons, or to fund the Funded Reserve Amount or any other amounts related to the Carve Out.

55.     Carve Out Reserves. On the day on which a Carve Out Trigger Notice is given by the DIP Agent to the Debtors with a copy to counsel to the Committee (the "Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand (including any amounts held in the Funded Reserve Account) as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees. The Debtors shall deposit and hold such amounts in a segregated account with the DIP Agent in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims. On the Termination Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand (including any amounts held in the Funded Reserve Account) as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date until such obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be

36

paid to the DIP Agent for the benefit of the DIP Lenders. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (v) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay to the DIP Agent for the benefit of the DIP Lenders in accordance with their rights and priorities set forth in this Final Order, until the DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date, until the Prepetition Secured Obligations, if any, have been indefeasibly paid in full in cash. Notwithstanding anything to the contrary in this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this Paragraph 55, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this Paragraph 55, prior to making any payments to the DIP Agent or the Prepetition Secured Parties, as applicable. Notwithstanding anything to the contrary in this Final Order, following delivery of a Carve Out Trigger Notice, the DIP Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Agent for application in accordance with the DIP Financing Agreements until the DIP Obligations have been indefeasibly paid in full, in cash, and all DIP Commitments have been terminated, and thereafter to the Prepetition Secured Parties until the Prepetition Secured Obligations, if any, have been indefeasibly paid in full. Further, notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Term Loans (as defined in the DIP Credit Agreement) or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees of the Debtor Professionals shall not affect the priority of the Carve Out with respect to the Debtor Professionals, and (iii) in no way shall the Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be

37

construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in the Interim Orders, this Final Order, the DIP Financing Agreements, or in any Prepetition Financing Agreement(s), the Carve Out with respect to the Debtor Professionals shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens, the Prepetition Indemnity Obligations (other than the Prepetition Indemnity Account Lien and/or any claims of Prepetition Secured Parties to the Prepetition Indemnity Account and/or funds therein), and the Prepetition Secured Parties' and DIP Lenders' respective superpriority claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations and/or Prepetition Secured Obligations (other than the Prepetition Indemnity Account Lien and/or any claims of Prepetition Secured Parties to the Prepetition Indemnity Account and/or funds therein).  The Carve Out with respect to all other Professional Persons, other than Debtor Professionals, shall be limited to the Carve Out Reserve.

58. 56.    <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

57.    <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  None of the DIP Agent, DIP Lenders, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

58.    <u>Payment of Carve Out On or After the Termination Declaration Date</u>.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP

Collateral and shall be otherwise entitled to the protections granted under the Interim Orders, this Final Order, the DIP Financing Agreements, the Bankruptcy Code, and applicable law.

59.    <u>Restriction on Use of Funds</u>.  Notwithstanding anything herein to the contrary, no proceeds of the DIP Facility, DIP Collateral or the Prepetition Indemnity Account (including funds therein) may be used by the Debtors, the Committee, or any other person or entity without the consent of the DIP Agent and/or the Prepetition Secured Parties in connection with any of the following: (a)  the investigation (including by way of examinations or discovery proceedings), initiation, assertion, joining, commencement, support or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the DIP Agent, the DIP Lenders, or Prepetition Secured Parties, or any of their respective officers, directors, employees, agents, attorneys, consultants, financial advisors, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action or other matter in any way related to the DIP Financing Agreements or the Prepetition Loan Documents (including formal discovery proceedings in anticipation thereof), including, without limitation, (i) investigating or challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the DIP Obligations, DIP Superpriority Claims or the DIP Liens; (ii) investigating or challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition Secured Obligations, the Prepetition Indemnity Obligations, Prepetition Liens, Adequate Protection Superpriority Claims, Adequate Protection Liens, or the Prepetition Indemnity Account Lien; (iii) investigating or asserting any claims or causes of action arising under chapter 5 of the Bankruptcy Code or under similar laws of any jurisdiction against any of the Prepetition Secured Parties or the DIP Parties; (iv) investigating or asserting any so-called "lender liability" claims and causes of action against any of the Prepetition Secured Parties or the DIP Parties; and (v) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the Prepetition Secured Obligations, the Prepetition Indemnity Obligations, the Prepetition Liens, the Adequate Protection Superpriority Claim, the Adequate Protection Liens, the Prepetition Indemnity Account Lien, the DIP Obligations, the DIP Superpriority Claim, and the DIP Liens; (b) asserting any claims or causes of action against the DIP Parties or the Prepetition Secured Parties in

such capacity, including, without limitation, claims or actions to object to or contest in any manner the DIP

