Robert J. Feinstein, Esq.
Bradford J. Sandler, Esq.
John A. Morris, Esq.
Colin R. Robinson, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY  10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777

Maxim B. Litvak, Esq.
Shirley S. Cho, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760

*Proposed Counsel to the Official Committee
of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) ) ) | Case No. 19-36300 (CGM) |
| Debtors. | ) ) ) | (Jointly Administered) |

### NOTICE OF PRESENTMENT OF APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF BARNEYS NEW YORK, INC., ET AL., AUTHORIZING THE EMPLOYMENT AND RETENTION OF ALIXPARTNERS, LLP AS ITS FINANCIAL ADVISOR *NUNC PRO TUNC* TO AUGUST 15, 2019

**PLEASE TAKE NOTICE** that upon the *Application of the Official Committee of Unsecured Creditors of Barneys New York, Inc., et al., Authorizing the Employment and Retention of AlixPartners, LLP as its Financial Advisor Nunc Pro Tunc to August 15, 2019* (the "**Application**"), the Official Committee of Unsecured Creditors of Barneys New York, Inc., *et al.*, will present to the Honorable Cecelia G. Morris, Chief United States Bankruptcy Judge, for signature, on **September 26, 2019 at 12:00 p.m. (Eastern Time)**, the proposed *Order Authorizing*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

*and Approving the Employment and Retention of AlixPartners, LLP as its Financial Advisor Nunc*

*Pro Tunc to August 15, 2019* attached to the Motion as <u>Exhibit A</u>.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections ("**Objections**") to the Application shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399, so as to be so filed and received no later than **September 25, 2019 at 4:00 p.m. (Prevailing Eastern Time)** (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that if an Objection to the Application is not filed and served by the Objection Deadline, the Bankruptcy Court may enter an order granting the relief sought without a hearing.

Dated:  September 11, 2019

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Bradford J. Sandler*
Robert J. Feinstein, Esq.
Bradford J. Sandler, Esq.
John A. Morris, Esq.
Colin R. Robinson, Esq.
780 Third Avenue, 34th Floor
New York, NY  10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777

Maxim B. Litvak, Esq.
Shirley S. Cho, Esq.
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067

Telephone:  (310) 277-6910
Facsimile:   (310) 201-0760

*Proposed Counsel to the Official Committee of Unsecured Creditors*

- 3 -

Robert J. Feinstein, Esq.                    Maxim B. Litvak, Esq.
Bradford J. Sandler, Esq.                    Shirley S. Cho, Esq.
John A. Morris, Esq.                         PACHULSKI STANG ZIEHL & JONES LLP
Colin R. Robinson, Esq.                      10100 Santa Monica Blvd., 13th Floor
PACHULSKI STANG ZIEHL & JONES LLP            Los Angeles, CA 90067
780 Third Avenue, 34th Floor                 Telephone: (310) 277-6910
New York, NY 10017                           Facsimile: (310) 201-0760
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

*Proposed Counsel to the Official Committee*
*of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF ALIXPARTNERS, LLP AS ITS FINANCIAL ADVISOR *NUNC PRO TUNC* TO AUGUST 15, 2019

The Official Committee of Unsecured Creditors (the "**Committee**") of Barneys New York, Inc., *et al.* (the "**Debtors**"), appointed pursuant to sections 1102 of title 11 of the United States Code (the "**Bankruptcy Code**") hereby submits this application (the "**Application**") for the entry of an order pursuant to sections 328(a) and 1103 of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), authorizing the Committee to retain and employ AlixPartners, LLP ("**AlixPartners**") as its

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819). The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

financial advisor, *nunc pro tunc* to August 15, 2019. In support of this Application, the Committee

has filed the declaration of David MacGreevey (the "**MacGreevey Declaration**") attached hereto

as <u>Exhibit B</u>, and respectfully represents as follows:

## JURISDICTION

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and

1334. Venue of these proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory

and rule predicates for the relief sought by this Application are sections 328(a) and 1103(a) of the

Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-1.

## FACTUAL BACKGROUND

2. On August 6, 2019 (the "**Petition Date**"), the Debtors commenced their chapter 11

cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors

are authorized to continue operating their businesses and managing their properties as debtors-in-

possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner

has been requested or appointed in the Debtors' chapter 11 cases.

3. On August 15, 2019, pursuant to Bankruptcy Code section 1102(a)(1), the United

States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed the

Committee, as amended on August 16, 2019 [Docket Nos.131 and 134]. The Committee currently

comprises the following seven (7) members: (i) Simon Property Group, L.P.; (ii) Flagship 660

Owner LLC & Flagship Partners II LLC.; (iii) PRADA USA Corp.; (iv) New York-New Jersey

Regional Joint Board, affiliated with Workers United; (v) Hilldum Corporation; (vi) Chloe, a

division of Richemont North America, Inc.; and (vii) CSS Building Services.

4. Also on August 15, 2019, the Committee selected Pachulski Stang Ziehl & Jones

("**PSZJ**") to serve as its counsel, subject to Court approval.

5.    On August 15, 2019 (the "**Retention Date**"), the Committee selected AlixPartners to serve as its financial advisor effective as of the Retention Date, subject to Court approval.

6.    The engagement letter (the "**Engagement Letter**") providing the terms and conditions of the Committee's proposed retention of AlixPartners, *nunc pro tunc* to the Retention Date, is attached hereto as Exhibit C.

## RELIEF REQUESTED

7.    By this Application, the Committee seeks the entry of the proposed order (the "**Proposed Order**") attached hereto as Exhibit A, authorizing and approving the retention and employment of AlixPartners as its financial advisor, pursuant to sections 328 and 1103 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1, and in accordance with the terms and conditions set forth in this Application, the Engagement Letter and the Proposed Order, effective as of the Retention Date.

8.    Section 328(a) of the Bankruptcy Code empowers a committee appointed under section 1102 of the Bankruptcy Code, with the Court's approval, to employ professionals on any reasonable terms and conditions of employment to perform services for the Committee in the discharge of such Committee's duties.

## ALIXPARTNERS' QUALIFICATIONS

9.    AlixPartners is an internationally recognized restructuring and turnaround firm that has a wealth of experience in providing financial advisory services and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

10.    AlixPartners is well qualified to serve as a financial advisor to the Committee. AlixPartners' has assisted, advised, and provided strategic advice to debtors, creditors,

- 3 -

bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to the Debtors' chapter 11 cases. Its professionals have provided restructuring or crisis management services in numerous large cases, including recent filings in this district. See, e.g., *In re Fusion Connect, Inc.*, Case No. 19-11811 (SMB) (Bankr. S.D.N.Y. Aug. 5, 2019); *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. May 16, 2019); *In re Fullbeauty Brands Holdings Corp.*, Case No. 19-22185 (RDD) (Bankr. S.D.N.Y. March 8, 2019); *In re* Ditech Holding Corporation, Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. March 25, 2019); *In re* Aegean Marine Petroleum Network Inc., Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Jan. 17, 2019); *In re Pacific Drilling S.A.*, Case No. 17-13193 (MEW) (Bankr. S.D.N.Y. Dec. 14, 2017); *In re CGG Holdings (U.S.) Inc.*, Case No. 17-11637 (MG) (Bankr. S.D.N.Y. July 14, 2017); *In re Westinghouse Electric Company, LLC,* Case No. 17-10751 (MEW) (Bankr. S.D.N.Y. June 6, 2017); *In re BCBG Max Azria Global Holdings*, Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Ultrapetrol (Bahamas) Limited*, Case No. 17-22168 (RDD) (Bankr. S.D.N.Y. Mar. 7, 2017).

11.     The Committee requires the services of AlixPartners to provide financial advisory and bankruptcy consulting services, as further detailed below. The Committee is familiar with the professional standing and reputation of AlixPartners. The Committee understands and recognizes that AlixPartners has a wealth of experience in providing financial advisory services in restructurings and reorganizations across the United States and has exemplary qualifications to perform the services required by the Committee in these cases. AlixPartners is able to represent the Committee in a cost-effective, efficient and timely manner and has been performing such services since the Retention Date.

DOCS_NY:39592.2 07982/002

## ALIXPARTNERS' DISINTERESTEDNESS

12.     To the best of the Committee's knowledge, information, and belief and except to the extent disclosed herein and in the MacGreevey Declaration, AlixPartners: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) has no connection with the Debtors, their creditors, or other parties in interest, or the attorneys or accountants of the foregoing, or the U.S. Trustee or any person employed in the Office of the U.S. Trustee; and (c) does not hold any interest adverse to the Committee.

13.     To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of AlixPartners' retention are discovered or arise, the Committee is advised that AlixPartners will use reasonable efforts to file promptly a supplemental declaration.

## SCOPE OF SERVICES

14.     AlixPartners has begun to provide assistance to the Committee in accordance with the terms and conditions set forth in the MacGreevey Declaration and in the Engagement Letter.

15.     AlixPartners will work closely with PSZJ to ensure that there will be no duplication of efforts or unnecessary overlap in the services to be provided by AlixPartners and those that have been provided or which will be provided by the Committee's other professionals.  It is presently anticipated that AlixPartners will provide advice to and assist the Committee in evaluating and implementing strategic and tactical options through the bankruptcy and restructuring process. A general list of tasks AlixPartners may perform is as follows:

- Review and evaluate the Company's current financial condition, business plans and cash and financial forecasts, and periodically report to the Committee regarding the same.

- Review the Company's cash management, tax sharing and intercompany accounting systems, practices and procedures.

- Review and investigate: (i) related party transactions, including those between the Company and affiliates (including, but not limited to, shared services expenses and tax allocations) and (ii) selected other pre-petition transactions.

- Identify and/or review potential preference payments, fraudulent conveyances and other causes of action that the various Company estates may hold against third parties, including each other.

- Analyze the Company's assets and claims, and assess potential recoveries to the various creditor constituencies under different scenarios.

- Evaluate the Company's proposed sale process and any related bids and participate in any meetings with bidders or auction, as required.

- Assist in the development and/or review of the Company's plan of reorganization and disclosure statement.

- Review and evaluate court motions filed or to be filed by the Company or any other parties-in-interest, as appropriate.

- Render expert testimony and litigation support services, including e-discovery services, as requested from time to time by the Committee and its counsel, regarding any of the matters to which AlixPartners is providing services.

- Attend Committee meetings and court hearings as may be required in the role of advisors to the Committee.

- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

16.    AlixPartners' decision to accept this engagement to advise and assist the Committee is contingent upon its ability to be retained in accordance with the terms and conditions of employment set forth in the Engagement Letter, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, including any indemnification provisions outlined in the Engagement Letter, as modified by the Proposed Order to comply with the practices and requirements of this Court.

- 6 -

## TERMS OF RETENTION AND COMPENSATION

17.     AlixPartners is not owed any amounts with respect to prepetition fees and expenses in connection with these cases.

18.     The MacGreevey Declaration and the Engagement Letter set forth the terms and conditions of AlixPartners' employment, its staffing and approach, and its billing practices. AlixPartners has requested that the Committee seek this Court's approval of such matters with the filing of this Application.

19.     AlixPartners charges fees based on actual hours expended to perform its services at standard hourly rates established for each employee, as adjusted annually.  It is the customary practice of AlixPartners to bill clients for travel time consistent with guidelines of the jurisdiction. For this jurisdiction, therefore, AlixPartners will apply a 50% discount rate to non-working travel time billed.  Fees reflect economies resulting from the use of paraprofessional and support personnel to develop schedules and analyses, input computer data, perform research, work on fee applications, and other activities necessary to the efficient administration of a case.  Billing rates are generally representative of prevailing market rates, as awarded by other courts in similar circumstances, based on the customary compensation charged by comparably skilled practitioners in bankruptcy and non-bankruptcy engagements. Subject to this Court's approval, and as described in the MacGreevey Declaration and Engagement Letter, the Committee requests that AlixPartners be entitled to receive compensation at its normal hourly rates.

20.     AlixPartners will also maintain records in support of any fees (in 1/10th of an hour increments), costs, and expenses incurred in connection with services rendered in these chapter 11 cases.  Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Debtors.

- 7 -

21.    AlixPartners does not seek a success fee in connection with this engagement.

22.    AlixPartners' current standard hourly rates for 2019, subject to periodic adjustments, are as follows:

| Title | Hourly Rate |
|---|---|
| Managing Director | $990 – $1,165 |
| Director | $775 – $945 |
| Senior Vice President | $615 – $725 |
| Vice President | $440 – $600 |
| Consultant | $160 – $435 |
| Paraprofessional | $285 – $305 |

23.    AlixPartners reviews and revises its billing rates on January 1 of each year. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

24.    In addition to compensation for professional services rendered by AlixPartners' Personnel, AlixPartners will seek reimbursement for reasonable and necessary expenses incurred in connection with these chapter 11 cases, including transportation costs, lodging, and meals. Expenses will be billed at actual cost.

