**Presentment Date and Time: September 13, 2019, at 12:00 p.m. (prevailing Eastern Time)**
**Objection Deadline: September 10, 2019, at 4:00 p.m. (prevailing Eastern Time)**

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Chad J. Husnick, P.C.
W. Benjamin Winger (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) ) ) ) ) ) | Chapter 11 |
| BARNEYS NEW YORK, INC., *et al.*,[1] | | Case No. 19-36300 (CGM) |
| Debtors. | | (Jointly Administered) |

**NOTICE OF PRESENTMENT ON DEBTORS' APPLICATION FOR ENTRY
OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT
OF KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL
LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION
EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

**PLEASE TAKE NOTICE** that on August 27, 2019, the above-captioned debtors and

debtors in possession (collectively, the "Debtors") filed the Debtors' Application for Entry of an

Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis

International LLP as Attorneys for the Debtors and Debtors in Possession Effective *Nunc Pro Tunc*

to the Petition Date (the "Application"). The Application will be presented for signature by the

Debtors to the Honorable Cecelia G. Morris, Chief United States Bankruptcy Judge, United States

Bankruptcy Court for the Southern District of New York (the "Court"), 355 Main Street,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY
Licensing Corp. (4177); and Barneys Asia Co. LLC (0819). The location of the Debtors' service address is 575
Fifth Avenue, New York, New York 10017.

Poughkeepsie, New York 12601, on **September 13, 2019, at 12:00 p.m.**, **prevailing Eastern Time**.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (each, an "Objection") to the Application and the relief requested therein shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the *Interim Order Establishing Certain Notice, Case Management, and Administrative Procedures* [Docket No. 52] (the "Case Management Order") approved by this Court shall set forth the basis for the Objection and the specific grounds therefore, and shall be filed with the Court electronically in accordance with General Order M-399 by registered users of the Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website for the Court), with a hard copy delivered directly to chambers pursuant to Local Bankruptcy Rule 9070-1 and served so as to be actually received no later than **September 10**, 2019, **at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline"), upon: (a) Barneys New York, Inc., 575 Fifth Avenue, New York, New York 10017; Attn: Grace Fu; (b) proposed co-counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn:  Edward O. Sassower, P.C., Joshua A. Sussberg, P.C., and Rebecca Chaikin, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Chad J. Husnick, P.C. and W. Benjamin Winger, and Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, New York 10022, Attn: Steven J. Reisman; (c) the United States Trustee, 11A Clinton Avenue, Room 620, Albany, New York 12207, Attn: Alicia Leonhard; (d) counsel to any statutory committee appointed in these chapter 11 cases; (e) counsel to the Prepetition ABL Agent, (x) Riemer & Braunstein LLP, 100 Cambridge Street, Boston, Massachusetts 02114, Attn: Donald E. Rothman and (y) Riemer & Braunstein LLP,

Times Square Tower, Seven Times Square, Suite 2506, New York, New York 10036, Attn: Steven

E. Fox; (f) counsel to the Term Loan Agent, Choate Hall & Stewart LLP, Two International Place,

Boston, Massachusetts 02110, Attn: Kevin J. Simard and Mark Silva; and (g) counsel to the DIP

agent and the DIP Lenders, Jones Day, 250 Vesey Street, New York, New York 10281, Attn:

Sidney P. Levinson, Michael Schneidereit, and Jeremy Evans; (h) any party that has requested

notice pursuant to Bankruptcy Rule 2002; and (i) any other entities with a particularized interest

in the subject matter of the Application.

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served

with respect to the Application, the Debtors shall, on or after the Objection Deadline, submit to

the Court an order substantially in the form annexed as **Exhibit A** to the Application, which order

the Court may enter with no further notice or opportunity to be heard.

PLEASE TAKE FURTHER NOTICE that a copy of the Application may be obtained

free of charge by visiting the website of Stretto at http://case.stretto.com/barneys.  You may also

obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in

accordance with the procedures and fees set forth therein.

Dated: August 27, 2019          */s/ Joshua A. Sussberg, P.C.*
New York, New York              Edward O. Sassower, P.C.
                                Joshua A. Sussberg, P.C.
                                **KIRKLAND & ELLIS LLP**
                                **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                601 Lexington Avenue
                                New York, New York 10022
                                Telephone:    (212) 446-4800
                                Facsimile:    (212) 446-4900

                                -and-

                                Chad J. Husnick, P.C.
                                W. Benjamin Winger (admitted *pro hac vice*)
                                **KIRKLAND & ELLIS LLP**
                                **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                300 North LaSalle Street
                                Chicago, Illinois 60654
                                Telephone:    (312) 862-2000
                                Facsimile:    (312) 862-2200

                                *Proposed Co-Counsel for the Debtors and Debtors in Possession*

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Chad J. Husnick, P.C.
W. Benjamin Winger (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DEBTORS' APPLICATION FOR ENTRY**
**OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT**
**OF KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL**
**LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION**
**EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this application (this "Application") for the entry of an order (the "Order"), substantially in the

form attached hereto as **Exhibit A**, authorizing the Debtors to retain and employ Kirkland & Ellis

LLP and Kirkland & Ellis International LLP (collectively, "Kirkland") as their attorneys

effective *nunc pro tunc* to the Petition Date (as defined herein).  In support of this Application, the

Debtors submit the declaration of Joshua A. Sussberg, the president of Joshua A. Sussberg, P.C.,

a partner of Kirkland & Ellis LLP, and a partner of Kirkland & Ellis International LLP (the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's, Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue New York, New York 10017.

"Sussberg Declaration"), which is attached hereto as **Exhibit B**, and the declaration of Mohsin Y. Meghji, Chief Restructuring Officer of Barneys New York, Inc., which is attached hereto as **Exhibit C** (the "Meghji Declaration"). In further support of this Application, the Debtors respectfully state as follows.

**Jurisdiction and Venue**

1.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the Court entering a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 327(a) and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Bankruptcy Rules and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York  (the "Local Rules").

**Background**

4.      On August 6, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code. On August 7, 2019, the Court entered an order [Docket No. 41] authorizing the joint administration and procedural consolidation of the chapter 11 cases pursuant

2

to Bankruptcy Rule 1015(b).   On August 15, 2019, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors

pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 131.]

5.      A description of the Debtors' businesses, the reasons for commencing the chapter

11 cases, and the relief sought to allow for a smooth transition into chapter 11 are set forth in the

*Declaration of Mohsin Y. Meghji, Chief Restructuring Officer of Barneys New York, Inc., in*

*Support of Debtors' Chapter 11 Petitions and First Day Motions*, filed on August 6, 2019 [Docket

No. 22], incorporated herein by reference.

## Relief Requested

6.      By this Application, the Debtors seek the entry of the Order authorizing the

retention and employment of Kirkland as their attorneys in accordance with the terms and

conditions set forth in that certain engagement letter between the Debtors and Kirkland dated as

of December 21, 2018 (the "Engagement Letter"), a copy of which is attached hereto as **Exhibit 1**

to **Exhibit A** and incorporated herein by reference.[2]

## Kirkland's Qualifications

7.      The Debtors seek to retain Kirkland because of Kirkland's recognized expertise and

extensive experience and knowledge in the field of debtors' protections, creditors' rights, and

business reorganizations under chapter 11 of the Bankruptcy Code.

---

[2]     The Debtors also seek to employ and retain Katten Muchin Rosenman LLP ("Katten") as their conflicts counsel to handle matters that the Debtors may encounter that cannot be handled appropriately by Kirkland because of a conflict of interest or that the Debtors believe can be more appropriately handled by Katten.  It is intended that the services of Katten shall complement, and not duplicate, the services to be rendered by Kirkland.  Moreover, the responsibilities of Katten shall be confined to discrete legal matters that are distinct from the matters handled by Kirkland.  Katten shall act on its own and will not act under the direct supervision of Kirkland.  Indeed, the Debtors are extremely mindful of the need to avoid duplication of services.

8.      Kirkland has been actively involved in major chapter 11 cases in this district and

has represented debtors in many cases, including, among others:  *In re Hollander Sleep Products,*

*LLC*, No. 19-11608 (MEW) (Bankr. S.D.N.Y. July 3, 2019); *In re Sungard Availability Servs.*

*Capital, Inc.*, No. 19-22915 (RDD) (Bankr. S.D.N.Y. June 25, 2019); *In re Windstream Holdings,*

*Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. Feb. 28, 2019); *In re FULLBEAUTY Brands*

*Holdings Corp.*, No 19-22185 (RDD) (Bankr. S.D.N.Y. Feb. 3, 2019); *In re Aegean Marine*

*Petroleum Network, Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Nov. 6, 2018); *In re Nine West*

*Holdings, Inc.*, No. 18-10947 (SCC) (Bankr. S.D.N.Y. June 29, 2018); *In re Cenveo, Inc.*, No. 18-

22178 (RDD) (Bankr. S.D.N.Y. Mar. 8, 2018); *In re BCBG Max Azria Global Holdings, LLC*, No.

17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Avaya Inc.*, No. 17-10089 (SMB) (Bankr.

S.D.N.Y. Jan. 19, 2017); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y.

Sept. 10, 2015).[3]

9.      In preparing for its representation of the Debtors in these chapter 11 cases, Kirkland

has become familiar with the Debtors' businesses and many of the potential legal issues that may

arise in the context of these chapter 11 cases.  The Debtors believe that Kirkland is both

well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient

and timely manner.

**Services to be Provided**

10.     Subject to further order of the Court, and consistent with the Engagement Letter,

the Debtors request the retention and employment of Kirkland to render the following legal

services:

---

[3]    Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application.
       Copies of these orders are available upon request to Kirkland.

a.      advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

b.      advising and consulting on the conduct of these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

c.      attending meetings and negotiating with representatives of creditors and other parties in interest;

d.      taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

e.      preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

f.      representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g.      advising the Debtors in connection with any potential sale of assets;

h.      appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.      advising the Debtors regarding tax matters;

j.      taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.      performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including:  (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

### Professional Compensation

11.      Kirkland intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy

5

Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court.  The hourly rates and corresponding rate structure Kirkland will use in these chapter 11 cases are the same as the hourly rates and corresponding rate structure that Kirkland uses in other restructuring matters, as well as similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required. These rates and the rate structure reflect that such restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

12.    Kirkland operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

13.    Kirkland's current hourly rates for matters related to these chapter 11 cases range as follows:[4]

| Billing Category[5] | U.S. Range |
|---|---|
| Partners | $1,025-$1,795 |
| Of Counsel | $595-$1,705 |
| Associates | $595-$1,125 |
| Paraprofessionals | $235-$460 |

14.    Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  Hourly

---

[4]    For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable currency.  When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable conversion rate.  After converting these foreign rates into U.S. dollars, it is possible that certain rates may exceed the billing rates listed in the chart herein.

[5]    Although Kirkland does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event that it becomes necessary to use contract attorneys, Kirkland will not charge a markup to the Debtors with respect to fees billed by such attorneys.  Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Kirkland will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.  While the rate ranges provided for in this Application may change if an individual leaves or joins Kirkland, and if any such individual's billing rate falls outside the ranges disclosed above, Kirkland does not intend to update the ranges for such circumstances.

6

rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[6]

15.     Kirkland represented the Debtors during the approximately seven month period before the Petition Date, using the hourly rates set forth in the Sussberg Declaration. Moreover, these hourly rates are consistent with the rates that Kirkland charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

16.     The rate structure provided by Kirkland is appropriate and not significantly different from (a) the rates that Kirkland charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work Kirkland will perform in these chapter 11 cases.

17.     It is Kirkland's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also Kirkland's policy to charge its clients only the amount actually incurred by Kirkland in connection with such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

18.     To ensure compliance with all applicable deadlines in these chapter 11 cases, from time to time Kirkland utilizes the services of overtime secretaries. Kirkland charges fees for these services pursuant to the Engagement Letter, which permits Kirkland to bill the Debtors for

---

[6]     For example, like many of its peer law firms, Kirkland typically increases the hourly billing rate of attorneys and paraprofessionals twice a year in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013). As set forth in the Order, Kirkland will provide ten business-days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file any such notice with the Court.

overtime secretarial charges that arise out of business necessity. In addition, Kirkland professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Cases* (the "Amended Guidelines").

19.     Kirkland currently charges the Debtors $0.16 per page for standard duplication in its offices in the United States. Notwithstanding the foregoing and consistent with the Local Bankruptcy Rules and the Amended Guidelines, Kirkland will charge no more than $0.10 per page for standard duplication services in these chapter 11 cases. Kirkland does not charge its clients for incoming facsimile transmissions. Kirkland has negotiated a discounted rate for Westlaw computer-assisted legal research. Computer-assisted legal research is used whenever the researcher determines that using Westlaw is more cost effective than using traditional (non-computer assisted legal research) techniques.

## Compensation Received by Kirkland from the Debtors

20.     Per the terms of the Engagement Letter, on January 3, 2019, the Debtors paid $200,000 to Kirkland, which, as stated in the Engagement Letter, constituted an "advance payment retainer" as defined in Rule 1.15(c) of the Illinois Rules of Professional Conduct and *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007). Subsequently, the Debtors paid to Kirkland additional advance payment retainer totaling $2,629,002.03 in the aggregate. As stated in the Engagement Letter, any advance payment retainer is earned by Kirkland upon receipt, any advance payment retainer becomes the property of Kirkland upon receipt, the Debtors no longer have a property interest in any advance payment retainer upon Kirkland's receipt, any advance payment retainer will be placed in Kirkland's general account and will not be held in a client trust

account, and the Debtors will not earn any interest on any advance payment retainer.[7]   A chart identifying the statements setting forth the professional services provided by Kirkland to the Debtors and the expenses incurred by Kirkland in connection therewith, as well as the advance payment retainer transferred by the Debtors to Kirkland, prior to the Petition Date is set forth in the Sussberg Declaration.

21.    Pursuant to Bankruptcy Rule 2016(b), Kirkland has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Kirkland or (b) any compensation another person or party has received or may receive.

22.    As of the Petition Date, the Debtors did not owe Kirkland any amounts for legal services rendered before the Petition Date.  Although certain expenses and fees may have been incurred but not yet applied to Kirkland's advance payment retainer, the amount of Kirkland's advance payment retainer always exceeded any amounts listed or to be listed on statements describing services rendered and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) prior to the Petition Date.

**Kirkland's Disinterestedness**

23.    To the best of the Debtors' knowledge and as disclosed herein and in the Sussberg Declaration,  (a) Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland has no connection to the

---

[7]    The Engagement Letter permits Kirkland to retain prepetition advance payment retainer held by Kirkland as of the Petition Date rather than applying such prepetition advance payment retainer to pay postpetition fees and expenses. In light of the facts and circumstances of these chapter 11 cases, Kirkland will retain any prepetition advance payment retainer held by Kirkland as of the Petition Date and will not apply any such amounts to postpetition fees and expenses.

Debtors, their creditors, or other parties in interest, except as may be disclosed in the Sussberg

Declaration.

24.     Kirkland will review its files periodically during the pendency of these chapter 11

cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new

relevant facts or relationships are discovered or arise, Kirkland will use reasonable efforts to

identify such further developments and will promptly file a supplemental declaration, as required

by Bankruptcy Rule 2014(a).

## Supporting Authority

25.     The Debtors seek retention of Kirkland as their attorneys pursuant to section 327(a)

of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers,
> auctioneers, or other professional persons, that do not hold or
> represent an interest adverse to the estate, and that are disinterested
> persons, to represent or assist the [debtor] in carrying out the
> [debtor]'s duties under this title.

