Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

-and-

Chad J. Husnick, P.C.
W. Benjamin Winger (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

Steven J. Reisman
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, New York 10022
Telephone:      (212) 940-8800
Facsimile:      (212) 940-8776

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | Chapter 11 |
| In re: | ) | |
| | ) | |
| BARNEYS NEW YORK, INC., | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**SCHEDULES OF ASSETS AND LIABILITIES**
**OF DEBTOR BARNEYS NEW YORK, INC. (CASE NO. 19-36300)**

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### GLOBAL NOTES AND STATEMENT OF
### LIMITATIONS, METHODOLOGY AND DISCLAIMERS
### REGARDING THE DEBTORS' SCHEDULES OF ASSETS
### AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

Barneys New York, Inc. (at times referred to as the "Company") and the above-captioned debtors and debtors in possession (collectively, the "Debtors") have filed their respective Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The Debtors, with the assistance of their legal and financial advisors, prepared the Schedules and Statements in accordance with section 521 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure.

While the Debtors' management has made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances, based on information available at the time of preparation, subsequent information or discovery may result in material changes to these Schedules and Statements, and inadvertent errors, inaccuracies, or omissions may have occurred. Because the Schedules and Statements contain unaudited information, which is subject to further review, verification, and potential adjustment, there can be no assurance that these Schedules and Statements are complete. The Debtors reserve all rights to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including, without limitation, the right to amend the Schedules and Statements with respect to claim (as defined in section 101(5) of the Bankruptcy Code, "Claim") description, designation, or Debtor against which the Claim is asserted; dispute or otherwise assert offsets or defenses to any Claim reflected in the Schedules and Statements as to amount, liability, priority, status, or classification; subsequently designate any Claim as "disputed," "contingent," or "unliquidated;" or object to the extent, validity, enforceability, priority, or avoidability of any Claim. Any failure to designate a Claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such Claim

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819). The location of the Debtors' service address is 575 Fifth Avenue, New York, New York 10017.

or amount is not "disputed," "contingent," or "unliquidated." Listing a Claim does not constitute an admission of liability by the Debtor against which the Claim is listed or against any of the Debtors. Nothing contained in the Schedules and Statements shall constitute a waiver of any right of the Debtors or an admission with respect to their chapter 11 cases (including, but not limited to, issues involving claims, substantive consolidation, defenses, equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non- bankruptcy laws to recover assets or avoid transfers).

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have made commercially reasonable efforts to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements. As a result, inadvertent errors or omissions may exist. For the avoidance of doubt, the Debtors hereby reserve their rights to amend and supplement the Schedules and Statements as may be necessary or appropriate.

The Debtors and their agents, attorneys and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein, and will not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein. While commercially reasonable efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist. The Debtors and their agents, attorneys, and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or re-categorized, except as required by applicable law. In no event will the Debtors or their agents, attorneys and/or financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys, and financial advisors are advised of the possibility of such damages.

Mohsin Y. Meghji has signed each set of the Schedules and Statements. Mr. Meghji serves as the Chief Restructuring Officer, and/or is an authorized signatory, for each of the Debtors. In reviewing and signing the Schedules and Statements, Mr. Meghji has necessarily relied upon the efforts, statements, advice, and representations of personnel of the Debtors and the Debtors' legal and financial advisors. Given the scale of the Debtors' business and the 22 stores (as of the Petition Date) covered by the Schedules and Statements , Mr. Meghji has not (and could not have) personally verified the accuracy of each such statement and representation, including statements and representations concerning amounts owed to creditors.

Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.

These Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs

(the "Global Notes") are incorporated by reference in, and comprise an integral part of, all of the Schedules and Statements, and should be referred to and considered in connection with any review of the Schedules and Statements.[2] In the event that the Schedules and/or Statements differ from these Global Notes, the Global Notes control.

### Global Notes and Overview of Methodology

1.  **Description of Cases.**  On August 6, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On August 7, 2019, an order was entered directing procedural consolidation and joint administration of these chapter 11 cases [Docket No. 41].  Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor has filed its own Schedules and Statements.  The information provided herein, except as otherwise noted, is reported as of the close of business on the Petition Date.

2.  **Basis of Presentation.**  For financial reporting purposes, prior to the Petition Date, the Debtors prepared financial statements that were consolidated by the parent Debtor. Combining the assets and liabilities set forth in the Schedules and Statements would result in amounts that may be different from financial information that would be prepared on a consolidated basis under Generally Accepted Accounting Principles ("GAAP"). Therefore, these Schedules and Statements do not purport to represent financial statements prepared in accordance with GAAP nor are they intended to fully reconcile to the financial statements prepared by the Debtors. Unlike the consolidated financial statements, these Schedules and Statements reflect the assets and liabilities of each separate Debtor, except where otherwise indicated. Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements.

    Moreover, given, among other things, the uncertainty surrounding the collection and ownership of certain assets and the valuation and nature of certain liabilities, to the extent that a Debtor shows more assets than liabilities, this is not an admission that the Debtor was solvent as of the Petition Date or at any time prior to the Petition Date. Likewise, to the extent a Debtor shows more liabilities than assets, this is not an admission that the Debtor was insolvent at the Petition Date or any time prior to the Petition Date.

3.  **Reservations and Limitations.**  While reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements, inadvertent errors or omissions may exist. The Debtors reserve all rights to amend and/or supplement the Schedules and Statements from time to time as is necessary or appropriate. Nothing contained in the Schedules and Statements constitutes a waiver of any of the Debtors' rights or an admission

---

[2]    These Global Notes supplement and are in addition to any specific notes contained in each Debtor's Schedules or Statements. The fact that the Debtors have prepared a Global Note with respect to any of individual Debtor's Schedules and Statements and not to those of another should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Note to any of the Debtors' other Schedules and Statements, as appropriate.

of any kind with respect to these chapter 11 cases, including, but not limited to, any rights or claims of the Debtors against any third party or issues involving substantive consolidation, equitable subordination, or defenses or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code or any other relevant applicable bankruptcy or non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.

4.  **No Admission.**  Nothing contained in the Schedules and Statements is intended as, or should be construed as, an admission or stipulation of the validity of any claim against the Debtors, any assertion made therein or herein, or a waiver of the Debtors' rights to dispute any claim or assert any cause of action or defense against any party.

### General Disclosures Applicable to Schedules and Statements

1.  **Causes of Action.**  Despite their reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets. The Debtors reserve all of their rights with respect to any cause of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (collectively, "Causes of Action") they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any claims or Causes of Action or in any way prejudice or impair the assertion of such claims or Causes of Action.

2.  **Recharacterization.** The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements. However, the Debtors may have improperly characterized, classified, categorized, designated, or omitted certain items due to the complexity and size of the Debtors' business. Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition.

3.  **Claim Designations.** Any failure to designate a claim in the Schedules and Statements as "contingent," "unliquidated," or "disputed" does not constitute an admission by the Debtors that such claim or amount is not "contingent," "unliquidated," or "disputed." The Debtors reserve all of their rights to dispute, or to assert offsets or defenses to, any claim

4

reflected on their Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, or classification, or to otherwise subsequently designate any claim as "contingent," "unliquidated," or "disputed." Moreover, the Debtors reserve all of their rights to amend their Schedules and Statements as necessary and appropriate. Listing a claim does not constitute an admission of liability by the Debtors.

4.    **Unliquidated Claim Amounts.** Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

5.    **Undetermined Amounts.** The description of an amount as "undetermined" is not intended to reflect upon the materiality of such amount.

6.    **Court Orders.** Pursuant to certain orders of the Bankruptcy Court entered in the Debtors' chapter 11 cases entered on or about the Petition Date (collectively, the "First Day Orders"), the Debtors were authorized (but not directed) to pay, among other things, certain prepetition claims of employees, lienholders, suppliers, customer credits/refunds, claimants under section 503(b)(9) of the Bankruptcy Code, and taxing authorities, among others. Accordingly, these liabilities may have been or may be satisfied in accordance with such orders and therefore generally are not listed in the Schedules and Statements. Regardless of whether such claims are listed in the Schedules and Statements, to the extent such claims are paid pursuant to an order of the Bankruptcy Court (including the First Day Orders), the Debtors reserve all rights to amend or supplement their Schedules and Statements.

7.    **Other Paid Claims.** To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Debtors' Schedules and Statements, and shall be enforceable by all parties, subject to any necessary Bankruptcy Court approval. To the extent the Debtors pay any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend and supplement the Schedules and Statements and take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

8.    **Valuation.** It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain current market valuations of all of their assets and, in certain circumstances, estate assets are being currently marketed pursuant to that certain *Order (I) Approving the Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Approving the Form and Manner of Notice Thereof, and (IV) Granting Related Relief* [Docket No. 156]. For these reasons, the Debtors have indicated in the Schedules and Statements that the values of certain assets and liabilities are undetermined or unknown. Accordingly, unless otherwise indicated, net book values as of August 3, 2019 are reflected on the Schedules and Statements. Exceptions to this include operating cash and certain other assets. Operating cash is presented as bank balance as of the Petition Date. Certain other assets, such as investments in subsidiaries and other intangible assets, are listed at undetermined amounts, as the net book values may differ materially from fair market values. Amounts ultimately realized may vary from net book value (or whatever value was ascribed) and such variance may be material. Accordingly, the Debtors reserve

5

all of their rights to amend or adjust the value of each asset set forth herein. In addition, the amounts shown for total liabilities exclude items identified as "unknown" or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements. Also, assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value. The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset. Given, among other things, the current market valuation of certain assets and the valuation and nature of certain liabilities, nothing in the Schedules and Statements shall be, or shall be deemed to be, an admission that any Debtor was solvent or insolvent as of the Petition Date.

