Sidney P. Levinson
Daniel E. Stroik
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York 10022
Telephone:  (212) 909-6000
Facsimile:  (212) 909-6836
Email:  slevinson@debevoise.com
         destroik@debevoise.com

*Counsel for the DIP Parties*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| BARNEYS NEW YORK, INC., *et al.*,[1] | Case No. 19-36300 (CGM) |
| Debtors. | (Jointly Administered) |

**NOTICE OF PROPOSED ORDER AUTHORIZING THIRD AMENDMENT TO FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS AND DEBTORS IN POSSESSION TO OBTAIN POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (III) AUTHORIZING PAYMENT OF PREPETITION SECURED OBLIGATIONS, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that as agreed and ordered on the record at the status conference hearing held October 3, 2019, at 3:00 p.m. (the "October 3 Hearing"), BRF Finance Co., LLC, GACP II, L.P., and Brigade Capital Management, LP, on behalf of its managed funds and accounts, in their capacity as lenders under the DIP Facility (together, the "DIP Lenders"), and GACP Finance Co., LLC, in its capacity as administrative agent under the DIP Facility (in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819). The location of the Debtors' service address is: 575 Fifth Avenue, New York, New York 10017.

1

such capacity, the "DIP Agent," and together with the DIP Lenders, the "DIP Parties"), are submitting their proposed form of order authorizing a third amendment to the Final DIP Order[2] (the "Proposed Order"), attached hereto as **Exhibit 1**.

As explained below, the DIP Parties have been unable to obtain the consent of the Debtors to any proposed form of order.[3] This is because the Debtors have sought to rewrite the terms of the agreement that were stated on the record and "so ordered" by this Court, as memorialized and ordered in the transcript of the October 3 Hearing ("Tr.", attached as **Exhibit 2**), and further memorialized in emails exchanged prior to the hearing. In response to the last draft of the Proposed Order circulated by the DIP Parties on Sunday evening, counsel for the Debtors responded by email that "Bunch of stuff here doesn't work" and "We are going to argue whatever we want Friday. Period. Might have to go back and argue about that [consent] fee too." Declaration of Sidney Levinson ("Levinson Decl."), attached hereto as **Exhibit 3**, at ¶ 4.[4] Thus, the parties are at an impasse as to the form of order.

Based on earlier exchanges of the draft order and emails, the specific revisions to the agreement on the record that the Debtors have sought to make to the Proposed Order involve: 1) the priority of the new 2% consent fee; 2) the payment of the consent fee upon a sale transaction; 3) the amount of the deposit under the stalking horse bid; and 4) the repayment of

---

[2] The Final DIP Order refers to the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtors and Debtors in Possession to Obtain Post-Petition Financing, (II) Granting Liens and Super-Priority Claims, (III) Authorizing Payment of Prepetition Secured Obligations, (IV) Granting Adequate Protection to Prepetition Secured Parties, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 222]. Capitalized terms used but not defined shall have the meaning ascribed to them in the Final DIP Order or in the Proposed Order.

[3] The Committee has not yet responded to the proposed orders circulated by the DIP Parties.

[4] Copies of this email, and certain others quoted in the Levinson Declaration, have not been attached to that declaration, because the email chains contain information regarding the sale process and other matters that the Debtors may prefer not be filed publicly. Each of the emails referenced herein and quoted in the Levinson Declaration will be made available to this Court upon request or in connection with any evidentiary or other hearing.

$4.022 million in principal to the DIP Parties. As explained below, each of those changes is contradicted both by the transcript of the October 3 Hearing and email correspondence that preceded the hearing.

**Priority of 2% Consent Fee**. Following last Thursday's hearing, the Debtors asserted that the new consent fee of two percent (2%)—which the Debtors agreed to pay at the status conference as partial consideration for the DIP Parties' waiver of existing Events of Default—should be subordinated to payment of administrative expenses and priority claims. In taking that position, the Debtors simply have ignored the statement made by its counsel at the hearing with respect to the "ordering of payment" (Tr. at 17:8), under which Debtors' counsel explained that the consent fee would, along with the other exit and facility fees payable to the DIP Parties ahead of administrative and priority expenses, form the "bottom" of a "sandwich" in which the "middle" was the deferred rent of the Landlords:

