**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BARNEYS NEW YORK, INC., *et al.*,[1] | ) | Case No. 19-36300 (CGM) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW,**
**AND ORDER CONFIRMING THE JOINT CHAPTER 11**
**PLAN OF BARNEYS NEW YORK, INC. AND ITS DEBTOR AFFILIATES**

WHEREAS, Barneys New York, Inc. and the other above-captioned debtors and debtors in possession (collectively, the "Debtors") have, among other things:[2]

    a.    commenced the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on August 6, 2019 (the "Petition Date") with the Bankruptcy Court for the Southern District of New York (the "Court");

    b.    continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

    c.    filed, on November 15, 2019, (i) the *Joint Chapter 11 Plan of Barneys New York, Inc. and Its Debtor Affiliates* [Docket No. 527] (as amended, supplemented, or otherwise modified from time to time, the "Plan"), (ii) the *Disclosure Statement for the Joint Chapter 11 Plan of Barneys New York, Inc. and Its Debtor Affiliates* [Docket No. 528] (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"), and (iii) the *Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement; (II) Solicitation and Notice Procedures; (III) Forms of Ballots and Notices in Connection Therewith; and (IV) Certain Dates with Respect Thereto* [Docket No. 529];

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Barneys New York, Inc. (1818); Barney's Inc. (2980); BNY Catering, Inc. (4434); BNY Licensing Corp. (4177); and Barneys Asia Co. LLC (0819). The location of the Debtors' service address is 660 Madison Avenue, 9th Floor, New York, NY 10065.

[2]    All capitalized terms used and not otherwise defined in this Confirmation Order (as defined herein) shall have the meanings given to them in the Plan (as defined herein). The rules of interpretation set forth in Article I, Section B of the Plan shall apply to this Confirmation Order.

d.      filed, on December 9, 2019, the first revised version of the Disclosure Statement [Docket No. 579];

e.      filed, on December 16, 2019, (i) the second revised version of the Disclosure Statement and the first revised version of the Plan [Docket No. 596] and (ii) the *Debtors' Reply to Objection to the Debtors' Disclosure Statement* [Docket No. 595];

f.      filed, on December 18, 2019, the further revised versions of the Disclosure Statement and the Plan [Docket No. 611];

g.      obtained, on December 19, 2019, entry of the *Order Approving (I) the Adequacy of the Disclosure Statement; (II) Solicitation and Notice Procedures; (III) Forms of Ballots and Notices in Connection Therewith; and (IV) Certain Dates with Respect Thereto* [Docket No. 612] (the "Disclosure Statement Order") approving the Disclosure Statement, solicitation procedures (the "Solicitation Procedures"), and related notices, forms, and ballots (collectively, the "Solicitation Packages");

h.      commenced service of the Solicitation Packages and notice of the Confirmation Hearing and the deadline for objecting to confirmation of the Plan to be distributed on or about December 20, 2019 (the "Solicitation Date"), in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Disclosure Statement Order, and the Solicitation Procedures, as evidenced by, among other things, the affidavits of service [Docket Nos. 620, 626, 639, 642, 643, 650, and 666] (the "Solicitation Affidavit");

i.      caused notice of the Confirmation Hearing (the "Confirmation Hearing Notice") to be published on December 23, 2019, in the national edition of  the *USA Today*, as evidenced by the *Verification of Publication* [Docket No. 625] (the "Publication Affidavit");

j.      filed, on January 12, 2020, the *Notice of Filing of Plan Supplement* [Docket No. 652] (together with the exhibits attached thereto, each as amended, supplemented, or otherwise modified from time to time, the "Plan Supplement");

k.      filed, on January 20, 2020, the *Certification of Stretto Regarding Tabulation of Votes in Connection with the Joint Chapter 11 Plan of Barneys New York, Inc. and its Debtor Affiliates* [Docket No. 700] (the "Voting Report");

l.      filed, on January 31, 2020, the *Debtors' (I) Brief in Support of Confirmation of the Joint Chapter 11 Plan of Barneys New York, Inc. and Its Debtor Affiliates, and (II) Omnibus Reply to Confirmation Objections* [Docket No. 751] (the "Confirmation Brief"); and

m.      filed, on January 31, 2020, the *Declaration of Christopher A. Good in Support of Confirmation of Joint Chapter 11 Plan of Barneys New York, Inc. and its Debtor Affiliates* [Docket No. 753] (the "Good Declaration").

2

This Court having:

a.     entered the Disclosure Statement Order on December 19, 2019;

b.     set January 17, 2020 at 4:00 p.m. (prevailing Eastern Time) as the deadline for filing objections, including § 1129(a)(9) non-consent forms, in opposition to the Plan;

c.     set January 17, 2020 at 4:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Plan;

d.     set February 4, 2020 at 12:00 p.m. (prevailing Eastern Time) as the date and time for the commencement of the Confirmation Hearing in accordance with Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

e.     reviewed the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Brief, the Good Declaration, the Voting Report, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

f.     held the Confirmation Hearing;

g.     heard the statements, arguments, and objections made by counsel with respect to Confirmation;

h.     considered all testimony, documents, filings, and other evidence presented or admitted at the Confirmation Hearing;

i.     overruled any and all objections to the Plan and to Confirmation and all statements and reservations of rights not consensually resolved or withdrawn, unless otherwise indicated;

j.     entered rulings on the record at the Confirmation Hearing held on February 4, 2020 (the "Confirmation Ruling"); and

k.     taken judicial notice of all papers and pleadings filed in the Chapter 11 Cases; and all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of these Chapter 11 Cases.

NOW, THEREFORE, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the Court having found that the record of the Chapter 11 Cases and the legal and

factual bases set forth in the documents filed in support of Confirmation and all evidence proffered or adduced by counsel at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and order (this "Confirmation Order"):

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT:

**A.      Findings of Fact and Conclusions of Law**

1.      The findings of fact and conclusions of law set forth herein and on the record of the Confirmation Hearing constitute findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rules 7052 and 9014.  All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated into this Confirmation Order to the extent not inconsistent herewith.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.  To the extent any finding of fact or conclusion of law set forth herein (including any findings of fact or conclusions of law announced by the Court at the Confirmation Hearing and incorporated herein) constitutes an order of the Court, it is adopted as such.

**B.      Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))**

2.      The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court has jurisdiction to enter a Final Order determining that the Plan complies with the applicable

provisions of the Bankruptcy Code and should be confirmed and approved.  Venue is proper before

the Court pursuant to 28 U.S.C. § 1408.

**C.      Eligibility for Relief**

3.      Each Debtor is and continues to be, under section 109 of the Bankruptcy Code, a

person eligible to be a debtor under chapter 11 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of the Chapter 11 Cases**

4.      On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing

voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On August 7, 2019, the

Court entered an order [Docket No. 41] authorizing the joint administration of the Chapter 11

Cases in accordance with Bankruptcy Rule 1015(b).  The Debtors have operated their businesses

and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of

the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

**E.      Appointment of the Committee**

5.      On August 15, 2019, the U.S. Trustee appointed the Official Committee of

Unsecured Creditors (the "Committee") to represent the interests of the unsecured creditors of the

Debtors in the Chapter 11 Cases [Docket No. 131].

**F.      Plan Supplement**

6.      The Plan Supplement complies with the terms of the Plan, and the Debtors provided

good and proper notice of filing thereof in accordance with the Bankruptcy Code, the Bankruptcy

Rules, the Disclosure Statement Order, and the facts and circumstances of the Chapter 11 Cases.

No other or further notice is or will be required with respect to the Plan Supplement.  All

documents included in the Plan Supplement are integral to, part of, and incorporated by reference

into the Plan.  Subject to the terms of the Plan, the Debtors have reserved the right to alter, amend,

update, or modify the Plan Supplement prior to the Effective Date, subject to compliance with the Bankruptcy Code and the Bankruptcy Rules.

**G.      Judicial Notice**

7.      The Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation) the docket of the Chapter 11 Cases maintained by the Clerk of the Court or its duly-appointed agent, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases, including, without limitation, the hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing.

**H.      Disclosure Statement Order**

8.      On December 19, 2019, the Court entered the Disclosure Statement Order, which, among other things, fixed January 17, 2020 at 4:00 p.m. (prevailing Eastern Time) as the deadline for objecting to the Plan (the "Plan Objection Deadline") and as the deadline for voting to accept or reject the Plan (the "Voting Deadline"), and January 24, 2020 at 9:00 a.m. (prevailing Eastern Time) as the initially scheduled date and time for the Confirmation Hearing.

**I.      Transmittal and Mailing of Materials; Notice**

9.      The Debtors provided due, adequate, and sufficient notice of the Plan, the Disclosure Statement, the Disclosure Statement Order, the Solicitation Packages, the Confirmation Hearing Notice, the Plan Supplement, and all the other materials distributed by the Debtors in connection with Confirmation of the Plan in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3018, 3019, and 3020(c), the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and the procedures set forth in the Disclosure Statement Order.  The Debtors provided due, adequate, and sufficient notice of the Voting Deadline and Plan Objection Deadline, the Confirmation Hearing (as may be continued from time

to time), and any applicable bar dates and hearings described in the Disclosure Statement Order in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Disclosure Statement Order. No other or further notice is or shall be required.

**J.    Solicitation**

10.    The Debtors solicited votes for acceptance and rejection of the Plan in good faith, and such solicitation complied with sections 1125 and 1126, and all other applicable sections, of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the Disclosure Statement Order, the Local Rules, and all other applicable rules, laws, and regulations.