Parties' or the Prepetition Secured Parties' assertion or enforcement of any lien, claim, right or security

interest or realization upon any DIP Collateral or the Prepetition Indemnity Account (including any funds

therein) in accordance with the terms and conditions of the DIP Financing Agreements, the Prepetition

Loan Documents, the Interim Orders, or this Final Order; (c) seeking to modify any of the rights, remedies,

priorities, privileges, protections and benefits granted to the DIP Parties or the Prepetition Secured Parties

hereunder or under the DIP Financing Agreements or Prepetition Loan Documents (as applicable), in each

of the foregoing cases without such applicable parties' prior written consent; provided, however, that the

proceeds of the DIP Facility and DIP Collateral shall be available for payment of any fees or expenses

incurred by the Committee to investigate, but not prosecute, any of the foregoing in an amount not to exceed

$50,000.

**E.    Maturity; DIP Order Events of Default; Remedies**

60.    The DIP Facility shall mature (the "***DIP Maturity Date***"), and the Debtors' ability to utilize

cash shall terminate, upon the expiration of five (5) business days' prior written notice (a "***DIP Remedies***

***Notice***" and the "***DIP Remedies Notice Period***") to each of (a) the Debtors, (b) lead restructuring counsel

to the Debtors, (c) counsel to the Prepetition Agents, (d) counsel for the Committee, (e) counsel to the DIP

Agent, and (f) the U.S. Trustee, after the occurrence and continuation of any of the following events (each,

a "***DIP Maturity Event***"), unless waived by the DIP Agent or cured by the Debtors during the DIP Remedies

Notice Period:

    (a)    March 31, 2020;

    (b)    the date which is 30 days following the date of entry of the Interim Order if this
Final Order has not been entered by the Court on or prior to such date;

    (c)    the failure of the Debtors to adhere to the Approved Budget, including any failure
to maintain Excess Availability at the levels required hereunder;

    (d)    the date on which the DIP Agent accelerates the DIP Obligations outstanding under
the terms of the DIP Facility after the occurrence of an Event of Default (as defined
in the DIP Credit Agreement and the passage of any applicable cure period) in
accordance with the terms of the DIP Credit Agreement;

      (e)      the occurrence of  DIP Order Event of Default (defined below);

      (f)      the consummation of a sale of all or substantially all of the Debtors' assets;

      (g)      any stay, reversal, vacatur, rescission or other modification of the terms of this Final Order is not consented to by the DIP Parties;

      (h)      the failure of the Debtors to provide all financial reports as well as any budget variance report required under the DIP Financing Agreements;

      (i)      the dismissal of any of the Chapter 11 Cases, the conversion of any Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or the appointment of a chapter 11 trustee with expanded powers in any of the Chapter 11 Cases;

      (j)      the failure of the Debtors to comply with any of the budget covenants or Milestones as set forth in the DIP Financing Agreements; or

      (k)      the substantial consummation of a plan of reorganization filed in the Chapter 11 Cases that is confirmed pursuant to an order of the Court.

61.      Immediately upon the occurrence of the DIP Maturity Date, notwithstanding any automatic stay otherwise applicable to the DIP Parties pursuant to section 362 of the Bankruptcy Code, and without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of the Interim Orders and this Final Order, the DIP Parties may exercise their rights and remedies in accordance with the Interim Orders and this Final Order upon the expiration of the DIP Remedies Notice Period following delivery of a DIP Remedies Notice, in each case such DIP Remedies Notice being given to each of (i) the Debtors, (ii) counsel to the Debtors, (iii) counsel for the Committee, (iv) counsel to the DIP Agent, and (vi) the U.S. Trustee.