25.    To the extent AlixPartners requires services of its international divisions or personnel from specialized practices, the standard hourly rates for that international division or specialized practice will apply.

26.    To the extent AlixPartners uses the services of independent contractors (the "**Contractors**") in these chapter 11 cases, AlixPartners shall:  (a) pass through the cost of such Contractors to the Debtors at the same rate that AlixPartners pays the Contractors; (b) seek

- 8 -

reimbursement for actual costs only; (c) ensure that the Contractors are subject to the same conflict checks as required for AlixPartners; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

27.    AlixPartners intends to apply to the Court for allowance of compensation and reimbursement of expenses, including on a monthly, interim and final basis, pursuant to 11 U.S.C. § 330, Bankruptcy Rule 2016, Local Rule 2016-1, the *Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York*, updated June 17, 2013 (the "**Local Guidelines**"), any order establishing procedures for interim compensation and reimbursement of expenses for retained professionals entered by this Court in these cases, and any other applicable orders of the Court or provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

28.    Neither PSZJ, the members of the Committee, nor any of their agents are or shall be responsible for the payment of AlixPartners' fees and costs arising out of the engagement described and referenced herein, regardless of whether or not AlixPartners is paid in full from the Debtors' estates.

29.    AlixPartners negotiated the terms and conditions of the Engagement Letter at arm's length and in good faith.  Notwithstanding anything to the contrary in the Engagement Letter, AlixPartners has agreed to certain modifications to its standard indemnification and limitations on liability provisions as reflected in the Proposed Order attached hereto as Exhibit A.  The Committee and AlixPartners believe that the indemnification language proposed therein complies with this Court's requirements for similar engagements of other professionals in these chapter 11 cases.  AlixPartners has been retained with similar or more expanded indemnification language in other representations in this district and other jurisdictions.

- 9 -

## NOTICE

30.    Notice of this Application has been provided to: (i) the Debtors, Barneys New York, Inc., 575 Fifth Avenue, New York, New York 10017 (Attn: Grace Fu); (ii) proposed co-counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022 (Attn: Edward O. Sassower, P.C. and Joshua A. Sussberg, P.C.), Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654 (Attn: Chad J. Husnick, P.C. and W. Benjamin Winger), and Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, New York 10022 (Attn: Steven J. Reisman); (iii) the United States Trustee, 11A Clinton Avenue, Room 620, Albany, New York 12207 (Attn: Alicia Leonhard); (iv) counsel to the DIP Agent and the DIP Lenders, Jones Day, 250 Vesey Street, New York, New York 10281 (Attn: Sidney P. Levinson, Michael Schneidereit, and Jeremy Evans); and (v) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  The Committee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

31.    No previous application for the relief requested herein has been made to this or any other Court.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

DOCS_NY:39592.2 07982/002

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court enter an order substantially in the form attached hereto as Exhibit A, granting the relief requested herein as well as such other and further relief as the Court deems just and proper.

Date: September 11, 2019

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF BARNEYS
NEW YORK, INC., *et al.*

Simon Property Group, L.P.
By: Ronald M. Tucker

Solely in its capacity as Chair of the Official
Committee of Unsecured Creditors of Barneys New
York, Inc., *et al.*, and not in any other capacity

Filed By:

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Bradford J. Sandler*
Bradford J. Sandler
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email:    bsandler@pszjlaw.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

- 11 -

## **Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| BARNEYS NEW YORK, INC., *et al.*,[1] | Case No. 19-36300 (CGM) |
| Debtors. | (Jointly Administered) |

### ORDER AUTHORIZING THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO EMPLOY AND RETAIN ALIXPARTNERS, LLP AS ITS FINANCIAL ADVISOR *NUNC PRO TUNC* TO AUGUST 15, 2019

Upon the application (the "**Application**") of the Official Committee of Unsecured Creditors (the "**Committee**")[2] appointed in the chapter 11 cases of the above-captioned Debtors and Debtors-in-possession (the "**Debtors**") for entry of an order (the "**Order**"), pursuant to sections 328(a) and 1103 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), authorizing the Committee to employ and retain AlixPartners, LLP ("**AlixPartners**" or the "**Firm**") as the Committee's financial advisor, *nunc pro tunc* to August 15, 2019; and upon the Declaration of David MacGreevey (the "**MacGreevey Declaration**"), which is annexed to the Application; and it appearing that this Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of this case and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper

notice of the Application having been provided, and it appearing that no other or further notice

need be provided; and it appearing that AlixPartners is "disinterested" and eligible for retention

pursuant to sections 101(14) and 328(c) of the Bankruptcy Code, the terms of the engagement

pursuant to the Engagement Letter and as modified herein, are reasonable and appropriate and this

Court having determined that the relief requested in the Application is in the best interests of the

Debtors, their estates, their creditors and other parties-in-interest; and after due deliberation, and

sufficient cause appearing therefor, it is hereby ORDERED that:

1.      The Application is APPROVED solely to the extent set forth herein.

2.      In accordance with sections 328(a) and 1103 of the Bankruptcy Code, the

Committee is authorized to employ and retain AlixPartners as its financial advisor in connection

with these chapter 11 cases *nunc pro tunc* to August 15, 2019, under the terms and for the purposes

set forth and as requested in the Application, the MacGreevey Declaration and the Engagement

Letter, as modified herein.

3.      AlixPartners is authorized to perform the services enumerated in the Application,

the MacGreevey Declaration and the Engagement Letter.  The terms of the Engagement Letter are

approved, and the Debtors shall be bound by such terms.  AlixPartners shall be compensated for

the services identified in the Application, the MacGreevey Declaration and the Engagement Letter

and reimbursed for out-of-pocket expenses incurred in connection with such services, pursuant to

section 328(a) of the Bankruptcy Code.

4.      AlixPartners' fees for services will be based on AlixPartners' standard hourly rates,

plus reasonable and necessary expenses, as set forth in the Application, the MacGreevey

Declaration and the Engagement Letter.  AlixPartners shall be compensated in accordance with

and will file reports of compensation earned and expenses incurred on a monthly basis (the "**Monthly Statements**"), as well as interim and final fee applications for allowance of its compensation and expenses in accordance with the *United States Trustee Fee Guidelines*, *effective January 30, 1996* (the "**Fee Guidelines**") and the Interim Compensation Procedures Order, and shall be subject to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Local Guidelines.

5.       Notwithstanding anything to the contrary in the Engagement Letter, the Application or the MacGreevey Declaration, the Debtors are authorized to indemnify and hold harmless AlixPartners and its affiliates, their respective directors, officers, agents, employees and controlling persons, and each of their respective successors and assigns (collectively, the "**Indemnified Persons**"), subject to the following conditions:

a) all requests of Indemnified Persons (as defined in the Engagement Letter) for the payment of indemnity, contribution or otherwise pursuant to the Engagement Letter during the pendency of these chapter 11 cases shall be made by means of interim and final fee applications filed in accordance with the Bankruptcy Code, the Local Rules, and any order establishing compensation procedures in these cases, and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Engagement Letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Fee Guidelines and the orders of this Court provided, however, that in no event shall any Indemnified Person be indemnified or receive contribution in the case of its own willful misconduct, gross negligence, breach of fiduciary duty, self-dealing and/or bad faith; and

b) in no event shall any Indemnified Person be indemnified or entitled to contribution if the Debtors, or a representative of the estate, their estates or any statutory committee that may be appointed in these chapter 11 cases asserts a claim for, and the Court determines by final order that such claim arose out of willful misconduct, gross negligence, breach of fiduciary duty, self-dealing and/or bad faith on the part of that or any other Indemnified Persons; and

c) in the event that an Indemnified Person seeks reimbursement for attorneys' fees and expenses from the Debtors in connection with the payment of an indemnity claim pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be annexed to AlixPartners' own Monthly Statements, interim and final fee applications, and such invoices and time records shall be

subject to the Fee Guidelines for compensation and reimbursement of expenses and the approval of the Court without regard to whether such attorney has been retained under sections 327 or 1103 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

6.      Notwithstanding anything to the contrary in the Engagement Letter, AlixPartners' liability, including but not limited to lost profits, consequential, indirect, punitive, exemplary or special damages, arising in tort, contract or otherwise, shall not be limited in the case of AlixPartners' own willful misconduct, gross negligence, breach of fiduciary duty, self-dealing and/or bad faith.

7.      The liability cap outlined by Section 11 of the General Terms and Conditions in the Engagement Letter is hereby eliminated for the duration of these chapter 11 cases.

8.      The Committee and AlixPartners are authorized and empowered to take all necessary actions to implement the relief granted in this Order.

9.      This Court shall retain jurisdiction with respect to all matters arising from or related to this Order or AlixPartners' services for the Committee.

10.     AlixPartners shall use reasonable efforts to avoid any duplication of services provided by any of the other retained professionals in these chapter 11 cases.

11.     AlixPartners will not seek to use affiliates, independent contractors, subcontractors or subsidiaries of AlixPartners to perform services under the Engagement Letter without separate Court approval.

12.     To the extent there is an inconsistency between this Order, the Engagement Letter and the Application, the terms of this Order shall govern.

13.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.


Dated:  _____, 2019
        New York, New York


_____
THE HONORABLE CECELIA G. MORRIS
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**


**MacGreevey Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF DAVID MACGREEVEY IN SUPPORT OF THE
APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR ENTRY OF AN ORDER AUTHORIZING
THE EMPLOYMENT AND RETENTION OF ALIXPARTNERS, LLP
AS ITS FINANCIAL ADVISOR *NUNC PRO TUNC* TO AUGUST 15, 2019**

Under 28 U.S.C. § 1746, I, David MacGreevey, declare as follows under the penalty of

perjury:

1.      I am a managing director of AlixPartners, LLP ("**AlixPartners**" or the "**Firm**"),

which has a principal place of business at 909 Third Avenue, Floor 30, New York, New York

10022. Except as otherwise noted,[2] I have personal knowledge of the matters set forth herein.  If

called and sworn as a witness, I could, and would, testify competently to the matters set forth

herein.

2.      This Declaration is being submitted in support of the application (the

"**Application**")[3] filed in connection with the proposed retention of AlixPartners as financial

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

[2] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at AlixPartners and are based on information provided by them

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

advisor for the Official Committee of the Unsecured Creditors (the "**Committee**") appointed in the chapter 11 cases of Barneys New York, Inc., *et al.* (the "**Debtors**").

3.     No previous application for the relief requested herein has been made to this or any other Court.

4.     On August 15, 2019, pursuant to Bankruptcy Code section 1102, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed the Committee, and on August 15, 2019, the Committee selected AlixPartners as its financial advisor with respect to the Debtors' chapter 11 cases, subject to Court approval.

5.     AlixPartners was requested to and began immediately to provide assistance to the Committee as of August 15, 2019.

6.     AlixPartners has begun to provide assistance, as agreed, to the Committee in accordance with the terms and conditions set forth in this Declaration, the Application, and the Engagement Letter, which is appended to the Application as <u>Exhibit C</u> and is incorporated herein by reference.

## **ALIXPARTNERS' QUALIFICATIONS**

7.     AlixPartners is an internationally recognized restructuring and turnaround firm that has a wealth of experience in providing financial advisory services and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

8.     AlixPartners is well qualified to serve as a financial advisor to the Committee. AlixPartners' has assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to the Debtors' chapter 11 cases.  Its professionals have provided restructuring or crisis management services in numerous large cases, including recent filings in this district.  See, e.g.,

*In re Fusion Connect, Inc.*, Case No. 19-11811 (SMB) (Bankr. S.D.N.Y. Aug. 5, 2019); *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. May 16, 2019); *In re Fullbeauty Brands Holdings Corp.*, Case No. 19-22185 (RDD) (Bankr. S.D.N.Y. March 8, 2019); *In re* Ditech Holding Corporation, Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. March 25, 2019); *In re* Aegean Marine Petroleum Network Inc., Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Jan. 17, 2019); *In re Pacific Drilling S.A.*, Case No. 17-13193 (MEW) (Bankr. S.D.N.Y. Dec. 14, 2017); *In re CGG Holdings (U.S.) Inc.*, Case No. 17-11637 (MG) (Bankr. S.D.N.Y. July 14, 2017); *In re Westinghouse Electric Company, LLC,* Case No. 17-10751 (MEW) (Bankr. S.D.N.Y. June 6, 2017); *In re BCBG Max Azria Global Holdings*, Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Ultrapetrol (Bahamas) Limited*, Case No. 17-22168 (RDD) (Bankr. S.D.N.Y. Mar. 7, 2017).