11 U.S.C. § 327(a).

26.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name
> of the [firm] to be employed, the reasons for the selection, the
> professional services to be rendered, any proposed arrangement for
> compensation, and, to the best of the applicant's knowledge, all of
> the [firm's] connections with the debtor, creditors, any other party
> in interest, their respective attorneys and accountants, the United
> States trustee, or any person employed in the office of the United
> States trustee.

Fed. R. Bankr. P. 2014.

27.     The Debtors submit that for all the reasons stated above and in the Sussberg

Declaration, the retention and employment of Kirkland as counsel to the Debtors is warranted.

Further, as stated in the Sussberg Declaration, Kirkland is a "disinterested person" within the

meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Sussberg Declaration.

### Notice

28.     The Debtors have provided notice of this Application to the following parties: (a) the United States Trustee for the Southern District of New York; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition ABL Agent; (d) counsel to the Term Loan Agent; (e) counsel to the DIP Agent and the DIP Lenders; (f) the United States Attorney's Office for the Southern District of New York; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for all states in which the Debtors conduct business; and (j) counsel to the committee of unsecured creditors appointed in these cases.  A copy of this Application is also available on the website of the Debtors' notice and claims agent at http://case.stretto.com/barneys. In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

### No Prior Request

29.     No prior request for the relief sought in this Application has been made to this or any other court.


*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated:  August 27, 2019          */s/ Mohsin Y. Meghji*
New York, New York               Name: Mohsin Y. Meghji
                                 Title:   Chief Restructuring Officer, Barneys New York, Inc.

**<u>EXHIBIT A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CMG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP**
**AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE**
***NUNC PRO TUNC* TO THE PETITION DATE**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") for the entry of an order (this "Order") authorizing the

Debtors to retain and employ Kirkland & Ellis LLP and Kirkland & Ellis International LLP

(collectively, "Kirkland") as their attorneys effective *nunc pro tunc* to the Petition Date, pursuant

to sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rules

2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York

(the "Local Bankruptcy Rules"); and the Court having reviewed the Application, the Declaration

of Joshua A. Sussberg, the president of Joshua A. Sussberg, P.C., a partner of Kirkland & Ellis

LLP, and a partner of Kirkland & Ellis International LLP (the "Sussberg Declaration"), and the

declaration of Mohsin Y. Meghji, Chief Restructuring Officer of Barneys New York, Inc. (the

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

"Meghji Declaration"); and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that the Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found based on the representations made in the Application and in the Sussberg Declaration that (a) Kirkland does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and the Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided adequate and appropriate notice of the Application under the circumstances and that no other or further notice is required; and the Court having reviewed the Application and having heard statements in support of the Application at a hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted to the extent set forth herein.

2.      The Debtors are authorized to retain and employ Kirkland as their attorneys *nunc pro tunc* to the Petition Date in accordance with the terms and conditions set forth in the Application and in the Engagement Letter attached hereto as **Exhibit 1**.

3.      Kirkland is authorized to provide the Debtors with the professional services as

described in the Application and the Engagement Letter. Specifically, but without limitation,

Kirkland will render the following legal services:

a.      advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

b.      advising and consulting on their conduct during these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

c.      attending meetings and negotiating with representatives of creditors and other parties in interest;

d.      taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

e.      preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

f.      representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g.      advising the Debtors in connection with any potential sale of assets;

h.      appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.      advising the Debtors regarding tax matters;

j.      taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.      performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

4.      Kirkland shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any other applicable procedures and orders of the Court.

5.      Kirkland is authorized without further order of the Court to reserve and apply amounts from the prepetition advance payment retainer that would otherwise be applied toward payment of postpetition fees and expenses as are necessary and appropriate to compensate and reimburse Kirkland for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practices.

6.      Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached to the Application, the reimbursement provisions allowing the reimbursement of fees and expenses incurred in connection with participating in, preparing for, or responding to any action, claim, suit, or proceeding brought by or against any party that relates to the legal services provided under the Engagement Letter and fees for defending any objection to Kirkland's fee applications under the Bankruptcy Code are not approved pending further order of the Court.

7.      Kirkland shall not charge a markup to the Debtors with respect to fees billed by contract attorneys who are hired by Kirkland to provide services to the Debtors and shall ensure that any such contract attorneys are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

8.      Kirkland shall provide ten-business-days' notice to the Debtors, the U.S. Trustee, and any official committee before any increases in the rates set forth in the Application or the

4

Engagement Letter are implemented and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

9.      Kirkland shall not withdraw as Debtors' counsel before the effective date of any chapter 11 plan confirmed in these chapter 11 cases without prior approval of the Court in accordance with Local Bankruptcy Rule 2090-1(e).

10.     The Debtors and Kirkland are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

11.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Bankruptcy Rules are satisfied by the contents of the Application.

12.     To the extent the Application, the Sussberg Declaration, the Meghji Declaration, or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

13.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated: _____, 2019
Poughkeepsie, New York                    _____
                                          THE HONORABLE CECELIA G. MORRIS
                                          UNITED STATES BANKRUPTCY JUDGE

5

# **EXHIBIT 1**

**Engagement Letter**

# KIRKLAND & ELLIS LLP

**AND AFFILIATED PARTNERSHIPS**

601 Lexington Avenue
New York, NY 10022
United States

+1 212 446 4800

www.kirkland.com

Joshua A. Sussberg, P.C.
To Call Writer Directly:
+1 212 446 4829
joshua.sussberg@kirkland.com

Facsimile:
+1 212 446 4900

December 21, 2018

Barney's New York, Inc.
Barney's, Inc.
575 Fifth Avenue, 11th Floor
New York, NY 10017
Attn: Daniella Vitale, CEO

Re:    Retention to Provide Legal Services

Dear Ms. Vitale:

We are very pleased that you have asked us to represent Barney's New York, Inc., Barney's, Inc. and only those subsidiaries listed in the addendum hereto, as the same may be supplemented from time to time (collectively, "Client") in connection with a potential restructuring. Please note, the Firm's representation is only of Client; the Firm does not and will not represent any direct or indirect shareholder, director, officer, partner, employee, affiliate, or joint venturer of Client or of any other entity.

**General Terms.** This retention letter (this "Agreement") sets forth the terms of Client's retention of Kirkland & Ellis LLP (and its affiliated entity Kirkland & Ellis International LLP (collectively, the "Firm")) to provide legal services and constitutes an agreement between the Firm and Client (the "Parties"). This Agreement sets forth the Parties' entire agreement for rendering professional services for the current matter, as well as for all other existing or future matters (collectively, the "Engagement"), except where the Parties otherwise agree in writing.

**Fees.** The Firm will bill Client for fees incurred at its regular hourly rates and in quarterly increments of an hour (or in smaller time increments as otherwise required by a court). The Firm reserves the right to adjust the Firm's billing rates from time to time in the ordinary course of the Firm's representation of Client.

Although the Firm will attempt to estimate fees to assist Client in Client's planning if requested, such estimates are subject to change and are not binding unless otherwise expressly and unequivocally stated in writing.

Beijing    Boston    Chicago    Dallas    Hong Kong    Houston    London    Los Angeles    Munich    Palo Alto    San Francisco    Shanghai    Washington, D.C.

## KIRKLAND & ELLIS LLP

December 21, 2018
Page 2

**Expenses.** Expenses related to providing services shall be included in the Firm's statements as disbursements advanced by the Firm on Client's behalf. Such expenses include photocopying, printing, scanning, witness fees, travel expenses, filing and recording fees, certain secretarial overtime, and other overtime expenses, postage, express mail, and messenger charges, deposition costs, computerized legal research charges, and other computer services, and miscellaneous other charges. Client shall pay directly (and is solely responsible for) certain larger costs, such as consultant or expert witness fees and expenses, and outside suppliers' or contractors' charges, unless otherwise agreed by the Parties. By executing this Agreement below, Client agrees to pay for all charges in accordance with the Firm's schedule of charges, a copy of which is attached hereto at Schedule 1, as revised from time to time.

**Billing Procedures.** The Firm's statements of fees and expenses are typically delivered monthly, but the Firm reserves the right to alter the timing of delivering its statements depending on circumstances. Client may have the statement in any reasonable format it chooses, but the Firm will select an initial format for the statement unless Client otherwise requests in writing. Depending on the circumstances, however, estimated or summary statements may be provided, with time and expense details to follow thereafter.

**Retainer.** Client agrees to provide to the Firm an "advance payment retainer," as defined in Rule 1.15(c) of the Illinois Rules of Professional Conduct, *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007), and *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and cases cited therein), in the amount of $200,000.00. In addition, Client agrees to provide one or more additional advance payment retainers upon request by the Firm so that the amount of any advance payment retainers remains at or above the Firm's estimated fees and expenses. The Firm may apply the advance payment retainers to any outstanding fees as services are rendered and to expenses as they are incurred. Client understands and acknowledges that any advance payment retainers are earned by the Firm upon receipt, any advance payment retainers become the property of the Firm upon receipt, Client no longer has a property interest in any advance payment retainers upon the Firm's receipt, any advance payment retainers will be placed in the Firm's general account and will not be held in a client trust account, and Client will not earn any interest on any advance payment retainers; provided, however, that solely to the extent required under applicable law, at the conclusion of the Engagement, if the amount of any advance payment retainers held by the Firm is in excess of the amount of the Firm's outstanding and estimated fees, expenses, and costs, the Firm will pay to Client the amount by which any advance payment retainers exceed such fees, expenses, and costs. Client further understands and acknowledges that the use of advance payment retainers is an integral condition of the Engagement, and is necessary to ensure that: Client continues to have access to the Firm's services; the Firm is compensated for its representation of Client; the Firm is not a pre-petition creditor in the event of a Restructuring Case; and that in light of the foregoing, the provision of the advance payment retainers is in Client's best interests. The fact that Client

# KIRKLAND & ELLIS LLP

December 21, 2018
Page 3

has provided the Firm with an advance payment retainer does not affect Client's right to terminate the client-lawyer relationship.

Please be advised that there is another type of retainer known as a "security retainer," as defined in *Dowling v. Chicago Options Assoc.*, 875 N.E.2d at 1018, and *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and cases cited therein). A security retainer remains the property of the client until the lawyer applies it to charges for services that are actually rendered and expenses that are incurred. Any unearned funds are then returned to the client. In other circumstances not present here, the Firm would consider a security retainer and Client's funds would be held in the Firm's segregated client trust account until applied to pay fees and expenses. Funds in a security retainer, however, can be subject to claims of Client's creditors and, if taken by creditors, may leave Client unable to pay for ongoing legal services, which may result in the Firm being unable to continue the Engagement. Moreover, a security retainer creates clawback risks for the Firm in the event of an insolvency proceeding. The choice of the type of retainer to be used is Client's choice alone, but for the Engagement and for the reasons set forth above, the Firm is unwilling to represent Client in the Engagement without using the advance payment retainer.

**Termination.** The Engagement may be terminated by either Party at any time by written notice by or to Client. The Engagement will end at the earliest of (a) Client's termination of the Engagement, (b) the Firm's withdrawal, and (c) the substantial completion of the Firm's substantive work. If permission for withdrawal is required by a court, the Firm shall apply promptly for such permission, and termination shall coincide with the court order for withdrawal. If this Agreement or the Firm's services are terminated for any reason, such termination shall be effective only to terminate the Firm's services prospectively and all the other terms of this Agreement shall survive any such termination.

Upon cessation of the Firm's active involvement in a particular matter (even if the Firm continues active involvement in other matters on Client's behalf), the Firm will have no further duty to inform Client of future developments or changes in law as may be relevant to such matter. Further, unless the Parties mutually agree in writing to the contrary, the Firm will have no obligation to monitor renewal or notice dates or similar deadlines that may arise from the matters for which the Firm had been retained.

**Cell Phone and E-Mail Communication.** The Firm hereby informs Client and Client hereby acknowledges that the Firm's attorneys sometimes communicate with their clients and their clients' professionals and agents by cell telephone, that such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege, and that Client must inform the Firm if Client does not wish the Firm to discuss privileged matters on cell telephones with Client or Client's professionals or agents.

## KIRKLAND & ELLIS LLP

December 21, 2018
Page 4

The Firm hereby informs Client and Client hereby acknowledges that the Firm's attorneys sometimes communicate with their clients and their clients' professionals and agents by unencrypted e-mail, that such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege, and that Client must inform the Firm if Client wishes to institute a system to encode all e-mail between the Firm and Client or Client's professionals or agents.

**File Retention.** All records and files will be retained and disposed of in compliance with the Firm's policy in effect from time to time. Subject to future changes, it is the Firm's current policy generally not to retain records relating to a matter for more than five years. Upon Client's prior written request, the Firm will return client records that are Client's property to Client prior to their destruction. It is not administratively feasible for the Firm to advise Client of the closing of a matter or the disposal of records. The Firm recommends, therefore, that Client maintain Client's own files for reference or submit a written request for Client's client files promptly upon conclusion of a matter. Notwithstanding anything to the contrary herein, Client acknowledges and agrees that any applicable privilege of Client (including any attorney-client and work product privilege or any duty of confidentiality) (collectively, the "Privileges") belongs to Client alone and not to any successor entity (including without limitation the Client after a change in control or other similar restructuring or non-restructuring transaction (including without limitation a reorganized Client after the effective date of a plan of reorganization), whether through merger, asset or equity sale, business combination, or otherwise, irrespective of whether such transaction occurs in a Restructuring Case or on an out-of-court basis (in each case, a "Transaction")). Client hereby waives any right, title, and interest of such successor entity to all information, data, documents, or communications in any format covered by the Privileges that is in the possession of the Firm ("Firm Materials"), to the extent that such successor entity had any right, title, and interest to such Firm Materials. For the avoidance of doubt, Client agrees and acknowledges that after a Transaction, such successor entity shall have no right to claim or waive the Privileges or request the return of any such Firm Materials; instead, such Firm Materials shall remain in the Firm's sole possession and control for its exclusive use, and the Firm will (a) not waive any Privileges or disclose the Firm Materials, (b) take all reasonable steps to ensure that the Privileges survive and remain in full force and effect, and (c) assert the Privileges to prevent disclosure of any Firm Materials.

**Data Protection.** You further agree that, if you provide us with personal data, you have complied with applicable data protection legislation and that we may process such personal data in accordance with our Data Transfer and Privacy Policy at www.kirkland.com. We process your personal data in order to (i) carry out work for you; (ii) share the data with third parties such as expert witnesses and other professional advisers if our work requires; (iii) comply with applicable laws and regulations and (iv) provide you with information relating to our Firm and its services.

# KIRKLAND & ELLIS LLP

December 21, 2018
Page 5

**Conflicts of Interest.** As is customary for a law firm of the Firm's size, there are numerous business entities, with which Client currently has relationships, that the Firm has represented or currently represents in matters unrelated to Client.

Further, in undertaking the representation of Client, the Firm wants to be fair not only to Client's interests but also to those of the Firm's other clients. Because Client is engaged in activities (and may in the future engage in additional activities) in which its interests may diverge from those of the Firm's other clients, the possibility exists that one of the Firm's current or future clients may take positions adverse to Client (including litigation or other dispute resolution mechanisms) in a matter in which such other client may have retained the Firm be retainedor one of Client's adversaries may retain the Firm in a matter adverse to another entity or person.