9.    **Liabilities.** The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change. The Debtors reserve the right to amend the Schedules and Statements as they deem appropriate in this regard.

10.    **Excluded Assets and Liabilities.** The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including without limitation, accrued salaries, employee benefit accruals and accrued accounts payable. In addition and as set forth above, the Debtors may have excluded amounts for which the Debtors have been granted authority to pay pursuant to a First Day Order or other order that may be entered by the Bankruptcy Court. The Debtors also have excluded rejection damage claims of counterparties to executory contracts and unexpired leases that may be rejected (if any), to the extent such damage claims exist. In addition, certain immaterial assets and liabilities may have been excluded.

11.    **Confidential or Sensitive Information.** There may be instances in which certain information in the Schedules and Statements intentionally has been redacted due to the nature of an agreement between a Debtor and a third party, local restrictions on disclosure, concerns about the confidential or commercially sensitive nature of certain information, or concerns for the privacy of an individual. The alterations will be limited to only what is necessary to protect the Debtor or third party.

12.    **Duplication.** Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Statements and Schedules.  To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

13.    **Leases.** The Debtors have not included in the Schedules and Statements the future obligations of any capital or operating leases. To the extent that there was an amount outstanding as of the Petition Date, the creditor has been included on Schedule F of the Schedules.

14. **Contingent Assets**. The Debtors believe that they may possess certain claims and causes of action against various parties. Additionally, the Debtors may possess contingent claims in the form of various avoidance actions they could commence under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws. The Debtors, despite reasonable efforts, may not have identified and/or set forth all of their causes of action against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets. The Debtors reserve all of their rights with respect to any claims, causes of action, or avoidance actions they may have and nothing contained in these Global Notes or the Schedules and Statements shall be deemed a waiver of any such claims, avoidance actions, or causes of action or in any way prejudice or impair the assertion of such claims. Additionally, prior to the Petition Date, each Debtor, as plaintiff, may have commenced various lawsuits in the ordinary course of its business against third parties seeking monetary damages.

15. **Intercompany Accounts**. The Debtors have historically not kept separate books and records by entity in the singular accounting system. As such, the Debtors' books and records have always been prepared on a consolidated basis. While nearly all of the Debtors' operations occur at Barney's, Inc., the Debtors will, highly infrequently, engage in *de minimis* business relationships with each other, including the payment or funding of certain operating expenses. These relationships, payments, and/or funding of expenses are not always reflected as intercompany receivables or payables, see *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 8] (the "Cash Management Motion").

16. **Guarantees and Other Secondary Liability Claims**. The Debtors have used reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, "Guarantees") in each of their executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements. Where such Guarantees have been identified, they have been included in the relevant Schedule H for the Debtor or Debtors affected by such Guarantees. However, certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements may have been inadvertently omitted. Thus, the Debtors reserve all of their rights to amend the Schedules to the extent that additional Guarantees are identified.

17. **Intellectual Property Rights**. Exclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. The Debtors have made

every effort to attribute intellectual property to the rightful Debtor owner, however, in some instances, intellectual property owned by one Debtor may, in fact, be owned by another. Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all intellectual property rights.

18.  **Executory Contracts**. Although the debtors made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so. Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts, including the right to amend Schedule G.

19.  **Liens**. The inventories, property, and equipment listed in the Statements and Schedules are presented without consideration of any asserted mechanics', materialmen, or similar liens that may attach (or have attached) to such inventories, property, and equipment.

20.  **Estimates**. To prepare and file the Schedules as close to the Petition Date as possible, management was required to make certain estimates and assumptions that affected the reported amounts of these assets and liabilities. The Debtors reserve all rights to amend the reported amounts of assets and liability to reflect changes in those estimates or assumptions.

21.  **Fiscal Year**. Each Debtor's fiscal year ends on or about February 1st.

22.  **Currency**. Unless otherwise indicated, all amounts are reflected in U.S. dollars.

23.  **Property and Equipment**. Unless otherwise indicated, owned property and equipment are stated at net book value. The Debtors may lease furniture, fixtures, and equipment from certain third party lessors. Any such leases are set forth in the Schedules and Statements on Schedule G. Nothing in the Schedules and Statements is or shall be construed as an admission as to the determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all of their rights with respect to same.

24.  **Inventory.** Merchandise inventories, consisting primarily of finished goods, are stated at the lower of FIFO (first-in, first-out) cost or net realizable value, as determined by the retail inventory method. The retail inventory method is widely used in the retail industry due to its practicality. Under the retail inventory method, the valuation of inventories at cost and the resulting gross margins are determined by applying a calculated cost-to-retail ratio, for various groupings of similar items, to the retail value of inventories. The cost of the inventory reflected on the consolidated balance sheets are decreased by charges to cost of goods sold at the time the retail value of the inventory is lowered through the use of markdowns. Sales activities are conducted during two primary selling seasons - spring and fall. The spring selling season is conducted primarily in the Company's first and second quarters and the fall selling season is conducted predominantly in the Company's third and fourth quarters. During each season, the Company records markdowns to reduce the retail value of the Company's inventories. Factors considered in determining markdowns include current and anticipated demand, customer preferences, and age of merchandise and fashion trends. Throughout the season, management records both point-of-sale ("POS") and

permanent markdowns. POS markdowns are recorded at the time of sale and reduce the retail value of only the items sold. Permanent markdowns are designated primarily for clearance activity and reduce the retail value of all goods subject to markdown. Physical inventories are taken semi-annually, and inventory records are adjusted accordingly, resulting in the recording of actual shrinkage. The Company has loss prevention programs and other policies in place that are intended to reduce shrinkage. The areas requiring significant judgment related to the valuation of the Company's inventories include recognizing when the perceived value of the Company's merchandise held for sale has declined and estimating the shrinkage that has occurred between physical inventory counts using a percentage of sales. These judgments and estimates, coupled with the averaging processes within the retail inventory method can, under certain circumstances, produce varying financial results. The Company also obtains certain merchandise on a consignment basis in order to expand the Company's product assortment. Consignment merchandise is not reflected in the consolidated balance sheets.

25. **Claims of Third-Party Related Entities**. While the Debtors have made every effort to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations to same. Therefore, to the extent that the Debtors have classified their estimate of claims of a creditor as disputed, all claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered as disputed, whether or not they are designated as such.

26. **Umbrella or Master Agreements**. Contracts listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors. Where relevant, such agreements have been listed in the Schedules and Statements only of the Debtor that signed the original umbrella or master agreement.

27. **Credits and Adjustments**. The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances, or other adjustments due from such creditors to the Debtors. The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including the right to assert claims objections and/or setoffs with respect to the same.

28. **Setoffs**. The Debtors incur certain setoffs and other similar rights during the ordinary course of business. Offsets in the ordinary course can result from various items, including, without limitation, intercompany transactions, pricing discrepancies, returns, warranties, and other disputes between the Debtors and their suppliers. These offsets and other similar rights are consistent with the ordinary course of business in the Debtors' industry and are not tracked separately. Therefore, although such offsets and other similar rights may have been accounted for when certain amounts were included in the Schedules, offsets are not independently accounted for, and as such, are excluded from the Schedules.

29. **Insiders**. In the circumstance where the Schedules and Statements require information regarding "insiders," the Debtors have included information with respect to the individuals

who the Debtors believe may be included in the definition of "insider" set forth in section 101(31) of the Bankruptcy Code during the relevant time periods. Such individuals may no longer serve in such capacities.

The listing of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed an admission of any fact, right, claim, or defense and all such rights, claims, and defenses are hereby expressly reserved. Information regarding the individuals listed as insiders in the Schedules and Statements has been included for informational purposes only and such information may not be used for: (1) the purposes of determining (a) control of the Debtors; (b) the extent to which any individual exercised management responsibilities or functions; (c) corporate decision-making authority over the Debtors; or (d) whether such individual could successfully argue that he or she is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or (2) any other purpose.

30. **Payments**. The financial affairs and business of the Debtors are complex. Prior to the Petition Date, the Debtors maintained a cash management and disbursement system in the ordinary course of their businesses (the "Cash Management System"), as described in the Cash Management Motion. Although efforts have been made to attribute open payable amounts to the correct legal entity, the Debtors reserve the right to modify or amend their Schedules and Statements to attribute such payment to a different legal entity, if appropriate.