> MR. SUSSBERG: The deferred rent will be repaid once the DIP facility, principal and interest, has been paid, okay? So, the DIP will be paid it's approximately $219 million. That gets paid, the deferred rent then gets paid and then, and only then, are all of the facility fees, both the fees that had been approved at the outset of the case, right? The exit facility fee, Your Honor, there was an amended exit facility fee. There was a facility fee **and then there's the two percent fee from today.** So, all of those, I think of it as a sandwich.
>
> THE COURT: Yeah. Okay.
>
> MR. SUSSBERG: **There is the DIP on top, the fees on the bottom, and then the deferred rent right in the middle**.

(Tr. at 18:11-19:1) (emphasis added).

The fact that the Debtors never said or suggested anything at the hearing about subordination of the consent fee to administrative and priority claims was no surprise, because that issue was explicitly addressed before the hearing. In an email sent by counsel to the DIP Parties to the advisors for the Debtors and the Committee on October 3, 2019 (Levinson Decl.,

3

Exhibit A), the DIP Parties made explicit that, in exchange for their agreement to extend or waive the pending deadline of October 3, 2019 at 5:00 p.m. (EST), "the Debtors will be required to agree to pay **a two point consent fee** (for avoidance of doubt, on the full principal balance of the DIP facility) **that, in terms of priority, ranks ahead of administrative and priority claims** but after the landlords' recovery of the $4MM of rent deferral." Levinson Decl., Ex. A (emphasis added). In response, counsel for the Debtors wrote that "I think the request for a fee is silly and unnecessary, **but if that is really what you guys are demanding for the extension frankly not sure we have a choice** (other than to make clear it is silly, unnecessary and unreasonable)." See Levinson Decl., at ¶ 5 (emphasis added).

Following the October 3 Hearing, the Debtors have tried to modify the agreement as ordered by this Court. Counsel for the Debtors made the claim that, based on "post hrg" input from its financial advisor at Houlihan Lokey, the "biz deal is the 2% consent fee (a) slots in behind admin / priority and right before the enhancement fee, and (b) is not payable if the [stalking horse] deal falls thru (ie only meant to be payable if there's incremental value thru auction process)." Levinson Decl., at ¶ 6. That is simply not true. In fact, that same financial advisor from Houlihan Lokey was copied on the email from counsel for the DIP Parties explicitly stating that the 2% consent fee "in terms of priority, ranks ahead of administrative and priority claims."[5] His response in writing to that proposal was telling: "[t]he 2% fee is a UCC issue." Levinson Decl., at ¶ 7.[6]

---

[5] The only discussion regarding the consent fee that arose between the Debtors' financial advisor and the DIP Parties concerned the new milestone of October 11, 2019 (the "October 11 Milestone") for the Debtors to enter into a binding APA—and specifically, whether for the purposes of determining compliance with the October 11 Milestone, the stalking horse agreement needs or does not need to provide for payment of the consent fee. The DIP Parties are willing to make this accommodation which, unlike the priority of the consent fee relative to administrative and priority claims, was in fact discussed.

[6] For its part, the Committee, which also was copied on the email from counsel for the DIP Parties, initially sought to persuade the DIP Parties to withdraw the request for the 2% fee, but ultimately appeared at the status

4

In sum, the Debtors' position as to the priority of the 2% consent fee is unfounded, and any proposed revisions by the Debtors to the form of order based on that position should be rejected by this Court.

**Waiver of 2% Consent Fee**. Beyond its after-the-fact attempt to subordinate the priority of the 2% consent fee, the Debtors have more recently tried to insert language into the proposed order that, under the circumstance where a sale transaction occurs and the DIP Parties' other fees (except the Enhancement Fee) are paid in full, any consent fee should be waived. Such language would have the effect of eliminating the consent fee altogether in the event of a sale.

Again, the transcript of the October 3 Hearing belies the Debtors' position. When counsel for the Debtors initially described the consent fee at the October 3 Hearing, he stated that the consent fee would be "payable in connection with a sale of the company and only at the time that the company is actually sold . . . ." (Tr. 17:5-7). That statement cannot be reconciled with the Debtors' latest position.