**K.    Voting Report**

11.    On January 20, 2020, the Debtors filed the Voting Report. As evidenced thereby, the procedures used to tabulate ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.

12.    As set forth in the Plan, Holders of Claims in Class 3 and Class 4 (the "Voting Classes") were eligible to vote on the Plan in accordance with the Solicitation Procedures. Holders of Claims in Class 1 and Class 2 (the "Deemed Accepting Class") are Unimpaired and conclusively presumed to accept the Plan and, therefore, did not vote to accept or reject the Plan. Holders of Claims and Interests Class 5, Class 6, Class 7, and Class 8 (the "Deemed Rejecting Classes") are Impaired under the Plan, are entitled to no recovery under the Plan, and are therefore deemed to have rejected the Plan.

13.    As evidenced by the Voting Report, Class 3 and Class 4 voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

14.    Based on the foregoing, and as evidenced by the Voting Report, at least one Impaired Class of Claims (excluding the acceptance by any insiders of any of the Debtors) has

voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

**L.      Modifications to the Plan**

15.      Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan since the commencement of Solicitation described or set forth herein constitute technical changes or changes with respect to particular Claims or Interests made pursuant to the agreement of the Holders of such Claims or Interests and do not materially and adversely affect the treatment of any Claims or Interests.   Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

16.      This Confirmation Order contains modifications to the Plan that were made to address objections and informal comments received from parties in interest.  Modifications to the Plan since entry of the Disclosure Statement Order, if any, are consistent with the provisions of the Bankruptcy Code.  The disclosure of any Plan modifications prior to or on the record at the Confirmation Hearing constitutes due and sufficient notice of any and all Plan modifications.  The Plan as modified shall constitute the Plan submitted for Confirmation.

**M.      Objections**

17.      To the extent that any objections, reservations of rights, statements, or joinders to Confirmation have not been resolved, withdrawn, waived, adjourned, or settled prior to entry of this Confirmation Order or otherwise resolved herein or as stated on the record of the Confirmation Hearing, they are hereby overruled on the merits based on the record before the Court.   All objections to Confirmation not filed and served prior to the deadline for filing objections to the

Plan set forth in the Confirmation Hearing Notice, if any, are deemed waived and shall not be considered by the Court.

**N.    Burden of Proof**

18.    The Debtors, as proponents of the Plan, have met their burden of proving each required element of section 1129 of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for Confirmation.  Further, the Debtors have proven each required element of section 1129 of the Bankruptcy Code by clear and convincing evidence.  Each witness who testified on behalf of the Debtors in connection with Confirmation was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**O.    Bankruptcy Rule 3016**

19.    The Plan is dated and identifies the Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

20.    The injunction, release, and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

**P.    Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

21.    The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

**a.    Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

22.    The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

###### i.    Sections 1122 and 1123(a)(1)—Proper Classification

23.    The Plan satisfies the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code.  As required by section 1123(a)(1) of the Bankruptcy Code, in addition to Administrative Claims, Priority Tax Claims, Professional Fee Claims, and Allowed DIP Claims which need not be classified, Article III of the Plan designates eight Classes of Claims and Interests.  As required by section 1122(a) of the Bankruptcy Code, the Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as applicable, in each such Class.  Valid business, factual, and legal reasons exist for the separate classification of such Claims and Interests, such classifications were not implemented for any improper purpose and do not unfairly discriminate between, or among, holders of Claims and Interests.

###### ii.    Section 1123(a)(2)—Specification of Unimpaired Classes

24.    The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.  Article III of the Plan specifies that Claims in Class 1 are Unimpaired under the Plan.

###### iii.    Section 1123(a)(3)—Specification of Treatment of Impaired Classes

25.    The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.  Article III of the Plan specifies that Claims in Classes 3, 4, 5, 6, 7 and 8 are Impaired under the Plan and that Claims in Class 2 are either deemed Unimpaired or Impaired under the Plan.

###### iv.    Section 1123(a)(4)—No Discrimination

26.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.  Article III of the Plan provides for the same treatment for each Claim or Interest in any particular Class, as the case may be, except to the extent the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.

### v.    Section 1123(a)(5)—Adequate Means for Plan Implementation

27.    The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan and the various documents included in the Plan Supplement provide adequate and proper means for execution and implementation of the Plan, including: (a) the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) the Schedule of Retained Causes of Action; (c) the identity and terms of compensation of the Plan Administrator; (d) any transition services agreement between the Purchasers and the Debtors; and (e) any other necessary documentation related to the Sale Transaction or other Restructuring Transactions.

### vi.    Section 1123(a)(6)—Non-Voting Equity Securities

28.    The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code. The Plan does not provide for the issuance of equity or other securities of the Debtors, including nonvoting equity securities.

### vii.    Section 1123(a)(7)—Directors, Officers, and Trustees

29.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. Article IV.D of the Plan discharges all of the Debtors' officers and managers from their duties effective as of the Effective Date without any further action.  In addition, Article IV.D provides that the Plan Administrator shall be appointed as the sole manager and sole officer of the Wind-Down Debtors and shall succeed to the powers of the Wind-Down Debtors' managers and officers.  The manner for selection of the Plan Administrator is set forth in the Plan.  The selection of Mr. Christopher A. Good as the Plan Administrator and the process therefor is consistent with the interests of Holders of Claims and Interests and public policy.

### b.    Section 1123(b)—Discretionary Contents of the Plan

30.    The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are consistent with the applicable provisions of the Bankruptcy Code. Thus, the Plan satisfies section 1123(b).

### i.    Impairment / Unimpairment of Any Class of Claims or Interests

31.    Pursuant to the Plan, Article III of the Plan impairs or leaves Unimpaired, as the case may be, each Class of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

### ii.    Assumption and Rejection of Executory Contracts and Unexpired Leases

32.    Article V of the Plan provides for the automatic rejection of the Debtors' Executory Contracts and Unexpired Leases on the Effective Date, except as otherwise provided herein or therein, unless such Executory Contract or Unexpired Lease: (a) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement, or otherwise is specifically described in the Plan to not be rejected; (b) is subject to a prior or pending motion and/or notice to assume or reject such Unexpired Lease or Executory Contract; (c) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with any sale transaction; or (d) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan. Entry of this Confirmation Order shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

### iii.    Compromise and Settlement

33.    In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan and with the support of the various creditors, stakeholders, and other parties in interest, including the Committee, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, Causes of Action, as applicable, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.  Those settlements and compromises are fair, equitable, and reasonable and approved as being in the best interests of the Debtors and their Estates.

### iv.    Debtor Release

34.    The releases of Claims and Causes of Action by the Debtors described in Article VIII.D of the Plan in accordance with section 1123(b) of the Bankruptcy Code (the "Debtor Release") represent a valid exercise of the Debtors' business judgment under Bankruptcy Rule 9019.  The Debtors' or the Wind-Down Debtors' pursuit of any such claims against the Released Parties is not in the best interest of the Estates' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such Claims.  The Debtor Release is fair and equitable and complies with the absolute priority rule.

35.    The Debtor Release is an integral part of the Plan and is in the best interests of the Debtors' Estates as a component of the comprehensive settlement implemented under the Plan. The low probability of success in litigation with respect to the released Causes of Action supports the Debtor Release.  The investigation conducted by one of the Debtors' disinterested directors also supports the Debtor Release.  The Plan, including the Debtor Release, was negotiated by sophisticated parties represented by able counsel and financial advisors.  The Debtor Release is therefore the result of an arm's-length negotiation process.

36.     The Debtor Release appropriately offers protection to parties that participated in the Debtors' restructuring process.  Specifically, the Released Parties under the Plan made significant concessions and contributions to the Chapter 11 Cases, including, as applicable, actively supporting the Plan and these Chapter 11 Cases and waiving substantial rights and Claims against the Debtors under the Plan.  Several creditors relied on the Debtor Release in supporting the Plan, including creditors that consented to "different treatment" under section 1129(a)(9) of the Bankruptcy Code.  The Debtor Release for the Debtors' managers and officers is appropriate because the Debtors' managers and officers share an identity of interest with the Debtors, supported the Plan and these Chapter 11 Cases, actively participated in meetings, negotiations, and implementation during these Chapter 11 Cases, and have provided other valuable consideration to the Debtors to facilitate the Debtors' restructuring.  Such release is also supported by the investigation.

37.     The scope of the Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases.  The Debtor Release, which includes by reference each related provision and definition contained in the Plan, is:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims released by such releases; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors or their Estates asserting any Claim or Cause of Action released pursuant to such Debtor Release.  In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan, the Debtor Release is appropriate.

### v.    Release by Holders of Claims and Interests

38.     The release by the Releasing Parties set forth in Article VIII.E of the Plan (the "Third-Party Release") is an essential provision of the Plan.  The scope of the Third-Party Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases and the Releasing Parties received due and adequate notice of the Third-Party Release.  The Third-Party Release is:  (a) consensual; (b) essential to the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the Claims and Causes of Action released pursuant to the Third-Party Release; (e) materially beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders; (f) important to the overall objectives of the Plan; (g) fair, equitable, and reasonable; (h) given and made after due notice and opportunity for a hearing, as well as a clear opportunity to opt out of such Third-Party Release; (i) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release against any of the Released Parties; and (j) consistent with sections 105,  524, 1123, 1129, and 1141 of the Bankruptcy Code, other applicable provisions of the Bankruptcy Code, and applicable law.