62.      Following the giving of a DIP Remedies Notice, the Debtors and the Committee shall be entitled to an emergency hearing before this Court, with any such hearing to be held on not less than two (2) business days' notice to the Committee and the DIP Agent; provided, that if a hearing to consider any relief in connection with the delivery of a DIP Remedies Notice or continued use of cash is requested to be heard within such DIP Remedies Notice Period but is scheduled for a later date by the Court, the DIP Remedies Notice Period shall be automatically extended to the date of such hearing. If (x) the Debtors or the Committee do not contest the occurrence of a DIP Maturity Event and/or the right of the DIP Parties to exercise their remedies, or (y) the Debtors or the Committee do timely contest the occurrence of a DIP

Maturity. Event and/or the right of the DIP Parties to exercise their remedies, and unless this Court, after notice and hearing prior to the expiry of the DIP Remedies Notice Period stays the enforcement thereof, the automatic stay, solely as to the DIP Parties, shall automatically terminate at the end of the DIP Remedies Notice Period.

63.    Subject to the provisions of Paragraphs 61-62 hereof, upon the expiration of the DIP Remedies Notice Period, the DIP Parties are authorized to exercise their remedies and proceed under or pursuant to the DIP Financing Agreements; except that with respect to any of the Debtors' leasehold locations, the DIP Parties can only enter upon a leased premises following the DIP Maturity Date in accordance with (i) a separate written agreement by and between the DIP Agent and any applicable landlord, (ii) pre-existing rights of the DIP Parties and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) entry of an order of this Court obtained by motion of the DIP Parties on such notice to the landlord, the Debtors, the Committee, and the U.S. Trustee as shall be required by this Court.

64.    Unless and until the DIP Obligations have been irrevocably repaid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Agent, in its sole and exclusive discretion have been made), and all DIP Commitments have been irrevocably terminated, the protections afforded to the DIP Agent and the DIP Lenders pursuant to the Interim Orders, this Final Order, and under the DIP Financing Agreements, and any actions taken pursuant thereto, shall survive the entry of any order confirming any plan of reorganization or liquidation (a "*Plan*") or converting the Chapter 11 Cases into a Successor Case, and the DIP Liens and the DIP Superpriority Claim shall continue in the Chapter 11 Cases and in any Successor Case, and such DIP Liens and DIP Superpriority Claim shall maintain their respective priorities as provided by the Interim Orders and this Final Order.  Unless and until the Indemnity Termination Date has occurred, the protections afforded to the Prepetition Secured Parties pursuant to the Interim Orders, this Final Order and under the Prepetition Financing Agreements, and any actions taken pursuant thereto, shall survive the entry of any order confirming any plan of reorganization or liquidation (a "*Plan*") or converting the Chapter 11 Cases into a Successor Case, and the Prepetition Indemnity

Obligations, the Prepetition Liens, the Adequate Protection Liens, the Adequate Protection Superpriority Claims and the Prepetition Indemnity Account Lien shall continue in these Chapter 11 Cases and in any Successor Case, and such Prepetition Indemnity Obligations, Prepetition Liens, Adequate Protection Liens, Adequate Protection Superpriority Claims and Prepetition Indemnity Account Lien shall maintain their respective priorities as provided by the Interim Orders and this Final Order.

65.     Each of the following, unless waived by the DIP Agent or cured by the Debtors, shall constitute a "***DIP Order Event of Default***":

(a)     the occurrence of an Event of Default (as defined in the DIP Credit Agreement) in accordance with the DIP Credit Agreement;

(b)     the failure of the Debtors to obtain entry of the Final Order on or before the date that is thirty (30) days after the Petition Date, unless such date has been extended by consent of the DIP Agent, in its sole and absolute discretion;

(c)     the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under the DIP Credit Agreement (including, without limitation, the Milestones (as defined therein), and after giving effect to any notice or cure periods provided therein) or this Final Order;

(d)     the filing of a motion by the Debtors seeking dismissal of any of the Chapter 11 Cases, the dismissal of any of the Chapter 11 Cases, the filing of a motion by the Debtors seeking to convert any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or the conversion of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or the appointment of a trustee or examiner with expanded powers in any of the Chapter 11 Cases;

(e)     termination of the exclusivity period for the Debtors to file a chapter 11 plan in the Chapter 11 Cases;

(f)     other than as contemplated by the Interim Orders and this Final Order, entry of an order granting any lien or claim which is senior to or *pari passu* with the DIP Agent's lien and claims under the DIP Facility without the prior written consent of the DIP Agent (or the filing of any motion by the Debtors seeking such relief), unless the obligations owing to the DIP Agent and DIP Lenders are indefeasibly paid in full in cash and the DIP Lenders' commitment to make loans is terminated;