9.      AlixPartners has a wealth of experience in providing financial advisory services in restructurings and reorganizations across the United States and has exemplary qualifications to perform the services required by the Committee in these cases.  AlixPartners is able to represent the Committee in a cost-effective, efficient and timely manner and has been performing such services since the Retention Date.

10.      I, David MacGreevey, the managing director who will be responsible for this engagement, have 20 years of professional experience advising stakeholders on strategic transactions, including restructuring, M&A and capital raises.  I lead AlixPartners' creditor services practice and have advised committees, management teams, boards of directors and investors on over 70 complex transactions across a variety of industries.  I am a graduate of the University of Richmond and a Certified Insolvency and Restructuring Advisor.

## SCOPE OF SERVICES

11.     AlixPartners has begun to provide assistance to the Committee in accordance with the terms and conditions set forth in this declaration and in the Engagement Letter.

12.     AlixPartners will work closely with Pachulski Stang Ziehl & Jones ("**PSZJ**") to ensure that there will be no duplication of efforts or unnecessary overlap in the services to be provided by AlixPartners and those that have been provided or which will be provided by the Committee's other professionals.  It is presently anticipated that AlixPartners will provide advice to and assist the Committee in evaluating and implementing strategic and tactical options through the bankruptcy and restructuring process. A general list of tasks AlixPartners may perform is as follows:

- Review and evaluate the Company's current financial condition, business plans and cash and financial forecasts, and periodically report to the Committee regarding the same.

- Review the Company's cash management, tax sharing and intercompany accounting systems, practices and procedures.

- Review and investigate: (i) related party transactions, including those between the Company and affiliates (including, but not limited to, shared services expenses and tax allocations) and (ii) selected other pre-petition transactions.

- Identify and/or review potential preference payments, fraudulent conveyances and other causes of action that the various Company estates may hold against third parties, including each other.

- Analyze the Company's assets and claims, and assess potential recoveries to the various creditor constituencies under different scenarios.

- Evaluate the Company's proposed sale process and any related bids and participate in any meetings with bidders or auction, as required.

- Assist in the development and/or review of the Company's plan of reorganization and disclosure statement.

- Review and evaluate court motions filed or to be filed by the Company or any other parties-in-interest, as appropriate.

- Render expert testimony and litigation support services, including e-discovery services, as requested from time to time by the Committee and its counsel, regarding any of the matters to which AlixPartners is providing services.

- Attend Committee meetings and court hearings as may be required in the role of advisors to the Committee.

- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

13.     AlixPartners' decision to accept this engagement to advise and assist the Committee is contingent upon its ability to be retained in accordance with the terms and conditions of employment set forth in the Engagement Letter, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, including any indemnification provisions outlined in the Engagement Letter, as modified by the Proposed Order to comply with the practices and requirements of this Court.

## TERMS OF RETENTION AND COMPENSATION

14.     AlixPartners is not owed any amounts with respect to prepetition fees and expenses in connection with these cases.

15.     This Declaration and the Engagement Letter set forth the terms and conditions of AlixPartners' employment, its staffing and approach, and its billing practices.  AlixPartners has requested that the Committee seek this Court's approval of such matters with the filing of this Application.

16.     AlixPartners charges fees based on actual hours expended to perform its services at standard hourly rates established for each employee, as adjusted annually.  It is the customary practice of AlixPartners to bill clients for travel time consistent with guidelines of the jurisdiction.

For this jurisdiction, therefore, AlixPartners will apply a 50% discount rate to non-working travel time billed. Fees reflect economies resulting from the use of paraprofessional and support personnel to develop schedules and analyses, input computer data, perform research, work on fee applications, and other activities necessary to the efficient administration of a case. Billing rates are generally representative of prevailing market rates, as awarded by other courts in similar circumstances, based on the customary compensation charged by comparably skilled practitioners in bankruptcy and non-bankruptcy engagements. Subject to this Court's approval, and as described in this Declaration and Engagement Letter, the Committee requests that AlixPartners be entitled to receive compensation at its normal hourly rates.

17. AlixPartners will also maintain records in support of any fees (in 1/10th of an hour increments), costs, and expenses incurred in connection with services rendered in these chapter 11 cases. Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Committee.

18. AlixPartners does not seek a success fee in connection with this engagement.

19. AlixPartners' current standard hourly rates for 2019, subject to periodic adjustments, are as follows:

| Title | Hourly Rate |
|---|---|
| Managing Director | $990 – $1,165 |
| Director | $775 – $945 |
| Senior Vice President | $615 – $725 |
| Vice President | $440 – $600 |
| Consultant | $160 – $435 |
| Paraprofessional | $285 – $305 |

20.    AlixPartners reviews and revises its billing rates on January 1 of each year. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

21.    In addition to compensation for professional services rendered by AlixPartners' Personnel, AlixPartners will seek reimbursement for reasonable and necessary expenses incurred in connection with these chapter 11 cases, including transportation costs, lodging, and meals. Expenses will be billed at actual cost.

22.    To the extent AlixPartners requires services of its international divisions or personnel from specialized practices, the standard hourly rates for that international division or specialized practice will apply.  To the extent AlixPartners uses the services of independent contractors (the "**Contractors**") in these chapter 11 cases, AlixPartners shall: (a) pass through the cost of such Contractors to the Debtors at the same rate that AlixPartners pays the Contractors; (b) seek reimbursement for actual costs only; (c) ensure that the Contractors are subject to the same conflict checks as required for AlixPartners; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

23.    AlixPartners intends to apply to the Court for allowance of compensation and reimbursement of expenses, including on a monthly, interim and final basis, pursuant to 11 U.S.C. § 330, Bankruptcy Rule 2016, Local Rule 2016-1, the *Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York*, updated June 17, 2013 (the "**Local Guidelines**"), any order establishing procedures for interim compensation and reimbursement of expenses for retained professionals entered by this Court in these cases, and any other applicable orders of the Court or provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

24.    Neither PSZJ, the members of the Committee, nor any of their agents are or shall be responsible for the payment of AlixPartners' fees and costs arising out of the engagement described and referenced herein, regardless of whether or not AlixPartners is paid in full from the Debtors' estates.

25.    AlixPartners negotiated the terms and conditions of the Engagement Letter at arm's length and in good faith.  Notwithstanding anything to the contrary in the Engagement Letter, AlixPartners has agreed to certain modifications to its standard indemnification and limitations on liability provisions as reflected in the Proposed Order attached to the Application as Exhibit A. The Committee and AlixPartners believe that the indemnification language proposed therein complies with this Court's requirements for similar engagements of other professionals in these chapter 11 cases.  AlixPartners has been retained with similar or more expanded indemnification language in other representations in this district and other jurisdictions.

## AlixPartners' Disinterestedness

26.    In connection with its proposed retention by the Committee in these chapter 11 cases, AlixPartners undertook a lengthy review to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to these chapter 11 cases.  Specifically, AlixPartners obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties in interest in these chapter 11 cases ("**Potential Parties in Interest**").  Such parties are listed on Schedule 1 attached hereto. A search was performed for connections to the Potential Parties in Interest as to AlixPartners Holdings, LLP ("**Holdings**"), AlixPartners' parent company, and each of Holdings' U.S. and non-U.S. subsidiaries. Results are disclosed for connections to Potential-Parties-in-Interest.    In addition, an email is sent to all of their professionals inquiring of any potential connections.

27.     Based on that review, AlixPartners represents that, to the best of its knowledge, AlixPartners knows of no fact or situation that would represent a conflict of interest for AlixPartners with regard to these chapter 11 cases.  Unless otherwise noted, references to AP in the disclosures below collectively refer to AlixPartners, Holdings, and each of their subsidiary affiliates.  AlixPartners wishes to disclose the following:

- AlixPartners is a wholly owned subsidiary of AlixPartners Holdings, LLP ("**Holdings**," and together with AlixPartners, "**AP**").  The equity capital of Holdings is owned individually by: (i) the Managing Directors of AlixPartners; (ii) Lakeview Capital Holdings, Inc., the Jay Alix Living Trust and other affiliates of Jay Alix (collectively the "**Lakeview Parties**"); (iii) affiliates of each of (a) Caisse de dépôt et placement du Québec ("**CDPQ**"), (b) Investcorp Bank B.S.C. ("**IVC**"), and (c) Public Sector Pension Investment Board ("**PSP Investments**"); and (iv)  other individuals and trusts.  Neither CDPQ, nor IVC, nor the Lakeview Parties, nor PSP Investments (collectively, the "**Investors**"), nor any Managing Director, other individual or trust separately owns a majority of the equity capital of Holdings directly or indirectly or separately controls the Boards of either Holdings or AlixPartners.  None of the Investors own any of the bank or other debt of AlixPartners.

  CDPQ is an institutional investor that manages funds primarily on behalf of a number of Quebec-based public pension and insurance plans.  As one of Canada's leading institutional fund managers, CDPQ invests globally in major financial markets, private equity, infrastructure and real estate.

  Investcorp is a leading global provider and manager of alternative investment products.  The Lakeview Parties and related entities are entities owned or controlled by Jay Alix that, among other things, make investments on behalf of Mr. Alix and his family.

  PSP Investments is a Canadian Crown corporation established in 1999 to manage employer and employee contributions made after April 1, 2000 to the Canadian Federal Public Service, the Canadian Forces and the Royal Canadian Mounted Police pension funds.  It is also responsible for contributions made after March 1, 2007 to the Canadian Reserve Force Pension Fund.  PSP Investments manages a diversified global portfolio composed of investments in public financial markets, private equity, infrastructure, natural resources, real estate and private debt.

  Designees of the Investors or their subsidiaries serve as some of the members of the Boards of Directors of each of AlixPartners and Holdings (collectively, the "**Boards**").  In addition to their investments in Holdings, all of the Investors have substantial investments unrelated to AP.  Accordingly, as a precautionary matter, AP maintains information barriers designed to prevent confidential client information, including the names of clients likely to be involved in reorganization proceedings under the Bankruptcy Code, from being shared with the Investors or their designees on the Boards.

To that end, no material nonpublic information about the Debtors has been or will be furnished by AP to the Investors, the InvestCos (as defined below) or their Board designees, and AP will continue to abide by its confidentiality obligations to the Debtors. AP operates independently of the Investor Conflicts Parties (as defined below), and does not share employees, officers or other management with any such Investor Conflicts Parties (as defined below). AP and each of the Investor Conflicts Parties have separate offices in separate buildings, use separate Internet email addresses, and do not otherwise share IT systems. No personnel of the Investor Conflicts Parties work on AlixPartners client matters or have access to AlixPartners client information or client files or client personnel. No AP executive or employee is a director, officer or employee of any Investor. Each Investor is governed by its own board of directors or similar body and managed by its own management team. Each Investor is independent of each other Investor.

AlixPartners has searched the names of the Debtors and the list of Potential Parties in Interest against the names of (i) the Investors, (ii) the subsidiaries of the Investors that either hold a direct position in Holdings or hold a direct position in the entity that holds a direct position in Holdings (collectively, the "InvestCos"), and (iii) the subsidiaries of the Investors that hold, directly or indirectly, positions in the respective InvestCos. In addition, AlixPartners has searched and/or will request each Investor to search the names of the Debtors against the companies that the InvestCos have a direct greater than 10% investment in (collectively, with (i) – (iii) the "Investor Conflicts Parties"). AlixPartners has determined, to the best of its knowledge based solely on that search, that there are no connections with the Investor Conflicts Parties that require disclosure other than as noted herein. Because of the information barriers described above, the sheer size of the investment portfolios of the Investor Conflicts Parties, and any applicable securities laws, prior to the Petition Date, AlixPartners was unable to further investigate any potential or actual connections between the Investor Conflicts Parties and the Debtors and the Potential Parties in Interest. To the extent any potential or actual connections are discovered after the Petition Date, if there exists a material connection, AlixPartners will promptly supplement this disclosure. Notwithstanding the foregoing, AlixPartners' conflicts check did not and will not extend to entities owned by mutual funds in which an Investor Conflicts Party has an interest; entities owned by separate accounts managed by non-affiliates for an Investor Conflicts Party; entities owned by private equity funds in which an Investor Conflicts Party has a limited partnership interest managed by non-affiliates (even though the particular Investor Party may be represented on the limited partner advisory board or investor committee and even though the particular Investor Conflicts Party may have a passive interest in the general partner); entities where any of the Investor Conflicts Parties serves as general partner or investment manager holding interests representing, directly or indirectly, 10% or less. Nor does it or will it necessarily include indirect investments, such as businesses owned or investments made by an Investor Conflicts Party's portfolio company(ies), or passive investments held or managed by any of the Investor Conflicts Parties. In addition, because of the sheer size of the investments of the Investors and their respective affiliates and subsidiaries, except as described herein, AlixPartners' conflicts check did not and it will not necessarily include any other affiliates or subsidiaries owned, directly or indirectly, by each Investor, or any investments made by such other affiliates or subsidiaries, nor will it include, to the extent applicable, any depositors of the Investors.