In the event a present conflict of interest exists between Client and the Firm's other clients or in the event one arises in the future, Client agrees to waive any such conflict of interest or other objection that would preclude the Firm's representation of another client (a) in other current or future matters substantially unrelated to the Engagement or (b) other than during a Restructuring Case (as defined below), in other matters related to Client (such representation an "Allowed Adverse Representation"). By way of example, such Allowed Adverse Representations might take the form of, among other contexts: litigation (including arbitration, mediation and other forms of dispute resolution); transactional work (including consensual and non-consensual merger, acquisition, and takeover situations); counseling (including advising direct adversaries and competitors); and restructuring (including bankruptcy, insolvency, financial distress, recapitalization, equity and debt workouts, and other transactions or adversarial adjudicative proceedings related to any of the foregoing and similar matters).

Client also agrees that it will not, for itself or any other entity or person, assert that either (i) the Firm's representation of Client or any of Client's affiliates in any past, present, or future matter or (ii) the Firm's actual or possible possession of confidential information belonging to Client or any of Client's affiliates is a basis to disqualify the Firm from representing another entity or person in any Allowed Adverse Representation. Client further agrees that any Allowed Adverse Representation does not breach any duty that the Firm owes to Client or any of Client's affiliates. Client also agrees that the Firm's representation in the Engagement is solely of Client and that no member or other entity or person related to it (such as a shareholder, parent, subsidiary, affiliate, director, officer, partner, employee, or joint venturer) has the status of a client for conflict of interest purposes.

In addition, if a waiver of a conflict of interest necessary to allow the Firm to represent another client in a matter that is not substantially related to the Engagement is not effective for any reason, Client agrees that the Firm may withdraw from the Engagement. Should that occur, Client will not, for itself or any other entity or person, seek to preclude such termination of services or assert that either (a) the Firm's representation of Client or any of Client's affiliates in

# KIRKLAND & ELLIS LLP

December 21, 2018
Page 6

any past, present, or future matter or (b) the Firm's actual or possible possession of confidential information belonging to Client or any of Client's affiliates is a basis to disqualify the Firm from representing such other client or acting on such adverse matter.

It is important that you review this letter carefully and consider all of the advantages and disadvantages of waiving certain conflicts of interests that would otherwise bar the Firm from representing parties with interests adverse to you during the time in which the Firm is representing you. You also understand that because this waiver includes future issues and future clients that are unknown and unknowable at this time, it is impossible to provide you with any more details about those prospective clients and matters. Thus, in choosing to execute this waiver, you have recognized the inherent uncertainty about the array of potential matters and clients the Firm might take on in matters that are adverse to you but have nonetheless decided it is in your interest to waive conflicts of interest regarding the Allowed Adverse Representations and waive rights to prohibit the Firm's potential withdrawal should a conflict waiver prove ineffectual.

The Firm informs Client that certain entities owned by current or former Firm attorneys and senior staff ("attorney investment entities") have investments in funds or companies that may, directly or indirectly, be affiliated with Client, hold investments in Client's debt or equity securities, may be adverse to Client, or conduct commercial transactions with Client (each, a "Passive Holding"). The attorney investment entities are passive and have no management or other control rights in such funds or companies. The Firm notes that other persons may in the future assert that a Passive Holding creates, in certain circumstances, a conflict between the Firm's exercise of its independent professional judgment in rendering advice to Client and the financial interest of Firm attorneys participating in the attorney investment entities, and such other persons might seek to limit Client's ability to use the Firm to advise Client on a particular matter. While the Firm cannot control what a person might assert or seek, the Firm believes that the Firm's judgment will not be compromised by virtue of any Passive Holding. Please let us know if Client has any questions or concerns regarding the Passive Holdings. By executing this letter, Client acknowledges the Firm's disclosure of the foregoing.

**Restructuring Cases**. If it becomes necessary for Client to commence a restructuring case under chapter 11 of the U.S. Bankruptcy Code (a "Restructuring Case"), the Firm's ongoing employment by Client will be subject to the approval of the court with jurisdiction over the petition. If necessary, the Firm will take steps necessary to prepare the disclosure materials required in connection with the Firm's retention as lead restructuring counsel. In the near term, the Firm will begin conflicts checks on potentially interested parties as provided by Client.

If necessary, the Firm will prepare a preliminary draft of a schedule describing the Firm's relationships with certain interested parties (the "Disclosure Schedule"). The Firm will give Client a draft of the Disclosure Schedule once it is available. Although the Firm believes that these

# KIRKLAND & ELLIS LLP

December 21, 2018
Page 7

relationships do not constitute actual conflicts of interest, these relationships must be described and disclosed in Client's application to the court to retain the Firm.

If in the Firm's determination a conflict of interest arises in Client's Restructuring Case requiring separate conflicts counsel, then Client will be required to use separate conflicts counsel in those matters.

**No Guarantee of Success.** It is impossible to provide any promise or guarantee about the outcome of Client's matters. Nothing in this Agreement or any statement by Firm staff or attorneys constitutes a promise or guarantee. Any comments about the outcome of Client's matter are simply expressions of judgment and are not binding on the Firm.

**Consent to Use of Information.** In connection with future materials that, for marketing purposes, describe facets of the Firm's law practice and recite examples of matters the Firm handles on behalf of clients, Client agrees that, if those materials avoid disclosing Client's confidences and secrets as defined by applicable ethical rules, they may identify Client as a client, may contain factual synopses of Client's matters, and may indicate generally the results achieved.

**Reimbursement of Fees and Expenses.** Client agrees to promptly reimburse the Firm for all internal or external fees and expenses, including the amount of the Firm's attorney and paralegal time at normal billing rates, as incurred by the Firm in connection with participating in, preparing for, or responding to any action, claim, objection, suit, or proceeding brought by or against any third-party that relates to the legal services provided by the Firm under this Agreement. Without limiting the scope of the foregoing, and by way of example only, this paragraph extends to all such fees and expenses incurred by the Firm: in responding to document subpoenas, and preparing for and testifying at depositions and trials; and with respect to the filing, preparation, prosecution or defense of any applications by the Firm for approval of fees and expenses in a judicial, arbitral, or similar proceeding. Further, Client understands, acknowledges, and agrees that in connection with a Restructuring Case, if Client has not objected to the payment of a Firm invoice or to a Firm fee and expense application, has in fact paid such invoice, or has approved such fee and expense application, then Client waives its right (and the right of any successor entity as a result of a Transaction or otherwise) to subsequently object to the payment of fees and expenses covered by such invoice or fee application.

**LLP.** Kirkland & Ellis LLP is a limited liability partnership organized under the laws of Illinois, and Kirkland & Ellis International LLP is a limited liability partnership organized under the laws of Delaware. Pursuant to those statutory provisions, an obligation incurred by a limited liability partnership, whether arising in tort, contract or otherwise, is solely the obligation of the limited liability partnership, and partners are not personally liable, directly or indirectly, by way of indemnification, contribution, assessment or otherwise, for such obligation solely by reason of being or so acting as a partner.

# KIRKLAND & ELLIS LLP

December 21, 2018
Page 8

**Governing Law**. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Illinois, without giving effect to the conflicts of law principles thereof.

**Miscellaneous.** This Agreement sets forth the Parties' entire agreement for rendering professional services. It can be amended or modified only in writing and not orally or by course of conduct. Each Party signing below is jointly and severally responsible for all obligations due to the Firm and represents that each has full authority to execute this Agreement so that it is binding. This Agreement may be signed in one or more counterparts and binds each Party countersigning below, whether or not any other proposed signatory ever executes it. If any provision of this Agreement or the application thereof is held invalid or unenforceable, the invalidity or unenforceability shall not affect other provisions or applications of this Agreement which can be given effect without such provisions or application, and to this end the provisions of this Agreement are declared to be severable. Any agreement or waiver contained herein by Client extends to any assignee or successor in interest to Client, including without limitation the reorganized Client upon and after the effective date of a plan of reorganization in a Restructuring Case.

This Agreement is the product of arm's-length negotiations between sophisticated parties, and Client acknowledges that it is experienced with respect to the retention of legal counsel. Therefore, the Parties acknowledge and agree that any otherwise applicable rule of contract construction or interpretation which provides that ambiguities shall be construed against the drafter (and all similar rules of contract construction or interpretation) shall not apply to this Agreement. The Parties further acknowledge that the Firm is not advising Client with respect to this Agreement because the Firm would have a conflict of interest in doing so, and that Client has consulted (or had the opportunity to consult) with legal counsel of its own choosing. Client further acknowledges that Client has entered into this Agreement and agreed to all of its terms and conditions voluntarily and fully-informed, based on adequate information and Client's own independent judgment. The Parties further acknowledge that they intend for this Agreement to be effective and fully enforceable upon its execution and to be relied upon by the Parties.

* * *

# KIRKLAND & ELLIS LLP

December 21, 2018
Page 9

Please confirm your agreement with the arrangements described in this letter by signing the enclosed copy of this letter in the space provided below and returning it to us. Please understand that, if we do not receive a signed copy of this letter within twenty-one days, we will withdraw from representing you in this Engagement.

Very truly yours,

KIRKLAND & ELLIS LLP

By: _____

Printed Name: Joshua A. Sussberg
Title: Partner

Agreed and accepted this ____ day of December, 2018

Barney's New York, Inc.
and Barney's, Inc.

By: _____
Name: _____SANDRO EISI_____
Title: _____EVP & CFO_____

**KIRKLAND & ELLIS LLP**

**CLIENT-REIMBURSABLE EXPENSES AND OTHER CHARGES**

*Effective 01/01/2018*

The following outlines Kirkland & Ellis LLP's ("K&E LLP") policies and standard charges for various services performed by K&E LLP and/or by other third parties on behalf of the client which are often ancillary to our legal services. Services provided by in-house K&E LLP personnel are for the convenience of our clients. Given that these services are often ancillary to our legal services, in certain instances it may be appropriate and/or more cost efficient for these services to be outsourced to a third-party vendor. If services are provided beyond those outlined below, pricing will be based on K&E LLP's approximate cost and/or comparable market pricing.

- **Duplicating, Reprographics and Printing:** The following list details K&E LLP's charges for duplicating, reprographics and printing services:

  - Black and White Copy or Print (all sizes of paper):
    - $0.16 per impression for all U.S. offices
    - €0.10 per impression in Munich
    - £0.15 per impression in London
    - HK$1.50 per impression in Hong Kong
    - RMB1.00 per impression in Beijing and Shanghai
  - Color Copy or Print (all sizes of paper):
    - $0.55 per impression
  - Scanned Images:
    - $0.16 per page for black and white or color scans
  - Other Services:
    - CD/DVD Duplicating or Mastering - $7/$10 per CD/DVD
    - Binding - $0.70 per binding
    - Large or specialized binders - $13/$27
    - Tabs - $0.13 per item
    - OCR/File Conversion - $0.03 per page
    - Large Format Printing - $1.00 per sq. ft.

- **Secretarial and Word Processing:** Clients are not charged for secretarial and word processing activities incurred on their matters during standard business hours.

- **Overtime Charges:** Clients will be charged for overtime costs for secretarial and document services work if either (i) the client has specifically requested the after-hours work or (ii) the nature of the work being done for the client necessitates out-of-hours overtime and such work could not have been done during normal working hours. If these conditions are satisfied, costs for related overtime meals and transportation also will be charged.

1

Page No. 2

- **Travel Expenses**:  We charge clients our out-of-pocket costs for travel expenses including associated travel agency fees.  We charge coach fares (business class for international flights) unless the client has approved business-class, first-class or an upgrade.  K&E LLP personnel are instructed to incur only reasonable airfare, hotel and meal expenses.  K&E LLP negotiates, uses, and passes along volume discount hotel and air rates whenever practicable.  However, certain retrospective rebates may not be passed along.

- **Catering Charges**:  Clients will be charged for any in-house catering service provided in connection with client matters.

- **Communication Expenses**:  We do not charge clients for telephone calls or faxes made from K&E LLP's offices with the exception of third-party conference calls and videoconferences.

  Charges incurred for conference calls, videoconferences, cellular telephones, and calls made from other third-party locations will be charged to the client at the actual cost incurred.  Further, other telecommunication expenses incurred at third-party locations (e.g., phone lines at trial sites, Internet access, etc.) will be charged to the client at the actual cost incurred.

- **Overnight Delivery/Postage**:  We charge clients for the actual cost of overnight and special delivery (e.g., Express Mail, FedEx, and DHL), and U.S. postage for materials mailed on the client's behalf.  K&E LLP negotiates, uses, and passes along volume discount rates whenever practicable.

- **Messengers**:  We charge clients for the actual cost of a third party vendor messenger.

- **Library Research Services**: Library Research staff provides research and document retrieval services at the request of attorneys, and clients are charged per hour for these services.  Any expenses incurred in connection with the request, such as outside retrieval service or online research charges, are passed on to the client at cost, including any applicable discounts.

- **Online Research Charges**: K&E LLP charges for costs incurred in using third-party online research services in connection with a client matter.  K&E LLP negotiates and uses discounts or special rates for online research services whenever possible and practicable and passes through the full benefit of any savings to the client based on actual usage.

- **Inter-Library Loan Services**: Our standard client charge for inter-library loan services when a K&E LLP library employee borrows a book from an outside source is $25 per title.  There is no client charge for borrowing books from K&E LLP libraries in other cities or from outside collections when the title is part of the K&E LLP collection but unavailable.

2

Page No. 3

- **Off-Site Legal Files Storage**: Clients are not charged for off-site storage of files unless the storage charge is approved in advance.

- **Electronic Data Storage**: K&E LLP will not charge clients for costs to store electronic data and files on K&E LLP's systems if the data stored does not exceed 100 gigabytes (GB). If the data stored for a specific client exceeds 100GB, K&E LLP will charge clients $4.00 per month/per GB for all network data stored until the data is either returned to the client or properly disposed of. For e-discovery data on the Relativity platform, K&E LLP will also charge clients $4.00 per month/per GB until the data is either returned to the client or properly disposed of.

- **Calendar Court Services**: Our standard charge is $25 for a court filing and other court services or transactions.

- **Supplies**: There is no client charge for standard office supplies. Clients are charged for special items (e.g., a minute book, exhibit tabs/indexes/dividers, binding, etc.) and then at K&E LLP's actual cost.

- **Contract Attorneys and Contract Non-Attorney Billers**: If there is a need to utilize a contract attorney or contract non-attorney on a client engagement, clients will be charged a standard hourly rate for these billers unless other specific billing arrangements are agreed between K&E LLP and client.

- **Expert Witnesses, Experts of Other Types, and Other Third Party Consultants**: If there is a need to utilize an expert witness, expert of other type, or other third party consultant such as accountants, investment bankers, academicians, other attorneys, etc. on a client engagement, clients will be requested to retain or pay these individuals directly unless specific billing arrangements are agreed between K&E LLP and client.

- **Third Party Expenditures**: Third party expenditures (e.g., corporate document and lien searches, lease of office space at Trial location, IT equipment rental, SEC and regulatory filings, etc.) incurred on behalf of a client, will be passed through to the client at actual cost. If the invoice exceeds $50,000, it is K&E LLP's policy that wherever possible such charges will be directly billed to the client. In those circumstances where this is not possible, K&E LLP will seek reimbursement from our client prior to paying the vendor.