31. **Totals**. All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements. To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total. The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount. To the extent a Debtor is a guarantor of debt held by another Debtor, the amounts reflected in these Schedules are inclusive of each Debtor's guarantor obligations.

### Specific Schedules Disclosures.

1. **Specific Notes Regarding Schedule A/B.**

   (a) **Schedule A/B, Parts 1 and 2 – Cash and Cash Equivalents; Deposits and Prepayments.** Details with respect to the Debtors' cash management system and bank accounts are provided in the Cash Management Motion and any orders of the Bankruptcy Court granting the Cash Management Motion [Docket Nos. 47, 213].

   As described in the Cash Management Motion, the Debtors have twenty-one non-consolidated store-level deposit accounts, all of which are swept daily to a zero balance. For purposes of the Schedules and Statements, therefore, the Debtors have listed such balances at the amount as of August 3, 2019.

   Additionally, the Bankruptcy Court, pursuant to that certain *Order (I) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Utility Services, (II) Determining Adequate Assurance of Payment for Future Utility Services,*

*(III) Establishing Procedures for Determining Adequate Assurance of Payment, (IV) Authorizing Fee Payments to NUS Consulting Group for Services Performed, and (V) Granting Related Relief* [Docket No. 155], authorized the Debtors to provide adequate assurance of payment for future utility services, including an initial deposit in the amount of $257,500. Such deposits are not listed on Schedule A/B, Part 2, which has been prepared as of the Petition Date.

**(b)**     **Schedule A/B-3 – Checking, savings, or other financial accounts, CDs, etc**. Schedule A/B-3 lists closing bank balances as of August 5, 2019.

**(c)**     **Schedule A/B, Part-4 – Accounts Receivable.** The Debtors have estimated the amount of cash "in transit" as of the Petition Date. The Debtors consider credit card A/R as a "cash equivalent" and such amounts are listed in Schedule A/B, Part 1, Question 3 rather than A/B Part 3, Question 11. Certain advertising receivables have also been included in A/B Part 11, Question 77 rather than being included in Part 1, Question 4. For more detail please see the Schedule A/B 4 Attachment.

**(d)**     **Schedule A/B, Part 4 – Investments; Non-Publicly Traded Stock and Interests in Incorporated and Unincorporated Businesses, including any Interest in an LLC, Partnership, or Joint Venture.** Ownership interests in subsidiaries and partnerships have been listed in Schedule A/B, Part 4. The Debtors make no representation as to the value of their ownership of each subsidiary as the fair market value of such ownership is dependent on numerous variables and factors and may differ significantly from their net book value. The Debtors do not have any ownership interests in any joint ventures.

**(e)**     **Schedule A/B-7 – Deposits.** The Debtors are required to make deposits from time to time with various vendors, landlords, and service providers in the ordinary course of business. The Debtors have exercised reasonable efforts to report the current value of any deposits. The Debtors may have inadvertently omitted deposits and conversely may have reported deposits that are no longer outstanding. The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if deposits are incorrectly identified.

**(f)**     **Schedule A/B-8 – Prepayments.** The Debtors are required to make prepayments from time to time with various vendors, landlords, and service providers as part of the ordinary course of business. The Debtors have exercised reasonable efforts to identify any prepayments. The Debtors may have inadvertently omitted certain prepayments and conversely may have reported prepayments for which services have already been provided. The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if prepayments are incorrectly identified.

In addition, the Debtors pay several merchandise vendors prior to the receipt of the merchandise into the company's perpetual inventory and accounting systems. As such, at any given point in time, the Debtors may appear to be in a prepayment position on their books and records with many of these merchandise vendors. Such

11

merchandise is treated as in-transit inventory as title of the merchandise has passed to the Debtors at the time of payment.

**(g)**    **Schedule A/B- 25 – Goods Purchased within 20 Days Prior to Filing Date.**  The Debtors have made a good faith effort to quantify the value of goods received within 20 days prior to filing date, but reserve the right to revise this amount as they continue to review their books and records.  In the case where a critical trade agreement has been executed (or is reasonably likely to be executed) with a vendor that delivered goods within 20 days prior to filing and agreed to waive any portion of its 503(b)(9) claim, such amount has been excluded from this estimate.

**(h)**    **Schedule A/B, Part 7 – Office Furniture, Fixtures, and Equipment; and Collectibles.**  Dollar amounts are presented net of accumulated depreciation and other adjustments.

**(i)**    **Schedule A/B, Part 9 – Real Property.**  The Debtors do not own any real property. Because of the large number of the Debtors' executory contracts and unexpired leases, as well as the size and scope of such documents, the Debtors have not attached such agreements to Schedule A/B. Instead, the Debtors have only listed such agreements on Schedule G.

**(j)**    **Schedule A/B, Part 10 – Intangibles and Intellectual Property.** The Debtors review goodwill and other intangible assets having indefinite lives for impairment annually or when events or changes in circumstances indicate the carrying value of these assets are might exceed their current fair values.  Results from an impairment test given the Chapter 11 filing were unavailable at the time that the Statements and Schedules were prepared and therefore several of the company's intangible asset values may be listed as undetermined. The Debtors report intellectual property assets as net book value based on the Debtors' books and records whenever applicable. These assets are also part of an ongoing marketing effort and thus are currently being valued in connection with possible sale transactions.

**(k)**    **Schedule A/B, Part 11 – All Other Assets.** Dollar amounts are presented net of impairments and other adjustments.

Additionally, the Debtors may receive refunds for sales and use tax at various times throughout their fiscal year.  As of the Petition Date, however, certain of these amounts are unknown to the Debtors and, accordingly, may not be listed on Schedule A/B.

***Other Contingent and Unliquidated Claims or Causes of Action of Every Nature, including Counterclaims of the Debtor and Rights to Setoff Claims.***  In the ordinary course of business, the Debtors may have accrued, or may subsequently accrue, certain rights to counter-claims, cross-claims, setoffs, refunds with their customers and suppliers, or potential warranty claims against their suppliers. Additionally, certain of the Debtors may be party to pending litigation in which the Debtors have asserted, or may assert, claims as a plaintiff or counter-claims and/or

cross-claims as a defendant.  Because certain of these claims are unknown to the Debtors and not quantifiable as of the Petition Date, they may not be listed on Schedule A/B, Part 11.

## 2.    **Specific Notes Regarding Schedule D**

Except as otherwise agreed pursuant to a stipulation or agreed order or general order entered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D of any Debtor. Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument (including, without limitation, any intercompany agreement) related to such creditor's claim. Further, while the Debtors have included the results of Uniform Commercial Code searches, the listing of such results is not nor shall it be deemed an admission as to the validity of any such lien. Conversely, the Debtors made reasonable, good faith efforts to include all liens on Schedule D, but may have inadvertently omitted to include an existing lien because of, among other things, the possibility that a lien may have been imposed after the Uniform Commercial Code searches were performed or a vendor may not have filed the requisite perfection documentation. Moreover, the Debtors have not included on Schedule D parties that may believe their Claims are secured through setoff rights or inchoate statutory lien rights. Although there are multiple parties that hold a portion of the debt included in the Debtors' prepetition secured credit facility and secured loans, only the administrative agents have been listed for purposes of Schedule D. The amounts reflected outstanding under the Debtors' prepetition loan facilities reflect approximate amounts as of the Petition Date.

In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor with respect to scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities. The descriptions provided in Schedule D are intended only as a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens. Nothing in the Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements.

Pursuant to that certain *Second Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtors and Debtors in Possession to Obtain Post-Petition Financing, (II) Granting Liens and Super-Priority Claims, (III) Authorizing Payment of Prepetition Secured Obligations, (IV) Granting Adequate Protection to Prepetition Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 222] (the "<u>Second Interim</u>

DIP Order"), the Debtors paid the Prepetition Secured Obligations (other than the Prepetition Indemnity Obligations, if any) on August 15, 2019. As a result, the Prepetition Secured Obligations are marked as "contingent" and "unliquidated" to reflect the postpetition payment thereof.  For detail regarding other claims that may be held by the Prepetition Secured Parties, please refer to the Second Interim DIP Order and the final DIP order [Docket No. 222] (the "Final DIP Order"). Capitalized terms used but not defined in this paragraph shall have the meanings ascribed to them in the Second Interim DIP Order or the Final DIP Order, as applicable.

Detailed descriptions of the Debtors' prepetition debt structure and descriptions of collateral relating to the debt contained on Schedule D are contained in the *Declaration of Mohsin Y. Meghji, Chief Restructuring Officer of Barneys New York, Inc., In Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 22] (the "First Day Declaration").

3.    **Specific Notes Regarding Schedule E/F**

(a)    **Creditors Holding Priority Unsecured Claims**. The listing of any claim on Schedule E/F does not constitute an admission by the Debtors that such claim is entitled to priority treatment under section 507 of the Bankruptcy Code. The Debtors reserve all of their rights to dispute the amount and/or the priority status of any claim on any basis at any time.

All claims listed on the Debtors' Schedule E/F are claims owing to various taxing authorities to which the Debtors may potentially be liable. However, certain of such claims may be subject to on-going audits and the Debtors are otherwise unable to determine with certainty the amount of many, if not all, of the remaining claims listed on Schedule E/F. Therefore, the Debtors have listed all such claims as unknown in amount, pending final resolution of on-going audits or other outstanding issues.