To be clear, counsel for the DIP Parties clarified, on the record, that payment of the consent fee was *not limited* to a sale transaction:

> MR. LEVINSON: I want to make sure that a couple of additional points -- and there was one clarification. On the two percent -- on the two percent fee, the new two percent fee, which is on the full DIP balance, **it wouldn't be limited to being paid if there were a sale**; if there were -- but it -- certainly it's not going to be paid before a sale. In other words, it's not payable now.

(Tr. at 20:4-8)(emphasis added). The DIP Parties further made clear on the record that the consent fee was "earned now." (Tr. at 20:11). These clarifications were consistent with the extension proposal sent by email before the hearing by counsel for the DIP Parties, which did not propose any condition or limit upon payment of the 2% consent fee. Levinson Decl., Ex. A. In

---

hearing conference and, after the agreement was read into the record, commented that "[w]e're coming out very optimistic that we're going to get to a going concern transaction." (Tr. at 23:1-2).

5

any event, there was never any contemplation that the consent fee would not be paid upon a sale transaction.

**5% Stalking Horse APA Deposit.**  The Proposed Order provides that the stalking horse purchase agreement, which must be entered into by October 11, 2019 at 11:59 p.m. (EST) to satisfy the October 11 Milestone, must include a five percent (5%) deposit.  In response, the Debtors have proposed to limit the deposit to $10,000,000 which, based on the minimum purchase price in a Qualified Bid, falls below the 5% threshold.

At the status conference hearing, counsel for the Debtors explicitly stated that the required deposit would be five percent:

> And then finally, Your Honor, the one other term that will be reflected in the order is the DIP lenders and the potential purchaser of the assets, who we're negotiating the APA with, by next Friday, have agreed **on a five percent deposit** that will be refundable only in circumstances typical of a refundable deposit in a stalking horse scenario.

(Tr. at 19:3-9).  Likewise, the email from counsel for the DIP Parties that preceded the October 3 Hearing expressly provided that any binding stalking horse asset purchase agreement" would need to be "accompanied by no less than a 5% non-refundable deposit."  Levinson Decl., Ex. A.

Once again, the Debtors' attempt to revise the agreement is contradicted by the unambiguous record, both as stated to this Court and in advance of the October 3 Hearing.

**Immediate Pay Down of $4,022,000 in principal**.  The Debtors are also seeking to evade their agreement to pay down $4,022,000 in principal immediately, which equals the amount of rent that the Debtors were not required to pay when otherwise due on October 1, 2019.  The Debtors now appear to take the position that the pay down should be limited to two weeks of rent, rather than the $4 million not paid at the beginning of the month.

6

At the October 3 Hearing, counsel for the DIP Parties advised this Court that "part of the agreement is that with respect to the deferral of rent, which is approximately $4 million, there'll be an immediate paydown." (Tr. at 20:18-21). That statement on the record that this Court ordered was, once again, consistent with the email sent by counsel for the DIP Parties earlier that day, which expressly stated that "the $4MM of rent deferral needs to pay down the DIP Parties principal immediately." Levinson Decl., Ex. A. The fact that the DIP Parties agreed on the record that any deferral of rent for October would be pro rata and terminate upon the failure of the Debtors' to satisfy the October 11 Milestone does not alter the agreement of the Debtors to make a pay down of the $4 million, as agreed on the record at the October 3 Hearing. Notably, both the pay down of that amount, and the agreement that the deferred rent might cease to be deferred after October 11, were both expressly referenced in the description of the agreement that this Court ordered at the October 3 Hearing. There is no basis for the Debtors to now change the agreed terms. As such, the Proposed Order should mandate that the $4 million principal repayment be made "immediately."

\* \* \*

In conclusion, this Court should enter the proposed form of Order submitted by the DIP Parties and attached hereto as Exhibit 1.

| | |
|---|---|
| New York, New York<br>Dated: October 8, 2019 | **DEBEVOISE & PLIMPTON, LLP**<br><br>*/s/ Sidney P. Levinson*<br>Sidney P. Levinson<br>Daniel E. Stroik<br>919 Third Avenue<br>New York, New York 10022<br>Telephone:  (212) 909-8940<br>Facsimile:  (212) 909-6836<br><br>*Counsel for the DIP Parties* |