39.     The Third-Party Release is an integral part of the Plan.  Like the Debtor Release, the Third-Party Release facilitated participation of the Released Parties in both the Plan and these Chapter 11 Cases generally.  The Third-Party Release is instrumental to the Plan and was critical in incentivizing the Released Parties to support the Plan and preventing potentially significant and time-consuming litigation regarding the parties' respective rights and interests.

40.     Furthermore, the Third-Party Release is consensual as the Releasing Parties were provided adequate notice of the Chapter 11 Cases and related proceedings, the Plan, and the deadline to object to confirmation of the Plan, and all Holders of Claims and Interests, as applicable, were given the opportunity to opt out of the Third-Party Release.  The release

provisions of the Plan were conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, and the ballots. Among other things, the Plan provides appropriate and specific disclosure with respect to the Claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure or notice is necessary or shall be required. The Third-Party Release is specific in language, integral to the Plan, and given for substantial consideration. In light of the foregoing, the Third-Party Release is approved.

### vi.     Exculpation

41.     The exculpation provisions set forth in Article VIII.F of the Plan (the "Exculpation") are essential to the Plan. The Exculpation is essential to the Plan and appropriately affords protection to certain parties who constructively participated in and contributed to the Debtors' chapter 11 process. The record in the Chapter 11 Cases fully supports the Exculpation, which is appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

### vii.    Injunction

42.     The injunction provisions set forth in Article VIII.G of the Plan are essential to the Plan and are necessary to implement the Plan, the Debtor Release, the Third-Party Release, and the Exculpation. Such injunction provisions are appropriately tailored to achieve those purposes.

### viii.   Preservation of Claims and Causes of Action

43.     Article IV.M of the Plan appropriately provides for the preservation by the Debtors of certain Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.

44.     The Plan is specific with respect to the Causes of Action to be retained by the Debtors, and the Plan and Plan Supplement provide meaningful disclosure with respect to the potential Causes of Action that the Wind-Down Debtors may retain, and all parties in interest received adequate notice with respect to such Causes of Action. The provisions regarding Causes

of Action in the Plan are appropriate and in the best interests of the Debtors, their respective Estates, and Holders of Claims and Interests.  For the avoidance of doubt, except with respect to the Schedule of Retained Causes of Action and as otherwise provided in the Plan, Causes of Action released or exculpated under the Plan will not be retained by the Wind-Down Debtors.

### ix.    Lien Releases

45.    Except as otherwise specifically provided in this Confirmation Order, the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, or executed in connection therewith, to implement the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date and required to be satisfied pursuant to the Plan, except for Other Secured Claims that the Debtors elect to reinstate in accordance with Article III.B of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and satisfied, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns (the "Lien Releases").  The provisions of the Lien Releases are appropriate, fair, equitable and reasonable and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

### x.    Additional Plan Provisions

46.    The other discretionary provisions of the Plan, including the Plan Supplement, are appropriate and consistent with applicable provisions of the Bankruptcy Code, including, without limitation, provisions for the allowance of certain Claims and Interests, treatment of indemnification obligations, and the retention of jurisdiction by the Court.

c.      **Section 1123(d)—Cure of Defaults**

47.     Article V.F of the Plan provides for the satisfaction of cure claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  Any monetary defaults under each Assumed Executory Contract or Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash, subject to the limitations described in Article V.F of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  Any disputed cure amounts will be determined in accordance with the procedures set forth in Article V.F of the Plan, and applicable bankruptcy and nonbankruptcy law.  As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

d.      **Section 1129(a)(2)—Debtors' Compliance with the Applicable Provisions of the Bankruptcy Code**

48.     The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1128, and 1129 of the Bankruptcy Code, and with Bankruptcy Rules 2002, 3017, 3018, and 3019.

49.     The Debtors and their agents solicited votes to accept or reject the Plan after the Court approved the adequacy of the Disclosure Statement pursuant to section 1125(a) of the Bankruptcy Code and the Disclosure Statement Order.

50.     The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good

18

faith (as such term is used in section 1125(e) of the Bankruptcy Code), and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provisions set forth in Article VIII.F of the Plan.

51.    The Debtors and their agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and therefore are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with the terms of and pursuant to the Plan.

**e.    Section 1129(a)(3)—Proposal of Plan in Good Faith**

52.    The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation.  The Debtors' good faith is evident from the facts and the record of the Chapter 11 Cases, the Plan, the Disclosure Statement, the hearing on the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases.

53.    The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful chapter 11 proceeding for the Debtors. The Plan was the product of extensive negotiations conducted at arm's length among the Debtors and certain of their key stakeholders.  Further, the Plan's classification, settlement, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are

consistent with sections 105, 1122, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors to consummate a value-maximizing conclusion to the Chapter 11 Cases.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

        **f.**        **Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable**

54.      Payments made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

        **g.**        **Section 1129(a)(5)—Disclosure of Directors, Officers and Managers and Consistency with the Interests of Creditors and Public Policy**

55.      Because the Plan provides for the liquidation of the Estates' assets and resignation of the Debtors' officers, directors, and managers, section 1129(a)(5) of the Bankruptcy Code does not apply.  To the extent section 1129(a)(5) of the Bankruptcy Code applies to the Wind-Down Debtors, the Debtors have satisfied the requirements of this provision by, among other things, disclosing the identity and terms of compensation of the Plan Administrator.

        **h.**        **Section 1129(a)(6)—Rate Changes**

56.      Section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.  The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and therefore will not require governmental regulatory approval.

        **i.**        **Section 1129(a)(7)—Best Interests of Holders of Claims and Interests**

57.      The Debtors have demonstrated that the Plan is in the best interests of their creditors and equity interest holders and the requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied.  The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing and the facts and circumstances of the Chapter 11 Cases establish that each Holder of

Allowed Claims or Interests in each Class will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

> **j.      Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Certain Impaired Classes; Fairness of Plan with Respect to Deemed Rejecting Classes**

58.      Class 1 is Unimpaired by the Plan pursuant to section 1124 of the Bankruptcy Code and, accordingly, Holders of Claims in such class are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Class 2 is deemed Unimpaired by the Plan pursuant to section 1124 of the Bankruptcy Code because such Holders have agreed to their treatment and, accordingly, Holders of Claims in Class 2 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Class 3 and Class 4 are Impaired by the Plan and entitled to vote on the Plan, and, as reflected in the Voting Report, each such class voted to accept the Plan.  Classes 5, 6, 7, and 8 are Classes are Impaired Classes that will not receive or retain any property under the Plan on account of their Claims; such Classes are not entitled to vote on the Plan, and thus are deemed to reject the Plan.  Nevertheless, as set forth below, the Debtors satisfy the requirements of section 1129(b) of the Bankruptcy Code with respect to the Claims that are deemed to reject the Plan.

> **k.      Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

59.      The treatment of Administrative Claims, Priority Tax Claims, Professional Fee Claims, DIP Claims, and payment of U.S. Trustee statutory fees under Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the

Bankruptcy Code.  Holders of Administrative Claims and Priority Tax Claims have agreed to different treatment of their Claims under the Plan.

### l.      Section 1129(a)(10)—Acceptance by at Least One Impaired Class

60.      The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As set forth in the Voting Report, both Impaired Classes that were entitled to vote on the Plan have voted to accept the Plan.  Specifically, Holders of Claims in Class 3 and Class 4 voted to accept the Plan.  As such, with respect to each Debtor's Plan there is either at least one Class of Claims that is Impaired under the Plan and has accepted the Plan, determined without including any acceptance of the Plan by any insider (as such term is defined in section 101(31) of the Bankruptcy Code).

### m.     Section 1129(a)(11)—Feasibility of the Plan

61.      The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing:  (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation (other than as contemplated by the Plan) or the need for further financial reorganization; and (d) establishes that the Debtors will have sufficient funds available to meet their obligations under the Plan.

### n.      Section 1129(a)(12)—Payment of Statutory Fees

62.      The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article II.D of the Plan provides for the payment of all fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Court at the Confirmation Hearing in accordance with section 1128 of the Bankruptcy Code.

**o.    Section 1129(a)(13)—Retiree Benefits**

63.    The Debtors do not have any remaining obligations to pay retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code).  Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases or the Plan.

**p.    Section 1129(a)(14), (15), and (16)—Domestic Support Obligations, Individuals, and Nonprofit Corporations**

64.    The Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations.  Therefore, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

**q.    Section 1129(b)—Confirmation of Plan Over Nonacceptance of Impaired Classes**

65.    The Plan may be confirmed as to any Class that is deemed to have rejected the Plan (collectively, the "Rejecting Classes") pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding that the requirements of section 1129(a)(8) have not been met with respect to the Rejecting Classes, because the Debtors have demonstrated by a preponderance of the evidence the Plan (a) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate unfairly" and is "fair and equitable" with respect to the Holders of Claims and Interests in the Rejecting Classes.  The Plan, therefore, satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed despite the fact that the Rejecting Classes are deemed to reject the Plan.  After entry of this Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be binding upon the Holders of Claims and Interests, as applicable, in the Rejecting Classes.

**r.    Section 1129(c)—Only One Plan**

66.    The Plan is the only plan filed in the Chapter 11 Cases and, accordingly, satisfies section 1129(c) of the Bankruptcy Code.

     **s.**    **Section 1129(d)—Principal Purpose of the Plan**

67.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.  As evidenced by its terms, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

     **t.**    **Section 1129(e)—Not Small Business Cases**

68.    None of the Chapter 11 Cases are small business cases, and accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

**Q.**    **Satisfaction of Confirmation Requirements**

69.    Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtors, as applicable, satisfy all of the requirements for confirmation of a chapter 11 plan set forth in section 1129 of the Bankruptcy Code.