(g)     entry of an order confirming (or the filing of any motion or pleading requesting confirmation of) a plan of reorganization or liquidation that does not require indefeasible repayment in full in cash of the DIP Facility as of the effective date of the plan;

(h)     payment of or granting adequate protection with respect to prepetition debt (other than as set forth in the Interim Orders or this Final Order, or as may be agreed by the DIP Agent);

(i)     the failure of liens or superpriority claims granted with respect to the DIP Facility to be valid, perfected and enforceable with the priority described herein;

(j)     the entry of one or more orders of the Court lifting the automatic stay under section 362 of the Bankruptcy Code with respect to assets of the Debtors having a value in excess of $500,000 in the aggregate; or

(k)     the Interim Orders or this Final Order, as applicable, shall be amended, modified, stayed or vacated without the written consent of the DIP Agent.

66.     Upon the service of a DIP Remedies Notice, to the extent the DIP Agent, as and to the extent provided for by the DIP Credit Agreement, determines in its sole and absolute discretion to exercise its rights and remedies in accordance with the Interim Orders and this Final Order:

(a)     any obligation otherwise imposed on the DIP Lenders to provide any loan or advance to the Debtors pursuant to the DIP Facility shall be suspended, and any loan or advance made thereafter shall be made by the DIP Lenders in their sole and exclusive discretion;

(b)     the Debtors shall continue to deliver and cause the delivery of the proceeds of the DIP Collateral to the DIP Agent, as provided in the Interim Orders, this Final Order, and in the DIP Financing Agreements;

(c)     the DIP Agent shall continue to apply such proceeds in accordance with the provisions of the Interim Orders, this Final Order, and the DIP Financing Agreements, as applicable;

(d)     the Debtors shall have no right to use any of such proceeds, nor any cash that constitutes DIP Collateral, other than towards the satisfaction of the DIP Obligations and the Carve Out, as provided in the DIP Financing Agreements, the Interim Orders, and this Final Order; provided, however, that during the DIP Remedies Notice Period the Debtors may use cash (excluding any amounts in the Prepetition Indemnity Account) solely to meet accrued but unpaid payroll obligations (other than severance) and trust fund obligations strictly in accordance with the Approved Budget; and

(e)     upon the occurrence of either (a) an Event of Default and, subject to the DIP Remedies Notice Period and other terms of the Interim Orders and this Final Order, the exercise by the Agent or the DIP Lenders of their rights and remedies under the Interim Orders, this Final Order, or the other DIP Documents, or (b) the failure of any Loan Party to comply with the October 24, 2019 Milestone under Section 14(h)(6), each Loan Party shall assist the Agent in effecting a sale or other disposition of the Collateral upon such terms as are designed to maximize the proceeds obtainable from such sale or other disposition, and the Loan Parties shall immediately commence all liquidation processes in the manner contemplated by the Store Closure Motion.

67.    Upon expiration of the DIP Remedies Notice Period, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties (subject to the subordination agreement and other limitations contained herein) are authorized to exercise their remedies and proceed under or pursuant to the DIP Credit Agreement or the Prepetition Financing Documents, as applicable; except that, with respect to any of the Debtors' leasehold locations, the DIP Agent and/or DIP Lenders can only enter upon a leased premises after expiration of the DIP Remedies Notice Period in accordance with (i) the rights of the Prepetition Agents where the DIP Agent succeeds to such rights under this Final Order, or (ii) entry of an order of this Court obtained by motion of the applicable DIP Agent or DIP Lender on such notice to the landlord as shall be required by this Court.

68.    Nothing included herein shall prejudice, impair or otherwise affect either the DIP Agent's rights to seek any other or supplemental relief from the Court in respect of the Debtors, nor the DIP Lenders' rights, as provided herein and in the DIP Financing Agreements, to suspend or terminate the making of loans and granting financial accommodations under the DIP Credit Agreement.

69.    The delay in or the failure of the DIP Agent and/or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the DIP Agent's, DIP Lenders' and/or Prepetition Secured Parties' rights and remedies.  Notwithstanding anything herein, the entry of the Interim Orders or this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly or otherwise impair the rights and remedies of the DIP Agent, DIP Lenders, or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the DIP Agent, DIP Lenders, Prepetition Agents, and/or the Prepetition Secured Parties to: (i) request conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan; or (iii) subject to section 362 of the Bankruptcy Code exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) the DIP Agent, DIP Lenders, and/or Prepetition Secured Parties may have.