Although AlixPartners has performed a conflicts check of the Investor Conflicts Parties as set forth above, as a result of, among other things, the sheer size of the investments of the Investor Conflicts Parties, one or more of the Investor Conflicts Parties may, in the ordinary course and from time to time, hold, control and/or manage loans to, or investments in, the Debtors and/or Potential Parties in Interest and/or may trade debt and/or equity securities in the Debtors and/or Potential Parties in Interest. In addition, one or more of the Investor Conflicts Parties may also have had, currently have, or may in the future have business relationships or other connections with the Debtors or other Potential Parties in Interest. To the extent AlixPartners learns of material business relationships or other material connections that are not included herein, AlixPartners will promptly file a supplemental disclosure.

Other than as specifically noted herein, AlixPartners has not undertaken to determine the existence, nature, and/or full scope of any business relationships or connections that the Investor Conflicts Parties may have with the Potential Parties in Interest, the Debtors and their affiliates, or these chapter 11 cases.

Further, AlixPartners may have had, currently have or may in the future have business relationships with, among other entities, portfolio companies of the Investors and portfolio companies of private equity funds in which they are limited partners, in matters unrelated to the Debtors or their affiliates in these chapter 11 cases. Based on, among other things, the business separation between each of the Investor Conflict Parties and AlixPartners, the contractual client confidentiality obligations of AlixPartners and the information barriers referred to above, AlixPartners believes that it does not hold or represent an interest adverse to the estate with respect to the engagement.

- Adidas Ag, a vendor to the Debtors, and affiliates ("**Adidas**") are adverse parties, litigation parties, and vendors to current and former AP clients in matters unrelated to the Debtors. Adidas is a current AP client in matters unrelated to the Debtors.

- ADP, a contract party to the Debtors, and affiliates ("**ADP**") are creditors, customers, contract parties, related parties, professionals, and vendors to current and former AP clients in matters unrelated to the Debtors. ADP is a vendor to AP.

- American Express Travel Related Services Company, Inc., a contract party to the Debtors, and affiliates ("**American Express**") are adverse parties, lessors, lienholders, contract parties, related parties, customers, creditors and vendors to current and former AP clients in matters unrelated to the Debtors. American Express is a former employer of current AP employees. American Express is a vendor to AP.

- Aon plc, an insurer to the Debtors, and affiliates ("**Aon**") are bondholders, creditors, litigation parties, contract parties, insurance providers, adverse litigation parties, related parties, professionals, and vendors to current and former AP clients in matters unrelated to the Debtors. Aon is a current and former AP client in matters unrelated to the Debtors. Aon is a former employer of current AP employees. Aon is a vendor to AP.

- Brigade Capital Management, a DIP Party to the Debtors, and affiliates, are adverse parties, bondholders, creditors, investors, lenders, adverse litigation parties, noteholders, related parties, and shareholder to current and former AP clients in matters unrelated to the Debtors.

- Brookfield Property REIT, as Agent, a 2002 party to the Debtors, and affiliates ("**Brookfield**") are creditors, customers, investors, lenders, contract parties, and related parties to current and former AP clients in matters unrelated to the Debtors. Brookfield is a former AP client in matters unrelated to the Debtors.

- Citizens Business Capital, a debt holder to the Debtors, and affiliates ("**Citizens**") are creditors, lenders, banks, litigation parties, and vendors to current and former AP clients in matters unrelated to the Debtors. Citizens is a former AP client in matters unrelated to the Debtors. Citizens is a former employer of a current AP employee.

- Cityview Plaza, LLC, a utility provider to the Debtors, is a subsidiary of a former AP client in matters unrelated to the Debtors.

- CL US Distribution Corporation is a creditor to the Debtors. An affiliate of CL US Distribution Corporation is a current AP client in matters unrelated to the Debtors.

- Con Edison and Consolidated Edison Co, utility providers to the Debtors, and affiliates ("**Con Ed**") are creditors, contract parties, lenders, lessors, related parties, and vendors to current and former AP clients in matters unrelated to the Debtors. Con Ed is a vendor to AP.

- Eversource Energy, a utility provider to the Debtors, and affiliates ("**Eversource**") are vendors and related parties to current and former AP clients in matters unrelated to the Debtors. Eversource is a current AP client in matters unrelated to the Debtors.

- Fedex, a creditor to the Debtors, and affiliates ("**FedEx**") are adverse parties, creditors, customers, contract parties, investors, related parties, and vendors to current and former AP clients in matters unrelated to the Debtors. FedEx is a former employer of a current AP employee. FedEx is a vendor to AP.

- FirstEnergy Solutions Corp., a utility provider to the Debtors, and affiliates ("**FirstEnergy**") are creditors, contract parties, lenders, noteholders, related parties, and vendors to current and former AP clients in matters unrelated to the Debtors. FirstEnergy is a current AP client in matters unrelated to the Debtors.

- Forrest Solutions, a litigation party to the Debtors, is a vendor to AP.

- Givenchy Corporation LVMH, a vendor and creditor to the Debtors, and affiliates ("**LVMH**") are litigation parties, related parties, and parent companies to current and former AP clients in matters unrelated to the Debtors. LVMH is a former AP client in matters unrelated to the Debtors. LVMH is a former employer of a current AP employee.

- Google Inc., a creditor to the Debtors, and affiliates ("**Google**") are adverse litigation parties, creditors, customers, lessees, litigation parties, and vendors to current and former AP clients in matters unrelated to the Debtors.  Google is a former AP client in matters unrelated to the Debtors.

- Gucci c/o Zegna, a vendor to the Debtors, and affiliates ("**Zegna**") are related parties to a current AP client in matters unrelated to the Debtors.  Zegna is a former AP client in matters unrelated to the Debtors.

- Hilco Merchant Services, a DIP party to the Debtors, and affiliates ("**Hilco**"), are associated companies, vendors, shareholders, and professionals to current and former AP clients in matters unrelated to the Debtors.  Hilco is a former AP client in matters unrelated to the Debtors.  Hilco is a former employer of a current AP employee.

- Holland & Knight LLC, a contract party to the Debtors, is an adverse litigation party, counsel, related party, professional, and vendor to current and former AP clients in matters unrelated to the Debtors.  Holland & Knight LLC is a current and former AP client in matters unrelated to the Debtors.

- Houlihan Lokey, Inc., a professional to the Debtors, and affiliates, ("**Houlihan**") are creditors, contract parties, financial advisors, bankers, lenders, related parties, professionals, and vendors to current and former AP clients in matters unrelated to the Debtors.  Houlihan is a former employer of current AP employees.  Houlihan is a vendor to AP.

- Iron Mountain Secure Shredding, Inc., a contract party to the Debtors, and affiliates ("**Iron Mountain**") are bondholders, creditors, customers, contract parties, lessors, related parties, professionals, and vendors to current and former AP clients in matters unrelated to the Debtors. Iron Mountain is a current and former AP client in matters unrelated to the Debtors. Iron Mountain is a vendor to AP.

- The Internal Revenue Service ("**IRS**") is a current and former AlixPartners client in matters unrelated to the Debtors. The IRS is a vendor, adverse party, professional, related party, litigation party, and taxing authority to current and former AP clients in matters unrelated to the Debtors.  The IRS is a former employer of current AP employees.

- Joele Frank, Wilkinson Brimmer Katcher, a professional to the Debtors, and affiliates ("**Joele Frank**") are contract parties, professionals, and vendors to current and former AP clients in matters unrelated to the Debtors.

- Jones Lang LaSalle Americas, Inc., a contract party to the Debtors, and affiliates ("**Jones Lang**") are associated companies, litigation parties, creditors, contract parties, lessees, lessors, related parties, and vendors to current and former AP clients in matters unrelated to the Debtors.  Jones Lang is a vendor to AP.

- Kelly Services, Inc., a contract party to the Debtors, ("**Kelly Services**"), is a professional, vendor, contract party, and related party to current AP clients in matters unrelated to the Debtors. Kelly Services a former employer of current AP employees. Kelly Services is a vendor to AP.

- Kirkland & Ellis LLP, a professional to the Debtors, and affiliates ("**K&E**") are customers, vendors, lenders, creditors, counsel, and professionals to current and former AP clients in matters unrelated to the Debtor. K&E is a current and former AP client in matters unrelated to the Debtor. K&E is a former employer of current AP employees. K&E provides legal services to AP.

- Lenci Calzature Spa, a vendor to the Debtors, is a subsidiary of a former AP client in matters unrelated to the Debtors.

- L'Oreal Paris, a letter of credit beneficiary to the Debtors, and affiliates ("**L'Oreal**") are customers and related parties to current and former AP clients in matters unrelated to the Debtors. L'Oreal is a current AP client in matters unrelated to the Debtors.

- Metropolitan Life Insurance Company, a letter of credit beneficiary to the Debtors, and affiliates ("**Metlife**") are bondholders, creditors, contract parties, insurance providers, lenders, litigation parties, and vendors to current and former AP clients in matters unrelated to the Debtors. MetLife is a current AP client in matters unrelated to the Debtors. MetLife is a former employer of a current AP employee. MetLife is a vendor to AP.

- National Grid, a utility provider to the Debtors, and affiliates ("**National Grid**") are adverse litigation parties, creditors, customers, related parties, and vendors to current and former AP clients in matters unrelated to the Debtors. National Grid is a current AP client in matters unrelated to the Debtors.

- The Nielsen Company (US), LLC, a litigation party to the Debtors, and affiliates ("**Nielsen**") are vendors and related parties to current and former AP clients in matters unrelated to the Debtors. Nielsen is a former employer of a current AP employee.

- OfficeTeam, a contract party to the Debtors, is a professional, related party, and vendor to current and former AP clients in matters unrelated to the Debtors. OfficeTeam is a vendor to AP.

- Oracle America, Inc., a contract party to the Debtors, and affiliates ("**Oracle**") are creditors, vendors, lessors, professionals, contract parties, related parties, customers and associated companies to current and former AP clients in matters unrelated to the Debtors. Oracle is a former AP client in matters unrelated to the Debtors. Oracle is a former employer of current AP employees. Oracle is a vendor to AP.

- Pacific Gas & Electric, a utility provider to the Debtors, and affiliates ("**PG&E**") are bondholders, vendors, and creditors to current and former AP clients in matters unrelated to the Debtors. PG&E is a current AP client in matters unrelated to the Debtors. PG&E is

a Debtor in an unrelated bankruptcy in which AP has been retained.  PG&E is a former employer of a current AP employee.

- RGIS, LLC, a contract party to the Debtors, and affiliates ("**RGIS**") are creditors, contract parties, related parties, and vendors to current AP clients in matters unrelated to the Debtors.  RGIS is a former employer of a current AP employee.

- Schulte Roth & Zabel, a professional to the Debtors, is a professional, counsel, and related party to current and former AP clients in matters unrelated to the Debtors.  Schulte Roth & Zabel is a current AP client in matters unrelated to the Debtors.  Schulte Roth & Zabel is a vendor to AP.

- Shiseido Cosmetics, a creditor and vendor to the Debtors, is a creditor to a current AP client in matters unrelated to the Debtors.  Shiseido Co is a former employer of a current AP employee.

- Simon Property Group, Simon Property Group, Inc. and Paragon Outlets Livermore Valley LLC, landlords and 2002 parties to the Debtors, and affiliates ("**Simon Property**") are affiliates, litigation parties, creditors, contract parties, lessors, adverse litigation parties, related parties and vendors to current and former AP clients in matters unrelated to the Debtors.  Simon Property is a member of the UCC represented by AP in Bon-Ton Stores, Inc., a bankruptcy matter unrelated to the Debtors.  Simon Property is a member of the UCC represented by AP in BCBG Max Azria Global Holdings, a bankruptcy matter unrelated to the Debtors.

- Stretto, a professional to the Debtors, is a current AP client in matters unrelated to the Debtors.