Unless otherwise noted, charges billed in foreign currencies are determined annually based on current U.S. charges at an appropriate exchange rate.

## **EXHIBIT B**

**Joshua A. Sussberg Declaration**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CMG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF JOSHUA A. SUSSBERG IN SUPPORT**
**OF THE DEBTORS' APPLICATION FOR ENTRY OF AN ORDER**
**AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP AS**
**ATTORNEYS FOR THE DEBTORS AND DEBTORS**
**IN POSSESSION EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

I, Joshua A. Sussberg, being duly sworn, state the following under penalty of perjury:

1.      I am the president of Joshua A. Sussberg, P.C., a partner of the law firm of Kirkland & Ellis LLP, located at 601 Lexington Avenue, New York, New York 10022, and a partner of Kirkland & Ellis International, LLP (together with Kirkland & Ellis LLP, collectively, "Kirkland").[2]  I am one of the lead attorneys from Kirkland working on the above-captioned chapter 11 cases.  I am a member in good standing of the Bar of the State of New York, and I have been admitted to practice in the United States District Courts for the Southern District of New York and the Northern District of Illinois.  There are no disciplinary proceedings pending against me.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819).  The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning as set forth in the Application.

2.    I submit this declaration (the "Declaration") in support of the Debtors' *Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* (the "Application").[3] Except as otherwise noted, I have personal knowledge of the matters set forth herein.

### Kirkland's Qualifications

4.    The Debtors seek to retain Kirkland because of Kirkland's recognized expertise and extensive experience and knowledge in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code.

5.    Kirkland has been actively involved in major chapter 11 cases in this district and has represented debtors in many cases, including, among others:  *In re Hollander Sleep Products, LLC*, No. 19-11608 (MEW) (Bankr. S.D.N.Y. July 3, 2019); *In re Sungard Availability Servs. Capital, Inc.*, No. 19-22915 (RDD) (Bankr. S.D.N.Y. June 25, 2019); *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. Feb. 28, 2019); *In re FULLBEAUTY Brands Holdings Corp.*, No 19-22185 (RDD) (Bankr. S.D.N.Y. Feb. 3, 2019); *In re Aegean Marine Petroleum Network, Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Nov. 6, 2018); *In re Nine West Holdings, Inc.*, No. 18-10947 (SCC) (Bankr. S.D.N.Y. June 29, 2018); *In re Cenveo, Inc.*, No. 18-22178 (RDD) (Bankr. S.D.N.Y. Mar. 8, 2018); *In re BCBG Max Azria Global Holdings, LLC*, No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Avaya Inc.*, No. 17-10089 (SMB) (Bankr.

---

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

2

S.D.N.Y. Jan. 19, 2017); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y.

Sept. 10, 2015).[4]

6.      In preparing for its representation of the Debtors in these chapter 11 cases, Kirkland

has become familiar with the Debtors' businesses and many of the potential legal issues that may

arise in the context of these chapter 11 cases.  I believe that Kirkland is both well-qualified and

uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

### Services to Be Provided

7.      Subject to further order of the Court and that certain engagement letter dated

December 21, 2018 (the "Engagement Letter"), a copy of which is attached as **Exhibit 1** to

**Exhibit A** to the Application, the Debtors retained Kirkland to render, without limitation, the

following legal services:

        a.      advising the Debtors with respect to its powers and duties as debtor in
                possession in the continued management and operation of its businesses and
                properties;

        b.      advising and consulting on the conduct of these chapter 11 cases, including
                all of the legal and administrative requirements of operating in chapter 11;

        c.      attending meetings and negotiating with representatives of creditors and
                other parties in interest;

        d.      taking all necessary actions to protect and preserve the Debtors' estates,
                including prosecuting actions on the Debtors' behalf, defending any action
                commenced against the Debtors, and representing the Debtors in
                negotiations concerning litigation in which the Debtors are involved,
                including objections to claims filed against the Debtors' estates;

        e.      preparing pleadings in connection with these chapter 11 cases, including
                motions, applications, answers, orders, reports, and papers necessary or
                otherwise beneficial to the administration of the Debtors' estates;

---

[4]     Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application.
        Copies of these orders are available upon request to Kirkland.

f.      representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g.      advising the Debtors in connection with any potential sale of assets;

h.      appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.      advising the Debtors regarding tax matters;

j.      taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.      performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including:  (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

## Professional Compensation

8.      Kirkland intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court.  The hourly rates and corresponding rate structure Kirkland will use in these chapter 11 cases are the same as the hourly rates and corresponding rate structure that Kirkland uses in other debtor representations, and are comparable to the hourly rates and corresponding rate structure that Kirkland uses for complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required.  These rates and the rate structure reflect that such restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

4

9.      Kirkland operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

10.     Kirkland's current hourly rates for matters related to these chapter 11 cases range as follows:[5]

| Billing Category[6] | U.S. Range |
|---|---|
| Partners | $1,025-$1,795 |
| Of Counsel | $595-$1,705 |
| Associates | $595-$1,125 |
| Paraprofessionals | $235-$460 |

11.     Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for the work of its attorneys and paralegals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[7]

---

[5]   For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable currency. When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable conversion rate. After converting these foreign rates into U.S. dollars, it is possible that certain rates may exceed the billing rates listed in the chart herein.

[6]   Although Kirkland does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event that it becomes necessary to use contract attorneys, Kirkland will not charge a markup to the Debtors with respect to fees billed by such attorneys. Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Kirkland will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code. While the rate ranges provided for in this Application may change if an individual leaves or joins Kirkland, and if any such individual's billing rate falls outside the ranges disclosed above, Kirkland does not intend to update the ranges for such circumstances.

[7]   For example, like many of its peer law firms, Kirkland typically increases the hourly billing rate of attorneys and paraprofessionals twice a year in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013). As set forth in the Order, Kirkland will provide ten business days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file such notice with the Court.

5

12.     It is Kirkland's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client.  It is also Kirkland's policy to charge its clients only the amount actually incurred by Kirkland in connection with such items.  Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

13.     To ensure compliance with all applicable deadlines in these chapter 11 cases, Kirkland utilizes the services of overtime secretaries.  Kirkland charges fees for these services pursuant to the Engagement Letter between Kirkland and the Debtors, which permits Kirkland to bill the Debtors for overtime secretarial charges that arise out of business necessity.  In addition, Kirkland professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with the Amended Guidelines.

14.     Kirkland currently charges the Debtors $0.16 per page for standard duplication in its offices in the United States.  Notwithstanding the foregoing and consistent with the Local Bankruptcy Rules, Kirkland will charge no more than $0.10 per page for standard duplication services in these chapter 11 cases.  Kirkland does not charge its clients for incoming facsimile transmissions.  Kirkland has negotiated a discounted rate for Westlaw computer-assisted legal research.  Computer-assisted legal research is used whenever the researcher determines that using Westlaw is more cost effective than using traditional (non-computer assisted legal research) techniques.

**Compensation Received by Kirkland from the Debtors**

15.     Per the terms of the Engagement Letter, on January 3, 2019, the Debtors paid $200,000 to Kirkland, which, as stated in the Engagement Letter, constituted an "advance payment

6

retainer" as defined in Rule 1.15(c) of the Illinois Rules of Professional Conduct and *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007). Subsequently, the Debtors paid to Kirkland additional advance payment retainer totaling $2,629,002.03 in the aggregate. As stated in the Engagement Letter, any advance payment retainer is earned by Kirkland upon receipt, any advance payment retainer becomes the property of Kirkland upon receipt, the Debtors no longer have a property interest in any advance payment retainer upon Kirkland's receipt, any advance payment retainer will be placed in Kirkland's general account and will not be held in a client trust account, and the Debtors will not earn any interest on any advance payment retainer.[8] A chart identifying the statements setting forth the professional services provided by Kirkland to the Debtors and the expenses incurred by Kirkland in connection therewith, as well as the advance payment retainer transferred by the Debtors to Kirkland, prior to the Petition Date is set forth below.

16.    During the 90-day period before the Petition Date, the Debtors paid advance payment retainer in the following amounts to Kirkland:

| Type of Transaction | Date | Amount of Fees and Expenses Listed on Statement | Amount of Advance Payment Retainer Requested | Amount of Advance Payment Retainer Received | Resulting Advance Payment Retainer Following |
|---|---|---|---|---|---|
| Initial Request for Advance Payment Retainer | 7/2/2019 | | $500,000 | | $46,278.67 |
| Receipt of Initial Advance Payment Retainer | 7/3/2019 | | | $250,000 | $296,278.67 |
| Receipt of Additional Advance Payment Retainer | 7/11/2019 | | | $129,002.03 | $425,280.70 |

---

[8]    The Engagement Letter permits Kirkland to retain prepetition advance payment retainer held by Kirkland as of the Petition Date rather than applying such prepetition advance payment retainer to pay postpetition fees and expenses. In light of the facts and circumstances of these chapter 11 cases, Kirkland will retain any prepetition advance payment retainer held by Kirkland as of the Petition Date and will not apply any such amounts to postpetition fees and expenses.

7

| | | | | | |
|---|---|---|---|---|---|
| Receipt of Additional Advance Payment Retainer | 7/15/2019 | | | $120,997.97 | $546,278.67 |
| Additional Advance Payment Retainer (Full Statement) | 7/15/2019 | $379,002.03 | | | $167,276.64 |
| Receipt of Additional Advance Payment Retainer | 7/15/2019 | | | $379,002.03 | $546,278.67 |
| Additional Advance Payment Retainer | 7/17/2019 | | $500,000 | | $546,278.67 |
| Receipt of Additional Advance Payment Retainer | 7/22/2019 | | | $500,000 | $1,046,278.67 |
| Additional Advance Payment Retainer | 7/23/2019 | | $500,000 | | $1,046,278.67 |
| Receipt of Additional Advance Payment Retainer | 7/25/2019 | | | $500,000 | $1,546,278.67 |
| Additional Advance Payment Retainer | 7/25/2019 | | $500,000 | | $1,546,278.67 |
| Receipt of Additional Advance Payment Retainer | 7/26/2019 | | | $500,000 | $2,046,279.67 |
| Additional Advance Payment Retainer | 8/5/2019 | | $250,000 | | $2,046,279.67 |
| Receipt of Additional Advance Payment Retainer | 8/6/2019 | | | $250,000 | $2,296,278.67 |

17.    As of the Petition Date, the Debtors did not owe Kirkland any amounts for legal services rendered before the Petition Date.  Although certain expenses and fees may have been incurred, but not yet applied to Kirkland's advance payment retainer, Kirkland's total advance payment retainer always exceeded any amounts listed or to be listed on statements describing services rendered and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) prior to the Petition Date.

18.    Pursuant to Bankruptcy Rule 2016(b), Kirkland has not shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Kirkland or (b) any compensation another person or party has received or may receive.

### Statement Regarding U.S. Trustee Guidelines

19.    Kirkland shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in

8

compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the

Bankruptcy Rules, Local Bankruptcy Rules, and any other applicable procedures and orders of the

Court. Kirkland also intends to make a reasonable effort to comply with the U.S. Trustee's

requests for information and additional disclosures as set forth in the *Guidelines for Reviewing*

*Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by*

*Attorneys in Larger Chapter 11 Cases Effective As of November 1, 2013* (the "Revised UST

Guidelines"), both in connection with this application and the interim and final fee applications to

be filed by Kirkland in these chapter 11 cases.

### Attorney Statement Pursuant to Revised UST Guidelines

20.    The following is provided in response to the request for additional

information set forth in Paragraph D.1. of the Revised UST Guidelines:

a.   **Question**: Did Kirkland agree to any variations from, or alternatives to, Kirkland's standard billing arrangements for this engagement?

**Answer**: No. Kirkland and the Debtors have not agreed to any variations from, or alternatives to, Kirkland's standard billing arrangements for this engagement. The rate structure provided by Kirkland is appropriate and is not significantly different from (a) the rates that Kirkland charges for other non-bankruptcy representations or (b) the rates of other comparably skilled professionals.

b.   **Question**: Do any of the Kirkland professionals in this engagement vary their rate based on the geographic location of the Debtors' chapter 11 cases?

**Answer**: No. The hourly rates used by Kirkland in representing the Debtors are consistent with the rates that Kirkland charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

c.   **Question**: If Kirkland has represented the Debtors in the 12 months prepetition, disclose Kirkland's billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If Kirkland's billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

9

**Answer**: Kirkland's current hourly rates for services rendered on behalf of the Debtors range as follows: [9]

| Billing Category | U.S. Range |
|---|---|
| Partners | $1,025-$1,795 |
| Of Counsel | $595-$1,705 |
| Associates | $595-$1,125 |
| Paraprofessionals | $235-$460 |

Kirkland represented the Debtors from January 1, 2019 through the Petition Date, using the hourly rates listed above.

Kirkland represented the Debtors from December 21, 2018 through December 31, 2018 using the following hourly rates:

| Billing Category | U.S. Range |
|---|---|
| Partners | $965-$1,795 |
| Of Counsel | $575-$1,795 |
| Associates | $575-$1,065 |
| Paraprofessionals | $220-$440 |

    d.  **Question**:  Have the Debtors approved Kirkland's budget and staffing plan, and, if so, for what budget period?

**Answer**: Yes, for the period from August 6, 2019 through November 6, 2019.

### Kirkland's Disinterestedness

21.    In connection with its proposed retention by the Debtors in these chapter 11 cases, Kirkland undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. Specifically, Kirkland obtained from the Debtors and their representatives the names of individuals and entities that may be parties in interest in these chapter 11 cases (the "Potential Parties in

---

[9]    While the rate ranges provided for in this Application may change if an individual leaves or joins Kirkland, and if any such individual's billing rate falls outside the ranges disclosed above, Kirkland does not intend to update the ranges for such circumstances.

10

Interest") and such parties are listed on **Schedule 1** hereto.  Kirkland has searched on its electronic

database for its connections to the entities listed on **Schedule 1** hereto.  To the extent that I have

been able to ascertain that Kirkland has been retained within the last three years to represent any

of the Potential Parties in Interest (or their affiliates, as the case may be) in matters unrelated to

these cases, such facts are disclosed on **Schedule 2** attached hereto.

22.     Kirkland and certain of its partners and associates may have in the past represented,

may currently represent, and likely in the future will represent, entities that may be parties in

interest in these chapter 11 cases in connection with matters unrelated (except as otherwise

disclosed herein) to the Debtors and these chapter 11 cases.  Kirkland has searched on its electronic

database for its connection to the entities listed on **Schedule 1** attached hereto.  The information

listed on **Schedule 1** may have changed without our knowledge and may change during the

pendency of these chapter 11 cases.  Accordingly, Kirkland will update this Declaration as

necessary and when Kirkland becomes aware of additional material information.  The following

is a list of the categories that Kirkland has searched:[10]

| **Schedule** | **Category** |
| --- | --- |
| 1(a) | Debtor Subsidiaries & Affiliates |
| 1(b) | Non-Debtor Affiliates |
| 1(c) | Current Directors, Officers & Members |
| 1(d) | Recent Former Directors, Officers & Members |
| 1(e) | Equity Holders |
| 1(f) | Confidential Going Concern Process Parties |
| 1(g) | Contract Counterparties |
| 1(h) | Insurance Providers |
| 1(i) | Landlords |
| 1(j) | Lenders |
| 1(k) | Letters of Credit Beneficiaries |

---

[10]  Kirkland's inclusion of parties in the following Schedules is solely to illustrate Kirkland's conflict search process
and is not an admission that any party has a valid claim against the Debtors or that any party properly belongs in
the schedules or has a claim or legal relationship to the Debtors of the nature described in the schedules.