As noted in the Global Notes, the Bankruptcy Court entered the *Final Order (I) Authorizing, the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief [Docket No. 208]*, granting authority to the Debtors to pay certain prepetition employee wage and other obligations in the ordinary course (the "Employee Wage Order"). Pursuant to the Employee Wage Order, the Bankruptcy Court granted the Debtors authority to pay or honor certain prepetition obligations for employee wages, salaries, bonuses and other compensation, reimbursable employee expenses, and employee medical and similar benefits. The Debtors have not listed on Schedule E/F any wage or wage-related obligations for which the Debtors have been granted authority to pay pursuant to the Employee Wage Order or other order that may be entered by the Bankruptcy Court. The Debtors believe that all such claims have been, or will be, satisfied in the ordinary course during their chapter 11 cases pursuant to the

authority granted in the Employee Wage Order or other order that may be entered by the Bankruptcy Court.

As more fully described in the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to Maintain and Administer Their Existing Customer Programs and Honor Certain Prepetition Obligations Related Thereto and (II) Granting Related Relief* [Docket No. 14] (the "Customer Programs Motion"), the Debtors collect prepayments from customers in the ordinary course of business. The final order approving the Customer Programs Motion [Docket No. 212] (the "Final Customer Programs Order") provides that the Debtors can continue to honor all obligations on account of the prepayments and continue their customer programs in the ordinary course. The Debtors intend to fulfill orders on account of the prepayments in the ordinary course of business on a postpetition basis. Consistent with their books and records, the Debtors have listed one line item for the aggregate amount of the customer deposits, marked as "Contingent." Listing customer deposits in any other manner would be unduly burdensome and costly given the volume of such transactions. The Debtors reserve all rights related to the foregoing.

**(b)**    **Creditors Holding Nonpriority Unsecured Claims**. The Debtors have used their reasonable best efforts to list all general unsecured claims against the Debtors on Schedule E/F based upon the Debtors' existing books and records.

Schedule E/F does not include certain deferred credits, deferred charges, deferred liabilities, accruals, or general reserves. Such amounts are general estimates of liabilities and do not represent specific claims as of the Petition Date; however, such amounts are reflected on the Debtors' books and records as required in accordance with GAAP. Such accruals are general estimates of liabilities and do not represent specific claims as of the Petition Date.

Schedule E/F does not include certain reserves for potential unliquidated contingencies that historically were carried on the Debtors' books as of the Petition Date; such reserves were for potential liabilities only and do not represent actual liabilities as of the Petition Date.

The claims listed in Schedule E/F arose or were incurred on various dates. In certain instances, the date on which a claim arose is an open issue of fact. Determining the date upon which each claim in Schedule E/F was incurred or arose would be unduly burdensome and cost prohibitive and, therefore, the Debtors do not list a date for each claim listed on Schedule E/F.

Schedule E/F contains information regarding potential and pending litigation involving the Debtors. In certain instances, the Debtor that is the subject of the litigation is unclear or undetermined. To the extent that litigation involving a particular Debtor has been identified, however, such information is contained in the Schedule for that Debtor.

Schedule E/F reflects the prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption, or assumption and assignment, of an executory contract or unexpired lease. In addition, Schedule E/F does not include rejection damage claims of the counterparties to the executory contracts and unexpired leases that have been or may be rejected, to the extent such damage claims exist.

Except in certain limited circumstances, the Debtors have not scheduled contingent and unliquidated liabilities related to guaranty obligations on Schedule E/F. Such guaranties are, instead, listed on Schedule H.

The claims of individual creditors for, among other things, goods, services, or taxes listed on the Debtors' books and records may not reflect credits or allowances due from such creditors. The Debtors reserve all of their rights in respect of such credits or allowances. The dollar amounts listed may be exclusive of contingent or unliquidated amounts.

Unless the Debtors were required to pay ancillary costs, such as freight, miscellaneous fees and taxes, such costs are not included in the liabilities scheduled, as such amounts do not represent actual liabilities of the Debtor.

(c)     **Schedule - Trade Payables**. Trade Payables listed on Schedule E/F contain the pre-petition liability information available to the Debtors as of the date of filing and do not include invoices that were paid subsequent to the Petition Date related to prepetition obligations pursuant to the *Final Order (I) Authorizing the Payment of (A) Prepetition Claims of Lien Claimants, (B) Foreign Vendor Claims, (C) Section 503(B)(9) Claims, and (D) Critical Vendor Claims, (II) Granting Related Relief* [Docket No. 221] (the "Vendor Order"). For certain vendors, potentially valid prepetition invoices are pending a three-point matching process before being verified and entered into Accounts Payable as actual amounts owed by the Debtors. For the applicable vendors, the Debtors have scheduled non-contingent, liquidated, undisputed trade claims for the vendors on Schedule E/F in the total balanced owed as represented in their Accounts Payable. In addition to these trade claims, the Debtors have scheduled separate and additional contingent estimated trade claims for vendors with any unmatched invoices.

4.     **Specific Notes Regarding Schedule G**

(a)     **Executory Contracts**. While the Debtors' existing books, records, and financial systems have been relied upon to identify and schedule executory contracts at each of the Debtors, and although commercially reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors, omissions, or over inclusions may have occurred. The Debtors do not make, and specifically disclaim, any representation or warranty as to the completeness or accuracy of the information set forth on Schedule G. The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contract, agreement, or lease set forth in Schedule G and to amend or supplement Schedule G as necessary. The contracts,

16

agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents. Further, unless otherwise specified on Schedule G, each executory contract or unexpired lease listed thereon shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument or other document is listed thereon.

In some cases, the same supplier or provider appears multiple times on Schedule G. This multiple listing is intended to reflect distinct agreements between the applicable Debtor and such supplier or provider.

In the ordinary course of business, the Debtors may have issued numerous purchase orders for supplies, product, and related items which, to the extent that such purchase orders constitute executory contracts, are not listed individually on Schedule G. To the extent that goods were delivered under purchase orders prior to the Petition Date, vendors' claims with respect to such delivered goods are included on Schedule E/F.

As a general matter, certain of the Debtors' executory contracts and unexpired leases could be included in more than one category. In those instances, one category has been chosen to avoid duplication. Further, the designation of a category is not meant to be wholly inclusive or descriptive of the entirety of the rights or obligations represented by such contract.

Certain of the executory contracts and unexpired leases listed on Schedule G may contain certain renewal options, guarantees of payment, options to purchase, rights of first refusal, right to lease additional space, and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as easements, rights of way, subordination, nondisturbance, and atonement agreements, supplemental agreements, amendments/letter agreements, title agreements, and confidentiality agreements. Such documents also are not set forth in Schedule G.

The Debtors hereby reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document, or instrument related to a creditor's claim, to dispute the validity, status, or enforceability of any contract, agreement, or lease set forth in Schedule G, and to amend or supplement Schedule G as necessary. Inclusion of any agreement on Schedule G does not constitute an admission that such agreement is an executory

contract or unexpired lease and the Debtors reserve all rights in that regard, including, without limitation, that any agreement is not executory, has expired pursuant to its terms, or was terminated prepetition.

In addition, certain of the agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financings. The presence of a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease. Certain of the contracts, agreements, and leases listed on Schedule G may have been entered into by more than one of the Debtors. Further, the specific Debtor obligor to certain of the executory contracts or unexpired leases could not be specifically ascertained in every circumstance. In such cases, the Debtors used their best efforts to determine the correct Debtor's Schedule G on which to list such executory contract or unexpired lease.

In the ordinary course of business, the Debtors have entered into numerous contracts or agreements, both written and oral, regarding the provision of certain services on a month to month basis. To the extent such contracts or agreements constitute executory contracts, these contracts and agreements are not listed individually on Schedule G.

Certain of the executory contracts may not have been memorialized and could be subject to dispute; executory agreements that are oral in nature have not been included in Schedule G.

In the ordinary course of business, the Debtors may have entered into confidentiality agreements which, to the extent that such confidentiality agreements constitute executory contracts, are not listed individually on Schedule G.

Certain of the executory contracts and unexpired leases listed in Schedule G were assigned to, assumed by, or otherwise transferred to certain of the Debtors in connection with, among other things, acquisitions by the Debtors.

The Debtors generally have not included on Schedule G any insurance policies, the premiums for which have been prepaid. The Debtors submit that prepaid insurance policies are not executory contracts pursuant to section 365 of the Bankruptcy Code because no further payment or other material performance is required by the Debtors. Nonetheless, the Debtors recognize that in order to enjoy the benefits of continued coverage for certain claims under these policies, the Debtors may have to comply with certain non-monetary obligations, such as the provision of notice of claims and cooperation with insurers. In the event that the Bankruptcy Court were to ever determine that any such prepaid insurance policies are executory contracts, the Debtors reserve all of their rights to amend Schedule G to include such policies, as appropriate.