**R.**    **Good Faith**

70.    The Debtors have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code.  The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of their Estates for the benefit of their stakeholders.  The Plan is the product of extensive collaboration among the Debtors and key stakeholders and accomplishes the Debtors' goal.  Accordingly, the Debtors or the Wind-Down Debtors, as appropriate, have been, are, and will continue acting in good faith if they proceed to:  (a) consummate the Plan, the Restructuring Transactions, and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by this Confirmation Order.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

**S.**    **Disclosure: Agreements and Other Documents**

71.    The Debtors have disclosed all material facts, to the extent applicable, regarding: (a) the identity and compensation of the Plan Administrator and selection process therefor; (b) the method and manner of distributions under the Plan; (c) the adoption, execution, and implementation of the other matters provided for under the Plan, including those involving corporate action to be taken by or required of the Debtors or Wind-Down Debtors, as applicable; (d) the exemption under section 1146(a) of the Bankruptcy Code; (e) the retained Causes of Action; and (f) the adoption, execution, and delivery of all contracts, leases, instruments, securities, releases, indentures, and other agreements related to any of the foregoing.

**T.**    **Conditions to Effective Date**

72.    The Plan shall not become effective unless and until the conditions set forth in Article IX of the Plan have been satisfied or waived pursuant to Article IX, Section B of the Plan. Each of the conditions set forth in Article IX of the Plan is reasonably likely to be satisfied or waived in accordance with the Plan.

**U.**    **Implementation**

73.    All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law. The documents and agreements are essential elements of the Plan and entry into and consummation of the transactions contemplated by each such document or agreement is in the best interests of the Debtors, the Estates, and the Holders of Claims and Interests. The Debtors have exercised reasonable business judgment in determining which documents and

agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.  The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

**V.    Returned Merchandise Procedures**

74.    The Form of Returned Merchandise Election Form attached as Exhibit D to the Plan Supplement (the "Returned Merchandise Claim Form") and the procedures described therein (the "Returned Merchandise Procedures") are designed to give appropriate and satisfactory notice to Holders of Returned Merchandise Claims based on the facts and circumstances of the Chapter 11 Cases.  Transmittal of the Returned Merchandise Claim Form to Holders of Returned Merchandise Claims (as defined in the Returned Merchandise Claim Form) in accordance with the Returned Merchandise Procedures complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations, and no other or further notice is necessary or shall be required.

**W.    Customer Convenience Matters**

75.    The Plan shall be deemed modified to provide for the payment in full in cash of Allowed customer convenience claims, not to exceed (a) $25,000 in the aggregate or (b) $2,100 on an individual basis, as the Debtors or Plan Administrator determine in their business judgment. For purposes hereof, "customer convenience claims" means Allowed Claims in respect of gift cards or merchandise.  Such modification does not materially and adversely affect any other Holder of a Claim or Interest that is classified under the Plan.  The payment of such customer convenience claims will enable the Debtors to maximize the value of Distributable Cash and distributions to other creditors.

### X.     Vesting of Assets

76.     Except as otherwise provided in this Confirmation Order, the Plan, or any other agreement, instrument, or other document incorporated therein or in the Plan Supplement, on the Effective Date, any Estate non-Cash assets remaining shall vest in the Wind-Down Debtors for the purpose of liquidating the Estates and effecting Consummation of the Plan.  Such assets shall be held free and clear of all liens, claims, charges, or other encumbrances unless expressly provided otherwise by the Plan or this Confirmation Order.  Any distributions to be made under the Plan from such assets shall be made by the Plan Administrator or its designee.  The Wind-Down Debtors and the Plan Administrator shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

### Y.     Treatment of Executory Contracts and Unexpired Leases

77.     Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, the Plan provides for the assumption or rejection of certain Executory Contracts and Unexpired Leases, effective as of the Effective Date except as otherwise provided therein or another prior or pending notice and/or motion.  The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests and other parties in interest in the Chapter 11 Cases.

### Z.     Objections

78.     All objections, responses, reservations, statements, and comments in opposition to the Plan, other than those resolved, adjourned, or withdrawn with prejudice prior to, or on the record at, the Confirmation Hearing are overruled on the merits in all respects.  All withdrawn objections, if any, are deemed withdrawn with prejudice.  All objections to Confirmation not filed

and served prior to the deadline for filing objections to the Plan set forth in the Confirmation

Hearing Notice, if any, are deemed waived and shall not be considered by the Court.

79.    All parties have had a full and fair opportunity to litigate all issues raised in the

objections to Confirmation of the Plan, or which might have been raised, and the objections have

been fully and fairly litigated or resolved, including by agreed-upon reservations of rights as set

forth in this Confirmation Order.

## II. **ORDER**

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

80.    The Plan shall be, and hereby is, confirmed under section 1129 of the Bankruptcy

Code.  The Debtors are authorized to implement the provisions of the Plan and consummate the

Plan, including taking all actions necessary, advisable, or appropriate to effectuate the Plan and

the Restructuring Transactions, without any further authorization except as may be expressly

required by the Plan or this Confirmation Order.

81.    This Confirmation Order approves the Plan Supplement, including the documents

contained therein, as they may be amended through and including the Effective Date in accordance

with and as permitted by the Plan.  The terms of the Plan, the Plan Supplement, and the exhibits

thereto are incorporated herein by reference and are an integral part of this Confirmation Order;

*provided* that if there is any direct conflict between the terms of the Plan and the terms of this

Confirmation Order, the terms of this Confirmation Order shall control solely to the extent of such

conflict.

82.    The terms of the Plan, the Plan Supplement, all exhibits thereto, and this

Confirmation Order shall be effective and binding as of the Effective Date on all parties in interest,

including:  (a) the Debtors; (b) the Prepetition Secured Lenders; (c) Holders of General Unsecured

Claims; (d) the DIP Lenders; (e) the Committee; (f) all Holders of Claims and Interests; and (g) the Purchasers and their affiliates.

83.    The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

**A.    Objections**

84.    To the extent that any objections (including any reservations of rights contained therein) to Confirmation have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Confirmation Hearing, all such objections (including any reservation of rights contained therein) are hereby overruled in their entirety and on the merits in all respects.

**B.    Plan Modifications**

85.    In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are presumed to accept the Plan, subject to modifications, if any.  No Holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of the Plan or Plan Supplement modifications.  All modifications to the Plan or Plan Supplement made after the Voting Deadline are hereby approved pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**C.    Findings of Fact and Conclusions of Law**

86.    The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made

applicable to this proceeding by Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation, including the Confirmation Ruling, are hereby incorporated into this Confirmation Order.  To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such. To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Court at the Confirmation Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

**D.    Modification of Plan Supplement**

87.    Subject to the terms of the Plan, this Confirmation Order, and the Purchase Agreement, the Debtors are authorized to modify and amend the Plan Supplement through and including the Effective Date, and to take all actions necessary and appropriate to effect the transactions contemplated therein through, including, and following the Effective Date.

**E.    Postconfirmation Modification of the Plan**

88.    Subject to the limitations and terms contained in Article X of the Plan, the Debtors, with advance notice to the Committee, are hereby authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, without further order of the Court.

**F.    Plan Classification Controlling**

89.    The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder and the classifications set forth on the ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied

upon by any holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

## G.     General Settlement of Claims and Interests

90.     Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

## H.     Sale Transaction; Sources of Consideration for Plan Distributions

91.     The Plan Administrator and/or Wind-Down Debtors will fund distributions under the Plan with Cash held on the Effective Date by or for the benefit of the Debtors or Wind-Down Debtors, including the remaining Sale Transaction Cash Proceeds after giving effect to the wind down process contemplated under the Purchase Agreement, Sale Order, and the Plan, any excess Cash from the Professional Fee Escrow Account remaining after satisfaction of all Allowed Professional Fee Claims, and the proceeds of any non-Cash assets held by the Wind-Down Debtors.  Notwithstanding anything to the contrary in the Plan or in the Purchase Agreement, on

the Effective Date, any Cause of Action not settled, released, enjoined or exculpated under Article

VIII of the Plan on or prior to the Effective Date shall vest in the Wind-Down Debtors and shall

be subject to administration by the Plan Administrator.

## I.    Restructuring Transactions

92.    On the Effective Date, to the extent not inconsistent with the Sale Transaction, the

applicable Debtors or the Wind-Down Debtors shall enter into any transaction and shall take any

actions as may be necessary or appropriate to effect the transactions described herein, including,

as applicable, consummation of the Sale Transaction, winding down the Estates, closing the

Chapter 11 Cases, monetizing assets, the cancellation of all securities, notes, instruments,

certificates, and other documents pursuant to the Plan, one or more intercompany mergers,

consolidations, amalgamations, arrangements, continuances, restructurings, conversions,

dispositions, dissolutions, transfers, liquidations, spinoffs, intercompany sales, purchases, or other

corporate transactions, and those Plan Administrator responsibilities contemplated under Article

IV.D–E of the Plan (collectively, the "Restructuring Transactions").  The actions to implement the

Restructuring Transactions may include:  (a) the execution and delivery of appropriate agreements

or other documents of merger, consolidation, amalgamation, arrangement, continuance,

restructuring, conversion, disposition, dissolution, transfer, liquidation, spinoff, sale, or purchase

containing terms that are consistent with the terms of the Plan and that satisfy the applicable

requirements of applicable law and any other terms to which the applicable Entities may agree;

(b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or

delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the

terms of the Plan and having other terms for which the applicable Entities agree; (c) the filing of

appropriate certificates or articles of incorporation, reincorporation, formation, merger,

consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to

applicable state or provincial law; and (d) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan.