45

### IV. Certain Limiting Provisions

**A.      Section 506(c) Claims and Waiver**

70.      Nothing contained in the Interim Orders and/or this Final Order shall be deemed a consent by the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties to any charge, Lien, assessment, or claim against the DIP Collateral, the DIP Liens, the Prepetition Collateral, the Adequate Protection Liens, Prepetition Indemnity Account (and the funds therein), or the Prepetition Indemnity Account Lien under section 506(c) of the Bankruptcy Code or otherwise, including for any amounts set forth in the Approved Budget.

71.      As a further condition of the DIP Facility and any obligation of the DIP Lenders to make credit extensions pursuant to the DIP Credit Agreement, the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Chapter 11 Cases or any Successor Case) shall be deemed to have waived any rights or benefits of section 506(c) of the Bankruptcy Code with respect to the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the DIP Collateral, the Prepetition Collateral, and the Prepetition Indemnity Account (and the funds therein).

**B.      Proceeds of Subsequent Financing**

72.      If at any time prior to the irrevocable repayment in full in cash of all DIP Obligations and the Prepetition Secured Obligations, and the termination of the DIP Lenders' obligations to make loans and advances under the DIP Facility, the Debtors, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to sections 364(c)(1) or 364(d) of the Bankruptcy Code in violation of the DIP Credit Agreement, then all of the cash proceeds derived from such credit or debt shall immediately be turned over <u>first</u>, to the DIP Agent to be applied in reduction of the DIP Obligations, and after payment in full of the DIP Obligations, <u>second</u>, to the Prepetition Secured Parties to be applied in reduction of the remaining Prepetition Secured Obligations (including any accrued Adequate Protection), if any, and <u>third</u>, solely to the extent that the DIP Obligations and the Prepetition Secured Obligations (including any accrued Adequate Protection) have been irrevocably paid in full, to the Debtors.

**C.**    **No Priming of DIP Facility**

73.    In entering into the DIP Financing Agreements, each of the Debtors hereby agrees that until such time as all DIP Obligations and all Prepetition Secured Obligations have been irrevocably paid in full in cash (or other arrangements for payment of thereof satisfactory to the DIP Lenders and Prepetition Secured Parties, as applicable, in their sole and exclusive discretion, have been made) and the DIP Credit Agreement has been terminated in accordance with the terms thereof, the Debtors shall not (unless otherwise agreed to in writing by the DIP Agent and the DIP Lenders, each in their sole respective discretion) in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Agent by offering a subsequent lender or a party-in-interest a superior or *pari passu* Lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.  For the avoidance of doubt, nothing contained herein shall prejudice the rights of any of the Prepetition Secured Parties to contest the adequacy of any adequate protection offered, or to seek any other form of adequate protection, in connection with any such priming postpetition financing.

### V.Other Rights and Obligations

**A.**    **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order**

74.    Notwithstanding any modification, amendment, or vacation of any or all of the provisions of this Final Order, any claim or protection granted to the DIP Agent, DIP Lenders and/or the Prepetition Secured Parties hereunder arising prior to the effective date of such modification, amendment, or vacation of any such claim or protection granted to the DIP Agent, the DIP Lenders, or Prepetition Secured Parties shall be governed in all respects by the original provisions of the Interim Orders and this Final Order, and the DIP Agent, the DIP Lenders, and Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges, and benefits, including the DIP Protections and Adequate Protection granted herein, with respect to any such claim, including those found under section 364(e) of the Bankruptcy Code.