- TD Bank, N.A., a debt holder to the Debtors, and affiliates ("**TD**") are bondholders, lenders, shareholders, creditors, insurance providers, noteholders, and vendors to current and former AP clients in matters unrelated to the Debtors.  TD is a former AP client in matters unrelated to the Debtors. TD is a former employer of current AP employees.

- The Hartford Insurance Group, a bondholder to the Debtors, and affiliates ("**Hartford**") are adverse litigation parties, insurance providers, contract parties, vendors, lienholders, customers, lenders, bondholders, creditors, and related parties to current and former AP clients in matters unrelated to the Debtors.  Hartford is an insurance provider to AP.

- TPG Specialty Lending, Inc, a debt holder and 2002 party to the Debtors, and affiliates ("**TPG**") are associated companies, bondholders, creditors, contract parties, investors, lenders, related parties, parent companies, shareholders, and vendors to current and former AP clients in matters unrelated to the Debtors. TPG is a current and former AP client in matters unrelated to the Debtors.

- UberEats, a contract party to the Debtors, and affiliates ("**Uber**") are vendors and adverse parties to current AP clients in matters unrelated to the Debtors.  Uber is a former AP client in matters unrelated to the Debtors.

- Waste Connections F/K/A IESI NY Corp, a utility provider to the Debtors, and affiliates ("**IESI**") are vendors, litigation parties, and contract parties to current and former AP clients in matters unrelated to the Debtors.

- Wells Fargo Bank, National Association, Wells Fargo, N.A., Wells Fargo Bank, N.A., and Wells Fargo Credit Card, a 2002 party, bank, debt holder, and utility provider to the Debtors, and affiliates ("**Wells Fargo**") are adverse parties, adverse litigation parties, associated companies, banking service providers, bondholders, contract parties, creditors, customers, indenture trustees, insurance providers, investors, lenders, lessees, lessors, lienholders, litigation parties, noteholders, professionals, shareholders, trustees, and vendors to current and former AP clients in matters unrelated to the Debtors.  Wells Fargo is a current and former AP client in matters unrelated to the Debtors.  Wells Fargo is a member of a UCC represented by AP in LBI Media, Inc., a bankruptcy matter unrelated to the Debtors.  Wells Fargo is a former employer of current AP employees.

- Yucaipa American Alliance Fund II, L.P. and Yucaipa American Alliance (Parallel) Fund II, L.P., shareholders to the Debtors, and affiliates ("**Yucaipa**") are bondholders, investors, and contract parties to current and former AP clients in matters unrelated to the Debtors.

- Zurich American Insurance Company, a letter of credit beneficiary to the Debtors, and affiliates ("**Zurich**") are adverse parties, creditors, customers, adverse litigation parties, contract parties, insurance providers, lenders, related parties, and vendors to current and former AP clients in matters unrelated to the Debtors.  Zurich is a current AP client in matters unrelated to the Debtors.

28.    AlixPartners and its affiliates are advisors and crisis managers providing services and advice in many areas, including restructuring and distressed debt.  As part of its diverse practice, AlixPartners appears in numerous cases, proceedings, and transactions involving many different attorneys, accountants, investment bankers, and financial consultants, some of whom may represent claimants and parties in interest in these chapter 11 cases.  Further, AlixPartners has in the past, and may in the future, be represented by various attorneys and law firms, some of whom may be involved in these chapter 11 cases.  In addition, AlixPartners has been in the past, and likely will be in the future, engaged in matters unrelated to the Debtors or these chapter 11 cases in which it works with or in opposition to other professionals involved in these chapter 11 cases.

Moreover, AlixPartners might have referred work to other professionals who are retained in these chapter 11 cases. Likewise, certain such professionals who are retained in these chapter 11 cases might have referred work to AlixPartners. To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these business relationships constitute interests adverse to these chapter 11 cases.

29.    From time to time, AlixPartners has provided services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties adverse to the Debtors in matters wholly unrelated to these chapter 11 cases. As described herein, however, AlixPartners has undertaken a detailed search to determine, and to disclose, whether it is providing or has provided services to any significant creditor, equity security holder, insider or other party in interest in such unrelated matters.

30.    To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of AlixPartners' personnel (a) have any connection with the U.S. Trustee, or any employee in the Office of the U.S. Trustee; or (b) are related or connected to any United States Bankruptcy Judge for the Southern District of New York, except as otherwise set forth herein.

31.    To the best of my knowledge, none of the members of the engagement team or AP is a direct holder of any of the Debtors' securities. It is possible that members of the engagement team or certain of AlixPartners employees, managing directors, board members, equity holders, or an affiliate of any of the foregoing, may own interests in mutual funds or other investment vehicles (including various types of private funds) that own the Debtors' or other parties in interest's debt or equity securities or other financial instruments, including bank loans and other obligations. Typically, the holders of such interests have no control over investment decisions related to such

investment funds or financial instruments. AlixPartners' policy prohibits its employees from personally trading in the Debtors' securities.

32.    To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, AlixPartners has not been retained to assist any entity or person other than the Committee on matters relating to, or in direct connection with, these chapter 11 cases. AlixPartners will continue to provide professional services to entities that may be creditors or equity security holders of the Debtors or other parties in interest in these chapter 11 cases, provided that such services do not relate to, or have any direct connection with, these chapter 11 cases.

33.    Certain of AlixPartners' employees, managing directors, board members, equity holders, or an affiliate of any of the foregoing may have financial accounts or insurance relationships with a potential party in interest.

34.    Despite the efforts described above to identify and disclose the connections that AlixPartners has with parties in interest in these chapter 11 cases, because the Debtors form a large enterprise with numerous creditors and other relationships, AlixPartners is unable to state with certainty that every client relationship or other connection has been identified and disclosed.

35.    In accordance with section 504 of the Bankruptcy Code and Bankruptcy Rule 2016, neither I nor AlixPartners has entered into any agreements, express or implied, with any other party in interest, including the Debtors, any creditor, or any attorney for such party in interest in these chapter 11 cases, (a) for the purpose of sharing or fixing fees or other compensation to be paid to any such party in interest or its attorneys for services rendered in connection therewith, (b) for payment of such compensation from the assets of the estates in excess of the compensation allowed by the Court pursuant to the applicable provisions of the Bankruptcy Code, or (c) for payment of

compensation in connection with these chapter 11 cases other than in accordance with the applicable provisions of the Bankruptcy Code.

36.     Accordingly, except as otherwise set forth herein, insofar as I have been able to determine, neither I, AlixPartners nor any AlixPartners' personnel holds or represents any interest adverse to the Committee, Debtors or their estates, and AlixPartners is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that AlixPartners and its professionals and employees who will work on the engagement:

(a) are not creditors, equity security holders, or insiders of the Debtors;

(b) were not, within two years before the Petition Date, a director, officer or employee of the Debtors; and

(c) do not have an interest materially adverse to the interest of the Debtors' estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

37.     If AlixPartners discovers additional information that requires disclosure, AlixPartners will promptly file a supplemental disclosure with the Court as required by Bankruptcy Rule 2014.   AlixPartners reserves the right to supplement this Declaration in the event that AlixPartners discovers any facts bearing on matters described in this Declaration regarding AlixPartners' employment by the Committee.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Date: September 11, 2019

*/s/ David MacGreevey*
David MacGreevey
Managing Director

## **Schedule 1**

**Potential Parties in Interest**

**DEBTORS**

Barneys New York, Inc.
Barney's, Inc.
BNY Catering, Inc.
BNY Licensing Corp.
Barneys Asia Co. LLC

**NON-DEBTOR AFFILIATE**

Barneys New York Foundation

**SHAREHOLDERS**

Istithmar Bentley Cayman, Ltd.
Yucaipa American Alliance Fund II, L.P.
Yucaipa American Alliance (Parallel) Fund II, L.P.
Perry Private Opportunities Fund, L.P.
Spring Investments II Ltd.
Perry Principals, L.L.C.
Perry Partners International, Inc
Perry Partners, L.P.
Spring Investments Ltd.

**CURRENT AND FORMER
OFFICERS AND DIRECTORS**

Barneys New York, Inc.
BNY Licensing Corp
Daniella Vitale
Mark Lee
Martin Edelman
Richard Perry
Robert Beyer
Ronald Burkle
Simon Harland
Stephanie Bond
Daniella Vitale - CEO, President
Grace Fu - EVP, Secretary
Jay Bell - EVP
Jennifer Sunwoo - EVP
Katherine Bahamonde Monasebian - EVP
Matt Mazzucca - EVP
Sandro Risi - EVP, Treasurer
Thomas Kalenderian - EVP
Tomm Miller - EVP
Tony Mauro - EVO
Ronald Burkle

**TAXING AUTHORITIES**

IRS
City & County of San Francisco
Los Angeles County Tax Collector
Clark County Nevada
City of New York Finance Dept
City of Philadelphia
King County Treasury
Alabama Department of Revenue
Arizona Department of Revenue
California Department of Tax and Fee Administration, Sacramento
Colorado Department of Revenue
Connecticut Commissioner of Revenue Services
Washington D.C. Office of Tax and Revenue
Florida Department of Revenue
Georgia Revenue Commissioner
Hawaii State Tax Collector, Department of Taxation, Honolulu
Iowa Treasurer of State, Des Moines
Illinois Department of Revenue
Indiana Department of Revenue
Kentucky Department of Revenue
Louisiana Department of Revenue
Massachussetts Commissioner of Revenue
Comptroller of Maryland
Maine Revenue Services
Michigan Department of Treasury
Minneapolis Department of Revenue
Mississippi Department of Revenue
North Carolina Secretary of Revenue
North Dakota Tax Commissioner
Nebraska Tax Commissioner
New Jersey Director, Division of Taxation
Nevada Department of Taxation
New York Department of Taxation and Finance, Albany
Oklahoma Tax Commission
Pennsylvania Department of Revenue in Harrisburg
Rhode Island Tax Administrator in Providence
Texas Comptroller of Public Accounts
Utah Tax Commission in Salt Lake City

**BANKRUPTCY PROFESSIONALS**
Kirkland & Ellis LLP
Houlihan Lokey, Inc.
M-III Partners, LP
Stretto
Joele Frank, Wilkinson Brimmer Katcher
Riemer & Graunstein LLP
Choate Hill & Stewart LLP
Schulte Roth & Zabel

**BANKS**
Wells Fargo, N.A.

**DEBT HOLDER**
Wells Fargo Bank, N.A.
Citizens Business Capital
TD Bank, N.A.
TPG Specialty Lending, Inc.

**INSURANCE PROVIDERS**
Aon plc
Arrowhead General Insurance Agency, Inc.

**LANDLORDS**
ADR 1811 Walnut Street, L.P.
Ameream LLC
Americana at Brand, LLC
Bal Harbour Shops, LLLP
Copley Place Associates, LLC
Crystals Las Vegas, LLC
Equity One
Fashion Outlets of Chicago
Flagship 660 Owner LLC c/o Jenel
Management Corp.
Geary-Market Investment Company
GFM, LLC
MPH Pacific Place LLC
Paragon Outlets Livermore Valley LLC
(Simon Property Group, Inc.)
Simon Property Group, Inc.
Stockton Street Properties
Tanger Properties Limited Partnership
Thor ASB 1-15 East Oak Street
Two Trees Management Co. LLC
Caruso Management Company, Ltd.