11

| 1(l) | Litigation Parties |
| 1(m) | Parties that have requested notice pursuant to Bankruptcy Rule 2002 |
| 1(n) | Professionals |
| 1(o) | Reclamation Parties |
| 1(p) | Surety Bonds |
| 1(q) | Taxing Authorities |
| 1(r) | Top 30 General Unsecured Creditors |
| 1(s) | Unions |
| 1(t) | US Trustees, Judges, & Court Contacts for the Southern District of New York |
| 1(u) | Utilities |
| 1(v) | Vendors |

23.    To the best of my knowledge, (a) Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in this Declaration.

24.    Listed on **Schedule 2** to this Declaration are the results of Kirkland's conflicts searches of the above-listed entities.[11]  For the avoidance of doubt, Kirkland will not commence a cause of action in these chapter 11 cases against the entities listed on **Schedule 2** that are current clients of Kirkland (including entities listed below under the "Specific Disclosures" section of this Declaration) unless Kirkland has an applicable waiver on file or first receives a waiver from such

---

[11]    As referenced in **Schedule 2**, the term "current client" means an entity listed as a client in Kirkland's conflicts search system to whom time was posted in the 12 months preceding the Petition Date.  As referenced in **Schedule 2**, the term "former client" means an entity listed as a client in Kirkland's conflicts search system to whom time was posted between 12 and 36 months preceding the Petition Date.  As referenced in **Schedule 2**, the term "closed client" means an entity listed as a client in Kirkland's conflicts search system to whom time was posted in the 36 months preceding the Petition Date, but for which the client representation has been closed.  Whether an actual client relationship exists can only be determined by reference to the documents governing Kirkland's representation rather than its potential listing in Kirkland's conflicts search system.  The list generated from Kirkland's conflicts search system is over-inclusive.  As a general matter, Kirkland discloses connections with "former clients" or "closed clients" for whom time was posted in the last 36 months, but does not disclose connections if time was billed more than 36 months before the Petition Date.

entity allowing Kirkland to commence such an action. To the extent that a waiver does not exist or is not obtained from such entity and it is necessary for the Debtors to commence an action against that entity, the Debtors will be represented in such particular matter by conflicts counsel.[12]

25.    Of the entities listed on **Schedule 2**, none represented more than one percent of Kirkland's fee receipts for the twelve-month period ending on July 30, 2019.

26.    Kirkland's conflicts search of the entities listed on **Schedules 1(a) – 1(u)** (that Kirkland was able to locate using its reasonable efforts) reveals, to the best of Kirkland's knowledge, that those Kirkland attorneys and paraprofessionals who previously worked at other law firms that represented such entities in these chapter 11 cases have not worked on matters relating to the Debtors' restructuring efforts while at Kirkland.

27.    Based on the conflicts search conducted to date and described herein, to the best of my knowledge, neither I, Kirkland, nor any partner or associate thereof, insofar as I have been able to ascertain, have any connection with the Debtors, their creditors, or any other parties in interest, their respective attorneys and accountants, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), any person employed in the Office of the U.S. Trustee, or any Bankruptcy Judge currently serving on the United States Bankruptcy Court for the Southern District of New York, except as disclosed or otherwise described herein.

28.    Kirkland will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new

---

[12]    The Debtors also seek to employ and retain Katten Muchin Rosenman LLP ("Katten") as their conflicts counsel to handle matters that the Debtors may encounter that cannot be handled appropriately by Kirkland because of a conflict of interest or that the Debtors believe can be more appropriately handled by Katten. It is intended that the services of Katten shall complement, and not duplicate, the services to be rendered by Kirkland. Moreover, the responsibilities of Katten shall be confined to discrete legal matters that are distinct from the matters handled by Kirkland. Katten shall act on its own and will not act under the direct supervision of Kirkland. Indeed, the Debtors are extremely mindful of the need to avoid duplication of services.

13

relevant facts or relationships are discovered or arise, Kirkland will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

29.    Generally, it is Kirkland's policy to disclose entities in the capacity that they first appear in a conflicts search.  For example, if an entity already has been disclosed in this Declaration in one capacity (*e.g.*, a customer), and the entity appears in a subsequent conflicts search in a different capacity (*e.g.*, a vendor), Kirkland does not disclose the same entity again in supplemental declarations, unless the circumstances are such in the latter capacity that additional disclosure is required.

30.    From time to time, Kirkland has referred work to other professionals to be retained in these chapter 11 cases.  Likewise, certain such professionals have referred work to Kirkland.

31.    Certain insurance companies pay the legal bills of Kirkland clients.  Some of these insurance companies may be involved in these chapter 11 cases.  None of these insurance companies, however, are Kirkland clients as a result of the fact that they pay legal fees on behalf of Kirkland clients.

## Specific Disclosures

32.    As specifically set forth below and in the attached exhibits, Kirkland represents certain of the Debtors' creditors, equity security holders, or other entities that may be parties in interest in ongoing matters unrelated to the Debtors and these chapter 11 cases.  None of the representations described herein are materially adverse to the interests of the Debtors' estates. Moreover, pursuant to section 327(c) of the Bankruptcy Code, Kirkland is not disqualified from acting as the Debtors' counsel merely because it represents certain of the Debtors' creditors, equity

14

security holders, or other entities that may be parties in interest in matters unrelated to these chapter 11 cases.

33.    As disclosed below, in early March 2012, Kirkland represented the Debtors in a consensual out-of-court restructuring among Barneys, Perry Capital, LLC, the Yucaipa Companies, LLC, and Istithmar World.  In connection with such representation, Kirkland has become familiar with the Debtors' businesses and many of the potential issues that may arise in the context of these chapter 11 cases.  I do not believe that Kirkland's prior representation of the Debtors precludes it from meeting the disinterestedness standard under the Bankruptcy Code.

**A.    Connections to Holders of Equity Interests in the Debtors.**

34.    As disclosed on **Schedule 2**, Kirkland currently represents, and in the past has represented, Perry Capital LLC on a variety of matters.  Perry Capital LLC owns approximately 72% of the equity interests in Debtor Barneys New York, Inc.  All prior and current Kirkland representations of Perry Capital LLC have been in matters unrelated to the Debtors or these chapter 11 cases.

**B.    Connections to Secured Lenders to the Debtors.**

35.    As disclosed on **Schedule 2**, Kirkland currently represents, formerly has represented, and in the future likely will represent certain affiliates of TPG Specialty Lending, Inc. ("TPG") in a variety of matters.  TPG is a prepetition secured party in these chapter 11 cases.  All of Kirkland's current and former representations of TPG have been unrelated to the Debtors and these chapter 11 cases.  I do not believe that Kirkland's representation of these parties precludes it from meeting the disinterestedness standard under the Bankruptcy Code.

36.    As disclosed on **Schedule 2**, Kirkland currently represents, formerly represented, and in the future likely will represent Wells Fargo Bank, N.A. ("Wells Fargo") and certain of its

15

affiliates in a variety of matters.  Wells Fargo was the administrative agent and a lender under the Debtors' prepetition asset-based lending facility, and is the Debtors' cash management bank.  All current and former representations of Wells Fargo have been unrelated to the Debtors and these chapter 11 cases.  I do not believe that Kirkland's representation of Wells Fargo precludes it from meeting the disinterestedness standard under the Bankruptcy Code.

37.    As disclosed on **Schedule 2**, Kirkland currently represents, and formerly has represented Hilco Global and certain of its affiliates ("Hilco") in a variety of matters.  Hilco was a potential DIP lender in these chapter 11 cases.  All of Kirkland's current and former representations of Hilco have been unrelated to the Debtors and these chapter 11 cases.  I do not believe that Kirkland's representation of these parties precludes it from meeting the disinterestedness standard under the Bankruptcy Code.

38.    Kirkland currently represents certain affiliates of B. Riley FBR, Inc. ("B. Riley") in a variety of matters.  B. Riley is a postpetition lender in these chapter 11 cases.  All of Kirkland's current and former representations of B. Riley have been unrelated to the Debtors and these chapter 11 cases.  I do not believe that Kirkland's representation of these parties precludes it from meeting the disinterestedness standard under the Bankruptcy Code.

## C.    Connections to Officers and Directors.

39.    As disclosed below and in **Schedule 2**, attached hereto, Kirkland currently represents, has formally represented, and in the future likely will represent certain affiliates, subsidiaries and entities associated with the Debtors' current and recent former officers and directors.  I do not believe that Kirkland's current and prior representation of the affiliates, subsidiaries, and entities associated with certain officers and directors precludes it from being a disinterested party under the Bankruptcy Code.

16

40.    Simon Harland, a director of Barneys New York, Inc., Barney's, Inc., BNY Catering Inc. and BNY Licensing Corp., and has served, or may serve from time to time, in various management and/or director capacities of certain Kirkland clients or affiliates thereof. I do not believe Kirkland's current and prior representation of clients for which Mr. Harland serves or has served in management and/or director capacities preclude it from being a disinterested party under the Bankruptcy Code.

**D.    Potential Sale Transaction Counterparties.**

41.    The Debtors are in discussions with certain parties (and may be in discussions with other parties in the future) regarding a potential sale of all of or substantially all of the Debtors assets.  Due to the inherently competitive nature of this process, it is important that the identities of these potential counterparties remain confidential.  The Debtors will disclose to the U.S. Trustee the identities of the potential counterparties and Kirkland's connections to such potential counterparties, and Kirkland believes such disclosure is sufficient and reasonable under the circumstances and at this time.  However, should the Court request disclosure of the identities of the potential counterparties, the Debtors are prepared to file with the Court under seal a version of this Declaration that contains a schedule of the potential counterparties and Kirkland's connections to such potential counterparties.  For the avoidance of doubt, Kirkland will not represent any of the potential counterparties in connection with any matter in these chapter 11 cases.

**E.    Connections to Other Entities.**

42.    As disclosed below, certain parties in interest in these chapter 11 cases are current or former Kirkland restructuring clients, including RGIS Holdings, LLC ("RGIS").  Kirkland currently represents, formerly represented, and in the future likely will represent RGIS in a variety of matters.  RGIS is a contract counterparty of Debtor Barney's, Inc. here.  All of Kirkland's

17

current and former representations of RGIS have been unrelated to the Debtors and these chapter 11 cases. I do not believe that Kirkland's representation of RGIS precludes it from meeting the disinterestedness standard under the Bankruptcy Code.

43.      As disclosed on **Schedule 2**, Kirkland currently represents Aon Corporation ("Aon") in a variety of matters. Aon is an insurance provider to the Debtors. Kirkland's current and former representations of Aon are unrelated to the Debtors or these chapter 11 cases. I do not believe this representation would preclude Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

**F.      Other Chapter 11 Professionals.**

44.      As disclosed in **Schedule 2** attached hereto, Kirkland currently represents, and formerly has represented, certain affiliates, subsidiaries, and entities associated with various professionals that the Debtors seeks to retain in connection with these chapter 11 cases. All prior and current Kirkland representations of these professionals have been in matters unrelated to the Debtors and these chapter 11 cases. Kirkland has not represented and will not represent any such professionals in connection with any matter in these chapter 11 cases.

45.      Contemporaneously herewith, the Debtors filed a motion for an order authorizing their retention of Houlihan Lokey Capital, Inc. ("Houlihan Lokey") as their financial advisor and investment banker. Kirkland currently represents certain of Houlihan Lokey's direct or indirect affiliates in matters unrelated to these chapter 11 cases or the Debtors. Kirkland does not and will not represent Houlihan Lokey in connection with these chapter 11 cases. I do not believe these representations preclude Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

18

G.    **Former Clerks.**

46.    The following Kirkland employees had clerkships in the United States Bankruptcy Court for the Southern District of New York during the last three years (collectively, the "Former Clerks").

47.    Emily Kehoe, a Kirkland associate, was a law clerk for the Honorable Cecelia G. Morris, Chief Judge of the United States Bankruptcy Court for the Southern District of New York, from August 2015 to August 2017.  Ms. Kehoe began working at Kirkland in September 2017 and had no connection with the Debtors' chapter 11 cases while working for the court.

48.    Simon Briefel, a Kirkland associate, was a law clerk for the Honorable Martin Glenn of the United States Bankruptcy Court for the Southern District of New York from September 2017 to August 2018.  Mr. Briefel began working at Kirkland in September 2018 and had no connection with the Debtors' chapter 11 cases while working for the court.

49.    Lauren Biksacky, a Kirkland associate, was a law clerk for the Honorable Edgardo Ramos of the United States Bankruptcy Court for the Southern District of New York, from November 2016 to November 2017.  Ms. Biksacky worked at Kirkland from October 2014 to October 2016, began working at Kirkland again in November 2017, and had no connection with the Debtors' chapter 11 cases while working for the court.

50.    Brandon Chamberlin, a Kirkland associate, was a law clerk for the Honorable Louis L. Stanton of the United States Bankruptcy Court for the Southern District of New York, from September 2014 to September 2016.    Mr. Chamberlin began working at Kirkland in September 2016 and had no connection with the Debtors' chapter 11 cases while working for the court.

51.     Chang Liu, a Kirkland associate, was a law clerk for the Honorable John G. Koeltl of the United States Bankruptcy Court for the Southern District of New York, from August 2015 to August 2016.  Mr. Liu began working at Kirkland in September 2016 and had no connection with the Debtors' chapter 11 cases while working for the court.

52.     I do not believe that the Former Clerks' work for the Court precludes Kirkland from meeting the disinterested standard under the Bankruptcy Code.

**H.      Kirkland Attorney and Employee Investments.**

53.     From time to time, Kirkland partners, of counsel, associates, and employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire an interest in debt or equity securities of many companies, one of which may be one of the Debtors, their creditors, or other parties in interest in these chapter 11 cases, often without Kirkland's knowledge.  Each Kirkland person generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security.  The Investment Fund is generally operated as a blind pool, meaning that when the Kirkland persons make an investment in the Investment Fund, he, she, or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

54.     From time to time one or more Kirkland partners and of counsel voluntarily choose to form an entity (a "Passive-Intermediary Entity") to invest in one or more Investment Funds. Such Passive-Intermediary Entity is composed only of persons who were Kirkland partners and of counsel at the time of the Passive-Intermediary Entity's formation (although some may later

20

become former Kirkland partners and of counsel). Participation in such a Passive-Intermediary Entity is wholly voluntary and only a portion of Kirkland's partners and of counsel choose to participate. The Passive-Intermediary Entity generally owns substantially less than one percent of any such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. Each Investment Fund in which a Passive-Intermediary Entity invests is operated as a blind pool, so that the Passive-Intermediary Entity does not know what securities the blind pool Investment Funds will purchase or sell, and has no control over such purchases or sales. And, indeed, the Passive-Intermediary Entity often arranges for statements and communications from certain Investment Funds to be sent solely to a blind administrator who edits out all information regarding the identity of the Investment Fund's underlying investments, so that the Passive-Intermediary Entity does not learn (even after the fact) the identity of the securities purchased, sold, or held by the Investment Fund. To the extent the Passive-Intermediary Entity is or becomes aware of the identity of the securities purchased, sold, or held by the Investment Funds ("Known Holdings"), such Known Holdings are submitted to Kirkland's conflict checking system.