In addition, Schedule G does not include rejection damage claims of the counterparties to the executory contracts and unexpired leases that have been or may be rejected, to the extent such damage claims exist.

The Debtors are still in the process of collecting the addresses of all counterparties to such executory contracts and unexpired leases. These addresses will be compiled prior to sending notice of the bar date for the filing of proofs of claim in these chapter 11 cases.

Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission.

Certain of the agreements listed on Schedule G may have been entered into by or on behalf of more than one of the Debtors. Additionally, the specific Debtor obligor(s) to certain of the agreements could not be specifically ascertained in every circumstance. In such cases, the Debtors have made reasonable efforts to identify the correct Debtors' Schedule G on which to list the agreement and, where a contract party remained uncertain, such agreements may have been listed on a different Debtor's Schedule G.

## 5.    <u>Specific Notes Regarding Schedule H</u>

(a)    **Co-Debtors**.  In the ordinary course of their business, the Debtors pay certain expenses on behalf of their subsidiaries. The Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements. Further, certain of the guarantees reflected on Schedule H may have expired or may no longer be enforceable. Thus, the Debtors reserve their rights to amend Schedule H to the extent that additional guarantees are identified or such guarantees are discovered to have expired or become unenforceable.

In the ordinary course of their business, the Debtors may be involved in pending or threatened litigation and claims arising out of certain ordinary course of business transactions. These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties. Because such claims are contingent, disputed, and/or unliquidated, such claims have not been set forth individually on Schedule H. However, some such claims may be listed elsewhere in the Schedules and Statements.

## 6.    <u>Specific Statements Disclosures</u>.

(a)    **Questions 3, 4, and 30 – Payments to Certain Creditors.**  Prior to the Petition Date, the Debtors maintained a centralized cash management system through which certain Debtors made payments on behalf of certain Debtor affiliates as further explained in the Cash Management Motion.  Consequently, all payments to creditors and insiders listed in response to Questions 3, 4, and 30 on each of the

Debtors' Statements reflect payments made by Barney's Inc. from one of its operating bank accounts (the "Operating Accounts"), on behalf of the corresponding Debtor, pursuant to the Debtors' cash management system described in the Cash Management Motion.

The Debtors have responded to Question 3 in detailed format by creditor. The response, however, does not include transfers to bankruptcy professionals (which transfers appear in response to Part 6, Question 11) or ordinary course compensation of individuals through salaries, wages, or related allowances.

The Debtors have responded to Questions 4 and 30 in detailed format by insider in the attachment for Question 30.  To the extent: (i) a person qualified as an "insider" in the year prior to the Petition Date, but later resigned their insider status or (ii) did not begin the year as an insider, but later became an insider, the Debtors have only listed in Statements, Part 13, Question 30 those payments made while such person was defined as an insider.

(b)     **Question 6 – Setoffs.**   For a discussion of setoffs and nettings incurred by the Debtors, refer to paragraph 28 of these Global Notes.

(c)     **Question 9 – Certain Gifts and Charitable Contributions.**   As described in the Customer Programs Motion, the Debtors collect charitable contributions and customers through various means, including, but not limited to, cash and credit card contributions at store checkout points.   In these instances, the Debtors act as a conduit, passing the contribution through the Debtors' bank accounts to the charity. Out of an abundance of caution, the Debtors have listed these pass-through payments in response to this Statement request.

(d)     **Question 10 – Certain Losses.**   Given the scale of the Debtors' store footprint as of the Petition Date, certain losses cannot be tracked by the Debtors with complete accuracy and, accordingly, such losses are listed on the Debtors' Statements based on general ledger accounts that capture items such as theft, inventory shrink, and property damage. Additionally, the Debtors only account for general recoveries of such losses, with this general amount being the recovery listed in the Statements for the one year immediately prior to the Petition Date.

(e)     **Question 11 - Payments Made Related to Bankruptcy.** The response to Question 11 identifies the Debtor that made a payment in respect of professionals the Debtors have retained or will seek to retain under section 327 of the Bankruptcy Code. Additional information regarding the Debtors' retention of professional service firms is more fully described in the individual retention applications, motions, and related orders.   Although the Debtors have made reasonable efforts to distinguish between payments made for professional services related and unrelated to their restructuring efforts, some amounts listed in response to Question 11 may include payments for professional services unrelated to bankruptcy.

(f)    **Question 13 – Transfers not Already Listed.**   In the ordinary course of their business, the Debtors often close or remodel store locations and, in the process of doing so, may abandon, dispose of, or sell certain fixtures possessing little to no economic value.  Given the frequency of such dispositions and the difficulty in accounting for them, the Debtors have not listed such transfers in their Statements.

(g)    **Question 20 – Off-premises storage.**  The Debtors have not disclosed in response to this question (1) inventory for sale held in mini-storage units rented by the Debtors from time to time to store excess inventory in the ordinary course of business or (2) any owned in-transit inventory.  Collection of this specific information would be time-consuming and an inefficient use of estates resources.  Further, such inventory is accounted for on the Debtors' Schedule of Assets.  In addition, the Debtors believe that these excluded items are not responsive to the intent of the question.

(h)    **Question 21 – Property Held for Another.**  The Debtors currently operate a "store-in-store" location in the Madison Avenue store under a concession agreement in which the Debtors allow a partner brand to display and sell merchandise on the Debtors' premises. Additionally, the Debtors hold and display goods on consignment for certain vendors, for example jewelry vendors, in situations where it would be impractical for the Debtors to purchase and hold certain inventory on their books.

(i)    **Question 22-24 – Environmental Information.**  The Debtors have endeavored to disclose all applicable information in response to Statements Questions 22-24.

(j)    **Question 26 – Books, Records, and Financial Statements.**  The Debtors provide certain parties, such as banks, auditors, potential investors, vendors, and financial advisors, with financial statements or information that may not be part of a public filing.  The Debtors have made a good faith effort to identify all of the parties that books, records, and financial statements have been provided to, but inadvertently may have not listed all of these entities.

(k)    **Question 30 – Payments, Distributions, or Withdrawals Credited or Given to Insiders.**  Distributions by the Debtors to their directors and officers are listed on the attachment to Question 30.  Certain directors and executive officers of Barneys New York, Inc. are also directors and executive officers of certain of the other Debtors.  To the extent payments to such individuals are not listed in the response to Question 30 on the Statements for such Debtor affiliates, they did not receive payment for their services as directors or officers directly from such entities.  Certain of the Debtors' directors and executive officers received distributions net of tax withholdings in the year preceding the Petition Date.  The amounts listed under Question 30 reflect the gross amounts paid to such directors and officers rather than the net amounts after deducting for tax withholdings.

*       *       *       *       *

| Fill in this information to identify the case: |
| --- |
| **Debtor name: Barneys New York, Inc.** |
| **United States Bankruptcy Court for the District of: Southern New York** |
| **Case number: 19-36300** |

☐ Check if this is an
amended filing

Official Form 206Sum

## Summary of Assets and Liabilities for Non-Individuals

1. Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B)

1a. Real property:                                                                                                    $0.00
    Copy line 88 from Schedule A/B

1b. Total personal property:                                                                                   $0.00
    Copy line 91A from Schedule A/B

1c. Total of all property:                                                                                         $0.00
    Copy line 92 from Schedule A/B

2. Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)        $0.00
Copy the total dollar amount listed in Column A, Amount of claim, from line 3 of Schedule D

3. Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)

3a. Total claim amounts of priority unsecured claims:                                              $0.00
    Copy the total claims from Part 1 from line 5a of Schedule E/F

3b. Total amount of claims of nonpriority amount of unsecured claims:                      $0.00
    Copy the total of the amount of claims from Part 2 from line 5b of Schedule E/F

4. Total Liabilities                                                                                                   $0.00
Lines 2 + 3a + 3b

| Fill in this information to identify the case: |
| --- |
| **Debtor name:** Barneys New York, Inc. |
| **United States Bankruptcy Court for the District of:** Southern New York |
| **Case number:** 19-36300 |

☐ Check if this is an amended filing

## Official Form 206A/B
## Schedule A/B: Assets — Real and Personal Property 12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

### Part 1:  Cash and Cash Equivalents

1. Does the debtor have any cash or cash equivalents?

☑ No. Go to Part 2.

☐ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
| --- | --- |
| 2. Cash on hand | |
| 2.1 | $0.00 |

3. Checking, savings, money market, or financial brokerage accounts *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account # | |
| --- | --- | --- | --- |
| 3.1 | | | $0.00 |

4. Other cash equivalents *(Identify all)*

| | |
| --- | --- |
| 4.1 | $0.00 |

5. Total of Part 1

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

$0.00

### Part 2:  Deposits and prepayments

6. Does the debtor have any deposits or prepayments?

☑ No. Go to Part 3.

☐ Yes. Fill in the information below.

| | Current value of debtor's interest |
| --- | --- |
| 7. Deposits, including security deposits and utility deposits<br>Description, including name of holder of deposit | |
| 7.1 | $0.00 |

8. Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent
Description, including name of holder of prepayment

8.1 _____    $0.00

9. Total of Part 2

Add lines 7 through 8. Copy the total to line 81.

| $0.00 |
|---|

---

**Part 3:   Accounts receivable**

---

10. Does the debtor have any accounts receivable?

☑ No. Go to Part 4.