**J.    Corporate Action**

93.    Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on or after the Effective Date, shall be deemed authorized and approved in all respects, including:  (a) implementation of the Restructuring Transactions and (b) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Wind-Down Debtors, and any corporate action required by the Debtors or the Wind-Down Debtors in connection with the Plan or corporate structure of the Debtors or Wind-Down Debtors shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Wind-Down Debtors.  Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Wind-Down Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtors.  The authorizations and approvals contemplated by Article IV.K of the Plan shall be effective notwithstanding any requirements under nonbankruptcy law.

**K.    Continued Corporate Existence and Vesting of Assets in Wind-Down Debtors**

94.    Except as otherwise provided in the Plan or this Confirmation Order, at least one Debtor shall continue in existence after the Effective Date as the Wind-Down Debtors for purposes

of (a) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Wind-Down Debtors after the Effective Date and after consummation of the Sale Transaction, (b) performing their obligations under the Purchase Agreement or any transition services agreement entered into on or after the Effective Date by and between the Wind-Down Debtors and the Purchasers, (c) resolving any Disputed Claims, (d) paying Allowed Claims, (e) filing appropriate tax returns, and (f) administering the Plan in an efficacious manner.    The Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (a) motions, contested matters, and adversary proceedings pending in the Court, and (b) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

**L.    Plan Administrator**

95.    The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan and as otherwise provided in the Confirmation Order.

96.    The Plan Administrator shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions set forth in the Plan (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).    On the Effective Date, the authority, power, and incumbency of the persons acting as managers and officers of the Wind-Down Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole manager and sole officer of the Wind-Down Debtors and shall succeed to the powers of the Wind-Down Debtors' managers and officers.    From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the

Wind-Down Debtors. The Plan Administrator is authorized to establish and fund a Post Effective

Date Reserve with an amount of Distributable Cash it deems necessary or appropriate to satisfy

future costs and expenses for the implementation of the Plan and discharge of its duties thereunder.

For the avoidance of doubt, the foregoing shall not limit the authority of the Wind-Down Debtors

or the Plan Administrator, as applicable, to continue the employment of any former manager or

officer, including pursuant to the Purchase Agreement or any transition services agreement entered

into on or after the Effective Date by and between the Wind-Down Debtors and the Purchasers.

**M.    Plan Implementation Authorization**

97.    The Debtors, the Wind-Down Debtors, or the Plan Administrator, as the case may

be, and their respective directors, officers, members, agents, and attorneys, financial advisors, and

investment bankers are authorized and empowered from and after the date hereof to negotiate,

execute, issue, deliver, implement, file, or record any contract, instrument, release, or other

agreement or document related to the Plan, as the same may be modified, amended and

supplemented, and to take any action necessary or appropriate to implement, effectuate,

consummate, or further evidence the Plan in accordance with its terms and the terms hereof, or

take any or all corporate actions authorized to be taken pursuant to the Plan or this Confirmation

Order, whether or not specifically referred to in the Plan or any exhibit thereto, without further

order of the Court. To the extent applicable, any or all such documents shall be accepted upon

presentment by each of the respective state filing or recording offices and filed or recorded in

accordance with applicable state law and shall become effective in accordance with their terms

and the provisions of state law. Pursuant to the appropriate provisions of the New York Business

Corporation Law, the General Corporation Law of the State of Delaware (including section 303

thereof), and any comparable provision of the business corporation laws of any other state, as

applicable, no action of the Debtors or Wind-Down Debtors' boards of directors will be required

to authorize the Debtors or Wind-Down Debtors, as applicable, to enter into, execute and deliver, adopt or amend, as the case may be, any such contract, instrument, release, or other agreement or document related to the Plan, and following the Effective Date, each of the Plan documents will be a legal, valid, and binding obligation of the Debtors or Wind-Down Debtors, as applicable, enforceable against the Debtors and the Wind-Down Debtors in accordance with the respective terms thereof.  The Wind-Down Debtors or the Plan Administrator may also, consistent with the Plan, take any additional steps prior to, on, and/or after the Effective Date in furtherance of the wind-down process and/or consolidate and streamline their organization, including, among other things, the merger, liquidation, or consolidation of one or more of the Debtors or Wind-Down Debtors.

## N.    Returned Merchandise Matters

98.    The Returned Merchandise Procedures are hereby approved.  The Debtors shall cause the Returned Merchandise Claim Form to be transmitted to Holders of Returned Merchandise Claims (as defined in the Returned Merchandise Claim Form) in accordance with the Returned Merchandise Procedures.  Any Holder of a Returned Merchandise Claim that fails to timely elect treatment thereof in accordance with the Returned Merchandise Procedures in the appropriate form shall be forever barred, estopped, and enjoined from (a) asserting such Returned Merchandise Claim against the Debtors and their chapter 11 estates or their property and (b) participating in any distribution in the Chapter 11 Cases on account of such Returned Merchandise Claim.  For the avoidance of doubt, following the Election Deadline (as defined in the Returned Merchandise Claim Form), all Returned Merchandise not otherwise dealt with pursuant to a timely-submitted Returned Merchandise Claim Form or the Agency Agreement (as defined in the Sale Order) shall irrevocably vest in the Debtors or their estates.

99.     The Returned Merchandise Claim Form is approved and shall be deemed adequate and sufficient under the facts and circumstances of the Chapter 11 Cases. The Debtors, their Notice and Claims Agent, and the Plan Administrator are authorized to take any and all actions necessary or appropriate in furtherance of the Returned Merchandise Procedures.

## O.     Certain Customer Matters

100.    Pursuant to sections 1122(b), 1123, and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan is hereby deemed modified to include the treatment of customer convenience claims as set forth in paragraph 75 hereof. The customer convenience class is reasonable and necessary for administrative convenience and is in the best interests of the Estates.

101.    Holders of Allowed Claims that are customer convenience claims shall receive, in the Debtors' or the Plan Administrator's sole discretion, in full and final satisfaction of such Claims, payment in full, in cash, in an amount not to exceed $2,100 on a per Claim basis, until the $25,000 set aside to fund such claims is exhausted, at which point no further recoveries on account of customer convenience claims shall be available. For the avoidance of doubt, neither the Debtors nor the Wind-Down Debtors shall be required to fund additional amounts to pay Holders of Allowed Claims that are customer convenience claims.

## P.     Cancellation of Securities and Agreements

102.    Upon the Effective Date: (a) any remaining obligations of the Debtors under the Prepetition Credit Documents and any other certificate, security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of, or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be cancelled solely as to the Debtors and their affiliates, and the

Wind-Down Debtors shall not have any continuing obligations thereunder; and (b) the obligations

of the Debtors and their affiliates pursuant, relating, or pertaining to any agreements, indentures,

certificates of designation, bylaws, or certificate or articles of incorporation or similar documents

governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or

other instruments or documents evidencing or creating any indebtedness or obligation of or

ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments

evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically

Reinstated pursuant to the Plan) shall be released.

**Q.    Approval of Consents and Authorization to Take Acts Necessary to Implement Plan**

103.    This Confirmation Order shall constitute all authority, approvals, and consents

required, if any, by the laws, rules, and regulations of all states and any other governmental

authority with respect to the implementation or consummation of the Plan and any documents,

instruments, or agreements, and any amendments or modifications thereto, and any other acts and

transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure

Statement, and any documents, instruments, securities, or agreements, and any amendments or

modifications thereto.

**R.    The Releases, Injunction, Exculpation, and Related Provisions under the Plan**

104.    The following releases, injunctions, exculpations, and related provisions set forth

in Article VIII of the Plan are incorporated herein in their entirety, are hereby approved and

authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date

without further order or action on the part of this Court or any other party:  (a) Release of Liens

(Article VIII.C); (b) Releases by the Debtors (Article VIII.D); (c) Third-Party Release (Article

VIII.E); (d) Exculpation (Article VIII.F); and (e) Injunction (Article VIII.G).

105.    The Debtor Release (Article VIII.D) is hereby amended as follows:  "…; provided that (i) any right to enforce the Plan and Confirmation Order**, and (ii) any actions determined by Final Order to have constituted actual fraud or gross negligence, in each case are** not so released.

## S.    Assumption, Rejection, and Cure of Executory Contracts and Unexpired Leases

106.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

107.    For the avoidance of doubt, on the Effective Date, except as otherwise provided in the Plan or in a prior or pending notice and/or motion related to assumption or rejection, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (a) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement, or otherwise is specifically described in the Plan to not be rejected; (b) is subject to a prior or pending motion and/or notice to assume or reject such Unexpired Lease or Executory Contract as of the Effective Date; (c) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the any sale transaction; or (d) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan.  Entry of this Confirmation Order shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory

Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

108.     Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed (or assumed and assigned) pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described in the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (a) the amount of any payments to cure such a default, (b) the ability of the Wind-Down Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed (or assumed and assigned), or (c) any other matter pertaining to assumption (or assumption and assignment), the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption (or assumption and assignment).  Any counterparty to an Executory Contract or Unexpired Lease that fails to object to the proposed assumption (or assumption and assignment) or cure amount in accordance with the procedures set forth in the Plan will be deemed to have assented to such assumption (or assumption and assignment) or cure amount.