B.    **Prepetition Secured Parties', DIP Agent's, and DIP Lenders' Expenses**

75.    All reasonable out-of-pocket costs and expenses of the Prepetition Secured Parties, the DIP Agent, and the DIP Lenders, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees and disbursements, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement obligations with respect to fees and expenses, and other out of pocket expenses (whether incurred prior to, on or after the Petition Date), whether or not contained in the Approved Budget and without limitation with respect to the dollar estimates contained in the Approved Budget (provided, however, that such overages shall not weigh against the Debtors in any testing related to compliance with the Approved Budget), shall promptly be paid by the Debtors.  Payment of such fees shall not be subject to allowance by this Court; provided, however, the Debtors, the U.S. Trustee, or counsel for the Committee may seek a determination by this Court whether such fees and expenses are reasonable in the manner set forth below.  Under no circumstances shall professionals for the DIP Agent, the DIP Lenders, and/or the other Prepetition Secured Parties be required to comply with the Court's and/or U.S. Trustee's fee guidelines or file applications or motions with, or obtain approval of, the Court for the payment of any of their out-of-pocket costs, fees, expenses, disbursements and other charges; provided, however, the DIP Agent, the DIP Lenders, and/or the Prepetition Secured Parties shall provide the Debtors, the U.S. Trustee, and the Committee with a copy of the invoice summary, for professional fees and expenses incurred during the pendency of the Chapter 11 Cases.  Each such invoice summary shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine.  If the Debtors, U.S. Trustee or the Committee object to the reasonableness of the invoice summary submitted by the DIP Agent, the DIP Lenders, and/or the Prepetition Secured Parties, and the parties cannot resolve such objection within ten (10) days of receipt of such invoice summary, the Debtors, U.S. Trustee or the Committee, as the case

may be, shall file with the Court and serve on the applicable DIP Agent, DIP Lender, or Prepetition Secured

Party an objection (a "***Fee Objection***") limited to the issue of reasonableness of such fees and expenses.

The Debtors shall promptly pay the amounts set forth in any submitted invoice summary after the expiration

of the ten (10) day notice period if no Fee Objection is received in such ten (10) day period.  If a Fee

Objection is timely received, the Debtors shall promptly pay the undisputed amount only of any invoice

summary that is the subject of such Fee Objection, and the Court shall have jurisdiction to determine the

disputed portion of such invoice summary if the parties are unable to resolve the Fee Objection.  Payments

of any amounts set forth in this paragraph are not subject to recharacterization, avoidance, subordination or

disgorgement.  Notwithstanding anything to the contrary contained herein, the aggregate amount of

reasonable and documented fees and expenses paid to or for the benefit of the Prepetition Secured Parties

pursuant to Paragraphs 12 and 21 hereof shall not exceed $1.1 million (inclusive of the amounts held in the

Prepetition Indemnity Account), irrespective of whether there is a Challenge Proceeding.

**C.**     **<u>Binding Effect</u>**

76.     The provisions of the Interim Orders and this Final Order shall be binding upon and inure

to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Debtors, and their

respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal

representative of the Debtors or with respect to the property of the estates of the Debtors), the Committee,

and any other statutory committee (subject to the provisions of Paragraphs 46-52 hereof), whether in the

Chapter 11 Cases, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 case.

**D.**     **<u>No Third Party Rights</u>**

77.     Except as explicitly provided for herein, this Final Order does not create any rights for the

benefit of any third party, creditor, equity holder, or any direct, indirect or incidental beneficiary, other than

the Debtors, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties.

**E.**     **<u>No Marshaling</u>**

78.     The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not be subject

to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP

49

Collateral or Prepetition Collateral, as applicable; provided, that the Prepetition Secured Parties hereby waive any such "marshaling" or rights under any other similar doctrine with respect to any of the DIP Collateral unless and until the DIP Obligations are indefeasibly paid in full.

**F.    Section 552(b) of the Bankruptcy Code**

79.    The Prepetition Secured Parties (and, to the extent applicable, the DIP Parties) shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the Debtors and/or any successors thereto shall not assert that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall apply to the Prepetition Secured Parties (and, to the extent applicable, the DIP Parties) with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral or the DIP Collateral.

**G.    Amendments**

80.    The Debtors and the DIP Agent may amend, modify, supplement, or waive any provision of the DIP Financing Agreements without further approval of this Court; provided, however, that notice of any "material" amendment, modification, supplement, or waiver shall be filed with this Court, and the Committee, the Prepetition Secured Parties, and the U.S. Trustee, each shall have five (5) business days from the date of such filing within which to object in writing to such proposed amendment, modification, supplement, or waiver; provided, further, that if the Committee, the U.S. Trustee, or any Prepetition Secured Party timely objects to any material amendment, modification, supplement, or waiver, then such amendment, modification, supplement, or waiver shall only be permitted pursuant to an order of this Court after notice and a hearing.  For purposes of this Paragraph 80, a "material" amendment means: any amendment, modification, supplement, or waiver that (i) increases the interest rate (other than as a result of the imposition of the Default Rate), (ii) increases the committed amounts under the DIP Credit Agreement, (iii) changes the maturity date of the DIP Facility to a date sooner than that which is provided under the DIP Credit Agreement and this Final Order as of the date hereof, (iv) amends any Event of Default under the DIP Credit Agreement to make same more restrictive than exists as of the date hereof, (v) revises any Milestone set forth in the DIP Credit Agreement in a manner that reduces or shortens the time periods