Virginia Department of Taxation in
Richmond
Vermont Department of Taxes
Washington State Department of Revenue in
Olympia
Wisconsin Department of Revenue
Wyoming Department of Revenue
U.S Customs & Border Protection

**LETTER OF CREDIT BENEFICIARIES**
L'Oreal Paris
National Union Fire Insurance c/o Invesco
Senior Secured Management Inc.
Calzaturificio Stephen Srl
N.V. Van Noten Andries
Stockton Street Properties, Inc.
1-15 East Oak Street
Zurich American Insurance Company
Flagship 660
Washington International Insurance
Metropolitan Life Insurance Company
Flagship Partners II, LLC
194 Atlantic LLC
Equity One (Northeast Portfolio) Inc
The Building At 575 Fifth Office Owner LLC
Etoile 660 Madison LLC

**TOP 30 UNSECURED CREDITORS**
1-15 EAST OAK STREET, LLC
Azzedine Alaia
Balenciaga America, Inc.
CANADA GOOSE US, INC.
Celine Inc.
CHANEL
Chloe
CL US Distribution Corporation
ETOILLE 660 MADISON LLC
Fedex
GGR US LLC
Givenchy Corporation/LVMH
Google Inc.
Gucci
ISAIA Corp
Jenel Management
Loewe LLC
Manolo Blahnik USA, LTD

**LITIGATION PARTIES**
17th Street Property Owner LLC
424 Group Wholesale, Inc.
Astrodeck Inc.
Ayala, Octavio
Brereton, James
CSS Bulding Services
Davis, Corey
Ekipe Italia s.r.l.
Epsilon Data Management, LLC
Facebook
Forrest Solutions
Galitz, Maggie
Gesling, Robin
iProspect.com
Juul Labs, Inc.
Masserano srl
Claudio Masserano
Moynat
Nacarino, Elena
Nicha Jewelry
Ovative Group
Pacific Trial Attorneys
Pawalek, Marilyn
Perez, Melvin
Predescu, Mihaela
Retana, Alfred
Sandoval, Anthony
Sergio Rossi USA, Inc.
SHI International Corp
Stauffer, Raymond
Svoboda, Christian
The High End Management Company, LLC
The Nielsen Company (US), LLC
Tish & Snooky's N.Y.C. Inc. d/b/a/ MANIC
PANIC
Turner, Darlene
Villa Group Srl
Daniel Moncada
Kaitlin O'Connor

**SIGNIFICANT CONTRACT PARTIES**
NUS Consulting Group

Margiela USA, Inc
Moncler USA, Inc
Owenscorp Italia SPA
Prada
Rag & Bone
Rakuten Marketing Formerly Linkshare Corp.
Shiseido Cosmetics
Stockton Street Properties, Inc.
The Building at 575 Fifth Office Owner LLC
The Row LLC
Thor Equities
Tribeca Design Studio LLC
Yves Saint Laurent America, Inc.

**UNIONS**
NY/NJ Regional Joint Board Workers United
(Brooklyn)
NY/NJ Regional Joint Board Workers United
(Fred & Gene's)
NY/NJ Regional Joint Board, Workers United
Master Agreement (660 Madison Ave and
Downtown Store)
NY/NJ Regional Joint Board, Workers United
(Supplement to 161 West 16th location)
NY/NJ Regional Joint Board, Workers United
Supplemental Agreement for 660 Madison
Store
NY/NJ Joint Regional Board Workers United
Local 25 (Alterations Unit)
NY/NJ Joint Regional Board, Workers United
Local 400 (Clerical Unit)
Philadelphia Joint Board Workers United
(Rittenhouse Square, Philadelphia, PA)
Western States Regional Board Workers
United (The Grove, Los Angeles, CA)

**UTILITY PROVIDERS**
10 Rittenhouse Sq Condo Assn
194 Atlantic Avenue LLC
194 Atlantic Avenue LLC
Action Environmental Services
ADR 1811 Walnut Street, L.P.
Americold, Inc.
Barneys 256
Barneys 339
Central Hudson Gas & Electric Corp.

3

## SIGNIFICANT VENDORS

0909 S.r.l.
2morrowmodel S.R.L.
A.M.I. S.r.l.
Adidas Ag
Akira Naka Co.
Albatrans S.P.A.
Alby S.r.l.
Alevi S.r.l.
Alex Begg
Alice Archer
Alpo S.r.l.
Ambush Inc
Ami Paris
Amiri/Atelier Fashion Company
Anni Lu
Apa S.r.l.
Arcade Group
Areoso Island Sl
Astier De Villatte
Azzedine Alaia
Balenciaga America, Inc.
Ballin Project S.r.l.
Barrett S.r.l.
Baudoin & Lange
Belle Enfant
Ben.Ter Shoes
Bigi Cravatte-Milano
Blaze Milano
Blywear Ltd (trading as Blyszak)
Boinet Sas
Boldrini Selleria S.r.l.
Bottega Venetta
Braganti Antonio
Burberry's Wholesale
Calz. Ballerina
Calz. Due Elle Spa
Calz. Ernesto Dolani S.r.l.
Calz. Martire
Camac S.r.l.
Camiceria Scabo Di Bolzonella S.r.l.
Carpan S.r.l.
Caruso
Catya
Celine Inc.
Chanel

Chelsea 401
Chelsea 404
Chelsea 406
Chelsea 411
City of Beverly Hills
City of Beverly Hills
City of Chicago Department Of Finance-
Water Division
City of Seattle
City View Plaza, LLC
Cityview Plaza, LLC
Con Edison
Consolidated Edison Co
Constellation n Excelon Company
Constellation New Energy
Copely Place Associates, LLC
Copley Place/Rent
CPG Carlsbad Holdings, LLC
CPG CRLS 413
CPG Partners, L.P.
Department of Ecology
Direct Energy Business
Dunbar Armored
E.J. Harrison & Sons Inc
Etoille 660 Madison LLC
Eversource Energy
Fashion Outlets of Chicago LLC
Florida Power & Light (FPL)
Geary-Market Investment Co. Ltd.
GFM, LLC
Hawaiian Electric Co
Jenel Management
JLM Lyndhurst,LLC
Keter Environmental Services, Inc
Livermore Premium Outlets, LLC
Livermore Premium Outlets, LLC
Los Angeles Department of Water & Power
(LADWP)
Macerich Santa Monica Place LP
Macerich SMP LP
Mph Pacific Place LLC
Mph Pacific Place LLC
National Grid
Nest International
Pacific Gas & Electric (PG&E)
Peoples Gas

Chloe
Christelle Kocher Eurl
Cifonelli Slu
Cita S.r.l.
CL US Distribution Corporation
Club 21 Int'l Distribution Ltd
Comme Des Garcons Ltd
Corgi
Corrado Corradi
County S.r.l.
CP Fashion Group, Inc.
D&D La Certosa Firenze Spa
Dalessandro S.r.l.
Delphine Manivet
Delvaux Createur
Designers Remix A/S
Detlef BVBA
DGE S.r.l.
Diane De Clercq
Dibbern Gmbh & Co
Divina S.r.l.
Donisia S.r.l.
Dries Van Noten
Ducotex S.R.L.
Eb Jewels S.r.l.
Elda Trade S.r.l.
Emilio Roselli
Erdem
Eurasia US Corp.
Fabrizio Vitti
Factory S.r.l.
Faliero Sarti
Fendi NA
Ferrante Brands S.r.l.
Filuhats S.r.l.
Fly Shoes
Fontana Pelletterie Spa
Gabel Idustria Tessile Spa
Ggr Us LLC
Giani S.r.l.
Giannico
Giardi Tessile S.R.L.
Giglio - A.S.L.A.
Ginger Brown
Giovanni Bedin S.R.L.
Giuntini

Plastic Center, Inc.
Plymouth Rock Energy, LLC
PSEGLI
Public Service Electric & Gas (PSE&G
Recology Golden Gate
Regency Centers, L.P.
Republic Services
Rockland Electric Co
San Diego Gas & Electric (SDG&E)
San Francisco Water, Power & Sewer
Sawgrass Mills
Sawgrass Mills Phase Iv L.P.
Scientific Fire Prevention Company
SoCalGas
Southern California Edison Company (SCE)
Southern/8050
Stockton Street Properties, Inc.
Tanger Properties
The Americana at Brand, LLC
The Building at 575 Fifth Office Owner LLC
The Gas Co. a Sempra Energy Utility
The Shoppes at the Palazzo, LLC
Thor ASB 1-15 East Oak Street, LLC
United Fire Prevention D/B/A
Waste Connections F/K/A IESI NY Corp
Wells Fargo Credit Card
Filco Carting Corp.

## SIGNIFICANT CONTRACT PARTIES

1431/168 Investors, LLC d/b/a Valet Parking
Service
ABM Industry Groups, LLC dba ABM
Parking Services ("ABM")
ADP, Inc. ("ADP")
Advanced Pure Water Solutions
American Express Travel Related Services
Company, Inc. ("Amex")
Ameriguard Alarm & Security Corp.
("AASC")
ASCAP
Barneys Japan Co., LTD.
Blind Barber, LLC
CardFact XXXIII, Inc. ("CardFact")
Cardinal Point Homeland Security Group
Comenity Servicing, LLC
Connor Papers LLC

5

| | |
|---|---|
| Givenchy Corporation LVMH | Corr Protective Services ("CPS") |
| Global Store S.r.l. | Diamond Limousine |
| Gmt Management S.R.L. | EasyKlean, Inc. ("EasyKlean") |
| Golden Goose USA Inc. | Equinox Holdings, Inc. ("Equinox") |
| Goossens Paris | FiftyOne, Inc. |
| Goyard | FirstEnergy Solutions Corp. |
| Gruppo Dondi | FJC Security Services, Inc. ("FJC") |
| Gucci | FMI, Inc. |
| Gucci c/o Zegna | Foxy Bowie, LLC |
| Gufram Srl | Gene Pressman |
| Harris | Global Services, Inc. |
| Hector Saxe | GRM |
| Heron Preston | Hemal Gandhi ("Gandhi") |
| Heschung | Holland & Knight, LLC |
| Horn Please Limited | Icesurance, Inc. |
| Iktinos Hellas Sa | InnSight Reports LLC dba GoConcierge.net |
| Il Borgo | InterTrade Systems, Inc. ("InterTrade") |
| IM USA Corp | Iron Mountain Secure Shredding, Inc. ("IM") |
| Irene Neuwirth Inc | JBCStyle NY LLC ("JBC") |
| James Lock & Co. Ltd | Jones Lang LaSalle Americas, Inc. ("Jones |
| Jerome Dreyfuss | Lang LaSalle") |
| Jimi Roos | JSRE LLC |
| Jinghi | Kelly Services, Inc. ("Kellly") |
| JW Anderson | Key Group Worldwide, Inc. ("KGW") |
| Kilometre | Keystrata, Inc. ("Keystrata") |
| Kind/David Szeto | Kronos Incorporated |
| Kiwi Enterprises Pvt Ltd | Long Island Productions, Inc. dba |
| L. W. Cretschmar | TRAINING NETWORK |
| La Gallina Matta Srl | Loomis Armored US, LLC |
| La Maison Rovnof | Loyal Building Services, Inc. |
| La Venusia S.R.L | lp style llc |
| Laboratorio Pesaro Srl | Menon Leasing Corporation |
| Lanificio Arca | Metro One Loss Prevention Services Group |
| Le Kilt | MVP Staffing |
| Lenci Calzature Spa | National Retail Transportation, Inc. |
| Liapull Srl | Nick's Towing Service, Inc. |
| Little Liffner | No More Dirt, Inc. |
| Loewe LLC | OfficeTeam |
| Lorenzi Milano Sas Di Mauro Lorenzi E Fig | One Security Group LLC |
| Lovat & Green | OpenTable, Inc. |
| Luca Grossi Srl | Optimized Payments Consulting |
| Lucien Pellat-Finet Scotland | Oracle America, Inc. |
| Luxury Children's Wear Srl | Otis Elevator Company |
| Maglificio Belvedere | OTX Logistics Inc. |
| Maille France | Pathmata Networks Inc. (dba. Dash Hudson) |
| Maison Pierre Hardy | Petore Associates, Inc. |

Maison Rabih Kayrouz
Major S.R.L.
Manolo Blahnik USA, Ltd
Marcair International
Marco Pescarolo Srl
Margaret Howell Ltd
Margiela USA, Inc.
Marianna Senchina
Marie Daage Diffusion
Marine Serre Sarl
Marli Srl
Marskinryyppy By Nicole Brundage
Martin Grant
Martine Rose
Massimo Alba Cashmere
Maurizi Srl
Max Huber Research Laboratories
Milano Fashion Srl
Moncler USA Inc
NBI Sagl
New Concept Shoes, Lda
Nicolas Gerlier
Odejo Ltd
Off White Operatin Srl
Olgana Paris Ltd
Osman Studio Ltd
Otis Batterbee
Owenscorp Italia Spa
P&C Srl
Palm Angels
Parisini
Phi-Male
Pierre Balmain
Platforme International Limited
Prada
Prada USA Corp.
Randi Creazioni Srl
Raphael
Raphaele Canot Jewellery Ltd
Raquel Diniz
Rb Moda
Renzo Romagnoli
Restelli
Sarah Lavoine
Savino Del Bene Spa/Milano Branch
Shiseido Cosmetics

Pixelz Inc.
Postmates Inc.
Premium Security Services, LLC
RGIS, LLC
Rin IP Partners ("POA")
Risk Management Consulting LLC
Sarvaruna LLC DBA Infoskey ("Infoskey")
Schindler Elevator Corporation
Seven & iHoldings Co., Ltd.
Shutterstock, Inc.
Socialyte, LLC
SS Designs (HK) Ltd.
Stella Pulse
StellaService Inc.
Stone Set Studio, LLC
Sumitomo Corporatioin
Tacy Anserson Mind and Body LLC ("TA")
The Alecris, Inc. ("Alecris")
The Directors Bureau
The Muse
Total Staffing Solutions, LLC ("TSS")
Transmitter Media LLC
UberEats
Vitality Staffing Solutions, LLC
Wagstaff Worldwide, Inc.
Worldwide Logistics Ltd.