55.    From time to time, Kirkland partners, of counsel, associates, and employees personally directly acquire a debt or equity security of a company which may be (or become) one of the Debtors, their creditors, or other parties in interest in these chapter 11 cases. Kirkland has a long-standing policy prohibiting attorneys and employees from using confidential information that may come to their attention in the course of their work, so that all Kirkland attorneys and employees are barred from trading in securities with respect to which they possess confidential information.

21

## I.    Other Disclosures.

56.    Finally, certain interrelationships exist among the Debtors.  Nevertheless, the Debtors have advised Kirkland that the Debtors' relationships to each other do not pose any conflict of interest because of the general unity of interest among the Debtors.  Insofar as I have been able to ascertain, I know of no conflict of interest that would preclude Kirkland's joint representation of the Debtors in these chapter 11 cases.

57.    Susan D. Golden, a partner at Kirkland, was employed by the Office of the United States Trustee in the Southern District of New York from October 2007 to December 2017.  I do not believe that this connection precludes Kirkland from meeting the disinterested standard under the Bankruptcy Code.

58.    Furthermore, prior to joining Kirkland, certain Kirkland attorneys represented clients adverse to Kirkland's current and former restructuring clients.  Certain of these attorneys (the "Screened Kirkland Attorneys") will not perform work in connection with Kirkland's representation of the Debtors and will not have access to confidential information related to the representation.  Kirkland's formal ethical screen provides sufficient safeguards and procedures to prevent imputation of conflicts by isolating the Screened Kirkland Attorneys and protecting confidential information.

59.    Under Kirkland's screening procedures, Kirkland's conflicts department distributes a memorandum to all Kirkland attorneys and legal assistants directing them as follows: (a) not to discuss any aspects of Kirkland's representation of the Debtors with the Screened Kirkland Attorneys; (b) to conduct meetings, phone conferences, and other communications regarding Kirkland's representation of the Debtors in a manner that avoids contact with the Screened Kirkland Attorneys; (c) to take all measures necessary or appropriate to prevent access by the

22

Screened Kirkland Attorneys to the files or other information related to Kirkland's representation of the Debtors; and (d) to avoid contact between the Screened Kirkland Attorneys and all Kirkland personnel working on the representation of the Debtors unless there is a clear understanding that there will be no discussion of any aspects of Kirkland's representation of the Debtors. Furthermore, Kirkland already has implemented procedures to block the Screened Kirkland Attorneys from accessing files and documents related to the Debtors that are stored in Kirkland's electronic document managing system.

### Affirmative Statement of Disinterestedness

60.    Based on the conflicts search conducted to date and described herein, to the best of my knowledge and insofar as I have been able to ascertain, (a) Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed herein.

*[Remainder of Page Intentionally Left Blank]*

23

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge and belief.

Dated:  August 27, 2019                              Respectfully submitted,

                                                     */s/ Joshua A. Sussberg, P.C.*
                                                     Joshua A. Sussberg
                                                     as President of Joshua A. Sussberg, P.C., as
                                                     Partner of Kirkland & Ellis LLP; and as Partner
                                                     of Kirkland & Ellis International LLP

## Schedule 1

The following lists contain the names of reviewed entities as described more fully in the *Declaration of Joshua A. Sussberg in Support of the Debtors' Application for the Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* (the "Sussberg Declaration").[22]  Where the names of the entities reviewed are incomplete or ambiguous, the scope of the search was intentionally broad and inclusive, and Kirkland & Ellis LLP and Kirkland & Ellis International LLP reviewed each entity in its records, as more fully described in the Sussberg Declaration, matching the incomplete or ambiguous name.

---

[22] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Sussberg Declaration.

# SCHEDULE 1

## List of Schedules

| Schedule | Category |
|----------|----------|
| 1(a) | Debtor Subsidiaries & Affiliates |
| 1(b) | Non-Debtor Affiliates |
| 1(c) | Current Directors, Officers & Members |
| 1(d) | Recent Former Directors, Officers & Members |
| 1(e) | Equity Holders |
| 1(f) | Confidential Going Concern Process Parties |
| 1(g) | Contract Counterparties |
| 1(h) | Insurance Providers |
| 1(i) | Landlords |
| 1(j) | Lenders |
| 1(k) | Letters of Credit Beneficiaries |
| 1(l) | Litigation Parties |
| 1(m) | Parties that have requested notice pursuant to Bankruptcy Rule 2002 |
| 1(n) | Professionals |
| 1(o) | Reclamation Parties |
| 1(p) | Surety Bonds |
| 1(q) | Taxing Authorities |
| 1(r) | Top 30 General Unsecured Creditors |
| 1(s) | Unions |
| 1(t) | US Trustees, Judges, & Court Contacts for the Southern District of New York |
| 1(u) | Utilities |
| 1(v) | Vendors |

# SCHEDULE 1(a)

## Debtor Subsidiaries & Affiliates

Barneys Asia Co. LLC
Barney's Inc.
Barneys New York Foundation
Barneys New York Inc.
BNY Catering Inc.
BNY Licensing Corp.

## SCHEDULE 1(b)

### Non-Debtor Affiliates

Istithmar Bentley Cayman Ltd.
Istithmar Bentley Holding Co.

## **SCHEDULE 1(c)**

### **Current Directors, Officers & Members**

Bell, Jay
Beyer, Robert
Bond, Stephanie
Edelman, Martin
Fu, Grace
Harland, Simon
Kalenderian, Thomas
Lee, Mark
Mauro, Tony
Mazzucca, Matt
Miller, Tomm
Monasebian, Katherine Bahamonde
Perry, Richard
Risi, Sandro
Sunwoo, Jennifer
Vitale, Daniella

# SCHEDULE 1(d)

## Recent Former Directors, Officers & Members

Burkle, Ronald
Feldman, Steven M.
Halpern, John
Jodiowski, Peter
Lee, Mark
Spielvogel, Carl
Strumwasser, David Alan
Tarr, Robert J., Jr.
Watson, Andrew
Werner, Shelby

# SCHEDULE 1(e)

## Equity Holders

Istithmar Bentley Cayman Ltd.
Perry Capital LLC
Perry Partners International Inc.
Perry Partners LP
Perry Principals LLC
Perry Private Opportunities Fund LP
Spring Investments II Ltd.
Spring Investments Ltd.
Yucaipa American Alliance (Parallel) Fund II LP
Yucaipa American Alliance Fund II LP
Yucaipa Cos. LLC

# SCHEDULE 1(f)

## Confidential Going Concern Parties

[CONFIDENTIAL PARTIES]

# SCHEDULE 1(g)

## Contract Counterparties

1431/168 Investors LLC
ABM Industry Groups LLC
ADP Inc.
Advanced Pure Water Solutions
Agency One Security Group LLC
Aleris Inc., The
American Express Travel Related Services
    Co. Inc.
Amerigard Alarm & Security Corp.
ASCAP
Barneys Japan Co. Ltd.
Blind Barber LLC, The
CardFact XXXIII Inc.
Cardinal Point Homeland Security Group
    Inc.
Comenity Servicing LLC
Connor Papers LLC
Corr Protective Services
Diamond Limousine Inc.
Directors Bureau LLC, The
EasyKlean Inc.
Equinox Holdings Inc.
FiftyOne Inc.
FirstEnergy Solutions Corp.
FJC Security Services Inc.
FMI Inc.
Foxy Bowie LLC
Gandhi, Hemal
Global Services Inc.
GRM Information Management Services
    Inc.
Holland & Knight LLP
ICEsurance Inc.
InnSight Reports LLC
InterTrade Systems Inc.
Iron Mountain Secure Shredding Inc.
JBCStyle NY LLC
Jones Lang LaSalle Americas Inc.
JSRE Realty LLC
Kelly Services Inc.
Key Group Worldwide Inc.
Keystrata Inc.

Kronos Inc.
Long Island Productions Inc.
Loomis Armored U.S. LLC
Loyal Building Services Inc.
LP Style LLC
Mendon Leasing Corp.
Metro One Loss Prevention Services Group
    Inc.
Muse, The
MVP Staffing
National Retail Transportation Inc.
National Utility Service Inc.
Nick's Towing Service Inc.
No More Dirt Inc.
OfficeTeam Inc.
OpenTable Inc.
Optimized Payments Consulting Inc.
Oracle America Inc.
Otis Elevator Co.
OTX Logistics Inc.
Pathmata Networks Inc.
Petore Associates Inc.
Pixelz Inc.
Postmates Inc.
Premium Security Services LLC
Pressman, Gene
RGIS LLC
Rin IP Partners
Risk Management Consulting LLC
Sarvaruna LLC
Schindler Elevator Corp.
Seven & iHoldings Co. Ltd.
Shutterstock Inc.
Socialyte Collective LLC
SS Designs (HK) Ltd.
Stella Pulse
StellaService Inc.
Stone Set Studio LLC
Sumitomo Corp.
Total Staffing Solutions Ltd.
Tracy Anderson Mind & Body LLC
Transmitter Media LLC

UberEats
Vitality Staffing Solutions LLC
Wagstaff Worldwide Inc.
Worldwide Logistics Ltd.

# SCHEDULE 1(h)

## Insurance Providers

Aon
Aon plc
Arrowhead General Insurance Agency Inc.
Beazley Insurance Co. Inc.
Berkley Insurance Co.
Chubb Bermuda Insurance Ltd.
CNA Insurance Cos. Inc.
Endurance American Insurance Co.
Everest Insurance Co.
Federal Insurance Co.
Freedom Specialty Insurance Co.
Great Northern Insurance Co.
Hiscox Insurance Co. Ltd.
Houston Casualty Co.
Hudson Specialty Insurance Co.
Lloyd's of London
Navigators Insurance Co.
Starr Indemnity & Liability Co. Inc.
United Specialty Insurance Co.
Westchester Fire Insurance Co.
XL Insurance Co. SE
Zurich American Insurance Company
Zurich Insurance Group AG

# SCHEDULE 1(i)

## Landlords

ADR 1811 Walnut Street LP
Ameream LLC
Americana at Brand LLC
Bal Harbour Shops LLLP
Copley Place Associates LLC
Crystals Las Vegas LLC
Equity One Inc.
Fashion Outlets of Chicago
Flagship 660 Owner LLC
Geary Market Investment Co.
GFM LLC
MPH Pacific Place LLC
Paragon Outlets Livermore Valley LLC
Simon Property Group Inc.
Stockton Street Properties Inc.
Tanger Properties LP
Thor ASB 1-15 East Oak Street
Two Trees Management Co. LLC

# SCHEDULE 1(j)

## Lenders

BFR Finance Co. LLC
Brigade Capital Management
Citizens Business Capital
GA Capital LLC
GACP Finance Co. LLC
GB Loan Holding Co. LLC
Hilco Merchant Resources
TD Bank NA
TPG Specialty Lending Inc.
Wells Fargo Bank NA

# SCHEDULE 1(k)

## Letters of Credit Beneficiaries

1-15 East Oak Street
194 Atlantic LLC
Building at 575 Fifth Office Owner LLC
Calzaturificio Stephen Srl
Equity One (Northeast Portfolio) Inc.
Etoile 660 Madison LLC
Flagship 660
Flagship Partners II LLC
Invesco Senior Secured Management Inc.
L'Oreal Paris
Metropolitan Life Insurance Co.
National Union Fire Insurance Co.
NV Van Noten Andries
Stockton Street Properties Inc.
Washington International Insurance Co.
Zurich American Insurance Co.

# SCHEDULE 1(l)

## Litigation Parties

424 Group Wholesale Inc.
Claudio Masserano
CSS Building Services Inc.
Ekipe Italia SRL
Epsilon Data Management LLC
Facebook Inc.
Masserano srl Strada Cascina Cortella 70/a 13900 Biella (BI)
Moncada, Daniel
O'Connor, Kaitlin
Ovative Group
Sergio Rossi USA Inc.
Villa Group SRL

# SCHEDULE 1(m)

## Parties that have requested notice pursuant to Bankruptcy Rule 2002

Albatrans Inc.
Allen Independent School District (TX)
Brookfield Property REIT Inc.
Building at 575 Fifth Office Owner LLC, The
Byredo USA Inc.
Comenity Capital Bank
CSS Building Services Inc.
Diptyque Distribution USA LLC
Flagship 660 Owner LLC
Flagship Partners II LLC
Kevyn Aucoin Beauty Inc.
Malin + Goetz Inc.
Manzanita Capital UK LLP
Manzanita US GP LLC
Retail Funding (BNY) LLC
Sabbadini SRL
Savino Del Bene USA
SessionM Inc.
Simon Property Group
Space Brands USA LLC
Thor ASB 1-15 East Oak Street LLC
TPG Specialty Lending Inc.
Wells Fargo Bank NA

# SCHEDULE 1(n)

## Professionals

Choate Hall & Stewart LLP
Houlihan Lokey Inc.
Joele Frank Wilkinson Brimmer Katcher
Jones Day
Katten Muchin Rosenman LLP
MIII Advisors
M-III Partners LP
Pachulski Stang Ziehl & Jones LLP
Paul Hastings LLP
Riemer & Braunstein LLP
Schulter Roth & Zabel LLP
Stretto

## SCHEDULE 1(o)

### Reclamation Parties

111 Skin Ltd.
Bonnie & Claus Inc.
Byredo
Estel Group SRL Societa Unipersonale
Ferragamo USA Inc.
GGR US LLC
Hilldun Corp.
Loro Piana & Co. Inc.
Malin + Goetz Inc.
SofiaCashmere
Tumi Inc.

# **SCHEDULE 1(p)**

## **Surety Bonds**

Hartford Insurance Group, The
Lexon Insurance Co.
Washington International Insurance Co.

# SCHEDULE 1(q)

## Taxing Authorities

Alabama, State of, Department of Revenue

Arizona, State of, Department of Revenue

California, State of, Department of Tax & Fee Administration

Clark, County of (NV)

Colorado, State of, Department of Revenue

Connecticut, State of, Commissioner of Revenue Services

Florida, State of, Department of Revenue

Georgia, State of, Revenue Commissioner

Hawaii, State of, Department of Taxation, Honolulu Tax Collector

Illinois, State of, Department of Revenue

Indiana, State of, Department of Revenue

Iowa, State of, Treasurer

Kentucky, Commonwealth of, Department of Revenue

King, County of (WA), Treasury

Los Angeles, County of (CA), Tax Collector

Louisiana, State of, Department of Revenue

Maine, State of, Revenue Services

Maryland, State of, Comptroller

Massachusetts, Commonwealth of, Commissioner of Revenue

Michigan, State of, Department of the Treasury

Minneapolis, City of (MN), Department of Revenue

Mississippi, State of, Department of Revenue

Nebraska, State of, Tax Commissioner

Nevada, State of, Department of Taxation

New Jersey, State of, Division of Taxation

New York, City of (NY), Department of Finance

New York, State of, Department of Taxation & Finance

North Carolina, State of, Secretary of Revenue

North Dakota, State of, Tax Commissioner

Oklahoma, State of, Tax Commission

Pennsylvania, Commonwealth of, Department of Revenue

Philadelphia, City of (PA)

Rhode Island, State of, Tax Administrator

San Francisco, City of (CA)

San Francisco, County of (CA)

Texas, State of, Comptroller of Public Accounts

United States, Government of the, Customs & Border Protection

United States, Government of the, Customs & Border Protection - Indianapolis

United States, Government of the, Internal Revenue Service

Utah, State of, Tax Commissioner

Vermont, State of, Department of Taxes

Virginia, Commonwealth of, Department of Taxation

Washington DC, Office of Tax & Revenue

Washington, State of, Department of Revenue

Wisconsin, State of, Department of Revenue

Wyoming, State of, Department of Revenue

# SCHEDULE 1(r)

## Top 30 General Unsecured Creditors

1-15 East Oak Street LLC
Adidas AG
ASB Capital Management
ASB Capital Management LLC
Azzedine Alaia
Azzedine Alaïa
Azzedine Alaïa SAS
Balenciaga America Inc.
Bottega Veneta Srl
Building at 575 Fifth Office Owner LLC,
    The
Burberry (Wholesale) Ltd.
Byredo USA Inc.
Canada Goose US Inc.
Celine Inc.
Chanel
Chloé
Chloé International SAS
Chloé SAS
CL U.S. Distribution Corp.
CL US Distribution Corp.
CP Fashion Group Inc.
Epsilon Data Management LLC
Etoile 660 Madison LLC
FedEx Corp.
GGR U.S. LLC
GGR US LLC
Givenchy Corp.
Google Inc.
Google LLC
Gucci
Guccio Gucci SpA
Isaia Corp.
Jenel Management Corp.
Loewe LLC
Loewe SA
LVMH Moët Hennessy - Louis Vuitton
LVMH Moët Hennessy - Louis Vuitton SE
Manolo Blahnik USA Ltd.
Margiela USA Inc.
Max Huber Research Laboratories
Max Huber Research Laboratories Inc.