☐ Yes. Fill in the information below.

| | | | | Current value of debtor's interest |
|---|---|---|---|---|

11. Accounts receivable

11a.   90 days old or    _____    -    _____    = ........   $0.00
       less:              face amount              doubtful or uncollectible accounts

11b.   Over 90 days old:  _____    -    _____    = ........   $0.00
                          face amount              doubtful or uncollectible accounts

12. Total of Part 3

Current value on lines 11a + 11b = line 12. Copy the total to line 82.

| $0.00 |
|---|

**Part 4:**   **Investments**

13. Does the debtor own any investments?

☐ No. Go to Part 5.

☑ Yes. Fill in the information below.

| | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|
| 14. Mutual funds or publicly traded stocks not included in Part 1<br>Name of fund or stock: | | |
| 14.1 | | $0.00 |

15. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture

| Name of entity: | % of ownership: | | |
|---|---|---|---|
| 15.1  BARNEY'S, INC. | 100% | N/A | UNDETERMINED |
| 15.2  BARNEYS ASIA CO. LLC | 30% | N/A | UNDETERMINED |

16. Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1
Describe:

| 16.1 | | $0.00 |
|---|---|---|

17. Total of Part 4

Add lines 14 through 16. Copy the total to line 83.

| | $0.00 |
|---|---|

**Part 5:**   **Inventory, excluding agriculture assets**

18. Does the debtor own any inventory (excluding agriculture assets)?

☑ No. Go to Part 6.

☐ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19. Raw materials | | $ | | $0.00 |
| 20. Work in progress | | $ | | $0.00 |
| 21. Finished goods, including goods held for resale | | $ | | $0.00 |
| 22. Other inventory or supplies | | $ | | $0.00 |

23. Total of Part 5

Add lines 19 through 22. Copy the total to line 84.

$0.00

24. Is any of the property listed in Part 5 perishable?

☑ No

☐ Yes

25. Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?

☑ No

☐ Yes    Book value    $ _____    Valuation method _____    Current value    $ _____

26. Has any of the property listed in Part 5 been appraised by a professional within the last year?

☑ No

☐ Yes

| Part 6: | Farming and fishing-related assets (other than titled motor vehicles and land) |

27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?

☑ No. Go to Part 7.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 28. Crops—either planted or harvested | | | |
| _____ | $ _____ | _____ | $0.00 _____ |
| 29. Farm animals *Examples:* Livestock, poultry, farm-raised fish | | | |
| _____ | $ _____ | _____ | $0.00 _____ |
| 30. Farm machinery and equipment (Other than titled motor vehicles) | | | |
| _____ | $ _____ | _____ | $0.00 _____ |
| 31. Farm and fishing supplies, chemicals, and feed | | | |
| _____ | $ _____ | _____ | $0.00 _____ |
| 32. Other farming and fishing-related property not already listed in Part 6 | | | |
| _____ | $ _____ | _____ | $0.00 _____ |

33. Total of Part 6

Add lines 28 through 32. Copy the total to line 85.

$0.00

34. Is the debtor a member of an agricultural cooperative?

☑ No

☐ Yes. Is any of the debtor's property stored at the cooperative?

　　☑ No

　　☐ Yes

35. Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?

☑ No

☐ Yes          Book value    $ _____          Valuation method  _____          Current value    $ _____

36. Is a depreciation schedule available for any of the property listed in Part 6?

☑ No

☐ Yes

37. Has any of the property listed in Part 6 been appraised by a professional within the last year?

☑ No

☐ Yes

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |
|---|---|

38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?

☑ No. Go to Part 8.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. Office furniture | | | |
| 39.1 _____ | $ _____ | _____ | $0.00 |
| 40. Office fixtures | | | |
| 40.1 _____ | $ _____ | _____ | $0.00 |
| 41. Office equipment, including all computer equipment and communication systems equipment and software | | | |
| 41.1 _____ | $ _____ | _____ | $0.00 |
| 42. Collectibles *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 42.1 _____ | $ _____ | _____ | $0.00 |

43. Total of Part 7

Add lines 39 through 42. Copy the total to line 86.

| $0.00 |
|---|

44. Is a depreciation schedule available for any of the property listed in Part 7?

☑ No

☐ Yes

45. Has any of the property listed in Part 7 been appraised by a professional within the last year?

☑ No

☐ Yes

**Part 8:**    **Machinery, equipment, and vehicles**

46. Does the debtor own or lease any machinery, equipment, or vehicles?

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.

| General description<br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 47. Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles | | | |
| 47.1 | $ | | $0.00 |
| 48. Watercraft, trailers, motors, and related accessories Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| 48.1 | $ | | $0.00 |
| 49. Aircraft and accessories | | | |
| 49.1 | $ | | $0.00 |
| 50. Other machinery, fixtures, and equipment (excluding farm machinery and equipment) | | | |
| 50.1 | $ | | $0.00 |

51. Total of Part 8.

Add lines 47 through 50. Copy the total to line 87.

$0.00

52. Is a depreciation schedule available for any of the property listed in Part 8?

☑ No

☐ Yes

53. Has any of the property listed in Part 8 been appraised by a professional within the last year?

☑ No

☐ Yes

**Part 9:** **Real Property**

54. Does the debtor own or lease any real property?

☑ No. Go to Part 10.

☐ Yes. Fill in the information below.

55. Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest

| Description and location of property Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1 | | $ | | $0.00 |

56. Total of Part 9.

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

| $0.00 |
|---|

57. Is a depreciation schedule available for any of the property listed in Part 9?

☑ No

☐ Yes

58. Has any of the property listed in Part 9 been appraised by a professional within the last year?

☑ No

☐ Yes

**Part 10:**  **Intangibles and intellectual property**

59. Does the debtor have any interests in intangibles or intellectual property?

☑ No. Go to Part 11.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60. Patents, copyrights, trademarks, and trade secrets | | | |
| 60.1 | $ | | $0.00 |
| 61. Internet domain names and websites | | | |
| 61.1 | $ | | $0.00 |
| 62. Licenses, franchises, and royalties | | | |
| 62.1 | $ | | $0.00 |
| 63. Customer lists, mailing lists, or other compilations | | | |
| 63.1 | $ | | $0.00 |
| 64. Other intangibles, or intellectual property | | | |
| 64.1 | $ | | $0.00 |
| 65. Goodwill | | | |
| 65.1 | $ | | $0.00 |

66. Total of Part 10.

Add lines 60 through 65. Copy the total to line 89.

$0.00

67. Do your lists or records include personally identifiable information of customers (as defined in 11 U.S.C. §§ 101(41A) and 107)?

☑ No

☐ Yes

68. Is there an amortization or other similar schedule available for any of the property listed in Part 10?

☑ No

☐ Yes

69. Has any of the property listed in Part 10 been appraised by a professional within the last year?

☑ No

☐ Yes

**Part 11:**  **All other assets**

70. Does the debtor own any other assets that have not yet been reported on this form?
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☑ No. Go to Part 12.

☐ Yes. Fill in the information below.

|  | Current value of debtor's interest |
|---|---|

71. Notes receivable
Description (include name of obligor)

71.1 _____    _____ - _____ = $0.00

total face amount    doubtful or uncollectible amount

72. Tax refunds and unused net operating losses (NOLs)
Description (for example, federal, state, local)

72.1 _____ Tax year _____ $0.00

73. Interests in insurance policies or annuities

73.1 _____ $0.00

74. Causes of action against third parties (whether or not a lawsuit has been filed)

74.1 _____ $0.00

Nature of Claim _____

Amount requested $_____

75. Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims

75.1 _____ $0.00

Nature of Claim _____

Amount requested $_____

76. Trusts, equitable or future interests in property

76.1 _____ $0.00

77. Other property of any kind not already listed  *Examples:* Season tickets, country club membership

77.1 _____ $0.00

78. Total of Part 11.
Add lines 71 through 77. Copy the total to line 90.

$0.00

79. Has any of the property listed in Part 11 been appraised by a professional within the last year?

☑ No

☐ Yes

**Part 12:**  **Summary**

In Part 12 copy all of the totals from the earlier parts of the form.

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. Cash, cash equivalents, and financial assets. Copy line 5, Part 1. | $0.00 | |
| 81. Deposits and prepayments. Copy line 9, Part 2. | $0.00 | |
| 82. Accounts receivable. Copy line 12, Part 3. | $0.00 | |
| 83. Investments. Copy line 17, Part 4. | $0.00 | |
| 84. Inventory. Copy line 23, Part 5. | $0.00 | |
| 85. Farming and fishing-related assets. Copy line 33, Part 6. | $0.00 | |
| 86. Office furniture, fixtures, and equipment; and collectibles. Copy line 43, Part 7. | $0.00 | |
| 87. Machinery, equipment, and vehicles. Copy line 51, Part 8. | $0.00 | |
| 88. Real property. Copy line 56, Part 9. | | $0.00 |
| 89. Intangibles and intellectual property.. Copy line 66, Part 10. | $0.00 | |
| 90. All other assets. Copy line 78, Part 11. | $0.00 | |

91. Total. Add lines 80 through 90 for each column       91a. $0.00       91b. $0.00

92. Total of all property on Schedule A/B. Lines 91a + 91b = 92.       $0.00

Fill in this information to identify the case:

Debtor name: Barneys New York, Inc.