**T.      Provisions Governing Distributions**

109.     The distribution provisions of Article VI of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Distributions under the Plan shall be made by the Disbursing Agent, which may be the Debtors or the Plan Administrator (as applicable), or the Entity or Entities selected by the Debtors or the Plan Administrator to make or facilitate distributions contemplated under the Plan.

U.    **Release of Liens**

110.    Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date and required to be satisfied pursuant to the Plan, except for Other Secured Claims that the Debtors elect to reinstate in accordance with Article III.B.1 of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and satisfied, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be, and hereby is, authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Wind-Down Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

V.    **Postconfirmation Notices, Professional Compensation, and Bar Dates**

111.    In accordance with Bankruptcy Rules 2002 and 3020(c), no later than five Business Days after the Effective Date, the Wind-Down Debtors must cause the notice of Confirmation and occurrence of the Effective Date (the "Notice of Effective Date") to be served by United States mail, first-class postage prepaid, by hand, by overnight courier service, or by electronic service to

all parties served with the Confirmation Hearing Notice; *provided* that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.

112.    To supplement the notice procedures described in the preceding paragraph, no later than fifteen Business Days after the Effective Date, the Wind-Down Debtors must cause the Notice of Effective Date, modified for publication, to be published on one occasion in *USA Today* (national edition). Mailing and publication of the Notice of Effective Date in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c). No further notice is necessary or shall be required.

113.    Solely for purposes of lien recordation, the Notice of Effective Date will have the effect of an order of the Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable nonbankruptcy law.

114.    Professionals or other Entities asserting a Professional Fee Claim for services rendered prior to the Confirmation Date must File an application for final allowance of such Professional Fee Claim no later than 45 days after the Effective Date. The Plan Administrator and/or Wind-Down Debtors shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals, including from funds held in the Professional

Fee Escrow Account when such Professional Fee Claims are Allowed by entry of an order of the Court.

115.    Except as otherwise provided in the Plan, and except with respect to Administrative Claims that are Professional Fee Claims or subject to 11 U.S.C. § 503(b)(1)(D), requests for payment of Allowed Administrative Claims must be Filed and served on the Plan Administrator and/or Wind-Down Debtors no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed satisfied, settled, and released as of the Effective Date.  Objections to such requests, if any, must be Filed and served on the Plan Administrator and/or Wind-Down Debtors and the requesting party.

## W.    Section 1146 Exemption

116.    To the extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to:  (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Wind-Down Debtors;  (b) the Restructuring Transactions; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording

tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## X.    Preservation of Causes of Action

117.    Except as otherwise provided in the Plan or this Confirmation Order or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, the Wind-Down Debtors shall have vested in them as of the Effective Date, and the Wind-Down Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions described in the Schedule of Retained Causes of Action, and the Wind-Down Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including as set forth in Article VIII thereof.

**Y.      Effectiveness of All Actions**

118.    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, before, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of the Court, or further action by the Debtors, the Wind-Down Debtors, and/or the Plan Administrator and their respective directors, officers, members, or stockholders, and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

**Z.      Binding Effect**

119.    On the date of and after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, any and all Holders of Claims or Interests (irrespective of whether such Holders of Claims or Interests are deemed to have accepted or rejected the Plan), the Purchasers and their affiliates, all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

120.    Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in the Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder and all motions or requests for relief by the Debtors pending before this Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the Wind-Down Debtors and their respective successors and assigns.

121.    The Plan, all documents and agreements executed by the Debtors in connection therewith, this Confirmation Order, and all prior orders of the Court in the Chapter 11 Cases shall

be binding against and binding upon and shall not be subject to rejection, modification, or avoidance by any Chapter 7 or Chapter 11 trustee appointed in any of the Chapter 11 Cases or any Successor Cases (as defined in the DIP Orders).  All Claims and Interests shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan, regardless of whether any holder of a Claim or Interest has voted on the Plan.

**AA.    Claims Reconciliation Process**

122.    The procedures and responsibilities for, and costs of, reconciling Disputed Claims shall be as set forth in the Plan or as otherwise ordered by the Court.

**BB.    Setoff and Recoupment Matters**

123.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the following parties' rights to exercise the remedies of setoff or recoupment under applicable bankruptcy or nonbankruptcy law, if any, are hereby preserved:  Brookfield Property REIT, Inc.; and Regency Centers Corporation.  For the avoidance of doubt, the Debtors' rights to defend against the application of setoff or recoupment by any of the foregoing parties are also preserved.

**CC.    Agent Matters**

124.    For the avoidance of doubt, GA Retail, Inc., on behalf of a contractual joint venture comprised of itself and Tiger Capital Group, LLC, has elected to opt out of the Third-Party Release and therefore shall not be a "Released Party" or "Releasing Party" under the Plan.  For the avoidance of doubt, (a) none of the claims and causes of action transferred by the Estate to the Purchasers pursuant to the Purchase Agreement are released by the Debtor Release, and (b) nothing contained in the Plan or this Confirmation Order confers standing, derivative or otherwise, on any non-Debtor party, including the Agent, to pursue any claims or causes of action.

**DD.     Asset Sale Obligations**

125.    Nothing in this Confirmation Order or the Plan shall act as a release of any obligation of the Purchase Agreement parties pursuant to, or any Claim arising out of, the Purchase Agreement or any related document.

**EE.     Professional Compensation and Reimbursement Claims**

126.    Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or the Wind-Down Debtors.  The Debtors and Wind-Down Debtors (as applicable) shall pay, within ten business days after submission of a detailed invoice to the Debtors or Wind-Down Debtors (as applicable), such reasonable claims for compensation or reimbursement of expenses incurred by the Retained Professionals of the Debtors and Wind-Down Debtors (as applicable).  If the Debtors or Wind-Down Debtors (as applicable) dispute the reasonableness of any such invoice, the Debtors or Wind-Down Debtors (as applicable) or the affected professional may submit such dispute to the Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

**FF.    Nonseverability of Plan Provisions upon Confirmation.**

127.    Notwithstanding the possible applicability of Bankruptcy Rules 3020(e), 6004(h), 6006(d), 7062, 9014, or otherwise, the terms and conditions of this Confirmation Order will be effective and enforceable immediately upon its entry.  Each term and provision of the Plan, and the transactions related thereto as it heretofore may have been altered or interpreted by the Court is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors and the Purchasers consistent with the terms set forth herein; and (c) nonseverable and mutually dependent.

**GG.    Waiver or Estoppel**

128.    Except as otherwise set forth in the Plan or this Confirmation Order, each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Court before the Confirmation Date.

**HH.    Authorization to Consummate**

129.    The Debtors are authorized to consummate the Plan, including the Restructuring Transactions contemplated thereby, at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX of the Plan.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code.

**II.    Injunctions and Automatic Stay**

130.    Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code

or any order of the Court and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the closing of these Chapter 11 Cases. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

**JJ.    Certain ASB Matters**

131.    Nothing in the Plan or this Confirmation Order shall or shall be deemed to impair, release, or waive any defenses of Thor ASB 1-15 East Oak Street, LLC to avoidance actions or causes of action brought by any party.

**KK.    Certain Chubb Matters**

132.    Notwithstanding anything to the contrary in this Confirmation Order, the Disclosure Statement, the Plan (including, without limitation, Articles V.A, V.B and VI.J thereof), the Plan Supplement, the Purchase Agreement, the Agency Agreement, the Sale Order, any assumption, rejection or cure notice, any bar date notice or Claim objection, any other document related to any of the foregoing or any other order of the Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction or release, confers Court jurisdiction or requires a party to opt out of any releases, except as set forth below): (1) the Chubb Insurance Contracts (as hereinafter defined) shall be neither assumed nor deemed rejected; (2) nothing shall alter, modify, amend, affect, impair or prejudice the legal, equitable or contractual rights, obligations, and defenses of Westchester Fire Insurance Company, Westchester Surplus Lines Insurance Company, Federal Insurance Company, Chubb Indemnity Insurance Company, Executive Risk Specialty Insurance Company, Great Northern Insurance Company, Vigilant Insurance Company and/or each of their affiliates and successors (collectively, the "Chubb Companies"), the Debtors, or the Wind-Down Debtors, as applicable, under any insurance policies that have been issued by the Chubb Companies to any of the Debtors or their predecessors

(collectively, the "Chubb Insurance Contracts") and any such rights and obligations shall be determined under the Chubb Insurance Contracts and applicable non-bankruptcy law; and to the extent the Debtors or the Wind-Down Debtors, as applicable, seek coverage or payment under the Chubb Insurance Contracts, the Chubb Companies shall be entitled to payment or reimbursement from the applicable Debtor or Wind-Down Debtor, to the extent required under the applicable Chubb Insurance Contract, in full in the ordinary course and without the need for the Chubb Companies to file a Proof of Claim, request for Administrative Claim, an Administrative / Priority Claim Consent Form, or object to any cure amount; *provided* that any and all rights of the Debtors to dispute such payments or reimbursement are expressly reserved; *provided*, *further*, that the Chubb Companies shall not bring a cause of action against or otherwise directly pursue the Debtors' current or former directors, managers, officers, employees or Professionals for such payments or reimbursements arising under the Chubb Insurance Contracts, except for actions determined by Final Order to have constituted actual fraud or gross negligence or to the extent necessary with respect to subrogation or similar claims; *provided*, *further*, *however*, that nothing in this paragraph shall or shall be deemed to modify the exculpation provided by Article VIII.F of the Plan; (3) the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit:  (a) claimants with valid workers' compensation claims or direct action claims against the Chubb Companies under applicable non-bankruptcy law to proceed with their claims; and (b) the Chubb Companies to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Court, (i) workers' compensation claims, (ii) claims where a claimant asserts a direct action claim against any Chubb Company under applicable non-bankruptcy law, or an order has been entered by this Court

granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII of the

Plan to proceed with its claim, and (iii) all costs in relation to each of the foregoing; and (4)

effective as of the Effective Date, the automatic stay of section 362(a) of the Bankruptcy Code and

the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed

lifted without further order of the Court, solely to permit the Chubb Companies to cancel any

Chubb Insurance Contract, and take other actions relating thereto, to the extent permissible under

applicable non-bankruptcy law, and in accordance with the terms of the Chubb Insurance

Contracts.  Upon the Effective Date and based on the foregoing treatment, all Proofs of Claim on

account of or in respect of the Chubb Insurance Contracts shall be deemed withdrawn

automatically and without further notice to or action by the Court.