50

provided for in the DIP Credit Agreement, or (vi) otherwise modifies any of the DIP Financing Agreements in a manner adverse and/or less favorable to the Debtors. All amendments, modifications, supplements, or waivers of any of the provisions hereof shall not be effective unless set forth in writing, signed by on behalf of the Debtors, the DIP Agent and, if required, approved by this Court. Notwithstanding anything in this Paragraph 80 to the contrary, the Debtors and the DIP Agent shall not amend, modify, supplement, or waive any provision of the DIP Financing Agreements that provides for repayment in full of the Prepetition Secured Debt on or before August 15, 2019 at 2:00 pm (New York time).

**H.    Limits on Lender Liability**

81.     Nothing in the Interim Orders, this Final Order, any of the DIP Financing Agreements, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses, whether before or after the Petition Date, or in connection with the administration of these Chapter 11 Cases. The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not, solely by reason of having made, or consented to the making of, loans under the DIP Facility, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute). Nothing in the Interim Orders, this Final Order, and/or the DIP Financing Agreements, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of the Debtors.

**I.    Survival of Interim Order**

82.     The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:

(a)     confirming any Plan in the Chapter 11 Cases,

(b)     converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code,

(c)     dismissing the Chapter 11 Cases,

(d)     withdrawing of the reference of the Chapter 11 Cases from this Court, or

(e)     providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Cases in this Court.

83.     The terms and provisions of this Final Order, including any protections granted the DIP Parties and the Prepetition Secured Parties and the DIP Protections granted pursuant to this Final Order, shall continue in full force and effect notwithstanding the entry of any order described in Paragraph 82 hereof, and such DIP Protections and protections for the DIP Parties and the Prepetition Secured Parties shall maintain their priority as provided by the Interim Orders and this Final Order until all of the DIP Obligations of the Debtors to the DIP Lenders pursuant to the DIP Credit Agreement have indefeasibly been paid in full in cash and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms) and, with respect to any protections granted to the Prepetition Secured Parties herein, until the Indemnity Termination Date has occurred.

**J.     Inconsistency**

84.     Up to the entry of this Final Order, in the event of any inconsistency between the Interim Orders (as applicable), on the one hand, and the terms and conditions of the DIP Credit Agreement, the DIP Financing Agreements, or the other DIP Financing Agreements, on the other hand, the provisions of the Interim Orders (as applicable) shall govern and control. Upon the entry of this Final Order, in the event of any inconsistency between this Final Order, on the one hand, and the terms and conditions of the DIP Credit Agreement, the DIP Financing Agreements, or the other DIP Financing Agreements, on the other hand, the provisions of this Final Order shall govern and control.

**K.     Enforceability**

85.     This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon entry by the Court

of this Final Order.  To the extent that any finding of fact shall be determined to be a conclusion of law, it

shall be so deemed and vice versa.

**L.**      **Objections Overruled**

86.     All objections to the DIP Motions to the extent not withdrawn or resolved, are hereby

overruled.

**M.**      **Waiver of Any Applicable Stay**

87.     Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is

hereby waived and shall not apply to this Final Order.

**N.**      **Proofs of Claim**

88.     The Prepetition Secured Parties and the DIP Parties will not be required to file proofs of

claim or any request for payment of an administrative expense in the Chapter 11 Cases or in any Successor

Case in order to maintain their respective claims for payment of the Prepetition Secured Obligations under

the Prepetition Financing Documents, for payment and performance of the Adequate Protection, for

payment of any claim granted in the Interim Orders and/or this Final Order, and/or for payment of the DIP

Obligations under the DIP Financing Agreements.  The statements of claim in respect of the Prepetition

Secured Obligations, Adequate Protection, and DIP Obligations set forth in the Interim Orders and this

Final Order, together with the evidence accompanying the DIP Motions and presented at the Interim

Hearings and/or Final Hearing are deemed sufficient to and do constitute proofs of claim (and requests for

payment of an administrative expense) in respect of such obligations and such secured status.