**SURETY BONDHOLDERS**
The Hartford Insurance Group
Lexon Insurance Company
Washington Int'l Ins.

**2002 PARTIES**
Simon Property Group
Brookfield Property REIT Inc., as Agent
Savino Del Bene USA, Albatrans Inc.
Wells Fargo Bank, National Association
TPG Specialty Lending, Inc.
Retail Funding (BNY), LLC
The Building at 575 Fifth Office Owner LLC
SessionM, Inc.
CSS Building Services
Sabbadini S.R.L.
Allen ISD
Flagship 660 Owner, LLC,, and Flagship
Partners II, LLC

Simonnot Godard Sarl
Slam Jam Srl
Sophia Kah
Sozzi Calze
Stefano Serapian
Streeters/ Great Bowery (UK) Ltd.
Studio Adl Ltd
Taddeucci Srl
Takayaka Sarl
Teija
The Row LLC
Tiare
Tod's
Tomorrow Milano Srl
Tradexco
Ulla Johnson Inc
Unravel
Valentino USA Inc.
Venusia S.R.L.
Vetements Group Ag
Villa Delmitia
Vittorio Virgili
Wallace Sewell
Wandler Bv
We Do Srl
Women Management
Y/Project / In-Carnation
Yasmine Eslami
Yves Saint Laurent America, Inc.
Zigozago

CSS Building Services
Comenity Capital Bank
Thor ASB 1-15 East Oak Street, LLC
Manzanita US GP LLC
Manzanita Capital UK LLP
Diptyque Distribution USA LLC
Byredo US Inc.
Space Brands USA LLC
Kevyn Aucoin Beauty Inc.
Malin + Goetz Inc.

**DIP PARTIES**
Brigade Capital Management
BFR Finance Co., LLC
Hilco Merchant Resources
GACP Finance Co., LLC
GB Loan Holding Company, LLC
GA Capital, LLC

**RECLAMATION PARTIES**
Hilldun
Tumi
Ferragamo
Loro Piana & C. Inc.
Malin + Goetz
Byredo
GGR US LLC

## Exhibit C

**Engagement Letter**

# AlixPartners

Mr. Ronald M. Tucker                                                                August 16, 2019
Chairman of the Official Committee
  of Unsecured Creditors of Barneys New York, Inc.
c/o Simon Property Group, L.P.
225 West Washington Street
Indianapolis, IN 46204

**Re:     Agreement for Financial Advisory and Consulting Services**

Dear Mr. Tucker:

This letter, together with the attached Schedule(s) and General Terms and Conditions, sets forth the agreement ("Agreement") between AlixPartners, LLP ("AlixPartners") and the Official Committee of Unsecured Creditors (the "Committee") of Barneys New York, Inc. and certain of its affiliates and subsidiaries (the "Company"), for the engagement of AlixPartners to provide financial advisory and consulting services to the Committee with respect to the Company's Chapter 11 reorganization cases currently pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

All defined terms shall have the meanings ascribed to them in this letter and in the attached Schedule(s) and General Terms and Conditions.  The Committee and AlixPartners are each a "party," and together the "parties."

**Objectives and Tasks**

AlixPartners will provide advice to and assist the Committee in evaluating and implementing strategic and tactical options through the bankruptcy and restructuring process. A general list of tasks AlixPartners will likely perform is as follows:

- Review and evaluate the Company's current financial condition, business plans and cash and financial forecasts, and periodically report to the Committee regarding the same.

- Review the Company's cash management, tax sharing and intercompany accounting systems, practices and procedures.

- Review and investigate:  (i) related party transactions, including those between the Company and affiliates (including, but not limited to, shared services expenses and tax allocations) and (ii) selected other pre-petition transactions.

- Identify and/or review potential preference payments, fraudulent conveyances and other causes of action that the various Company estates may hold against third parties, including each other.

- Analyze the Company's assets and claims, and assess potential recoveries to the various creditor constituencies under different scenarios.

- Evaluate the Company's proposed sale process and any related bids and participate in any meetings with bidders or auction, as required.

**AlixPartners**

Barneys New York, Inc.
August 16, 2019
Page 2 of 10

- Assist in the development and/or review of the Company's plan of reorganization and disclosure statement.

- Review and evaluate court motions filed or to be filed by the Company or any other parties-in-interest, as appropriate.

- Render expert testimony and litigation support services, including e-discovery services, as requested from time to time by the Committee and its counsel, regarding any of the matters to which AlixPartners is providing services.

- Attend Committee meetings and court hearings as may be required in the role of advisors to the Committee.

- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

In addition, the Committee acknowledges and agrees it may be necessary and appropriate for AlixPartners to review certain information with the Company or its advisors for accuracy and validity before submitting its Work Product to the Committee.

**Staffing**

David MacGreevey will be the managing director responsible for the overall engagement, assisted by a staff of consultants at various levels who have a wide range of skills and abilities related to this type of assignment. In addition, AlixPartners has relationships with, and may periodically use, independent contractors with specialized skills and abilities to assist in this engagement.

We will periodically review the staffing levels to determine the proper mix for this assignment. We will only use the necessary staff required to complete the requested or planned tasks.

**Terms and Conditions**

The Committee agrees to all the terms of the Agreement, and the Committee agrees to use its best efforts, through the application for retention of AlixPartners, to have the Company provide an indemnification to AlixPartners and its principals, employees, subcontractors, representatives, agents and counsel, as set forth in Section 7 of the General Terms and Conditions. Section 7 of the General Terms and Conditions provides that the Company will indemnify AlixPartners against certain claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement.

This Agreement and the terms hereof are subject to Bankruptcy Court approval.

# AlixPartners

Barneys New York, Inc.
August 16, 2019
Page 3 of 10

**Timing and Fees**

AlixPartners will commence this engagement on August 15, 2019, and it will be subject to Bankruptcy Court approval.

The Company shall compensate AlixPartners for its services, and reimburse AlixPartners for expenses, as set forth on Schedule 1.

AlixPartners acknowledges that its retention and the terms thereof are subject to Bankruptcy Court approval.

If these terms meet with your approval, please sign and return a copy of this Agreement.

We look forward to working with you.

Sincerely yours,

ALIXPARTNERS, LLP

David MacGreevey
Managing Director

Acknowledged and Agreed to:

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF BARNEYS NEW YORK, INC.

By: _____
    Simon Property Group, L.P., Ronald Tucker

Its:  Chairperson

Dated:

On behalf of the Official Committee of Unsecured Creditors of Barneys New York, Inc., and certain of its affiliates and subsidiaries, and not in its individual capacity

# **AlixPartners**

**Schedule 1**

**Fees and Expenses**

1.  **Fees:** AlixPartners' fees will be based on the hours spent by AlixPartners personnel at AlixPartners' hourly rates, which are:

| | |
|---|---|
| Managing Director | US$990 – US$1,165 |
| Director | US$775 – US$945 |
| Senior Vice President | US$615 – US$725 |
| Vice President | US$440 – US$600 |
| Consultant | US$160 – US$435 |
| Paraprofessional | US$285 – US$305 |

AlixPartners reviews and revises its billing rates on January 1 of each year.

2.  **Success Fee:** AlixPartners does not seek a success fee in connection with this engagement.

3.  **Expenses:** In addition to the Fees set forth in this Schedule, the Company shall pay directly, or reimburse AlixPartners upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging and meals.

4.  **Break Fee:** AlixPartners does not seek a break fee in connection with this engagement.

5.  **Payment:** AlixPartners will submit monthly invoices for services rendered and expenses incurred. All invoices shall be due and payable by the Company, subject to Bankruptcy Court approval.

**AlixPartners**

**Data Protection Schedule**

**Processing, Personal Data and Data Subjects**

In connection with this Agreement, AlixPartners will not be receiving any Personal Data subject to the General Data Protection Regulation ((*EU) 2016/679*) (the "GDPR") or any applicable legislation implementing any provisions of the GDPR as may be enacted time to time (together the "Data Protection Legislation").

**AlixPartners, LLP**
General Terms and Conditions

These General Terms and Conditions ("Terms") are incorporated into the Agreement to which these Terms are attached. In case of conflict between the wording in the letter and/or schedule(s) and these Terms, the wording of the letter and/or schedule(s) shall prevail.

### Section 1. Committee Responsibilities

The Committee will undertake its best efforts to make decisions and take future actions, as the Committee determines in its sole discretion, on any recommendations made by AlixPartners in connection with this Agreement.

### Section 2. Retainer, Billing, Payments and Taxes

**Retainer.** No retainer will be paid in this matter.

**Billing and Payments.** All payments to be made to AlixPartners shall be due and payable upon delivery of invoice via check or wire transfer to AlixPartners' bank account, as shown on the invoice, subject to Bankruptcy Court approval. All amounts invoiced are based on services rendered and expenses incurred to date, and are not contingent upon future services or Work Product (as defined below), or the outcome of any case or matter. "Fees," as used in this Agreement, shall include all amounts payable by the Company to AlixPartners in accordance with Schedule 1, but excluding reimbursable expenses.

**Taxes.** AlixPartners' fees are exclusive of taxes or similar charges, which shall be the responsibility of the Company (other than taxes imposed on AlixPartners' income generally). If AlixPartners' fees are subject to any taxes, such as State sales tax, Goods and Services Tax/Harmonized Sales Tax or Value Added Tax, then AlixPartners will include such taxes on its invoices as separate line items.

### Section 3. Relationship of the Parties

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, AlixPartners will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. AlixPartners will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business. Nothing in this Agreement is intended to create, nor shall be deemed or construed to create a fiduciary or agency relationship between AlixPartners and the Committee.

AlixPartners is providing advisory and consulting services only, and will not make decisions for the Committee. While AlixPartners may from time to time suggest options available to the Committee, the ultimate decision as to such options rests with the Committee, and AlixPartners makes no promise or guarantee about the outcome of the Committee's matters.

AlixPartners is not an accounting firm and does not give accounting advice or guidance. While AlixPartners' work may involve analysis of accounting, business and other related records, this engagement does not constitute an audit in accordance with either generally accepted auditing standards or the standards of the Public Company Accounting Oversight Board or any other similar governing body.

AlixPartners is not authorized to practice law or provide legal advice. No services provided under this Agreement are intended to be, nor should be construed to be, legal services.

### Section 4. Confidentiality

Each party shall use reasonable efforts, but in no event less effort than it would use to protect its own confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other party during the performance of AlixPartners' services hereunder (the "Confidential Information"), and neither party will disclose any Confidential Information to any other person or entity. "Confidential Information" includes the terms of this Agreement, non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of either party, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, AlixPartners from making such disclosures of Confidential Information that AlixPartners reasonably believes are required by law or any regulatory requirement or authority to clear client conflicts. AlixPartners may also disclose Confidential Information to its partners, directors, officers, employees, independent contractors and agents who have a need to know the Confidential Information as it relates to the services being provided under this Agreement, provided AlixPartners is responsible for any breach of these confidentiality obligations by any such parties. AlixPartners may make reasonable disclosures of Confidential Information to third parties, such as the Company's suppliers and/or vendors, in connection with the performance of AlixPartners' obligations and assignments hereunder, provided AlixPartners reasonably believes that such third party is bound by confidentiality obligations. In addition, AlixPartners will have the right to disclose to any person that it provided services to the Committee and a general description of such services, but shall not provide any other information about its involvement with the Committee. The obligations of the parties under this Section 4 shall survive the end of any engagement between the parties for a period of three (3) years.

Work Product (as defined in Section 5) may contain AlixPartners proprietary information or other information that is deemed to be Confidential

**AlixPartners, LLP**
General Terms and Conditions

Information for purposes of this Agreement, and the parties may not want to make public. Therefore, the parties acknowledge and agree that (i) all information (written or oral), including advice and Work Product (as defined in Section 5), generated by AlixPartners in connection with this engagement is intended solely for the benefit and use of the Committee in connection with this Agreement, and (ii) no such information shall be used for any other purpose or disseminated to any third parties, or, quoted or referred to with or without attribution to AlixPartners at any time in any manner or for any purpose without AlixPartners' prior approval (not to be unreasonably withheld or delayed), except as required by law.  The Committee may not rely on any draft or interim Work Product.