Moncler USA Inc.
Newelevation
Owenscorp Italia SpA
Prada
Prada SpA
Prada USA Corp.
Rag & Bone Inc.
Rakuten Marketing LLC
Row LLC, The
Shiseido Cosmetics
Shiseido Cosmetics (Americas) Ltd.
Stockton Street Properties Inc.
Thor ASB 1-15 East Oak Street LLC
Thor Equities
Tribeca Design Studio LLC
Ulla Johnson Inc.
Yves Saint Laurent America Inc.

# **SCHEDULE 1(s)**

## **Unions**

Workers United - NY/NJ Regional Joint Board
Workers United - Philadelphia Joint Board
Workers United - Western States Regional Board

## SCHEDULE 1(t)

### US Trustees, Judges, & Court Contacts for the Southern District of New York

| | |
|---|---|
| Abriano, Victor | Moroney, Mary V. |
| Allen, Joseph | Morrissey, Richard C. |
| Arbeit, Susan | Nakano, Serene |
| Aschauer, Janine | Neifeld, Joshua |
| Azzaro, Christine | Ng, Cheuk M. |
| Benfield, Nathaniel | Nuss, Diana |
| Bently, Matthew | Paek, Mike |
| Bernstein, Stuart M. | Penpraze, Lisa |
| Black, Christine | Perrigino, Monica |
| Blander, Eitan | Pinelo, Uri |
| Brasky, Michael | Riffkin, Linda |
| Cassara, Amanda | Robie, Brenda |
| Catapano, Maria | Rodriguez, Ilusion |
| Cecilia G. Morris, Chief Judge | Schmitt, Kathleen |
| Chapman, Shelley C. | Schwartz, Andrea B. |
| Cho, Danny A. | Schwartzberg, Paul K. |
| Chue, Jessica | Scott, Shannon |
| Churbuck, Bryant | Selick, Allison |
| Citron, Andrew | Sharp, Sylvester |
| Daniele, Salvatore | Song, Justin |
| DiPofi, Karen | Van Baalen, Guy A. |
| DiSalvo, Rosemary | Velez-Riverz, Andrew |
| Drain, Robert D. | Vyskocil, Mary Kay |
| Echevarria, Lorraine | Wells, Annie |
| Eisen, Jamie | Wiles, Michael E. |
| Garrity, James L., Jr. | Williams, Elizabeth |
| Ginsberg, Amy | Xu, Donna |
| Glenn, Martin | Zdanowicz, Rhonda |
| Grossman, Robert E. | Zipes, Greg M. |
| Harrington, William K. | |
| Herther-Spiro, Nicole | |
| Higgins, Benjamin J. | |
| Hutzel, Amy | |
| Joseph, Nadkarni | |
| Kazaka-Rowe, Andrea | |
| Keller, Gilana | |
| Lane, Sean H. | |
| Leonhard, Alicia | |
| Li, TJ | |
| Masumoto, Brian S. | |
| Mendoza, Ercilia A. | |
| Merkin, Jeremy | |

## SCHEDULE 1(u)

### Utilities

10 Rittenhouse Square Condominium
    Association
194 Atlantic Avenue LLC
Action Carting Environmental Services Inc.
ADR 1811 Walnut Street LP
Americana at Brand LLC, The
AmeriCold Inc.
Beverly Hills, City of (IL)
Building at 575 Fifth Office Owner LLC,
    The
Central Hudson Gas & Electric Corp.
Chicago, City of, Department of Finance-
    Water Division
City View Plaza LLC
Cityview Plaza LLC
Consolidated Edison Inc.
Constellation NewEnergy Inc.
Copley Place
Copley Place Associates LLC
CPG Carlsbad Holdings LLC
CPG CRLS 413
CPG Partners LP
Direct Energy LP
Dunbar Armored Inc.
EJ Harrison & Sons Inc.
Etoile 660 Madison LLC
Eversource Energy
Fashion Outlets of Chicago LLC
Filco Carting Corp.
Florida Power & Light Co.
Gas Co. LLC, The
Geary Market Investment Co. Ltd.
GFM LLC
Hawaiian Electric Co. Inc.
Jenel Management Corp.
JLM Lyndhurst LLC
Keter Environmental Services Inc.
Livermore Premium Outlets LLC
Los Angeles, City of, Department of Water
    & Power
Macerich SMP LP
MPH Pacific Place LLC

National Grid plc
Nest International Inc.
Pacific Gas & Electric Co.
Peoples Gas & Power Co.
Plastic Center Inc.
Plymouth Rock Energy LLC
PSE&G/914
PSE&G/919
PSEG Long Island LLC
Public Service Electric & Gas Co.
Recology Golden Gate
Regency Centers LP
Republic Services #710
Rockland Electric Co.
Samiro Services Inc.
San Diego Gas & Electric Co.
San Francisco Water Power & Sewer
Santa Monica Place LP
Sawgrass Mills Inc.
Sawgrass Mills Phase IV LP
Seattle, City of (WA)
Shoppes at the Palazzo LLC, The
Southern California Edison Co.
Southern California Gas Co.
Stockton Street Properties Inc.
Tanger Properties LP
Thor Asb 1-15 East Oak Street LLC
United Hood Cleaning
Waste Connections Inc.
Wells Fargo Credit Card Funding LLC

## SCHEDULE 1(v)

### Vendors

0909 SRL
2Morrowmodel SRL
Adidas AG
Akira Naka Co.
Albatrans SPA
Alby SRL
Alevi SRL
Alex Begg
Alice Archer
ALPO SRL
Ambush Inc.
Ami Paris
AMI SRL
AMIRI
Anni Lu
Apa SRL
Arcade Group
Areoso Island SL
Astier De Villatte
Azzedine Alaia
Balenciaga America Inc.
Ballin Project SRL
Barrett SRL
Baudoin & Lange
Belle Enfant
Benter
Bigi Cravatte
Blaze Milano
Blywear Ltd.
Boinet SAS
Boldrini Selleria SRL
Bottega Venetta
Braganti Antonio SRL
Burberry's Wholesale
Calzaturificio Ballerina
Calzaturificio Due Elle SPA
Calzaturificio Ernesto Dolani SRL
Calzaturificio Luca Grossi SRL
Calzaturificio Martire
Camac SRL
Camiceria Scabo Di Bolzonella SRL
Carpan SRL

Caruso
Catya
Celine Inc.
Chanel
Chloé
Christelle Kocher Eurl
Cifonelli SLU
Cita SRL
CL US Distribution Corp.
Club 21 Distribution Ltd.
Comme Des Garcons Co. Ltd.
Corgi
Corrado Corradi SRL
County SRL
CP Fashion Group Inc.
D&D La Certosa Firenze Spa
Dalessandro SRL
David Szeto
Delphine Manivet
Delvaux Createur SA
Designers Remix AS
Detlef BVBA
DGE SRL
Diane De Clercq
Dibbern Gmbh & Co.
Divina SRL
Donisia SRL
Dries Van Noten
Ducotex SRL
EB Jewels SRL
Elda Trade SRL
Emilio Roselli
Erdem
Ermenegildo Zegna Corporation
Eurasia US Corp.
Fabrizio Viti
Factory SRL
Faliero Sarti
Fendi NA
Ferrante Brands SRL
Filuhats SRL
Fly Shoes Srl

Fontana Pelletterie SPA
Gabel Idustria Tessile SPA
GGR US LLC
Giani SRL
Giannico
Giardi Tessile SRL
Giglio Asla
Ginger Brown
Giovanni Bedin SRL
Giuntini Spa
Givenchy Corp.
Global Store SRL
GMT Management SRL
Golden Goose USA Inc.
Goossens Paris
Goyard
Gruppo Dondi SPA
Gucci
Gufram SRL
Harris
Hector Saxe
Heron Preston Srl
Heschung SA
Horn Please Ltd.
Iktinos Hellas SA
Il Borgo SRL
IM USA Corp.
Irene Neuwirth Inc.
James Lock & Co. Ltd.
Jérôme Dreyfuss
Jimi Roos
Jinghi
JW Anderson Ltd.
Kilometre
Kiwi Enterprises Pvt. Ltd.
La Gallina Matta SRL
La Maison Rovnof
La Venusia SRL
Laboratorio Pesaro SRL
Lanificio Arca SRL
Le Kilt
Lenci Calzature SPA
Liapull SRL
Little Liffner
Loewe LLC
Lorenzi Milano SRL

Lovat & Green
Lucien Pellat-Finet (Scotland) Ltd.
Luxury Children's Wear SRL
LVMH Moët Hennessy - Louis Vuitton
LW Cretschmar Gmbh & Co. Kg
Maglificio Belvedere
Maille France
Maison Margiela
Maison Pierre Hardy
Maison Rabih Kayrouz
Maison Sarah Lavoine
Major SRL
Manolo Blahnik
Manolo Blahnik USA Ltd.
Marcair International
Marco Pescarolo SRL
Margaret Howell Ltd.
Marianna Senchina
MARIE DAÂGE
Marine Serre Sarl
Marli SRL
Marskinryyppy by Nicole Brundage
Martin Grant
Martine Rose
Massimo Alba
Maurizi SRL
Max Huber Research Lab
Milano Fashion SRL
Moncler USA Inc.
NBI SAGL
New Concept Shoes LDA
Nicolas Gerlier
Odejo Ltd.
Off White Operating SRL
Olgana Paris Ltd.
Osman Studio Ltd.
Otis Batterbee
Owenscorp Italia SpA
P&C SRL
PALM ANGELS
Parisini
Phi-male
Pierre Balmain SA
Platforme International Ltd.
Prada
Prada USA Corp.

Randi Creazioni SRL
Raphael
Raphaele Canot Ltd.
Raquel Diniz
RB Moda
Renzo Romagnoli
Restelli
Row LLC, The
Savino Del Bene SPA
Shiseido Cosmetics
Simonnot-Godard SARL
Slam Jam SRL
Sophia Kah
Sozzi Calze SRL
Stefano Serapian SRL
Streeters
Studio ADL Ltd.
Taddeucci SRL
Takayaka Sarl
Teija
Tiare
Tod's SPA
Tomorrow Milano SRL
Tradexco
Ulla Johnson Inc.
Unravel
Valentino USA Inc.
Venusia SRL
Vetements Group AG
Villa Delmitia
Vittorio Virgili Srl
Wallace Sewell
Wandler BV
We Do SRL
WEDO SRL
Y/Project
Yasmine Eslami
Yves Saint Laurent America Inc.
ZigoZago

## SCHEDULE 2

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| ABM Industry Groups LLC | ABM Industries Incorporated | Current |
| Aon<br><br>Aon plc | Aon Affinity Administradora de Beneficios Ltda.<br><br>Aon Financial Services Group, Inc.<br>Aon Holdings Corretores de Seguros Ltda.<br><br>Aon Risk Services Central, Inc.<br>Aon Risk Services Companies, Inc.<br>AON Risk Services Northeast, Inc.<br>Aon Risk Services Southwest, Inc. | Current<br><br>Current<br>Current<br><br>Current<br>Current<br>Current<br>Current |
| Brookfield Property REIT Inc. | Brookfield Asset Management, LLC | Current |
| Chicago, City of, Department of Finance-Water Division | City of Chicago | Current |
| CNA Insurance Cos. Inc. | Consolidated Container Company<br>Continental Casualty Company<br>Kevin Leidwinger | Current<br>Current<br>Closed |
| Colorado, State of, Department of Revenue | State of Colorado | Closed |
| Comenity Capital Bank<br><br>Comenity Servicing LLC | Alliance Data Systems Corporation, Board of Directors | Current |
| Constellation NewEnergy Inc. | Exelon Corporation<br>Volta Energy Technologies, LLC<br>William A. Von Hoene, Jr. | Current<br>Closed<br>Current |
| Equinox Holdings Inc. | Equinox Holdings, Inc.<br>L Catterton<br>L Catterton Asia Advisors<br>L Catterton Singapore Pte Limited<br>SoulCycle Inc. | Current<br>Current<br>Current<br>Current<br>Current |
| Equity One (Northeast Portfolio) Inc.<br>Equity One Inc. | Equity One Inc. | Closed |
| Facebook Inc. | Atlas Solutions, LLC<br>Crowdtangle, Inc.<br>Facebook Payments, Inc.<br>Facebook Services, Inc. | Current<br>Current<br>Current<br>Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Facebook Technologies, LLC | Current |
| | Facebook, Inc. | Current |
| | Instagram, Inc. | Current |
| | Oculus VR, LLC | Current |
| | WhatsApp Inc. | Current |
| FedEx Corp. | FedEx Trade Networks, Inc. | Closed |
| FirstEnergy Solutions Corp. | FirstEnergy Corporation | Current |
| FJC Security Services Inc. | Allied Universal | Current |
| | HTDK (Shanghai) Co., Ltd. | Current |
| | Peridot Gem Investment Holdings Limited | Closed |
| | Warburg Pincus | Closed |
| | Warburg Pincus Asia LLC | Current |
| | Warburg Pincus Global Growth L.P. | Current |
| | Warburg Pincus, LLC | Current |
| | WP Financial L.P. | Current |
| | WP Re Cayman Limited | Current |
| Florida Power & Light Co. | NextEra Energy, Inc. | Closed |
| Freedom Specialty Insurance Co. | Nationwide Life Insurance | Closed |
| | Nationwide Mutual Insurance Company | Current |
| | Veterinary Pet Insurance Company | Current |
| Gas Co. LLC, The | Fawkes Holdings, LLC | Current |
| | Macquarie Agricultural Funds Management Limited | Current |
| | Macquarie CAF LLC | Current |
| | Macquarie Capital Group Limited (U.K. Branch) | Closed |
| | Macquarie Capital Hong Kong Limited | Closed |
| | Macquarie Capital USA Inc. | Current |
| | Macquarie Crop Partners Feeder, L.P. | Current |
| | Macquarie Crop Partners, L.P. | Current |
| | Macquarie Group Investments (UK) No. 2 Limited | Closed |
| | Macquarie Holdings (U.S.A.) Inc. | Closed |
| | Macquarie Infrastructure & Real Assets (Europe) Limited | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Macquarie Infrastructure and Real Assets Inc. | Closed |
| | Macquarie Infrastructure and Real Assets Mexico, SA de CV | Current |
| | Macquarie Infrastructure and Real Assets, Inc. | Current |
| | Macquarie Infrastructure Management (Asia) Pty Limited, Singapore Branch | Current |
| | Macquarie Infrastructure Partners II GP, LLC | Closed |
| | Macquarie Infrastructure Partners III, L.P. | Current |
| | Macquarie Infrastructure Partners Inc. | Current |
| | Macquarie Infrastructure Partners IV, L.P. | Current |
| | Macquarie New York Parking 2, LLC | Closed |
| | MIP IV Fawkes, L.P. | Current |
| | MIRA Americas Inc. | Current |
| Georgia, State of, Revenue Commissioner | State of Georgia | Current |
| Google Inc. Google LLC | Intersection Holdings, LLC | Current |
| | Sidewalk Infrastructure Partners | Current |
| | Sidewalk Labs Employees, L.L.C. | Current |
| | Waymo LLC | Current |
| Hilco Merchant Resources | Hilco Global | Current |
| | Hilco Merchant Resources | Current |
| | Hilco Real Estate LLC | Closed |
| | Hilco Receivables, LLC | Closed |
| | Hilco Trading, LLC | Current |
| Houlihan Lokey Inc. | Houlihan Lokey EMEA, LLP | Closed |
| Houston Casualty Co. | HCC Insurance Holdings, Inc. | Closed |
| | HCC Life Insurance Company | Closed |
| | HCC Specialty Insurance Company | Closed |
| | HCC Specialty Underwriters, Inc. | Closed |
| | Houston Casualty Company | Closed |
| Illinois, State of, Department of Revenue | Illinois Executive Ethics Commission | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Illinois Torture Inquiry and Relief Commission | Current |
| | Office of the Illinois Governor | Closed |
| Invesco Senior Secured Management Inc. | Invesco Private Capital, Inc. | Current |
| | Invesco Senior Secured Management, Inc. | Former |
| | WL Ross & Co. LLC | Closed |
| Jones Lang LaSalle Americas Inc. | JLL Partners, Inc. | Closed |
| | Jones Lang LaSalle Group | Current |
| | LaSalle Investment Management | Current |
| Kronos Inc. | Hellman & Friedman LLC | Current |
| Loewe LLC