United States Bankruptcy Court for the District of: Southern New York

Case number: 19-36300

☐ Check if this is an amended filing

Official Form 206D

## Schedule D: Creditors Who Have Claims Secured by Property

Be as complete and accurate as possible.

**Part 1:    List Creditors Who Have Claims Secured by Property**

1. Do any creditors have claims secured by debtor's property?

☐ No. Check this box and submit page 1 of this form to the court with debtor`s other schedules. Debtor has nothing else to report on this form.

☑ Yes. Fill in the information below.

2. List creditors who have secured claims.If a creditor has more than one secured claim, list the creditor separately for each claim.

| | Column A<br>Amount of Claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim |
|---|---|---|

| 2.1 | | |
|---|---|---|

Creditor's name and mailing address
WELLS FARGO BANK, NA AS AGENT, ATTN: MAGGIE TOWNSEND, ONE BOSTON PLACE, 18TH FLOOR, BOSTON, MA, 02108

Date debt was incurred?
6/5/2012

Last 4 digits of account number

Do multiple creditors have an interest in the same property?
☑ No

☐ Yes. Specify each creditor, including this creditor, and its relative priority.

Describe debtor's property that is subject to the lien:

Describe the lien
REVOLVING CREDIT FACILITY

Is the creditor an insider or related party?
☑ No
☐ Yes

Is anyone else liable on this claim?
☐ No
☑ Yes. Fill out Schedule H: Codebtors(Official Form 206H)

As of the petition filing date, the claim is:
Check all that apply.
☑ Contingent
☑ Unliquidated
☐ Disputed

Column A: UNDETERMINED

Column B: $ UNDETERMINED

**2.2**

Creditor's name and mailing address
WELLS FARGO BANK, NA AS AGENT,
ATTN: MAGGIE TOWNSEND, ONE
BOSTON PLACE, 18TH FLOOR,
BOSTON, MA, 02108

Date debt was incurred?
4/1/2019

Last 4 digits of account number

Do multiple creditors have an interest
in the same property?
☑ No

☐ Yes. Specify each creditor, including

this creditor, and its relative priority.

_____

Describe debtor's property that is subject to
the lien:                                    UNDETERMINED              $ UNDETERMINED

_____

Describe the lien
TERM LOAN

Is the creditor an insider or related party?
☑ No
☐ Yes

Is anyone else liable on this claim?
☐ No

☑ Yes. Fill out Schedule H: Codebtors(Official
Form 206H)

As of the petition filing date, the claim is:
Check all that apply.
☑ Contingent
☑ Unliquidated
☐ Disputed

**2.3**

Creditor's name and mailing address
WELLS FARGO BANK, NATIONAL
ASSOCIATION, ONE BOSTON PLACE,
18TH FLOOR, BOSTON, MA, 02108

Date debt was incurred?

Last 4 digits of account number

Do multiple creditors have an interest
in the same property?
☑ No

☐ Yes. Specify each creditor, including

this creditor, and its relative priority.

_____

Describe debtor's property that is subject to
the lien:                                    UNDETERMINED              $ UNDETERMINED

_____

Describe the lien
UCC LIEN CLAIM

Is the creditor an insider or related party?
☑ No
☐ Yes

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out Schedule H: Codebtors(Official
Form 206H)

As of the petition filing date, the claim is:
Check all that apply.
☑ Contingent
☑ Unliquidated
☑ Disputed

**2.4**

Creditor's name and mailing address
JUDY GEIB PLUS ALPHA, LLC, 129 W
22ND ST #8A, NEW YORK, NY, 10011

Date debt was incurred?

Last 4 digits of account number

Do multiple creditors have an interest
in the same property?
☑ No

☐ Yes. Specify each creditor, including

this creditor, and its relative priority.

Describe debtor's property that is subject to
the lien:

Describe the lien
UCC LIEN CLAIM

Is the creditor an insider or related party?
☑ No
☐ Yes

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out Schedule H: Codebtors(Official
Form 206H)

As of the petition filing date, the claim is:
Check all that apply.
☑ Contingent
☑ Unliquidated
☑ Disputed

UNDETERMINED    $ UNDETERMINED

**2.5**

Creditor's name and mailing address
MY STORY FINE JEWELRY, LLC, 150
MEADOWLANDS PARKWAY,
SECAUCUS, NJ, 07094

Date debt was incurred?

Last 4 digits of account number

Do multiple creditors have an interest
in the same property?
☑ No

☐ Yes. Specify each creditor, including

this creditor, and its relative priority.

Describe debtor's property that is subject to
the lien:

Describe the lien
UCC LIEN CLAIM

Is the creditor an insider or related party?
☑ No
☐ Yes

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out Schedule H: Codebtors(Official
Form 206H)

As of the petition filing date, the claim is:
Check all that apply.
☑ Contingent
☑ Unliquidated
☑ Disputed

UNDETERMINED    $ UNDETERMINED

3. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional
Page, if any.

$0.00

```
Fill in this information to identify the case:

Debtor name: Barneys New York, Inc.

United States Bankruptcy Court for the District of: Southern New York

Case number: 19-36300
```

☐ Check if this is an amended filing

## Official Form 206E/F

## Schedule E/F: Creditors Who Have Unsecured Claims

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:    List All Creditors with PRIORITY Unsecured Claims

1. Do any creditors have priority unsecured claims? (See 11 U.S.C. § 507).

☑ No. Go to Part 2.

☐ Yes. Go to line 2.

2. List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part. If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

| | | Total claim | Priority amount |
|---|---|---|---|
| 2.1 | Priority creditor's name and mailing address | $ _____ | $0.00 |

_____

Date or dates debt was incurred

_____

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim:
11 U.S.C. § 507(a) (__)

As of the petition filing date, the claim is:
*Check all that apply.*

☐ Contingent

☐ Unliquidated

☐ Disputed

Basis for the claim:

_____

Is the claim subject to offset?

☑ No

☐ Yes

### Part 2:    List All Creditors with NONPRIORITY Unsecured Claims

3. List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

| | | Amount of claim |
|---|---|---|
| 3.1 | Nonpriority creditor's name and mailing address | UNDETERMINED |
| | DARNELL RAY | |

Date or dates debt was incurred

_____

As of the petition filing date, the claim is:
*Check all that apply.*

☑ Contingent

☑ Unliquidated

☑ Disputed

Basis for the claim:
Litigation Claim

Is the claim subject to offset?

☐ No

☐ Yes

3.2 Nonpriority creditor's name and mailing address
ESTEL GROUP SRL SOCIETE UNIPERSONALE, C/O TARTER KRINSKY &
DROGIN LLP, ATTN: ROCCO A. CAVALIERE, 1350 BROADWAY, 11TH FL,
NEW YORK, NY, 10018

Date or dates debt was incurred

As of the petition filing date, the claim is:
*Check all that apply.*

☑ Contingent

☑ Unliquidated

☑ Disputed

Basis for the claim:
Litigation Claim

Is the claim subject to offset?
☐ No
☐ Yes

UNDETERMINED

3.3 Nonpriority creditor's name and mailing address
EUNICE DUTCHIN & VANESSA DUTCHIN

Date or dates debt was incurred

As of the petition filing date, the claim is:
*Check all that apply.*

☑ Contingent

☑ Unliquidated

☑ Disputed

Basis for the claim:
Litigation Claim

Is the claim subject to offset?
☐ No
☐ Yes

UNDETERMINED

3.4 Nonpriority creditor's name and mailing address
KRISTEN SCHERTZER

Date or dates debt was incurred

As of the petition filing date, the claim is:
*Check all that apply.*

☑ Contingent

☑ Unliquidated

☑ Disputed

Basis for the claim:
Litigation Claim

Is the claim subject to offset?
☐ No
☐ Yes

UNDETERMINED

3.5 Nonpriority creditor's name and mailing address
MARIA MENDIZABAL

Date or dates debt was incurred

As of the petition filing date, the claim is:
*Check all that apply.*

☑ Contingent

☑ Unliquidated

☑ Disputed

Basis for the claim:
Litigation Claim

Is the claim subject to offset?
☐ No
☐ Yes

UNDETERMINED

3.6  Nonpriority creditor's name and mailing address
MARLA D. HALEGUA

Date or dates debt was incurred

As of the petition filing date, the claim is:
Check all that apply.

☑ Contingent

☑ Unliquidated

☑ Disputed

Basis for the claim:
Litigation Claim

Is the claim subject to offset?

☐ No

☐ Yes

UNDETERMINED

3.7  Nonpriority creditor's name and mailing address
SAIKOU WAGGEH

Date or dates debt was incurred

As of the petition filing date, the claim is:
Check all that apply.