## LL.    Certain Zurich Matters

133.    Notwithstanding anything to the contrary in this Confirmation Order, the

Disclosure Statement, the Plan (including, without limitation, Articles V.A, V.B and VI.J thereof),

the Plan Supplement, the Purchase Agreement, the Agency Agreement, the Sale Order, any

assumption, rejection or cure notice, any bar date notice or Claim objection, any other document

related to any of the foregoing or any other order of the Court (including, without limitation, any

other provision that purports to be preemptory or supervening, grants an injunction or release,

confers Court jurisdiction, or requires a party to opt out of any releases, except as set forth below):

(1) the Zurich Insurance Contracts (as hereinafter defined) shall be neither assumed nor deemed

rejected, (2) nothing shall alter, modify, amend, affect, impair or prejudice the legal, equitable or

contractual rights, obligations, and defenses of Zurich American Insurance Company, Zurich

Services Corporation, and/or each of their affiliates and successors (collectively, "Zurich"), the

Debtors, or the Wind-Down Debtors, as applicable, under any insurance policies that have been

issued by Zurich to any of the Debtors or their predecessors (the "Zurich Insurance Contracts")

and any such rights and obligations shall be determined under the Zurich Insurance Contracts and applicable non-bankruptcy law; *provided*, *further*, that Zurich shall not bring a cause of action against or otherwise directly pursue the Debtors' current or former directors, managers, officers, employees or Professionals for such payments or reimbursements arising under the Zurich Insurance Contracts, except for actions determined by Final Order to have constituted actual fraud or gross negligence or to the extent necessary with respect to subrogation or similar claims; *provided*, *further*, *however*, that nothing in this paragraph shall or shall be deemed to modify the exculpation provided by Article VIII.F of the Plan; (3) the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit: (a) claimants with valid workers' compensation claims or direct action claims against Zurich under applicable non-bankruptcy law to proceed with their claims; (b) Zurich to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Court, (i) workers' compensation claims, (ii) claims where a claimant asserts a direct action claim against Zurich under applicable non-bankruptcy law, or an order has been entered by this Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII of the Plan to proceed with its claim, and (iii) all costs in relation to each of the foregoing; and (c) Zurich to collect from any or all of the collateral or security provided by or on behalf of the Debtors at any time and to hold the proceeds thereof as security for the obligations of the Debtors and/or apply such proceeds to the obligations of the Debtors under the applicable Zurich Insurance Contracts, in such order as Zurich may determine; *provided* that the Debtors' rights to dispute Zurich's rights to such payments are expressly reserved; *provided*, *further*, that nothing in this subpart (c) shall entitle Zurich to recover from the Debtors or their Estates in excess of the recoveries provided for

Zurich's Claims (to the extent Allowed) under the Plan; and (4) effective as of the Effective Date, the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Court, solely to permit Zurich to cancel any Zurich Insurance Contract, and take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the Zurich Insurance Contracts.

## MM.   Certain Union Matters

134.   *Union Employee Severance*.   The Debtors shall continue to offer severance benefits to union employees consistent with post-Sale practice, including that eligible employees shall be offered up to five weeks' pay as severance benefits (*i.e.*, one week of pay for each two years of service, not to exceed five weeks' pay), to be paid out through payroll in the weeks following their termination, in exchange for a customary release; *provided* that such severance benefits shall be paid *first* from the Additional Employee Severance Amount (as defined in the Purchase Agreement), *second* from the $2,000,000 of the Wind Down Amount (as defined in the Purchase Agreement) set aside for the benefit of employee severance in accordance with the terms of the Purchase Agreement and Sale Order, and *third*, solely to the extent of any insufficiency of the foregoing, from Distributable Cash; *provided*, *further*, that such release shall not waive the claim for PTO (as defined below) as provided in paragraph 135(b) hereof*; provided*, *further*, that any employee who does not sign a release will be entitled to participate in the treatment of such employee's Allowed Claims, if any, provided under the Plan.

135.   *Union Employee PTO*.   With respect to personal, sick leave, and vacation benefits (collectively, "PTO") under the Collective Bargaining Agreements:  (a) the Debtors shall pay, on a current basis, any unused PTO accrued for use in 2019 on or before the Effective Date, and (b) all other accrued and unused PTO that would have been available for calendar year 2020 shall be

Allowed as an Administrative Claim, the quantum of which is to be determined, without the need for individual union employees or their collective bargaining representatives to file proofs of claim on account of such accrued and unused PTO.  In addition, the Debtors shall, in their business judgment, use commercially reasonable efforts to pay up to five days of accrued and unused PTO on a current basis, commencing at the time of termination of employment, solely to the extent of available liquidity from the Wind Down Amount.

136.    ***Post February 2020 Operations***.  If Great American Group, LLC (together with its affiliates, "Agent") requests that the Debtors continue to support store closings beyond February 29, 2020, the Debtors shall use commercially reasonable efforts to have Agent fund additional amounts to the Additional Employee Severance Fund (as defined in the Purchase Agreement), which shall be used to pay severance obligations to employees at any store location that remains open past February 29, 2020.  In addition, if ABG-Barneys, LLC ("ABG") requests that the Debtors continue to support Freds Madison Avenue restaurant beyond February 29, 2020, the Debtors shall use commercially reasonable efforts to have ABG or its designee offer employment to those union members that have worked at such restaurant and at an appropriate time  assume the obligations under the applicable collective bargaining agreement(s). Any  rights of the New York-New Jersey Regional Joint Board, affiliated with Workers United, under the terms and conditions of its collective bargaining agreement covering Fred's Madison Avenue Restaurant are reserved in relation to any such transaction.

137.    ***Implementation Matters***.  For avoidance of doubt, following the Effective Date, the Plan Administrator, solely in his capacity as such, shall act on behalf of the Wind-Down Debtors in relation to employee matters.  Wages and benefits for employees of the Wind-Down Debtors shall continue to be funded by Agent in accordance with that certain *Agency Agreement*

(the "Agency Agreement"), dated as of October 16, 2019, by and among Barneys, Inc., the other direct and indirect wholly-owned subsidiaries of Barneys, Inc. party thereto, Agent, and ABG-Barneys, LLC, and paid by the Wind-Down Debtors in the normal course. Claims under collective bargaining agreements not otherwise dealt with in these provisions, including but not limited to valid vendor overpays, that are not required to be funded under the Agency Agreement and are not otherwise paid in the normal course will be subject to the Plan and receive the treatment provided thereunder if Allowed.

138.    Ms. Sheryl Isobe shall be entitled to an Allowed Other Priority Claim in the amount of $10,000. The Debtors and the Wind-Down Debtors shall not object to proofs of claim or proofs of administrative claims filed by collective bargaining representatives on the basis that the collective bargaining representatives lack authority to file such claims.

139.    Notwithstanding any other provisions of the Plan or this Confirmation Order, the Court shall retain jurisdiction to hear and enforce all matters arising out of or relating to the terms of this paragraph 139 and the foregoing paragraphs 134–138 (the "Employee-Related Obligations"), and the appropriate collective bargaining representatives shall have standing to enforce the Employee-Related Obligations.

**NN.    Provisions Regarding Aetna**

140.    The Master Services Agreement, MSA-870008, effective as of January 1, 2017 (the "Aetna Agreement"), by and between the Debtors and Aetna Life Insurance Company ("Aetna"), relating to administration of the Debtors' self-insured medical plan, is hereby assumed pursuant to section 365 of the Bankruptcy Code. The Debtors will provide Aetna with at least ten (10) business days' written notice of any request to terminate the Aetna Agreement. Through the effective date of termination of the Aetna Agreement, the Debtors shall pay all administrative fees and fund all medical claims on a current basis in the ordinary course of business in accordance with the Aetna

Agreement. On or before the Effective Date, the Debtors shall pay Aetna $350,000.00 (the "Prefund Amount") to fund runoff claims incurred prior to termination but received by Aetna after termination. On and after the termination date, provided all administrative fees and medical claim reimbursement requests are satisfied in full, and subject to payment of the Prefund Amount, Aetna will process runout claims in accordance with the terms and conditions of the Aetna Agreement, and such runout claims will be paid from the Prefund Amount until such Prefund Amount is exhausted or the contractual runout period has concluded. Any excess funds from the Prefund Amount will be returned as soon as reasonably practicable, but in no event later than ten business days, to Wind-Down Debtors after the conclusion of runout processing as set forth in the Aetna Agreement. Notwithstanding anything to the contrary herein or in the Plan, in the event Aetna determines at any time in its sole discretion that the remaining Prefund Amount will be insufficient to satisfy remaining runout claims, Aetna is authorized to suspend processing claims and, on ten (10) business days' notice (the "Termination Notice"), to terminate any remaining runout obligations under the Aetna Agreement without further notice or order; *provided* that if Aetna determines it will suspend processing due to insufficient funding it shall notify the Wind-Down Debtors as soon as reasonably practicable and work with the Wind-Down Debtors in good faith to resolve its concerns. Following notice of suspension and/or receipt of the Termination Notice and prior to the termination date, the Wind-Down Debtors may provide additional funds to Aetna and Aetna may resume claims processing in its sole discretion. Following such termination, if any, Aetna shall remit to the Wind-Down Debtors any remaining Prefund Amount, if any, no later than ten business days following such termination and work in good faith with the Wind-Down Debtors to assist the Wind-Down Debtors to transition to an alternative provider, if any.