Notwithstanding any order entered by this Court in relation to the establishment of a bar date for filing a

claim (including without limitation, administrative claims) in any of the Chapter 11 Cases or in any

Successor Case to the contrary, the Prepetition ABL Agent, on behalf and for the benefit of the Prepetition

Secured Parties, (i) is hereby authorized and entitled, in its sole discretion, but not required, to file (and

amend and/or supplement, as it sees fit) a single, master consolidated proof of claim in respect of the

Prepetition Secured Obligations (including, without limitation, in respect of all guarantees by any of the

Debtors of such Prepetition Secured Obligations), the Adequate Protection, and any claim granted in the

Interim Orders and/or this Final Order, in the Debtors' lead Chapter 11 Case, *In re Barneys New York, Inc., et al.* (Case No. 19- 36300 (CGM)), which master proof of claim shall be deemed a valid, timely and properly filed proof of claim against each applicable Debtor in the Chapter 11 Cases and/or in any Successor Case and (ii) shall not be required to file any agreements, documents, or other instruments evidencing such Prepetition Secured Debt, Adequate Protection and/or any claim granted in the Interim Orders and/or this Final Order with such master proof of claim. Any master proof of claim filed by the Prepetition ABL Agent shall be deemed to be in addition to, and not in lieu of, any other proof of claim that may be filed by any of the other Prepetition Secured Parties at such party's election; provided that no such Prepetition Secured Party is required to file any such proof of claim.  Notwithstanding anything to the contrary herein, the Debtors reserve the right to estimate or object to the quantum of any contingent, unliquidated Prepetition Secured Obligation, including the Prepetition Indemnity Obligations (if any), or Adequate Protection.

**O.     Provisions Regarding Certain Leases**

89.     With respect to those certain real property leases related to the Madison Avenue and Beverly Hills store locations, the Debtors shall either (x) assume both of the leases or (y) reject both of the leases contemporaneously, as the case may be.

**P.     Headings**

90.     The headings in this Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Final Order.

**Q.     Retention of Jurisdiction**

91.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**R.     Comenity**

92.     Comenity Capital Bank's ("Comenity") rights of setoff, and/or recoupment with respect to the Credit Card Program Agreement between Comenity Capital Bank and Barney's, Inc. dated as of March 8, 2013, as amended from time to time (the "Program Agreement"): (i) shall not be affected, modified, waived, primed, subordinated, or impaired in any way by this Final Order, (ii) shall not be made subject to,

subordinated by, or pari passu with any (x) secured financing, security interests, or liens and/or (y) super priority, administrative, or adequate protection claims. Notwithstanding anything contained in this subsection to the contrary, nothing herein is intended to expand the rights or privileges set out by the Credit Card Program Agreement or applicable law, or to otherwise alter or affect the relative rights and priorities of the Prepetition Secured Parties and Comenity that existed on the Petition Date

93.    Comenity's right to use the Debtors' trademarks, service marks, and/or other rights pertaining to the Debtors' names as set forth in the Program Agreement: (i) shall not be affected, modified, waived, primed, subordinated, or impaired in any way by this Final Order, (ii) shall not be made subject to, subordinated by, or pari passu with any (x) secured financing, security interests, or liens, and/or (y) super priority, administrative, or adequate protection claims. Notwithstanding anything contained in this subsection to the contrary, nothing herein is intended to expand the rights or privileges set out by the Credit Card Program Agreement or applicable law, or to otherwise alter or affect the relative rights and priorities of the Prepetition Secured Parties and Comenity that existed on the Petition Date.

94.    All of Comenity's rights, remedies, claims, defenses, and other relief arising from or related to the Program Agreement (including, but not limited to, those set forth in paragraphs 92 and 93 of this Final Order are expressly preserved and reserved.

**S.    LVMH**

95.    The Debtors and the DIP Parties have reviewed and intend to execute that certain Master Sales Agreement with certain subsidiaries of LVMH Moët Hennessy - Louis Vuitton SE.



**/s/ Cecelia G. Morris**
_____
**Dated: September 5, 2019**                    **Hon. Cecelia G. Morris**
      **Poughkeepsie, New York**          **Chief U.S. Bankruptcy Judge**