## Section 5. Intellectual Property

All analyses, final reports, presentation materials, and other work product (other than any Engagement Tools, as defined below) that AlixPartners creates or develops specifically for the Committee and delivers to the Committee as part of this engagement (collectively known as "Work Product") shall be owned by the Committee and shall constitute Committee Confidential Information as defined above. AlixPartners may retain copies of the Work Product and any Confidential Information necessary to support the Work Product subject to its confidentiality obligations in this Agreement. In addition, the Committee acknowledges and agrees that before submitting its Work Product to the Committee, it may be necessary and appropriate for AlixPartners to review certain information with the Company or its advisors for accuracy and validity.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, templates, models, utilities and other intellectual property that AlixPartners has created, acquired or developed or will create, acquire or develop (collectively, "Engagement Tools"), are, and shall be, the sole and exclusive property of AlixPartners. The Committee shall not acquire any interest in the Engagement Tools other than a limited, worldwide, perpetual, non-transferable license to use the Engagement Tools to the extent they are contained in the Work Product.

The Committee acknowledges and agrees, except as otherwise set forth in this Agreement, that any Engagement Tools provided to the Committee are provided "as is" and without any warranty or condition of any kind, express, implied or otherwise, including, implied warranties of merchantability or fitness for a particular purpose.

## Section 6. Framework of the Engagement

The Committee acknowledges that it is retaining AlixPartners solely to assist and advise the Committee as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

## Section 7. Indemnification and Other Matters

The Committee agrees to use its best efforts, through the application for retention of AlixPartners, to have the Company provide an indemnification to AlixPartners Parties (defined below), whereby:

The Company shall indemnify, hold harmless and defend AlixPartners and its affiliates and its and their partners, directors, officers, employees and agents (collectively, the "AlixPartners Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement. The Company shall pay damages and expenses as incurred, including reasonable legal fees and disbursements of counsel. If, in the opinion of counsel, representing both parties in the matter covered by this indemnification creates a potential conflict of interest, the AlixPartners Parties may engage separate counsel to represent them at the Company's expense.

The Company's indemnification obligations in this Section 7 shall be primary to, and without allocation against, any similar indemnification obligations that AlixPartners may offer to its personnel generally.

AlixPartners is not responsible for any third-party products or services separately procured by the Committee. The Committee's sole and exclusive rights and remedies with respect to any such third party products or services are against the third-party vendor and not against AlixPartners, whether or not AlixPartners is instrumental in procuring such third-party product or service.

## Section 8. Governing Law and Arbitration

The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in New York, New York under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Notwithstanding the foregoing, either party may proceed directly to a court of competent jurisdiction to enforce the terms of this Agreement for any claim in connection with (i) the non-payment of Fees or expenses due under this Agreement, or (ii) the non-performance of obligations under Section 7.

**AlixPartners, LLP**
General Terms and Conditions

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

### Section 9. Termination and Survival

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination AlixPartners will be entitled to any Fees and expenses due under the provisions of the Agreement (for fixed fee engagements, fees will be pro rata based on the amount of time completed). Such payment obligation shall inure to the benefit of any successor or assignee of AlixPartners.

Additionally, unless the Agreement is terminated by the Committee due to AlixPartners' material breach (and such material breach continues after 30 days' written notice thereof and opportunity to cure) AlixPartners shall remain entitled to the success fee(s), if any, that otherwise would be payable during the 12 months after the date of termination of the Agreement.

Sections 2, 4, 5, 7, 8, 9, 10, 11, 12, 13 and 14 of these Terms, the provisions of Schedule 1 and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

### Section 10. Limitation of Liability

THE ALIXPARTNERS PARTIES SHALL NOT BE LIABLE TO THE COMMITTEE, THE COMMITTEE MEMBERS, THE COMPANY, OR ANY PARTY ASSERTING CLAIMS ON BEHALF OF THE COMPANY, EXCEPT FOR DIRECT DAMAGES FOUND IN A FINAL DETERMINATION TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE, BAD FAITH, SELF-DEALING OR INTENTIONAL MISCONDUCT OF ALIXPARTNERS. THE ALIXPARTNERS PARTIES SHALL NOT BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES, LOST PROFITS, LOST DATA, REPUTATIONAL DAMAGES, PUNITIVE DAMAGES OR ANY OTHER SIMILAR DAMAGES UNDER ANY CIRCUMSTANCES, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE ALIXPARTNERS PARTIES' AGGREGATE LIABILITY, WHETHER IN TORT, CONTRACT, OR OTHERWISE, IS LIMITED TO THE AMOUNT OF FEES PAID TO ALIXPARTNERS FOR SERVICES UNDER THIS AGREEMENT (OR IF THE CLAIM ARISES FROM AN ADDENDUM TO THIS AGREEMENT, UNDER THE APPLICABLE ADDENDUM) (THE "LIABILITY CAP"). The Liability Cap is the total limit of the AlixPartners Parties' aggregate liability for any and all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by AlixPartners pursuant to this Agreement. Any such claimants shall allocate any amounts payable by the AlixPartners Parties among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Under no circumstances shall the aggregate of all such allocations or other claims against the AlixPartners

Parties pursuant to this Agreement exceed the Liability Cap.

### Section 11. General

**Equitable Remedies.** Each party acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of the Agreement. Each party agrees that the non-breaching party shall have the right to seek a restraining order and/or an injunction for any breach of the Agreement. If any provision of the Agreement is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

**Severability.** If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.** This Agreement, including the letter, the Terms and the schedule(s), contains the entire understanding of the parties relating to the services to be rendered by AlixPartners and supersedes any other communications, agreements, understandings, representations, or estimates among the parties (relating to the subject matter hereof) with respect to such services. The Agreement, including the letter, the Terms and the schedule(s), may not be amended or modified in any respect except in a writing signed by the parties. AlixPartners is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties.

**Related Matters.** If an AlixPartners Party is required by applicable law, legal process or government action to produce information or testimony as a witness with respect to this Agreement, the Company shall reimburse AlixPartners for any professional time and expenses (including reasonable external and internal legal costs and e-discovery costs) incurred to respond to the request, except in cases where an AlixPartners Party is a party to the proceeding or the subject of the investigation.

AlixPartners will have the right to obtain independent legal counsel to obtain advice with respect to its services under this engagement. The Company will reimburse AlixPartners' for the reasonable fees and expenses of such independent legal counsel.

**Joint and Several.** If more than one party signs this Agreement, the liability of each party shall be joint and several. In addition, in the event more than one entity is included in the definition of Company under this Agreement, each other entity which is included in the definition of Company shall be jointly and severally liable for the Company's liabilities and obligations set forth in this Agreement.

**Third-Party Beneficiaries.** The AlixPartners Parties shall be third-party beneficiaries with respect to Section 7 hereof.

**AlixPartners, LLP**
General Terms and Conditions

**Notices.** All notices required or permitted to be delivered under the Agreement shall be sent, if to AlixPartners, to:

AlixPartners, LLP
2000 Town Center, Suite 2400
Southfield, MI 48075
Attention: General Counsel

and if to the Committee, to its retained counsel. All notices under the Agreement shall be sufficient only if delivered by overnight mail. Any notice shall be deemed to be given only upon actual receipt.

### Section 12. Bankruptcy Related Matters

The Committee shall apply promptly to the Bankruptcy Court for approval of the Committee's retention of AlixPartners under the terms of the Agreement. The form of retention application and proposed order shall be reasonably acceptable to AlixPartners. AlixPartners shall have no obligation to provide services unless AlixPartners' retention under the terms of the Agreement is approved by a final order of the Bankruptcy Court reasonably acceptable to AlixPartners. The Committee shall assist, or cause their counsel to assist, with filing, serving and noticing of papers related to AlixPartners' fee and expense matters.

The Committee and AlixPartners agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all matters arising under or in connection with this Agreement.

AlixPartners will have the right to obtain independent legal counsel to obtain advice with respect to its services under this engagement. The Company will reimburse AlixPartners' for the reasonable fees and expenses of such independent legal counsel.

AlixPartners acknowledges that, during the pendency of any Bankruptcy Court approved retention, the indemnification provisions and Liability Cap set forth above may be subject to modification as stated within the Bankruptcy Court's retention order.

Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior to, and subsequent to, the date of filing, AlixPartners may have incurred but not billed fees and reimbursable expenses which relate to the prepetition period. AlixPartners will seek Bankruptcy Court approval to apply the retainer to these amounts.

If AlixPartners finds it desirable to augment its consulting staff with independent contractors (an "I/C") in this case, (i) AlixPartners will file, and require the I/C to file, 2014 affidavits indicating that the I/C has reviewed the list of the interested parties in this case, disclosing the I/C's relationships, if any, with the interested parties and indicating that the I/C is disinterested; (ii) the I/C must remain disinterested

during the time that AlixPartners is involved in providing services on behalf of the Committee; and (iii) the I/C must represent that he/she will not work for the Committee or other parties in interest in this case during the time AlixPartners is involved in providing services to the Committee. AlixPartners' standard practice is to charge for an I/C's services at the rate equal to the compensation provided by AlixPartners to such I/C.

### Section 13. Data Protection

All capitalized terms used in this Section and not otherwise defined in this Agreement shall have the meanings given to them in the General Data Protection Regulation ((EU) 2016/679) (the "GDPR") and all applicable legislation implementing any provisions of the GDPR as may be enacted from time to time (together the "Data Protection Legislation").

The parties acknowledge and agree that, in performing services pursuant to this Agreement, AlixPartners may from time to time be required to Process certain Personal Data on behalf of the Committee. In such cases: (1) the Committee will ensure that it is lawfully permitted to transfer the Personal Data to AlixPartners for the purposes of AlixPartners performing services under this Agreement; and (2) AlixPartners shall (i) act as the Committee's Processor for the purposes of the Data Protection Legislation; (ii) only Process such Personal Data in accordance with the Committee's written instructions (including when making an international transfer of Personal Data) unless required to do so by law; (iii) implement appropriate technical and organisational measures to reasonably protect that Personal Data against unauthorized or unlawful Processing and accidental, unauthorized or unlawful loss, destruction, alteration, damage, disclosure or access; and (iv) obtain commitments from all AlixPartners' personnel who have access to and/or Process such Personal Data to keep such Personal Data confidential.

If AlixPartners is Processing Personal Data relating to individuals located in the EU or otherwise subject to the Data Protection Legislation, (x) AlixPartners and the Committee shall each comply with all relevant provisions of the Data Protection Legislation, and (y) the nature and extent of such Processing shall be set out in the GDPR Data Protection Schedule of this Agreement. AlixPartners shall, in relation to any Personal Data processed by AlixPartners in connection with this Agreement: (1) at the Company's cost, assist the Committee in complying with its obligations as the Controller (or as Processor, as the case may be) of the Personal Data, to respond to requests from Data Subjects exercising their rights set out in Articles 12 to 22 of the GDPR; (2) notify the Committee without undue delay on becoming aware of a Personal Data Breach; (3) upon termination or expiration of this Agreement, at the written direction of the Committee either delete or return any Personal Data and any copies thereof to the Committee (except to the extent AlixPartners is required by law to retain such Personal Data, and except for Personal Data located on AlixPartners' disaster recovery or backup systems

**AlixPartners, LLP**
General Terms and Conditions

where it will be destroyed upon the normal expiration of the backup files); and (4) maintain appropriate records to demonstrate compliance with this Section.

AlixPartners is part of an international business, headquartered in the United States of America ("US"). AlixPartners may in the ordinary course of its business, including the performance of the services under this Agreement, transfer Personal Data received outside the US to its US-based affiliates. AlixPartners' US-based affiliates are certified under the EU-US Privacy Shield framework and any transfer of Personal Data from outside the US to its US-based affiliates will be transferred subject to, and in accordance with, the Privacy Shield requirements. AlixPartners' entities located in the EU have also entered into standard data protection clauses (in accordance with Article 46.2 (c) of the GDPR) with their non-EU-based affiliates. The Committee acknowledges and agrees that AlixPartners, as reasonably required for the performance of the services pursuant to this Agreement, be permitted to transfer Personal Data to its affiliates, subject to, and in accordance with, the Privacy Shield requirements and/or the aforementioned standard data protection clauses. Except as allowed above, AlixPartners shall not transfer any Personal Data received in the EU and subject to the Data Protection Legislation outside of the European Economic Area without the prior written consent of the Committee.

The Committee consents to AlixPartners appointing third party Processors of Personal Data under this Agreement. AlixPartners confirms that it will enter into a written agreement with any third-party Processor prior to supplying them with the Personal Data, incorporating terms which are substantially similar to those set forth in this Section. As between the Committee and AlixPartners, AlixPartners shall remain fully liable for all acts or omissions of any third-party Processor appointed by AlixPartners pursuant to this paragraph.

Rev. 01 May 2018