Loewe SA
Loro Piana & Co. Inc.
LVMH Moët Hennessy- Louis Vuitton SE | LVMH Moët Hennessy Louis Vuitton SE | Current |
| Metropolitan Life Insurance Co. | MetLife, Inc. | Closed |
| M-III Partners LP | M III Acquisition 2 Corp. | Closed |
| | M III Acquisition Partners 2 Corp. | Closed |
| MPH Pacific Place LLC | MPH Pacific Corp. | Closed |
| New York, City of (NY), Department of Finance | New York City Commission on Human Rights | Closed |
| North Carolina, State of, Secretary of Revenue | David Lewis | Current |
| | Philip E. Berger | Current |
| | Philip E. Berger, as a member of the North Carolina State Board of Elections | Closed |
| | Robert Rucho | Current |
| | State of North Carolina | Closed |
| | Timothy K. Moore | Current |
| | Timothy K. Moore, as a member of the North Carolina State Board of Elections | Closed |
| Oracle America Inc. | Oracle America, Inc. | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Oracle Corporation | Current |
| | Oracle International Corporation | Current |
| | Oracle Solaris | Current |
| | Oracle USA, Inc. | Current |
| Otis Elevator Co. | Carrier Corporation | Current |
| | Otis Elevator Company | Current |
| | Pratt & Whitney | Current |
| | United Technologies Corporation | Current |
| | UTC Building & Industrial Systems | Closed |
| | UTC Climate, Controls and Security | Closed |
| Pacific Gas & Electric Co. | Pacific Gas and Electric Company | Current |
| Pennsylvania, Commonwealth of, Department of Revenue | Office of the General Counsel of Pennsylvania | Current |
| | Office of the Governor of Pennsylvania | Current |
| | Office of the Secretary of State of Pennsylvania | Current |
| | Pennsylvania Higher Education Assistance Agency | Current |
| Perry Capital LLC Perry Partners International Inc. Perry Partners LP Perry Principals LLC Perry Private Opportunities Fund LP | Perry Capital LLC | Closed |
| Plymouth Rock Energy LLC | ENGIE Energy Services Holdings Northeast LLC | Current |
| | ENGIE North America Inc. | Closed |
| | OpTerra Energy Group | Closed |
| Republic Services #710 | Consolidated Disposal Service, LLC | Closed |
| Retail Funding (BNY) LLC | BNY Mellon Capital Markets, LLC | Closed |
| | Prime Capital Debt SCS, SICAV-SIF | Closed |
| RGIS LLC | Best Reliance Inventory Services Group, LLC | Current |
| | ISICS-RGIS Ltd | Current |
| | RBDS Desenvolvimento de Software Ltda | Current |
| | RGIS Argentina Servicios de Stock SRL | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | RGIS Australia Employment Services Pty Ltd. | Current |
| | RGIS Australia Pty Ltd | Current |
| | RGIS Austria GmbH | Current |
| | RGIS B.V. | Current |
| | RGIS Brasil Servicos de Estoques Ltda. | Current |
| | RGIS C.R. s.r.o. | Current |
| | RGIS Canada (2007), LLC | Current |
| | RGIS Canada ULC | Current |
| | RGIS Chile Limitada | Current |
| | RGIS China, LLC | Current |
| | RGIS Colombia Ltda. | Current |
| | RGIS El Salvador, Ltda. de C.V. | Current |
| | RGIS Especialistas em Inventários Unipessoal Lda. | Current |
| | RGIS Especialistas en Inventarios, S. de R.L. de C.V. | Current |
| | RGIS Guatemala Sociedad Anónima | Current |
| | RGIS Holdings, LLC | Current |
| | RGIS Hong Kong Limited | Current |
| | RGIS Hungary Business Provider Ltd. | Current |
| | RGIS International Holdings, LLC | Current |
| | RGIS Inventory Specialists Limited | Current |
| | RGIS Inventory Specialists SPRL | Current |
| | RGIS Inventory Specialists Teoranta | Current |
| | RGIS Inventur Spezialisten GmbH | Current |
| | RGIS Japan Co., Ltd. | Current |
| | RGIS Korea Ltd. | Current |
| | RGIS Malaysia Sdn. Bhd. | Current |
| | RGIS Mexico, LLC | Current |
| | RGIS New Zealand Limited | Current |
| | RGIS Panamá S. de R.L. | Current |
| | RGIS Peru, SRL | Current |
| | RGIS Properties, LLC | Current |
| | RGIS Retail Services Romania SRL | Current |
| | RGIS Services, LLC | Current |
| | RGIS Servicios Costa Rica Sociedad Anónima | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | RGIS Singapore Pte. Ltd. | Current |
| | RGIS Spain, S.L. | Current |
| | RGIS Spécialistes en Inventaire S.A.R.L. | Current |
| | RGIS Specialisti in inventari S.r.l. | Current |
| | RGIS Switzerland Sagl | Current |
| | RGIS Taiwan, LLC | Current |
| | RGIS Uslugi Inwentaryzacyjne Spólka z ograniczona odpowiedzialnoscia | Current |
| | RGIS, LLC | Current |
| | Seiva Participações Ltda. | Current |
| | Shanghai RGIS Enterprise Management Consultant Company Ltd. | Current |
| | Zafer Recursos Humanos e Trabalho Temporário Ltda. | Current |
| Schindler Elevator Corp. | Schindler Elevator Corporation | Current |
| Sergio Rossi USA Inc. | Investindustrial Industries S.A. | Current |
| Shiseido Cosmetics | Beauté Prestige International | Closed |
| Shiseido Cosmetics (Americas) Ltd. | Shiseido Americas Corporation | Current |
| Southern California Edison Co. | Southern California Edison Company | Closed |
| Starr Indemnity & Liability Co. Inc. | Starr International Co. Inc. | Closed |
| Texas, State of, Comptroller of Public Accounts | Greg Abbott | Closed |
| | Rolando Pablos, as Secretary of State of Texas | Closed |
| | State of Texas | Closed |
| TPG Specialty Lending Inc. | TPG Asia VI SF Pte. Ltd. | Current |
| | TPG Capital | Current |
| | TPG China Limited | Current |
| | TPG Europe | Current |
| | TPG Global, Inc. | Current |
| | TPG Global, LLC | Current |
| | TPG Group Holdings (SBS), L.P. | Current |
| | TPG Growth, LLC | Current |
| | TPG RE II Arlington SPV I, Limited Partnership (PEI) | Current |
| | TPG RE II Arlington SPV II, Limited Partnership (PEI) | Current |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | TPG RE II Arlington SPV III, Limited Partnership (PEI) (2) | Current |
| | TPG Real Estate | Current |
| | TPG Real Estate Partners II, LP | Current |
| | TPG Real Estate Partners III, L.P. | Current |
| | TPG Sixth Street Partners, LLC | Current |
| | TPG Star VPSI, L.P. | Current |
| UberEats | Uber Technologies, Inc. | Closed |
| United Specialty Insurance Co. | Markel Corporation | Current |
| | Markel Ventures, Inc. | Current |
| United States, Government of the, Customs & Border Protection | Carmen Villar Prados, as the Executive Director of the Puerto Rico Highways & Transportation Authority | Closed |
| United States, Government of the, Customs & Border Protection - Indianapolis | Commonwealth of Puerto Rico | Closed |
| United States, Government of the, Internal Revenue Service | Eddie Baza Calvo | Closed |
| | Employees' Retirement System of the Government of the Commonwealth of Puerto Rico | Closed |
| | Government Development Bank of Puerto Rico | Closed |
| | Government of Guam | Closed |
| | Konstantina Diamantopoulos | Former |
| | Luis F. Cruz Batista, as Director of the Office of Management and Budget of the Commonwealth of Puerto Rico | Closed |
| | Puerto Rico Aqueduct and Sewer Authority | Closed |
| | Puerto Rico Fiscal Agency and Financial Advisory Authority | Closed |
| | Rep. William Ballard Hurd, as a member of the United States Congress | Closed |
| | Rick Perry, as former Governor of Texas | Closed |
| | United States Department of Homeland Security | Closed |

59

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| Virginia, Commonwealth of, Department of Taxation | M. Kirkland Cox | Current |
| | Virginia House of Delegates | Current |
| Wells Fargo Bank NA | Wachovia Capital Partners Secondary Fund I, LP | Closed |
| | Wachovia Holdings Corporation | Closed |
| | Wachovia Investors, Inc. | Closed |
| | Wachovia Securities, LLC | Closed |
| | Wells Fargo & Company | Closed |
| | Wells Fargo Bank, N.A. | Closed |
| | Wells Fargo Central Pacific Holdings, Inc. | Closed |
| | Wells Fargo Securities LLC | Closed |
| | WFC Holdings Corporation | Closed |
| XL Insurance Co. SE | AB Commercial Real Estate Debt Series 1-A | Current |
| | AB Commercial Real Estate Debt Series 1-B | Current |
| | AB Commercial Real Estate Debt Series 1-C | Current |
| | AB Institutional Series B | Current |
| | AB Institutional Series C | Current |
| | Axa Equitable Life Insurance Company | Current |
| | AXA REIM SGP | Current |

**<u>EXHIBIT C</u>**

**Mohsin Y. Meghji Declaration**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CMG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF MOHSIN Y. MEGHJI, CHIEF RESTRUCTURING OFFICER OF BARNEYS NEW YORK, INC., IN SUPPORT OF THE DEBTOR'S APPLICATION FOR THE ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

I, Mohsin Y. Meghji, Chief Restructuring Officer of Barneys New York, Inc. being duly sworn, state the following under penalty of perjury:

1.      I am the Chief Restructuring Officer of Barneys New York, Inc., a corporation organized under the laws of Delaware and one of the above-captioned debtors and debtors in possession (collectively, the "Debtors" or "Barneys") located at 575 Fifth Avenue, New York, New York 10017.

2.      I have served in this role since August 5, 2019. Prior to becoming the Debtors' Chief Restructuring Officer, I advised the Debtors in my capacity as Managing Partner of M-III Advisors, LP ("M-III") beginning June 26, 2019. In my capacity as Chief Restructuring Officer, I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records. I submit this declaration (the "Declaration") in support of the *Debtors'*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819). The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

*Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective <u>Nunc Pro Tunc</u> to the Petition Date* (the "<u>Application</u>").[2]  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

### The Debtors' Selection of Counsel

3.      The Debtors recognize that a comprehensive review process is necessary when selecting and managing chapter 11 counsel to ensure that bankruptcy professionals are subject to the same client-driven market forces, scrutiny, and accountability as professionals in non-bankruptcy engagements.

4.      To that end, the review process utilized by the Debtors here assessed potential counsel based on their expertise in the relevant legal issues and their prior representation of the Debtors in similar proceedings.  The Debtors previously worked with Kirkland & Ellis with respect to their out-of-court restructuring transaction in 2012.

5.      Ultimately, the Debtors retained Kirkland because of its extensive experience in corporate reorganizations, both out-of-court and under chapter 11 of the Bankruptcy Code.  More specifically, Kirkland is familiar with the Debtors' business operations and many of the potential legal issues that may arise in the context of these chapter 11 cases.  I believe that Kirkland is both well qualified and uniquely able to represent the Debtor in these chapter 11 cases in an efficient and timely manner.

### Rate Structure

6.      In my capacity as Chief Restructuring Officer, I am responsible for supervising outside counsel retained by the Debtors in the ordinary course of business.  Kirkland has informed

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

2

the Debtors that its rates for bankruptcy representations are comparable to the rates Kirkland charges for non-bankruptcy representations.   As discussed below, I am also responsible for reviewing the statements regularly submitted by Kirkland, and can confirm that the rates Kirkland charged the Debtors in the prepetition period are the same as the rates Kirkland will charge the Debtors in the postpetition period.

### Cost Supervision

7.      The Debtors have approved the prospective budget and staffing plan for the period from August 6, 2019 to November 6, 2019, recognizing that in the course of a large chapter 11 case like these chapter 11 cases, it is possible that there may be a number of unforeseen fees and expenses that will need to be addressed by the Debtors and Kirkland.   The Debtors further recognize that it is their responsibility to monitor closely the billing practices of their counsel to ensure the fees and expenses paid by the estate remain consistent with the Debtors' expectations and the exigencies of the chapter 11 cases.   The Debtors will continue to review the statements that Kirkland regularly submits, and, together with Kirkland, amend the budget and staffing plans periodically, as the case develops.

8.      As they did prepetition, the Debtors will continue to bring discipline, predictability, client involvement, and accountability to the counsel fees and expenses reimbursement process. While every chapter 11 case is unique, these budgets will provide guidance on the periods of time involved the level of the attorneys and professionals that will work on various matters, and projections of average hourly rates for the attorneys and professionals for various matters.

*[Remainder of Page Intentionally Left Blank]*

3

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  August 27, 2019                           Respectfully submitted,

                                        _/s/ Mohsin Y. Meghji_
                                        Name: Mohsin Y. Meghji
                                        Title:   Managing Partner, M-III Advisors, LP