☑ Contingent

☑ Unliquidated

☑ Disputed

Basis for the claim:
Litigation Claim

Is the claim subject to offset?

☐ No

☐ Yes

UNDETERMINED

3.8  Nonpriority creditor's name and mailing address
SAYQUAN GIFFORD

Date or dates debt was incurred

As of the petition filing date, the claim is:
Check all that apply.

☑ Contingent

☑ Unliquidated

☑ Disputed

Basis for the claim:
Litigation Claim

Is the claim subject to offset?

☐ No

☐ Yes

UNDETERMINED

**Part 3:    List Others to Be Notified About Unsecured Claims**

4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part 1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|
| 4.1. | Line | |
| | ☐ Not listed. Explain | |

**Part 4:** **Total Amounts of the Priority and Nonpriority Unsecured Claims**

5. Add the amounts of priority and nonpriority unsecured claims.

| | Total of claim amounts |
|---|---|
| 5a. Total claims from Part 1 | 5a. $0.00 |
| 5b. Total claims from Part 2 | 5b. $0.00 |
| 5c. Total of Parts 1 and 2<br>Lines 5a + 5b = 5c. | 5c. $0.00 |

Fill in this information to identify the case:

Debtor name: Barneys New York, Inc.

United States Bankruptcy Court for the District of: Southern New York

Case number: 19-36300

☐ Check if this is an
amended filing

Official Form 206G

## Schedule G: Executory Contracts and Unexpired Leases

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.

**Schedule G:** Executory Contracts and Unexpired Leases

1. Does the debtor have any executory contracts or unexpired leases?

☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

☑ Yes. Fill in all of the information below even if the contracts or leases are listed on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

2.1    State what the contract        SEE ATTACHED SCHEDULE G EXHIBIT
       or lease is for and the
       nature of the debtor's
       interest
       State the term remaining    _____
       List the contract number    _____
       of any government
       contract

SCHEDULE G ATTACHMENT
Executory Contracts and Unexpired Leases

| ID | Description of Contract or Lease | Remainder of Term (Days) | Notice Party's Name | Address 1 | Address 2 | Address 3 | Address 4 | City | State | ZIP | Country |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.001 | GUARANTY RE: LICENSE AGREEMENT | Unknown | BARNEYS JAPAN COMPANY LIMITED | ATTN: YUKITOMO TAKAHASHI, PRESIDENT | SOUTH GATE SHINJUKU, 6F | 5-33-8 SENDAGAYA | SHIBUYA-KU | TOKYO | | 151-0051 | JAPAN |
| 2.002 | EMPLOYMENT AGREEMENT | Unknown | FU, GRACE | 575 FIFTH AVENUE | | | | NEW YORK | NY | 10017 | |
| 2.003 | EMPLOYMENT AGREEMENT | Unknown | MAURO, TONY | 575 FIFTH AVENUE | | | | NEW YORK | NY | 10017 | |
| 2.004 | EMPLOYMENT AGREEMENT | Unknown | MAZZUCCA, MATT | 575 FIFTH AVENUE | | | | NEW YORK | NY | 10017 | |
| 2.005 | EMPLOYMENT AGREEMENT | Unknown | MONASEBIAN, KATHERINE | 575 FIFTH AVENUE | | | | NEW YORK | NY | 10017 | |
| 2.006 | EMPLOYMENT AGREEMENT | Unknown | RISI, SANDRO | 575 FIFTH AVENUE | | | | NEW YORK | NY | 10017 | |
| 2.007 | GUARANTY RE: LICENSE AGREEMENT | Unknown | SUMITOMO CORPORATION | OTEMACHI PLACE EAST TOWER | 3-2 OTEMACHI 2-CHOME | CHIYODA-KU | | TOKYO | | 100-8601 | JAPAN |
| 2.008 | EMPLOYMENT AGREEMENT | Unknown | SUNWOO, JENNIFER | 575 FIFTH AVENUE | | | | NEW YORK | NY | 10017 | |
| 2.009 | EMPLOYMENT AGREEMENT | Unknown | VITALE, DANIELLA | 575 FIFTH AVENUE | | | | NEW YORK | NY | 10017 | |

| Fill in this information to identify the case: |
| --- |
| Debtor name: Barneys New York, Inc. |
| United States Bankruptcy Court for the District of: Southern New York |
| Case number: 19-36300 |

☐ Check if this is an amended filing

Official Form 206H

## Schedule H: Codebtors

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

1. Does the debtor have any codebtors?

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

☑ Yes

2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, *Schedules D-G.* Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| *Column 1:* Codebtor | | *Column 2:* Creditor | |
| --- | --- | --- | --- |
| Name | Mailing Address | Name | Check all schedules that apply: |
| 2.1  SEE SCHEDULE H ATTACHMENT | | | ☐ D<br>☐ E/F<br>☐ G |

| ID | Codebtor Name | Codebtor Address | Creditor's Name | Creditor's Address | D | E/F | G |
|----|---------------|------------------|-----------------|--------------------|---|-----|---|
| 2.001 | BARNEYS ASIA CO. LLC | 575 5TH AVE., NEW YORK, NY 10017 | WELLS FARGO BANK, NA AS AGENT | ONE BOSTON PLACE, 18TH FLOOR, BOSTON, MA 02108 | X | | |
| 2.002 | BARNEYS ASIA CO. LLC | 575 5TH AVE., NEW YORK, NY 10017 | WELLS FARGO BANK, NA AS AGENT | ONE BOSTON PLACE, 18TH FLOOR, BOSTON, MA 02108 | X | | |
| 2.003 | BARNEY'S, INC. | 575 5TH AVE., NEW YORK, NY 10017 | BARNEYS JAPAN COMPANY LIMITED | SOUTH GATE SHINJUKU, 6F., 5-33-8 SENDAGAYA, SHIBUYA-KU, TOKYO, 151-0051, JAPAN | | | X |
| 2.004 | BARNEY'S, INC. | 575 5TH AVE., NEW YORK, NY 10017 | SUMITOMO CORPORATION | OTEMACHI PLACE EAST TOWER, 3-2 OTEMACHI 2-CHOME, CHIYODA-KU, TOKYO, 100-8601, JAPAN | | | X |
| 2.005 | BARNEY'S, INC. | 575 5TH AVE., NEW YORK, NY 10017 | WELLS FARGO BANK, NA AS AGENT | ONE BOSTON PLACE, 18TH FLOOR, BOSTON, MA 02108 | X | | |
| 2.006 | BARNEY'S, INC. | 575 5TH AVE., NEW YORK, NY 10017 | WELLS FARGO BANK, NA AS AGENT | ONE BOSTON PLACE, 18TH FLOOR, BOSTON, MA 02108 | X | | |
| 2.007 | BNY CATERING, INC. | 575 5TH AVE., NEW YORK, NY 10017 | WELLS FARGO BANK, NA AS AGENT | ONE BOSTON PLACE, 18TH FLOOR, BOSTON, MA 02108 | X | | |
| 2.008 | BNY CATERING, INC. | 575 5TH AVE., NEW YORK, NY 10017 | WELLS FARGO BANK, NA AS AGENT | ONE BOSTON PLACE, 18TH FLOOR, BOSTON, MA 02108 | X | | |
| 2.009 | BNY LICENSING CORP. | 575 5TH AVE., NEW YORK, NY 10017 | BARNEYS JAPAN COMPANY LIMITED | SOUTH GATE SHINJUKU, 6F., 5-33-8 SENDAGAYA, SHIBUYA-KU, TOKYO, 151-0051, JAPAN | | | X |
| 2.010 | BNY LICENSING CORP. | 575 5TH AVE., NEW YORK, NY 10017 | SUMITOMO CORPORATION | OTEMACHI PLACE EAST TOWER, 3-2 OTEMACHI 2-CHOME, CHIYODA-KU, TOKYO, 100-8601, JAPAN | | | X |
| 2.011 | BNY LICENSING CORP. | 575 5TH AVE., NEW YORK, NY 10017 | WELLS FARGO BANK, NA AS AGENT | ONE BOSTON PLACE, 18TH FLOOR, BOSTON, MA 02108 | X | | |
| 2.012 | BNY LICENSING CORP. | 575 5TH AVE., NEW YORK, NY 10017 | WELLS FARGO BANK, NA AS AGENT | ONE BOSTON PLACE, 18TH FLOOR, BOSTON, MA 02108 | X | | |

---

**Fill in this information to identify the case:**

Debtor name: Barneys New York, Inc.

United States Bankruptcy Court for the District of: Southern New York

Case number: 19-36300

☐ Check if this is an amended filing

---

Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☑ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☑ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☑ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☑ *Schedule H: Codebtors* (Official Form 206H)

☑ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule* _____

☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☐ Other document that requires a _____
declaration

I declare under penalty of perjury that the foregoing is true and correct.

| | |
|---|---|
| 9/17/2019 | /s/ Mohsin Y. Meghji |
| Executed on | Signature of individual signing on behalf of debtor |
| | Mohsin Y. Meghji |
| | Printed name |
| | Chief Restructuring Officer |
| | Position or relationship to debtor |