**OO.    Provisions Regarding ADP**

141.    The Debtors' contract with ADP, Inc. ("ADP," and the contract therewith, the "ADP Contract") shall be terminated as of May 31, 2020 (the "ADP Rejection Date").  Until the ADP Rejection Date, ADP shall continue providing current services under the ADP contract, and the Debtors shall timely pay ADP for (a) the monthly services fees for January 2020, delivery of Forms W-2 for the 2019 tax year, and any monthly services fees for services provided thereafter through the end of the month in which the ADP Rejection Date occurs, pursuant to invoice term, the ADP Contract, and their mutual agreement and (b) fund payroll, tax filing and wage garnishments consistent with the agreed upon timetable which is set forth below:

- Payroll: (i.e., Full Service Direct Deposit and ADP Check): deposit due from Debtors or Liquidating Trustee 48 hours (2 business days) prior to check date;

- Tax Filing:  deposit due from Debtors or Liquidating Trustee 24 hours (1 business day) prior to check date; and

- Wage Garnishment Processing Services:  deposit due from Debtors or Liquidating Trustee 24 hours (1 business day) prior to check date.

All funds are due to ADP by 3.00 p.m. EST on the due date.

142.    ADP shall have the right to cease providing services to the Debtor if the payments and funding to ADP are not made in accordance with the preceding clause.  Notwithstanding the rejection of the ADP Contract, ADP shall assist the Debtors' with the preparation of the Form W-2s for the Debtors' employees for the 2020 tax year, consistent with the ADP Contract (the "W-2 Services").  In exchange for the 2020 tax year W-2 Services, the Debtors shall prepay ADP in an amount estimated at $6,292.00 within ten days of entry of this Confirmation Order. ADP shall have an allowed unsecured claim of $151,674.89 which shall be treated pursuant to the terms of this Plan.  Neither the Debtors nor ADP shall intentionally make, or cause any other

person under their control to make, any public statement that criticizes or disparages the other party.

**PP.    Provisions Regarding Oracle**

143.    The Debtors contracts with Oracle America, Inc. (the "Oracle Contracts") shall be rejected as of the earlier of:  (a) a supplemental notice specifying a date earlier than February 29, 2020; and (b) February 29, 2020 (the "Oracle Rejection Date").  The Debtors shall pay all amounts due and owing under the Oracle Contracts on account of services rendered after November 1, 2019 and prior to the Oracle Rejection Date in the ordinary course.

**QQ.    Provisions Regarding the Amalgamated Retail Retirement Fund et al.**

144.    On January 31, 2020, the Debtors made certain estimated payments to prefund amounts on account of employee benefits that have accrued (or will accrue) but are not yet due and payable for January 2020 and February 2020 to the Amalgamated Retail Retirement Fund, the National Plus Plan, and the Amalgamated National Health Plan (each, a "Benefit Plan").  The Debtors shall timely send contribution reports to the applicable Benefit Plan for each applicable contribution to such Benefit Plan.  The Debtors and each Benefit Plan shall reconcile the amounts actually due and owing for that period in the normal course.  If the Debtors estimated payment(s) exceed(s) the actual amount due and owing to a Benefit Plan for such period, such plan shall promptly return the excess amounts to the Wind-Down Debtors upon five Business Days' written notice.  If the Debtors estimated payment(s) are less than the actual amount due and owing for such period, the Debtors shall promptly remit the difference to the applicable Benefit Plan upon five Business Days' written notice.  The Debtors shall have no further payment obligations to the Benefit Plans for employee benefit accruals after February 29, 2020, unless the Plan Administrator in its sole discretion provides written notice to each Benefit Plan of its election to have the Wind-Down Debtors continue participating in the Benefit Plans after February 29, 2020.  If the

Wind-Down Debtors employ any employees entitled to benefits after February 29, 2020, such employment shall be on terms acceptable to the Plan Administrator, the applicable employee(s), and, if an existing collective bargaining agreement presently governs the employment relationship, the applicable union(s) (it being understood that continued employment pursuant to an existing collective bargaining agreement is acceptable). For the avoidance of doubt, each Benefit Plan has elected to opt out of the Third-Party Release and therefore shall not be a "Releasing Party" or a "Released Party" under the Plan.

**RR.    Dissolution of the Committee**

145.    On the Effective Date, the Committee shall dissolve automatically and the members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code, except for the limited purposes of (a) prosecuting requests for payment of Professional Fee Claims for services and reimbursement of expenses incurred by the Committee and its Professionals and (b) prosecuting a response to the *Motion of the Agent for Entry of an Order Granting (I) Leave, Standing, and Authority to Commence and Prosecute Avoidance Actions Under Chapter 5 of the Bankruptcy Code and (II) Settlement Authority in Respect of Such Claims* [Docket No. 691], including, without limitation, any hearings thereon and any appeals related thereto; *provided* that the foregoing shall be subject to a budget approved by the Plan Administrator as reasonable and appropriate under the circumstances. The Wind-Down Debtors shall not be responsible for paying any fees or expenses incurred by the Committee Members or advisors to the Committee after the Effective Date except for the limited purposes identified above.

**SS.    Effect of Nonoccurrence of Conditions to the Effective Date**

146.    If the Effective Date of the Plan does not occur, (a) the Plan shall be null and void in all respects other than as set forth herein, (b) the Plan shall be deemed a motion seeking

dismissal of these Chapter 11 Cases in accordance with the applicable provisions and priority scheme of the Bankruptcy Code, and (c) nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (ii) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

**TT.    Miscellaneous**

147.    Nothing in this Confirmation Order shall be deemed to (a) grant or authorize liens on the Debtors' leasehold interests in real property or (b) grant or authorize rights in the Debtors' leasehold interests in real property to any party in a manner inconsistent with applicable law, including with respect to the terms of the leases.

**UU.    Reports**

148.    After the Confirmation Date, the Debtors have no obligation to File with the Court or serve on any parties reports that the Debtors were obligated to File under the Bankruptcy Code or a prior order of the Bankruptcy Court, including monthly operating reports, ordinary course professional reports, and monthly or quarterly reports for Professionals; *provided, however*, that the Debtors shall comply with the U.S. Trustee's quarterly reporting requirements.

**VV.    Effect of Conflict Between Plan and Confirmation Order**

149.    Except as set forth in the Plan and the Confirmation Order, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

**WW.  Retention of Jurisdiction**

150.    The Court retains jurisdiction over the Chapter 11 Cases, all matters arising out of

or related to the Chapter 11 Cases and the Plan, the matters set forth in Article XI of the Plan, and

other applicable provisions of the Plan.

**XX.  Waiver of 14-Day Stay**

151.    Notwithstanding any Bankruptcy Rule (including, without limitation, Bankruptcy

Rules 3020(e), 6004(h), 6006(d), 7062, and 9014), this Confirmation Order is effective

immediately upon entry and not subject to any stay.

**YY.  Local Rules 3021-1(b) and 3022-1**

152.    Pursuant to Local Rule 3021-1(b), the time for achieving substantial consummation

of the Plan and entry of a final decree closing the Chapter 11 Cases is as follows:

a.  <u>Substantial Consummation of the Plan</u>.  The Debtors anticipate that the Effective Date and substantial consummation of the Plan will occur in February, 2020, or as soon as reasonably practicable thereafter.

b.  <u>Distributions</u>.  On the Effective Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), the Distribution Agent shall make initial distributions under the Plan on account of each Holder of an Allowed Claim in the full amount of the distributions that the Plan provides for Allowed Claims in each applicable Class, consistent with the provisions of Articles IV and VI of the Plan.

c.  <u>Resolution of Claims</u>.  The Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, shall resolve Disputed Claims against the Estates consistent with the provisions of Article VII of the Plan.

d.  <u>Postconfirmation Status Reports</u>.  The Wind-Down Debtors shall file postconfirmation disbursement and status reports every six months until the Chapter 11 Cases are closed by means of a final decree, converted to a case under chapter 7, or dismissed, whichever occurs earliest.

e.  <u>Motion for Final Decree</u>.  Consistent with Bankruptcy Rule 3022 and Local Rule 3022-1, no later than fourteen days following the full administration of the

applicable Estates, one or more Wind-Down Debtors shall file, on notice to the U.S. Trustee, an application and a proposed order for a final decree.

**ZZ.    Final Order**

153.    This Confirmation Order is a Final Order and the period in which an appeal must

be filed will commence upon entry of this Confirmation Order.

/s/ Cecelia G. Morris



Dated: February 5, 2020
   Poughkeepsie, New York

_____
**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**